UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


TROOPER 1,                          *     Case No. 22-CV-00893(LDH)
                                    *
                Plaintiff,          *     Brooklyn, New York
                                    *     June 6, 2022
        v.                          *
                                    *
NEW YORK STATE POLICE, et al.,*
                                    *
                Defendants.         *
                                    *
*   *   *   *   *   *   *   *   *   *   *   *   *   *   *

        TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
            BEFORE THE HONORABLE TARYN A. MERKL
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          JOHN S. CRAIN, ESQ.
                            VALDI LICUL, ESQ.
                            Wigdor, LLP
                            85 Fifth Avenue
                            New York, NY  10003


For Defendant,              JOSHUA STEELE, ESQ.
 New York State Police:     Harris Beach, PLLC
                            99 Garnsey Road
                            Pittsford, NY  14534


For Defendant, Andrew Cuomo: RITA M. GLAVIN, ESQ.
                            MICHAELENE WRIGHT, ESQ.
                            Glavin, PLLC
                            156 W. 56th Street, Ste 2004
                            New York, NY  10019


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

```
APPEARANCES (Cont'd)


For Defendants, Melissa          ELKAN ABRAMOWITZ, ESQ.
 DeRosa and Richard              CATHERINE FOTI, ESQ.
 Azzopardi:                      JOSEPH STERN, ESQ.
                                 RACHEL FLEIG-GOLDSTEIN, ESQ.
                                 Morvillo, Abramowitz, Grand,
                                  Iason & Boherer, P.C.
                                 565 Fifth Avenue
                                 New York, NY  10017
```

3

1              (Proceedings commenced at 11:33 a.m.)

2              THE CLERK:  This is civil cause for initial

3    conference, docket no. 22-CV-893, Trooper 1 versus New York

4    State Police, et al.

5              Before asking the parties to state their

6    appearances, I would like to note the following.

7              Persons granted remote access to proceedings are

8    reminded of the general prohibition against photographing,

9    recording and rebroadcasting of court proceedings.

10             Violation of these prohibitions may result in

11   sanctions, including removal of court-issued media

12   credentials, restricted entry to future hearings, denial of

13   entry to future hearings or any other sanctions deemed

14   necessary by the Court.

15             Will the parties please state their appearances for

16   the record, starting with the plaintiff.

17             MR. LICUL:  Good morning, Your Honor.  Valdi Licul,

18   and I'm here with my colleague, John Crain, for Wigdor, LLP,

19   for the plaintiff, Trooper 1.

20             THE COURT:  Good morning.

21             MR. STEELE:  Joshua Steele from Harris Beach, PLLC,

22   for the New York State Police.

23             THE COURT:  Good morning, Mr. Steele.

24             And for Mr. Cuomo?

25             MR. STEELE:  Good morning, Judge.

4

1          MS. GLAVIN:  Good morning, Your Honor.  This is

2     Rita Glavin, of Glavin, PLLC.  And I'm with my colleague,

3     Michaelene Wright, for former Governor Cuomo.

4          MR. ABRAMOWITZ:  And good morning.  This is -- oh,

5     I'm sorry.

6          THE COURT:  Excuse me, Ms. Glavin.  Ms. Glavin.

7     Ms. Wright?  I don't believe she's on the docket.  Is she

8     planning to participate?

9          MS. GLAVIN:  No.  She's just listening in.  I just

10     wanted to announce her appearance.  It's W-R-I-G-H-T.

11          THE COURT:  Okay.  Very good.  No worries.  I just

12     wanted to make sure that she filed a notice of appearance if

13     she's planning to proceed.

14          MS. GLAVIN:  Yeah.

15          THE COURT:  On behalf of defendant Melissa DeRosa?

16          MR. ABRAMOWITZ:  This is Elkan Abramowitz.  I'm

17     here with my colleagues, Catherine Foti, Joseph Stern and

18     Rachel Fleig-Goldstein, for Ms. DeRosa and Richard Azzopardi.

19          THE COURT:  Good morning to you all.

20          So we're here today for an initial conference in

21     this case.  And needless to say we are familiar with the

22     allegations in the complaint, but I always like to start the

23     initial conference by turning the floor over to the plaintiff

24     to provide a little bit of additional context and to

25     supplement anything that the parties would like to add.

5

1          So turning the floor over to you, Mr. Licul, is

2    there anything else that I should know about the case and

3    where you think this case may be headed, sir.

4          MR. LICUL:  Thank you, Your Honor.

5          I think all of our allegations are in the

6    complaint.  As Your Honor likely is aware, it's a case where

7    the former governor sexually harassed and was found in

8    numerous investigations to have sexually harassed our client,

9    Trooper 1, a member of the protective team for him.  His

10   conduct was similar with other women.  It's all laid out in

11   the complaint.  I don't need to belabor the point.

12         I think, Your Honor, at this point, the various

13   lawyers have had discussions about scheduling and other

14   matters.  And I believe Your Honor we, on the plaintiff's

15   side, would like to get moving with discovery so we can

16   complete this and eventually get to a trial.

17         THE COURT:  Okay.  So my understanding is that

18   there is some dispute about how many depositions the

19   defendants will need and what a discovery schedule should

20   look like given the complexity of the discovery and the

21   complexity of the case.

22         So who is best to speak on the question of how much

23   time is necessary for the defendants to complete the

24   discovery they're anticipating?

25         And I'm not sure who wants to address the issue of

6

1    the anticipated requests for more than ten depositions.

2              MS. GLAVIN:  Judge, this is --

3              MS. FOTI:  I'm sorry.  Can I interrupt a second.

4              This is Catherine Foti.  I'm sorry, Your Honor.

5              Just so you know that -- because I don't know if

6    you're aware of the fact I am colleagues with Elkan

7    Abramowitz, representing Ms. DeRosa as a party, and we just

8    filed a letter with the judge asking for a stay of discovery

9    as to our two clients.  So I just want to put that out there

10   and before I guess we go into the dates.

11             We're obviously participating in this case, but

12   subject to this request for a stay.

13             THE COURT:  Oh, I see.  This was filed just today,

14   is that correct?

15             MS. FOTI:  Yes.  It was filed this morning.  That's

16   right.

17             THE COURT:  All right.  We certainly will have to

18   take that into consideration and confer with Judge DeArcy

19   Hall's chambers as to which chambers will be handling it.

20             Normally all discovery related matters come to me.

21   But Judge DeArcy Hall does -- if it's a complete stay, she

22   does like to, generally speaking, take it up.  So we'll have

23   to take that up at another time.  So we may or may not be

24   able to set a "Full," quote/unquote, discovery schedule at

25   this time.

1           But I believe it was you, Ms. Glavin, that was

2     starting to speak on the question of scheduling and

3     depositions?

4           MS. GLAVIN:  Yes, Your Honor.  This is Rita Glavin.

5           On the issue of depositions, just reviewing the

6     complaint at first blush, we're anticipating at least ten

7     depositions.

8           I don't know how many at this point until we are

9     able to get all of the evidence that's underlying the

10    Attorney General's August 3rd report as well as the Assembly

11    Judiciary Committee report from November of 2021.

12          Mr. Licul referenced at the beginning about

13    multiple investigations having found that the governor

14    committed sexual harassment.

15          I think the public record is very clear from former

16    Governor Cuomo's perspective that those investigations can't

17    be relied upon and that the evidence underlying those

18    investigations, all of it, has never been made available.

19          And because the complaint relies so heavily in

20    dozens of paragraphs on findings and some of the evidence in

21    those investigations, it is paramount for us to get that

22    underlying evidence which we have been refused to date by

23    both the Attorney General's Office and the Assembly Judiciary

24    Committee.

25          So in terms of depositions, the complaint itself is

1    not limited to Trooper 1.  It basically adopts everything

2    from the Attorney General's report with respect to the 11

3    complainants.  And we've never had an opportunity to question

4    those complainants.  It was done only by the Attorney

5    General's Office.  And so because allegations are made about

6    all 11, to refute those allegations, you know, we would need

7    the ability to depose them.

8         And then in addition to that, you know, we are

9    aware of some evidence relating to other individuals that I

10   think would have material information about the complaints,

11   including, you know, with respect to Trooper 1, a number of

12   state troopers.

13        I think at this point in time it may be premature

14   to address what the exact number will be until we have time

15   to get documents from document subpoenas from entities that

16   will have the relevant information.

17        But I did want to tee it up for the court because I

18   had spoken with the plaintiff's counsel about this.  And of

19   course, you know, I fully expected they would disagree on

20   this point, but I think right now, you know, when we get to

21   the ten deposition point, to the extent we need more, we're

22   happy to submit papers to the Court on that.

23        THE COURT:  Okay.  Well, thank you for that.

24        Mr. Licul, do you actually anticipate a substantive

25   objection if they're relying on allegations that touch upon

9

1          that many complainants?

2                     MR. LICUL:  Yes, Your Honor.  Respectfully.

3                     I mean, this is a unique case and it's a unique

4          case for a lot of reasons, but mainly because all the parties

5          have come into this case with much more information and much

6          more sworn testimony than any other case I've ever been

7          involved with.

8                     The other women mentioned in the complaint were,

9          you know, were deposed under oath.  Everyone has their sworn

10         testimony and their underlying documents.  I don't think

11         given that, that there's a need to have, you know, have an

12         enumerable number of depositions in this case.  We already

13         know what they're going to say.

14                    I understand Ms. Glavin and the other defendants

15         want to cross-examine them and want to challenge them in

16         various ways, which the governor will have every opportunity

17         to do at a trial.  But to the extent what we're talking about

18         is discovery where we're trying to figure out what these

19         witnesses will say, we know that already.  We know that.  We

20         have that information.

21                    As far as the other state troopers that Ms. Glavin

22         mentioned, I don't know what to say about those folks because

23         I don't know exactly who they are and what their testimony

24         would be or what they're being offered for, so I cannot make

25         a reason -- sort of argument against it until I know what it

1    is.

2              But, Your Honor, I will only say that, you know, in

3    every case, you know, lawyers have to make decisions about

4    who to depose and who not to depose based upon information

5    that they have and I don't think this case is any different.

6              I will just say one thing.  Your Honor mentioned

7    that there's some dispute about the schedule, unless I

8    misheard, Your Honor.

9              I don't actually think there is putting aside the

10   request to stay discovery which is a different matter.  But

11   to the extent we proceed with discovery, it's my

12   understanding that the case management worksheet that was

13   submitted was agreed to by all the parties.

14             So I don't -- there's not a dispute about dates or

15   when discovery should close putting aside the stay issue.

16             MS. GLAVIN:  Your Honor, if I might --

17             THE COURT:  Thank you for that additional clarity.

18             I'm sorry, who is speaking?

19             MS. GLAVIN:  It's Rita Glavin.  If I just might be

20   briefly heard on the deposition issue, because I want to make

21   sure the record's clear on this.

22             The witnesses were not, quote/unquote, "Deposed."

23   A deposition involves both parties asking questions to get at

24   discovery.

25             What the Attorney General's investigation involved

1    is there were only 41 people for whom they took testimony

2    from.  There were 179 people that they interviewed, but only

3    41 that the Attorney General's Office chose to take testimony

4    from.

5            The testimony that they took was more akin, Your

6    Honor, to a prosecutor putting a witness in the grand jury,

7    such that the questions were not typical deposition

8    questions.

9            A number of the key witnesses had interviews before

10   they were put under oath, such that the questions that were

11   asked in the sworn testimony were targeted, you know, towards

12   eliciting specific pieces of evidence that were then included

13   in the report.

14           So I just wanted to make the record clear on that

15   such that this is not -- this is not a traditional, what you

16   would expect they then deposed in prior proceedings.  There

17   were no depositions.  This was simply eliciting testimony

18   from certain witnesses.

19           What we do know is that for a number of witnesses

20   who were deposed there was additional evidence that was

21   uncovered.  You know, it may have been after their

22   depositions that the Attorney General's Office, for reasons

23   of course, I, you know, attribute to some political

24   motivations, are outcome determinative. But for reasons that

25   they chose not to circle back with those witnesses that are

1    important.

2            The purpose of us seeking true depositions is an

3    opportunity not to cross-examine so much as to explore many

4    other materially relevant categories that the Attorney

5    General's Office chose not to pursue that certainly go to

6    core findings in those reports that we question.

7            One other thing I'd like to mention to the Court is

8    that plaintiff's counsel said that we got all the underlying

9    documents with respect to the depositions.  That's not the

10   case, Your Honor.

11           What the Attorney General's Office chose to release

12   was the exhibits they chose to use for a particular

13   witness'stestimony, again, akin to what is used in a grand

14   jury.  And a number of those documents are redacted.  And

15   there are also materially relevant documents that they did

16   not ask about.

17           So that's the reason we're at the point where we

18   would need to depose the 11 complainants for which there are

19   individual allegations made.

20           But, again, I think -- I mean, that's just the

21   starting point for us is those 11.  And then I think, you

22   know, to the extent we have more, I have shared some names

23   with plaintiff's counsel and the state troopers, but we're

24   still developing that as well.

25           In terms of what we know, and I think this is also

1    important, we only know what we've seen in the report.  The

2    redacted, you know, versions of transcripts that were

3    released and then some additional discovery that we received.

4    When I say we, I mean governor's counsel, that we received in

5    connection with a criminal case that was filed in Albany

6    County that of course was since dismissed.

7           But we were given, you know, some more of the

8    underlying evidence from the Attorney General's case, which

9    of course, you know, we presented to the DA's Office and

10   they've dismissed that case.

11          But there is, you know, there are thousands of

12   documents and dozens of interview memos out there that we

13   have not seen. So we don't have access to all the underlying

14   evidence.

15          We have access to what the Attorney General's

16   Office has chosen to release and not release, and we don't

17   have access to the underlying evidence from the Assembly

18   Judiciary Committee.

19          THE COURT:  Thank you for that additional context.

20          It does sound as though there may be a lot out

21   there that is perhaps discoverable, perhaps not discoverable,

22   depending on whatever privileges may attach. So I do

23   anticipate that there may be various issues that arise during

24   the course of the discovery here.

25          And I also take your point that the purpose of the

1      deposition -- not the deposition testimony -- but the purpose

2      of the sworn testimony may or may not be consistent and

3      commensurate with the needs of a civil case such as this.

4              So I'm certainly not going to prejudge the question

5      of how many depositions will be granted in the case without

6      more context as to the various witnesses at issue and the

7      need to explore the situation more fully.  I'm just trying to

8      get a sense of it so that we can be informed as we turn to

9      the case management worksheet.

10             So I take Mr. Licul's point that the dates in the

11     case management worksheet were agreed upon, and that's great.

12             But with ten or more depositions, I do wonder

13     whether or not fact discovery can really close by January

14     11th of next year.

15             I certainly hope that you're right that that's

16     possible, but given the various concerns raised in one of the

17     cover letters that (indiscernible) a trial schedule and the

18     number of witnesses that are being discussed, you know, I

19     certainly want to make sure that the parties, both sides,

20     have the time that they need to get the information that is

21     appropriate under the Rules of Civil Procedure and Civil

22     Discovery Rules, which obviously are quite different from

23     what the state is doing with regard to their investigation

24     and the Assembly Judiciary Committee was doing.

25             So the parties' case management worksheet indicates

1    that the parties held their 26(f) conference in late May and

2    that the parties have agreed upon June 13th for initial

3    disclosures and any HIPAA authorizations.

4                Mr. Licul, is plaintiff on track for those dates?

5                MR. LICUL:  We are, Your Honor.

6                THE COURT:  Mr. Steele, is State Police on track

7    for those dates?

8                MR. STEELE:  We are, Your Honor.

9                THE COURT:  Ms. Glavin, is former Governor Cuomo on

10   track for those dates?

11               MS. GLAVIN:  Yes, Your Honor.

12               THE COURT:  And I suppose, Ms. Foti, that Ms.

13   DeRosa and Mr. Azzopardi are a question mark as to whether

14   they're on track for those dates.

15               Is there anything you'd like to comment on there,

16   Mr. Foti or Mr. Abramowitz?

17               MS. FOTI:  It's Ms. Foti, Your Honor.

18               I certainly will gather the information we need.

19   And I would respectfully suggest that we produce it as soon

20   as we hear from the judge as to whether or not the stay will

21   be granted or not.

22               THE COURT:  Okay.  Please do gather it up.  It's

23   certainly important and it will come up at some point in the

24   case.

25               I note that the parties have indicated on the case

1    management worksheet that they have discussed procedures for

2    producing ESI.  Given the volume of the documents and

3    materials that have been described, it certainly sounds as

4    though there's going to be a lot.

5           Are there concerns here, specific concerns, about

6    (indiscernible) search terms or anything along those lines

7    that we need to explore now or put on the record?

8           Mr. Licul, starting with you.

9           MR. LICUL:  No, Your Honor.  I think actually a lot

10   of this information has already been exchanged.  And just to

11   be -- not exchanged, pardon me, but already been disclosed or

12   unearthed at some point during the investigation.

13          I understand Ms. Glavin's concerns that she had not

14   been given everything or that hasn't been shared, but just to

15   be clear about that point, we are not, based upon what we

16   know now, going to oppose any requests by the defendants to

17   seek information from the AG's Office or from the Assembly.

18          So I don't anticipate that we will be the objectors

19   on that with respect to documents generally or with respect

20   to ESI.

21          THE COURT:  Okay.  And just going down the list,

22   Mr. Steele, is there anything with regard to ESI or the

23   confidentiality order that we should take up at this

24   conference?

25          MR. STEELE:  No, Your Honor.  Not from the New York

17

1      Police perspective.

2              THE COURT:  Ms. Glavin?

3              MS. GLAVIN:  Not from our perspective at this

4      point, Your Honor.  Thank you.

5              THE COURT:  Ms. Foti?

6              MS. FOTI:  No, nothing, Your Honor.

7              THE COURT:  Okay.  Thank you.

8              Now moving on to the next group of dates, the

9      parties have proposed June 27th for exchange of the first

10     request for production of documents and interrogatories,

11     which is perfectly reasonable, with the goal of completing

12     phase one discovery by July 29th.

13             As the parties have gleaned from my case management

14     worksheet and accompanying scheduling order, (inaudible)

15     discovery to be the most sort of pertinent or top line items

16     that the parties believe are necessary to have an informed

17     view and possible disposition in the case.

18             Given the nature of the case, however, and the

19     anticipation that the case may be scheduled for trial, I'm

20     going to hold off on setting a date for a pre-settlement

21     conference and will look back at the end of the conference as

22     to when we should next schedule a check-in to just, you know,

23     ascertain the parties' progress with regards to discovery and

24     any issues that are coming up.

25             But we will hold off on setting the pre-settlement

1     conference for now.

2              I note that the parties have also proposed June

3     13th as the deadline to join new parties or amend the

4     pleadings.

5              Mr. Licul, are there any anticipated amendments?

6              MR. LICUL:  Not at this time, Your Honor.

7              THE COURT:  Mr. Steele?

8              MR. STEELE:  Not at this time, Your Honor.

9              THE COURT:  Ms. Glavin?

10             MR. LICUL:  Actually, Your Honor -- my apologies.

11             THE COURT:  I'm sorry.  Is that Mr. Licul?

12             MR. LICUL:  It is.  I'm sorry, Your Honor.

13             There is one thing which is that right now the

14    complaint does not include a Title 7 claim because we had not

15    yet exhausted the pre-suit administrative waiting period.

16             We have, in the last couple of weeks, actually

17    asked for a right-to-sue letter from the EEOC.  Once we

18    receive that, which we should get very soon, we will then

19    amend the complaint, but not as to any facts, but just to add

20    the Title 7 discrimination and retaliation claims as separate

21    causes of action.

22             But the actual underlying facts will be the same as

23    those that are the bases for the other claims.  So I

24    apologize for not making that one clear.

25             THE COURT:  Do you have a time line as to when

1    you're going to be hearing from the EEOC?

2         MR. LICUL:  I don't, Your Honor.  We requested the

3    right to sue letter the day after or a couple of days after.

4    I forget when 180 days expired.  And so we couldn't ask for

5    it before then.

6         The EEOC does not have, at least not that I'm aware

7    of, a specific period of time for it to issue that right to

8    sue.  And I've found, especially since the pandemic, that

9    it's been somewhat inconsistent.  Sometimes it's immediately.

10   Sometimes I have to ask several times, which we will do, but

11   -- so the short answer is I don't have a time line as to when

12   that will happen.  But as soon as it does, we will move to

13   amend or amend to add the Title 7 claims.

14        THE COURT:  All right.  Well, the deadline to amend

15   that -- we often set a deadline to amend as a right at this

16   conference.  Given that there is a clear, anticipated

17   amendment, I'm wondering if it makes sense to do that or

18   whether we should that coming as motion practice.

19        My goal of doing it as a deadline to amend as a

20   right is of course to eliminate unnecessary motion practice.

21        So I'll now turn back over to the defendants and

22   get their take on what they'd like to do in light of this new

23   information.

24        Mr. Steele, what are your thoughts on what makes

25   sense in terms of setting a deadline or further amendment at

1  the pleadings?

2  MR. STEELE:  I'd like to avoid motion practice,

3  Your Honor.  So if the amendment is going to be along the

4  line that Mr. Licul has, you know, stated, you know, if we

5  could push that back.  I've had the similar experience with

6  the EEOC over the past 18 months to two years for timing,

7  So, again, we wouldn't oppose a motion to amend

8  after those considerations.

9  But if we can avoid the motion practice entirely,

10  the New York State Police would be fine with that.

11  THE COURT:  Ms. Glavin?

12  MS. GLAVIN:  With respect to the -- with respect to

13  Governor Cuomo, as long as the motion -- any amendment to the

14  complaint is limited solely to the Title 7.

15  And one question I have for Mr. Licul is I had

16  understood that if you don't hear from the EEOC within a

17  certain number of months then you can just amend and add the

18  Title 7.

19  Am I wrong about that. Mr. Licul?

20  MR. LICUL:  You may be right, although it's

21  unclear.

22  The administrative exhaustion prerequisite doesn't

23  kick in until you actually have a right to sue and you have

24  -- and you can ask after 180 days for the right to sue.  I've

25  certainly had situations where it's unclear after you've

1    asked whether you can amend.  So that's the short answer.

2              But I think some of this may be ameliorated or moot

3    because the Title 7 claims would not be against any of the

4    individual defendants.

5              It would only be against the State Police, which is

6    the employer, because Title 7 does not have individual

7    liability.  So that may make things a little bit easier.

8              THE COURT:  If the amendment is as described, Mr.

9    Licul, correct?

10             MR. LICUL:  That's correct, Your Honor.  Yes.

11             THE COURT:  Okay.  So, Ms. Glavin, going back to

12   you, in light of that additional context, and Mr. Licul's

13   correct statement of the law as to the individual liability

14   issues under Title 7, what are your thoughts on setting the

15   deadline to amend the pleadings?

16             MS. GLAVIN:  I think that we can set a deadline to

17   amend the pleadings with respect to the individuals and then

18   it's left open with respect to the entity, the employer.

19             THE COURT:  Mr. Steele, what are your thoughts on

20   that?

21             MR. STEELE:  No issues with that, Your Honor.

22             THE COURT:  Okay.  And, Ms. Foti or Mr. Abramowitz,

23   please just let me know who's speaking.

24             MS. FOTI:  It's Cathy Foti.

25             We would agree with that proposal.

1          THE COURT:  Okay.  So let's go ahead and state that

2     the -- we'll put in the scheduling order that the deadline to

3     amend the pleadings as to individual claims against the

4     defendants is going to be June 13th.

5          And that the -- we will note the plaintiff

6     anticipates an amendment to include the Title 7 claims once

7     that exhaustion is completed with the EEOC.

8          From there the parties have indicated January 11th

9     as the goal for completing fact discovery with a joint status

10    report certifying the close of fact discovery five days

11    later, January 16th, 2023, and then an expert discovery

12    schedule, that is completely reasonable, on February 10th,

13    with the exchange of expert disclosures, expert depositions,

14    to be completed by March 13th, and the exchange of any

15    rebuttal expert disclosures by April 12th.

16         I note the parties did not build in any time for

17    rebuttal expert depositions.  I don't know if you expect to

18    do that, but you have the same dates for the exchange of

19    rebuttal expert disclosures and the close of expert

20    discovery.

21         So I just want to hear the parties' thoughts on

22    that, starting with you, Mr. Licul.

23         MR. LICUL:  Your Honor, at this point, we don't

24    anticipate having an expert, but that may change.  And

25    certainly I think it would make sense to have some -- if

1       there are experts, to have expert depositions.  So I think

2       that that makes perfect sense to me, Your Honor.

3               THE COURT:  You have -- you have the expert

4       deposition schedule anticipated for opening experts, it's the

5       rebuttal experts that there's no extra time built in.  So

6       whether or not you're needing rebuttal experts I think is an

7       open question it sounds like.

8               MR. LICUL:  Yes, Your Honor.

9               THE COURT:  Mr. Steele, any thoughts on that?

10              MR. STEELE:  No.  Just that, again, we don't

11      anticipate experts on our end.  But if there was, there might

12      be rebuttal discovery or rebuttal depositions.  But I don't

13      foresee that at this point.

14              THE COURT:  Okay.  Ms. Glavin, does former Governor

15      Cuomo anticipate any experts?

16              MS. GLAVIN:  Not at this time.  And I just want to

17      make sure that to the extent something changes we can revisit

18      this with the Court.

19              THE COURT:  So, you know, let me ask Ms. Foti if

20      Ms. DeRosa or Mr. Azzopardi anticipate any experts?

21              MS. FOTI:  Not at this time, Your Honor.

22              THE COURT:  All right.  So, you know, I don't like

23      to build an extra three months into the schedule if there

24      really isn't going to be expert practice.

25              So what I would propose is that the parties can

1    indicate in their joint status report certifying at the close

2    of fact discovery whether or not there is a need for extra

3    practice.

4            And that may become patent during the course of the

5    discovery that you determine you need psychological experts

6    to talk about whatever it is that people are going through

7    potentially connected with this case or other experts.  I

8    can't imagine what exactly experts those might entail, but

9    psych experts certainly come to mind in a case like this.

10           So if the parties are currently not anticipating

11   any expert discovery, we could just truncate the schedule

12   there and ask the parties to let me know in the joint status

13   report, filed on January 16th, as to whether or not an expert

14   discovery schedule is necessary.

15           Does that work for you, starting with you, Mr.

16   Licul?

17           MR. LICUL:  Yes, Your Honor.

18           THE COURT:  Mr. Steele?

19           MR. STEELE:  Yes, Your Honor.

20           THE COURT:  Ms. Glavin?

21           MS. GLAVIN:  Yes, Your Honor.

22           And also if we are able to circle back after we

23   finishing talking about the experts, to the date at which

24   fact discovery is to be completed by.

25           THE COURT:  Yeah.  We can revisit that.

1          Ms. Foti?

2          MS. FOTI:  Yes, Your Honor.

3          THE COURT:  On the question of experts, any

4    thoughts on whether or not we should build the schedule out

5    now or hold it until the close of fact discovery?

6          MS. FOTI:  I think it might make sense to hold it

7    until fact discovery.

8          My sense is that fact discovery, we might need an

9    extension of fact discovery once we -- as we anticipate, this

10   could be, you know, an aggressive schedule.  And given the

11   fact that we're asking for a stay, a lot of these dates might

12   -- might need to be changed.

13         THE COURT:  So I think we're already about to hear

14   a request for an extension of the fact discovery schedule.

15         Ms. Glavin, you asked to circle back.

16         MS. GLAVIN:  Yes.

17         And I don't -- I had discussed this with Mr. Licul

18   and I had felt that January 2023 was aggressive particularly

19   given my own trial schedule this fall.

20         And that's now been heightened because I have

21   learned that the trial that I'll be doing later this year --

22   in discussions with the other lawyers in the case, I think

23   it's going to take much longer than I originally anticipated

24   it was going to take, which will seriously limit my time and

25   bandwidth.

1          Because once it starts, I'm not going to be able to

2     participate meaningfully and doing depositions since I'm

3     going to be in trial every day.  And I'm also in the throes

4     of trial prep right now.   So I just -- it seems aggressive

5     for me.

6          And then you add on top of that that I expect there

7     will be a number of issues that are coming to Your Honor's

8     attention with respect to getting access to the underlying

9     evidence in the AG's report as well as the Assembly.  I think

10    there will be privilege issues.  And, you know, I don't

11    expect that litigation to be simple.

12         So I do think that January, 2023 is aggressive

13    particularly if I don't, you know, finish my trial well into

14    the latter part of this year.

15         THE COURT:  So what do you propose?

16         MS. GLAVIN:  Well, I'd be curious as to if -- Your

17    Honor I have not appeared before you and to get a sense from

18    you about how you would like to do this.

19         Ideally what I would like to do is send a status

20    report to the Court because I almost feel as though, you

21    know, unless we take a date that's far out into next year

22    we're going to be running in, because of the complexity of

23    this case and the issues involved, to bumps in the road along

24    the way.

25         And it may be better for us to give a status report

27

1        to the Court at the end of the summer.  Once we start getting

2        our subpoenas out for documents and the interrogatories and

3        have a sense of the state of play, particularly with asking

4        for depositions.  I don't -- you know, I'm somewhat concerned

5        about that as well.

6                    THE COURT:  So I share your concerns that January

7        11th is a date that is potentially too short to be realistic.

8                    I am ultimately a realist when it comes to these

9        matters, although I try to strike a careful balance in every

10       case based on the need for that particular case and the facts

11       and circumstances of the discovery needs and the allegations

12       to keep a case on a reasonable schedule so that the case is

13       resolved in a reasonably timely and efficient manner, while

14       also being realistic about the parties' expectations and

15       other commitments and inevitable delays that result from

16       complicating factors such as trial schedules, privilege

17       litigation and various other matters that may come up in the

18       case.

19                   So, you know, I am always trying to, you know,

20       ensure that cases stay simmering.  They might not be boiling

21       at all times because you can only have so many cases boiling,

22       but I don't want cases pushed to the back burner.  And so my

23       goal is always to set a discovery schedule that strikes that

24       balance.

25                   And, you know, at times we will need the case to be

1    on the front burner on full boil and that is of course

2    required from time to time, but it's not realistic to expect

3    that counsel can do that full-steam ahead from now until

4    January given everything that's been described.

5         So, Mr. Licul, what makes sense to you?  I

6    certainly understand your client's interest in moving this

7    case forward in an expeditious way, but we also have to be

8    realistic in terms of the parties, the players and the

9    complexity of the issues.

10        What do you think we should do now?  Shall we stick

11   with the current schedule and just have a status update by

12   the end of summer and that could perhaps shed additional

13   light on the discovery schedule from there, or should we set

14   farther dates today?

15        MR. LICUL:  Your Honor, I would suggest that we

16   stick with the schedule and then see where we are at a status

17   update.

18        And I would also -- and I've spoken to Ms. Glavin

19   about this. I think a lot of the subpoenas and whatnot can

20   actually begin to happen especially with respect to the

21   Assembly and the AG's Office.

22        I agree that there will probably be issues, but

23   there's no reason we can't -- that the defendants can't begin

24   to ask for that.

25        And then we'll know better at the end of the summer

1    where we are on that.  Maybe those issues will be resolved.

2    Maybe they won't.  And we can then decide how to move the

3    current date.  That's my suggestion.

4              THE COURT:  Mr. Steele, what are you thoughts on

5    that?

6              MR. STEELE:  I have no preference, Your Honor.  I'm

7    all right with either approach.  Again, okay with keeping it

8    the same or with -- I think it might be difficult to pick a

9    date now and we end up picking at date that might not be

10   reasonable or workable either too far out or too close

11   depending on how initial discovery goes.

12             THE COURT:  Ms. Glavin?

13             MS. GLAVIN:  Yeah.  I'm of the view that we should

14   come back to the Court towards the end of the summer before I

15   begin my trial.

16             And, look, I'm in agreement with Mr. Licul that I

17   think we will start getting subpoenas out now so that issues

18   start getting teed up.

19             THE COURT:  Certainly.  There's no reason to delay

20   putting out the initial feelers and subpoenas and trying to

21   start to line things up.  And that way we'll have a much

22   better understanding in a couple of months I expect as to

23   where things are going to be going realistically.

24             Ms. Foti, thoughts on this question of how to best

25   calibrate the schedule given the anticipated challenges here?

1        MS. FOTI:  So, Your Honor, I guess I'm somewhat at

2   odds with others just because I think it's difficult for us

3   to determine the timing if, you know, if there's going to be

4   a significant amount of subpoenas and we get requests going

5   out while we're trying to get a stay.

6        But I guess I anticipate that we will hear about

7   our stay before the end of the summer, maybe right away, and

8   so maybe that is, you know, I think -- I guess I will fall on

9   the side of saying that, you know, giving you a status update

10  by the end of the summer is -- I guess makes sense to us as

11  well.

12       THE COURT:  Okay.  It makes sense to me as well.  I

13  think that there are a lot of moving parts and it's going to

14  be hard to just sort of guess at dates.  I think Mr. Steel's

15  correct, that we could pick dates that are too short or too

16  long and it will be better to have more information.

17       So I will go ahead and order the schedule that we

18  went over, largely adopting the parties' proposed schedule

19  with the exception of the discovery schedule for experts.

20  I'll not adopt that at this time, but instead direct the

21  parties to at the close of fact discovery advise whether or

22  not an expert discovery schedule is needed and propose a

23  schedule for experts at that time.

24       If that is the case, the placeholder date for now

25  for when the parties would be expected to initiate

1      dispositive motion practice would be a month following the

2      close of fact discovery.  That would fall on -- let's see,

3      January 16th, would fall on or about February 16th.

4              But as I -- as everyone on the phone anticipates,

5      there will likely be some movement in the schedule given the

6      complexities that have already been identified in the case.

7              So, with that, we will produce the schedule to a

8      minute entry and order that we will put on the docket that

9      will serve as your formal scheduling order for the case.

10     Should any extensions of time be needed under the scheduling

11     order, you do need leave of court.

12             Like all the other judges I think in our court, I

13     require the parties to make any application for an extension

14     of time by written motion.  In the motion you must indicate

15     whether or not the request is on consent, how much time you

16     anticipate, and the good cause for justification for the

17     requested extension.

18             In addition to that schedule I do want to choose

19     another date for another status conference or status report

20     to the Court so we can revisit the schedule and also get a

21     sense of where things stand with regard to discovery.

22             Given the complexity of this case, I'm not sure

23     that a status report will be beneficial or whether we should

24     have a conference.

25             What are your thoughts on the format?  Mr. Licul,

1    looking for an update from you guys say by the (inaudible)

2    status report or a conference?

3              MR. LICUL:  I'm sorry, Your Honor.  I didn't -- you

4    broke up a little bit over there at the end.  Are you asking

5    me if I would prefer a conference or a letter update?

6              THE COURT:  Yes.

7              MR. LICUL:  I think a conference might do us all

8    some good, so I would prefer a conference, a telephone

9    conference, if that's appropriate.

10              THE COURT:  Mr. Steele?

11              MR. STEELE:  I agree, Your Honor.  A conference

12    would be more helpful most likely.

13              THE COURT:  Ms. Glavin?

14              MS. GLAVIN:  Agreed.

15              THE COURT:  Ms. Foti, assuming that you're

16    participating?

17              MS. FOTI:  Yes.  I agree that it would be -- a

18    conference would be better.  Thank you, Your Honor.

19              THE COURT:  Okay.  All right.

20              Well, given -- when does your trial start, Ms.

21    Glavin?

22              MS. GLAVIN:  It's unclear right now.  We have a

23    conference soon.  The judge had mentioned late August into

24    September, but we are in front of the judge in two weeks

25    about the trial date.  So it will be late this summer or the

1      fall.

2               THE COURT:  Okay.  So what we should do I think is

3      set our conference for mid August and hopefully that won't

4      collide with your trial.

5               Ms. Devanathan, is there a date that we can offer

6      the week of August 14th?

7               THE DEFENDANT:  Yes, Judge.  One second here.

8      How's August 15th at 10 a.m.?

9               THE COURT:  That work for you, Mr. Licul?

10              MR. LICUL:  Yes, Your Honor.

11              THE COURT:  Mr. Steele?

12              MR. STEELE:  That works for me, Your Honor.

13              THE COURT:  Ms. Glavin?

14              MS. GLAVIN:  Yes, Your Honor.

15              THE COURT:  Ms. Foti or Mr. Abramowitz?

16              MR. ABRAMOWITZ:  Yes, it works for me.

17              Ms. Foti?

18              MS. FOTI:  Yes.  Yes, it works for me as well.

19      Thank you.

20              THE COURT:  Okay.  So at the next status conference

21      I'd like to have an update as to parties' progress with

22      regard to discovery and, you know, any anticipated amendments

23      that we may need to make to the discovery schedule.

24              And I also hope by that time you'll have some

25      clarity as to what's going on with regard to Ms. DeRosa and

1      Mr. Azzopardi. So I think we have a schedule that will work.

2              Another matter that I wanted to take up -- before I

3      move on, does anybody have a question or concern, anything

4      additional they want to discuss with regards to the schedule?

5      Just state your name and who you represent if you want to

6      speak on that.

7          (No response)

8              THE COURT:  Okay.  Excellent.  So no requests to be

9      heard with regard to the scheduling matters.

10             One other issue that is pending that I wanted to

11     address, the motion to continue anonymously under pseudonym

12     by triple one.  That motion is pending and it was docketed on

13     February 17th by Mr. Licul.

14             There have been a couple of filings most notably by

15     -- there was one done by Mr. Shechtman, I believe, relatively

16     quickly after it was filed in addition to another response

17     filed shortly thereafter.

18             I want to just gauge whether or not it is correct

19     that all of the defendants do not oppose the motion at this

20     time with leave to renew their objection should the

21     circumstances change depending on the state of the case.

22             Is that correct, Mr. Steele, as to the New York

23     State Police?

24             MR. STEELE:  Yes, Your Honor.

25             THE COURT:  Ms. Glavin?

1          MS. GLAVIN:  That's correct, Your Honor.  Again,

2     reserving the right to re-raise this issue.

3          THE COURT:  And stay notwithstanding, this is a

4     pending motion we need to address, I don't know if Mr.

5     Abramowitz or Ms. Foti is prepared to let me know Ms.

6     DeRosa's or Mr. Azzopardi's position with regard to this

7     motion?

8          MR. ABRAMOWITZ:  I think we --

9          MS. FOTI:  So, Your Honor -- go ahead.  Go ahead.

10          MR. ABRAMOWITZ:  Go ahead, Ms. Foti.

11          MS. FOTI:  I was going to say I think it would --

12     if you wouldn't mind letting us get back to you.  We hadn't

13     discussed with our clients about it since we just entered a

14     case more recently than that was filed.  I would like just an

15     opportunity to consult with them and just confirm that they

16     agree still.

17          THE COURT:  Okay.  When could you let us know your

18     clients' position?  How quickly?

19          MS. FOTI:  Tomorrow.

20          THE COURT:  That would be great.

21          So as currently formulated, there was a non-

22     objection filed -- I'm just looking for where it is on the

23     docket, I think it was back in April, April 18th, by Ms.

24     Glavin basically indicating that it does not oppose the

25     motion at this time, but that Governor Cuomo's seeking to

1    revisit the issue should that be necessary as the case

2    proceeds.

3              I understand you are later to the case which is one

4    of the reasons that I wanted to raise it today so that we

5    could find out your client's position with regards to this

6    issue before any ruling is issued on the motion.

7              So if you could let us know your client's position

8    by tomorrow, that would be great, because we are, you know,

9    prepared to rule on the motion shortly once we know

10   everybody's view.

11             So if you could let us know that by tomorrow, June

12   -- tomorrow's June -- I'm on the 2023 calendar, that is not

13   helpful.  All right, June 7th is tomorrow.  Like why is --

14   why June 7th is a Wednesday.  All right.  So we'll look for

15   your response by close of business tomorrow.

16             Does that work for you, Ms. Foti?

17             MS. FOTI:  Yes, it does, Your Honor.

18             THE COURT:  Thank you very much.

19             All right.  So with that is there anything further

20   that the parties wanted to place on the record today or bring

21   up, starting with you, Mr. Licul?

22             MR. LICUL:  No, Your Honor.  Thank you.

23             THE COURT:  Mr. Steele?

24             MR. STEELE:  No, Your Honor.  Thank you.

25             THE COURT:  Ms. Glavin?

1          MS. GLAVIN:  No, Your Honor.

2          THE COURT:  Mr. Abramowitz or Ms. Foti?

3          MR. ABRAMOWITZ:  No, Your Honor.

4          MS. FOTI:  None from -- no, Your Honor.  Thank you.

5          THE COURT:  All right.  Very good.

6          Well, thank you all for your time today and for

7    your motions on the various documents that have been filed in

8    anticipation of today to help me get up to speed on the

9    discovery issues, the discovery schedule, and the pending

10   motion for -- to proceed anonymously.

11         So we'll look for Ms. Foti or Mr. Abramowitz's

12   filing by tomorrow and should have an issue -- we should have

13   issued a ruling on that motion at some point later this week.

14         With that, we are adjourned, and we look forward to

15   learning more about the case on August 15th at our next

16   status conference.

17         One thing I want to note before we depart is if

18   there are any discovery disputes that arise during the course

19   of the case, please do consult my individual rules.

20         I have a specific procedure by which I ask the

21   parties to put their discovery disputes into a joint letter

22   and we generally speaking try to get our discovery disputes

23   on the calendar quickly so that we can try to resolve matters

24   before they subsume too much litigation.

25         We were finding the filing of a motion to compel

1    and response just very time consuming and weeks would have

2    elapsed before discovery matters are resolved.

3              And it's much better in my view that discovery

4    matters resole as quickly as possible so that the discovery

5    can keep on going.

6              So please do consult my individual rules should you

7    find yourself compelled to write a motion to compel.

8              All right.  With that, I have nothing else.  And I

9    hope you all have a great day.  Take care, everybody.  Stay

10   safe.

11             ALL COUNSEL:  Thank you, Your Honor.

12        (Proceedings adjourned at 12:20 p.m.)

13        I, CHRISTINE FIORE, court-approved transcriber and

14   certified electronic reporter and transcriber, certify that

15   the foregoing is a correct transcript from the official

16   electronic sound recording of the proceedings in the above-

17   entitled matter.

18

19   *Christine Fiore*

20   _____          August 30, 2022

21     Christine Fiore, CERT

22        Transcriber

23

24

25