```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK


TROOPER 1,                      *    Case No. 22-CV-00893(LDH)
                                *
          Plaintiff,            *    Brooklyn, New York
                                *    August 2, 2022
     v.                         *
                                *
NEW YORK STATE POLICE, et al.,  *
                                *
          Defendants.           *
                                *
* * * * * * * * * * * * * * * * *

       TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
             BEFORE THE HONORABLE TARYN A. MERKL
                UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:              JOHN S. CRAIN, ESQ.
                                VALDI LICUL, ESQ.
                                Wigdor, LLP
                                85 Fifth Avenue
                                New York, NY  10003

For Defendant,                  JOSHUA STEELE, ESQ.
 New York State Police:         Harris Beach, PLLC
                                99 Garnsey Road
                                Pittsford, NY  14534

For Defendant, Former           RITA M. GLAVIN, ESQ.
 Governor Andrew Cuomo:         MICHAELENE WRIGHT, ESQ.
                                Glavin, PLLC
                                156 W. 56th Street, Ste 2004
                                New York, NY  10019


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.
```

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, Connecticut 06484 (203)929-9992**

APPEARANCES (Cont'd)

| | |
|---|---|
| For Defendant, Former Governor, Andrew Cuomo: | THERESA TRZASKOMA, ESQ.<br>Sher Tremonte, LLP<br>90 Broad Street<br>New York, NY  10004 |
| For Defendants, Melissa DeRosa and Richard Azzopardi: | ELKAN ABRAMOWITZ, ESQ.<br>RACHEL FLEIG-GOLDSTEIN, ESQ.<br>Morvillo, Abramowitz, Grand, Iason & Boherer, P.C.<br>565 Fifth Avenue<br>New York, NY  10017 |

1           (Proceedings commenced at 2:03 p.m.)
2                 THE CLERK:  This is civil cause for a status
3     conference, docket 22-CV-893, Trooper 1 versus New York State
4     Police, et al.
5                 Before asking the parties to state their
6     appearance, I would like to note the following:
7                 Persons granted remote access to proceedings are
8     reminded of the general prohibition against photographing,
9     recording and re-broadcasting of court proceedings.
10    Violation of these prohibitions may result in sanctions,
11    including removal of court-issued media credentials,
12    restricted entry to future hearings, denial of entry to
13    future hearings, or any other sanctions deemed necessary by
14    the Court.
15                Will the parties please state their appearances for
16    the record, starting with the plaintiff.
17                MR. LICUL:  Valdi Licul, Wigdor, LLP, for the
18    plaintiff, Trooper 1.
19                MR. CRAIN:  John Crain from Wigdor, LLP, also for
20    Trooper 1.
21                MS. TRZASKOMA:  Good afternoon.  Theresa Trzaskoma
22    from Sher Tremonte on behalf of former Governor Cuomo.
23                MS. GLAVIN:  And Rita Glavin is also here as well
24    for Governor Cuomo.
25                THE COURT:  And for the State Police?

4

1    MR. STEELE:  Joshua Steele, from Harris Beach, for
2    the State Police.
3                 THE COURT:  Thank you.
4                 And for Ms. DeRosa and Mr. Azzopardi?
5                 MR. ABRAMOWITZ:  Elkan Abramowitz and Rachel Fleig-
6    Goldstein for the Defendants DeRosa and Azzopardi.  Good
7    afternoon.
8                 THE COURT:  Good afternoon to all of you.  And
9    thank you for hopping on the conference on reasonably short
10   notice.
11                We were last together for the initial conference on
12   June 6th when we set a schedule for discovery.  And at that
13   time, I noted that on that very day Mr. Azzopardi and Ms.
14   DeRosa had filed a pre-motion conference letter to -- seeking
15   to stay discovery pending resolution of a motion to dismiss.
16                At that juncture, that motion had not yet been
17   referred to me so I did not take it up.  I thought it would
18   probably be handled in connection with the motion to dismiss
19   scheculing being handled by Judge DeArcy Hall.
20                We've since been advised by Judge DeArcy Hall's
21   chambers that she'd prefer that we address it because it
22   pertains to discovery, so that is the reason we scheduled the
23   conference.  And because it's non-dispositive, she didn't do
24   a formal referral order, but that is her preference that we
25   take it up.

5

1           So we're here today to understand where things are
2  with regard to the discovery process thus far and whether or
3  not you've been able to work anything out with regard to
4  partial production or any type of a stay, or I'll hear you on
5  the merits if there has been no decision made or no
6  resolution reached to work out some accommodation.
7           So since it is your motion, Mr. Abramowitz, would
8  you like to start?
9           MR. ABRAMOWITZ:  Yes.  Thank you, Your Honor.
10          Yes.  Your Honor is correct that on June 6th we did
11 request a motion conference for a stay as to the defendants
12 as a party and DeRosa, largely because we believe the motion
13 to dismiss, which has already been submitted, not filed yet,
14 submitted to the Court will be dispositive.  It is a
15 meritorious motion.  It is not a routine motion.
16          The allegations against both Ms. DeRosa and Mr.
17 Azzopardi in connection with the overall allegations are
18 thin, at best, in our view.
19          In any event, the motion will be fully submitted by
20 August 30th.
21          In the interim, rather than having Ms. DeRosa and
22 Mr. Azzopardi go to the expense of searching and making
23 forensic searches of their electronic equipment, we have
24 offered the plaintiff to give them all the materials that
25 both Ms. DeRosa and Mr. Azzopardi have submitted to the

1  Attorney General and to the Assembly in connection with the
2  investigation of this very matter.
3            We certainly think that that would be a good
4  compromise to take us to the August 30th deadline for the
5  submission of the whole motion where we believe we have
6  raised meritorious claims for dismissal.
7            THE COURT:  All right.  And, Mr. Licul, are you
8  taking the lead today?  Is that correct?
9            MR. LICUL:  I am.  Thank you, Your Honor.
10           THE COURT:  Would you like to respond?
11           MR. LICUL:  I would.
12           And before I respond substantively to Mr.
13  Abramowitz, I'd just like to give you an update on where we
14  are in the discovery process.  I think that was one of your
15  questions.
16           The parties exchanged, the parties, meaning the
17  State Police, our client, and former Governor Cuomo, have
18  exchanged initial disclosures and discovery requests.  And in
19  the next couple of weeks, we will be responding to each
20  others' requests.  So that's where we are in the discovery
21  process.
22           And I think, in accordance with Your Honor's
23  original order, that's sort of what we -- what you termed
24  phase one discovery will be complete as to all of the parties
25  except for Ms. DeRosa and Mr. Azzopardi.  So the only sort of

1   outliers here will be the two of them.
2          With respect to the merits, I don't know, Your
3   Honor, how deeply you want me to go into the merits, but we
4   do not believe that this motion has any merit.
5          Under the state and city laws, individuals are
6   liable if they participate.  If they don't take sufficient
7   remedial action, they can be primarily liable.  They can be
8   liable as aiders and abettors for assisting or making the
9   harassment happen.
10         That's the allegation against Ms. DeRosa.  Her
11  claim that she did not know is a factual issue that at best
12  can be decided on summary judgment, certainly not on a motion
13  to dismiss.
14         As far as the retaliation, under those laws, the
15  retaliation standard is broad.  It prohibits retaliating
16  against anyone for engaging in protected activity.
17         Here, Trooper 1 engaged in numerous instances of
18  protected activity.  She participated in an Attorney General
19  investigation, gave testimony complaining about harassment.
20         She sent -- she hired a lawyer and sent a demand
21  letter.  That is also protected activity.  And she also filed
22  suit, which is quintessential protected activity.  And for
23  that, she was then retaliated against by being accused of a
24  crime, by being accused of being an extortionist.
25         And the standard under these laws is whether it

1  would make a reasonable person or dissuade a reasonable
2  person for complaining.  And certainly that is at best a
3  factual matter as to whether or not a reasonable person would
4  be dissuaded from complaining and asserting her rights after
5  being called an extortionist and being threatened with
6  criminal prosecution.
7          As to the non-substantive issues, we don't think
8  that a stay makes any sense.  Certainly there's no stay --
9  there's no automatic stay and it's a pretty high bar.  And in
10 this case it makes even less sense.
11         Putting aside the merits of the motion, even if the
12 motion is granted, which we advocate should not happen, but
13 even if it is, Ms. DeRosa and Mr. Azzopardi will be non-party
14 witnesses.  They will be subpoenaed to give testimony.  They
15 will be subpoenaed to give information.
16         In other words, the stay will not achieve anything.
17 It will just gum up the process.
18         As far as the undue burden, the only burden that
19 they've pointed to is some type of expensive forensic
20 examination.
21         But the cases are pretty clear that if you want to
22 argue that, you have to put some meat on those bones and
23 explain what that -- what that would entail.  I mean, it
24 could entail something simply just looking through someone's
25 phone or emails.

1            And if it is a forensic, an outside forensic
2    review, then as in the cases that we cited in our brief there
3    has to be some specific information.  You know, how much will
4    it cost?  How long will it take?  What is the burden?  Just
5    routine review of emails or text messages is not a burden.
6            And, again, so for those reasons, and to the extent
7    I missed any of the reasons in our letter, we think that the
8    -- we respectfully request that the motion for a stay be
9    denied.
10            THE COURT:  Well --
11            MR. ABRAMOWITZ:  Your Honor, may I be heard for a
12   moment?
13            THE COURT:  Yes.  I just have one follow-up --
14            MR. ABRAMOWITZ:  I don't --
15            THE COURT:  Hold on.  I just have a quick follow-up
16   question to Mr. Licul.
17            So are you requesting a forensic review of those
18   phones, yes or no?
19            MR. LICUL:  We have not requested it, no.  We're
20   just asking for responsive documents, responsive information,
21   whether in paper or electronic format.  We've not
22   specifically requested a forensic review.
23            THE COURT:  Okay.  Now back to you, Mr. Abramowitz.
24            MR. ABRAMOWITZ:  Your Honor, I don't think this is
25   the place for us to be arguing the motion to dismiss.

1           But needless to say, we set forth in our original
2   letter on June 6th all the reasons why plaintiff's claims for
3   retaliation would not apply to Ms. DeRosa and Mr. Azzopardi
4   since they were no longer employees of the government at the
5   time of the alleged conduct.
6           But as I said, I don't think this is the place to
7   have this argument.  It will be submitted by August 30th as I
8   indicated.
9           I believe that the plaintiff will get sufficient
10  information, an enormous amount of material, that had been
11  produced to the Assembly and to the Attorney General as per
12  our offer pending the motion's decision.
13          I think that it's not fair to make us go through
14  the burden of having to go through our files for discovery at
15  this stage if the motion is going to be decided reasonably
16  quickly.
17          So I reiterate the request that the stay of
18  discovery beyond our offer of compromise be employed.
19          THE COURT:  Well, wouldn't you agree though with
20  Mr. Licul, Mr. Abramowitz, that Ms. DeRosa's knowledge as to
21  whether or not the harassment's going on is a question of
22  fact?
23          MR. ABRAMOWITZ:  It may be a question of fact if --
24  but in the context of this question of her knowledge it may
25  be irrelevant.  So that's why I'm urging you to please wait,

1  abide the submission and the arguing of the motion to
2  dismiss.  If she's not an employee of the government at the
3  time, it may be totally irrelevant.
4           THE COURT:  I hear you with regard to the
5  retaliation claim.  That's not my question.
6           My claim's to the harassment allegation.  Isn't it
7  true that whether or not she knew it was going on is a
8  question of fact?
9           MR. ABRAMOWITZ:  Well, that would be a question of
10 fact, Your Honor.
11          THE COURT:  Yes.  That's my concern.
12          And my concern also is that the motion,
13 unfortunately due to, you know, various factors that all the
14 judges here are contending with, could take quite a while to
15 decide. So I think what we should do is proceed in a sort of
16 cautious fashion.
17          I'm not going to formally stay discovery based on
18 the fact that I do think there are questions of fact inherent
19 in the questions that are outlined in the papers.
20          My reaction to the issue of whether or not Ms.
21 DeRosa had knowledge of harassment was very much to question
22 whether that was an issue of fact that would properly be
23 resolved on a motion to dismiss.  Perhaps it will be.
24          So what I'm proposing is that we start some
25 discovery, but we don't get to forensic reviews, depositions,

12

1  expert practice, the very intensive and time consuming and
2  costly things that a party should not have to incur if they
3  are not going to remain a party.
4        But I am uncomfortable staying discovery completely
5  for an indefinite period of time given the very significant
6  possibility that at least one of plaintiff's claims may make
7  it through with -- I shouldn't say one of the claims, one of
8  the group of claims.
9        If the harassment claim makes it through under
10 Title 7, it will likely also make it through under state law
11 and city claims, if there is a city claim, and you have to
12 double check the complaint.
13       So in that event, I don't think an indefinite stay
14 is necessarily warranted given the scope of the motion that's
15 anticipated.
16       But I do think we should work out a compromise
17 along the lines of what Mr. Abramowitz is suggesting.
18       And so what I would prefer to do is have Mr.
19 Abramowitz's clients produce the information that was
20 prepared for the Assembly and for the Attorney General's
21 investigation, and, you know, we can sort of stage things.
22       What would you propose, Mr. Abramowitz, if we start
23 in a staged manner?
24       MR. ABRAMOWITZ:  Well, I'd propose that we furnish
25 the material that we've alluded to and then have further

13

1  discussions with plaintiff's counsel as to what more he would
2  need and how we would go about getting it to him.
3              We want to cooperate with him without incurring the
4  expense of doing unnecessary discovery if we're not going to
5  be a party.
6              THE COURT:  Right.
7              MR. ABRAMOWITZ:  So that I think that if we have
8  these discussions, we can always try to come back to Your
9  Honor if we're running into an impasse.  But I think we
10 intend to be reasonable.
11             There was a lot of material that was produced and I
12 think it may be sufficient for the plaintiff for the time
13 being.  And if not, and if we run into obstacles, we can
14 always ask to come back to you.
15             THE COURT:  Mr. Licul, what do you think about that
16 proposal?
17             MR. LICUL:  I think that -- well, I will stick to
18 my original position.
19             But in terms of a compromise, to the extent there
20 needs to be a compromise, I would say that the only thing
21 that should be stayed -- and that would be temporarily
22 because we don't know how long the motion is going to take --
23 and then that of any forensic review.
24             But certainly it doesn't seem burdensome for either
25 of those two defendants to respond to our interrogatories, to

14

1   respond to our document requests and that very well may be
2   just turning over to us the things that they turned over to
3   the AG's Office.  But it may be a little bit broader.  But it
4   doesn't seem that that's unduly burdensome.  And it would be
5   the same thing that we would ask for in a proper subpoena.
6           I don't think we should necessarily put off their
7   depositions.  They would be deposed as non-parties in this
8   case also.
9           So to the extent the one specific thing that they
10  have argued would be burdensome in a forensic review, then
11  perhaps (indiscernible) we should put off.
12          THE COURT:  Mr. Abramowitz?
13          MR. ABRAMOWITZ:  Interrogatories would be time
14  consuming, Your Honor, and expensive.
15          I urge Your Honor to let us try to compromise.  And
16  whatever we've given to the Assembly and to the Attorney
17  General, and let's see where we are, whether the plaintiff
18  will be satisfied with that during the pendency of the
19  motion.
20          I think everything else is going to incur expense
21  for the clients that may not be necessary.
22          THE COURT:  So, Mr. Licul, you say it's not
23  burdensome to respond to interrogatories and document
24  requests, but I'm familiar with the standard of work of Mr.
25  Abramowitz's firm and I assure you it's going to be a

1   tremendous amount of work for them to formally respond to
2   those in a formal manner.
3          I think that starting with this first production
4   may well answer 99 percent of what you're looking for in
5   terms of document requests and information.
6          And then I think you should meet and confer and
7   discuss what else is out there before we order a response on
8   interrogatories and document requests.
9          Because even if the case is substantially narrowed,
10  that could change the burden that the plaintiff and
11  defendants have to provide, you know, the information and the
12  scope of what would be, you know, responsive.
13         So I am going to "formally," quote/unquote, "deny
14  the request for an indefinite stay."
15         And in lieu of a formal adherence to the discovery
16  schedule by these two defendants, I'm going to request that
17  the parties meet and confer and try to work out an
18  accommodation to, you know, reasonably provide the
19  information that the plaintiff's looking for without the
20  plaintiff's need to engage in a forensic review, unless they
21  choose to, at which point, you obviously can do whatever you
22  want, but if you're not going to direct that at this juncture
23  -- and I'm not going to require the plaintiffs formally
24  respond to your document requests and interrogatories until
25  you've had an opportunity to see their prior productions.

16

1    MR. LICUL:  Your Honor, may I just be heard just
2    for two seconds on this?
3    THE COURT:  Yes.
4    MR. LICUL:  I understand the Court has made its
5    ruling.
6    I too am very familiar with Mr. Abramowitz's firm
7    and I know the excellent work that they do but, again, I will
8    just say this, if we were starting discovery now, I would --
9    and they were not a party, I would serve a subpoena on them
10   with the exact same requests.  And so I don't see how --
11   THE COURT:  And they would respond by giving you
12   the Attorney General's production and the Assembly production
13   and that's what they're prepared to give you.
14   What I think they don't want to do,  and Mr.
15   Abramowitz can correct me if I'm wrong, is reorganize all of
16   the discovery so that it is responsive to your specific
17   numerical requests because that will take a ton of work and
18   probably take dozens and dozens of hours and those are the
19   expenses that I suspect the clients are reluctant to incur
20   unnecessarily.
21   And guess what?  If they don't have to, I don't
22   think they should have to.
23   I mean, Rule 1 of the Federal Rules of Civil
24   Procedure encourages me to resolve disputes economically and
25   efficiently for the parties and that's what I'm looking to do

1    here.  I would like you to review the production before you
2    conclude it's insufficient.
3              MR. LICUL:  Okay.
4              MR. ABRAMOWITZ:  Thank you, Your Honor.
5              It's a shame the clients are not here to hear these
6    very nice thing said about my firm.
7              THE COURT:  I don't recommend ordering the
8    transcript.
9              MS. GLAVIN:  And I was going to say, Elkan, Mr.
10   Abramowitz, I'm prepared to say nice things about your firm
11   too and you.
12             MR. ABRAMOWITZ:  Okay.  There you go.
13             THE COURT:  All right.  So is there anything else I
14   should take up on this issue?  And then I'll just check in
15   with all the parties.
16             Mr. Licul, anything else on this issue?
17             MR. LICUL:  No, Your Honor.  Thank you.
18             THE COURT:  Mr. Abramowitz?
19             MR. ABRAMOWITZ:  No, Your Honor.  Thank you.
20             THE COURT:  Thank you.
21             And I'm not ignoring you, Mr. Steele.  Is there
22   anything you'd like to raise or put on the record with regard
23   to how discovery is going from the New York State Police's
24   perspective?
25             MR. STEELE:  Not at this time, Your Honor.  Thank

1      you.
2              THE COURT:  And, Ms. Trzaskoma, anything for the
3      Governor?
4              MS. TRZASKOMA:  Yes, just briefly, we do, and it
5      relates to the motion to stay, the forthcoming motion to
6      stay.
7              We did serve a Rule 45 subpoena on the New York
8      Attorney General's Office earlier last month.  The time for
9      responding has passed.  We did get an objection from the
10     Attorney General's Office arguing that the subpoena is
11     premature.  And the basis for that position is the potential,
12     you know, is the stay motion and the pending motions to
13     dismiss.
14             So we have a meet and confer with their office
15     about the subpoena on Friday.
16             But given that they have indicated their belief
17     that there is something about Mr. Azzopardi's and Ms.
18     DeRosa's stay motion that affects their need to comply in a
19     timely way with the subpoena we served, we would just want to
20     clarify with Your Honor that consistent with the Court's
21     prior orders, and consistent with what Your Honor has
22     expressed today about discovery going forward, particularly
23     on the harassment claims, which are not the subject of any
24     motion, that discovery should proceed pace and that there's
25     no basis given the forthcoming motion or the pending motions

19

1   to sort of slow down or not proceed expeditiously with that
2   discovery.
3           THE COURT:  But we will be entering a minute entry
4   and order on the docket formally denying the -- I guess will
5   be granting the motion for a pre-motion conference and then
6   denying the request for a stay and we will articulate some
7   detail in the minute entry and order.
8           And you're -- obviously it's a public filing,
9   you're obviously free to share that with the Attorney
10  General's Office and say that this stay motion was not
11  granted.
12          The Court has directed the parties to begin the
13  discovery process, albeit in a slightly limited way with
14  regard to those two defendants only.
15          And, you know, to the extent that that advances
16  your concerns in that forum, you're free obviously to share
17  the minute entry and order that will be posted today.
18          MS. TRZASKOMA:  Thank you very much.  I appreciate
19  that.
20          THE COURT:  All right.  Is there anything else from
21  anyone?  Just shout out who you represent.  And if there's
22  anything else to add to the record, feel free.
23      (No response)
24          THE COURT:  All right.  Well, thank you, all, for
25  your time.  Again, thank you for hopping on the conference on

1 short notice.

2 And as Mr. Abramowitz suggested, should the parties
3 be unable to resolve kind of next steps in the negotiation on
4 proceeding with discovery, you should feel free to file
5 another joint letter and we'll get you on the calendar.

6 But I really hope that you're able to review that
7 production and meet and confer to resolve any disputes and
8 only come to the Court once you've done so.

9 Is that understood, everybody?

10 ALL COUNSEL: Yes, Your Honor.

11 THE COURT: Thank you. Thank you, all. Have a
12 great day. And I hope you all stay safe.

13 ALL COUNSEL: Thank you, Your Honor.

14 THE COURT: Take care.

15 (Proceedings adjourned at 2:28 p.m.)

16 I, CHRISTINE FIORE, court-approved transcriber and
17 certified electronic reporter and transcriber, certify that
18 the foregoing is a correct transcript from the official
19 electronic sound recording of the proceedings in the above-
20 entitled matter.

21

22 *Christine Fiore*

23 _____          August 26, 2022

24 Christine Fiore, CERT

25     Transcriber