**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

TROOPER 1,

Plaintiff,

v.

NEW YORK STATE POLICE, ANDREW
CUOMO, MELISSA DEROSA, and
RICHARD AZZOPARDI,

Defendants.

22-cv-00893 (LDH) (TAM)

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Date of Service: July 15, 2022

Rita M. Glavin
GLAVIN PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

Theresa Trzaskoma
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ......................................................................................... 1

THE AMENDED COMPLAINT ..................................................................................... 3

STANDARD OF REVIEW ............................................................................................. 11

ARGUMENT ................................................................................................................. 12

    I.    The Tweets Were Reasonable Defensive Measures, Not Retaliation.............................. 13

    II.   Governor Cuomo Was Not Trooper 1's Employer or Supervisor. .................................. 18

    III.  There Is No Connection Between Trooper 1's Alleged Protected Activity and The February 10, 2022 Tweet. ......................................................................................... 21

    IV.  Trooper 1's NYCHRL Claim Fails as a Matter of Law............................................ 23

CONCLUSION............................................................................................................... 24

**TABLE OF AUTHORITIES**

**Cases**

*Adams v. City of New York*, 837 F. Supp. 2d 108 (E.D.N.Y. 2011) ............................................. 13

*Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215 (E.D.N.Y. 2018) ............................................... 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................................... 11

*Bickerstaff v. Vassar Coll.*, 354 F. Supp. 2d 276 (S.D.N.Y. 2004) ............................................ 17

*Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ............................... 14, 17

*Chin v. CH2M Hill Companies, Ltd.*, No. 12-cv-4010 (HB), 2012 WL 4473293 (S.D.N.Y. Sept. 28, 2012) ............................................................................................................................. 18

*Eckhart v. Fox News Network, LLC*, No. 20-cv-5593, 2021 WL 4124616 (S.D.N.Y. Sep. 9, 2021) ...................................................................................................................................... 16, 20

*Empire Merchants, LLC v. Reliable Churchill LLP*, 902 F.3d 132 2018) .................................... 12

*Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009) ......................................................................... 22

*Feliciano v. City of New York*, No.  (S.D.N.Y. July 15, 2015) .................................................... 13

*Felmine v. Star*, No. 13-cv-2641, 2016 WL 4005763 (E.D.N.Y. July 25, 2016) ........................ 17

*Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295 (2004) ...................................................... 12

*Fraser v. MTA Long Island Rail Rd.*, 307 F. Supp. 3d 105 (E.D.N.Y. 2018) ............................. 21

*Front, Inc. v. Khalil*, 24 N.Y.3d 713 (2015) ............................................................................... 16

*Ganske v. Mensch*, 480 F. Supp.  (S.D.N.Y. Aug. 20, 2020) ...................................................... 6

*Gaughan v. Rubenstein*, 261 F. Supp. 3d 390 (S.D.N.Y. 2017) ................................................. 15

*Gittens v. Winthrop Hospitalist Assocs., P.C.*, No. 19-cv-5070 (LDH) (LB), 2022 WL 504490 (E.D.N.Y. Feb. 18, 2022) ........................................................................................................ 21

*Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 2010) .......................................................... 22

*HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86 (S.D.N.Y. 2020) ...................................................... 16

*Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285 (2010) .............................................................. 23, 24

*Hollander v. American Cyanamid Co.*, 895 F.2d 80 (2d Cir. 1990) ........................................... 22

*Hughes v. Twenty-First Century Fox, Inc.,* 304 F. Supp. 3d 429 (S.D.N.Y. 2018) .......... 14, 16, 17

*King v. Block Inst., Inc.*, No. 17-cv-7318, 2020 WL 2523245 (E.D.N.Y. May 18, 2020) 13, 22, 23

*L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419 (2d Cir. 2011) ............................................. 11

*Lax v. City Univ. of New York*, No. 16-cv799 (LDH) (VMS), 2020 WL 6161253 (E.D.N.Y. Oct. 21, 2020) ........................................................................................................................ 16

*Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349 (S.D.N.Y. 2012) ...................... 18

*Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302 (S.D.N.Y. 2015) ............................... 16

*Martinez v. N.Y.C. Dep't of Educ.*, No. 04-cv-2728, 2008 WL 2220638 (S.D.N.Y. May 27, 2008) ................................................................................................................................. 17

*McHenry v. Fox News Network LLC*, 510 F. Supp. 3d 51 (S.D.N.Y. 2020) .............................. 12

*Melman v. Montefiore Med. Cent.*, 946 N.Y.S.2d 27 (1st Dep't 2012) ...................................... 16

*Nieblas-Love v. N.Y.C. Housing Auth.*, 165 F. Supp. 3d 51 (S.D.N.Y. 2016) ........................... 12

*Pedroza v. Ralph Lauren Corp.*, No. 19-cv-8639, 2020 WL 4273988 (S.D.N.Y. July 24, 2020) 24

*Richardson v. Comm. on Human Rights & Opportunities*, 532 F.3d 114 (2d Cir. 2008) ............ 15

*Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379 (S.D.N.Y. 2019) ........................ 18,

*Schmitt v. Artforum Int'l Mag., Inc.*, 178 A.D.3d 578 (1st Dep't 2019) ................................ 20, 21

*See Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ............................................. 6

*Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556 (2d Cir. 2011) ........................ 17

*U.S. v. N.Y.C. Trans. Auth.*, 97 F.3d 672 (2d Cir. 1996) ...................................................... 15, 17

*Vangas v. Montefiore Medical Ctr.*, 823 F.3d 174 (2d Cir. 2016) ............................................. 23

*Villetti v. Guidepoint Glob. LLC*, No. 21-2059-CV, 2022 WL 2525662 (2d Cir. July 7, 2022) .. 12

*Ware v. L-3 Vertex Aerospace, LLC*, 833 F. App'x 357 (2d Cir. 2020) ..................................... 24

*Williams v. N.Y.C. Housing Authority*, 872 N.Y.S.2d 27 (1st Dep't 2009) ............................... 23

**Statutes**

New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. .................... 12, 13, 18

New York State Human Rights Law, N.Y. Exec. L. § 290 et seq. ................................. 12, 13, 18

Defendant former Governor Andrew M. Cuomo ("Governor Cuomo") by and through his undersigned counsel respectfully requests that this Court grant his motion to dismiss the Fourth and Sixth causes of action (the "Retaliation Claims") of the Amended Complaint.[1]

## PRELIMINARY STATEMENT

Until Lindsey Boylan made a series of tweets in December 2020 shortly after she announced her campaign for Manhattan Borough President, no one had ever advanced a charge of sexual harassment against Governor Cuomo—despite his having been in the public eye for decades, and having withstood two FBI background checks, two Senate confirmations, and bruising political campaigns for state-wide elected office. Governor Cuomo's political opponents and those eyeing the Governorship and 2022 Democratic primary, including New York Attorney General Letitia James, seized the opportunity to mortally wound the popular Governor who was running for a fourth term.

Ultimately, on August 3, 2021, the Attorney General issued a deeply flawed and one-sided report (the "Attorney General's Report" or the "Report") that accused Governor Cuomo of sexually harassing a number of women, including Trooper 1. Though styled as an "independent" report, it was nothing of the sort. It was a political hit job, in numerous instances accepting as true even highly suspect allegations without fully investigating them and ignoring material evidence that directly undermined the allegations and credibility of complainants. Even worse, despite repeated requests, the Attorney General refused back then—*and to this day*—to make all the evidence underlying the Report available to Governor Cuomo for scrutiny.  Since August 2021,

---

[1]  We incorporate by reference the legal arguments made in the other individual Defendants' Motion to Dismiss to the extent those arguments apply to the Retaliation Claims against Governor Cuomo.

Governor Cuomo has repeatedly criticized the shoddy investigative process and the resultant grossly inaccurate and biased Report.

Relying heavily and almost exclusively on that flawed Report, Trooper 1 brings discrimination and retaliation claims against Governor Cuomo. Through the corrupt and jaundiced lens of the Report, Trooper 1 bolsters her own claims by larding up the Amended Complaint with allegations relating to other women mentioned in the Report. Trooper 1 takes even ordinary interactions with Governor Cuomo—such as a friendly New Year's greeting—and weaves them into a tale of sexual harassment. Though not the subject of this motion, Trooper 1's sexual harassment claims do not hold water and will be disproven.

By way of example, Trooper 1 parrots in her Amended Complaint the Report's conclusion that Governor Cuomo personally altered the eligibility requirements for serving on the Protective Services Unit ("PSU"), and that he did so in order to be "close to her" and engage in sexually harassing conduct toward her. Am. Compl. ¶ 3.  But Trooper 1 offers no support for her allegation that the Governor even knew about any supposed PSU eligibility requirements or played a role in changing them, much less that he personally changed the criteria for an improper purpose.  Trooper 1's allegations ignore a far more plausible explanation: that the New York State Police ("NYSP") promoted her to the PSU because she was suited for the role and also to increase the diversity of this high-profile group of troopers, which was and remains a bastion of white men.

As for Trooper 1's Retaliation Claims, in broad strokes she alleges that certain statements Governor Cuomo made related to the Report and to this lawsuit were intended to chill her. Specifically, Trooper 1 points to two statements, both made many months after Governor Cuomo had resigned, to claim the Governor retaliated against her. But these allegations—which reflect nothing more than statements of self-defense in the face of an unfair and politically motivated

2

investigative process—are: (1) insufficient to provide the requisite employment context; (2) do not give rise to an inference that the specific statements were adverse actions intended to dissuade protected activity; and (3) fail to create any plausible inference that Trooper 1's conduct caused the statements. Governor Cuomo did not retaliate against Trooper 1 and her allegations do not state a claim as a matter of law.

Consequently, for the reasons described below, Trooper 1's Retaliation Claims should be dismissed.

## THE AMENDED COMPLAINT[2]

Trooper 1 joined the NYSP in March 2015. Am. Compl. ¶ 20. She alleges that in November 2017, while she was assigned to help secure one of Governor Cuomo's press conferences, she and the Governor engaged in "no more than a few minutes of small talk." *Id.* ¶ 21. Trooper 1 claims that after this event, "the Governor requested that she be transferred to the PSU," *id.* ¶ 22, but also separately alleges that another PSU officer discussed "drafting" her into the PSU. *Id.* ¶ 26. Trooper 1 was transferred to the PSU in January 2018. *Id.* ¶ 29.  She alleges that she was "ineligible for the position" because the PSU had a three-year experience requirement and she "had only two." *Id.* ¶ 26. Trooper 1 does not explain the source of the eligibility criteria but claims the requirements were "changed specifically to accommodate her," *id.* ¶ 27, and alleges that Governor Cuomo arranged for the change "so that Trooper 1 could be close to him" and so that he could then sexually harass her.  *Id.* ¶ 3. By her own allegations, however, at the time of her promotion, she was just two months shy of her three-year NYSP anniversary. *Cf. id.* ¶ 20.

---

[2]  We accept the allegations in the Amended Complaint as true solely for the purposes of this Motion and only to the extent that the allegations are not inconsistent with or contrary to the documents referenced in or integral to the Amended Complaint.

Trooper 1 was thereafter assigned to Governor Cuomo's Mount Kisco residence in Westchester. *Id.* ¶ 32. Although Trooper 1's theory is that Governor Cuomo personally arranged for her to be assigned to the PSU, she alleges no improper communications occurred in the first eight months of her promotion. Instead, according to Trooper 1, the first alleged impropriety occurred in September 2018, when she informed Governor Cuomo "that she would be attending her sister's wedding in Albany" and "the Governor offered to give her a tour of the official Governor's Mansion," *id.* ¶ 34, which Trooper 1 took "to mean that the Governor wanted to show her his private quarters at the Mansion." *Id.* ¶ 35.

Trooper 1 then alleges "increasingly sexual" comments from Governor Cuomo. *Id.* ¶ 36. Specifically, Trooper 1 alleges that *over the next three years*, Governor Cuomo touched her back in an elevator, *id.* ¶ 39; greeted her with a kiss on the cheek, *id.* ¶ 45; asked why she did not wear a dress, *id.* ¶ 48; invited her "upstairs" in the Governor's mansion, *id.* ¶ 51; brushed against her stomach as he passed through a door she held open for him at a public event, *id.* ¶ 53; asked for a hug, *id.* ¶ 71; commented "[l]ook at you with your glasses looking like ohwee," *id.* ¶ 72; and "sought [her] out . . . at an event at the new Moynihan Train Hall to wish her a Happy New Year," *id.* ¶ 73.

Trooper 1 says she feared "getting kicked off the detail" if she rebuffed Governor Cuomo. *Id.* ¶ 144. However, nothing in the Amended Complaint suggests that Governor Cuomo had the power to fire Trooper 1, that he supervised her or controlled her schedule, that he played any role in determining her salary, or that he maintained employment records related to Trooper 1. Rather, Trooper 1 acknowledges that she was employed at all times by the NYSP, *id.* ¶¶ 11, 20, and that her supervisors were the NYSP, not Governor Cuomo, *id.* ¶¶ 23, 28, 33, 48. Indeed, Trooper 1 acknowledges that she received several promotions—first a transfer to the Governor's travel team,

4

*id.* ¶ 40, then to a position as Investigator, "in recognition of her excellent work on the PSU," *id.* ¶ 60—*after* she did, in fact, rebuff him and he walked away "seemingly disgusted by her response." *Id.* ¶¶ 59-61.

By her own allegations, Trooper 1 acknowledges that her perspective of Governor Cuomo's conduct and motivations was heavily influenced by undermining, gendered comments from colleagues. When she learned she would be promoted to the PSU, for example, a colleague suggested impropriety, asking "What did you say to him??????" *Id.* ¶ 25. Another colleague implied that the eligibility requirements had been changed "Just for you." *Id.* ¶ 28. And when Governor Cuomo wished Trooper 1 a happy new year at the public event at Moynihan Train Hall, she alleges that fellow troopers "noted that Trooper 1's presence put the Governor in a good mood, and that he often sought out attractive women when he was under stress." *Id.* ¶ 74.

To sustain her own allegations of sexual harassment against Governor Cuomo, Trooper 1 devotes 68 paragraphs of her Amended Complaint to summarizing and quoting portions of the Attorney General's Report regarding other women. *Id.* ¶¶ 75–143, 146–49. Though not detailed in the Amended Complaint, that Report was the result of a March 1, 2021 referral by the Governor's Counsel, pursuant to Executive Law Section §63(8), to Attorney General Letitia James to select an independent law firm to conduct a review into allegations of and circumstances surrounding sexual harassment claims made against Governor Cuomo. A week later, on March 8, 2021, the Attorney General appointed attorneys Joon Kim and Anne Clark as investigators and Special Deputies in the Attorney General's Office. Although described as "independent," the announcement acknowledged that Clark, a partner at Vladeck, Raskin & Clark, P.C. "focuses on

employment law issues on behalf of employees at the trial and appellate levels."[3] On August 3, 2021, the investigators released a 165-page Report in the name of the Attorney General's Office, which Attorney General Letitia James announced in a nationally televised press conference. Governor Cuomo denied the Report's allegations of sexual harassment and criticized the Attorney General and her investigators for conducting a biased and flawed investigation that led to an unreliable report full of material omissions and errors.

Governor Cuomo resigned on August 10, 2021, effective August 24, 2021.[4] That same day, he directly addressed Trooper 1 in a public statement and apologized to her, denying recollection of the alleged interactions, but nonetheless expressing regret that Trooper 1 perceived his conduct to be embarrassing and disrespectful.[5] Since his resignation, Governor Cuomo has continued to publicly criticize the deeply flawed Report, the shoddy and biased investigation, and the Attorney General's conduct following the Report's release.[6]

---

[3] N.Y. ATTORNEY GENERAL, *Attorney General James Makes Appointments to Lead Investigation Into Sexual Harassment Allegations Against Governor Cuomo* (March 8, 2021), https://ag.ny.gov/press-release/2021/attorney-general-james-makes-appointments-lead-investigation-sexual-harassment.

[4] *Read The Full Transcript Of Gov. Andrew Cuomo's Resignation Speech*, N.Y. TIMES (Aug. 10, 2021), https://www.nytimes.com/2021/08/10/nyregion/cuomo-resignation-speech-transcript.html [hereinafter "Resignation Speech"].

On a motion to dismiss, the Court may consider any statements or documents incorporated by reference in the complaint, documents that are "integral" to the complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002). Even where the plaintiff chooses not to attach them to the complaint, such documents may be considered in their entirety to "provide the necessary or proper context for understanding [a Defendant's] statements." *Ganske v. Mensch*, 480 F. Supp. 3d 542, 545 (S.D.N.Y. Aug. 20, 2020); *accord United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021), cert. denied, No. 21-1314, 2022 WL 1295727 (U.S. May 2, 2022). In addition, the Court may properly take judicial notice of Twitter posts and other webpages because such posts "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *See Satan Wears Suspenders, Inc. v. Jaar*, No. 21 CIV. 812 (ER), 2022 WL 2181449, at *3 (S.D.N.Y. June 16, 2022) (citing *Distributorsoutlet.com, LLC v. Glasstree*, 2016 WL 3248310, at *2 (E.D.N.Y. June 10, 2016)) (taking notice of archived webpages).

[5] Resignation Speech, *supra* note 4.

[6] *See, e.g.*, @AndrewCuomo, TWITTER (Feb. 2, 2022, 9:23 a.m.); @RichAzzopardi TWITTER (Jan. 30, 2022, 9:27 a.m.), https://twitter.com/RichAzzopardi/status/1487794502517628933; @AndrewCuomo, TWITTER (Jan. 25, 2022, 12:59 p.m.), https://twitter.com/andrewcuomo/status/1486036056269012993.

In addition to claims of harassment, Trooper 1 also claims to have "been the victim of retaliation," Am. Compl. ¶ 151, after she "engaged in protected activity" by, she alleges, testifying in connection with the Attorney General's investigation on May 19, 2021, *id.* ¶ 152, sending a litigation demand letter to Governor Cuomo on September 27, 2021, *id.* ¶ 153, and filing this lawsuit, *id.* ¶ 159. With respect to Governor Cuomo, Trooper 1 describes two categories of statements she claims were retaliatory against her.

First, Trooper 1 alleges that on February 10, 2022—six months after Governor Cuomo resigned—he "announced he [would] be filing ethics charges against the attorneys who investigated him . . . and further warned that 'the list of attorneys' targeted by the Governor's ethics allegations 'may expand.'" *Id.* ¶ 155; *see also infra* at p. 8. The Governor also stated that he would make submissions to district attorneys who had criminally investigated the allegations against him regarding evidence of "perjury" and "witness tampering" in connection with the Attorney General's investigation. Am. Compl. ¶ 156. The February 10, 2022 tweet did not, however, explicitly or implicitly mention Trooper 1 or her attorneys. Although Trooper 1 acknowledges that the prosecutors did not bring criminal charges against the Governor, *id.* ¶ 157, she claims the Governor's statements regarding the Attorney General's investigation were intended to dissuade her from filing a civil claim, *id.* ¶ 158.

Governor Cuomo's full statement specifically referenced in the Amended Complaint is as follows:



@Andrew Cuomo, TWITTER (Feb. 10, 2022, 3:54 p.m.),
https://twitter.com/andrewcuomo/status/1491878207003496449 [hereinafter "Cuomo tweet"].
https://twitter.com/andrewcuomo/status/1491878207003496449

The full statement is not included in the Amended Complaint. Notably, this tweet announces

complaints regarding "prosecutorial misconduct" in reference to the Attorney General's

investigation and Report. The full context of the tweet reveals that its focus was the Attorney General's investigation and Report and does not mention or allude to Trooper 1.

Second, Trooper 1 points to a February 17, 2022 statement by Governor Cuomo's spokesperson Richard Azzopardi on the day she filed this civil lawsuit against the Governor. Am. Compl. ¶ 159. Trooper 1 claims that the tweet "attack[ed]" her and her lawyers and "accus[ed] them of an attempt to 'extort' a settlement and 'cheap cash extortions.'" *Id.* ¶ 159. Again, Trooper 1 claims this statement "was intended to retaliate" against her and "dissuade her from continuing to pursue her legal claims." *Id.*

Mr. Azzopardi tweeted two statements on February 17, several hours apart. Though referenced in the Amended Complaint, neither was included in full. The statements made on February 17 were as follows:





@RichAzzopardi, TWITTER (Feb. 17, 2022, 1:03 p.m.), https://twitter.com/RichAzzopardi/status/1494371847672061954.

@RichAzzopardi, Twitter, (Feb. 17, 2022, 7:39 p.m.), https://twitter.com/richazzopardi/status/1494471518033743876 [hereinafter "Azzopardi tweet"].

Like the February 10 statement, both February 17 tweets were likewise directed at the Attorney General and her investigators.

As discussed below, none of these statements plausibly supports an inference that Governor Cuomo ever retaliated against Trooper 1, much less that he did so in the capacity of her employer or supervisor, as required under both NYSHRL and NYCHRL. Instead, the content and context of the statements make clear that Governor Cuomo, by then a private citizen, was simply defending himself from an unfair, politically motivated investigation and Report and from a lawsuit he believes is unmeritorious. He is entitled under the law to do so, and such statements do not constitute retaliation.

## STANDARD OF REVIEW

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The plausibility of a claim also depends on "the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Thus, the factual allegations pled "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Empire Merchants, LLC v. Reliable*

*Churchill LLP*, 902 F.3d 132, 139 (2d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678). Where a Plaintiff has failed to "nudge[] [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## ARGUMENT

Trooper 1 asserts the Retaliation Claims under the New York State Human Rights Law, N.Y. Exec. L. § 290 *et seq*. ("NYSHRL"), and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq*. ("NYCHRL"), based on Governor Cuomo's February 10, 2022 tweet and Mr. Azzopardi's February 17, 2022 tweet. Because neither of these statements comes close to establishing prima facie retaliation under these laws, Trooper 1's Retaliation Claims fail.

To establish a presumption of retaliation at the pleading stage under the NYSHRL, Trooper 1 must establish: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *See Villetti v. Guidepoint Glob. LLC*, No. 21-2059-CV, 2022 WL 2525662, at *4 (2d Cir. July 7, 2022); *Nieblas-Love v. N.Y.C. Housing Auth.*, 165 F. Supp. 3d 51, 69–70 (S.D.N.Y. 2016) (citations omitted) (explaining the elements of retaliation claims under the NYSHRL and NYCHRL); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 312–13 (2004) (same).

While the NYCHRL does not require an adverse employment action, Trooper 1 still must allege facts supporting an inference "that something happened that was reasonably likely to deter a person from engaging in protected activity." *McHenry v. Fox News Network LLC*, 510 F. Supp. 3d 51, 67 (S.D.N.Y. 2020). "Simply stating that the NYCHRL encompasses a broader standard does not absolve [plaintiff] from putting forth evidence tending to show a causal connection between [her protected act] . . . and the alleged retaliatory actions." *Feliciano v. City of New York*,

No. 14-cv-6751, 2015 WL 4393163, at *9 (S.D.N.Y. July 15, 2015) (quoting *EEOC v. Bloomberg, L.P.*, 967 F. Supp. 2d 816, 862 (S.D.N.Y.2013)); *see King v. Block Inst., Inc.*, No. 17-cv-7318, 2020 WL 2523245, at *8 (E.D.N.Y. May 18, 2020) (plaintiff must allege that retaliation was the "motivating factor" for defendants' decisions). Indeed, "[t]he broad remedial purpose of the NYCHRL does not change the requirement for causal connection between the protected activity and the adverse employment action." *Adams v. City of New York*, 837 F. Supp. 2d 108, 128 (E.D.N.Y. 2011).

Trooper 1's retaliation claims fail. *First*, with regard to her claim for retaliation under the NYSHRL, Trooper 1 plainly does not meet the required elements for a plausible claim because she does not—and cannot—allege that she suffered any adverse employment action or conduct reasonably likely to deter a person from engage in protected activity. To the contrary, Trooper 1 acknowledges that she remains employed by the NYSP and that she has been promoted multiple times. Count Four must be dismissed on this basis alone.

*Second*, Trooper 1's Retaliation Claims under both the NYSHRL and the NYCHRL fail for several common reasons, including that: (i) the statements at issue were not retaliatory in nature but were instead permissible and reasonable statements made in self-defense; (ii) Governor Cuomo was never Trooper 1's employer or supervisor, and thus cannot be directly liable under either NYSHRL or NYCHRL, nor did he have any ongoing employment-type relationship with Trooper 1 at the time of the February 2022 tweets; and (iii) there is no causal connection between the February 10, 2022 tweet and Trooper 1's alleged protected activity.

## I.    THE TWEETS WERE REASONABLE DEFENSIVE MEASURES, NOT RETALIATION.

In evaluating Trooper 1's claims of retaliation, it is critical to look at the language and context of the statements at issue because the significance of any purported act of retaliation

depends on the particular circumstances. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006). Here, the content and circumstances of both statements make clear that Governor Cuomo was defending himself, not retaliating. "There is an important difference between defending oneself, on the one hand, and threatening, intimidating, or otherwise interfering with someone's right to pursue a discrimination claim on the other." *Hughes v. Twenty-First Century Fox, Inc.,* 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018) (citing *Dixon v. Int'l Bhd. Of Police Officers*, 504 F.3d 73, 84 (1st Cir. 2007)).

*First*, with respect to Governor Cuomo's February 10, 2022 tweet, it is not a fair inference that the statement was intended to or did constitute retaliation against Trooper 1 for engaging in protected activity. As reflected in the headline of the tweet, the statement is directed at the Attorney General and her investigators, announcing complaints regarding "prosecutorial misconduct." *See* Cuomo tweet, *supra* p. 9. The tweet does not mention—either explicitly or implicitly—Trooper 1 or her attorneys, and there is no basis to view it as being directed at her in any way. *See Hughes*, 304 F. Supp. 3d at 449 (dismissing retaliation claim where statement "peddled to the National Enquirer" did not mention plaintiff by name).

Instead, the tweet, which does not exist in a vacuum, is clearly directed at the Attorney General and her investigative team. It is a continuation of many months of criticism about troubling flaws in the investigative process. Many of these failings and inaccuracies were detailed in a lengthy October 20, 2021 publicly released application to the Attorney General by Governor Cuomo to correct the many flaws in the investigation and Report, including concerns about the credibility of certain witnesses and evidence that the investigative team either failed to obtain or

14

ignored.[7] Although that application discusses Trooper 1's allegations, nothing in the section about her can be viewed as anything other than an effort by the Governor to defend himself, including by pointing out inconsistencies between the evidence and the Report's conclusions. *See id.* at 102–13. Thus, it is not at all reasonable to infer that the February 10 tweet, which continued to criticize the Attorney General's investigators and their process, was somehow an effort to retaliate against Trooper 1 for providing testimony in connection with that investigation. This is particularly so given that Governor Cuomo's criticism of the investigative process was narrowly directed at certain witnesses and specific information,[8] and that he never—either on February 10 or otherwise—targeted Trooper 1.[9]

***Second***, the February 17, 2022 tweet by Azzopardi responding to Trooper 1's original complaint also cannot be viewed as anything other than a reasonable defensive measure. Such a statement, made on behalf of a defendant to a public lawsuit, simply does not constitute unlawful retaliation. *See Richardson v. Comm. on Human Rights & Opportunities*, 532 F.3d 114, 123–24 (2d Cir. 2008); *U.S. v. N.Y.C. Trans. Auth.*, 97 F.3d 672, 677 (2d Cir. 1996); *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390, 420 n.4 (S.D.N.Y. 2017) (observing that statements made in defense are rarely considered retaliatory); *Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302,

---

[7] *See* GLAVIN PLLC, FORMER GOVERNOR ANDREW M. CUOMO'S APPLICATION TO AMEND, CORRECT, AND SUPPLEMENT THE AUGUST 3, 2021 "REPORT OF INVESTIGATION INTO ALLEGATIONS OF SEXUAL HARASSMENT BY GOVERNOR ANDREW M. CUOMO (Oct. 20, 2021), https://www.andrewcuomo.com/sites/default/files/files/documents/2021.10.20SubmissiontoAG.pdf.

[8] The February 10, 2022 tweet came after a number of local prosecutors publicly announced that they would not pursue criminal charges against Governor Cuomo, including a decision by the Albany County District Attorney, after "a thorough and independent review of the investigation into the allegations," to discontinue a criminal prosecution related to Brittany Commisso's claims. *See* ALBANY COUNTY DISTRICT ATTORNEY, *Statement from DA David Soares* (Jan. 4, 2022), https://www.albanycountyda.com/media/news/22-01-04/Statement_from_DA_David_Soares.aspx; *see also* Grace Ashford, Last Sex-Crime Inquiry Into Andrew Cuomo Is Dropped, N.Y. TIMES (Jan. 31, 2022), https://www.nytimes.com/2022/01/31/nyregion/andrew-cuomo-charges.html (noting that other criminal investigations were terminated).

[9] Indeed, this Court can and should take judicial notice of the fact that Governor Cuomo publicly apologized to Trooper 1. *See* Resignation Speech, *supra* note 4.

312 (S.D.N.Y. 2015) (applying the same principles in the NYCHRL context); *cf. Eckhart v. Fox News Network, LLC*, No. 20-cv-5593, 2021 WL 4124616, at *22 (S.D.N.Y. Sep. 9, 2021) ("[plaintiff] has not plausibly pled that this press release was retaliatory"); *Lax v. City Univ. of New York*, No. 16-cv799 (LDH) (VMS), 2020 WL 6161253, at *9 (E.D.N.Y. Oct. 21, 2020), *aff'd*, No. 20-3906-CV, 2022 WL 103315 (2d Cir. Jan. 11, 2022) (concluding that "[c]riticism for lodging a complaint" is not retaliation). Governor Cuomo must be allowed to defend himself, including through public statements. *See Hughes*, 304 F. Supp. 3d at 449 (even a *preemptive* statement to the press is a reasonable defensive measure); *see also Front, Inc. v. Khalil*, 24 N.Y.3d 713, 718-20 (2015) (concluding that statements made prior to the commencement of anticipated litigation are privileged).

If Governor Cuomo views this lawsuit—brought against him by an individual who did not suffer any adverse economic consequence but who instead remains fully employed by the NYSP and has in fact been promoted several times, and whose own allegations do not stand on their own but must be bolstered by allegations relating to other complainants who she never knew and never worked with—as a cynical effort to extract a financial settlement, he must be allowed to say so, including "to blunt the inflammatory force of [a plaintiff's] allegations." *Hughes,* 304 F. Supp. 3d at 449. Indeed, the law is clear that party is "entitled to defend itself against [a plaintiff's] charges, even if the [plaintiff] finds it searingly painful to hear himself criticized." *Melman v. Montefiore Med. Cent.*, 946 N.Y.S.2d 27, 42 (1st Dep't 2012). To hold otherwise would improperly muzzle defendants in discrimination cases in violation of the First Amendment and New York's litigation privilege. *See HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 105 (S.D.N.Y. 2020) (statements made concerning a lawsuit are "absolutely privileged as long as they are pertinent to the subject of the litigation.") (quoting *In re Swift*, No. 94-10285-CEC, 2016 WL 355515, at *4 (Bankr. E.D.N.Y.

Jan. 28, 2016)); *see also N.Y.C. Trans. Auth.*, 97 F.3d at 677 ("Reasonable defensive measures" are not retaliation "even though such steps are adverse to the charging employee"). And it would allow Trooper 1 to use the retaliation provisions of the NYSHRL and NYCHRL unfairly as a means to silence the Governor, his supporters, and his lawyers from speaking out in his defense.

Nor is there anything scandalous or intimidating about the February 17, 2022 tweet, which must be analyzed within the context of the lawsuit. *See, e.g.*, *N.Y.C. Trans. Auth.*, 97 F.3d at 677. Trooper 1's Amended Complaint intentionally repeats numerous highly inflammatory allegations about Governor Cuomo's conduct. These offensive allegations, which Governor Cuomo has repeatedly denied and challenged, demand a robust response. *See Hughes*, 304 F. Supp. 3d at 449. Critically, the February 17, 2022 tweet did not contain threats or menacing language, and did not seek to impugn Trooper 1's character. *See id.*; *see also* Azzopardi tweet, *supra* p. 10. Instead, the tweet pointed out that Trooper 1's lawsuit was based on the "fraud of a report" and argued reasonably that her personal allegations of harassment were feeble. *See* Azzopardi tweet, *supra* p. 10 ("If kissing someone on the cheek, patting someone on the back or stomach or waving hello at a public event on New Year's Eve is actionable then we are all in trouble."). Such a defensive statement, including using the word "extortion" to indicate that Trooper 1's claims have no economic value, is simply not actionable as retaliation. *See Hughes*, 304 F. Supp. 3d at 449 (quoting *Dixon*, 504 F.3d at 84).[10] That the tweet also comments on the aggressive reputation of

---

[10]  It is worth noting that criticism is not actionable adverse employment action—regardless of whether or not that criticism puts forth a reasonable defense to a complaint. *See, e.g.*, *White*, 548 U.S. at 68 ("[P]etty slights, minor annoyances, and simple lack of good manners will not" deter protected activity); *Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556, 570–71 (2d Cir. 2011) (criticism and comments made during "heated conversation" not retaliation); *Felmine v. Star*, No. 13-cv-2641, 2016 WL 4005763, at *3 (E.D.N.Y. July 25, 2016) (holding that "various insults" directed at the plaintiff were merely petty slights or minor annoyances); *Martinez v. N.Y.C. Dep't of Educ.*, No. 04-cv-2728, 2008 WL 2220638, at *12 (S.D.N.Y. May 27, 2008) ("[I]ncidents where [a supervisor] publicly yelled at Plaintiff for various reasons or called him 'shit' . . . constitute, as a matter of law, the sorts of petty slights and personality conflicts that are not actionable."); *Bickerstaff v. Vassar Coll.*, 354 F. Supp. 2d 276, 280 (S.D.N.Y. 2004), *aff'd*, 160 F. App'x 61 (2d Cir. 2005) ("Negative or otherwise insulting statements are hardly even actions, let alone 'adverse actions.'").

the law firm representing Trooper 1 is also not inherently menacing towards Trooper 1, who, it should be noted, is proceeding anonymously in this action.

## II.   GOVERNOR CUOMO WAS NOT TROOPER 1'S EMPLOYER OR SUPERVISOR.

The retaliation provisions in the NYSHRL and NYCHRL do not apply to every individual; instead, they reach only persons "engaged in . . . employment, housing, or public accommodation." *Chin v. CH2M Hill Companies, Ltd.*, No. 12-cv-4010 (HB), 2012 WL 4473293, at *6 (S.D.N.Y. Sept. 28, 2012). Direct individual liability under the NYSHRL is "limited to individuals with ownership interest or supervisors, who themselves[] have the authority to hire and fire employees." *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 365–66 (S.D.N.Y. 2012). The NYCHRL likewise mandates an employment relationship. *See* N.Y.C. Admin. Code § 8-107(1); *see also Schaper v. Bronx Lebanon Hosp. Ctr.*, 408 F. Supp. 3d 379, 395 (S.D.N.Y. 2019) ("[L]iability under both the NYSHRL and NYCHRL is limited to those individual *employees* 'who actually participate[d] in the conduct giving rise to plaintiff's [retaliation] claim.'") (citations omitted) (emphasis added). Governor Cuomo was never Trooper 1's employer or supervisor such that he could be held directly liable under the NYSHRL or NYCHRL—and even if one assumes, for the sake of argument, that he had employer or supervisor status at any point, that status no longer existed by the time the allegedly retaliatory statements were issued, more than six months after Governor Cuomo resigned.

"An individual qualifies as an 'employer' when that individual has an ownership interest in the relevant organization or the 'power to do more than carry out personnel decisions made by others.'" *Schaper*, 408 F. Supp. 3d at 394–95 (citations omitted). Additionally, some courts consider an "economic reality test" to analyze whether an individual qualifies as an employer, considering whether that individual "1) had the power to hire and fire the employees; 2) supervised

18

and controlled employee work schedules or conditions of employment; 3) determined the rate and method of payment; and 4) maintained employment records." *Id.* at 395 (citations omitted).

Regardless of the analytical framework, Trooper 1 was never Governor Cuomo's employee and he was never her employer. Trooper 1 was not a member of Governor Cuomo's staff; rather, she was and is an employee of the NYSP. *See* Am. Compl. ¶ 11 ("Plaintiff Trooper 1 is a member of the NYSP."). Governor Cuomo had and continues to have no ownership-type interest in the NYSP. Further, as a member of the NYSP, Trooper 1 was not serving at Governor Cuomo's pleasure; instead, as Trooper 1 accurately alleges, "the NYSP is a law enforcement organization whose mission is to *serve, protect and defend the people of New York*." *Id.* ¶ 19 (emphasis added).

Nor does Trooper 1 allege any facts from which one could infer that Governor Cuomo was her employer under the "economic reality" test. There is no allegation that the Governor had the authority to hire or fire troopers, directed trooper work schedules or conditions of employment, set their salaries, or maintained any sort of employment records. *Cf. Schaper*, 408 F. Supp. at 394–95. Instead, Trooper 1 offers only threadbare allegations that Governor Cuomo was the head of state government and "requested" certain employment decisions. *See, e.g.*, Am. Compl. ¶ 1 ("the Governor of the State of New York, Andrew Cuomo . . ."); ¶ 3 ("The Governor requested . . ."); ¶ 27 ("the PSU Officer asked that Trooper 1 apply . . ."). This is insufficient to impose direct liability.

That Trooper 1 alleges in her Amended Complaint that Governor Cuomo made only requests regarding staffing in the PSU, but makes no allegation that Governor Cuomo could make decisions or issue edicts with respect to her employment conditions, likewise undermines her claims. Under the NYSHRL, individual liability for retaliation can be imposed only on those who exercise "sufficient decision-making power" over an employee's conditions of work. *Schaper*, 408

19

F. Supp. 3d at 395; *see also Eckhart*, 2021 WL 4124616, at \*16. Even when a defendant has the actual title of "supervisor," individual liability will not attach in the absence of allegations that the defendant "had the ability to control Plaintiff's work schedule, make decisions regarding her rate or payment, or maintain employment records." *Schaper*, 408 F. Supp. 3d at 395. And while the NYCHRL is somewhat broader, it still requires an employment relationship between the plaintiff and an individual defendant. *See Schmitt v. Artforum Int'l Mag., Inc.*, 178 A.D.3d 578, 583–84 (1st Dep't 2019) (noting that the NYCHRL defines unlawful discriminatory practices only with respect to activities "*under this chapter*"—*i.e.*, those related to "employment, housing, places of public accommodation and other discrete activities.").

Moreover, even if Governor Cuomo had been Trooper 1's employer or supervisor when he was still in office, he certainly did not have *any* type of employment relationship with Trooper 1 in February 2022. Trooper 1 does not allege facts from which one could infer that any employment or quasi-employment relationship existed between her and Governor Cuomo in February 2022, much less that the alleged retaliatory conduct related to that economic relationship. In fact, Trooper 1 does not allege *any* economic harm as a result of the February tweets. To this day, Trooper 1 remains employed by the NYSP and none of Governor Cuomo's statements could have or did have any impact on her employment or economic circumstances.

An employment relationship is the *sine qua non* of any claim under both the NYSHRL and the NYCHRL, and the absence of such a relationship is fateful for Trooper 1's claims. *Schmitt*, a case involving a claim of retaliation against a former employer under the NYCHRL, is instructive. 178 A.D.3d at 583–84. As the *Schmitt* court noted, while that the NYCHRL is to be construed broadly, the statute still fundamentally requires "some nexus between the retaliatory harm alleged and a relationship characterized in some manner as one of employment, past or present." *Id.* at

20

584. Thus, only where a former employee still has an "ongoing economic relationship" with the former employer, and where the alleged retaliatory conduct related to that "quasi-employment economic relationship," does a claim potentially arise under the NYCHRL. *Id*. at 584–86. The *Schmitt* court also noted the importance of "safeguards . . . to avoid the unintended consequence of allowing a lawsuit against a party . . . on a retaliation theory when there is no reasonable connection between the harm alleged and that economic relationship." *Id.*

Thus, even if Governor Cuomo had been Trooper 1's employer or supervisor when he was still in office (which he was not), he had no such relationship with her in February 2022, there is no connection between the February 2022 tweets and her employment, and her retaliation claims fail as a matter of law.

### III.    THERE IS NO CONNECTION BETWEEN TROOPER 1'S ALLEGED PROTECTED ACTIVITY AND THE FEBRUARY 10, 2022 TWEET.

Trooper 1's retaliation claims as they relate to the February 10, 2022 tweet also fail because she does not plead facts from which one could infer a causal connection between that tweet and the alleged protected activity—her May 19, 2021 statements to the Attorney General's investigators, Am. Compl. ¶ 152, and her September 28, 2021 demand letter, *id.* ¶ 153.

"Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Gittens v. Winthrop Hospitalist Assocs., P.C.*, No. 19-cv-5070 (LDH) (LB), 2022 WL 504490, at *6 (E.D.N.Y. Feb. 18, 2022). "The Supreme Court has noted that '[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Fraser v. MTA Long Island Rail Rd.*, 307 F. Supp. 3d 105, 115 (E.D.N.Y. 2018) (citing *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001), *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209

(10th Cir. 1997) (three month period insufficient), and *Hughes v. Derwinski*, 967 F.2d 1168, 1174–75 (7th Cir. 1992) (four month period insufficient)); *see also Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (three month period insufficient to establish causal connection). While the Second Circuit has not drawn a bright line defining "the outer limits beyond which a temporal relationship is too attenuated to establish causation[]" *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 110 (2d Cir. 2010), courts must "exercise . . . judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009).

In this case, there is no conceivable temporal connection between the alleged protected activity and the February 10, 2022 tweet. First, her testimony in connection with the Attorney General's investigation took place on May 19, 2021, more than nine months before the February 10, 2022 tweet. The long passage of time between events forecloses any inference of causation; indeed, "district courts in this Circuit 'have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation.'" *King*, 2020 WL 2523245, at *7. Second, Trooper 1 alleges that she engaged in protected conduct on September 28, 2021 when she sent demand letters to Governor Cuomo and Melissa DeRosa. Putting aside whether such a demand letter to two private citizens who were not her employer does in fact constitute protected activity, that was still five months before the February 10, 2022 tweet. There is no plausible connection between these events either. Drawing any connection between the September 28, 2021 demand letter and the February 10, 2022 tweet is particularly unreasonable considering the many intervening circumstances, including but not limited to threats of criminal charges against Governor Cuomo.

22

Nor does Trooper 1 allege any facts that would support an inference that Governor Cuomo held any animus toward Trooper 1. While the February 10, 2022 tweet refers to potential attorney ethics complaints against the Attorney General and her appointed investigators for prosecutorial misconduct, as well as evidence of possible perjury and witness tampering to be referred to district attorneys, *none of that has anything to do with Trooper 1.* Instead, the tweet must be viewed in the context of both Governor Cuomo's October 20, 2021 application and the recent announcements from district attorneys across the state declining to bring criminal charges against Governor Cuomo. Further, any inference that Trooper 1 was the target of such comments is undermined entirely by Governor Cuomo's first public statement following the release of the August 3, 2022 Attorney General's Report, which included a sincere, personal apology to Trooper 1: "I personally want to apologize to her and her family. I have the greatest respect for her and for the New York State Police." In directly addressing Trooper 1, and throughout the process, Governor Cuomo has made clear that whatever concerns he has with the improper conduct of investigators and witnesses, such concerns were not and are not directed to Trooper 1. Even under the NYCHRL's "broad construction," Trooper 1 cannot link the February 10, 2022 tweet to a retaliatory motive relating to her. *King*, 2020 WL 2523245, at *8 (citing *Williams v. N.Y.C. Housing Authority*, 872 N.Y.S.2d 27, 35 (1st Dep't 2009)).

## IV.   TROOPER 1'S NYCHRL CLAIM FAILS AS A MATTER OF LAW.

Finally, Trooper 1 does not allege facts sufficient to show that she has any retaliation claim under the NYCHRL. The NYCHRL is intended to "cover people 'who work in the city[]' . . . [and] the impact of the employment action must be felt by the plaintiff in [New York City]." *Vangas v. Montefiore Medical Ctr.*, 823 F.3d 174, 182–83 (2d Cir. 2016) (citing *Hoffman v. Parade Publ'ns*, 15 N.Y.3d 285, 290 (2010); *see id*. at 182 n.4 ("The NYCHRL also purports to cover 'inhabitants' of NYC"); *accord Ware v. L-3 Vertex Aerospace, LLC*, 833 F. App'x 357, 359

23

(2d Cir. 2020). Accordingly, to state a claim under the NYCHRL, Trooper 1 must demonstrate that the alleged discriminatory conduct caused an impact in New York City. *See Pedroza v. Ralph Lauren Corp.*, No. 19-cv-8639, 2020 WL 4273988, at *3–*4 (S.D.N.Y. July 24, 2020).

But Trooper 1 alleges no facts supporting an inference of any impact in New York City. She does not, for example, allege that at the time of the supposedly retaliatory statements she either lived or worked in New York City or that any New York City-based employment was affected. The absence of such allegations is fatal to her NYCHRL retaliation claim. *See, e.g.*, *Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 221–22 (E.D.N.Y. 2018) (the relevant inquiry is into the site of the impact, not the location of acts leading to the alleged discrimination); *Pedroza*, 2020 WL 4273988, at *4; *Hoffman*, 15 N.Y.3d at 290 (the impact requirement does not exclude all nonresidents from the NYCHRL's protection, but it only provides those protections to nonresidents who work in the city). The NYCHRL claim must therefore be dismissed. *See Hoffman*, 15 N.Y.3d at 290, 292.

## CONCLUSION

For the foregoing reasons, Defendant Governor Cuomo requests that the Court dismiss the Fourth and Sixth causes of action of the Amended Complaint.

Dated:       July 15, 2022
             New York, New York

                                        Respectfully submitted,

                                        *Rita M. Glavin*

                                        Rita M. Glavin
                                        Glavin PLLC
                                        156 West 56th Street, Ste. 2004
                                        New York, NY 10019
                                        Tel: (646) 693-5505
                                        rglavin@glavinpllc.com

24

Theresa Trzaskoma
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

*Counsel for former Governor*
*Andrew M. Cuomo*