**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
TROOPER 1,                                    :
                                              :        Case No.: 22-cv-00893 (LDH)(TAM)
                          Plaintiff,          :
                                              :
            v.                                :
                                              :
NEW YORK STATE POLICE, ANDREW                 :
CUOMO, MELISSA DEROSA and                     :
RICHARD AZZOPARDI,                            :
                                              :
                          Defendants.         :
--------------------------------------------------------X


**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT ANDREW CUOMO'S**
<u>**MOTION TO DISMISS**</u>


Date of Service: August 16, 2022

**WIGDOR LLP**

Valdi Licul
John S. Crain

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...........................................1

I.    CUOMO'S HARASSMENT OF TROOPER 1 AND OTHER WOMEN .........................1

II.   THE STATE ATTORNEY GENERAL'S INVESTIGATION, CUOMO'S
      RESIGNATION AND HIS SUBSEQUENT CAMPAIGN OF RETALIATION .............3

III.  THE INSTANT MOTION......................................................................................................4

STANDARD OF REVIEW .......................................................................................................5

ARGUMENT .............................................................................................................................5

I.    CUOMO'S MOTION VIOLATES RULE 12 .....................................................................5

II.   TROOPER 1 PLAUSIBLY ALLEGES THAT CUOMO RETALIATED
      AGAINST HER .....................................................................................................................7

III.  CUOMO CAN BE HELD INDIVIDUALLY LIABLE FOR RETALIATION................11

      A.    Direct Liability...................................................................................................11

      B.    Employer Liability .............................................................................................12

      C.    Aiding and Abetting Liability.............................................................................13

      D.    The Antiretaliation Laws Continued to Apply to Cuomo After Trooper 1's
            Complaints Forced Him to Resign.......................................................................14

IV.   THE AMENDED COMPLAINT PLAUSIBLY ALLEGES CAUSATION....................16

V.    THE NYCHRL APPLIES TO THE RETALIATION CLAIMS......................................17

CONCLUSION........................................................................................................................18

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

Amaya v. Ballyshear LLC,
    340 F. Supp. 3d 215 (E.D.N.Y. 2018) ................................................................. 18

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ........................................................................................... 5

Bass v. World Wrestling Fed'n Ent., Inc.,
    129 F. Supp. 2d 491 (E.D.N.Y. 2001) ................................................................. 12

Burlington N. & Santa Fe Ry. Co. v. White,
    548 U.S. 53 (2006) ............................................................................................. 7

Chambers v. Time Warner, Inc.,
    282 F.3d 147 (2d Cir. 2002) ............................................................................. 5, 6

Chau v. Donovan,
    357 F. Supp. 3d 276 (S.D.N.Y. 2019) ................................................................. 12

Daugherty v. Deschutes Cnty.,
    No. 19 Civ. 00897 (MK), 2021 WL 2784761 (D. Or. May 6, 2021) ......................... 8

de Souza v. Planned Parenthood Fed'n of Am., Inc.,
    No. 21 Civ. 5553 (LGS), 2022 WL 2047580 (S.D.N.Y. June 7, 2022) .................... 8

DeVore v. Nieghborhood Hous. Servs. Of Jamaica, Inc.,
    No. 15 Civ. 6218, 2017 WL 1034787 (E.D.N.Y. Mar. 16, 2017) ............................ 8

DiPilato v. 7-Eleven, Inc.,
    662 F. Supp. 2d 333 (S.D.N.Y. 2009) ................................................................. 12

Dodd v. City Univ. of New York,
    489 F. Supp. 3d 219 (S.D.N.Y. 2020) ............................................................. 13, 14

Doe v. Bloomberg, L.P.,
    36 N.Y.3d 450 (2021) ........................................................................................ 12

Doe v. Columbia Univ.,
    831 F.3d 46 (2d Cir. 2016) ................................................................................. 5

Farmer,
    473 F. Supp. 3d ................................................................................................ 14

Feingold v. New York,
    366 F.3d 138 (2d Cir. 1984) ................................................................................. 13

Front, Inc. v. Khalil,
    24 N.Y.3d 713 (2015) ......................................................................................... 11

Geras v. Hempstead Union Free Sch. Dist.,
    149 F. Supp. 3d 300 (E.D.N.Y. 2015) ................................................................. 14

Harris v. N.Y.C. Hum. Res. Admin.,
    No. 20 Civ. 2011 (JPC), 2022 WL 3100663 (S.D.N.Y. Aug. 4, 2022) ............. 12, 13

Hoffman v. Parade Publications,
    15 N.Y.3d 285 (2010) ......................................................................................... 17

Hosking v. Mem'l Sloan-Kettering Cancer Ctr.,
    186 A.D.3d 58 (1st Dep't 2020) ............................................................................. 8

Hughes v. Twenty-First Century Fox, Inc.,
    304 F. Supp. 3d 429 (S.D.N.Y. 2018) ............................................................. 10, 11

Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,
    62 F.3d 69 (2d Cir. 1995) ...................................................................................... 5

Jute v. Hamilton Sundstrand Corp.,
    420 F.3d 166 (2d Cir. 2005) ................................................................................ 15

Kraiem v. JonesTrading Institutional Servs. LLC.,
    492 F. Supp. 3d 184 (S.D.N.Y. 2020) ................................................................. 17

Lax v. City Univ. of New York,
    No. 16 Civ. 799 (LDH) (VMS), 2020 WL 6161253 (E.D.N.Y. Oct. 21, 2020) ...... 11

Leary v. Al-Mubaraki,
    No. 18 Civ. 0048 (LTS) (HBP), 2019 WL 4805849 (S.D.N.Y. Sept. 30, 2019) ....... 9

Liberi v. Taitz,
    No. 11 Civ. 0485 (AGA) (JWX), 2011 WL 13315687 (C.D. Cal. Oct. 17, 2011) ......... 6, 7

Liverpool v. Con-Way, Inc.,
    No. 08 Civ. 4076 (JG) (JO), 2009 WL 1362965 ..................................................... 7

Lore v. City of Syracuse,
    670 F.3d 127 (2d Cir. 2012) .................................................................................. 8

Makhsudova v. City of New York,
    No. 20 Civ. 10728 (KPF), 2022 WL 1571152 (S.D.N.Y. May 18, 2022) ............................... 12

Matter of Electchester Hous. V. Project v. Rosa,
    225 A.D.2d 772 (2d Dep't 1996) ........................................................................................... 7

Melman v. Montefiore Med. Ctr.,
    946 N.Y.S.2d 27 (1st Dep't 2012) ......................................................................................... 11

Newman & Schwartz v. Asplundh Tree Expert Co., Inc.,
    102 F.3d 660 (2d Cir. 1996) ................................................................................................... 5

Patrowich v Chemical Bank,
    63 N.Y.2d 541 (1984) ............................................................................................................ 12

Pedroza v. Ralph Lauren Corp.,
    No. 19 Civ. 08639 (ER), 2020 WL 4273988 (S.D.N.Y. July 24, 2020) ................................. 18

Perrin v. Conn. Dep't of Corr.,
    No. 16 Civ. 643 (JAM), 2016 WL 6594070 (D. Conn. Nov. 7, 2016) ..................................... 8

Rasmy v. Marriott Int'l, Inc.,
    952 F.3d 379 (2d Cir. 2020) ................................................................................................... 16

Richardson v. Comm'n on Hum. Rts. & Opportunities,
    532 F.3d 114 (2d Cir. 2008) ................................................................................................... 11

Robinson v. Shell Oil Co.,
    519 U.S. 337 (1997) ..................................................................................................... 7, 14, 15

Rodriguez v. Town of Ramapo,
    412 F. Supp. 3d 412 (S.D.N.Y. 2019) .................................................................................... 17

Rodriquez v. Nat'l Golf Links of Am.,
    No. 19 Civ. 7052 (PKC) (RML), 2020 WL 3051559 (E.D.N.Y. Jun. 8, 2020) ........................ 9

Ruiz v. Bay Shore - Brightwaters Rescue Ambulance, Inc.,
    No. 18 Civ. 280 (RRM), 2021 WL 1210315 (E.D.N.Y. Mar. 31, 2021) ................................. 14

Sanders v. Madison Square Garden, L.P.,
    No. 06 CIV. 589(GEL), 2007 WL 2254698 (S.D.N.Y. Aug. 6, 2007) ...................................... 8

Santi v. Hot In Here, Inc.,
    No. 18 Civ. 03028 (ER), 2019 WL 290145 (S.D.N.Y. Jan. 22, 2019) ..................................... 9

Shanks v. Vill. Of Catskill Bd. of Trustees,
    653 F. Supp. 2d 158 (N.D.N.Y. 2009) ................................................................. 8

Spencer v. Int'l Shoppes, Inc.,
    902 F. Supp. 2d 287 (E.D.N.Y. 2012) ................................................................. 15

Staeher v. Hartford Fin. Svcs. Group, Inc.,
    547 F.3d 406 (2d Cir. 2008) ................................................................................. 7

Strauss v. NY State Dep't of Educ.,
    26 A.D.3d 67 (3d Dept 2005) .............................................................................. 14

Sullivan v. Little Hunting Park, Inc.,
    396 U.S. 229 (1969) ............................................................................................. 7

Tomka v. Seiler Corp.,
    66 F.3d 1295 (2d Cir. 1995) ................................................................................ 11

United States v. New York City Transit Auth.,
    97 F.3d 672 (2d Cir. 1996) .................................................................................. 11

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015) .................................................................................. 5

Ware v. L-3 Vertex Aerospace, LLC,
    833 F. App'x 357 (2d Cir. 2020) ......................................................................... 18

Wermann v. Excel Dentistry, P.C.,
    No. 13 Civ. 7028 (DAB), 2014 WL 846723 (S.D.N.Y. Feb. 25, 2014) ................. 15

Wheeler v. Bank of New York Mellon,
    256 F. Supp. 3d 205 (N.D.N.Y. 2017) ................................................................. 8

Williams v. New York City Hous. Auth.,
    61 A.D.3d 62 (1st Dep't 2009) ......................................................................... 8, 10

**Statutes**

42 U.S.C. § 1983 ..................................................................................................... 4

N.Y. Exec. Law § 292(5) ......................................................................................... 15

N.Y. Exec. Law § 296(6) ......................................................................................... 13

N.Y. Exec. Law § 296(7) ................................................................................ 12, 15, 16

N.Y. Exec. Law § 300...................................................................................................... 16

N.Y. Executive Law § 290................................................................................................ 4

**Rules**

N.Y.C.P.L.R. § 214(5) ..................................................................................................... 16

**Other Authorities**

N.Y.C. Admin. Code § 8-107 ..................................................................................... passim

New York City, N.Y., Code § 8-102 ............................................................................... 15

New York City, N.Y., Code § 8-130 ............................................................................... 16

New York City, N.Y., Code § 8-502(d) ........................................................................... 16

Plaintiff Trooper 1 ("Plaintiff" or "Trooper 1") respectfully submits this memorandum of law in opposition to the motion to dismiss the Fourth and Sixth causes of action of the Amended Complaint filed by Defendant Andrew Cuomo ("Defendant" or "Cuomo").

## PRELIMINARY STATEMENT

With multiple accusations of sexual harassment surfacing against him in 2021, Cuomo called for state authorities to investigate him. When it became obvious that the investigation was serious and would not summarily exonerate him, Cuomo began a campaign of attacking anyone and everyone who dared to challenge him. The Attorney General, the independent investigators, the State Assembly, local prosecutors, and even the dozen or so women who described how Cuomo sexually harassed them, were all, in the Cuomo's view, out to get him. One of the brave women who shared her story about being sexually harassed by the most powerful man in New York State is Trooper 1, a member of Cuomo's personal Protective Service Unit ("PSU").

After years of Cuomo treating her as a sexual object while she tried to perform her duties, Trooper 1 brought the instant lawsuit to hold Cuomo accountable for his unlawful conduct. True to form, Cuomo instantly lashed out in social media, calling Trooper 1 an extortionist, and suggesting she had hired a law firm that specialized in the crime of extortion.

Cuomo now moves to partially dismiss the claims against him solely insofar as they relate to the retaliation. His arguments for dismissal lack merit, raising questions of fact that will have to be decided on the record and, ultimately, by a jury.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

## I.  CUOMO'S HARASSMENT OF TROOPER 1 AND OTHER WOMEN

Defendant Andrew Cuomo, the former Governor of New York State, resigned from office in 2021 after an investigation that he ordered into his own conduct found that he had

sexually harassed numerous women in his employ. One of those women, as set forth in the complaint, was the Plaintiff, Trooper 1.

Trooper 1 joined the New York State Police ("NYSP") in March 2015, Amended Complaint ("AC"), Dkt. No. 7 at ¶ 20, and after a little over two years of outstanding service, on November 4, 2017, received a routine assignment to help secure a press conference by Cuomo on the Robert F. Kennedy Bridge, id. at ¶ 21. After an unremarkable conversation with Cuomo, he made a snap decision to add Trooper 1 to the PSU that served as his bodyguard, id. at ¶¶ 21-25. However, the PSU was only open to troopers with three years' experience, while, at the time, Trooper 1 had only two. Id. at ¶ 26. Cuomo ordered that the PSU's seniority requirement be lowered to two years, specifically so that Trooper 1 could join. Id. at ¶¶ 28-30.

Trooper 1 successfully served on the PSU for three-and-a-half years, until Cuomo's resignation. During this time, her daily schedule revolved around Cuomo and his movements. E.g. id. ¶¶ 32, 39, 41, 43, 48, 53, 61. On April 18, 2019, she secured a transfer to Cuomo's travel team. Id. at ¶ 40. In December of that year, she earned a promotion to Investigator. Id. at ¶ 60. Even as she worked to protect him, Cuomo consistently harassed Trooper 1, asking her (while she was on duty) if she wanted a private tour of his mansion, id. at ¶ 34, telling her that her sex drive would go down if she got married, id. at ¶ 36, running his finger up her back and whispering in her ear while she escorted him on an elevator within a building in New York City, id. at ¶ 39, asking why she didn't wear a dress while she was on duty protecting his life, id. at ¶ 48, and sliding his hand over her stomach and waist at a public event, id. at ¶¶ 53-54. In one incident in early January 2021, Cuomo ordered that motorcade to stop so that he could take over driving from Trooper 1, insisting that she stop sanitizing the steering wheel (as required by COVID-19 protocols) and give him a hug after she exited the vehicle. Id. at ¶¶ 69-71. All this

harassment was part of a broader pattern of harassment perpetrated by Cuomo against the women who served him in professional capacities.  Id. at ¶¶ 75-143.  His behavior rendered Trooper 1 a sex object, when she had simply set out to do her job and had never expressed the slightest sexual interest in Cuomo.

## II. THE STATE ATTORNEY GENERAL'S INVESTIGATION, CUOMO'S RESIGNATION AND HIS SUBSEQUENT CAMPAIGN OF RETALIATION

After women began complaining publicly about Cuomo's pattern of sexual harassment, Cuomo ordered an independent investigation.  AC at p. 28 n. 3.  Throughout the controversy and investigation, Cuomo attacked his accusers as well as the independent attorneys conducting the investigation, including releasing the personnel files of Lindsey Boylan, one of the first women who came out against him, id. at ¶ 147, asking subordinates to "spread oppo" (negative opposition research) on one of the investigators, Joon Kim, id. at ¶ 150, and having his brother, journalist Chris Cuomo, gather further "oppo" on one of his accusers, id. at ¶ 149.

On May 29, 2021, Trooper 1 testified about Cuomo's harassment.  Id. at ¶ 152.  Based on her testimony, and that of the other women targeted by Cuomo, the independent investigation by the Attorney General's Office as well as a separate impeachment investigation conducted by the New York State Assembly found that Cuomo had violated numerous local and federal laws in harassing women.  Id. at ¶¶ 4-5.  Cuomo was ultimately forced to resign in August 2021.  The next month, Trooper 1 sent demand letters asserting her legal rights to both Cuomo and his former Chief of Staff, Melissa DeRosa ("DeRosa"), who had helped Cuomo bury complaints into his sexual harassment.  Id. at ¶ 153.

Cuomo and his enablers have gone down a warpath of retaliation since then.  On November 12, 2021, DeRosa publicly accused Trooper 1 of the crime of "extortion."  Id. at ¶ 154.  On February 10, 2022, Cuomo announced that he would be filing ethics charges against the

attorneys who investigated him, warning that "the list of attorneys . . . may expand"—a clear signal to anyone who might try to hold him legally accountable.  Id. at ¶ 155.  He also threatened to seek criminal prosecution of his victims, by making "submissions" to district attorneys related to "perjury" and "witness tampering."  Id. at ¶ 156-58.

On February 17, 2022, Trooper 1 filed the instant action alleging violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ("Equal Protection Clause"); 42 U.S.C. § 1983; the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. (the "State "Law" or "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. (the "City Law" or "NYCHRL").[1]

Cuomo immediately lashed out.  Through his self-described spokesman, Richard Azzopardi ("Azzopardi"), he accused Trooper 1 of extorting him, including hiring a law firm that specializes in extortion.  Id. at ¶ 159.  Accordingly, the next day, Trooper 1 amended the complaint to include charges of retaliation against Cuomo and Azzopardi.

III.  **THE INSTANT MOTION**

Cuomo now moves to dismiss only the retaliation claims against him under the State and City Laws,[2] claiming that (1) his threats were "reasonable defensive measures"; (2) he was not Trooper 1's supervisor or employer; (3) there is no "connection" between Trooper 1's protected

---

[1]  The State and City Laws are sometimes referred to herein as the "Local Laws."

[2]  Cuomo does not move to dismiss Trooper 1's claims that he (1) engaged in sexual harassment in violation of the Local Laws and (2) engaged in sexual harassment and retaliation in violation of Trooper 1's right under the Equal Protection Clause.

activity and Cuomo's threats; and (4) Cuomo's retaliation against Trooper 1 had no "impact" in New York City. He is wrong on all points.

<b>STANDARD OF REVIEW</b>

In deciding a Rule 12(b)(6) motion, a court must accept as true the plaintiff's allegations and draw all reasonable inferences in her favor. <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 78 (2d Cir. 2015). A court must deny the motion where the plaintiff's allegations make it "plausible" that the defendants violated the law. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Importantly, "[t]he role of the court . . . is not in any way to evaluate the truth as to what really happened, but merely to determine whether plaintiff's factual allegations are sufficient to allow the case to proceed." <u>Doe v. Columbia Univ.</u>, 831 F.3d 46, 59 (2d Cir. 2016) (emphasis added).

<b>ARGUMENT</b>

**I.   CUOMO'S MOTION VIOLATES RULE 12**

A proper motion to dismiss is limited to consideration of (1) the allegations in the complaint; (2) "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference"; and (3) any document deemed "integral" to the complaint, meaning that "the complaint 'relies heavily upon [the document's] terms and effects.'" <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-53 (2d Cir. 2002) (quoting <u>Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.</u>, 62 F.3d 69, 72 (2d Cir. 1995)). The mere fact that a plaintiff had "notice" or even "possession" of a document is "not enough" to clear this significant hurdle. <u>Id.</u> at 153. Rather, the "necessary predicate" for consideration is that the plaintiff "reli[ed] on the terms and effect of a document in drafting the complaint." <u>Id.</u>; <u>see</u> <u>Newman & Schwartz v. Asplundh Tree Expert Co., Inc.</u>, 102 F.3d 660, 662 (2d Cir. 1996) (reversing decision granting motion to dismiss where, <u>inter alia</u>, the district court "relied on

material which was not in the pleadings").  When faced with an improper motion, a court may

"exclude[] the extrinsic document" or "convert the motion to one for summary judgment."

Chambers, 282 F.3d at 154.  A court may even dismiss the motion where, as here, the violation is

particularly egregious.  See Liberi v. Taitz, No. 11 Civ. 0485 (AGA) (JWX), 2011 WL

13315687, at *2 (C.D. Cal. Oct. 17, 2011) ("The Court finds it impossible to consider the bulk of

this Motion without improperly wading into areas of factual dispute.").

Here, Cuomo relies on numerous extraneous documents that are neither attached to,

referred to, nor relied upon in the Amended Complaint, including (1) a press release from the

Attorney General of New York State, Memorandum of Law in Support of Motion to Dismiss

("Cuomo Brf.") at 6; (2) Cuomo's resignation speech, id.; (3) a press release published at

www.andrewcuomo.com, id. at 15 n.7; (4) a statement by the Albany County District Attorney,

id. at 15 n.8; and (5) a New York Times article.  Id.[3]  No doubt, the purpose of these documents

is to advance Cuomo's argument that he did not behave unlawfully toward Trooper 1 (or any

other woman) despite two exhaustive independent investigations finding otherwise.[4]  But that is

a fact-based determination for a jury or this Court on summary judgment, not for a motion to

---

[3]     The tweets by Cuomo and his spokesman Azzopardi claiming his victims who testified about his sexual harassment (which included Trooper 1) engaged in "blackmail," "perjury" and "witness tampering," and accusing Trooper 1 and her attorneys of extortion, Cuomo Brf. at 10, are properly considered here since Trooper 1 relies upon them in her complaint.

[4]     For instance, Cuomo wants this Court to "take judicial notice of the fact that [he] publicly apologized to Trooper 1."  Cuomo Brf. at 15 n.9.  Trooper 1's Amended Complaint, however, nowhere mentions Cuomo's "apology" or his resignation speech.  To consider this extraneous information "risks depriving the parties of a fair adjudication of the claims by examining an incomplete record."  Chambers, 282 F.3d at 147.  Moreover, Cuomo's half-hearted "apology," which he delivered only after he was caught and forced to resign, is hardly exculpatory.  It merely shows that Cuomo would do anything possible – from claiming he was sorry to making threats – to avoid this lawsuit.

dismiss.  Moreover, this Court should not have to "sift through [Cuomo's] arguments to cobble together a passable motion to dismiss."  <u>Liberi</u>, 2011 WL 13315687, at *2.  Accordingly, Cuomo's motion should be denied on this basis alone.[5]

## II.   TROOPER 1 PLAUSIBLY ALLEGES THAT CUOMO RETALIATED AGAINST <u>HER</u>

Cuomo claims that his public threats were not retaliatory but merely "reasonable defensive measures." Cuomo Brf. at 13.  He misunderstands the anti-retaliation laws.

Courts have long recognized the need to protect those who have the courage to protest civil rights violations.  <u>See</u> <u>e.g.</u> <u>Sullivan v. Little Hunting Park, Inc.</u>, 396 U.S. 229 (1969) (protecting white property owner who protested racial discrimination).  A primary purpose of these anti-retaliation provisions is "maintaining unfettered access to statutory remedial mechanisms."  <u>Liverpool v. Con-Way, Inc.</u>, No. 08 Civ. 4076 (JG) (JO), 2009 WL 1362965, at *ll (E.D.N.Y. May 15, 2009) (quoting <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 346 (1997); <u>see</u> <u>Matter of Electchester Hous. V. Project v. Rosa</u>, 225 A.D.2d 772, 773 (2d Dep't 1996) ("The viability of the [State Law] and, indeed, civil rights laws depends on the unfettered right of those who are colorably aggrieved to file and litigate complaints.")

Consistent with this broad purpose, a defendant does not need affect the terms of conditions of a plaintiff's employment to violate the Local Laws.  He need only engage in conduct that is "reasonably likely to deter a person from engaging in protected activity." N.Y.C. Admin. Code § 8-107(7); <u>see</u> <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 57 (2006) (federal law prohibits any conduct that "could well dissuade a reasonable worker from making or

---

[5]     Cuomo claims that a court may take "judicial notice of Twitter posts and other webpages." Cuomo Brf. at 6 n.4.  But "judicial notice" is limited to "the <u>fact</u> of" the postings and webpages, not "the truth of their contents."  <u>Staeher v. Hartford Fin. Svcs. Group, Inc.</u>, 547 F.3d 406, 425 (2d Cir. 2008) (emphasis in original).

supporting a charge of discrimination"); accord de Souza v. Planned Parenthood Fed'n of Am., Inc., No. 21 Civ. 5553 (LGS), 2022 WL 2047580, at *4 (S.D.N.Y. June 7, 2022) (same standard applies to the NYSHRL).  Indeed, the expansive Local Laws makes it unlawful to retaliate "in any manner."  Williams v. New York City Hous. Auth., 61 A.D.3d 62, 70 (1st Dep't 2009). Accordingly, no "challenged conduct" may "be categorically rejected as nonactionable."  Id. at 71.[6]

Threats (including potential criminal prosecution) and false allegations are classic examples of actionable retaliatory acts.  See Lore v. City of Syracuse, 670 F.3d 127, 147 (2d Cir. 2012) (reading the plaintiff "Miranda warnings" and threatening "to charge [her] with a crime"); Wheeler v. Bank of New York Mellon, 256 F. Supp. 3d 205, 221 (N.D.N.Y. 2017) (false accusation that plaintiff threatened a colleague); DeVore v. Nieghborhood Hous. Servs. Of Jamaica, Inc., No. 15 Civ. 6218, 2017 WL 1034787, at *10 (E.D.N.Y. Mar. 16, 2017) ("retaliatory write-ups for infractions"); Perrin v. Conn. Dep't of Corr., No. 16 Civ. 643 (JAM), 2016 WL 6594070, at *2 (D. Conn. Nov. 7, 2016) ("initiat[ing] disciplinary proceedings"); Shanks v. Vill. Of Catskill Bd. of Trustees, 653 F. Supp. 2d 158, 166 (N.D.N.Y. 2009) ("false accusations . . . 'may be considered adverse employment actions'") (emphasis in original) (citation omitted).[7]  These statutes even prohibit filing retaliatory civil counterclaims against a

---

[6]     In 2016, the City Council was forced to pass amendments to the City Law because courts repeatedly failed to interpret the local statute "liberally and independently of similar federal and state provisions," and in so doing, were failing to "fulfill the uniquely broad and remedial" purposes of the law, according to a report by the Committee on Civil Rights that accompanied Local Law No. 35.  In 2019, the State Law was amended to conform to the more liberal City Law. Hosking v. Mem'l Sloan-Kettering Cancer Ctr., 186 A.D.3d 58, 64 n.1 (1st Dep't 2020).

[7]     See also Daugherty v. Deschutes Cnty., No. 19 Civ. 00897 (MK), 2021 WL 2784761, at *3 (D. Or. May 6, 2021), report and recommendation adopted, No. 19 Civ. 00897 (MK), 2021 WL 2784267 (D. Or. July 2, 2021) (publicly casting plaintiff in a negative light); Sanders v. Madison Square Garden, L.P., No. 06 CIV. 589(GEL), 2007 WL 2254698, at *13–16 (S.D.N.Y. Aug. 6,

victim of discrimination.  See Rodriquez v. Nat'l Golf Links of Am., No. 19 Civ. 7052 (PKC)
(RML), 2020 WL 3051559 (E.D.N.Y. Jun. 8, 2020); Leary v. Al-Mubaraki, No. 18 Civ. 0048
(LTS) (HBP), 2019 WL 4805849 (S.D.N.Y. Sept. 30, 2019); Santi v. Hot In Here, Inc., No. 18
Civ. 03028 (ER), 2019 WL 290145 (S.D.N.Y. Jan. 22, 2019).

Here, Cuomo claimed his accusers were guilty of "blackmail" and "perjury", Cuomo Brf.
at 10; threatened to file ethics charges against the attorneys who investigated him and unearthed
his pattern of sexual harassment, AC at ¶ 155; warned that "the list of attorneys" targeted by his
ethics allegations "may expand," id.; threatened to seek criminal prosecution of his victims,
announcing that we will make "submissions" to "relevant district attorneys" related to "perjury"
and "witness tampering," id. at ¶ 156; and joined with Azzopardi, his spokesman, accusing
Trooper 1 and her attorneys of engaging in extortion by filing this action. Id. at ¶ 159.  These
facts, which the Court must accept as true, certainly make it plausible that Cuomo unlawfully
retaliated against Trooper 1.

Cuomo nonetheless claims that the "February 17 tweet[] [was] . . . directed at the
Attorney General and her Investigators."  Cuomo Brf at 10.  But the tweet plainly refers to
"[t]his claim," meaning Trooper 1's claim, and then describes the specific allegations contained
in Trooper 1's Amended Complaint.  In other words, it was a specific response to Trooper 1's
protected filing.

Cuomo also claims that his prior statements accusing his victims of "blackmail" and
"perjury" cannot be deemed retaliatory because he "does not mention—either explicitly or
implicitly—Trooper 1 or her attorneys."  Cuomo Brf. at 14.  But that does not matter.  Cuomo's

---

2007), opinion withdrawn in non-pertinent part on reconsideration, 525 F. Supp. 2d 364 (S.D.N.Y.
2007) (negative post-filing media statements).

threats were clearly directed at his victims who testified under oath as part of the Attorney

General's investigation, otherwise there would be no basis for his "perjury" accusation.  AC at ¶

156.  There is no dispute that Trooper 1 is among that group.  Moreover, his threat to file ethics

charges was not limited to the Attorney General's investigators as he warned that the "list of

attorneys" targeted by him "may expand."  AC at ¶ 155.

He also asserts that he did not retaliate against Trooper 1 but was merely engaging in

"reasonable defensive measures."  Cuomo Brf. at 13.  As explained above, however, under the

Local Laws "no challenged conduct" may "be deemed categorically rejected as nonactionable."

Williams, 61 A.D.3d at 71.  Thus, Cuomo's attempt to exempt what he self-servingly describes

as "reasonable defense measures" from the Local Laws' reach fails as a matter of law.

Moreover, as even Cuomo admits, "[t]here is an important difference between defending

oneself, on the one hand, and threatening, intimidating, or otherwise interfering with someone's

rights to pursue a discrimination claim on the others."  Hughes v. Twenty-First Century Fox,

Inc., 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018).  Thus, even if the Local Laws recognized a

"reasonable defensive measures" exception to retaliation (which they do not), Cuomo's actions

plausibly crossed the line from merely defending himself by denying the allegations to

"threatening" and "intimidating" Trooper 1 (and Cuomo's other victims) with potential criminal

charges and their lawyers with ethics claims.  See id. at 448-49 (threat to "end [plaintiff's]

career" and "cut [her] off from future appearances" could constitute unlawful retaliation).  Put

another way, Cuomo did not merely attempt to "blunt the inflammatory force of [Trooper 1's]

allegations," he engaged in "the use of threats or menacing language impugning [Trooper 1's] character." Id.[8]

Finally, Cuomo cannot hide behind the litigation privilege. That privilege applies to defamation claims based on the contents of complaints and court filings. As a privilege against defamation complaints, it has long roots in the common-law. See Front, Inc. v. Khalil, 24 N.Y.3d 713, 718 (2015) (explaining the litigation privilege). It does not apply, and has never been held to apply, to discrimination claims. Moreover, even if it did, it does not condone the types of threats made by Cuomo here.

In short, the Amended Complaint plausibly alleges that Cuomo retaliated against Trooper 1.

## III. CUOMO CAN BE HELD INDIVIDUALLY LIABLE FOR RETALIATION

Cuomo further claims that he was free to retaliate against Trooper 1 because he was neither her employer nor her supervisor. Once again, he is wrong.

### A. Direct Liability

Unlike their federal counterparts, Tomka v. Seiler Corp., 66 F.3d 1295 (2d Cir. 1995), the Local Laws impose individual liability on bad actors such as Cuomo. The City Law makes it unlawful for "any person . . . to retaliate . . . in any manner against any person because such

---

[8] The cases cited by Cuomo do not permit the use of threats. See United States v. New York City Transit Auth., 97 F.3d 672, 675 (2d Cir. 1996) (policy of moving EEO grievances to the City Law Department was not retaliatory); Richardson v. Comm'n on Hum. Rts. & Opportunities, 532 F.3d 114, 118 (2d Cir. 2008) (union's procedure of suspending internal grievance if employee filed claim with state authority deemed not retaliatiory). Nor does this bear any relation to cases where employers gently requested that a plaintiff withdraw their case. Lax v. City Univ. of New York, No. 16 Civ. 799 (LDH) (VMS), 2020 WL 6161253, at *9 (E.D.N.Y. Oct. 21, 2020), aff'd, No. 20-3906-CV, 2022 WL 103315 (2d Cir. Jan. 11, 2022) (personal request to withdraw a complaint); Melman v. Montefiore Med. Ctr., 946 N.Y.S.2d 27, 42 (1st Dep't 2012) (same).

person has . . . opposed" discrimination. N.Y.C. Admin. Code § 8-107(7). The State Law uses identical language. N.Y. Exec. Law § 296(7). As explained recently by the New York Court of Appeals, "individuals" are liable "for their own discriminatory conduct, for aiding and abetting such conduct by others, or for retaliation against protected conduct." Doe v. Bloomberg, L.P., 36 N.Y.3d 450, 459 (2021).[9] Here, Trooper 1 merely seeks to hold Cuomo liable for his own unlawful conduct.

### B. Employer Liability

Remarkably, Cuomo ignores Doe entirely and argues that he can only be held liable as an employer, citing Patrowich v Chemical Bank, 63 N.Y.2d 541 (1984).[10] Even if this were still the law (which it is not), Trooper 1 easily meets this standard. Courts in the Second Circuit have found that a plaintiff satisfies the Patrowich standard at the pleading stage where, as here, the complaint alleges that Defendant had some discretion over the plaintiff's employment. See Bass v. World Wrestling Fed'n Ent., Inc., 129 F. Supp. 2d 491, 505 (E.D.N.Y. 2001) ("Although Lombardi's precise status in the WWF is unclear from the pleadings, Plaintiff has alleged that he is a part of the WWF management and exercises significant authority, direction, and control over Plaintiff."); DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 353 (S.D.N.Y. 2009) ("since plaintiff alleges Lynch carried out the decision to deny her the 7–Eleven franchise, Lynch, as 7–Eleven, can be held liable for said alleged violation"); Chau v. Donovan, 357 F. Supp. 3d 276,

---

[9]     Unlike an employer, however, an individual may not be held vicariously liable for the unlawful acts of others. Doe, 36 N.Y.3d at 460-61.

[10]     In Doe, the court found that Patrowich had been "misinterpret[ted]" by "a number of other courts." Id. at 457. Nonetheless, some court continue to apply the Patrowich liability standard. See Makhsudova v. City of New York, No. 20 Civ. 10728 (KPF), 2022 WL 1571152, at *4 (S.D.N.Y. May 18, 2022); Harris v. N.Y.C. Hum. Res. Admin., No. 20 Civ. 2011 (JPC), 2022 WL 3100663, at *6 (S.D.N.Y. Aug. 4, 2022).

285 (S.D.N.Y. 2019) (complaint alleged liability against supervisor who held himself out as being able to "use his influence" to get the plaintiff a job); <u>Harris</u>, 2022 WL 3100663, at *6 ("Here, Banks, as HRA Commissioner, had authority to make (rather than merely carry out) personnel decisions such as demotions.")

Here, the Amended Complaint alleges that Cuomo asked that Trooper 1 be added to his detail as soon as possible after he met her, AC at ¶¶ 22-3, and personally changed the rules to bring Trooper 1 onto his PSU, <u>id.</u> at ¶ 30. Moreover, Cuomo's schedule dictated all of Trooper 1's postings and movements; it was implicit in her role that she moved and performed her duties at the pleasure of Cuomo and according to his schedule. <u>E.g.</u> <u>id.</u> ¶¶ 32, 39, 41, 43, 48, 53, 61. Cuomo could and did give instructions to his PSU troopers, including telling them when to start and stop vehicles and when to waive COVID-19 protocols. <u>Id.</u> at ¶¶ 69-70. Accordingly, the Amended Complaint plausibly alleges that Cuomo had discretion over Trooper 1's employment under any possible standard and participated in harassing her.

### C. <u>Aiding and Abetting Liability</u>

Finally, Cuomo can be held liable as an aider and abettor. The Local Laws make it illegal for "any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this [article/chapter]." N.Y. Exec. Law § 296(6); New York City, N.Y., Code § 8-107(6). "[T]his language allow[s] a co-worker who 'actually participates in the conduct giving rise to a [retaliation] claim' to be held liable under the NYSHRL even though that co-worker lacked the authority to either hire or fire the plaintiff." <u>Dodd v. City Univ. of New York</u>, 489 F. Supp. 3d 219, 268 (S.D.N.Y. 2020) (brackets in original) (quoting <u>Feingold v. New York</u>, 366 F.3d 138, 158 (2d Cir. 1984)). In other words, "[c]ourts may find personal liability for 'aiding and abetting allegedly unlawful [retaliation] by [an] employer even where [an individual

defendant's] actions serve as the predicate for the employer's vicarious liability,' so long as the employer's conduct has also been found discriminatory under the NYSHRL." Id. (quoting Farmer, 473 F. Supp. 3d at 337); See Geras v. Hempstead Union Free Sch. Dist., 149 F. Supp. 3d 300, 338 (E.D.N.Y. 2015) (collecting numerous Eastern District cases in agreement); accord Ruiz v. Bay Shore - Brightwaters Rescue Ambulance, Inc., No. 18 Civ. 280 (RRM), 2021 WL 1210315, at *17 (E.D.N.Y. Mar. 31, 2021), reconsideration denied sub nom. Ruiz v. Bay Shore-Brightwaters Rescue Ambulance, Inc., No. 18 Civ. 280 (EK) (RER), 2022 WL 955279 (E.D.N.Y. Mar. 30, 2022) (following Geras, finding harasser could be held liable as an aider and abettor).[11]

### D. The Antiretaliation Laws Continued to Apply to Cuomo After Trooper 1's Complaints Forced Him to Resign

Cuomo, like DeRosa and Azzopardi in their motion, asserts that he earned a privilege to retaliate by resigning. The argument makes no sense and, if accepted, would undermine the antidiscrimination laws by stripping the antiretaliation protections from complainants, like Trooper 1, whose complaints actually succeed in causing a discriminator to resign.

The interpretational history of the antidiscrimination laws demonstrates that they should apply to the facts here. In 1997, the Supreme Court held that that "former employees are included within" Title VII. Robinson v. Shell Oil Co., 519 U.S. 337, 346 (1997). Analyzing the statutory text, the Court there held that the term "employee" lacked a "temporal qualifier" as

---

[11] To be sure, pre-Doe some courts have held that an individual who is primarily liable under the Local Laws cannot also be held liable as an aider-abettor because "individuals cannot be held liable under . . . for aiding and abetting their own violations." Strauss v. NY State Dep't of Educ., 26 A.D.3d 67 (3d Dept 2005) (emphasis added). But if, as Cuomo argues, he cannot be held primarily liable, he is no longer aiding and abetting his "own violations" but rather the violations of the employer.

would limit the statute to current employees only.  Id. at 341–42.  It also noted that other uses of "employee" in Title VII suggested that the term applied to former employees, for instance in specifying that relief could include "reinstating" an employee.  Id. at 342.  Given the statutory text, and in light of Title VII's broad remedial purpose, the Court held that Title VII covered former employees.  Id.

Courts applying Title VII, the NYSHRL and NYCHRL agree that the end of an employment relationship does not end the employer's obligation to refrain from retaliation.  See, e.g., Jute v. Hamilton Sundstrand Corp., 420 F.3d 166, 178–79 (2d Cir. 2005) (post-termination furnishing of negative job reference could form basis for retaliation claim); Wermann v. Excel Dentistry, P.C., No. 13 Civ. 7028 (DAB), 2014 WL 846723, at *3 (S.D.N.Y. Feb. 25, 2014) (holding that post-employment opposing of unemployment benefits and filing of counterclaims could both count as acts of retaliation under the NYSHRL and NYCHRL, collecting cases, and denying defendant's motion to dismiss); Spencer v. Int'l Shoppes, Inc., 902 F. Supp. 2d 287, 294–300 (E.D.N.Y. 2012) (post-termination counterclaim was actionable as retaliation, regardless of whether there was a reasonable basis for the counterclaim).

By the same reasoning, the NYSHRL and NYCHRL apply to the present situation, where an employee's complaint succeeds in forcing a discriminator to resign.  Both the NYSHRL and NYCHRL make it illegal "for any person engaged in any activity to which this section applies to retaliate." N.Y. Exec. Law § 296(7); New York City, N.Y., Code § 8-107(7).  The relevant activity here is "employment" but, just as the Supreme Court noted in Robinson, the term "employment" contains no "temporal qualifier."  N.Y. Exec. Law § 292(5); New York City, N.Y., Code § 8-102.  And, just as in Robinson, other parts of the statutes suggest that they should apply to the present situation.  Both laws must "be construed liberally for the accomplishment of

the remedial purposes thereof." N.Y. Exec. Law § 300; New York City, N.Y., Code § 8-130

(reading "for accomplishment of the *uniquely* broad and remedial purposes thereof) (emphasis

added). A primary remedial purpose of the antiretaliation law is to protect those who have "filed

a complaint." N.Y. Exec. Law § 296(7); New York City, N.Y., Code § 8-107(7). But both laws

are governed by a three-year limitations period, N.Y.C.P.L.R. § 214(5); New York City, N.Y.,

Code § 8-502(d), and a complainant may come forward against an individual employer or aider-

abettor many years after the parties have left any colorable employment relationship with each

other. That does not mean the defendants are free to retaliate, and that is exactly why the courts

cited above (and numerous others) have held that post-filing counterclaims may be retaliatory.

To further illustrate, the NYSHRL gives as an explicit example of retaliation "disclosing an

employee's personnel files." N.Y. Exec. Law § 296(7). It makes no sense to allow a

discriminator to take the personnel files of the complainant like Lindsey Boylan, resign, and then

reveal the personnel file after their resignation. That would be an unnatural and narrow

construction undercutting the laws' remedial purpose. Accordingly, both the NYSHRL and

NYCHRL apply to all of the retaliation claims against Cuomo.

IV.     **THE AMENDED COMPLAINT PLAUSIBLY ALLEGES CAUSATION**

        Cuomo argues that the Amended Complaint lacks an allegation of discriminatory intent.

However, as an initial matter, the issue of causation is rarely even appropriate for summary

judgment as such a fact-specific inquiry is "a quintessential jury function." Rasmy v. Marriott

Int'l, Inc., 952 F.3d 379, 392 (2d Cir. 2020) (five months between complaint of discrimination

and adverse action sufficient to give rise to inference of retaliation at summary judgment stage).

In any case, the Amended Complaint contains the clearest possible allegation of retaliation:

Trooper 1 filed in federal court and, the same day, Cuomo (through his spokesman) tweeted that

she was extorting him.  See Rodriguez v. Town of Ramapo, 412 F. Supp. 3d 412, 443 (S.D.N.Y. 2019) ("Here, at the very least there is a causal connection because of temporal proximity, a four-month gap, between the November 2015 NAACP complaint and the March 2016 charges and suspension being brought against Plaintiff.)

Cuomo focuses solely on the allegations about his pre-filing statements, Cuomo Brf. at 22-23, but, again, these are not meant to state standalone causes of action.  Rather, they add context to the statement released on February 17, 2022, reinforcing two points.  First, as explained above, the pre-filing statements establish that the claim of "extortion" contained in the tweet conveyed an implicit threat of criminal prosecution or ethics filings and was more than just bombast addressed to the forum of public opinion.  Second, they establish that the statement was in fact commissioned by Cuomo from his spokesman as part of a running campaign of retaliatory threats.  Indeed, Cuomo later retweeted Azzopardi's statement.

## V.      THE NYCHRL APPLIES TO THE RETALIATION CLAIMS

Relying on Hoffman v. Parade Publications, 15 N.Y.3d 285, 290 (2010), Cuomo also argues that the City Law does not apply because Trooper 1 did not feel the effects of retaliation within New York City.  But he misreads Hoffman.

In Hoffman, the New York Court of Appeals defined who may "invoke[] the protection of the City Human Rights Law."  Id.  Relying on an "impact" test, the Court found that the City Law protects those who live or work in New York City.  Id.  Here, Cuomo does not argue – nor can he – that Trooper 1 did not work in New York City.  Indeed, many of the most serious incidents of harassment occurred in New York City, including Cuomo's first conversation with Trooper 1 and the incident on the elevator.  See Kraiem v. JonesTrading Institutional Servs. LLC., 492 F. Supp. 3d 184, 200 (S.D.N.Y. 2020) ("To the degree incidents of harassment . . .

occurred while Kraiem was in New York City, the Court sees no reason those claims cannot proceed.")  Moreover, Trooper 1 engaged in protected activity in New York City by filing this action in the Brooklyn.  Cuomo's actions were aimed at deterring and dissuading this New York City-based litigation.[12]  Clearly, Cuomo's unlawful actions had an "impact" here and the City Law applies.

## **CONCLUSION**

For these reasons, Trooper 1 respectfully requests that the Court deny Defendant Andrew Cuomos' motion in its entirety.

Dated:  August 16, 2022
   New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
   Valdi Licul
   John S. Crain

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com

*Counsel for Plaintiff*

---

[12] Cases about plaintiffs who live and work entirely outside of New York City, and then try to sue City-based employers, like Pedroza v. Ralph Lauren Corp., No. 19 Civ. 08639 (ER), 2020 WL 4273988, at *2–4 (S.D.N.Y. July 24, 2020), Amaya v. Ballyshear LLC, 340 F. Supp. 3d 215, 220–23 (E.D.N.Y. 2018) and Ware v. L-3 Vertex Aerospace, LLC, 833 F. App'x 357, 359 (2d Cir. 2020) do not address the factual situation alleged here and are inapposite.