**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

TROOPER 1,

                    Plaintiff,

      v.

NEW YORK STATE POLICE, ANDREW
CUOMO, MELISSA DEROSA and RICHARD
AZZOPARDI,

                  Defendants.

Case No.: 22-cv-00893 (LDH) (TAM)

---

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MELISSA DEROSA AND RICHARD AZZOPARDI'S
# <u>MOTION TO DISMISS</u>

Elkan Abramowitz
Catherine M. Foti
Rachel Fleig-Goldstein
Joseph Stern

MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017

*Attorneys for Defendants*
  *Melissa DeRosa and Richard*
  *Azzopardi*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ........................................................................................... 1

BACKGROUND AND SUMMARY OF RELEVANT ALLEGATIONS ................................... 3

LEGAL STANDARD .......................................................................................................... 11

ARGUMENT ....................................................................................................................... 12

I.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST MS. DEROSA FOR DISCRIMINATION ....................................................................... 12

    A.    Trooper 1 Does Not and Cannot Allege that Ms. DeRosa Knew about the Alleged Harassment ..................................................................................................................... 13

    B.    Regardless of Knowledge, Ms. DeRosa Did Not Participate in the Alleged Harassment ..................................................................................................................... 15

II.   NEITHER MS. DEROSA NOR MR. AZZAPARDI RETALIATED AGAINST TROOPER 1 AS A MATTER OF LAW ........................................................................ 17

    A.    Plaintiff's Retaliation Claims Under the NYSHRL Fail Because No Employment Relationship Existed and Consequently Plaintiff Cannot Show that She Suffered Any Adverse Employment Action ................................................................................................ 18

    B.    Plaintiff Fails to Show the NYCHRL Is Applicable to Her Claim and Fails to Allege an Employment or Economic Relationship Between the Parties .......................................... 19

    C.    Ms. DeRosa and Mr. Azzopardi's Remarks Would Not Dissuade a Reasonable Person from Engaging in Protected Activity ...................................................................... 21

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................... 11

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................... 11

*Burlington Northern and Santa Fe Ry. Co. v. White,*
  548 U.S. 53 (2006) ........................................................................... 21

*Cerrato v. Durham,*
  941 F.Supp. 388 (S.D.N.Y 1996) .................................................... 12

*Chin v. CH2M Hill Companies, Ltd.,*
  2012 WL 4473293 (S.D.N.Y. Sept. 28, 2012) ................................ 20

*Chung v. City Univ. of New York,*
  605 F. App'x 20 (2d Cir. 2015) ...................................................... 22

*Conde v. Sisley Cosms. USA, Inc.,*
  2012 WL 1883508 (S.D.N.Y. May 23, 2012) ................................. 14

*Darby v. Greenman,*
  14 F.4th 124 (2d Cir. 2021) ............................................................ 11

*DeLuca v. AccessIT Grp., Inc.,*
  695 F.Supp.2d 54 (S.D.N.Y. 2010) ................................................... 1

*Distributorsoutlet.com, LLC v. Glasstree,*
  2016 WL 3248310 (E.D.N.Y. June 10, 2016) ................................. 11

*Dixon v. Int'l Bhd. of Police Officers,*
  504 F.3d 73 (1st Cir. 2007) ............................................................. 23

*Dunson v. Tri-Maint. & Contractors,* Inc.,
  171 F. Supp. 2d 103 (E.D.N.Y. 2001) ............................................ 16

*Eckhart v. Fox News Network, LLC,*
  2021 WL 4124616 (S.D.N.Y. Sep. 9, 2021) ................................... 21

*Farmer v. Shake Shack Enters.*, LLC,
    473 F.Supp.3d 309 (S.D.N.Y. 2020) ................................................................. 12

*Feingold v. New York*,
    366 F.3d 138 (2d Cir. 2004) ............................................................... 12, 15, 16

*Forrest v. Jewish Guild for the Blind*,
    3 N.Y.3d 295 (2004) ...................................................................................... 17, 18

*Fried v. LVI Servs., Inc.*,
    2011 WL 2119748 (S.D.N.Y. May 23, 2011) ................................................ 12

*Friederick v. Passfeed, Inc.*,
    2022 WL 992798 (S.D.N.Y. Mar. 31, 2022) ............................................ 12, 16

*G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC*,
    2004 WL 1172762 (S.D.N.Y. May 27, 2004) ................................................ 24

*Galabya v. N.Y.C. Bd. of Educ.*,
    202 F.3d 636 (2d Cir. 2000) .......................................................................... 19

*Giraldo v. Kessler*,
    694 F.3d 161 (2d Cir. 2012) ........................................................................... 9

*Gittens v. Winthrop Hospitalist Assocs., P.C.*,
    2022 WL 504490 (E.D.N.Y. Feb. 18, 2022) ............................................ 13, 15

*Greenbelt Co-op. Pub. Ass'n v. Bresler*,
    398 U.S. 6 (1970) ...................................................................................... 24, 25

*Holleman v. Art Crating Inc.*,
    2014 WL 4907732 (E.D.N.Y. Sept. 30, 2014) .............................................. 23

*Kugel v. Queens Nassau Nursing Home Inc.*,
    2021 WL 5701408 (E.D.N.Y. Oct. 20, 2021) ............................................... 18

*Lax v. City Univ. of New York*,
    2020 WL 6161253 (E.D.N.Y. Oct. 21, 2020) ............................................... 22

*Lewis v. Triborough Bridge & Tunnel Auth.*,
    77 F.Supp.2d 376 (S.D.N.Y.1999) .......................................................... 15, 16

*Luka v. Bard Coll.*,
    263 F. Supp. 3d 478 (S.D.N.Y. 2017) ........................................................... 16

*Malena v. Victoria's Secret Direct, LLC,*
    886 F. Supp. 2d 349 (S.D.N.Y. 2012) ........................................ 12

*Marchuk v. Faruqi & Faruqi, LLP,*
    100 F. Supp. 3d 302 (S.D.N.Y. 2015) ....................................... 19

*McDougal v. Fox News Network, LLC,*
    489 F. Supp. 3d 174 (S.D.N.Y. 2020) ....................................... 24

*McHenry v. Fox News Network*, LLC,
    510 F. Supp. 3d 51 (S.D.N.Y. 2020) ......................... 12, 13, 14, 15

*Melius v. Glacken,*
    94 A.D.3d 959 (2d Dep't 2012) ............................................... 24

*Melman v. Montefiore Med. Center,*
    98 A.D.3d 107 (1st Dept. 2012) ............................................... 23

*Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,*
    715 F.3d 102 (2d Cir. 2013) ............................................. 17, 22

*Miller v. City of Ithaca,*
    179 A.D.3d 1235 (3d Dep't 2020) ............................................ 19

*Mucciarone v. Initiative, Inc.,*
    2020 WL 1821116 (S.D.N.Y Apr. 10, 2020) ............................... 22

*Nunez v. Lima,*
    762 F. App'x 65 (2d Cir. 2019) .............................................. 21

*Olsen v. Suffolk Cnty.,*
    2016 WL 5395846 (E.D.N.Y. Sept. 27, 2016) ............................ 14

*Peretti v. Authentic Brands Grp. LLC,*
    33 F.4th 131 (2d Cir. 2022) ................................................... 11

*Robles v. Cox & Co., Inc.,*
    841 F. Supp. 2d 615 (E.D.N.Y. 2012) ...................................... 20

*Sabharwal & Finkel, LLC v. Sorrell,*
    117 A.D.3d 437 (1st Dep't 2014) ............................................ 24

*Satan Wears Suspenders, Inc. v. Jaar,*
    2022 WL 2181449 (S.D.N.Y. June 16, 2022) ............................. 11

*Schmitt v. Artforum Int'l Mag., Inc.*,
178 A.D.3d 578 (1st Dep't 2019) ........................................................ 20

*Smiley v. Cassano*,
2012 WL 967436 (S.D.N.Y. Mar. 21, 2012) ......................................... 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ............................................................................. 1

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
663 F.3d 556 (2d Cir. 2011) ................................................................. 22

*United States ex rel. Foreman v. AECOM*,
19 F.4th 85 (2d Cir. 2021) ................................................................... 9

*Vangas v. Montefiore Medical Ctr.*,
823 F.3d 174 (2d Cir. 2016) ................................................................. 19

**Statutes**

N.Y. Exec. Law § 296(6) ........................................................................... 12

N.Y.C Admin. Code § 8-107(6) .................................................................. 12

N.Y.C. Admin. Code § 8–107(7) ................................................................. 24

N.Y. Penal Law § 155.05 ........................................................................... 24

*New York Executive Law Section 63(8)* .................................................. 1, 4

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................... 1

Federal Rule of Evidence 201(b)(2) ........................................................... 9

Defendants Melissa DeRosa and Richard Azzopardi respectfully submit this memorandum of law in support of their motion to dismiss the claims brought against them in the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.[1]

## **PRELIMINARY STATEMENT**

By her own admission, Plaintiff, a trooper employed by the New York State Police, had only "[a] few" interactions with Melissa DeRosa, an aide to former Governor Andrew Cuomo – and those interactions consisted primarily of saying "just hi and bye." Similarly, Ms. DeRosa admits that she only knew Trooper 1 "in passing," while there appears to be no allegation, nor evidence, that Richard Azzopardi, another former aide to Governor Cuomo, knew her at all. Declaration of Catherine M. Foti ("Foti Decl."), Ex. 1 – *In the Matter of the Independent Investigation under New York Executive Law Section 63(8),* Trooper 1 Transcript (May 19, 2021) ("Trooper 1 Tr.") at 117; Foti Decl., Ex. 2 – Melissa DeRosa Transcript (July 5, 2021) ("DeRosa Tr.") at 107.[2] Yet, notwithstanding the fact that Plaintiff exchanged no more than a few words with Ms. DeRosa and likely none at all with Mr. Azzopardi, Plaintiff has chosen to

---

[1] We join in former Governor Andrew Cuomo's Motion to Dismiss and incorporate by reference the legal arguments made in Governor Cuomo's motion to the extent those arguments apply to the claims against Ms. DeRosa and Mr. Azzopardi.

[2] Although in considering the merits of a motion to dismiss, courts normally are limited to the allegations contained in the four corners of the complaint, a court is entitled to consider extrinsic evidence when that evidence is contained in documents incorporated into a complaint by reference. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (when ruling on rule 12(b)(6) motions to dismiss, "courts must consider . . . documents incorporated into the complaint by reference . . . ."); *DeLuca v. AccessIT Grp., Inc.*, 695 F.Supp.2d 54, 60 (S.D.N.Y. 2010) (same). In this case, almost the entirety of the Amended Complaint is based on the New York Attorney General's Report of Investigation into Allegations of Sexual Harassment by Governor Andrew M. Cuomo (August 3, 2021) ("AG Report" or "Report"), Foti Decl., Ex. 3, and various witness interview transcripts that allegedly formed the basis of that Report. Indeed, although the Plaintiff fails to credit the source of the numerous quotes included in the Amended Complaint, she clearly has relied almost exclusively on the Report to frame her Amended Complaint and derived the majority of her allegations from the AG's Report, the underlying testimony and accompanying documentary evidence. Plaintiff has incorporated these investigation materials by reference into the Amended Complaint, mandating that the Court consider these materials in determining the merits of this motion to dismiss.

drag them into her dispute with the former Governor, accusing Ms. DeRosa of somehow being involved in the Governor's alleged sexual harassment of Trooper 1 and accusing both Ms. DeRosa and Mr. Azzopardi of retaliating against her by denying her baseless claims. In an attempt to manufacture liability against them, Plaintiff stretches the definition of discrimination and retaliation beyond what the law allows. Even a cursory review of the Amended Complaint demonstrates that Trooper 1's allegations against Ms. DeRosa and Mr. Azzopardi are not only meritless, they are nonexistent.

With respect to the allegations of discrimination lodged against Ms. DeRosa, the Amended Complaint does not allege that Ms. DeRosa had any knowledge of the alleged discrimination being committed by Governor Cuomo nor that she was aware of the alleged comments underlying Plaintiff's claim for harassment, overheard those comments, or witnessed any of the alleged incidents of inappropriate touching on which Plaintiff bases her allegations of discrimination. Consequently, Plaintiff has not and cannot allege that Ms. DeRosa participated in the discrimination or shared the intent or purpose of Governor Cuomo in his alleged harassment of Plaintiff. Therefore, because the Amended Complaint is devoid of factual assertions plausibly to infer that Ms. DeRosa knew that Governor Cuomo was harassing Trooper 1 (and in no way are we stipulating he was), the third and fifth causes of action for discrimination in violation of the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL") must be dismissed as to Ms. DeRosa.

Likewise, the fourth and sixth causes of action, alleging that Ms. DeRosa and Mr. Azzopardi retaliated against Plaintiff through a single instance of criticism regarding Plaintiff's meritless actions in connection with this litigation fail for two independent reasons: First, neither Ms. DeRosa nor Mr. Azzopardi had any employment or economic relationship with Plaintiff at

the time each made the allegedly retaliatory remark, which is fatal to any retaliation claim; second, the allegedly retaliatory remark each made (even if taken as true for purposes of this motion) equated to nothing more than criticism of the Plaintiff for filing a complaint they believed to be meritless – conduct which does not constitute an adverse employment action as required to state a claim under the NYSHRL, nor conduct that would dissuade a reasonable person from engaging in protected activity, as required by the NYCHRL.  Therefore, the retaliation claims as against Ms. DeRosa and Mr. Azzopardi, under the NYSHRL and NYCHRL, also should be dismissed.

## **BACKGROUND AND SUMMARY OF RELEVANT ALLEGATIONS[3]**

Having risen through the ranks of government service working for a member of Congress and the New York Attorney General, Melissa DeRosa joined the Office of the Governor of the State of New York ("Governor's Office") in April 2013 working for former Governor Andrew Cuomo.  *See* Foti, Declr., Ex. 2 – DeRosa Tr. at 22.  From then until she resigned, in August 2021 (Am. Compl. ¶ 14), Ms. DeRosa worked first as communications director for Governor Cuomo, and then as his strategic advisor, Chief of Staff and finally Secretary.  This round the clock work included advocating for the extension of the New York State sexual harassment laws and the relentless dedication to navigating almost 18 months of the State government's response to Coronavirus, the greatest public health emergency facing New York State in a century.  Indeed, Ms. DeRosa is possibly most well-known for her daily appearances at Governor Cuomo's Coronavirus press conferences, during which she portrayed a reassuring facade of calm and competence in what was an endless storm of activity.

---

[3] The facts contained herein are based on the Amended Complaint and are accepted as true under Rule 12(b)(6) only for the purposes of this motion.  Nothing in this motion is intended to be an admission as to the veracity of any allegations contained in Plaintiff's Amended Complaint.

Richard Azzopardi began his career as a reporter for local and regional newspapers and thereafter transitioned to working for a New York state senator until May 2012, when he began working for the Governor's Office as press secretary and eventually senior advisor and communications director, a position he held until he resigned in August 2021. Foti Decl., Ex. 4 – *In the Matter of the Independent Investigation under New York Executive Law Section 63(8), Richard Azzopardi Transcript (June 23, 2021) ("Azzopardi Tr.") at 18-19; see* Am. Compl. ¶ 15.

According to the Amended Complaint, Governor Cuomo allegedly sexually harassed Plaintiff and other current and former state employees during his tenure as Governor. Am. Compl. ¶¶ 1, 3. According to Plaintiff, Governor Cuomo requested that Trooper 1 be assigned to the Protective Service Unit ("PSU"), a division of the New York State Police ("NYSP") charged with protecting the Governor, and thereafter, the service requirements were changed from three years of experience with the NYSP to two years. *Id.* ¶¶ 22-29. The Amended Complaint, however, does not allege that Ms. DeRosa or Mr. Azzopardi requested that Plaintiff be transferred nor that they had anything to do with the alleged change in the length of service required for the position.

According to Plaintiff, she applied for and was granted the transfer to the PSU in January 2018. *Id.* ¶ 29. Thereafter, Plaintiff apparently started guarding the Governor at his personal residence in Mt. Kisco, where, based on the allegations in the Amended Complaint, nothing objectionable happened until September 2018 when the Governor allegedly asked Plaintiff about her personal life and when Plaintiff said she would be in Albany, invited her to tour the Governor's mansion. *Id.* ¶ 34. The Amended Complaint does not allege that Ms. DeRosa or Mr. Azzopardi were present for this exchange nor that they ever learned about it.

The Amended Complaint then goes on to describe various interactions between Plaintiff and the Governor which Plaintiff alleges involved sexually explicit comments or incidents of inappropriate touching. *Id.* ¶¶ 34-61. Although Plaintiff claims that she found these interactions with the Governor harassing, she never claims that Ms. DeRosa or Mr. Azzopardi knew about them or had anything to do with them.

According to Plaintiff, in April 2019, after a little more than one year working for the Governor, she was promoted to a position with the Governor's travel team, which she herself describes as "a coveted transfer" and a more prestigious role offering a "clear path to a promotion to the Investigator rank." *Id.* ¶¶ 40-41. According to the Amended Complaint, the travel detail also offered increased opportunity for additional pay in overtime and additional responsibilities. *Id.* ¶ 41. The Amended Complaint does not allege that either Ms. DeRosa or Mr. Azzopardi had any role in securing the Plaintiff's transfer, nor that they even knew about the transfer. Plaintiff then makes various claims accusing the Governor of additional alleged acts of inappropriate conduct, *see id.* ¶¶ 42-61 & 70-73, but again does not claim either Ms. DeRosa or Mr. Azzopardi participated in or witnessed any of those alleged instances. According to the Amended Complaint, and apparently without any interference by Ms. DeRosa and Mr. Azzopardi, on December 26, 2019, Plaintiff was promoted yet again to Investigator. *Id.* ¶ 60.

In late 2020, Lindsey Boylan made public allegations about the difficulty of working in the Governor's Office. Those statements, although at first referencing the allegedly toxic nature of the environment, eventually evolved into an allegation of sexual harassment. *Id.* ¶ 62. Around that time the *Times Union*, an Albany based newspaper, was considering writing an article about the circumstances of Trooper 1's transfer to the PSU and how she was selected for the position – the implication being that she was only hired due to her appearance. *Id.* ¶¶ 64-66.

In response to the *Times Union*'s inquiry, the New York State Police began looking into Trooper 1's transfer and drafted a statement addressing the *Times Union's* questions. *See* Foti Decl., Ex. 5 – Exhibit 31 of Appendix Volume I of III to the Report of Investigation into Allegations of Sexual Harassment by Governor Andrew M. Cuomo ("Exhibit 31 to the Report"). The information contained in that statement was then provided to Ms. DeRosa,[4] who relied on it in speaking to the paper's editor and telling him:

> You don't have your facts straight. This woman, from everything I hear, is strong, smart, incredibly qualified, and does a phenomenal job. And you guys are trying to reduce her hiring to being about her looks.

Foti Decl., Ex. 2 – DeRosa Tr. at 103; Am. Compl. ¶ 66. The *Times Union* subsequently decided not to write about this topic. Foti Decl., Ex. 2 – DeRosa Tr. at 106; Am. Compl. ¶ 67. According to Trooper 1, this decision was the result of Ms. DeRosa's "yelling" at the editor, which allegedly cleared the way for Governor Cuomo to continue to harass Plaintiff. Am. Compl. ¶ 67. Crucially, the Amended Complaint does not allege that Ms. DeRosa knew or

---

[4] That statement is repeated in an email among members of the State Police. *See* Foti Decl., Ex. 5 – Exhibit 31 to the Report:

> [Redacted] joined the Protective Service Unit in January 25, 2018, along with Trooper with the same exact amount of experience. Since June of 2012,Sttae Police has required three years of Division service in order to qualify for appointment to the PSU.

> Her assignment was based on her performance while assisting the PSU at an event in November of 2017. A Senior Investigator on the detail was impressed by her work and attitude, and recommended her as a possibility to fill an opening on the unit. PSU conducted a standard review of her work as a Trooper, which included interviews with her supervisors, who praised her work and agreed that she would be a good candidate for PSU. In the Senior Investigator's words she was "squared away." High praise indeed in the State Police parlance. [Trooper 1] expressed an interest in joining the unit, and wrote a memo requesting a transfer.

> Based on her performance as Trooper on the PSU, [Trooper 1] was promoted to the rank of Investigator on December 26, 2019.

> Any suggestion that [Trooper 1's] assignment to the PSU and subsequent promotion was based on anything other than her hard work and abilities is false. Such a suggestion [is] an insult to [Trooper 1] and the New York State Police.

suspected that Governor Cuomo asked to have Trooper 1 transferred to his detail because of her looks nor that Ms. DeRosa knew or suspected the Governor was harassing Trooper 1.

Months later, another individual alleged that the Governor had harassed her as well, which then led to the Attorney General commencing an investigation. *See id.* ¶¶ 150 & 152. Plaintiff, Ms. DeRosa and Mr. Azzopardi all were called to testify in connection with that investigation. Plaintiff and Ms. DeRosa were questioned about each other and as both Plaintiff and Ms. DeRosa testified, the two barely knew each other. Trooper 1 only had "[a] few" interactions with Ms. DeRosa, which were primarily "just hi and bye," and Ms. DeRosa only knew Trooper 1 "in passing." Foti Decl., Ex. 1 – Trooper 1 Tr. at 117; Foti Decl., Ex. 2 – DeRosa Tr. at 107. Indeed, the only substantive interaction Trooper 1 had with Ms. DeRosa was an exchange in a car (in which Ms. DeRosa was riding *without the Governor*) over where Ms. DeRosa wanted to be let out. *See* Foti Decl., Ex. 1 – Trooper 1 Tr. at 117-20. Mr. Azzopardi was not questioned about his knowledge of Trooper 1 and the Amended Complaint does not suggest that they knew each other.

On August 3, 2021, the Attorney General issued its Report and held a press conference, purporting to find that the Governor had engaged in a pattern of sexual harassment, including harassing Trooper 1. However, nothing in the Report suggested that Ms. DeRosa had any knowledge of any purported inappropriate conduct by the Governor directed at Plaintiff nor that she failed to report known instances of harassment. Further, the AG's Report did not include any findings suggesting that Ms. DeRosa participated in Governor Cuomo's alleged harassment of Trooper 1. *See* Foti Decl., Ex. 3 – AG Report at 43-44. The AG's Report did reference Ms. DeRosa with respect to allegations raised by other women, but it did not conclude that Ms.

DeRosa had any contemporaneous knowledge of any alleged incidents of harassment nor that she witnessed any such incidents.

Notwithstanding the lack of evidence that Ms. DeRosa participated in the Governor's alleged harassment of Trooper 1, and the fact that by Trooper 1's own admission she did not know Ms. DeRosa, on September 28, 2021, Plaintiff's attorneys inexplicably sent a demand letter to Ms. DeRosa's then attorney, claiming that Ms. DeRosa "aided and abetted the Governor's unlawful conduct by failing to report known instances of harassment and, even more alarmingly, taking affirmative steps to conceal the Governor's behavior and retaliating against some of his victims who protested." Foti Decl., Ex. 6. The letter claimed that Ms. DeRosa's conduct enabled the Governor to continue his pattern of harassment against Trooper 1" and that Trooper 1 was prepared to "initiate litigation to vindicate her rights, including bringing claims against Ms. DeRosa, who aided and abetted [the Governor's] unlawful conduct. . . ." *Id.* Counsel for Ms. DeRosa replied to this letter denying the allegations, stating that Trooper 1's claims were meritless and requesting any facts supporting Trooper 1's claims. Foti Decl., Ex. 7. Significantly, Ms. DeRosa's counsel noted that Trooper 1's alleged claims of harassment predated the alleged "aiding and abetting conduct" in which Ms. DeRosa purportedly engaged. *Id.* Counsel went further stating that, given the meritless nature of Trooper 1's demand letter, should Trooper 1 choose to proceed, Counsel for Ms. DeRosa would "fight it vigorously and seek all available remedies." *Id.*

Shortly after Ms. DeRosa rejected Plaintiff's demand, the AG released a copy of Plaintiff's testimony, throughout which she is identified as Trooper 1. Foti Decl., Ex. 1 – Trooper 1 Tr. Although the AG chose to redact certain sensitive parts of her testimony and use pseudonyms to identify certain individuals, she chose not to redact the sections of Trooper 1's

testimony where Trooper 1 repeats wholly unsubstantiated rumors concerning the Governor "making out" with a member of his staff – identified by the alias "Senior Staffer #1." *See id.* Even though Trooper 1 had never been witness to any such interactions, she testified that another Trooper (who later denied Trooper 1's account in testimony) told her the Governor and Senior Staffer #1 had been caught "making out on the sidewalk like they were high schoolers." *Id.* at 115. Trooper 1 also went on to testify that she had heard another rumor about the Governor and Senior Staffer #1 being "in a hotel room by themselves for like an hour" and that Trooper 1 had heard another rumor about "Senior Staffer #1 and the Governor like making out" in a car (another rumor the alleged original source denied in testimony). *Id.* at 116-17.

The same week after the AG released Trooper 1's testimony, the *New York Post* published a front-page article titled "Ex-Gov. Cuomo, married aide DeRosa allegedly caught 'making out': trooper," accompanied by a picture of the Governor and Ms. DeRosa having dinner five years earlier. *See* Bernadette Hogan & Bruce Golding, *Ex-Gov. Cuomo, married aide DeRosa allegedly caught 'making out': trooper*, New York Post (Nov. 12, 2021), [https://nypost.com/2021/11/12/ex-gov-cuomo-married-aide-derosa-allegedly-caught-making-out-trooper/](https://nypost.com/2021/11/12/ex-gov-cuomo-married-aide-derosa-allegedly-caught-making-out-trooper/); Foti Decl., Ex. 8.[5] The article, which discussed Trooper 1's testimony, repeated the unsubstantiated rumors about the Governor "making out" with Senior Staffer #1 and claimed that the individual who Trooper 1 identified as that staffer was Ms. DeRosa. *Id.* In response, Ms.

---

[5] As discussed in Note 1, *supra*, because the *New York Post* article is the basis for Plaintiff's claim that Ms. DeRosa retaliated against Plaintiff, Ms. DeRosa's use of the word "extortion" must be viewed in the context of her full statement, and the article is incorporated into the Amended Complaint by reference. And even if it was not incorporated by reference, the article is so integral to the complaint that this Court is permitted to consider it. *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021), cert. denied, No. 21-1314, 2022 WL 1295727 (U.S. May 2, 2022) ("Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint.") (citations omitted). Further, this newspaper article is a matter of public record, and the Court has and should exercise its discretion to take judicial notice pursuant to Federal Rule of Evidence 201(b)(2). *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (a court may "take judicial notice of relevant matters of public record.").

DeRosa, who had resigned her position as a member of the Governor's staff months earlier, is quoted as saying:

> Am I Senior Staffer #1?  I have no idea — you'd have to ask the AG's office, but the things this person says is flat-out false[.]
>
> It's beyond the pale for this trooper, who by her own admission I barely knew — who has already attempted to extort me for money — to make these accusations based on false rumors and for them to be printed in a newspaper.  Not only is this ludicrous, it's hurtful, and potentially actionable.  *Id*.

Shortly after the AG released Trooper 1's testimony, the Assembly Judiciary Committee released its own investigation report.  Foti Decl., Ex. 9 – Impeachment Investigation Report to Judiciary Committee Chair Charles Lavine and the New York State Assembly Judiciary Committee (Nov. 22, 2021).  This report does not include any findings that Ms. DeRosa or Mr. Azzopardi had any substantive interactions with Trooper 1 or that either had any knowledge of the alleged harassment.

On February 17, 2022, Trooper 1 commenced the present action charging Ms. DeRosa with discrimination for allegedly "conceal[ing] the Governor's unlawful conduct," Am. Compl. ¶ 65, as well as for retaliation for Ms. DeRosa's attempt to defend herself from the baseless rumors the Trooper repeated and meritless claims she asserted.  On that same day, Mr. Azzopardi, who at this time was no longer employed by the State and acting solely as a private citizen, tweeted a statement stating that the law firm representing Plaintiff was "widely known to use the press to extort settlements on behalf of 'anonymous claimants'" and that Governor Cuomo "will fight every attempt at cheap cash extortions and is anxious to have the dirty politics stop."  Foti Decl., Ex. 10 – Rich Azzopardi (@RichAzzopardi), Twitter (Feb. 17, 2022), https://twitter.com/RichAzzopardi/status/1494471518033743876; *id.* ¶ 159.  That night, counsel for Plaintiff, Douglas Wigdor, sent Mr. Azzopardi a message on LinkedIn demanding that Governor Cuomo disavow the statement Mr. Azzopardi had tweeted and that Mr. Azzopardi

immediately retract the statement, "[o]therwise, we will immediately file an action for defamation against you and the former governor and our client will add retaliation claims." Foti Decl., Ex. 11 – Rich Azzopardi (@RichAzzopardi), Twitter (Feb. 17, 2022), https://twitter.com/richazzopardi/status/1494500938886881283?s=21&t=n5Mv-R0KZNDJLzLuKIkgVw.[6] Mr. Azzopardi did not retract his statement, and the next day, Plaintiff amended her complaint to add Mr. Azzopardi as a defendant claiming that his tweet amounted to legal retaliation.

## LEGAL STANDARD

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint that merely tenders naked assertions devoid of further factual enhancement fails to meet this standard, as do unadorned, the-defendant-unlawfully-harmed-me accusations." *Darby v. Greenman*, 14 F.4th 124, 127 (2d Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678) (internal citations and quotation marks omitted). Accordingly, "dismissal is appropriate where the complaint fails to set out a legal claim that is plausible on its face." *Peretti v. Authentic Brands Grp. LLC*, 33 F.4th 131, 137 (2d Cir. 2022) (internal quotation marks and citations omitted).

---

[6] Mr. Azzopardi's initial tweet is incorporated into the Amended Complaint by reference because Plaintiff excerpts the tweet. *See supra* at Notes 1 & 4. These excerpts form the sole basis for Plaintiff's retaliation claims against Mr. Azzopardi. Additionally, the Court may properly take judicial notice of both tweets because such posts "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." *See Satan Wears Suspenders, Inc. v. Jaar*, No. 21 CIV. 812 (ER), 2022 WL 2181449, at Note 6 (S.D.N.Y. June 16, 2022) (citing *Distributorsoutlet.com, LLC v. Glasstree*, 2016 WL 3248310, at *2 (E.D.N.Y. June 10, 2016) (taking notice of archived webpages)).

<u>**ARGUMENT**</u>

## I. THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST MS. DEROSA FOR DISCRIMINATION

Plaintiff's third and fifth causes of action against Ms. DeRosa purport to state a claim for discrimination in violation of the NYSHRL and the NYCHRL. Both the NYSHRL and NYCHRL statutes limit individual liability for discrimination "to cases where an individual defendant . . . actually participates in the conduct giving rise to the plaintiff's [discrimination or] retaliation claim." *Friederick v. Passfeed, Inc.*, No. 21-CV-2066 (RA), 2022 WL 992798, at *9 (S.D.N.Y. Mar. 31, 2022) (quoting *Malena v. Victoria's Secret Direct, LLC*, 886 F. Supp. 2d 349, 366 (S.D.N.Y. 2012)). "In instances where a person is not directly liable for violating the NYSHRL, that person may still be liable if he is found to have 'aid[ed], abet[ted], incite[d], compel[led] or coerce[d] the doing of any of the acts forbidden under this [provision], or to attempt[ed] to do so.'" *Id.* (quoting N.Y. Exec. Law § 296(6)). The same is true for cases under the NYCHRL. N.Y.C Admin. Code § 8-107(6). Courts in this Circuit apply the same standard to aiding and abetting claims under the NYSHRL and NYCHRL "because the language of the two laws is virtually identical." *McHenry v. Fox News Network*, LLC, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020) (quoting *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004) (internal quotation marks and citation omitted)). "To state a claim for aiding and abetting unlawful harassment, discrimination, or retaliation, a plaintiff must plead that the defendant 'actually participate[d]' in such unlawful conduct by the employer [or principal]." *Id.* (quoting *Farmer v. Shake Shack Enters.*, LLC, 473 F.Supp.3d 309, 337 (S.D.N.Y. 2020)). Courts look to whether the plaintiff has alleged facts that show the aider and abettor shared a common intent or purpose with the principal actor. *Fried v. LVI Servs., Inc.*, No. 10 CIV. 9308 JSR, 2011 WL 2119748, at *7 (S.D.N.Y. May 23, 2011) (citation omitted); *see also Cerrato v. Durham*, 941 F.Supp. 388,

396 (S.D.N.Y 1996) (noting that in order to find that a defendant actually participated in the discriminatory conduct it is necessary to show "direct, purposeful participation.").

Trooper 1 alleges that Ms. DeRosa concealed Governor Cuomo's harassment by "yell[ing] at the editor of *The Times Union* and accus[ing] him of being sexist" for inquiring about the circumstances of Trooper 1's transfer to the PSU. Am. Compl. ¶ 66. According to Trooper 1, as a result of this, "*The Times Union* decided not to write on the subject, clearing the way for the Governor to continue to harass Trooper 1." *Id.* ¶ 67. These allegations are insufficient to plead that Ms. DeRosa directly participated in the discrimination and therefore aided and abetted the alleged harassment.

### A. Trooper 1 Does Not and Cannot Allege that Ms. DeRosa Knew about the Alleged Harassment

This Court has previously recognized that where the plaintiff fails "to make nonconclusory allegations that [the defendant] played any role in the alleged misconduct whatsoever," the defendant may not be held liable. *Gittens v. Winthrop Hospitalist Assocs., P.C.*, No. 19-CV-5070 (LDH) (LB), 2022 WL 504490, at *8 (E.D.N.Y. Feb. 18, 2022) (dismissing aiding and abetting claims against the individual defendant where the only nonconclusory allegation was that Plaintiff reported to her). Here, Plaintiff does not allege that Ms. DeRosa ever witnessed Governor Cuomo sexually harassing Trooper 1 (assuming that he was for the sake of this motion), nor does she allege that Ms. DeRosa was ever put on notice about any past or continuing harassing conduct Plaintiff experienced. Indeed, as both Ms. DeRosa and Trooper 1 both acknowledge, they barely knew each other and exchanged little more than passing greetings. *See* Foti Decl., Ex. 1 – Trooper 1 Tr. at 117; Foti Decl., Ex. 2 – DeRosa Tr. at 107. Therefore, there is no basis to believe that Ms. DeRosa had any idea that the Governor allegedly was subjecting Plaintiff to inappropriate behavior. *See McHenry*, 510 F.

Supp. 3d at 77 (dismissing aiding and abetting claims as to the individual defendant because "the Amended Complaint lack[ed] non-conclusory allegations that [the defendant] knew of [the accused principal's] harassment of the plaintiff while it was ongoing."); *see also Olsen v. Suffolk Cnty.*, No. 15-CV-4064 (JS) (AYS), 2016 WL 5395846, at *17 (E.D.N.Y. Sept. 27, 2016) (dismissing NYSHRL discrimination claim because it did not allege that the individual defendants were actually aware of any harassment); *Conde v. Sisley Cosms. USA, Inc.*, No. 11 CIV. 4010 (RJS), 2012 WL 1883508, at *6 (S.D.N.Y. May 23, 2012) (dismissing NYCHRL claim because Plaintiff had "not alleged facts sufficient to establish a plausible claim that [Defendant was] in any way responsible for the alleged discrimination and retaliation.").

Further, Plaintiff's discrimination claims against Ms. DeRosa must be dismissed because it cannot be plausibly inferred that Ms. DeRosa knew of Governor Cuomo's allegedly harassing conduct with respect to Trooper 1. The Amended Complaint does not allege that Ms. DeRosa had any supervisory role with respect to Plaintiff, nor could it. Moreover, any suggestion that she should have known about Governor Cuomo's interactions with Trooper 1 because Ms. DeRosa was the Chief of Staff is insufficient to establish liability. *See McHenry*, 510 F. Supp. 3d at 77. It is not enough to "attribute to a supervisory executive, purely on account of title and responsibilities, real-time omniscience about personnel developments." *Id*. Additionally, while the Amended Complaint includes vague references to Ms. DeRosa's supposed knowledge of and involvement with the investigation into other women's allegations against Governor Cuomo, Plaintiff does not allege any knowledge or reason as to why Ms. DeRosa would have known about Plaintiff's allegations at the time she spoke with the editor of the *Times Union*.

**B. Regardless of Knowledge, Ms. DeRosa Did Not Participate in the Alleged Harassment**

Even if Ms. DeRosa had knowledge of the alleged harassment, Plaintiff still has not pled sufficient facts to allege aiding and abetting liability as to Ms. DeRosa because she did not "actually participate[] in the conduct giving rise to the discrimination." *Feingold v. New York*, 366 F.3d 138, 158 (2d Cir. 2004). If a plaintiff fails to plead "facts suggesting that a defendant displayed any intent to discriminate or was in any way involved in the alleged discriminatory scheme," then the defendant may not be held liable. *Gittens*, 2022 WL 504490, at *8 (quoting *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F.Supp.2d 376, 381 (S.D.N.Y.1999)).

Plaintiff has not pled any facts that suggest Ms. DeRosa displayed any intent to discriminate with respect to Trooper 1 when Ms. DeRosa spoke to the editor of the *Times Union* and expressed concern that the story was sexist since Trooper 1 was qualified and highly skilled at her job. Am. Compl. ¶¶ 64-66; *see also* Foti Decl., Ex. 2 – DeRosa Tr. at 102-04. Courts have dismissed claims where a plaintiff has alleged far more involvement in the alleged harassment. For example, in *McHenry v. Fox News Network, LLC*, the court found that the plaintiff's allegations regarding a human resources official's questions while investigating the plaintiff's complaints of sexual harassment and alleged failure "to take an appropriate action" were "inadequate to plead that [the defendant] actually participated in aiding and abetting harassment, discrimination, or retaliation against [the plaintiff]." 510 F. Supp. 3d at 78. The court explained that with regard to aiding and abetting harassment, the plaintiff contended that the defendant's question to her "as to what she had done to 'provoke' [the principal defendant accused of harassment]" was discriminatory and retaliatory in and of itself. *Id.* The court disagreed that "this comment by a Human Resources official, even if construed to bespeak factual skepticism by [the defendant] of [the plaintiff]'s grievance, does not mean that [the

defendant] shared the alleged purpose of [the employer] or its employee [accused of the principal harassment] to sexually harass [the plaintiff] or retaliate against her." *Id.*; *see also Luka v. Bard Coll.*, 263 F. Supp. 3d 478, 487 (S.D.N.Y. 2017) ("Isolated comments, while potentially offensive, do not lead to an inference of discriminatory intent.").  Here, Plaintiff does not even allege that Ms. DeRosa made any comments to her that could be considered discriminatory.  Further, Ms. DeRosa is not alleged to have had any direct involvement with how Trooper 1 was treated with regard to her employment and Plaintiff has failed to allege facts that show Ms. DeRosa's conversation with the editor of the *Times Union* and the *Times Union's* decision not to publish the article on Trooper 1's transfer amounted to participation in the discriminatory conduct.  *Cf. Dunson v. Tri-Maint. & Contractors*, Inc., 171 F. Supp. 2d 103, 116 (E.D.N.Y. 2001) (finding that a genuine issue of material fact existed as to whether defendants had created a pretext for plaintiff's termination and therefore plaintiff had sufficiently alleged that defendants had participated in the harassment); *Lewis v. Triborough Bridge & Tunnel Auth.*, 77 F. Supp. 2d 376, 384 (S.D.N.Y. 1999) ("plaintiffs have alleged that their supervisor intentionally or recklessly disregarded their repeated complaints and have pleaded facts that give rise to an inference of discriminatory intent.").  *See e.g., Friederick* 2022 WL 992798, at *10 ("Plaintiff . . . has not adequately alleged that [defendant] is liable for aiding and abetting [the principal defendant's] sexual harassment of her.  The complaint does not plead facts giving rise to the inference that [defendant] was ever aware of how [the principal defendant] was treating [plaintiff], or that he encouraged or attempted to coerce him into treating her inappropriately.").

Because Ms. DeRosa cannot be found to have "actually participate[d] in the conduct giving rise to the discrimination claim," Counts Three and Five of the Amended Complaint must be dismissed.  *See Feingold*, 366 F.3d at 158.

## II.    NEITHER MS. DEROSA NOR MR. AZZOPARDI RETALIATED AGAINST TROOPER 1 AS A MATTER OF LAW

Plaintiff brings retaliation claims against Ms. DeRosa and Mr. Azzopardi under both the NYSHRL (Am. Compl.¶¶ 175-79, Count Four) and the NYCHRL (Am. Compl.¶¶ 185-89, Count Six). These claims of retaliation fail as a matter of law and must be dismissed. Under the NYSHRL, in order to make out a claim for retaliation, a "plaintiff must show that (1) she has engaged in protected activity, (2) her employer was aware that she participated in such activity, (3) she suffered an adverse employment action based upon her activity, and (4) there is a causal connection between the protected activity and the adverse action." *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 313 (2004). Under the NYCHRL, the retaliation "need not result in . . . a materially adverse change in the terms and conditions of employment . . . [but] must be reasonably likely to deter a person from engaging in protected activity." *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013).

The allegations against Ms. DeRosa stem from one incidence of alleged conduct in or around November 12, 2021, when Ms. DeRosa made a statement in defense of herself to the *New York Post*, responding to an article the *New York Post* was publishing. The article was about unsubstantiated rumors concerning Ms. DeRosa that Trooper 1 had discussed during her investigation testimony. In her statement refuting the rumors from Trooper 1's testimony, Ms. DeRosa stated: "It's beyond the pale for this trooper, who by her own admission I barely knew — who has already attempted to extort me for money — to make these accusations based on false rumors and for them to be printed in a newspaper. Not only is this ludicrous, it's hurtful, and potentially actionable." Hogan, *supra*. Ms. DeRosa made this statement shortly after Plaintiff's attorneys sent a demand letter to Ms. DeRosa's then attorney, claiming that Ms. DeRosa "aided and abetted the Governor's unlawful conduct by failing to report known

instances of harassment and, even more alarmingly, taking affirmative steps to conceal the Governor's behavior and retaliating against some of his victims who protested." *See* Foti Decl., Ex. 6. Ms. DeRosa's attorney rejected these claims as meritless and asked Trooper 1's attorneys to provide any facts supporting Trooper 1's claims. Based on Ms. DeRosa's use of the word "extort" while trying to defend herself against the unsubstantiated rumors in Trooper 1's testimony, Plaintiff now tries to claim that Ms. DeRosa retaliated against her in violation of the NYSHRL and NYCHRL. Am. Compl. ¶ 154. Plaintiff's retaliation claims against Mr. Azzopardi are equally ludicrous and are based on a statement that Mr. Azzopardi tweeted on February 17, 2022, the day Trooper 1 filed the present action, accusing Trooper 1 and her attorneys of attempting to "extort" a settlement and "cheap cash extortions." *Id.* ¶ 159.

Even taking Plaintiff's factual allegations as true for the purposes of this motion, Plaintiff's retaliation claims fail under both the NYSHRL and NYCHRL.

### A. Plaintiff's Retaliation Claims Under the NYSHRL Fail Because No Employment Relationship Existed and Consequently Plaintiff Cannot Show that She Suffered Any Adverse Employment Action

Under the NYSHRL, a plaintiff must suffer an adverse *employment* action in order to state a claim for retaliation. *See Forrest*, 3 N.Y.3d at 313. Here, Ms. DeRosa and Mr. Azzopardi were both private citizens and had no employment or other economic relationship with Plaintiff at the time that each made their remark regarding Plaintiff's legal action, and the remarks therefore cannot constitute retaliation.

Moreover, even if Plaintiff could establish an employment relationship, she cannot establish that she suffered an adverse employment action. "A plaintiff suffers an adverse employment action [under the NYSHRL] if she 'endures a materially adverse change in the terms and conditions of employment.'" *Kugel v. Queens Nassau Nursing Home Inc.*, No.

120CV5528ENVPK, 2021 WL 5701408, at *7 (E.D.N.Y. Oct. 20, 2021) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)). Because a retaliation claim under the NYSHRL requires a materially adverse change in the terms and conditions of *employment*, courts routinely dismiss claims where the plaintiff and defendant no longer share an employment relationship or where the defendant could not affect the terms and conditions of the plaintiff's employment. *See, e.g., Marchuk v. Faruqi & Faruqi, LLP*, 100 F. Supp. 3d 302, 311 (S.D.N.Y. 2015) (dismissing retaliation claim under NYSHRL where the plaintiff was no longer the defendants' employee and "Defendants lacked control over any aspect of [plaintiff's] working conditions"); *Miller v. City of Ithaca*, 179 A.D.3d 1235, 1238 (3d Dep't 2020) (dismissing retaliation claim under NYSHRL where allegedly retaliatory action took place when the plaintiff was no longer the defendant's employee because "[t]o state a prima facie case of retaliation under [the NYSHRL], a plaintiff must allege that his or her *employer* took adverse *employment* action as a result of engaging in a protected activity") (emphasis in original). Here, because Ms. DeRosa and Mr. Azzopardi had no employment relationship with Plaintiff or any ability to affect her employment, their stray remarks regarding Plaintiff's litigation conduct did not impose an adverse employment action on Plaintiff, and therefore they cannot be liable for retaliation under the NYSHRL. Therefore, Count Four should be dismissed as against Ms. DeRosa and Mr. Azzopardi.

### B. Plaintiff Fails to Show the NYCHRL Is Applicable to Her Claim and Fails to Allege an Employment or Economic Relationship Between the Parties

With respect to Plaintiff's claim under the NYCHRL, as an initial matter, Plaintiff has not shown how the NYCHRL even applies to her retaliation claims against Ms. DeRosa and Mr. Azzopardi. For an action to be subject to the NYCHRL, "the impact of the employment action must be felt *by the plaintiff* in [New York City]." *Vangas v. Montefiore Medical Ctr.*, 823 F.3d

19

174, 183 (2d Cir. 2016) (emphasis in original).  Here, Plaintiff has not alleged in the Amended Complaint how she was impacted by Ms. DeRosa's November 12, 2021 statement or Mr. Azzopardi's February 17, 2022 tweet in New York City.  As is well-established, "the relevant location of the injury for purposes of the impact analysis is not the Plaintiff's residence, but the Plaintiff's place of employment." *Robles v. Cox & Co., Inc*., 841 F. Supp. 2d 615, 625 (E.D.N.Y. 2012).  As a New York State Trooper, Plaintiff is not employed in New York City.[7]  Therefore, Count Six should be dismissed as against Ms. DeRosa and Mr. Azzopardi for this reason alone.

Even if the NYCHRL would be deemed to apply, Plaintiff's retaliation claim under the NYCHRL would fail for the same reason as her NYSHRL claim: Ms. DeRosa and Mr. Azzopardi no longer had any employment or economic relationship with Plaintiff at the time each made their comment on Plaintiff's litigation conduct.  Although an adverse employment action is not required under the NYCHRL – *i.e.,* retaliatory conduct is not required to result in a materially adverse change in a plaintiff's terms and conditions of employment – the plaintiff and defendant must be economically related in some way.  The NYCHRL, at bottom, applies to "employment, housing, or public accommodation." *Chin v. CH2M Hill Companies, Ltd.*, No. 12 CIV. 4010 HB, 2012 WL 4473293, at *6 (S.D.N.Y. Sept. 28, 2012).  Ms. DeRosa and Mr. Azzopardi shared none of those relationships with Plaintiff at the time they each made their comments, and they therefore cannot be liable for them under the NYCHRL.

Even under the case law that has extended the NYCHRL to situations where the plaintiff and defendant formerly shared an employment relationship, the holding is predicated on the notion that there is an "ongoing economic relationship" between the employer and former employee.  *See Schmitt v. Artforum Int'l Mag., Inc.*, 178 A.D.3d 578, 584 (1st Dep't 2019).

---

[7] The New York State Police, like most state agencies, is headquartered in Albany, New York.  *See* https://troopers.ny.gov/contact-us.

Further, Plaintiff's reliance on *Eckhart v. Fox News Network, LLC*, No 20 Civ. 5593 (RA), 2021 WL 4124616, at *23 (S.D.N.Y. Sep. 9, 2021), in her pre-motion letter in response to Governor Cuomo's pre-motion letter, Dkt. No. 25, is misplaced. *Eckhart* contains no analysis as to why the court in that case determined that the relationship between the parties was sufficient to sustain a claim for retaliation. *See Eckhart*, 2021 WL 4124616, at *23. Moreover, this issue in *Eckhart* is the subject of a motion for reconsideration that has not yet been decided. *See* Motion for Reconsideration, Dkt. No. 167, Sept. 23, 2021, *Eckhart et al v. Fox News Network, LLC et al*, 1:20-cv-05593 (S.D.N.Y. Jul 20, 2020). Therefore, because there is no analysis in *Eckhart* as to whether the parties had an ongoing economic relationship, or any analysis of the sufficiency of the relationship, Plaintiff cannot rely on *Eckhart* to support her position that no employment relationship between the parties need exist. Thus, because there is no ongoing economic relationship between Ms. DeRosa, Mr. Azzopardi and Trooper 1, and because none has been alleged, Count Six should be dismissed for this independent reason.

### C. Ms. DeRosa and Mr. Azzopardi's Remarks Would Not Dissuade a Reasonable Person from Engaging in Protected Activity

Finally, even disregarding all other reasons for why Plaintiff's claims fail, the retaliation claims must be dismissed because the allegedly retaliatory remark that Ms. DeRosa and Mr. Azzopardi each made – noting or allegedly implying that Plaintiff was attempting "extortion" through her litigation activity in connection with this action – would not dissuade a reasonable person from engaging in protected activity. In determining whether there has been an adverse employment action, which is required under the NYSHRL, courts consider whether there has been an action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67–68 (2006) (internal quotation marks and citation omitted); *see also Nunez v. Lima*, 762 F. App'x

65, 69 (2d Cir. 2019) (summary order applying this standard to NYSHRL claims).  Under the

NYCHRL as well, retaliation must be "reasonably likely to deter a person from engaging in

protected activity."  N.Y.C. Admin. Code § 8–107(7).  Ms. DeRosa's and Mr. Azzopardi's

comments simply do not come close to meeting this standard.

As the Second Circuit has observed, "[a]ctions that are 'trivial harms'—*i.e.*, 'those petty

slights or minor annoyances that often take place at work and that all employees experience'—

are not materially adverse" employment actions.  *Tepperwien v. Entergy Nuclear Operations,*

*Inc.*, 663 F.3d 556, 568 (2d Cir. 2011) (quoting *Burlington*, 548 U.S. at 68).  Moreover, this

Court has recognized that mere "[c]riticism for lodging a complaint does not constitute an

adverse employment action."  *Lax v. City Univ. of New York*, No. 16CV799LDHVMS, 2020 WL

6161253, at *9 (E.D.N.Y. Oct. 21, 2020) (DeArcy Hall, J.), *aff'd,* No. 20-3906-CV, 2022 WL

103315 (2d Cir. Jan. 11, 2022).  Under the NYCHRL as well, the Second Circuit has stated that

"the NYCHRL is not a general civility code" and does not cover conduct that amounts to

"nothing more than petty slights or trivial inconveniences."  *Mihalik*, 715 F.3d at 113 (internal

quotation marks omitted).  Ms. DeRosa's and Mr. Azzopardi's single, stray comments each

criticizing Plaintiff's litigation conduct constitute, at most, a "petty slight" and not actionable

retaliation.  *See, e.g., Tepperwien*, 663 F.3d at 571 (threats, "made in the course of a heated

conversation," not retaliatory); *Chung v. City Univ. of New York*, 605 F. App'x 20, 22 (2d Cir.

2015) (Summary Order) (negative performance review not an adverse employment action); *Lax*,

2020 WL 6161253, at *9 (dismissing retaliation claim where university president "demanded

that Plaintiff withdraw his complaint . . . and subsequently critiqued him for refusing to do so");

*Mucciarone v. Initiative, Inc*. 2020 WL 1821116, at *11-12 (S.D.N.Y Apr. 10, 2020) ("sending a

condescending email, being 'verbally abusive' during a meeting, withholding the assistance of

team members, and making unrealistic work demands" not retaliatory action under NYSHRL); *Holleman v. Art Crating Inc.*, No. 12 CIV. 2719 VMS, 2014 WL 4907732, at *53-54 (E.D.N.Y. Sept. 30, 2014) ("bad-mouthing" plaintiff insufficient to be retaliatory action under both NYSHRL and NYCHRL); *Smiley v. Cassano*, No. 10 CIV. 3866 RJS, 2012 WL 967436, at *8 (S.D.N.Y. Mar. 21, 2012) (defendant "harassing" and "threatening" plaintiff not actionable retaliation under NYCHRL).

Although the Amended Complaint indicates that Ms. DeRosa's and Mr. Azzopardi's descriptions of Plaintiff's litigation conduct as "extortion" amounts to "accusing [Plaintiff] and her attorneys of a crime," Am. Compl. ¶ 159, that is clearly incorrect. First, Ms. DeRosa's reference to extortion, was in the context of defending herself against baseless rumors about which Trooper 1 had testified and her belief that Plaintiff's claims were meritless and could not have conceivably dissuaded anyone from making or supporting a charge of discrimination. *See Melman v. Montefiore Med. Center*, 98 A.D.3d 107, 129 (1st Dept. 2012) (a person cannot "be deemed to have retaliated against plaintiff simply by denying that [he] was discriminating against [her]"); *Dixon v. Int'l Bhd. of Police Officers*, 504 F.3d 73, 84 (1st Cir. 2007) (a "person . . . accused of discrimination must be allowed to defend himself or herself"). Second, Mr. Azzopardi's statement in his tweet that the law firm representing Plaintiff "is widely known to use the press to extort settlements on behalf of 'anonymous claimants'" is not directed at Plaintiff, but at the law firm of Plaintiff's counsel – a fact acknowledged by Mr. Wigdor in his LinkedIn message to Mr. Azzopardi. *See* Foti Decl., Ex. 10 & Ex. 11. Accordingly, it is unclear how this statement could dissuade Plaintiff from engaging in protected activity. Third, to the extent the reference to extortion in either Ms. DeRosa or Mr. Azzopardi's statements is read to refer to Plaintiff, any reasonable reader of either of their statements would understand that the

term "extort" or "extortion" was being used to describe their opinion of Plaintiff's litigation conduct as wholly meritless and their belief that Plaintiff did not have any plausible claims, and not an actual accusation that Plaintiff committed the technical crime of extortion codified in N.Y. Penal Law § 155.05.  As the Supreme Court ruled regarding an accusation of "blackmail":

> It is simply impossible to believe that a reader who reached the word 'blackmail' in either article would not have understood exactly what was meant: it was [the plaintiff's] public and wholly legal negotiating proposals that were being criticized. No reader could have thought that either the speakers at the meetings or the newspaper articles reporting their words were charging [the plaintiff] with the commission of a criminal offense.  On the contrary, even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the plaintiff's] negotiating position extremely unreasonable.

*Greenbelt Co-op. Pub. Ass'n v. Bresler*, 398 U.S. 6, 14 (1970).  In the defamation context, New York courts routinely dismiss claims where the claim involves an accusation that the plaintiff's litigation conduct was "extortion."  *See, e.g., Melius v. Glacken*, 94 A.D.3d 959, 960 (2d Dep't 2012) ("Considering the immediate context, a reasonable listener would have believed that calling the plaintiff an 'extortionist' who is seeking 'to extort money' was conveying the defendant's opinion as to the merits of the plaintiff's lawsuit and was not a factual accusation of criminal conduct."); *McDougal v. Fox News Network, LLC*, 489 F. Supp. 3d 174, 182 (S.D.N.Y. 2020) (noting that "accusations of 'extortion,' 'blackmail,' and related crimes . . . are often construed as merely rhetorical hyperbole when they are not accompanied by additional specifics of the actions purportedly constituting the crime" and dismissing defamation claim based on use of the word "extortion"); *G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC,* No. 03 CIV.10027(RWS), 2004 WL 1172762, at *2 (S.D.N.Y. May 27, 2004) (applying *Bresler* to statement describing lawsuit as "extortion" and noting that defamation claim based on the statement would not survive a motion to dismiss); *Sabharwal & Finkel, LLC v. Sorrell*, 117

A.D.3d 437, 437–38 (1st Dep't 2014) ("Given the overall context in which the statements [that broaching the topic of settlement was an attempt by the law firm to "extort" money] were made, a reasonable reader would conclude that they constitute hyperbole and convey non-actionable opinions about the merits of the lawsuit and the motivation of [the plaintiff], rather than statements of fact."). Here as well, "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole," and not an accusation of a crime. *See Bresler*, 398 U.S. at 14. Therefore, no reasonable person would have been dissuaded from making or supporting a charge of discrimination as a result of such a comment. Accordingly, Plaintiff's retaliation claims against Ms. DeRosa and Mr. Azzopardi should be dismissed.

## <u>CONCLUSION</u>

For the reasons stated herein, Plaintiff fails to state a claim against Defendants, and they should therefore be dismissed as to them with prejudice.

Dated:  July 15, 2022
      New York, New York

Respectfully submitted,

**MORVILLO ABRAMOWITZ GRAND
IASON & ANELLO P.C.**

By:  /s/  Elkan Abramowitz
     Elkan Abramowitz
     Catherine M. Foti
     Rachel Fleig-Goldstein
     Joseph Stern

     565 Fifth Avenue
     New York, New York 10017
     Phone: 212.856.9600; Fax: 212.856.9494
     eabramowitz@maglaw.com
     cfoti@maglaw.com
     rfleig-goldstein@maglaw.com
     jstern@maglaw.com

     *Attorneys for Defendants Melissa DeRosa
     and Richard Azzopardi*