**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

TROOPER 1,                                            :
                                            :    Case No.: 22-cv-00893 (LDH)(TAM)
                Plaintiff,            :
                                            :
      v.                                           :
                                            :
NEW YORK STATE POLICE, ANDREW    :
CUOMO, MELISSA DEROSA and              :
RICHARD AZZOPARDI,                         :
                                            :
                  Defendants.           :
-----------------------------------------------------------X

 

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MELISSA DEROSA**
**AND RICHARD AZZOPARDI'S MOTION TO DISMISS**

 

Date of Service: August 16, 2022            **WIGDOR LLP**

                                        Valdi Licul
                                        John S. Crain

                                        85 Fifth Avenue
                                        New York, NY 10003
                                        Telephone: (212) 257-6800
                                        Facsimile: (212) 257-6845
                                        vlicul@wigdorlaw.com
                                        jcrain@wigdorlaw.com

                                        *Counsel for Plaintiff*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...........................................2

I.     TROOPER 1 FACES HARASSMENT, AND DEROSA BURIES
INVESTIGATIONS INTO CUOMO'S CONDUCT ........................................................2

II.    TROOPER 1 ENGAGES IN PROTECTED ACTIVITIES, AND DEFENDANTS
RETALIATE....................................................................................................................4

III.   THE INSTANT MOTION TO DISMISS............................................................................5

STANDARD OF REVIEW ......................................................................................................5

ARGUMENT ..........................................................................................................................6

I.     THE AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT DEROSA
AIDED AND ABETTED CUOMO'S HARASSMENT...................................................6

II.    DEROSA AND AZZOPARDI RETALIATED AGAINST TROOPER 1.......................10

III.   DEFENDANTS' THREATS ARE NOT PROTECTED BY THE FIRST
AMENDMENT..............................................................................................................12

IV.   DEFENDANTS' THREATS WERE NOT TRIVIAL ....................................................14

V.    DEROSA'S RESIGNATION DOES NOT SHIELD DEFENDANTS FROM
LIABLITY .....................................................................................................................16

VI.   AZZOPARDI IS AN AIDER-ABETTOR OF CUOMO'S RETALIATION ..................18

VII.  THE NYCHRL APPLIES ..............................................................................................18

CONCLUSION......................................................................................................................20

**Cases**

Amaya v. Ballyshear LLC,
    340 F. Supp. 3d 215 (E.D.N.Y. 2018) ..................................................................... 19

Ashcroft v. Iqbal,
    556 U.S. 662 (2009) ............................................................................................... 5

Booth v. Pasco Cnty., Fla.,
    757 F.3d 1198 (11th Cir. 2014) ............................................................................. 13

Burlington N. & Santa Fe Ry. Co. v. White,
    548 U.S. 53 (2006) ................................................................................................. 11

Chung v. City Univ. of New York,
    605 F. App'x 20 (2d Cir. 2015) .............................................................................. 15

Conde v. Sisley Cosms. USA, Inc.,
    No. 11 Civ. 4010 (RJS), 2012 WL 1883508 (S.D.N.Y. May 23, 2012) .................... 9

Cruz v. Coach Stores, Inc.,
    202 F.3d 560 (2d Cir. 2000) .................................................................................... 7

Daugherty v. Deschutes Cnty.,
    No. 19 Civ. 00897 (MK), 2021 WL 2784761 (D. Or. May 6, 2021) ....................... 11

Delisi v. Nat'l Ass'n of Pro. Women, Inc.,
    48 F. Supp. 3d 492 (E.D.N.Y. 2014) ....................................................................... 7

DeVore v. Nieghborhood Hous. Servs. Of Jamaica, Inc.,
    No. 15 Civ. 6218, 2017 WL 1034787 (E.D.N.Y. Mar. 16, 2017) ........................... 11

Dixon v. Int'l Bhd. of Police Officers,
    504 F.3d 73 (1st Cir. 2007) .................................................................................... 12

Doe v. Columbia Univ.,
    831 F.3d 46 (2d Cir. 2016) ...................................................................................... 5

Forrest v. Jewish Guild for the Blind,
    3 N.Y.3d 295 (2004) ............................................................................................. 10

Friederick v. Passfeed, Inc.,
    No. 21 Civ. 2066 (RA), 2022 WL 992798 (S.D.N.Y. Mar. 31, 2022) ...................... 9

G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC,
    No. 03 Civ. 10027 (RWS), 2004 WL 1172762 (S.D.N.Y. May 27, 2004)............................. 13

Gittens v. Winthrop Hospitalist Assocs., P.C.,
    No. 19 Civ. 5070 (LDH) (LB), 2022 WL 504490 (E.D.N.Y. Feb. 18, 2022)........................... 9

Greenbelt Co-op. Pub. Ass'n v. Bresler,
    398 U.S. 6 (1970) ........................................................................................................... 12, 14

Hoffman v. Parade Publications,
    15 N.Y.3d 285 (2010) ........................................................................................................... 18

Holleman v. Art Crating Inc.,
    No. 12 Civ. 2719 (VMS), 2014 WL 4907732 (E.D.N.Y. Sept. 30, 2014)............................... 15

Jute v. Hamilton Sundstrand Corp.,
    420 F.3d 166 (2d Cir. 2005)................................................................................................... 16

Kraiem v. JonesTrading Institutional Servs. LLC.,
    492 F. Supp. 3d 184 (S.D.N.Y. 2020)..................................................................................... 19

Kugel v. Queens Nassau Nursing Home Inc,
    No. 120 Civ. 5528 (ENV) (PK), 2021 WL 5701408 (E.D.N.Y. Oct. 20, 2021)...................... 10

Laurin v. Pokoik,
    No. 02 Civ. 1938 (LMM), 2005 WL 2230457 (S.D.N.Y. Sept. 13, 2005) ................................ 6

Lax v. City Univ. of New York,
    No. 16 Civ. 799 (LDH) (VMS), 2020 WL 6161253 (E.D.N.Y. Oct. 21, 2020) ...................... 15

Leary v. Al-Mubaraki,
    No. 18 Civ. 0048 (LTS) (HBP), 2019 WL 4805849 (S.D.N.Y. Sept. 30, 2019) ...................... 11

Lewis v. Triborough Bridge & Tunnel Auth.,
    77 F. Supp. 2d 376 (S.D.N.Y. 1999)........................................................................................ 9

Lore v. City of Syracuse,
    670 F.3d 127 (2d Cir. 2012)................................................................................................... 11

Marchuk v. Faruqi & Faruqi, LLP,
    100 F. Supp. 3d 302 (S.D.N.Y. 2015)..................................................................................... 10

McDougal v. Fox News Network, LLC,
    489 F. Supp. 3d 174 (S.D.N.Y. 2020) .................................................................................... 14

McHenry v. Fox News Network, LLC,
No. 19 Civ. 11294 (PAE), 2020 WL 7480622 (S.D.N.Y. Dec. 18, 2020) .............................. 6, 9

Melius v. Glacken,
943 N.Y.S.2d 134 (2012) ....................................................................................... 14

Melman v. Montefiore Med. Ctr.,
946 N.Y.S.2d 27 (1st Dep't 2012) ......................................................................... 12

Meritor Sav. Bank, FSB v. Vinson,
477 U.S. 57 (1986) ................................................................................................... 6

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.,
715 F.3d 102 (2d Cir. 2013) ................................................................................... 15

Miller v. City of Ithaca,
179 A.D.3d 1235 (3d Dep't 2020) .......................................................................... 10

Miotto v. Yonkers Pub. Sch.,
534 F. Supp. 2d 422 (S.D.N.Y. 2008) ...................................................................... 7

Mucciarone v. Initiative, Inc.,
No. 18 Civ 567 (PKC), 2020 WL 1821116 (S.D.N.Y. Apr. 10, 2020) ..................... 15

New York Times Co. v. Sullivan,
376 U.S. 254 (1964) ............................................................................................... 13

Olsen v. Suffolk Cnty.,
No. 15 Civ. 4064 (JS) (AYS), 2016 WL 5395846 (E.D.N.Y. Sept. 27, 2016) ........... 9

Pedroza v. Ralph Lauren Corp.,
No. 19-CV-08639 (ER), 2020 WL 4273988 (S.D.N.Y. July 24, 2020) .................... 19

Perrin v. Conn. Dep't of Corr.,
No. 16 Civ. 643 (JAM), 2016 WL 6594070 (D. Conn. Nov. 7, 2016) ..................... 11

Perry v. Ethan Allen, Inc.,
115 F.3d 143 (2d Cir. 1997) ..................................................................................... 6

Redd v. N.Y. Div. of Parole,
678 F.3d 166 (2d Cir. 2012) ..................................................................................... 6

Robinson v. Shell Oil Co.,
519 U.S. 337 (1997) .......................................................................................... 16, 17

Rodriquez v. Nat'l Golf Links of Am.,
    No. 19 Civ. 7052 (PKC) (RML), 2020 WL 3051559 (E.D.N.Y. Jun. 8, 2020) ....................... 11

Sabharwal & Finkel, LLC v. Sorrell,
    No. 155808/2012, 2013 WL 2155592 (N.Y. Sup. Ct. May 09, 2013) ..................................... 13

Sanders v. Madison Square Garden, L.P.,
    No. 06 Civ. 589(GEL), 2007 WL 2254698 (S.D.N.Y. Aug. 6, 2007) ..................................... 11

Santi v. Hot In Here, Inc.,
    No. 18 Civ. 03028 (ER), 2019 WL 290145 (S.D.N.Y. Jan. 22, 2019) .................................... 12

Schaper v. Bronx Lebanon Hosp. Ctr.,
    408 F. Supp. 3d 379 (S.D.N.Y. 2019) ....................................................................................... 7

Schmitt v. Artforum Intl' Mag., Inc.,
    178 A.D.3d 578 (1st Dep't 2019) ............................................................................................ 10

Shanks v. Vill. Of Catskill Bd. of Trustees,
    653 F. Supp. 2d 158 (N.D.N.Y. 2009) .................................................................................... 11

Smiley v. Cassano,
    No. 10 Civ. 3866 RJS, 2012 WL 967436 (S.D.N.Y. Mar. 21, 2012) ..................................... 16

Spencer v. Int'l Shoppes, Inc.,
    902 F. Supp. 2d 287 (E.D.N.Y. 2012) .................................................................................... 17

Tepperwien v. Entergy Nuclear Operations, Inc.,
    663 F.3d 556 (2d Cir. 2011) .................................................................................................... 14

Vega v. Hempstead Union Free Sch. Dist.,
    801 F.3d 72 (2d Cir. 2015) ................................................................................................ 5, 15

Ware v. L-3 Vertex Aerospace, LLC,
    833 F. App'x 357 (2d Cir. 2020) ............................................................................................ 19

Wermann v. Excel Dentistry, P.C.,
    No. 13 Civ. 7028 (DAB), 2014 WL 846723 (S.D.N.Y. Feb. 25, 2014) ................................. 16

Wheeler v. Bank of New York Mellon,
    256 F. Supp. 3d 205 (N.D.N.Y. 2017) .................................................................................... 11

**Other Authorities**

42 U.S.C. § 1983 .............................................................................................................................. 4

Fed. R. Civ. P. 9(b) ........................................................................................................................... 8

New York City, N.Y., Code § 8-102 ........................................................ 17

New York City, N.Y., Code § 8-130 ........................................................ 17

New York City, N.Y., Code § 8-502(d) .................................................... 17

N.Y.C. Admin. Code 8-107 ........................................................... passim

N.Y.C.P.L.R. § 214(5) ............................................................................ 17

N.Y. Exec. Law § 292(5) ........................................................................ 17

N.Y. Exec. Law § 296(6) .......................................................................... 7

N.Y. Exec. Law § 296(7) ........................................................................ 17

N.Y. Exec. Law § 300 ............................................................................. 17

N.Y. Executive Law § 290 ......................................................................... 4

Plaintiff Trooper 1 ("Plaintiff" or "Trooper 1") respectfully submits this memorandum of law in opposition to the motion to dismiss the claims brought against them in the Amended Complaint ("AC") filed by Defendants Melissa DeRosa ("DeRosa") and Richard Azzopardi ("Azzopardi") (together, the "Defendants").

## PRELIMINARY STATEMENT

After years serving as fixers for disgraced former Governor Andrew Cuomo ("Cuomo"), actively shielding his sexual harassment and ensuring it would continue, Defendants now move to dismiss the Amended Complaint, claiming they knew nothing of the harassment of Trooper 1, and claiming that they had a privilege to retaliate against Trooper 1.

As to DeRosa, her participation in Cuomo's behavior is well known through the Attorney General's report on Cuomo's sexual harassment. While there was no need to plead hundreds of pages of findings and evidence from that report, the Amended Complaint nonetheless firmly and plainly alleges that DeRosa did to Trooper 1 what she did to all of the professional women Governor Cuomo harassed: buried investigations and deflected scrutiny. She may claim that the Attorney General report tells a different story, but it plainly does not, and, in any case, the ultimate inquiry into her intent will be up to the jury.

Both DeRosa and Azzopardi claim a privilege to retaliate against Trooper 1's legal complaint, claiming that the law freely permits them to calumniate, threaten, intimidate and harass Trooper 1. They completely misread the applicable laws, which clearly protect those who bring complaints, and do not create a loophole for retaliation just because the prior predicate employment relationship has come to an end. And, as to Azzopardi in particular, he followed Governor Cuomo's lead in harassing Trooper 1 for her complaint, making him an aider/abettor of retaliation.

1

For the reasons to follow, Defendants' motion to dismiss should be denied in its entirety, and any stay of discovery should be immediately lifted to allow full discovery into their motivations for discriminating and retaliating against Trooper 1.

**RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

I. **TROOPER 1 FACES HARASSMENT, AND DEROSA BURIES INVESTIGATIONS INTO CUOMO'S CONDUCT**

Trooper 1 served as a bodyguard of former Governor Cuomo as part of his protective services unit ("PSU") between 2018 and the Governor's resignation in 2021. Cuomo recruited her in 2018 because of his sexual interest in her, changing the minimum experience requirement from three years to two years so that she could join. AC at ¶¶ 21-30. Just as he harassed many of the young women around him, Cuomo consistently harassed Trooper 1, asking her (while she was on duty) if he wanted a private tour of his mansion, id. at ¶ 34, telling her that her sex drive would go down if she got married, id. at ¶ 36, running his finger up her back and whispering in her ear while she escorted him on an elevator, id. at ¶ 39, asking why she was not wearing a dress while she was on duty protecting his life, id. at ¶ 48, and sliding his hand over her stomach and waist at a public event, id. at ¶¶ 53-54, amongst many other incidents. This harassment was just one piece of a much broader pattern of harassment perpetrated by Cuomo against the women who served him in professional capacities. Id. at ¶¶ 75-143. His behavior rendered Trooper 1 a sexual object, when she had simply set out to do her job and had never expressed the slightest sexual interest in Cuomo.

Cuomo, like many powerful men who harass their female subordinates, could call on many accomplices to help him keep this pattern of harassment secret and ensure that anyone who tried to hold him accountable would face retaliation. He could count on the Head of the PSU, who told Trooper 1 "stays in the truck" to silence her after Cuomo commented that she should

wear a dress.  Id. at ¶ 50.  He could count on his brother, the famous journalist Chris Cuomo, to dig up dirt on his accusers, id. at ¶ 149, and could count on a large staff of communications, political and legal advisors to find "oppo" research on those who investigated him, id. at ¶ 150. Cuomo understands the "deny and attack" playbook of the sexual harasser extremely well, even as he gives it a liberal, modern spin by selectively and selfishly acknowledging that women should be heard.  Since accusations against him have surfaced, he has threatened ethics charges and even criminal prosecutions against the attorneys who have investigated and sued him.  Id. at ¶¶ 154-55.

The Defendants, too, have helped him keep his harassment secret, have helped him to retaliate against his accusers (including Trooper 1) and have retaliated on their own behalf when called out for their wrongdoing.  As Cuomo's Chief of Staff during the period when his accusers began coming forward in 2019, DeRosa made it her duty to bury complaints and deflect investigations.  Id. at ¶¶ 14, 62-67.  Amidst the swirling accusations of sexual harassment, a reporter from *The Times Union* contacted her, responding to rumors that Cuomo had changed the admission requirements for members of the PSU to allow Trooper 1 to join.  Id. at ¶ 64.  Given the public accusations against Cuomo, DeRosa of course understood that the information shared by the *Times Union* reporter was part of a broader pattern of harassment.  Id. at ¶¶ 62-63.  She also understood that her duty was to suppress the investigation.  Accordingly, she yelled at the reporter and made a false and misleading statement, telling the reporter he was sexist for even asking the question (previewing to the reporter the public relations ("PR") campaign that would no doubt follow should he come forward with his report).  Id. at ¶¶ 65-67.  She succeeded in deflecting the question, burying the investigation, and paving the way for Cuomo to continue his harassment of the women around him.

DeRosa was practiced in this kind of response. On other occasions she ordered potential accusers of Cuomo be recorded so that she could try to find incriminating or otherwise helpful admissions, only to delete the recording when it did not help Cuomo. Id. at ¶ 148. And she worked with Chris Cuomo to gather research against Cuomo's accuser. Id. at ¶ 149.

## II.     TROOPER 1 ENGAGES IN PROTECTED ACTIVITIES, AND DEFENDANTS RETALIATE

As is now well known, Cuomo was not ultimately able to plausibly deny the accusations of harassment against him. Like many powerful men with his back to the wall, he chose to lash out, and DeRosa and Azzopardi were willing accomplices in his retaliation.

In May 2021, Trooper 1 testified in the official investigation into Cuomo's sexual harassment. Id. at ¶ 152. Ultimately, she decided to retain counsel to hold both Cuomo and DeRosa accountable for their misconduct, sending them both correspondence laying out her claims on September 28, 2021. Id. at ¶ 153. In retaliation, DeRosa took to the press to accuse Trooper 1 of "extortion," and threatened her with legal action. Id. at ¶ 154. In the meantime, as described above, Cuomo's assaults against his accusers and investigators were increasing in intensity.

On February 17, 2022, Trooper 1 filed the instant action alleging violations of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution ("Equal Protection Clause"); 42 U.S.C. § 1983; the New York State Human Rights Law, N.Y. Executive Law § 290 et seq. (the "State Law" or "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 et seq. (the "City Law" or "NYCHRL").[1] Azzopardi, following Cuomo's playbook, took to Twitter to accuse Trooper 1 and her attorneys of "extortion" and

---

[1]      The State and City Laws are sometimes referred to herein as the "Local Laws."

"cheap cash extortions," suggesting that her law firm was expert in such criminal transactions. Id. at ¶ 159. After Azzopardi's threats, Trooper 1 amended the complaint to add a cause of action for retaliation as against Azzopardi.

## III.   THE INSTANT MOTION TO DISMISS

Defendants DeRosa and Azzopardi have now moved to dismiss the Amended Complaint. Their motion attaches selections from the Attorney General's report, purporting to show that the evidence exonerates them, improperly anticipating the evidentiary issues that must ultimately go to a jury. DeRosa also argues, in obvious derogation of the law on point, that she cannot be held accountable for aiding and abetting Cuomo's sexual harassment, despite her knowing participation in burying investigations, including the investigation into Trooper 1's hiring. Both she and Azzopardi argue that they had a privilege to retaliate because they were never Trooper 1's "employer" and because their accusations of criminality were totally innocent. But none of these arguments withstand scrutiny.

## STANDARD OF REVIEW

In deciding a Rule 12(b)(6) motion, a court must accept as true the plaintiff's allegations and draw all reasonable inferences in her favor. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 78 (2d Cir. 2015). A court must deny the motion where the plaintiff's allegations make it "plausible" that the defendants violated the law. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Importantly, "[t]he role of the court . . . is not in any way to evaluate the truth as to what really happened, but merely to determine whether plaintiff's factual allegations are sufficient to allow the case to proceed." Doe v. Columbia Univ., 831 F.3d 46, 59 (2d Cir. 2016) (emphasis added).

## ARGUMENT

## I.  THE AMENDED COMPLAINT PLAUSIBLY ALLEGES THAT DEROSA AIDED AND ABETTED CUOMO'S HARASSMENT

DeRosa argues that she had no knowledge of the discrimination against Trooper 1 in particular, but she misreads both the complaint and the law.  The Amended Complaint fully alleges that DeRosa knew about the hostile work environment created by Cuomo's sexual harassment and fully participated in it by burying investigations into his conduct.

The Local Laws make it unlawful to subject an employee to "unwanted gender-based conduct, " McHenry v. Fox News Network, LLC, No. 19 Civ. 11294 (PAE), 2020 WL 7480622, at *6 (S.D.N.Y. Dec. 18, 2020) (citations omitted), including, "[u]nwelcome sexual advances." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 175 (2d Cir. 2012) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986)).  Crucially, a hostile work environment theory of discrimination such as Trooper 1's does not turn solely on whether an individual plaintiff directly experiences harassment.  Rather, it questions whether there is a "pervasive or continuing pattern of conduct" at a given employer.  Perry v. Ethan Allen, Inc., 115 F.3d 143, 151 (2d Cir. 1997). An individual plaintiff need not even necessarily have "notice of the harassment of others" for that harassment to form a part of the relevant hostile work environment. id.; see, e.g., Laurin v. Pokoik, No. 02 Civ. 1938 (LMM), 2005 WL 2230457, at *3 (S.D.N.Y. Sept. 13, 2005) ("testimony relating to whether or not the defendants' offices were the home of a pervasive hostile environment in the sexual harassment sense while plaintiff was employed, is not excluded, whether or not such matters as she may testify to were made known to plaintiff").  The "crucial inquiry focuses on the nature of the workplace environment as a whole" and "a plaintiff who herself experiences discriminatory harassment need not be the target of other instances of

hostility in order for those incidents to support her claim." Cruz v. Coach Stores, Inc., 202 F.3d 560, 570 (2d Cir. 2000).

Bearing in mind this broad definition of a hostile work environment theory, the salient issue is whether DeRosa aided and abetted the creation of a "workplace environment" that was discriminatory "as a whole." N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code. 8-107(6). Importantly, to be liable as an aider-abettor, DeRosa "need not [her]self actually take part in the primary violation," Schaper v. Bronx Lebanon Hosp. Ctr., 408 F. Supp. 3d 379, 395 (S.D.N.Y. 2019). In other words, she need not have actually sexually harassed Trooper 1. Thus, for example, "failure to investigate [discrimination] can constitute 'active participation' to support an aiding and abetting claim." Delisi v. Nat'l Ass'n of Pro. Women, Inc., 48 F. Supp. 3d 492, 496 (E.D.N.Y. 2014); see, e.g., Miotto v. Yonkers Pub. Sch., 534 F. Supp. 2d 422, 429 (S.D.N.Y. 2008) (supervisors who transferred harasser after a prior complaint could be held liable by plaintiff, even absent allegation that they knew about harassment of the plaintiff).

Given the foregoing definitions, DeRosa's argument rests on a fallacy. She argues that the Amended Complaint must be dismissed unless it alleges that "DeRosa knew of Governor Cuomo's allegedly harassing conduct *with respect to Trooper 1*." Memorandum of Law in Support of Defendants Melissa DeRosa and Richard Azzopard's Motion to Dismiss ("Defendants' Brf.") at 14. To the contrary, the question is whether DeRosa contributed to the creation of an overall hostile workplace. There is no question that she did exactly that. She never disputes her participation in Cuomo's overall pattern of harassment, even as she makes liberal reference to outside evidence to support her arguments. Consistently, she helped him pressure complainants and bury complaints, and Cuomo depended upon her to ensure he could continue harassing women, including Trooper 1, with impunity.

In any case, it is a plausible factual inference from the pleadings that DeRosa *did* know about Cuomo's harassment of Trooper 1 in particular. Under the federal rules, "knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b). Here, the Amended Complaint alleges that "DeRosa was specifically involved in hiding the Governor's behavior" and "yelled at the editor of *The Times Union* and accused him of being sexist," AC at ¶ 66, causing the *Times Union* to back off its inquiries about Trooper 1, id. at ¶ 67. The Amended Complaint is replete with corroborating details reinforcing the allegation of knowledge. It alleges that DeRosa was Cuomo's "chief of staff," who shared his confidence, protected his reputation, and resigned alongside him when the time came. Id. at ¶ 14. As revealed by the subsequent investigations, DeRosa pressured and surveilled other women thought to have potential claims against Cuomo, id. at ¶ 148, and she participated in coordinating attacks on other victims of Cuomo, id. at ¶ 149. When the *Times Union* called her, DeRosa was well aware of multiple claims of harassment against Cuomo, which were all public, id. at ¶ 62, and these accusations were understood to form the backdrop for the *Times Union's* inquiry, id. at ¶ 63. In light of her general participation in protecting Cuomo against accusations of harassment, and in light of the public allegations against him at the time, it is a plausible inference that she went on the attack against the *Times Union* knowing that Cuomo's recruitment of Trooper 1 was part of a pattern of sexual harassment. These allegations adequately plead DeRosa's knowledge of Cuomo's harassment of Trooper 1.

DeRosa not only failed to investigate any of these allegations about Trooper 1 and other women, she ensured no one else would investigate them either. These are classic predicate acts for aider-abettor liability. DeRosa may, of course, argue to a jury that her knowledge of Trooper

1's hiring was completely innocent and her interactions with the *Times Union* were motivated by feminism. Defendants' Brf. at 15. But the argument is premature on the pleadings.

DeRosa cites cases where courts dismissed complaints for lacking allegations of "knowledge" on the part of a defendant, but these all involve easily distinguishable facts. More precisely, they all involve cases where a plaintiff tried to sweep a supervisor into a complaint without any evidence that the supervisor knew anything about the relevant discrimination. See Gittens v. Winthrop Hospitalist Assocs., P.C., No. 19 Civ. 5070 (LDH) (LB), 2022 WL 504490, at *8 (E.D.N.Y. Feb. 18, 2022) (mere allegation that individual was plaintiff's supervisor did not by itself imply participation in any harassment or an alleged failure to hire); Olsen v. Suffolk Cnty., No. 15 Civ. 4064 (JS) (AYS), 2016 WL 5395846, at *17 (E.D.N.Y. Sept. 27, 2016) (plaintiff argued in their opposition papers for a theory of "deliberate indifferen[ce]" on the part of supervisors, but the theory was not actually alleged in the complaint, warranting dismissal); Conde v. Sisley Cosms. USA, Inc., No. 11 Civ. 4010 (RJS), 2012 WL 1883508, at *6 (S.D.N.Y. May 23, 2012) (entity that owned a department store not liable for discriminatory acts of supervisors of an independent cosmetics counter within the store). Here, by contrast, DeRosa knew that Cuomo was a harasser; she was actively fighting the harassment claims against him; she knew that the *Times Union* report indicated harassment of Trooper 1; and, true to form, she buried the inquiry into Cuomo's misconduct. The Amended Complaint clearly alleges both knowledge and active participation. This is not an "unaware supervisor" case.[2]

---

[2]     The allegations here stand in sharp contrast to McHenry v. Fox News Network, LLC, 510 F. Supp. 3d 51, 78–79 (S.D.N.Y. 2020), where the alleged harassment occurred prior to plaintiff's complaint, and where the HR complaint did in fact result in an investigation by outside counsel. Likewise, the individual defendant in Friederick v. Passfeed, Inc., No. 21 Civ. 2066 (RA), 2022 WL 992798, at *4 (S.D.N.Y. Mar. 31, 2022) simply knew nothing about the sexual harassment at issue, precluding any claim against him. Finally, while it is *sufficient* to allege that someone "recklessly disregarded their repeated complaints," as in Lewis v. Triborough Bridge & Tunnel

## II.    DEROSA AND AZZOPARDI RETALIATED AGAINST TROOPER 1

Following Cuomo's lead, both DeRosa and Azzopardi retaliated against Trooper 1, by taking to public fora to accuse her and her attorneys of committing crimes, in hopes of deterring her complaints of discrimination.  They now argue that, because the complaints of Trooper 1 (and other women) succeeded in forcing the DeRosa to resign, they are now free to retaliate against Trooper 1.  This is not the law.

Defendants propose a hodgepodge of standards for post-termination retaliation, but none of them reflect the law in this area.  They urge that Defendants must have had "control over" some "aspect" of "[plaintiff's] working conditions."  Defendants' Brf. at 19 (citing Marchuk v. Faruqi & Faruqi, LLP, 100 F. Supp. 3d 302, 311 (S.D.N.Y. 2015).  They argue that an "employer" must have taken "adverse employment action."  Id. at 18-19 (citing Forrest v. Jewish Guild for the Blind, 3 N.Y.3d 295, 313 (2004), Kugel v. Queens Nassau Nursing Home Inc, No. 120 Civ. 5528 (ENV) (PK), 2021 WL 5701408, at *7 (E.D.N.Y. Oct. 20, 2021) and Miller v. City of Ithaca, 179 A.D.3d 1235, 1238 (3d Dep't 2020)).  And they argue in the alternative that the employer's actions must impact an "ongoing economic relationship" between employer and employee.  Id. (citing Schmitt v. Artforum Intl' Mag., Inc., 178 A.D.3d 578, 584 (1st Dep't 2019)).

None of these citations to non-binding authorities correctly state the law in this area.  The correct standard, as Defendants appear to acknowledge elsewhere, is to ask whether the employer's actions "could well dissuade a reasonable worker from making or supporting a

---

Auth., 77 F. Supp. 2d 376, 384 (S.D.N.Y. 1999), it is not *necessary*, nor has any case held that this is the appropriate standard for aiding-abetting liability. None of these cases address Trooper 1's theory of liability as to DeRosa, that she covered up for a harasser, paving the way for further harassment.

charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006);

see N.Y.C. Admin. Code § 8-107(7) ("the retaliatory or discriminatory act or acts complained of

must be reasonably likely to deter a person from engaging in protected activity").  Threats

(including potential criminal prosecution) and false allegations are classic examples of actionable

retaliatory acts that "could well dissuade a reasonable worker."  See Lore v. City of Syracuse,

670 F.3d 127, 147 (2d Cir. 2012) (reading the plaintiff "Miranda warnings" and threatening "to

charge [her] with a crime"); Wheeler v. Bank of New York Mellon, 256 F. Supp. 3d 205, 221

(N.D.N.Y. 2017) (false accusation that plaintiff threatened a colleague); DeVore v.

Nieghborhood Hous. Servs. Of Jamaica, Inc., No. 15 Civ. 6218, 2017 WL 1034787, at *10

(E.D.N.Y. Mar. 16, 2017) ("retaliatory write-ups for infractions"); Perrin v. Conn. Dep't of

Corr., No. 16 Civ. 643 (JAM), 2016 WL 6594070, at *2 (D. Conn. Nov. 7, 2016) ("initiat[ing]

disciplinary proceedings"); Shanks v. Vill. Of Catskill Bd. of Trustees, 653 F. Supp. 2d 158, 166

(N.D.N.Y. 2009) ("false accusations . . . 'may be considered adverse employment actions'")

(emphasis in original) (citation omitted).[3]  These statutes even prohibit filing retaliatory civil

counterclaims against a victim of discrimination. See Rodriquez v. Nat'l Golf Links of Am., No.

19 Civ. 7052 (PKC) (RML), 2020 WL 3051559 (E.D.N.Y. Jun. 8, 2020); Leary v. Al-Mubaraki,

---

[3]     See also Daugherty v. Deschutes Cnty., No. 19 Civ. 00897 (MK), 2021 WL 2784761, at
*3 (D. Or. May 6, 2021), report and recommendation adopted, No. 19 Civ. 00897 (MK), 2021 WL
2784267 (D. Or. July 2, 2021) (publicly casting plaintiff in a negative light); Sanders v. Madison
Square Garden, L.P., No. 06 Civ. 589(GEL), 2007 WL 2254698, at *13–16 (S.D.N.Y. Aug. 6,
2007), opinion withdrawn in non-pertinent part on reconsideration, 525 F. Supp. 2d 364 (S.D.N.Y.
2007) (negative post-filing media statements).

No. 18 Civ. 0048 (LTS) (HBP), 2019 WL 4805849 (S.D.N.Y. Sept. 30, 2019); <u>Santi v. Hot In</u>
<u>Here, Inc.</u>, No. 18 Civ. 03028 (ER), 2019 WL 290145 (S.D.N.Y. Jan. 22, 2019).

Here, DeRosa accused Trooper 1 of the crime of "extortion" and threatened her with

legal action.  AC at ¶ 154.  Naturally, she intended to dissuade Trooper 1 from going forward

with litigation, and such a threat, implying costly litigation or criminal prosecution, was meant to

and likely would dissuade a worker from pursuing action.  Moreover, both hers and Azzopardi's

statements must be viewed as part of an overall campaign by Cuomo, who has gone on the attack

against his accusers by threatening ethics charges against the attorneys who investigated him, <u>id.</u>

at ¶ 154, and threatening to launch malicious criminal prosecutions for "perjury" and "witness

tampering" against those who stood up to him, <u>id.</u> at ¶ 156.  It is in this context that Trooper 1

filed her initial complaint, and Azzopardi subsequently accused Trooper 1 and her attorneys of

trying to "extort" a settlement and of resorting to "cheap cash extortions," both accusations of

criminality.  <u>Id.</u> at ¶ 159.  Again, these statements by Azzopardi, as Cuomo's spokesman, were

intended to dissuade Trooper 1 from continuing her litigation against Cuomo, and were part and

parcel of Cuomo's overall campaign to dissuade litigation against him.  Such sharp elbow

intimidation tactics would dissuade a reasonable employee, especially a law enforcement officer

like Trooper 1, whose career depends upon her reputation for probity.[4]

## III.    DEFENDANTS' THREATS ARE NOT PROTECTED BY THE FIRST AMENDMENT

Defendants cite numerous defamation cases turning on First Amendment defenses;

<u>Greenbelt Co-op. Pub. Ass'n v. Bresler</u>, 398 U.S. 6, 9 (1970), for instance, involved application

---

[4]     Neither defendants' public accusation of criminality were akin to the simple denials of
wrongdoing in <u>Melman v. Montefiore Med. Ctr.</u>, 946 N.Y.S.2d 27, 42 (1st Dep't 2012).  And
<u>Dixon v. Int'l Bhd. of Police Officers</u>, 504 F.3d 73, 84 (1st Cir. 2007) is favorable to plaintiff's

of the "actual malice" standard, derived from the interpretation of the First Amendment established by <u>New York Times Co. v. Sullivan</u>, 376 U.S. 254, 279–80 (1964).  Defendants do not explain why these cases apply.  First Amendment defenses and doctrines are not usually applicable in the retaliation context.  <u>See, e.g.</u>, <u>Booth v. Pasco Cnty., Fla.</u>, 757 F.3d 1198, 1212–16 (11th Cir. 2014) (held: union speech encouraging retaliation against plaintiff was not subject to a First Amendment defense, because government usually has a "compelling interest" in preventing retaliation).  Defendants have apparently backed down from a direct First Amendment defense, and they should not be allowed to erect one indirectly.

In any case, this is not a situation, as in the cases cited, where the phrase "extortion" or "blackmail" was used in the course of a public debate, or in a context suggesting they were merely rhetorical.  Defendants' statements pointedly imputed criminality to Trooper 1.  Even in the public statement DeRosa has included in Defendants' Memorandum of Law, she mentioned that Trooper 1's statements might be "actionable," strongly suggesting she would attempt retaliatory prosecution.  And DeRosa never mentions that Trooper 1 threatened litigation; she said simply that Trooper 1 was extorting her.  In other words, no reader could understand her to be commenting on her view of a lawsuit's merits, unlike in some of the cases cited, because she says nothing about pending litigation. <u>See</u> <u>G&R Moojestic Treats, Inc. v. Maggiemoo's Int'l, LLC</u>, No. 03 Civ. 10027 (RWS), 2004 WL 1172762, at *1 (S.D.N.Y. May 27, 2004) (use of "blackmail" would not be read literally given its couching in qualified language, and subsequent statement that defendant would "encourage straightforward and open discussion" with plaintiff); <u>Sabharwal & Finkel, LLC v. Sorrell</u>, No. 155808/2012, 2013 WL 2155592, at *1 (N.Y. Sup. Ct.

---

position, in that it affirmed a jury verdict that public "threats and intimidation" by a union president were retaliatory.

May 09, 2013) (in the context of a detailed and knowledgeable discussion of the merits of a lawsuit, subsequent use of "extortion" would be read as a comment upon the merits of the lawsuit, rather than accusation of crime).

Likewise, Azzopardi's statements, coming in the context of Cuomo's prior threats to go to prosecutors, were not perceived as empty rhetoric. His attempt to provide a broader context to these statements only digs this hole deeper. Saying that Trooper 1's law firm is skilled or experienced in extortion only suggests the more strongly that she has deliberately engaged in criminal extortion, by hiring professional extortionists.[5]

## IV.    **DEFENDANTS' THREATS WERE NOT TRIVIAL**

Defendants cite a run of cases where retaliation was held too "trivial" to be actionable. These are all distinguishable as a matter of law or fact, and some usefully illustrate concepts relevant to Plaintiff's allegations.

Tepperwien v. Entergy Nuclear Operations, Inc., 663 F.3d 556 (2d Cir. 2011) involved an appeal of a summary judgment motion, where an employer's purported "threats" could be considered in factual context. In proper context, none of them were true "threats." For instance, one statement was made in response to plaintiff asking if he could kick someone "in the groin," warranting an equally facetious response from the employer. Id. at 571. Otherwise, plaintiff was complaining about "stray" critical comments in the workplace. Id. Conversational statements like these lie far afield from the public imputations of criminality and threats of prosecution seen

---

[5]     These statements do not resemble the rhetorical, non-specific use of the phrase "blackmail" to criticize an opponent's position during a spirited townhall meeting, as in Bresler, 398 U.S. at 13 or Melius v. Glacken, 943 N.Y.S.2d 134 (2012). Defendants' other cases are factually dissimilar as well. See McDougal v. Fox News Network, LLC, 489 F. Supp. 3d 174, 184 (S.D.N.Y. 2020) (commentator introduced allegedly defamatory statement with the phrase "for the sake of argument," cluing any viewer, given the hyperbolic nature of the talk show, that the following statement would not be literal fact).

here. It is far, too, from a civil request to withdraw a complaint, as in Lax v. City Univ. of New York, No. 16 Civ. 799 (LDH) (VMS), 2020 WL 6161253, at *9 (E.D.N.Y. Oct. 21, 2020), aff'd, No. 20 Civ. 3906, 2022 WL 103315 (2d Cir. Jan. 11, 2022).[6]

Mihalik v. Credit Agricole Cheuvreux N. Am., Inc., 715 F.3d 102, 115–16 (2d Cir. 2013) is favorable to plaintiff's position and should be followed by this Court. There, the Second Circuit reversed the trial court, holding that harsh, humiliating statements in front of a plaintiff's office peers could be found retaliatory. Defendants' statements, too, could have been read by any of Trooper 1's peers. They were meant to put her in fear for her personal and professional reputation, and, likewise, to cast humiliating aspersions about Trooper 1's conduct, just as in Mihalik. Defendants have misread other cases, as well, and their misreading is telling, as it demonstrates how quick they are to discount actions that are, in fact, retaliatory as a matter of law.

Chung v. City Univ. of New York, 605 F. App'x 20, 22 (2d Cir. 2015) found "a negative performance review" non-actionable, but this was under the material adversity standard for a discrimination claim, not the Burlington standard applicable here. In fact, the Second Circuit has definitively held that "a poor performance evaluation could very well deter a reasonable worker from complaining," and so serve as the basis for a retaliation claim. Vega, 801 F.3d at 92 (2d Cir. 2015). The case demonstrates the gap between material adversity and the Burlington standard, and should be weighed carefully here for illustrating the difference.[7]

---

[6]     Though such a request would be probative of retaliatory intent.

[7]     Defendants' other cases are factually distinguishable, even if they are selectively quoted to suggest facts that are more favorable to Defendants' than they actually are. See Mucciarone v. Initiative, Inc., No. 18 Civ. 567 (PKC), 2020 WL 1821116, at *8 (S.D.N.Y. Apr. 10, 2020), appeal dismissed (Aug. 21, 2020) (a "harsh tone" at an otherwise civil business meeting not retaliatory); Holleman v. Art Crating Inc., No. 12 Civ. 2719 (VMS), 2014 WL 4907732, at *53 (E.D.N.Y. Sept.

## V.  DEROSA'S RESIGNATION DOES NOT SHIELD DEFENDANTS FROM LIABLITY

The Defendants counter that the Court should discard the <u>Burlington</u> standard because DeRosa quit before retaliating against Trooper 1 and, therefore, Defendants were not her "employers."  The NYSHRL and NYCHRL, however, cannot be construed to create a privilege for discriminators who resign before retaliating.

The interpretational history of the antidiscrimination laws demonstrates that they should apply to the facts here.  In 1997, the Supreme Court held that "former employees are included within" Title VII.  <u>Robinson v. Shell Oil Co.</u>, 519 U.S. 337, 346 (1997).  Analyzing the statutory text, the Court there held that the term "employee" lacked a "temporal qualifier" as would limit the statute to current employees only.  <u>Id</u>. at 341–42.  It also noted that other uses of "employee" in Title VII suggested that the term applied to former employees, for instance in specifying that relief could include "reinstating" an employee.  <u>Id.</u> at 342.  Given the statutory text, and in light of Title VII's broad remedial purpose, the Court held that Title VII covered former employees. <u>Id.</u>  Courts applying Title VII, the NYSHRL and NYCHRL agree that the end of an employment relationship does not end the employer's obligation to refrain from retaliation.  <u>See</u>, <u>e.g.</u>, <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 178–79 (2d Cir. 2005) (post-termination furnishing of negative job reference could form basis for retaliation claim); <u>Wermann v. Excel Dentistry, P.C.</u>, No. 13 Civ. 7028 (DAB), 2014 WL 846723, at *3 (S.D.N.Y. Feb. 25, 2014) (holding that post-employment opposing of unemployment benefits and filing of counterclaims could both count as

---

30, 2014) (one comment about a third-party, and another conversation that did not even take place in plaintiff's presence, were not retaliatory); <u>Smiley v. Cassano</u>, No. 10 Civ. 3866 RJS, 2012 WL 967436, at *8 (S.D.N.Y. Mar. 21, 2012) (favorable investigative report, with some performance criticism, not retaliatory).

acts of retaliation under the NYSHRL and NYCHRL, collecting cases, and denying defendant's motion to dismiss); Spencer v. Int'l Shoppes, Inc., 902 F. Supp. 2d 287, 294–300 (E.D.N.Y. 2012) (post-termination counterclaim was actionable as retaliation, regardless of whether there was a reasonable basis for the counterclaim).

By the same reasoning, the Local Laws apply to the present situation, where an employee's complaint succeeds in forcing a discriminator to resign. Both make it illegal "for any person engaged in any activity to which this section applies to retaliate." N.Y. Exec. Law § 296(7); New York City, N.Y., Code § 8-107(7). The relevant activity here is "employment" but, just as the Supreme Court noted in Robinson, the term "employment" contains no "temporal qualifier." N.Y. Exec. Law § 292(5); New York City, N.Y., Code § 8-102. And, just as in Robinson, other parts of the statutes suggest that they should apply to the present situation. Both laws must "be construed liberally for the accomplishment of the remedial purposes thereof." N.Y. Exec. Law § 300; New York City, N.Y., Code § 8-130 (reading "for accomplishment of the *uniquely* broad and remedial purposes thereof) (emphasis added). A primary remedial purpose of the antiretaliation law is to protect those who have "filed a complaint." N.Y. Exec. Law § 296(7); New York City, N.Y., Code § 8-107(7). But both laws are governed by a three-year limitations period, N.Y.C.P.L.R. § 214(5); New York City, N.Y., Code § 8-502(d), and a complainant may come forward against an individual employer or aider-abettor many years after the parties have left any colorable employment relationship with each other. That does not mean the defendants are free to retaliate, and that is exactly why the courts cited above (and numerous others) have held that post-filing counterclaims may be retaliatory. To further illustrate, the NYSHRL gives as an explicit example of retaliation "disclosing an employee's personnel files." N.Y. Exec. Law § 296(7). It makes no sense to allow a discriminator to take the personnel files

of the complainant, resign, and then reveal the personnel file after their resignation. That would

be an unnatural and narrow construction undercutting the laws' remedial purpose.

So too here: the success of Trooper 1's complaint cannot be held against her, and DeRosa

and Azzopardi did not get carte blanche to retaliate just because they were not her employers at

the time of the threats. This interpretation would create a loophole in the discrimination laws

and disincentivize complainants by punishing complaints that actually cause a discriminator to

resign. That holding would create a privilege to retaliate against successful complainants,

severely weakening protections for those who complain.

## VI.     **AZZOPARDI IS AN AIDER-ABETTOR OF CUOMO'S RETALIATION**

Azzopardi may also be held liable as an aider-abettor of Cuomo's retaliation. As

described above, Cuomo has engaged in a campaign of retaliation against his accusers, in which

Azzopardi has participated as his spokesman, including in publicly accusing Trooper 1 of

extortion. As explained above, this makes him liable as a "person" engaged in an "activity to

which the Local Laws apply. It also makes him liable as an "agent" of Cuomo, which is an

independent basis for liability under the NYCHRL. New York City, N.Y., Code § 8-107(1)(a).

## VII.    **THE NYCHRL APPLIES**

Relying on Hoffman v. Parade Publications, 15 N.Y.3d 285, 290 (2010), Defendants

argue that the City Law does not apply because Trooper 1 did not feel the effects of retaliation

within New York City. But they misread Hoffman.

In Hoffman, the New York Court of Appeals defined who may "invoke[] the protection

of the City Human Rights Law." Id. Relying on an "impact" test, the Court found that the City

Law protects those who live or work in New York City. Id.

Here, Defendant Azzopardi does not argue – nor can he – that Trooper 1 did not work in New York City.  Indeed, many of the most serious incidents of harassment occurred in New York City, including Cuomo's first conversation with Trooper 1 and the incident on the elevator.  See Kraiem v. JonesTrading Institutional Servs. LLC., 492 F. Supp. 3d 184, 200 (S.D.N.Y. 2020) ("To the degree incidents of harassment . . . occurred while Kraiem was in New York City, the Court sees no reason those claims cannot proceed.")  Moreover, Trooper 1 engaged in protected activity in New York City by filing this action in the Brooklyn.  Defendants' threats were aimed at deterring and dissuading this New York City-based litigation.[8]  Clearly, Defendants' unlawful actions had an "impact" here and the City Law applies.

---

[8]     Cases about plaintiffs who live and work entirely outside of New York City, and then try to sue City-based employers, like Pedroza v. Ralph Lauren Corp., No. 19-CV-08639 (ER), 2020 WL 4273988, at *2–4 (S.D.N.Y. July 24, 2020), Amaya v. Ballyshear LLC, 340 F. Supp. 3d 215, 220–23 (E.D.N.Y. 2018) and Ware v. L-3 Vertex Aerospace, LLC, 833 F. App'x 357, 359 (2d Cir. 2020) do not address the factual situation alleged here and are inapposite.

## **CONCLUSION**

For these reasons, Trooper 1 respectfully requests that the Court deny Defendants'

motion in its entirety and lift the stay of discovery.

Dated: August 16, 2022
      New York, New York            Respectfully submitted,

                                           **WIGDOR LLP**

By: _____
                        Valdi Licul
                        John S. Crain

                        85 Fifth Avenue
                        New York, NY 10003
                        Telephone: (212) 257-6800
                        Facsimile: (212) 257-6845
                        vlicul@wigdorlaw.com
                        jcrain@wigdorlaw.com

                        *Counsel for Plaintiff*