# WIGDOR LLP
ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Valdi Licul**
vlicul@wigdorlaw.com

June 5, 2023

<u>VIA ECF</u>

The Honorable Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: <u>Trooper 1 v. Cuomo, et al.</u>; Case No. 22-cv-00893 (LDH)(TAM)

Dear Judge Merkl:

We represent Plaintiff Trooper 1 ("Plaintiff" or "Trooper 1") in this matter. We write jointly with Defendant Andrew Cuomo ("Cuomo") pursuant to the Court's rules concerning discovery disputes. For the following reasons, Trooper 1 requests that this Court (1) quash the subpoenas seeking information about Cuomo's victims' prior sexual history and (2) compel Cuomo to sit for his deposition.

**I.** **<u>PLAINTIFF'S POSITION</u>**

 **A.** **<u>Backround</u>**

On August 24, 2021, Cuomo resigned in disgrace after a comprehensive and independent investigation by the New York State Attorney General ("AG") found that he sexually harassed approximately a dozen women, many of them state employees. Cuomo, with the help of his enablers, was also found to have retaliated against his victims by, for instance, secretly recording one of them, distributing confidential personnel information to the press and engaging in what one Cuomo confidant described as "victim shaming." A separate investigation by the State Assembly confirmed these findings. And Cuomo has since been sued by two of his victims, including Trooper 1.

Unable to mount a credible defense (other than to gripe that everyone, including his victims, the AG and the State Assembly, are out to get him), Cuomo now seeks to punish his victims further by peering into their sex lives. He wants to know whether Charlotte Bennett ("Bennett") was sexually assaulted while in college and whether Lindsay Boylan ("Boylan") had an affair at work.



To make matters worse, Cuomo has refused to comply with his own discovery obligations. He refuses to give a date for his own deposition - while demanding that many of his victims, who have already given sworn testimony, be deposed a second time - claiming that he is entitled to wait until his pending partial motion to dismiss has been decided.

    **B.    <u>The Subpoenas Should Be Quashed</u>**

Fed. R. Evid. ("Rule") 412(a) prohibits a party to a civil proceeding from introducing evidence that a sexual harassment victim "engaged in other sexual behavior" or to prove the "victim's sexual predisposition" absent a threshold showing by the proponent of the evidence that the "probative value [of the contested evidence] <u>substantially</u> outweighs the danger of harm to any victim and of unfair prejudice to any party." (Emphasis added). "The Rule's expanded protection 'aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process.'" <u>Wolak v Spucci</u>, 217 F.3d 157, 160 (2d Cir. 2000) (quoting Rule 412, Advisory Committee Notes to 1994 Amendments ("Advisory Committee Notes")). Rule 412 protects both parties and nonparties to a litigation, and "extends to 'pattern' witnesses in . . . civil cases whose testimony about other instances of sexual misconduct by the person accused is otherwise admissible." <u>Id.</u> Courts are empowered to not only preclude the admission of such evidence but "should presumptively issue protective orders barring discovery" of such evidence. <u>Id.</u>

Here, Cuomo's subpoenas unquestionably seek evidence protected by Rule 412. He wants to know whether Boylan had a work affair and whether Bennett was sexually assaulted in college, issues that have little, if any, relevance to whether Cuomo sexually harassed the two women. See <u>Wolak</u>, 217 F.3d at 160 ("Whether a sexual advance was welcome, or whether an alleged victim in fact perceived an environment to be sexually offensive, does not turn on the private sexual behavior of the alleged victim, because a woman's expectations about her work environment cannot be said to change depending on her sexual sophistication.").

Nor can Cuomo strip his victims of the protections of Rule 412 by claiming that he is not seeking the information to prove his victims' "sexual predisposition," but only to attack their credibility. Rule 412 presumptively bars information about a victim's "sexual behavior," Rule 412(a)(1), even where the information is not offered to show "sexual predisposition." Rule 412(a)(2). "Evidence, which might otherwise be admissible under Rules 402, 404(b), 405, 607, 608, 609 o[r] some other evidence rule, must be excluded if Rule 412 so requires." Advisory Committee Notes.

Cuomo's subpoena seeking information about whether Bennett, while in college, complained about being sexually assaulted is also defective because it seeks irrelevant character evidence in violation of Rule 404(b). It is wholly improper for Cuomo to attack Bennett as untrustworthy simply because she has been victimized in the past. <u>See</u> <u>Outley v. City of New York</u>, 837 F.2d 587, 593 (2d Cir. 1988) (defendant improperly questioned plaintiff "about prior lawsuits" in an attempt to



impeach his credibility "and to show his bias toward white police officers"). Moreover, Bennett's prior complaint about being sexually assaulted hardly qualifies to establish a "fraudulent pattern" of false allegations. Id. at 593.

Finally, Cuomo cannot protest that Trooper 1 lacks standing to object to the subpoenas. Rule 412 places the burden on Cuomo - not Trooper 1 or his victims – to show the absence of "harm" to his victims (Bennet and Boylan) and the absence of "unfair prejudice to any party" (Trooper 1). Indeed, Trooper 1 has a vital interest in ensuring that Cuomo does not abuse the discovery process to intimidate potential witnesses. Rule 412 was enacted to "encourage[] victims of sexual misconduct to . . . participate in legal proceedings against alleged offenders." Advisory Committee Notes (emphasis added). And witnesses such a Boylan and Bennett, who possess "critical" information about Cuomo's "harassment directed at employees other than plaintiff," Belvin v. Electchester, No. 17 Civ. 6303, 2022 WL 10586743, at *6 (E.D.N.Y. Oct. 18, 2002) (Garaufis, J.), should not be subjected to Cuomo's continuing efforts to embarrass and sexually stereotype them by gratuitously peering into their sex lives. See Rule 412, Congressional Discussion (acknowledging that "[t]oo often" sexual assault victims are "humiliated," "harassed" and "bullied" when they report unlawful conduct such that "many find the trial almost as degrading" as the unlawful sexual conduct) (comments from Elizabeth Holtzman, drafter of Rule 412).

### C. Cuomo Should be Compelled to Sit for His Deposition

A Court may impose sanctions on a party who violates scheduling orders, Fed. R. Civ. P. 16(f)(1), up to and including, "striking [their] pleadings in whole or in part" or even rendering a "default judgment against the disobedient part." Fed. Rule Civ. P 37(b)(2)(A)(iii), (vi). Such severe sanctions "may be appropriate in extreme situations, as when a court finds willfulness, bad faith, or any fault on part of the noncompliant party." In re Gums, No. 17-23947 (RDD), 2022 WL 467798, at *3 (Bankr. S.D.N.Y. Feb. 15, 2022) (quoting Guggenheim Cap., LLC v. Birnbaum, 722 F.3d 444, 451 (2d Cir. 2013)).

Here, Cuomo refuses to provide a date for his deposition because, according to him, he is entitled to wait until his partial motion to dismiss is decided. Yet he has not sought a stay of discovery and his co-defendants' stay request was denied. Nonetheless, Cuomo has manufactured his own partial stay by refusing to schedule his deposition, in direct contravention of this Court's directive.

Moreover, "there is no priority of deposition in federal court." Saldarriaga v. Taradex, Inc., 20 Civ. 4099 (WFK), 2021 WL 54086, at *1 (E.D.N.Y. Jan. 6, 2021). As such, Cuomo is not entitled either by rule or custom to demand that every other witness be deposed first. Like any other litigant, must cooperate in the scheduling of his own deposition as the schedules of the parties, witnesses and attorneys permit.



The Honorable Taryn A. Merkl<br>
June 5, 2023<br>
Page 4

## II.    GOVERNOR CUOMO'S POSITION[1]

Trooper 1 seeks to bolster her own allegations by including pages of allegations related to accusations made by other women against Governor Cuomo. 2d. Am. Compl., ECF No. 71 ¶¶ 75-143. Under the Federal Rules and under basic principles of due process, Governor Cuomo is entitled to take broad discovery concerning all these alleged facts, including as to critical issues of whether the other complainants are credible and whether their allegations are believable. Consistent with these fundamental principles of fairness, Governor Cuomo noticed several subpoenas related to the allegations made by Ms. Boylan, including subpoenas to her former employer Empire State Development ("ESD") and her former boss at ESD, and subpoenas related to the allegations made by Ms. Bennett, including a subpoena to Hamilton College. Trooper 1 objected to the subpoenas and insisted that they not even be served.

By objecting to service of these subpoenas, Trooper 1 improperly and cynically seeks to shield Ms. Boylan's and Ms. Bennett's accusations—which Trooper 1 expressly relies on—from any scrutiny by grossly mischaracterizing the purposes for which Governor Cuomo intends to use the information. Though Trooper 1 labels these discovery efforts as "harassing" and "intimidating," the subpoenas seek information well within the bounds of legitimate inquiry. Indeed, we reasonably believe the OAG investigation covered some of the same ground, and had we been able to obtain the OAG's investigative files, the scope of at least some of these nonparty subpoenas likely would have been much narrower. It is not victim shaming to take nonparty discovery—which can be produced on a confidential basis pursuant to the Protective Order—concerning the allegations of harassment in Trooper 1's Complaint. There is no merit to Trooper 1's objections.

<u>First</u>, Trooper 1 lacks standing to object to the nonparty subpoenas. *See Sali v. Zwanger & Pesiri Radiology Grp., LLP*, No. 19 CV 275 (FB) (CLP), 2022 WL 1085508, at *17 (E.D.N.Y. Jan. 10, 2022). Parties can object to a nonparty subpoena only when they have a claim of "some ***personal*** right or privilege with regard to the documents sought." *Meyer Corp. U.S. v. Alfay Designs, Inc.*, No. CV 2010 3647(CBA)(MDG), 2012 WL 3537001, at *1 (E.D.N.Y. Aug. 14, 2012) (emphasis added). Trooper 1 is thus not entitled to assert privacy interests of others; rather, "the claim of privilege or right ***must be personal to the movant, not to the non-party witness on whom the subpoena was served***." *Sali*, 2022 WL 1085508, at *18 (citing cases) (emphasis added). In this

---

[1] The issue concerning Governor Cuomo's deposition is not ripe for resolution (and Trooper 1 raised it here over our objection) because the parties are actively engaged in discussions concerning the timing of many discovery events, including the need to extend the discovery deadline. Governor Cuomo has not taken the position that his deposition must wait until his partial motion to dismiss is resolved. Rather, Governor Cuomo has insisted on a reasonable and rational deposition schedule. Nonparty subpoenas are still being enforced and many depositions have yet to be scheduled, including the depositions of Trooper 1 and a number of nonparties. Governor Cuomo's deposition will be scheduled in due course, as we have repeatedly informed Trooper 1's counsel.



case, Trooper 1 has zero personal interest in information related to Ms. Boylan and Ms. Bennett, two individuals who Trooper 1 does not even know and never interacted with.[2]

Further, Ms. Boylan's counsel have appeared in this action in preparation to argue certain issues on their client's behalf.[3] To the extent Ms. Bennett would like to do the same, she too can appear before this Court and be heard as well.

Second, none of the subpoenas seek information related to prior relationships for any improper purpose and certainly not for the purpose of inquiring generally into Ms. Boylan's or Ms. Bennett's sexual history or sexual predispositions. Instead, the subpoenas seek information on two discrete topics, each of which is specifically relevant to the credibility and plausibility of the allegations.

Regarding the subpoenas related to Ms. Boylan, information concerning her workplace relationship is relevant to the credibility of her accusations against Governor Cuomo. When she went public with her allegations, Ms. Boylan, who was at the time running for Manhattan Borough President, claimed that she left her job at ESD because she could "no longer ignore" the sexual harassment.[4] But that was not true. In fact, Ms. Boylan resigned in the wake of numerous workplace complaints against her—including regarding her personal relationship with Howard Zemsky, the President and CEO of ESD (*i.e.,* her boss). Ms. Boylan's relationship with Mr. Zemsky is further relevant because Mr. Zemsky claimed to be a witness to some of the relevant events.[5]

Thus, Ms. Boylan's workplace relationship is not a side show, it is a critical fact. Governor Cuomo is entitled to information concerning whether Ms. Boylan made allegations against Governor Cuomo as a cover story for why she really left state office and/or as part of an effort to energize her flagging political campaign. To establish Ms. Boylan's lack of credibility is not a smear campaign, it is due process of law.

---

[2] Rule 412 does not alter the standing requirement. It is an evidentiary limitation that may be invoked by parties at trial, not a discovery constraint. Further, the only case Trooper 1 cites for the proposition that Rule 412 allows her to raise objections to nonparty subpoenas that do not seek her personal information is not even about discovery, much less about whether a party can invoke Rule 412 in the context of nonparty discovery. *Belvin v. Electchester Mgmt., LLC*, No. 17-CV-6303 (NGG) (MMH), 2022 WL 10586743, at *6 (E.D.N.Y. Oct. 18, 2022).

[3] Governor Cuomo is moving to compel Ms. Boylan's compliance with the subpoena served on her, which is returnable in the Southern District of New York. That motion will raise a number of disputes, including the one raised here by Plaintiff's counsel.

[4] Lindsey Boylan, *My Story of Working with Governor Cuomo*, Medium (Feb. 24, 2021), *available at* https://lindseyboylan4ny.medium.com/my-story-of-working-with-governor-cuomo-e664d4814b4e.

[5] Mr. Zemsky initially signed a public statement refuting certain of Ms. Boylan's allegations but then later changed his story. Governor Cuomo is entitled to take discovery on the circumstances that led to Mr. Zemsky's change in position, including whether Ms. Boylan influenced Mr. Zemsky by threatening him.



The Honorable Taryn A. Merkl
June 5, 2023
Page 6

Likewise, as for Ms. Bennett, the information Governor Cuomo seeks is not, as Trooper 1 argues, for the purpose of showing that Ms. Bennett is "untrustworthy simply because she has been victimized in the past." Indeed, the entire point of taking discovery into the claim Ms. Bennett made against a Hamilton College classmate is that the information likely will establish that Ms. Bennett's prior claim was false, as her classmate alleged in a federal lawsuit in 2017.[6] A prior false claim is plainly relevant to the credibility of Ms. Bennett's allegations against Governor Cuomo.

<u>Finally</u>, even if the information regarding Ms. Boylan's relationship with Mr. Zemsky or Ms. Bennett's allegation against her Hamilton classmate could ultimately be deemed inadmissible, that is not a basis to block the discovery in the first place. Rule 26(b)(1) expressly provides that information "need not be admissible in evidence to be discoverable." *Wolak*, the only case Trooper 1 cites in support, does not stand for the proposition that evidence that could be inadmissible under Rule 412 should not be discovered in the first place. Instead, *Wolak* analyzed whether evidence of out-of-office sexual conduct should have been admitted at trial. *See Wolak v. Spucci*, 217 F.3d 157, 158-59 (2d Cir. 2000); *see also Outley v. City of New York*, 837 F.2d 587, 592-93 (2d Cir. 1988) (analyzing whether evidence should be admitted under Fed. R. Evid. 404(b)). And courts have since made clear that *Wolak* "did not address the discoverability of this type of evidence," and that Rule 26(c) "permits discovery when it is 'relevant under the facts and theories of a particular case.'" *Muniu v. Amboy Neighborhood Ctr., Inc.*, No. 98CV2211FBJMA, 2001 WL 370226, at *1 (E.D.N.Y. Apr. 11, 2001); *see also, e.g., Yutong Jin v. Choi*, No. 1:20-cv-09129-MKV, 2021 WL 738843, at *2 (S.D.N.Y. Feb. 24, 2021) ("Plaintiff confuses what is admissible at trial and what is discoverable under Federal Rule of Civil Procedure 26."); *Weber v. Multimedia Ent., Inc.*, No. 97 Civ. 0682 PKL THK, 1997 WL 729039, at *3 (S.D.N.Y. Nov. 24, 1997) ("[E]ven if Federal Rule of Evidence 412 controlled the scope of pretrial discovery, which it does not . . . .").

We thank the Court for its consideration and time in connection with this matter.

Respectfully submitted,

Valdi Licul

---

[6] *See Doe v. The Trustees of Hamilton Coll.*, No. 6:17-CV-1202 (MAD/ATB), ECF No. 1 (N.D.N.Y. Oct. 30, 2017).