**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

------------------------------------------------------------- X

TROOPER 1,                                           :

                          Plaintiff,     :     Case No.: 22-cv-00893 (LDH)(TAM)

                                           :

                  v.                 :

                                           :

NEW YORK STATE POLICE, ANDREW              :
CUOMO, MELISSA DEROSA and RICHARD          :
AZZOPARDI,                                           :

                                           :

               Defendants.     :

------------------------------------------------------------- X

## <u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO QUASH SUBPOENAS</u>

WIGDOR LLP

Valdi Licul
John S. Crain

85 Fifth Avenue
New York, NY  10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com

*Counsel for Defendants*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT AND RELEVANT FACTUAL BACKGROUND ..................... 1

ARGUMENT ............................................................................................................................... 2

I.     THE SUBPOENAS SHOULD BE QUASHED .................................................................. 2

       A.     Trooper 1 Has Standing to Object to the Abusive Subpoenas ................................. 5

II.    A PROTECTIVE ORDER IS NECESSARY TO PREVENT THE
       MULTIPLICATION OF NEEDLESS ANCILLARY LITIGATION ................................. 6

CONCLUSION ........................................................................................................................... 7

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                           <u>Page(s)</u>

<u>Anderson v. Buena Bd. of Educ.</u>,
   2019 WL 1262647 (D.N.J. Mar. 19, 2019) ................................................................ 3

<u>Belvin v. Electchester</u>,
   No. 17 Civ. 6303, 2022 WL 10586743 (E.D.N.Y. Oct. 18, 2002) ............................... 5

<u>Hughes v. Hartford Life & Accident Ins. Co.</u>,
   507 F. Supp. 3d 384 (D. Conn. 2020) ........................................................................ 5

<u>Noble Roman's, Inc. v. Hattenhauer Distrib. Co.</u>,
   314 F.R.D. 304 (S.D. Ind. 2016) ................................................................................ 6

<u>Ogden v. All-State Career Sch.</u>,
   299 F.R.D. 446 (W.D. Pa. 2014) ................................................................................ 3

<u>Outley v. City of New York</u>,
   837 F.2d 587 (2d Cir. 1988) ....................................................................................... 4

<u>Progressive Emu Inc. v. Nutrition & Fitness Inc.</u>,
   785 F. App'x 622 (11th Cir. 2019) ............................................................................. 6

<u>Silva v. Pioneer Janitorial Servs., Inc.</u>,
   No. 10 Civ. 11264, 2011 WL 4729783 (D. Mass. Oct. 4, 2011) ................................ 3

<u>Williams v. Muhammad's Holy Temple of Islam, Inc.</u>,
   No. 00 Civ 1251 (RML), 2006 WL 297448 (E.D.N.Y. Feb. 8, 2006)......................... 3

<u>Wolak v Spucci</u>,
   217 F.3d 157 (2d Cir. 2000) ....................................................................................... 2

<u>Rules</u>

Fed. R. Civ. P. 26(c)(1) ................................................................................................... 6
Fed. R. Evid. 412(a).................................................................................................. 1, 2, 3, 5

Plaintiff Trooper 1 ("Plaintiff" or "Trooper 1") respectfully submits this Memorandum of Law in Support of a Motion to Quash the Non-Party Subpoenas served by Plaintiff Andrew Cuomo ("Cuomo") on eight entities and individuals associated with two of his victims, Lindsey Boylan ("Boylan") and Charlotte Bennett ("Bennett").[1]   These subpoenas seek irrelevant information, are invasive and prohibited by Fed. R. Evid. 412(a).

## PRELIMINARY STATEMENT AND RELEVANT FACTUAL BACKGROUND

On August 24, 2021, Cuomo resigned in disgrace after a comprehensive and independent investigation by the New York State Attorney General ("AG") found that he sexually harassed approximately a dozen women, many of them state employees.  Cuomo, with the help of his enablers, was also found to have retaliated against his victims by, for instance, secretly recording one of them, distributing confidential personnel information to the press and engaging in what one Cuomo confidant described as "victim shaming."  A separate investigation by the State Assembly confirmed these findings.  And Cuomo has since been sued by two of his victims, including Trooper 1.

Unable to mount a credible defense (other than to gripe that everyone, including his victims, the AG and the State Assembly are out to get him), Cuomo now seeks to punish his victims further by peering into their sex lives.  Cuomo wants to know whether Bennett was sexually assaulted while in college and whether Boylan had an affair at work.  To that end, he has served eight document and deposition subpoenas.  For the reasons stated below, these

---

[1]   Cuomo has issued subpoenas to (1) Boylan; (2) Bennett; (3) Bennett's college (Hamilton); (4) a person Cuomo alleges Boylan had an affair with; (5) Boylan's defunct campaign for office; (6) Boylan's previous employer, the Executive Chamber of New York State; (7) Boylan's phone carrier, Verizon; and (8) an advisor to Boylan's campaign, Cade Leebron.  Copies of the subpoenas are attached to the Declaration of Valdi Licul, dated June 30, 2023 ("Licul Decl.").

subpoenas should be quashed to the extent they seek information about the sexual histories of Cuomo's victims.

## ARGUMENT

## I.   THE SUBPOENAS SHOULD BE QUASHED

Rule 412(a) prohibits a party to a civil proceeding from introducing evidence that a sexual harassment victim "engaged in other sexual behavior" or to prove the "victim's sexual predisposition" absent a threshold showing by the proponent of the evidence that the "probative value [of the contested evidence] substantially outweighs the danger of harm to any victim and of unfair prejudice to any party."  (Emphasis added).  "The Rule's expanded protection 'aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process.'"  Wolak v Spucci, 217 F.3d 157, 160 (2d Cir. 2000) (quoting Rule 412, Advisory Committee Notes to 1994 Amendments ("Advisory Committee Notes")).  Rule 412 protects both parties and nonparties to a litigation, and "extends to 'pattern' witnesses in . . . civil cases whose testimony about other instances of sexual misconduct by the person accused is otherwise admissible."  Id.  Courts are empowered to not only preclude the admission of such evidence but "should presumptively issue protective orders barring discovery" of such evidence.  Id.

Here, Cuomo's subpoenas unquestionably seek evidence protected by Rule 412.  He wants to know whether Boylan had a work affair and whether Bennett was sexually assaulted in college, issues that have little, if any, relevance to whether Cuomo sexually harassed the two women.  See Wolak, 217 F.3d at 160 ("Whether a sexual advance was welcome, or whether an alleged victim in fact perceived an environment to be sexually offensive, does not turn on the

2

private sexual behavior of the alleged victim, because a woman's expectations about her work environment cannot be said to change depending on her sexual sophistication."); see, e.g., Williams v. Muhammad's Holy Temple of Islam, Inc., No. 00 Civ 1251 (RML), 2006 WL 297448, at *3–4 (E.D.N.Y. Feb. 8, 2006) (excluding evidence of plaintiff's romantic overtures towards an employee of an organization she accused of sexual battery).

Moreover, "Rule 412 has significance in the resolution of a discovery dispute." Silva v. Pioneer Janitorial Servs., Inc., No. 10 Civ. 11264, 2011 WL 4729783, at *1 (D. Mass. Oct. 4, 2011) (citations and quotations omitted). In particular, courts have denied discovery where, as here, the information sought is protected by Rule 412. See id. (refusing to compel plaintiff to answer deposition questions about her sexual history); Ogden v. All-State Career Sch., 299 F.R.D. 446, 448–49 (W.D. Pa. 2014) (collecting cases where discovery was denied and denying similar discovery into plaintiff's private social media conversations about sex); Anderson v. Buena Bd. of Educ., No. 17 Civ. 06816, 2019 WL 1262647, at *4 - 5 (D.N.J. Mar. 19, 2019) (denying motion to compel discovery into prior complaint of sexual assault).

That Cuomo purportedly seeks the information to attack his victims' credibility does not matter. Rule 412 presumptively bars disclosure of information about a victim's "sexual behavior," Rule 412(a)(1), even where the information is not offered to show "sexual predisposition." Rule 412(a)(2). "Evidence, which might otherwise be admissible under Rules 402, 404(b), 405, 607, 608, 609 o[r] some other evidence rule, must be excluded if Rule 412 so requires." Advisory Committee Notes.

Cuomo's subpoena seeking information about whether Bennett, while in college, complained about being sexually assaulted is also defective because it seeks irrelevant character evidence in violation of Rule 404(b). It is wholly improper for Cuomo to attack Bennett as

untrustworthy simply because she has been victimized in the past.  See Outley v. City of New York, 837 F.2d 587, 593 (2d Cir. 1988) (defendant improperly questioned plaintiff "about prior lawsuits" to impeach his credibility "and to show his bias toward white police officers"). Moreover, Bennett's prior complaint about being sexually assaulted hardly qualifies to establish a "fraudulent pattern" of false allegations.  Id. at 593.

Finally, Cuomo's prior testimony to the AG's Office demonstrates that he knows that by focusing on Bennett's prior sexual assault, he can intimidate a "fragile" witness:

```
13          A.    No, with -- with Charlotte I
14    tread very lightly, because with a victim of
15    sexual assault -- and she was clearly fragile
16    and in a delicate place -- I was very careful
17    about those conversations.
18          Q.    Always?
19          A.    Yeah.
```

Cuomo also testified:

```
1           Q.    What do you mean by "fragile"?
2           A.    That I think she had gone through
3     a very difficult situation and was still
4     working it through.
```

Cuomo also well understands that discovery into Boylan's purported sex life will cause her similar pain.  Cuomo is, in short, the exact kind of litigant Rule 412 seeks to curb: a sexual harasser who wishes to exploit his victims' vulnerability.

4

A.     **Trooper 1 Has Standing to Object to the Abusive Subpoenas**

Trooper 1 has a vital interest in ensuring that Cuomo does not abuse the discovery

process to intimidate potential witnesses.

Rule 412 was enacted to "encourage[] victims of sexual misconduct to . . . participate in

legal proceedings against alleged offenders."  Advisory Committee Notes (emphasis added).

And witnesses such as Boylan and Bennett, who possess "critical" information about

"harassment directed at employees other than plaintiff," Belvin v. Electchester, No. 17 Civ.

6303, 2022 WL 10586743, at *6 (E.D.N.Y. Oct. 18, 2002) (Garaufis, J.), should not be subjected

to efforts to embarrass and sexually stereotype them by gratuitously peering into their sex lives.

See Rule 412, Congressional Discussion (acknowledging that "[t]oo often" sexual assault victims

are "humiliated," "harassed" and "bullied" when they report unlawful conduct such that "many

find the trial almost as degrading" as the unlawful sexual conduct) (comments from Elizabeth

Holtzman, drafter of Rule 412).  As such, Rule 412 places the burden on Cuomo – not Trooper 1

or his victims – to show the absence of "harm" to his victims (Bennet and Boylan) and the

absence of "unfair prejudice to any party" (Trooper 1).  Cuomo has not – nor can he – make the

necessary showing.

Further, courts have "inherent authority to limit irrelevant or non-proportional discovery"

even "where the [objecting] party lacks standing to challenge a subpoena served on a non-party."

Hughes v. Hartford Life & Accident Ins. Co., 507 F. Supp. 3d 384, 405 (D. Conn. 2020).  Rule

412 calls for courts to exercise these inherent powers and "presumptively issue protective orders

barring discovery unless the party seeking discovery makes a showing that the evidence sought

to be discovered would be relevant under the facts and theories of the particular case, and cannot

be obtained except through discovery."  Fed. R. Civ. Proc 412, Advisory Committee Notes to 1994 Amendments.

Finally, both Boylan and Bennett have appeared in this action to quash the subpoenas. Accordingly, Cuomo's standing argument is moot.

## II.   A PROTECTIVE ORDER IS NECESSARY TO PREVENT THE MULTIPLICATION OF NEEDLESS ANCILLARY LITIGATION

The Court should also grant a protective order to ensure the litigation does not spiral out of control.  See Progressive Emu Inc. v. Nutrition & Fitness Inc., 785 F. App'x 622, 630 (11th Cir. 2019) ("Defendant had a legitimate interest in enforcing the court's scheduling order and avoiding prejudice that would result from Plaintiff's circumvention of the discovery deadline."); accord Noble Roman's, Inc. v. Hattenhauer Distrib. Co., 314 F.R.D. 304, 306-312 (S.D. Ind. 2016) (court could issue a protective order sought by Plaintiff concerning third-party subpoenas to ensure that discovery did not spiral out of control).  In other words, it is always within the Court's power to "protect a party from annoyance . . . oppression . . . or undue burden," Fed. R. Civ. P. 26(c)(1), and Trooper 1 is entitled to seek a limit to a course of discovery that threatens to drag the litigation far afield.

Cuomo has already begun litigating the third-party subpoenas.  Even if the Court does not totally or partially quash the subpoenas, it can and should enter a protective order to limit the scope of these subpoenas to ensure that discovery does not spiral into ancillary litigation and cause lengthy delays.  It is difficult to credit that Cuomo has served these wide-ranging third-party subpoenas in good faith, rather than to simply harass and embarrass women who have come forward against him.  The sheer number of subpoenas—six directed towards Boylan alone, and eight in total just to these two women—and Cuomo's remarkable reversal about Bennett's previous sexual assaults demonstrates his bad faith.  Even if the information has some faint

6

glimmer of purported relevance to Cuomo's case, the real goal is to snarl this litigation and intimidate witnesses.  Cuomo's proffers of relevance should be closely scrutinized, and discovery should be limited to an amount that will not needlessly drag out litigation and waste resources.

**<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this motion to quash Defendant Andrew Cuomo's eight non-party subpoenas, and for such other and further relief as this Court deems just and proper.

Dated:  June 30, 2023

New York, New York                           Respectfully submitted,

**WIGDOR LLP**

By:  _____
        Valdi Licul
        John S. Crain

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com

*Counsel for Plaintiff*