UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TROOPER 1,

        Plaintiff,

    v.

NEW YORK STATE POLICE, ANDREW CUOMO, MELISSA DEROSA and RICHARD AZZOPARDI,

        Defendants.

22-cv-00893 (LDH)(TAM)

Oral Argument Requested

---

# MEMORANDUM OF LAW IN SUPPORT OF NONPARTY LINDSEY BOYLAN'S MOTION TO QUASH DEFENDANT ANDREW CUOMO'S DOCUMENT SUBPOENAS

E. Danya Perry
Rachel Fleder
Perry Law
157 East 86th Street, 4th Floor
New York, NY 10028
Phone: 646-974-0935
Fax: 646-849-9609
Email: dperry@danyaperrylaw.com

Julie R. F. Gerchik (*pro hac vice*)
Glaser Weil Fink Howard Jordan & Shapiro LLP
10250 Constellation Blvd.
Suite 1900
Los Angeles, CA 90067
Phone: 310-553-3000
Fax: 310-556-2920
Email: jgerchik@glaserweil.com

*Attorneys for Nonparty Lindsey Boylan*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND ............................................................................................................................ 4

LEGAL STANDARD .................................................................................................................... 6

ARGUMENT .................................................................................................................................. 7

    I.    Mr. Cuomo Is Not Entitled to Discovery Concerning Ms. Boylan's Employment History. ................................................................................................................................8

    II.    Mr. Cuomo Is Not Entitled to Discovery Regarding Nonparty Ms. Boylan's Alleged Sexual History with Another Nonparty. ..........................................................................11

    III.    Mr. Cuomo Is Not Entitled to Discovery Regarding Ms. Boylan's Previous Allegations Against Him. ................................................................................................................... 13

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alexander v. New York City Dep't of Educ.*,
   339 F.R.D. 372 (S.D.N.Y. 2021) ...................................................................................8

*In re Alper Holdings, Inc.*,
   398 B.R. 736 (S.D.N.Y. 2008)........................................................................................7

*Butler v. Craft*,
   No. 1:16-CV-01158, 2017 WL 1429896 (W.D. La. Apr. 19, 2017) ........................11

*Cuomo v. Boylan*,
   Case No. 23-mc-01587 (LDH) (E.D.N.Y. June 28, 2023) ........................................2

*Cuomo v. The N.Y. State Assembly Judiciary Comm.*,
   No. 22-mc-3027 (LDH)(TAM)(E.D.N.Y.).................................................................2

*Cuomo v. Office of the N.Y. State Att'y Gen.*,
   No. 22-mc-3044 (LDH)(TAM) (E.D.N.Y.)....................................................1, 2, 13

*EEOC v. SOL Mexican Grill LLC*,
   No. CV 18-2227 (CKK), 2019 WL 2896933 (D.D.C. June 11, 2019) ...................10

*Gheesling v. Chater*,
   162 F.R.D. 649 (D. Kan. 1995)......................................................................................9

*Gropper v. David Ellis Real Estate, L.P.*,
   No. 13–CV–2068 (ALC)(JCF), 2014 WL 518234 (S.D.N.Y. Feb. 10, 2014).............11, 13, 14

*Haselhorst v. Wal-Mart Stores, Inc.*,
   163 F.R.D. 10 (D. Kan. 1995)....................................................................................9, 11

*Henry v. Morgan's Hotel Grp., Inc.*,
   No. 15-CV-1789 (ER)(JLC), 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016) .................11, 13, 14

*Holcomb v. State Univ. of New York at Fredonia*,
   No. 12CV673A, 2015 WL 1280442 (W.D.N.Y. Mar. 20, 2015) ......................12, 13

*Hughes v. Twenty-First Century Fox, Inc.*,
   327 F.R.D. 55 (S.D.N.Y. 2018) ................................................................................8, 12

*Libaire v. Kaplan*,
   760 F. Supp. 2d 288 (E.D.N.Y. 2011) ........................................................................6

*Lifeguard Licensing Corp. v. Kozak*,
   2016 WL 3144049 (S.D.N.Y. May 23, 2016) ...................................................................7

*Macklin v. Mendenhall*,
   257 F.R.D. 596 (E.D. Cal. 2009) .....................................................................................12

*Mills v. Steuben Foods, Inc.*,
   No. 19-CV-1178, 2023 WL 179579 (W.D.N.Y. Jan. 13, 2023) ........................................9

*Obiajulu v. City of Rochester, Dep't of L.*,
   166 F.R.D. 293 (W.D.N.Y. 1996)......................................................................................9

*Rodriguez v. NNR Glob. Logistics USA Inc.*,
   2016 WL 11673310 (E.D.N.Y. Mar. 31, 2016) .................................................................6

*Sollitto v. Shulkin*,
   No. 15CV5913MKBVMS, 2017 WL 1403218 (E.D.N.Y. Apr. 19, 2017) ........................9

*Tucker v. Interstate Home Loan Centers, Inc.*,
   2022 WL 4079580 (E.D.N.Y. Sept. 6, 2022) ..................................................................13

*United States v. UBS Sec. LLC*,
   2020 WL 7062789 (E.D.N.Y. Nov. 30, 2020)...................................................................7

*Warnke v. CVS Corp.*,
   265 F.R.D. 64 (E.D.N.Y. 2010)......................................................................................6, 8

*In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*,
   313 F.R.D. 32 (E.D. La. 2016)..........................................................................................9

**Rules & Statutes**

Fed. R. Civ. P. 26............................................................................................................1, 6, 7, 12

Fed. R. Civ. P. 45.....................................................................................................................1, 6

Fed. R. Evid. 404 ..........................................................................................................................7

Fed. R. Evid. 412 ............................................................................................................5, 11, 12

Fed. R. Evid. 608 ........................................................................................................................13

In her Complaint alleging sexual harassment and retaliation against the Defendant, former New York Governor Andrew Cuomo, the Plaintiff (anonymized for her own protection as "Trooper 1") cites accusations made against Mr. Cuomo by a number of women, including Movant nonparty Lindsey Boylan. Notably, Trooper 1 has not issued a single subpoena to or about Ms. Boylan and has made clear that she intends to rely upon the public record. For his part, however, Mr. Cuomo has seen fit to issue two subpoenas to Ms. Boylan and no fewer than seven subpoenas to yet additional third parties—all of which seek breathtakingly broad and invasive personal information about Ms. Boylan, but none of which seek information of any relevance to this action.

Ms. Boylan therefore submits this memorandum of law in support of her motion to quash certain of those subpoenas, pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Mr. Cuomo has been remarkably candid about exactly why he seeks discovery from and about nonparty Ms. Boylan: retaliation against her, and rehabilitation for himself.

After Ms. Boylan opened the floodgates by bravely coming forward with public accusations of sexual harassment against the then-Governor, the New York State Office of the Attorney General (the "OAG") and the New York State Assembly Judiciary Committee (the "AJC") appointed top-tier independent law firms to investigate those allegations. Both investigations vindicated Mr. Cuomo's many accusers, and Mr. Cuomo ultimately resigned in disgrace. However, as Mr. Cuomo's counsel has stated: "*He can't move on*." Ex. 1 at 1 (emphasis added).[1] Rather than accept the facts and the results of the government investigations, Mr. Cuomo has publicly sought to relitigate them and to "go out and re-create [those investigations]."[2] But as

---

[1] Citations in the form "Ex. __" refer to exhibits to the Declaration of Julie R. F. Gerchik, dated June 30, 2023 ("Gerchik Decl."), filed contemporaneously herewith.
[2] *See* Transcript of Oral Argument ("OAG Oral Arg. Tr."), ECF 25, at 95:1-9, ECF 25, *Cuomo v. Office of the N.Y. State Att'y Gen.*, No. 22-mc-3044 (LDH)(TAM) (E.D.N.Y.). ("OAG Action").

1

this Court already has intimated, and as explained below, Trooper 1's case (the "Trooper 1 Action" or "the Action") is decidedly the wrong forum for that bootless errand.

After Ms. Boylan first surfaced her accusations, and as the OAG found, Mr. Cuomo and his enablers engaged in a brutal campaign to retaliate against her, including by unlawfully releasing her personnel records to the press; writing a disparaging draft op-ed that was widely shared with current and former Executive Chamber employees and members of the press; Ex. 2 at 27, 104-11; and unleashing his spokespersons and counsel to accuse Ms. Boylan of anything they could throw at her—including deceitfulness, bullying, and adultery.[3]

Mr. Cuomo transparently is now attempting to use this lawsuit as a vehicle to do the same. First, he subpoenaed the OAG and AJC investigatory files; these subpoenas are the subject of still-pending motion practice before the Court.[4] Next, he issued testimonial and document subpoenas to Ms. Boylan, the latter of which is also the subject of active motion practice before the Court (the "Boylan Subpoena Motion").[5] Now, Mr. Cuomo has noticed and served a rash of additional subpoenas to yet more nonparties—all former employers or their representatives—seeking deeply intrusive, personal, and irrelevant information about Ms. Boylan (the "Additional Nonparty Subpoenas"). While he claims to require this vast trove of information in order to prove that Ms. Boylan's testimony would be both irrelevant and incredible, such purposes invert and pervert the judicial process: simply put, Mr. Cuomo cannot embark on a burdensome, disproportionate, and invasive fishing expedition to show the irrelevance of information that has never been shown to be relevant—and that he himself pointedly argues is irrelevant.

---

[3] For example, in regard to a January 2022 press conference held by Mr. Cuomo's counsel to undermine the OAG's investigation and the credibility of the complainants, the New York Times recognized that the "most vociferous attacks" were made against Ms. Boylan. Ex. 1.
[4] *See* OAG Action; *Cuomo v. The N.Y. State Assembly Judiciary Comm.*, No. 22-mc-3027 (LDH)(TAM)(E.D.N.Y.) ("AJC Action").
[5] *See* Mem. of Law In Opp'n to Andrew M. Cuomo's Mot. to Compel and in Supp. of Respondent Lindsey Boylan's Cross Mot. to Quash, ECF 19 at 3-7, *Cuomo v. Boylan*, Case No. 23-mc-01587 (LDH) (E.D.N.Y. June 28, 2023).

And, about this, Mr. Cuomo is correct: his previous sexual harassment of nonparty Ms. Boylan is of *no relevance* to the claims brought against him by Trooper 1 in this Action. And, as he has not yet asserted defenses, certainly the subpoenaed information cannot be relevant to any defenses he believes he has. Moreover, Ms. Boylan has no direct information about this Action: she is not a percipient witness to Mr. Cuomo's harassment of or retaliation against Trooper 1; she did not work in the same environment as Trooper 1; and has no reason to believe she has ever spoken with Trooper 1 (and indeed, does not even know Trooper 1's identity). It is perhaps unfortunate for Mr. Cuomo that he is unable to "move on." But, as much as Mr. Cuomo would like to place Ms. Boylan in his crosshairs and at the center of this Action, Ms. Boylan did not bring it (or any other action), and she does not have relevant information regarding the claims in this Action or any (as yet unasserted) defenses.

And—tellingly and fatally—there is no sense of proportionality to the discovery sought. Given that Mr. Cuomo has not yet even answered or asserted his defenses and that he argues in favor of *irrelevance* and not relevance of the information sought, all of this is premature. But even if at some point the issues were to ripen and some showing of relevance were made, the discovery sought here is sickeningly beyond the pale. Ms. Boylan is a victim of sexual harassment and retaliation, who already has suffered grievously and who is not a party to any action. Yet, the Defendant in this case has subpoenaed not only nonparty Ms. Boylan herself, but a host of yet more nonparties seeking information about this particular nonparty. And the discovery sought is paradigmatically inadmissible, burdensome, improperly motivated, and antithetical to public policy. Nothing could be more discouraging to victims of sexual misconduct than what is happening here: an unrelenting campaign of bashing the victim in the press and weaponizing the legal system against her. Ms. Boylan asks the Court to quash the invasive, harassing, and entirely

irrelevant Additional Nonparty Subpoenas and put an end to what has been a nightmare for her.

## **BACKGROUND**

Having already subpoenaed two governmental entities for information regarding Ms. Boylan and subpoenaed Ms. Boylan herself—all of which are the subject of pending motions to quash—Mr. Cuomo has now barreled ahead to issue the Additional Nonparty Subpoenas to the following entities or individuals: (1) the Empire State Development Corporation ("ESD"), where Ms. Boylan served as Vice President for Business Development and then Chief of Staff to Howard Zemsky; (2) the Executive Chamber, where Ms. Boylan served as Deputy Secretary for Economic Development and Special Advisor to Mr. Cuomo; (3) Mr. Zemsky, Ms. Boylan's prior supervisor and the Chair and Chief Executive Officer of ESD; and (4) Elizabeth Fine, the former General Counsel of ESD. *See* Ex. 3-8.

The four Additional Nonparty Subpoenas seek largely overlapping—and deeply intrusive, personal, and irrelevant—information regarding Ms. Boylan's purported workplace conduct and personal life, including:

- Documents or communications concerning a "personal and/or sexual relationship" between Ms. Boylan and Mr. Zemsky and how Ms. Boylan and Mr. Zemsky conducted themselves when together [ESD Request No. 4; Zemsky Request No. 3; Fine Request Nos. 1(a), 2; Executive Chamber Request Nos. 5, 7, 10, 14];

- Documents and communications concerning contributions by Mr. Zemsky or his family members to Ms. Boylan's political campaigns [Zemsky Request No. 5];

- Documents or communications concerning complaints about Ms. Boylan's workplace conduct or performance [ESD Request No. 5; Zemsky Request No. 4; Fine Request No. 1(b), Executive Chamber Request No. 8];

- Documents concerning Ms. Boylan's resignation from New York State employment in September 2018, any efforts by Ms. Boylan to remain employed after September 2018; any prior efforts by Ms. Boylan to resign prior to September 2018, and any requests to terminate Ms. Boylan [ESD Request Nos. 6-9; Fine Request No. 1(c-d), Executive Chamber Request Nos. 9, 11-13];

- Documents concerning the OAG and AJC investigations [ESD Request No. 1, Zemsky Request No. 6; Executive Chamber Request Nos. 1-2];

4

- Documents and communications concerning Ms. Boylan's allegations of sexual harassment or misconduct against Mr. Cuomo; her personal interactions and communications with Mr. Cuomo; any complaints made by Ms. Boylan against Mr. Cuomo or about workplace culture; and statements by Ms. Boylan complimenting or praising Mr. Cuomo or referencing his appearance [ESD Request Nos. 2, 3, 10; Zemsky Request Nos. 1-2; Executive Chamber Request Nos.4-6].

On top of the Additional Nonparty Subpoenas at issue in this motion, three further subpoenas have been noticed to: (1) "Lindsey for New York," Ms. Boylan's Congressional campaign entity (which has nothing to do with Trooper 1's allegations); (2) Cade Leebron, the former finance director of Ms. Boylan's Congressional campaign (who has no connection to Trooper 1's allegations); and, perhaps most shockingly, (3) Verizon, seeking extensive data about Ms. Boylan's *personal cellphone records*, including all subscriber information, all call and text message detail information, and length of service, for the period of January 1, 2020 through the present. Ex. 9-11.[6]

Trooper 1 has objected to the Additional Nonparty Subpoenas on the grounds that they seek information about victims' prior sexual history in contravention of Fed. R. Evid. 412(a). *See* ECF 78. On June 14, 2023, the Court adopted the parties' briefing schedule for the instant motion to quash, granting Ms. Boylan an opportunity to be heard as well.[7] *See* ECF 80. Trooper 1 has now filed her motion. *See* ECF 82.

As set forth more fully in the Boylan Subpoena Motion, ECF 19, which Ms. Boylan incorporates by reference, Mr. Cuomo blithely admits that he is engaged in an effort to undo and "recreate"[8] the investigations by the OAG and AJC, both of which established Mr. Cuomo as a

---

[6] While these subpoenas are not yet ripe for motion practice, Ms. Boylan also objects to and reserves the right to challenge them at the appropriate time.
[7] The subpoena to the Executive Chamber was noticed subsequently on June 20, 2023 and also seeks sexual history information. Accordingly, Ms. Boylan's motion also addresses this subpoena.
[8] Mr. Cuomo has subpoenaed and moved to compel production of the OAG's and AJC's investigatory files, the purpose for which, he admits, is to "go out and re-create [both investigations]." *See* OAG Oral Arg. Tr., ECF 25 at 95:1-9. As

5

serial sexual harasser. Ex. 2 at 1; Ex. 12 at 2. The Additional Nonparty Subpoenas continue this campaign in a way that is somehow even more egregious: not only is Mr. Cuomo misusing the civil discovery process to collaterally attack prior government investigations, but he also is seeking highly inflammatory and irrelevant materials with which to further harass, humiliate, intimidate, and punish the victim he seems to view as his chief antagonist, Ms. Boylan. There can be no other plausible explanation for the Additional Nonparty Subpoenas, which, as set forth below, do not seek any information whatsoever relating to Trooper 1, but instead are fixated on Ms. Boylan's personal and employment histories. The subpoenas seek irrelevant information and are yet another step in Mr. Cuomo's ruthless campaign to silence his accusers. Ms. Boylan respectfully submits that Mr. Cuomo's cynical gambit should not be countenanced by the Court.

## LEGAL STANDARD

"A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)(1)'s overriding relevance requirement." *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (internal quotation marks omitted). In response to a motion to quash, "[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Libaire v. Kaplan*, 760 F. Supp. 2d 288, 291 (E.D.N.Y. 2011). "[I]n the context of a motion to quash a subpoena, the Court should consider both the nature of information sought and whether its production is 'proportional to the needs of the case.'" *Rodriguez v. NNR Glob. Logistics USA Inc.*, 2016 WL 11673310, at *2, n. 1 (E.D.N.Y. Mar. 31, 2016) (quoting Fed. R. Civ. P. 26(b)(1)). Proportionality is determined based on "importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

---

the Court has already noted, this is improper. *Id.* at 95:10-22. Mr. Cuomo has also subpoenaed many of the documents from individuals who provided files to the OAG and AJC investigators.

6

whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

## ARGUMENT

Mr. Cuomo's Additional Nonparty Subpoenas seek information concerning Ms. Boylan that is irrelevant, overbroad, improper, and disproportional.

As Ms. Boylan has argued in the Boylan Subpoena Motion, the fundamental irrelevance of the information sought should begin and end the inquiry.[9] *See* Boylan Subpoena Mot., ECF 19 at 10-18. This case is about whether Mr. Cuomo sexually harassed and retaliated against Trooper 1. As described below, the discovery that Mr. Cuomo seeks through the Additional Nonparty Subpoenas regarding Ms. Boylan's employment and personal histories simply would not shed light on whether Mr. Cuomo sexually harassed and retaliated against Trooper 1.

Additionally, as extensively explained in the Boylan Subpoena Motion, Mr. Cuomo's discovery efforts are intended solely for the improper purposes of harassing and intimidating Ms. Boylan. *See* Boylan Subpoena Mot., ECF 19 at 18-23. Importantly, although the Additional Nonparty Subpoenas are issued to various (additional) nonparties, Ms. Boylan has standing to

---

[9] From the outset, the impropriety of Mr. Cuomo's Nonparty Subpoenas is as evident as is their prematurity. Mr. Cuomo has yet to file an Answer with asserted defenses. He has simply postulated that he *may* assert the defense that his touching of Trooper 1 was an "accident," and that Trooper 1 *may* then call other complainants such as Ms. Boylan to prove lack of accident under Fed. R. Evid. 404(b)(2), in which case Mr. Cuomo will want to attack Ms. Boylan's credibility, *see* OAG Oral Arg. Tr., ECF 25, at 96:4-19. But Mr. Cuomo's possible unasserted theories of defense are not a basis to open the floodgates of discovery into intimate personal and professional details regarding Ms. Boylan, who is a nonparty and who did not witness the events that give rise to the Trooper 1 Action. As explained in the Boylan Subpoena Motion, "[d]iscovery is unwarranted where it would function as a 'fishing expedition for evidence in search of a theory that has yet to be asserted'" and courts in this Circuit have denied discovery on this basis alone. Boylan Subpoena Motion, ECF 19, at 10-15 (quoting *In re Alper Holdings, Inc.*, 398 B.R. 736, 754 (S.D.N.Y. 2008)) and citing *Lifeguard Licensing Corp. v. Kozak*, 2016 WL 3144049, at *2-4 (S.D.N.Y. May 23, 2016) and *United States v. UBS Sec. LLC*, 2020 WL 7062789, at *9 (E.D.N.Y. Nov. 30, 2020)).

7

challenge them because they are about her and seek deeply invasive information about her private affairs."[10]

Finally, to the extent the Additional Nonparty Subpoenas seek any information that is even arguably relevant, they are overbroad and disproportional to the needs of the case as a matter of law.

### I. Mr. Cuomo Is Not Entitled to Discovery Concerning Ms. Boylan's Employment History.

Mr. Cuomo is not entitled to discovery regarding Ms. Boylan's prior employment. Mr. Cuomo's free-ranging Requests seek:

- All Documents or Communications concerning complaints about Lindsey Boylan's conduct or performance at ESD

- All Documents concerning ESD's request to terminate Ms. Boylan or have her removed from ESD's payroll in September 2018

- All Documents concerning any effort or threat by Ms. Boylan to resign from New York State employment prior to September 2018

- All Documents concerning Ms. Boylan's resignation in September 2018

- All Documents concerning any effort by Ms. Boylan to remain employed by New York State despite tendering her resignation in September 2018

- All Documents and Communications involving Lindsey Boylan concerning . . . any complaints about the work environment at ESD or the Executive Chamber

ESD Requests Nos. 5, 6, 7, 8, 9. *See also* Fine Requests No. 1(b – d) (similar); Zemsky Subpoena, Request No. 3 (requesting "All Communications concerning complaints about Ms. Boylan's conduct while employed at ESD"); Executive Chamber Request Nos. 8, 9, 11, 12, 13 (similarly requesting all documents and communications concerning Ms. Boylan employment history with ESD and New York State).

---

[10] "Generally, standing to quash a non-party subpoena exists where the [party] asserts a legitimate privacy interest in the information sought." *Warnke*, 265 F.R.D. at 66. Courts in the Second Circuit have recognized numerous privacy interests that give a party standing to challenge a subpoena issued to a nonparty, including information containing employment records and sexual history. *See Alexander v. New York City Dep't of Educ.*, 339 F.R.D. 372, 374 (S.D.N.Y. 2021) (employment records); *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 57 (S.D.N.Y. 2018) (sexual history). The four Additional Nonparty Subpoenas broadly seek discovery concerning exactly those things.

8

None of these categories of information is relevant to establishing whether Mr. Cuomo discriminated against or retaliated against Trooper 1.

As a preliminary matter, courts are reluctant to permit broad discovery of a potential witness's employment history.[11] *E.g.*, *Haselhorst v. Wal-Mart Stores, Inc.*, 163 F.R.D. 10, 11 (D. Kan. 1995) (finding "blanket request for personnel files of any potential witness" to be "unwarranted" and stating that "[t]he mere fact that a person may be a witness in a case does not automatically warrant access to their personnel file"); *Mills v. Steuben Foods, Inc.*, No. 19-CV-1178, 2023 WL 179579, at *8 (W.D.N.Y. Jan. 13, 2023) ("courts have held that discoverability of [employee personnel] files depended on the potential relevance of the witness whose personnel file is sought with respect to a plaintiff's *specific claims*." (emphasis added)); *In re: Xarelto (Rivaroxaban) Prod. Liab. Litig.*, 313 F.R.D. 32 (E.D. La. 2016) (rejecting non-particularized requests for discovery of the personnel files of nonparty employees). Importantly, "privacy interests are not to be weighed lightly in this equation; . . . the personnel files of non-party employees present 'special concerns' about the privacy rights of the individuals involved." *In re: Xarelto*, 313 F.R.D. at 36; *see Sollitto v. Shulkin,* No. 15CV5913MKBVMS, 2017 WL 1403218, at *5 (E.D.N.Y. Apr. 19, 2017) (affirming decision that employees' "privacy interests" precluded discovery of their personnel files).

Moreover, even if personnel files are directly relevant, "discovery is usually limited to information about employees in the same department or office absent a showing of a more particularized need for, and the likely relevance of, broader information." *Gheesling v. Chater*, 162 F.R.D. 649, 650 (D. Kan. 1995) (collecting cases); *Obiajulu v. City of Rochester, Dep't of L.*,

---

[11] Counsel found no in-district cases in which a party was granted such broad access to a nonparty's employment history (and only a few cases in which it was even requested), likely due to the infrequency with which litigants attempt to go this far afield from discovery's proper scope.

9

166 F.R.D. 293, 296 (W.D.N.Y. 1996*)* (limiting discovery of employment records to employees who were "similarly situated" to plaintiff, where pattern of disparate treatment was at issue). Even if a pattern was somehow at issue here, Ms. Boylan is not "similarly situated" to Trooper 1, as she did not work with Trooper 1 in the same department or office and Mr. Cuomo has not demonstrated a particular need for information regarding Ms. Boylan's employment with the state of New York. These precepts are even more compelling because Ms. Boylan is not a party to this action and is not a witness to the events that comprise Trooper 1's claims, making Mr. Cuomo's requests regarding Ms. Boylan's employment history even less relevant.

Mr. Cuomo has argued that "the circumstances of her departure from state employment [] are relevant in light of Ms. Boylan's public claim that she resigned because of the alleged harassment." Cuomo Mot. to Compel Lindsey Boylan's Compliance with Subpoena, ECF 3 at 5 ("Cuomo Mot."). However, the nature and circumstances of Ms. Boylan's employment and resignation make no difference whatsoever regarding the allegations made by Trooper 1. *See* Boylan Subpoena Mot., ECF 19 at 10-18. In other words, even if Ms. Boylan's resignation were not due to sexual harassment, it would say nothing about whether Mr. Cuomo sexually harassed or retaliated against Trooper 1.

Courts routinely deny discovery of employment records for good reason. Permitting discovery of employment records solely for a collateral matter such as impeachment would have a chilling effect on both employers and employees. *EEOC v. SOL Mexican Grill LLC*, No. CV 18-2227 (CKK), 2019 WL 2896933, at *5 (D.D.C. June 11, 2019) (citing cases for the proposition that "[c]ourts have recognized the chilling effect that inquiries into work histories can have on those bringing claims for unlawful employment practices"). "[D]isclosure would invade employees' privacy, and thus discourage witnesses from reporting incidents of misconduct, for fear

10

that their private personnel information might later be discoverable" and "firms might cease to frankly criticize and rate employee performance for fear of potential discovery." *Butler v. Craft*, No. 1:16-CV-01158, 2017 WL 1429896, at *2 (W.D. La. Apr. 19, 2017) (citing *New York Stock Exchange, Inc. v. Sloan*, 22 F.R. Serv. 2d 500, 503 (S.D.N.Y. 1976)).

Finally, the overbreadth of these Requests is yet another independent basis for quashal because they are inherently disproportional. "Blanket requests of this kind are plainly overbroad and impermissible." *Henry v. Morgan's Hotel Grp., Inc.*, No. 15-CV-1789 (ER)(JLC), 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016) (quashing overly broad subpoena that requested "[a]ll documents and communications" regarding plaintiff's work history); *Gropper v. David Ellis Real Estate, L.P.,* No. 13–CV–2068 (ALC)(JCF), 2014 WL 518234, at *4 (S.D.N.Y. Feb. 10, 2014) (finding that a "request for 'any and all' documents ... is inherently overbroad") *see also Haselhorst v. Wal-Mart Stores, Inc.*, 163 F.R.D. at 11 (finding that "discovery requests that seek information beyond plaintiff's employing unit are overly broad").

Accordingly, Mr. Cuomo's Requests seeking information about Ms. Boylan's employment history should be quashed.

## II. Mr. Cuomo Is Not Entitled to Discovery Regarding Nonparty Ms. Boylan's Alleged Sexual History with Another Nonparty.

Mr. Cuomo seeks information concerning Ms. Boylan's alleged sexual relationship with another nonparty. Specifically, Mr. Cuomo seeks: "All Documents or communications concerning a "personal and/or sexual relationship" between Ms. Boylan and Mr. Zemsky. ESD Request No. 4; Fine Request Nos. 1(a), 2; Zemsky Request No. 3; Executive Chamber Request Nos. 5, 7, 14.

Mr. Cuomo's Requests for information regarding Ms. Boylan's alleged sexual relationship is improper as a matter of law. Rule 412 of the Federal Rules of Evidence prohibits a party to a civil proceeding from introducing evidence that a sexual harassment victim "engaged in other

11

sexual behavior" or to prove the "victim's sexual predisposition" absent a threshold showing by the proponent of the evidence that the "probative value [of the contested evidence] substantially outweighs the danger of harm to any victim and of unfair prejudice to any party." Fed. R. Evid. 412(a). Courts have consistently invoked this rule to prohibit discovery into a party's sexual relationship history. *Hughes*, 327 F.R.D. at 58 (S.D.N.Y. 2018) ("[T]his Court must balance [Rule 26(b)(1)] with Rule 412 of the Federal Rules of Evidence."); *Holcomb v. State Univ. of New York at Fredonia*, No. 12CV673A, 2015 WL 1280442, at *2 (W.D.N.Y. Mar. 20, 2015) (applying Rule 412 to bar discovery).

And of course—and this cannot be emphasized enough—Ms. Boylan is not even a party to this case. The nature and circumstances of the relationship between two nonparties with no connection to the facts of this case is completely irrelevant. "[I]n the context of civil suits for sexual harassment, and absent extraordinary circumstances, inquiry into such areas [i.e., complainant's past sexual behavior] should not be permitted, either in discovery or trial." *Macklin v. Mendenhall*, 257 F.R.D. 596 (E.D. Cal. 2009). In *Hughes*, 327 F.R.D. at 58 (S.D.N.Y. 2018), an employment discrimination case, the defendant served subpoenas on men formerly involved in affairs with the plaintiff. Defendants argued that such discovery was relevant to demonstrate that the plaintiff engaged in a pattern of pursuing relationships with men for the purpose of advancing her career. *Id.* at 58. The court rejected the defendant's arguments and concluded that the plaintiff's prior sexual history had no relevance to her claims. *Id.* Given the extreme caution courts exercise with respect to a party's sexual history, there is even more reason to prohibit discovery into a nonparty's sexual history with yet another nonparty, neither of whom has any connection to the claims asserted in this case. The relationship alleged by Mr. Cuomo between two nonparties is irrelevant because it does not shed any light on whether Mr. Cuomo harassed Trooper 1, the

12

plaintiff. *See Holcomb*, 2015 WL 1280442, at *2 (denying inquiry into the plaintiff's relationships with colleagues in a discrimination case because the case could be decided by the "circumstances surrounding the alleged conduct itself—the interactions between the plaintiff and [alleged perpetrator]").

Mr. Cuomo also has argued that Ms. Boylan's relationship with Mr. Zemsky is "relevant to the credibility and plausibility of the allegations, including to Mr. Cuomo's theory that "Ms. Boylan made allegations against Governor Cuomo as a cover story for why she really left state office and/or as part of an effort to energize her flagging political campaign." Letter Motion for Discovery Conference, ECF 78 at 5. But, as explained above and in the Boylan Subpoena Motion, discovery sought for the purpose of impeachment is improper. *See* Fed. R. Evid. 608(a); *Tucker v. Interstate Home Loan Centers, Inc.*, 2022 WL 4079580, at *4 (E.D.N.Y. Sept. 6, 2022); *Henry,* 2016 WL 303114, at *3.

These Requests, in seeking without any limitation in time or scope, "[a]ll [d]ocuments or communications concerning" Ms. Boylan's "personal and/or sexual relationship" with Mr. Zemsky, are also overbroad, which is an independent basis to quash them. *See Henry*, 2016 WL 303114, at *2; *Gropper*, 2014 WL 518234, at *4.

### III. Mr. Cuomo Is Not Entitled to Discovery Regarding Ms. Boylan's Previous Allegations Against Him.

Although both Trooper 1 and Ms. Boylan are (entirely separate) victims of Mr. Cuomo's misconduct, Ms. Boylan's circumstances have no bearing on proving or refuting Trooper 1's allegations. As the Court reminded Mr. Cuomo's counsel "*This case is about one Plaintiff* over a span of years saying she had multiple interactions with [Mr. Cuomo]." OAG Action, ECF 25, at 95:1-9.

13

In addition to seeking discovery from Ms. Boylan herself about her accusations against Mr. Cuomo, he seeks this discovery from nonparties regarding Ms. Boylan's allegations against Mr. Cuomo. These Requests seek:

- All Documents or Communications concerning any complaint by Ms. Boylan about Governor Cuomo.

- All Documents and Communications involving Lindsey Boylan concerning allegations of sexual harassment or any other misconduct by Governor Cuomo and any references to Governor Cuomo's conduct towards Ms. Boylan

- All Documents or Communications concerning Lindsey Boylan's February 2021 essay published on Medium entitled "My story of working with Governor Cuomo."

ESD Request Nos. 3, 10; Zemsky Request Nos. 1, 2; Executive Chamber Request Nos. 4, 5.

Again, these Requests are overly broad, particularly with the inclusion of "*any complaint,*" "any allegations of sexual harassment *or other misconduct*" and *"any references* to Governor Cuomo's conduct. See *Henry*, 2016 WL 303114, at *2; *Gropper*, 2014 WL 518234, at *4. Likewise, two Document Subpoenas seek, without limitation: "All Communications between Lindsey Boylan and Governor Cuomo." ESD Request No. 2; Executive Chamber Request No. 10. On their face, these Requests are overly broad.

The Boylan Subpoena Motion explains in detail why Ms. Boylan's victimization by Mr. Cuomo is not relevant to the Trooper 1 Action. *See* Boylan Subpoena Motion, ECF 19 at 10-18. Ms. Boylan incorporates those arguments, so will summarize them only briefly for the Court here: Trooper 1's claims are based on events that Ms. Boylan did not witness and about which she has no independent knowledge. Trooper 1 alleges that Mr. Cuomo took many discrete acts to both discriminate and retaliate against her, as detailed in her Complaint. There is no dispute that Ms. Boylan has no direct information or relationship to any of them. She neither witnessed Mr. Cuomo's conduct towards Trooper 1, nor does she have any information about it beyond what

14

others have said publicly. Ms. Boylan has brought no claims against Mr. Cuomo and is not a party to the Trooper 1 Action.

Accordingly, Mr. Cuomo's Requests regarding Ms. Boylan's allegations against him are of no relevance to this Action, and these Requests should be quashed.

## CONCLUSION

For the foregoing reasons, Mr. Cuomo's Additional Nonparty Subpoenas should be quashed in their entirety.

Dated: June 30, 2023
      New York, New York

Respectfully submitted,

E. Danya Perry
Rachel Fleder
Perry Law
157 East 86th Street, 4th Floor
New York, NY 10028
Phone: 646-974-0935
Fax: 646-849-9609
Email: dperry@danyaperrylaw.com

Julie R. F. Gerchik (*pro hac vice*)
Glaser Weil Fink Howard Jordan & Shapiro LLP
10250 Constellation Blvd.
Suite 1900
Los Angeles, CA 90067
Phone: 310-553-3000
Fax: 310-556-2920
Email: jgerchik@glaserweil.com

*Attorneys for Nonparty Lindsey Boylan*