

**John S. Crain**
jcrain@wigdorlaw.com

July 12, 2023

**VIA ECF**

The Honorable Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: Trooper 1 v. Cuomo, *et al.*; Case No. 22-cv-00893 (LDH)(TAM)

Dear Judge Merkl:

We represent Plaintiff Trooper 1 ("Plaintiff" or "Trooper 1") in the above-referenced matter and write to correct several claims made in Defendant former Governor Andrew Cuomo's ("Defendant" or "Cuomo") recent letter to the Court, dated July 7, 2023 (Dkt. No. 90) (hereafter, the "Letter" or "ltr."). While we take no stance on the underlying issue of whether the Office of the Attorney General ("OAG") should produce the documents in question, the letter distorts the relevant testimony, and we believe that the Court should have the correct facts.

First, Cuomo claims that James Boyle ("Boyle") offered testimony to the effect that he and not Cuomo chose Trooper 1 for the Protective Services Unit ("PSU"). He further claims that this testimony undermines the finding of the OAG that Cuomo himself picked out Trooper 1 because of a sexual interest in her. Ltr. at 2. The whole passage in the Letter attempts to mislead the Court into thinking that Boyle's testimony revealed new information. The Letter declares for instance that this is "information to which neither Governor Cuomo nor the public has ever had access." Ltr. at 1. In fact, Boyle previously said the same things to the OAG, and the OAG reported his words truthfully. OAG Report at 34.[1] The OAG ultimately discounted what Boyle said because it is inherently unbelievable.

Boyle's story that he and not Cuomo chose Trooper 1 for the PSU is contradicted by a mountain of evidence. For one thing, after Trooper 1 met the Governor, Boyle sent her an email with the subject line "what did you say to him???????" and the body text "there is talk of drafting you," indicating that the Governor had requested that Trooper 1 be recruited. Boyle later sent Trooper 1 an email saying that the requirements to join the PSU (i.e. lowering the requirement from three

---

[1]  https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf, where Boyle is referred to as Senior Investigator 1.



to two years) had been changed "just for you [i.e. Trooper 1]." Because these emails contradict his tale, Boyle testified that he could not remember what he meant in them or why he sent them. He also claimed that he was just being "sarcastic" when he said the rules were changed just for Trooper 1. This is all difficult to credit.

Boyle's testimony that he initiated Trooper 1's recruitment was also contradicted by another Trooper, who testified:

```
 5    A.   I spoke to Senior Investigator Jimmy
 6  Boyle.  We talked about the event on the RFK Bridge
 7  and we talked about how the governor asked him about
 8  Trooper 1 and if Trooper 1 would be interested in
 9  coming to the PSU.
10    Q.   So Boyle told you that the governor
11  requested to have Trooper 1 join the PSU; is that
12  right?
13    A.   Correct.
```

There was no conspiracy to ignore Boyle. His claim to have initiated the recruitment of Trooper 1 himself, instead of Cuomo, is just impossible to believe and is contradicted by his own emails and the testimony of others.

Moreover, when pressed at his deposition, Boyle claimed to be unable to recall almost any of the relevant timeline details. While he claims ex-post to have initiated the recruitment of Trooper 1, he actually testified that he could not recall whether he first mentioned Trooper 1 to Cuomo or whether Cuomo first mentioned Trooper 1 to him. Apparently, the only detail Boyle can remember with any clarity is the one that happens to exonerate both him and Cuomo—that he, not Cuomo, initiated the recruitment of Trooper 1.

In sum, Boyle's testimony bears all the hallmarks of an ex-post fabrication meant to disclaim his involvement in Cuomo's wrongdoing, and it covered information already well known to both Cuomo and the public.

With regards to the second female Trooper present that day, Ltr. at 2, Boyle also repeated at his deposition exactly what he had said to the OAG—that there was another female trooper at the event where the Governor met Trooper 1, that the Governor showed no interest in recruiting her (the two never even discussed her), and that this Trooper later sarcastically commented that she had been passed over while Trooper 1 had been recruited. This information was already known



The Hon. Taryn A. Merkl
July 11, 2023
Page 3

and already discussed in the OAG Report.² It is not favorable to Cuomo and does not support his version of events.

With regards to the canvass email announcing the two-year service requirement, another Trooper did indeed see that canvass and apply to the PSU. Ltr. at 3 fn. 3. However, as already discussed, Boyle admitted to Trooper 1 that this change was made for her specifically. The other Trooper (who had wanted to join the PSU for a long time but had been unable to apply), applied only after seeing the announcement of the change, a change that had been made for Trooper 1, not him. Unlike with Trooper 1, this other Trooper did not receive an email from Boyle telling him gleefully that they had changed the rules "just for him."

Cuomo also claims that "Boyle specifically expressed concern that the OAG had cherry-picked facts to include in the report and had omitted information that would have been exculpatory to Governor Cuomo." Ltr. at 3. In fact, Boyle testified that he has never read the OAG report. His testimony on this point was unmistakably self-serving. He testified that he heard second- or third-hand that the OAG's Report had found Cuomo to be responsible for recruiting Trooper 1, and that he thought this got it wrong. Again, the testimony is easily explained by Boyle's desire to disclaim personal involvement in the Governor's wrongdoing. The OAG did not cherry-pick facts. After due consideration, it chose to disregard testimony that was impossible to believe. That it discounted Boyle's testimony is unsurprising given how readily it is contradicted. That Boyle would be displeased that the OAG discredited his testimony is also unsurprising.

We thank the Court for its consideration and time in connection with this matter.

Respectfully submitted,

John S. Crain

---

² Cuomo claims that "Trooper 1 was assigned to roles that *minimized*, not maximized, her exposure to Governor Cuomo." It is unclear where or when Boyle is supposed to have said anything like this, but it is plainly untrue. The entire PSU worked closely with Cuomo, and Trooper 1 also began working closely with Cuomo as soon as she joined.