# GLAVIN PLLC
156 West 56th Street, Ste. 2004
New York, New York 10019
646-693-5505

July 18, 2023

**VIA CM/ECF**
The Honorable Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Re: ***Cuomo v. Office of the New York State Attorney General***, No. 22-mc-03044 (LDH)(TAM); ***Trooper 1 v. NYSP et al.***, No. 22-cv-893 (LDH)(TAM)

Dear Judge Merkl:

On behalf of our client former Governor Andrew M. Cuomo ("Governor Cuomo"), we write (i) to respond to the OAG's July 10, 2023 letter in further opposition to Governor Cuomo's pending Motion to Compel, [1] ECF 33, and (ii) to bring to the Court's attention relevant information that we obtained through discovery since our July 7, 2023 letter to the Court, ECF 32. We also briefly respond to Trooper 1's July 12, 2023 letter concerning the testimony of former PSU member James Boyle, ECF 92 (22-cv-893).

### A. The OAG's July 10, 2023 Letter

In opposition to the Motion to Compel, the OAG continues to argue that there is no need for Governor Cuomo to obtain the OAG's witness interview memos and unredacted witness transcripts because Governor Cuomo can obtain the information from the witness directly during depositions. The OAG further contends that such interview memos are wholly unnecessary to refresh witness recollections because it "strains credulity" that witness memories have faded in the two years since the OAG conducted its investigation. ECF 33 at 2, 3 n.2. Both arguments were plainly refuted, however, during the July 10, 2023 deposition of Ana Liss-Jackson, a complainant identified in the OAG report and in Trooper 1's Complaint. As we noted in our July 7 letter, Ms. Liss-Jackson had authorized the OAG to disclose an unredacted copy of her investigative testimony transcript to Governor Cuomo, but the OAG refused, citing to the unresolved Motion to Compel. Because Governor Cuomo had only a redacted version of Ms. Liss-Jackson's OAG testimony and did not have any memos or notes of the OAG's initial

---

[1] For ease of reference, we use the terms define previously in Governor Cuomo's original memorandum of law in support of the motion to compel in 22-mc-03044 (ECF 2).

Hon. Taryn Merkl
July 18, 2023
Page 2

informal interview of Ms. Liss-Jackson, Governor Cuomo was not, as the OAG argues, able to obtain the same testimony through a deposition.

Specifically, notwithstanding that her OAG testimony occurred only two years ago, Ms. Liss-Jackson was unable to remember everything she testified to that had been redacted from her OAG transcript.



Ms. Liss-Jackson's memory likewise failed regarding other highly relevant testimony she provided to the OAG concerning her belief that: (a) "I was a target for unwanted communication and gestures and attention and that I could also hitch my fortunes to being an attractive woman and get a better job out of it" while at the Executive Chamber; (b) "Any professional attention that I got [at the Executive Chamber] . . . I could assign to what I looked like"; and (c) Albany "was a "dangerous place for young women." Ex. B (OAG Transcript) at 142:8-23, 143:21-44:5. But the OAG redacted large portions of testimony directly relating to those comments. *See* Ex. B at 143:3-51:3. With almost *nine* full pages of testimony redacted, the publicly released testimony misleadingly suggests that Ms. Liss-Jackson was referring to Governor Cuomo when she complained about "unwanted communication and gestures and attention" and the fact that "Albany was a dangerous place for young women."



Obtaining the unredacted transcripts and witness interview memos from the OAG is vital to Governor Cuomo's ability to defend himself, particularly as we have yet to take numerous critical depositions. One upcoming witness is Diane Parrotta, a PSU member who worked with

Hon. Taryn Merkl
July 18, 2023
Page 3

Trooper 1. Trooper 1 has identified Ms. Parrotta during discovery as a person with knowledge about Trooper 1's allegations against Governor Cuomo. Notably, the OAG Report does not cite to Ms. Parrotta as a corroborating witness to Trooper 1, which suggests that Ms. Parrotta did not support some or all of Trooper 1's allegations, a fact we would obviously like to verify.

While we will take Ms. Parrotta's deposition next month, our ability to examine her will be limited by not having access to her prior statements, a critical concern for this witness because Trooper 1 and her counsel have been in personal contact with Ms. Parrotta in the last few weeks. Indeed, Ms. Parrotta *used the phones of her husband and daughter in an apparent effort to obscure her recent communications with Trooper 1 about this lawsuit. See* Ex. C (text communications between Ms. Parrotta and Trooper 1). Without knowing what Ms. Parrotta previously told the OAG, we will not be able to meaningfully test the truthfulness or completeness of Ms. Parrotta's deposition testimony or determine whether the recent contact with Trooper 1 influenced Ms. Parrotta in any way.

### B. Trooper 1's July 12, 2023 Letter

In her July 12, 2023 letter regarding the recent deposition of former PSU member James Boyle, ECF 92, Trooper 1 not only mischaracterizes Mr. Boyle's testimony regarding how he came to recruit Trooper 1 to the PSU, but Trooper 1 also claims without basis that Mr. Boyle was not being truthful. Contrary to Trooper 1's suggestion, Mr. Boyle—who no longer works for the NYS Police—had no reason whatsoever to lie about the circumstances of Trooper 1's recruitment. Nor is there anything in Mr. Boyle's emails that contradicts his testimony. Mr. Boyle made clear he was being sarcastic and simply "trying to be funny" when he sent Trooper 1 an email stating, "what did you say to him????," an explanation borne out by the use of four question marks. Boyle Deposition Tr. at 118:7-119:2. As for Mr. Boyle's comment that "there is talk of drafting you," to Trooper 1, Mr. Boyle said he did not remember to whom he was referring, and speculated it could have been "something that [PSU Member] Vinny Straface or someone else said." *Id.* at 46:9-47:7. PSU member Fabricio Plaskocinski corroborated Mr. Boyle's interest in recruiting Trooper 1, recalling that Mr. Boyle told him that Trooper 1 was "squared away" (meaning she presented well) and that she had a "good record" and would be "a good fit." Plaskocinski Deposition Tr. at 40:5-15, 43:18-23. Mr. Plaskocinski further testified that Trooper 1 was qualified to be on the PSU despite being "short a few months [of service]" and that he never heard that the Governor singled out Trooper 1 for the PSU because she was attractive. *Id.* at 39:24-41:9, 43:12-44:2, 92:5-93:9. Mr. Boyle's deposition testimony was wholly in line with his prior OAG interviews. Nor is his testimony inconsistent with Governor Cuomo's recollection about how Trooper 1 came to be on the PSU. Since 2021, Mr. Boyle has consistently stated that he identified Trooper 1 and recommended her for the PSU based on her merits. Moreover, the fact that Governor Cuomo was vocal about the need for diversity on the PSU, was impressed with Trooper 1 when he met her and discussed that with Mr. Boyle, and listened to what Mr. Boyle told him about Trooper 1, does not undercut Mr. Boyle, as Trooper 1 suggests.

Hon. Taryn Merkl
July 18, 2023
Page 4

      We further note that, to the extent Trooper 1 (and others) persist in suggesting that there is no need to take the testimony of witnesses who were already deposed in the OAG investigation because those transcripts are publicly available and the investigation was "exhaustive,"[2] the recent deposition of Ana Liss-Jackson demonstrates the importance of Governor Cuomo taking such testimony. Specifically, during her July 10 deposition, Ms. Liss-Jackson materially contradicted important portions of her testimony to the OAG, and clarified statements she made to the OAG about Governor Cuomo and her feelings about the Executive Chamber, which ultimately rendered her publicly released OAG testimony inaccurate and misleading. Here are just four examples:

      1. The OAG's Report concluded that Governor Cuomo sexually harassed Ms. Liss-Jackson by, among other things, kissing Ms. Liss-Jackson on the cheek on occasion, putting his hand around her lower waist, and telling her that she looked "lovely." OAG Report at 5-6, 82-83, n. 1220.



---

[2]     Trooper 1's Complaint asserts that the OAG investigation was "exhaustive," Second Am. Compl. ¶ 4, and Trooper 1 took the following position about discovery at a June 6, 2022 status conference: "The . . . women mentioned in the complaint were . . . deposed under oath. Everyone has their sworn testimony . . . I don't think given that, that there's a need to have . . . an enumerable number of depositions in this case. We already know what they're going to say . . . But to the extent what we're talking about is discovery where we're trying to figure out what these witnesses will say, we know that already. We know that. We have that information." ECF 43, June 6, 2022 Tr. at 9:8-20.



2. Ms. Liss-Jackson testified to the OAG: "Based on what I saw around me, women that had risen up through the ranks [under Governor Cuomo in the Executive Chamber]. You know, it wasn't because they had some prestigious law degree or something. It was because they were beautiful and also had other complimentary qualities and characteristics that the Governor found attractive, that quick wittedness and smarts." Ex. B at 118:14-19.

3. Ms. Liss-Jackson testified to the OAG that in November 2013 (weeks after she began employment as an Empire State Fellow), she was moved from her initial office on the Lieutenant Governor's side of the second floor to Howard Glaser's office on the Governor's side of the second floor near Governor Cuomo's office suite because she was good looking and "eye candy." Ex. B at 59:18-23, 70:20-22, 77:21-78:4, 110:11-22; OAG Report at 83.





4. Ms. Liss-Jackson testified to the OAG that she "observed Lindsey Boylan with [Governor Cuomo] on a couple of occasions" and that she noticed that Ms. Boylan "was always coming to Albany and meeting with the Governor." Ex. B at 51:17-19, 90:20-23.

\* \* \* \* \* \*

Denying Governor Cuomo access to key information such as prior witness statements is directly contrary to due process and fundamentally at odds with the discovery rules governing civil cases. Where an entire investigation has been reduced to a lengthy public report, and the OAG made a selective public release of certain witness statements from that investigation, there is simply no basis to allow the OAG to withhold such essential and highly relevant information. Further, the OAG's argument that Governor Cuomo is simply attacking their investigation and the OAG Report is utterly misplaced. The OAG concluded that Governor Cuomo engaged in wrongful conduct, and Trooper 1 asserts exactly the same in her Complaint. Of course, Governor Cuomo is going to seek discovery to establish that the OAG's accusations—which are also Trooper 1's accusations—are incorrect. If by disproving Trooper 1's allegations Governor Cuomo also exposes the shoddy and unreliable nature of the OAG's investigation, that is simply an unavoidable consequence of Trooper 1's lawsuit (which, again, Governor Cuomo did not bring or frame).

Respectfully submitted,

*Rita M. Glavin*

Rita M. Glavin

Cc: Counsel of Record (via ECF)