**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TROOPER 1, | Case No. 22-cv-00893 (LDH) (TAM) |
| Plaintiff, | |
| v. | |
| NEW YORK STATE POLICE, ANDREW CUOMO, MELISSA DEROSA, and RICHARD AZZOPARDI, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO TROOPER 1'S AND CHARLOTTE BENNETT'S MOTIONS TO QUASH BENNETT-RELATED SUBPOENAS AND IN SUPPORT OF FORMER GOVERNOR ANDREW M. CUOMO'S CROSS-MOTION TO COMPEL**

**GLAVIN PLLC**
Rita M. Glavin
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

**SHER TREMONTE LLP**
Theresa Trzaskoma
Allegra Noonan
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

*Counsel for former Governor Andrew M. Cuomo*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

PROCEDURAL BACKGROUND ............................................................................................... 2

ARGUMENT ................................................................................................................................ 4

I.  TROOPER 1 AND MS. BENNETT LACK STANDING TO QUASH THE
    HAMILTON SUBPOENA ................................................................................................ 4

    A.  Ms. Bennett Does Not Have Standing to Quash the Hamilton Subpoena .............. 4

    B.  Trooper 1 Does Not Have Standing to Quash the Bennett-Related Subpoenas ..... 6

II.  THE BENNETT-RELATED SUBPOENAS SEEK RELEVANT INFORMATION
     BASED ON OPERATIVE ALLEGATIONS IN TROOPER 1'S COMPLAINT ............. 8

    A.  The Bennett-Related Subpoenas Request Information Relevant to the
        Trooper 1 Action ..................................................................................................... 9

    B.  Governor Cuomo Is Entitled to Discovery Regarding Ms. Bennett's Prior
        Allegations of Sexual Misconduct ........................................................................ 12

III.  THE BENNETT-RELATED SUBPOENAS WERE NOT SERVED FOR AN
      IMPROPER PURPOSE ................................................................................................. 14

    A.  Federal Rule of Evidence 412 Does Not Bar the Discovery Sought in the
        Bennett-Related Subpoenas ................................................................................... 15

    B.  Federal Rule of Evidence 404 Does Not Bar the Discovery Sought in the
        Bennett-Related Subpoenas ................................................................................... 19

    C.  Federal Rule of Evidence 608 Does Not Bar the Discovery Sought in the
        Bennett-Related Subpoenas ................................................................................... 21

IV.  THE BENNETT-RELATED SUBPOENAS ARE PROPORTIONAL AND
     WOULD NOT IMPOSE UNDUE BURDEN ................................................................. 23

CONCLUSION .......................................................................................................................... 26

i

**Page(s)**

**Cases**

*Alexander v. New York City Dep't of Educ.*,
339 F.R.D. 372 (S.D.N.Y. 2021) .................................................................................. 6

*Allstate Ins. Co. v. Zelefsky,*
No. CV 13-5830 (JFB) (AKT), 2014 WL 12661264 (E.D.N.Y. Mar. 7, 2014)          7

*Alvarado v. GC Dealer Servs. Inc.,*
No. 18-CV-2915 (SJF)(SIL), 2018 WL 6322188 (E.D.N.Y. Dec. 3, 2018) ........................... 23

*Anderson v. Buena Bd. of Educ.,*
No. CV 17-06816(JS), 2019 WL 1262647 (D.N.J. Mar. 19, 2019) ........................... 14, 16, 18

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
262 F.R.D. 293 (S.D.N.Y. 2009) ................................................................................ 24

*Ashkenazi as Tr. of Halpert Alexander Tr. v. Lincoln Nat'l Life Ins. Co.*,
No. 08-CV-3235-ENV-CLP, 2009 WL 10705911 (E.D.N.Y. Aug. 3, 2009) ........................ 10

*Exp.-Imp.Bank of Republic of China v. Democratic Republic of Congo,*
No.16-CV-4480 (JMF), 2022 WL 1452523 (S.D.N.Y. May 9, 2022) .................................. 24

*Barkley v. Olympia Mortg. Co.,*
No. 04-cv-875 (RJD) (KAM), 2008 WL 11434464 (E.D.N.Y. July 21, 2008) ...................... 21

*Burger v. Litton Indus., Inc.*,
No. 91 CIV. 0918 (WK) (AJP), 1995 WL 476712 (S.D.N.Y. Aug. 10, 1995) ...................... 18

*Chamblee v. Harris & Harris, Inc.*,
154 F. Supp. 2d 670 (S.D.N.Y. 2001) ......................................................................... 18

*E.E.O.C. v. First Wireless Grp., Inc.*,
225 F.R.D. 404 (E.D.N.Y. 2004) ................................................................................. 21

*Fritz v. LVNV Funding, LLC*,
587 F. Supp. 3d 1 (E.D.N.Y. 2022) ........................................................................ 24, 25

*Ghonda v. Time Warner Cable, Inc.*,
No. 16-CV-2610 (PKC), 2017 WL 395111 (E.D.N.Y. Jan. 27, 2017) ............................ 13, 21

*Gibbons v. Food Lion, Inc.*,
No. 98-1197-CIV-T-23F, 1999 WL 33226474 (M.D. Fla. Feb. 19, 1999) ............................ 16

*Gomez v. J.R. Hycee Conyeor Co., Inc.*,
No. CV 06-2827 NGG/ARL, 2008 WL 64675 (E.D.N.Y. Jan. 4, 2008)...................................6

*Hasemann v. Gerber Prods. Co.*,
No. 15-cv-2995 (MKB) (RER), 2018 WL 5651210 (E.D.N.Y. Aug. 28, 2018) ......................8

*Holt v. Welch Allyn, Inc.*,
No. 95-CV-1135 (RSP/GJD), 1997 WL 210420 (N.D.N.Y. Apr. 15, 1997) .........................15

*Hughes v. Twenty-First Century Fox, Inc.*,
327 F.R.D. 55 (S.D.N.Y. 2018) ................................................................6, 16, 18

*In re Subpoena to Loeb & Loeb LLP*,
No. 19 Misc. Civ. 241 (PAE), 2019 WL 2428704 (S.D.N.Y. June 11, 2019) .................10, 24

*Ireh v. Nassau Univ. Med. Ctr.*,
No. 06-CV-09(LDW)(AKT), 2008 WL 4283344 (E.D.N.Y. Sept. 17, 2008)...................13, 21

*John Wiley & Sons, Inc. v. Book Dog Books, LLC*,
298 F.R.D. 184 (S.D.N.Y. 2014) ...............................................................................24

*Johnson v. Riverhead Cent. Sch. Dist.*,
No. CV 14-7130 (DRH) (AKT), 2016 WL 4507002 (E.D.N.Y. Aug. 26, 2016).....................8

*Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*,
No. 18 Civ. 4476 (LJL) (SLC), 2020 WL 9432989 (S.D.N.Y. Dec. 16, 2020) ......................13

*Macklin v. Mendenhall*,
257 F.R.D. 596 (E.D. Cal. 2009) ...............................................................................17

*Malibu Media, LLC v. Doe*,
No. 15-CV-3504 (JFB)(SIL), 2016 WL 4444799 (E.D.N.Y. Aug. 23, 2016).......................23

*McGowan v. JPMorgan Chase Bank*,
No. 18 Civ. 8680 (PAC) (GWG), 2020 WL 1974109 (S.D.N.Y. Apr. 24, 2020) ..................10

*Muniu v. Amboy Neighborhood Ctr., Inc.*,
No. 98CV2211FBJMA, 2001 WL 370226 (E.D.N.Y. Apr. 11, 2001) ...................................15

*Ogden v. All-State Career Sch.*,
299 F.R.D. 446 (W.D. Pa. 2014) ...............................................................................16

*Outley v. City of New York*,
837 F.2d 587 (2d Cir. 1988) ...................................................................................20

*Padilla v. Sacks & Sacks*, LLP,
No. 19-CV-10021 (GBD) (KHP), 2021 WL 4429785 (S.D.N.Y. Sept. 27, 2021)..11, 13, 20, 21

*Park West Radiology v. CareCore Nat'l LLC*,
547 F. Supp. 2d 320 (S.D.N.Y. Apr. 17, 2008) ........................................................ 22

*Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC*,
No. 4:17-CV-00450, 2018 WL 5636160 (E.D. Tex. Oct. 30, 2018) ........................................ 6

*Sali v. Zwanger & Pesiri Radiology Grp., LLP*,
No. 19 CV 275 (FB) (CLP), 2022 WL 1085508 (E.D.N.Y. Jan. 10, 2022) .......................... 4, 6

*Scoma v. City of New York*,
No. 16-CV-6693 (KAM)(SJB), 2021 WL 1784385 (E.D.N.Y. May 4, 2021) ........................ 20

*Shih v. Petal Card, Inc.*,
No. 18-CV-5494 (JFK) (BCM), 2021 WL 5279395 (S.D.N.Y. Nov. 12, 2021).................... 22

*Silva v. Pioneer Janitorial Servs., Inc.*,
No. 10-11264-JGD, 2011 WL 4729783 (D. Mass. Oct 4, 2011)...................................... 16, 18

*Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*,
No. CV 12-6383 (JFB) (AKT), 2016 WL 4703656 (E.D.N.Y. Sept. 7, 2016)........................... 8

*Tucker v. Interstate Home Loan Ctrs., Inc.*,
No. 20-CV-01906 (JMA)(JMW), 2022 WL 4079580 (E.D.N.Y. Sept. 6, 2022) .................... 22

*United States v. Figueroa*,
548 F.3d 222 (2d Cir. 2008) .................................................................................. 22

*US Bank Nat'l Ass'n v. PHL Variable Ins. Co.*,
No. 12 Civ. 6811(CM) (JCF), 2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012) .............. 4, 7, 8, 24

*U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*,
No. 18-cv-4044 (BCM), 2020 WL 91636 (S.D.N.Y. Jan. 8, 2020) ......................................... 8

*Walker v. Schult*,
365 F. Supp. 3d 266 (N.D.N.Y. 2019).............................................................................. 20, 21

*Yutong Jin v. Choi*,
No. 1:20-cv-09129-MKV, 2021 WL 738843 (S.D.N.Y. Feb. 24, 2021)................................. 15

*Zakrewska v. New Sch.*,
No. 06 Civ. 5463(LAK), 2008 WL 126594 (S.D.N.Y. Jan. 7, 2008)...................................... 16

## Rules

Fed. R. Civ. P. 26.............................................................................................................. *passim*

Fed. R. Civ. P. 45................................................................................................................... 7

Fed. R. Evid. 404 ................................................................................................................. 19

Fed. R. Evid. 412 ................................................................. *passim*

Fed. R. Evid. 608 ................................................................. 21, 22

Governor Cuomo[1] submits this memorandum of law: (i) in opposition to Trooper 1's and Charlotte Bennett's motions to quash the document and deposition subpoenas served on Charlotte Bennett (the "Bennett Subpoenas") and the related document subpoena issued to Hamilton College (the "Hamilton Subpoena" and, together with the Bennett Subpoena, the "Bennett-Related Subpoenas") and (ii) to cross-move to compel Ms. Bennett's compliance with the Bennett Subpoenas.[2] For the reasons set forth below, the motions to quash should be denied and the Court should compel Ms. Bennett to comply with Governor Cuomo's valid subpoenas.

## INTRODUCTION

Trooper 1 deliberately chose to bolster her own allegations against Governor Cuomo by alleging and relying on complaints against Governor Cuomo made by other women, including Ms. Bennett. In her Complaint, Trooper 1 alleges that she was "not the Governor's only victim" and that Governor Cuomo "harassed numerous other women in almost the same manner that he harassed Trooper 1." Compl. ¶ 75. Trooper 1 devotes more than ten pages of her pleading to allegations concerning other complainants described in the OAG Report. *Id.* ¶¶ 75–143. Thirteen paragraphs summarize Ms. Bennett's allegations against Governor Cuomo, relating both to alleged sexual harassment and alleged retaliation. *Id.* ¶¶ 92–102, 144, 146. Moreover, Trooper 1's FRCP 26(a) Initial Disclosures, which identify Ms. Bennett as a key witness with knowledge, confirm Trooper 1 intends to rely on Ms. Bennett's allegations. To defend against Trooper 1's claims, Governor Cuomo is thus entitled, and indeed required, to discover information relating to the

---

[1] For ease of reference, we use terms reflected on the attached Appendix of Defined Terms. All previously-filed documents in this action are referred to as "ECF No. __." Trooper 1's opening memorandum of law is ECF No. 82-1 and Ms. Bennett's is ECF No. 89. Governor Cuomo's document and deposition subpoenas served on Charlotte Bennett is ECF No. 82-4 and the document subpoena issued to Hamilton College is ECF No. 82-5.

[2] Trooper 1 moves to quash the Bennett-Related Subpoenas only to the extent they seek information relating to her prior allegations of sexual misconduct. Trooper 1's motion to quash also addresses subpoenas related to a separate nonparty witness, Lindsey Boylan. That part of Trooper 1's motion is addressed as part of Governor Cuomo's briefing addressing the Boylan subpoena and all Boylan-related subpoenas.

allegations of Ms. Bennett. Accordingly, he issued subpoenas to Ms. Bennett for documents and testimony, and sought to subpoena Hamilton College for documents relating to Ms. Bennett's prior allegations of sexual misconduct against others. These Bennett-Related Subpoenas seek information put directly at issue in this action by Trooper 1.

Ms. Bennett—backed in part by Trooper 1's separate motion—asks the Court to quash each of the Bennett-Related Subpoenas. None of the arguments raised in either motion hold water. Notwithstanding the thirteen paragraphs of allegations related to her, Ms. Bennett implausibly disclaims *any* connection to the Trooper 1 Action. Ms. Bennett and Trooper 1 also raise several evidentiary objections that have no bearing on relevance for purposes of discovery and do not remotely purport to preclude the discovery Governor Cuomo is seeking. Moreover, one of Ms. Bennett's primary arguments as to burden—that she too is litigating a claim against Governor Cuomo—is nonsensical: if anything, Ms. Bennett's separate litigation is consistent with a *reduced* burden in responding to subpoenas in the Trooper 1 Action, not a heightened one.

Accordingly, there is no basis for Ms. Bennett to withhold documents and testimony that are essential to Governor Cuomo's defense in the Trooper 1 Action and the Court should compel her response to the Bennett Subpoenas.

## PROCEDURAL BACKGROUND

Governor Cuomo sought to avoid issuing broad subpoenas to Ms. Bennett and other complainants referenced in Trooper 1's Complaint by first serving subpoenas on the OAG and AJC. Governor Cuomo's motions to compel documents and information from the OAG and AJC have not yet been resolved. In light of this, Governor Cuomo served subpoenas on nonparty witnesses relating to the other complainants referenced in Trooper 1's Complaint, including the other complainants themselves.

On May 5, 2023, Governor Cuomo noticed the Hamilton Subpoena. He sought information relating to allegations of sexual misconduct made by Ms. Bennett against any member of the Hamilton College community, including information regarding one known complaint made by Ms. Bennett in 2017 that was the subject of a federal lawsuit in which the "John Doe" plaintiff alleged Ms. Bennett coordinated with others to file false sexual misconduct complaints against him. *See* Declaration of Theresa Trzaskoma dated July 19, 2023 ("Trzaskoma Decl.") ¶ 7; *id.* Ex. 2.[3] That same day, counsel for Trooper 1 objected to the Hamilton Subpoena and insisted that Governor Cuomo not serve it. Governor Cuomo therefore has not yet served the Hamilton Subpoena, which sets compliance in the Northern District of New York.

On June 1, 2023, Governor Cuomo served two subpoenas to Ms. Bennett through her counsel: one for documents and one for testimony. The Bennett Subpoenas set compliance in the Southern District of New York. Counsel for Ms. Bennett accepted service of the Bennett Subpoenas and indicated that they would propose a date for her deposition, though they never did. Nor did Ms. Bennett serve Governor Cuomo with any responses or objections to the document subpoena. Ms. Bennett's counsel also did not seek to meet and confer regarding the scope of the document subpoena, or raise any claim regarding a purported undue burden on Ms. Bennett.

On June 5, 2023, Trooper 1 filed a pre-motion conference letter indicating her desire to quash the Bennett and Hamilton Subpoenas to the extent they sought information about Ms. Bennett's prior allegations of sexual misconduct. *See* ECF No. 78. The Court subsequently issued

---

[3] Specifically, John Doe alleged that Ms. Bennett coordinated with other women to file false complaints of sexual misconduct against him, intending to have him expelled from the college. *See* Trzaskoma Decl. Ex. 1 ¶¶ 2, 124, 127, 134, 152. Ms. Bennett allegedly acknowledged that the complaint was false; indeed, it is alleged that during a conversation with John Doe, which Ms. Bennett recorded, she admitted that he did not sexually assault her. *Id.* ¶ 121. Ms. Bennett eventually withdrew her complaint against John Doe. *Id.* ¶ 134. Hamilton College settled John Doe's lawsuit on or around September 21, 2018, on undisclosed terms. *See John Doe v. Hamilton College*, No. 17 Civ. 1202 (N.D.N.Y.), ECF No. 40.

an order permitting briefing on this issue. Both Trooper 1 and Ms. Bennett then moved to quash. *See* ECF No. 82-1; ECF No. 89. Trooper 1's objection remains narrow and seeks to block only discovery of information regarding Ms. Bennett's prior allegations of sexual misconduct. Ms. Bennett joins Trooper 1 in this objection, and further objects to producing *any* responsive documents and to providing testimony, professing to have *no* information relevant to Trooper 1's action.

## ARGUMENT

### I. TROOPER 1 AND MS. BENNETT LACK STANDING TO QUASH THE HAMILTON SUBPOENA

"A party ordinarily lacks standing to quash a subpoena directed at a nonparty unless the party is seeking to protect a personal privilege or right." *Sali v. Zwanger & Pesiri Radiology Grp., LLP*, No. 19 CV 275 (FB) (CLP), 2022 WL 1085508, at *17 (E.D.N.Y. Jan. 10, 2022) (collecting cases). The burden is on the movant to establish standing. *See US Bank Nat'l Ass'n v. PHL Variable Ins. Co*., No. 12 Civ. 6811(CM) (JCF), 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012). As discussed below, there are standing defects with respect to both Ms. Bennett and Trooper 1.

#### A. Ms. Bennett Does Not Have Standing to Quash the Hamilton Subpoena

Ms. Bennett has no standing to quash the Hamilton Subpoena as she has not established any protected personal privilege or right at stake. "The party invoking a privilege bears the burden of establishing its applicability, and the burden is a heavy one, because privileges are neither lightly created nor expansively construed." *Sali*, 2022 WL 1085508, at *18 (internal quotations and alterations omitted). In arguing she has standing to object to the Hamilton Subpoena, Ms. Bennett claims a "privacy interest" in the limited information sought and argues that the Bennett-Related Subpoenas broadly seek "private and personal information from non-party witnesses about her sexual history." ECF No. 89 at 7-8. While a movant objecting to the production of her educational

records may ordinarily be able to identify some privacy interest at stake, Ms. Bennett cannot claim a legitimate and protected privacy interest here for at least two reasons.

*First*, Ms. Bennett waived any right to protection over the subpoenaed Hamilton records because she made numerous public disclosures and statements about the very information at issue. Ms. Bennett has repeatedly and deliberately inserted information about her prior allegations of sexual assault into the public domain, stripping the records regarding those allegations of any conceivable privacy interest. Ms. Bennett's personal website, for example, links to several sources that describe in detail her experience reporting sexual harassment and sexual assault at Hamilton College. *See* Trzaskoma Decl. ¶ 4. Included among these are publicly available, memorialized minutes from a Hamilton College Student Assembly Meeting during which Ms. Bennett spoke at length about a formal sexual misconduct complaint she pursued, which was separate and apart from Ms. Bennett's other sexual misconduct complaint that resulted in a federal lawsuit. *Id.* ¶ 5 ("I reported seven events of abuse, ranging from stalking, to dating violence, to sexual assault . . Hamilton investigated all seven events. They only found him responsive for one incident."); *see also id.* ¶ 6 (newspaper article describing "Charlotte Bennett '17 who discussed her own experience pursuing a formal investigation with the HSMB, the results of which were detailed in the report from which this controversy originally stems."). Moreover, any privacy claim is further diminished by the fact that another complaint Ms. Bennett made at Hamilton became the subject of a federal lawsuit and related reporting. *See id.* ¶ 7; *see also id.* ¶¶ 8(a), 8(b) ("An organization founded by Charlotte Bennett and Bennett herself are mentioned in two lawsuits about coordinated multiple false allegations against male students. Hamilton College already settled one case."). Given the already-public nature of her complaints about sexual misconduct at Hamilton, she has no privacy interest and nothing at stake in Hamilton providing the information she has already

discussed. *See, e.g.*, *Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC*, No. 4:17-CV-00450, 2018 WL 5636160, at *3 (E.D. Tex. Oct. 30, 2018) (no standing to quash where there was no evidence the subpoenaed materials were actually confidential).

***Second***, the Hamilton Subpoena does not, as Ms. Bennett suggests, broadly request personal information about Ms. Bennett's sexual history. Instead, the Hamilton Subpoena contains one document request and seeks only information about her allegations of sexual harassment or misconduct, two of which we know exist. *See* ECF No. 82-5 at 9. Ms. Bennett makes the conclusory assertion that she has a recognized privacy interest in such information, relying on authority that is readily distinguishable. *See* ECF No. 89 at 7. In *Alexander v. New York City Department of Education*, for example, the subpoena to plaintiff's former employer sought the plaintiff's "entire personnel/employment file." 339 F.R.D. 372, 374 (S.D.N.Y. 2021). The Hamilton Subpoena, by contrast, is far narrower and does not seek Ms. Bennett's entire educational file. *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55 (S.D.N.Y. 2018) is also distinguishable. In that case, the subpoenas sought information generally regarding plaintiff's "sexual history with other men," including "lurid details of their relationships and media files depicting their activities." *Id.* at 57. The Hamilton Subpoena, by contrast, seeks only information about a topic already in the public domain.

### B. Trooper 1 Does Not Have Standing to Quash the Bennett-Related Subpoenas

Trooper 1 also has not met her burden of establishing standing to object to the Bennett-Related Subpoenas because she has no personal interest at stake. "Importantly, the claim of privilege or right must be personal to the movant, not to the non-party witness on whom the subpoena was served." *Sali*, 2022 WL 1085508, at *18 (internal quotations omitted); *see also Gomez v. J.R. Hycee Conyeor Co., Inc.*, No. CV 06-2827 NGG/ARL, 2008 WL 64675, at *1 (E.D.N.Y. Jan. 4, 2008) (denying motion to quash upon holding "the plaintiff lacks standing to

object to this subpoena given the absence of any personal interest in the documents sought"). Here, Trooper 1 has not and cannot assert any personal privilege or right because the information sought does not concern her in any way. *See, e.g.*, *Allstate Ins. Co. v. Zelefsky*, No. CV 13-5830 (JFB) (AKT), 2014 WL 12661264, at *1 (E.D.N.Y. Mar. 7, 2014) (defendants failed to establish standing to challenge subpoenas where motion did not address any personal right or privilege with respect to documents sought).

Trooper 1 argues that she has standing to quash the Bennett-Related Subpoenas based on FRE 412 and its potential implications for the admissibility of the information. *See* ECF No. 82-1 at 5. Trooper 1's novel theory seems to be that she has a personal interest in vindicating the principles underlying FRE 412. As discussed further below, however, FRE 412 does not bar any discovery into prior allegations of sexual assault, particularly where some of those allegations were found to be unsubstantiated. And in any event, "[a] party's general desire to thwart disclosure of information by a non-party is simply not an interest sufficient to create standing." *See US Bank Nat'l Ass'n*, 2012 WL 5395249, at *2.

For the same reasons, Trooper 1 does not have standing to seek a protective order with respect to the Bennett-Related Subpoenas. *See* ECF No. 82-1 at 6 (requesting the Court issue a protective order, even if it declines to quash the Bennett-Related Subpoenas). "The same standards apply where a party challenges a non-party subpoena through a motion for a protective order as opposed to a motion to quash." *Allstate Ins. Co.*, 2014 WL 12661264, at *1 (collecting cases); *accord US Bank Nat'l Ass'n*, 2012 WL 5395249, at *2 (rejecting defendant's argument that, if it did not have standing under FRCP 45, it did under FRCP 26 for purposes of seeking a protective order; "This is not a distinction recognized in this Circuit"). Indeed, it would eviscerate the standing requirement under FRCP 45 if a party could simply stylize what in essence is a motion to

quash as a motion for a protective order. *See US Bank Nat'l Ass'n*, 2012 WL 5395249, at \*2. Even if Trooper 1 had standing to request a protective order, and she does not, her request for one fails to provide any justification for the relief sought and instead only vaguely references an order to "limit the scope of these subpoenas" so that discovery does not "spiral" and "cause lengthy delays." ECF No. 82-1 at 6. Such a vague and undefined request cannot be granted. Accordingly, the Court should dismiss Trooper 1's motion in its entirety.

## II.     THE BENNETT-RELATED SUBPOENAS SEEK RELEVANT INFORMATION BASED ON OPERATIVE ALLEGATIONS IN TROOPER 1'S COMPLAINT

FRCP 26(a)(1) provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "Although not unlimited, relevance, for purposes of discovery, is an extremely broad concept." *Johnson v. Riverhead Cent. Sch. Dist.*, No. CV 14-7130 (DRH) (AKT), 2016 WL 4507002, at \*8 (E.D.N.Y. Aug. 26, 2016). Trooper 1's Complaint, which contains thirteen paragraphs about Ms. Bennett, confirms the relevance of the subpoenaed materials. *See U.S. Bank Nat'l Ass'n v. Triaxx Asset Mgmt. LLC*, No. 18-cv-4044 (BCM), 2020 WL 91636, at \*2 (S.D.N.Y. Jan. 8, 2020) (discovery fairly encompasses "inquiry into facts that have been alleged" and thus put "presumptively at issue" in the action). The materials relate directly to Trooper 1's allegations and certainly meet the low bar for discoverable information. Indeed, courts have repeatedly required production of information even when it is only "marginally relevant." *See, e.g., Hasemann v. Gerber Prods. Co.*, No. 15-cv-2995 (MKB) (RER), 2018 WL 5651210, at \*1 (E.D.N.Y. Aug. 28, 2018) (compelling production of materials that were "marginally relevant"); *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. CV 12-6383 (JFB) (AKT), 2016 WL 4703656, at \*17 (E.D.N.Y. Sept. 7, 2016) (compelling response to interrogatory that was "marginally relevant").

Trooper 1 has been unequivocal about her intention to rely upon Ms. Bennett's allegations to bolster her own claims. She expressly refers to Ms. Bennett's allegations in her Complaint and identified Ms. Bennett as a key witness in this proceeding. *See* Compl. ¶¶ 92–102, 144, 146; Trzaskoma Decl. Ex. 1. As part of his defense to Trooper 1's claims, Governor Cuomo must address the allegations about Ms. Bennett, including for the purpose of establishing that Trooper 1 cannot admit Ms. Bennett's allegations at trial because they are not credible and are not sufficiently similar to Trooper 1's own claims. Governor Cuomo will not be able to make such arguments without first discovering information related to Ms. Bennett's allegations.

Notwithstanding all this, Ms. Bennett contends that information about her is "utterly irrelevant" to Trooper 1's claims.[4] *See* ECF No. 89 at 8–11. She further objects to the Bennett-Related Subpoenas to the extent they seek information regarding prior allegations of sexual misconduct, arguing that such evidence would be inadmissible and thus is undiscoverable. Ms. Bennett's arguments ignore the actual allegations in Trooper 1's Complaint, are at odds with the broad ambit of federal civil discovery, and conflate relevance for purposes of discoverability with admissibility of evidence at trial.

## A. The Bennett-Related Subpoenas Request Information Relevant to the Trooper 1 Action

Ms. Bennett is wrong that the Bennett-Related Subpoenas request information that is irrelevant to the Trooper 1 Action. First and foremost, Trooper 1 pleaded allegations about Ms. Bennett in the Complaint. Governor Cuomo is entitled to seek routine discovery to test the veracity of Ms. Bennett's allegations—and, in turn, the strength of Trooper 1's reliance upon them. And he is entitled to seek testimony from witnesses identified by Trooper 1 as having information relating

---

[4] Ms. Bennett's claim is brazenly contradicted by the FRCP 26(a) Initial Disclosures she served Governor Cuomo in her own action, which identified *Trooper 1* as an individual with knowledge relevant to her allegations.

to her claims. The materials requested in the Bennett Subpoena include Ms. Bennett's direct communications with Governor Cuomo (Request No. 3) and Ms. Bennett's communications with others (*e.g.*, the OAG, the AJC, media outlets, coworkers at the Executive Chamber, and other complainants) about her allegations (Request Nos. 1, 2, 5). These communications are unquestionably relevant. *See In re Subpoena to Loeb & Loeb LLP*, No. 19 Misc. Civ. 241 (PAE), 2019 WL 2428704, at *3, 5 (S.D.N.Y. June 11, 2019) (granting motion to compel nonparty to produce, *inter alia*, documents and communications "with or about" the defendants and/or the action; finding the documents "plainly relevant" to the proceeding). The Bennett Subpoena further requests information relating to Ms. Bennett's changing job responsibilities while at the Executive Chamber (Request No. 6), as Trooper 1 has put this directly at issue. *See* Compl. ¶¶ 102, 144. Governor Cuomo cannot defend against Trooper 1's claim that his actions allegedly caused Ms. Bennett to leave her job at the Executive Chamber if he is barred from discovering information relating to the circumstances of her employment and eventual departure. The subpoenaed materials thus relate directly to the allegations in Trooper 1's Complaint and are patently discoverable.[5]

The Bennett-Related Subpoenas also seek materials relevant to Ms. Bennett's credibility and motive in making her accusations against Governor Cuomo. This is a proper subject of discovery. *See Ashkenazi as Tr. of Halpert Alexander Tr. v. Lincoln Nat'l Life Ins. Co.*, No. 08-CV-3235-ENV-CLP, 2009 WL 10705911, at *3 (E.D.N.Y. Aug. 3, 2009) ("Courts in this circuit have found that one of the purposes of discovery is to obtain information for use on cross-

---

[5] Ms. Bennett suggests that the inclusion of these allegations in the Trooper 1 Complaint is insufficient to establish relevance by citing to *McGowan v. JPMorgan Chase Bank*. Bennett Mot. at 9. But that case did not concern a defendant's effort to take discovery in connection with allegations in a complaint, rather it involved a plaintiff's effort to take discovery based on a defendant's denial of an alleged fact. *McGowan v. JPMorgan Chase Bank,* No. 18 Civ. 8680 (PAC) (GWG), 2020 WL 1974109, at *7 (S.D.N.Y. Apr. 24, 2020). Further, it arose in the context of whether such a denial could constitute an at-issue privilege waiver and is thus wholly inapposite. *Id.* ("The mere fact that a defendant in an answer denies an allegation made in a complaint is insufficient to place the substance of the allegation at issue for purposes of the waiver doctrine.")

examination and for the impeachment of witnesses." (quotation omitted)). The Bennett Subpoena requests Ms. Bennett's communications with other complainants about Governor Cuomo (Request No. 5), as such communications are relevant to, among other things, Ms. Bennett's motive in making her allegations. Trooper 1, not Governor Cuomo, put Ms. Bennett's credibility at issue in this lawsuit. And it is reasonable to believe that Ms. Bennett may have had ulterior motives in accusing Governor Cuomo of misconduct. Indeed, it is widely known that Ms. Bennett communicated with, at least, Lindsay Boylan prior to making the decision to publicly accuse Governor Cuomo.[6] Indeed, Ms. Bennett's accusations against Governor Cuomo were the subject of a New York Times article just days after Ms. Boylan detailed her own allegations. *See* Trzaskoma Decl. ¶¶ 9–10. The discovery sought would enable Governor Cuomo to obtain information on Ms. Bennett's motive for accusing him of misconduct, and this is clearly discoverable.

Relatedly, the Hamilton Subpoena and Request No. 4 in the Bennett Subpoena seek information regarding Ms. Bennett's prior allegations of sexual misconduct. Discovery into a plaintiff's prior complaints is routinely granted, contrary to the argument made by Ms. Bennett. *See Padilla v. Sacks & Sacks, LLP,* No. 19-CV-10021 (GBD) (KHP), 2021 WL 4429785, at *3 (S.D.N.Y. Sept. 27, 2021) (citing cases). This information is particularly relevant here. Ms. Bennett does not dispute the fact that she filed prior complaints of sexual misconduct (nor could she given the many public statements she has made on the subject). Moreover, Governor Cuomo has a reasonable basis to believe not only that Ms. Bennett previously made a false complaint of sexual misconduct while in college, but that she did so for the purpose of bolstering the strength

---

[6] *See* OAG Report at 64 (quoting Dec. 8, 2020 text message from Ms. Bennett to Ms. Boylan); *see also* Trzaskoma Decl. ¶ 10 ("After seeing Ms. Boylan detail her accusations against Mr. Cuomo, Ms. Bennett shared Ms. Boylan's account on Twitter, suggesting that people read it if they wanted a true picture of 'what it's like to work for the Cuomo administration.'").

of the other complainants' accusations.[7] The making of a prior false complaint, in coordination with others, as alleged against Ms. Bennett in the *John Doe* lawsuit, is plainly an important fact for purposes of evaluating whether Ms. Bennett engaged in the same behavior here. And, because Trooper 1 put Ms. Bennett's allegations against Governor Cuomo at issue in this lawsuit, discovery on the subject matter is proper.

Finally, Ms. Bennett contends that, because she is litigating a separate action against Governor Cuomo in the Southern District of New York, the Bennett-Related Subpoenas are an improper effort to circumvent the discovery process in that proceeding. *See* ECF No. 89 at 9–10. This argument makes no sense.[8] Ms. Bennett filed her lawsuit nearly eighteen months after Trooper 1, so that case is on a different schedule. But discovery is now underway in Ms. Bennett's lawsuit and Governor Cuomo is seeking the exact same materials there. That the information is relevant to both cases is simply not a basis to refuse discovery in Trooper 1's case. In any event, if any materials produced in this action are confidential, they can be so designated under the Protective Order, which limits the use of such information. *See* ECF No. 68.

### B. Governor Cuomo Is Entitled to Discovery Regarding Ms. Bennett's Prior Allegations of Sexual Misconduct

In addition to making baseless relevance points, Ms. Bennett argues that information requested in the Bennett-Related Subpoenas regarding her prior allegations of sexual misconduct are also undiscoverable and inadmissible. *See* ECF No. 89 at 10. As discussed below, Ms. Bennett's arguments considering admissibility are meritless, *infra* § III. More fundamentally,

---

[7] *See* Trzaskoma Decl. Ex. 2 ¶¶ 2, 120–122 (alleging Ms. Bennett acting with other female students "in concert and with a malicious purpose" and that she falsely accused John Doe of non-consensual sexual contact); *see also* Trzaskoma Decl. ¶ 8(a) (describing allegation that Bennett filed false complaint "in concert with" another complainant to "secure disciplinary action" against the accused).

[8] The parties have just begun to discovery in the action brought by Ms. Bennett. There, Governor Cuomo has requested Ms. Bennett and Hamilton College produce materials akin to those requested in the Bennett-Related Subpoenas, given their relevance to Ms. Bennett's allegations.

though, Ms. Bennett is improperly attempting to have the Court evaluate an issue that Ms. Bennett has no stake in with respect to Trooper 1's claims. It is not Ms. Bennett's concern what documents or testimony are ultimately deemed admissible in Trooper 1's litigation. Moreover, it is well settled that evidence need not be admissible to be discoverable. *See* Fed. R. Civ. P. 26(b)(1); *accord Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, No. 18 Civ. 4476 (LJL) (SLC), 2020 WL 9432989, at *1 (S.D.N.Y. Dec. 16, 2020) ("That the information . . . may not be . . . ultimately admissible at trial does not preclude it from discovery . . . it need not be admissible in evidence to be discoverable." (internal quotation omitted)).

Ms. Bennett's position is also at odds with well settled law that a defendant can take discovery concerning a complainant's prior allegations of discrimination and harassment. *See, e.g.*, *Ghonda v. Time Warner Cable, Inc.*, No. 16-CV-2610 (PKC), 2017 WL 395111, at *2–4 (E.D.N.Y. Jan. 27, 2017) (denying motion to quash subpoena to plaintiff's previous employer seeking information relating to "any alleged discrimination, harassment or other workplace misconduct by or against plaintiff" in action involving sex discrimination and sexual harassment); *Ireh v. Nassau Univ. Med. Ctr.*, No. 06-CV-09(LDW)(AKT), 2008 WL 4283344, at *6 (E.D.N.Y. Sept. 17, 2008) (finding prior complaints of discrimination made by plaintiff at previous employer relevant to the action; modifying subpoena to require former employer to produce documents "regarding any internal or external complaints of race or national origin discrimination" made by plaintiff against the employer); *Padilla*, 2021 WL 4429785, at *3 (denying motion to quash subpoena to the extent it sought information regarding "complaints and charges of gender and sexual orientation discrimination, sexual harassment, and/or retaliation that [p]laintiff lodged or filed" during prior employment; "These internal and external complaints may be relevant to

Defendants' defenses in this action . . . To the extent that any such complaints exist, they may speak to Plaintiff's motive and/or credibility." (internal citations omitted)).

The only authority relied upon by Ms. Bennett, *Anderson v. Buena Board of Education,* does not suggest otherwise. No. CV 17-06816(JS), 2019 WL 1262647 (D.N.J. Mar. 19, 2019). Indeed, that case has nothing to do with the facts here. In *Anderson*, the defendants were seeking copies of plaintiff's gynecological records in an action where the plaintiff sued her school for failing to act when she was abused by a teacher. *Id.* at *1. The Court found that the defendants proffered no evidence to indicate there was anything in these medical records relevant to the claims and defenses in the proceeding. *Id.* at *2. There, whether the plaintiff had previously been the victim of an unrelated assault had no bearing on the claims at issue. In contrast, Ms. Bennett's prior, perhaps false, complaints of sexual misconduct are directly relevant to her allegations against Governor Cuomo and to Trooper 1's reliance on them.

## III. THE BENNETT-RELATED SUBPOENAS WERE NOT SERVED FOR AN IMPROPER PURPOSE

Trooper 1 and Ms. Bennett characterize the Bennett-Related Subpoenas as an improper effort to "harass and intimidate" Ms. Bennett. ECF No. 89 at 11; *see also* ECF No. 82-1 at 4. Not so. As described previously, *supra* § II, the Bennett-Related Subpoenas were served by Governor Cuomo solely because Trooper 1's Complaint relies on Ms. Bennett's allegations to substantiate her own claims, and because Trooper 1 disclosed Ms. Bennett as a witness in this proceeding. Had Trooper 1 not brought Ms. Bennett into this litigation, Governor Cuomo would not have had a need for the requested documents. Again, Ms. Bennett's contention that the Bennett-Related Subpoenas are improper because they seek evidence barred by FRE 412, 404 and 608 is wrong and not for her to litigate. *See* ECF No. 89 at 11–16. As to Trooper 1, while she may have an interest in the admissibility and may someday have arguments that the information is inadmissible

under the rules of evidence, that day is not today. ECF No. 82-1. at 2–4. None of these evidentiary rules—which govern admissibility of evidence, not discoverability of information—bar the discovery sought by Governor Cuomo in the Bennett-Related Subpoenas.

## A. Federal Rule of Evidence 412 Does Not Bar the Discovery Sought in the Bennett-Related Subpoenas

Both Trooper 1 and Ms. Bennett argue that the Bennett-Related Subpoenas should be quashed as they seek information protected by FRE 412. The Rule provides that "evidence offered to prove that a victim engaged in other sexual behavior" or to "prove a victim's sexual predisposition" is "not admissible" absent a showing that its probative value substantially outweighs the danger of harm and unfair prejudice. *See* Fed. R. Evid. 412; ECF No. 89 at 12–14; ECF No. 82-1 at 2–4. But Governor Cuomo is not seeking evidence of Ms. Bennett's private sexual behavior to prove that any alleged harassment was welcome or unoffensive, or to suggest that Ms. Bennett's expectations in the workplace should change depending on her prior experiences.

Nevertheless, and more importantly for the instant motion, FRE 412 concerns admissibility, not discoverability. Trooper 1 and Ms. Bennett have thus prematurely sought its protections. Trooper 1 and Ms. Bennett "confus[e] what is admissible at trial pursuant to [FRE 412], and what is discoverable pursuant to [FRCP 26]." *Holt v. Welch Allyn, Inc.*, No. 95-CV-1135 (RSP/GJD), 1997 WL 210420, at *7 (N.D.N.Y. Apr. 15, 1997) (denying motion to quash; noting "[t]he relevance of the [evidence sought] at trial is, of course, a matter for another day"). FRE 412 expressly governs admissibility and does not limit Governor Cuomo's ability to seek discovery. *See, e.g., Muniu v. Amboy Neighborhood Ctr., Inc.*, No. 98CV2211FBJMA, 2001 WL 370226, at *1 (E.D.N.Y. Apr. 11, 2001) (discoverability of evidence of a victim's sexual behavior or sexual predisposition governed by FRCP 26, not FRE 412); *see also Yutong Jin v. Choi*, No. 1:20-cv-09129-MKV, 2021 WL 738843, at *2 (S.D.N.Y. Feb. 24, 2021) (rejecting plaintiff's argument

that her mental health records are not discoverable under FRE 412; "Under FRCP 26, a party is entitled to broad discovery . . ." (internal quotation omitted)); Fed. R. Evid. 412 advisory committee's note to 1994 amendment ("The procedures set forth in subdivision (c) do not apply to discovery of a victim's past sexual conduct or predisposition in civil cases, which will be continued to be governed by [FRCP 26].").

Trooper 1 and Ms. Bennett assert that courts routinely prohibit discovery where the information sought is inadmissible under FRE 412. *See* ECF No. 82-1 at 3; ECF No. 89 at 13–14. This is wrong. All of the authorities they rely upon in support of this untenable position involve denials of discovery where the party seeking the information failed to make an adequate showing of relevance; thus, relevance under FRCP 26—*not admissibility under FRE 412*—served the basis of these denials. *See Hughes*, 327 F.R.D. at 58 (S.D.N.Y. 2018) (concluding "subpoenaed information is not relevant to the proffered defenses"); *Anderson*, 2019 WL 1262647, at *2 ("Defendants' motion is denied because they have not shown plaintiff's records contain relevant information."); *Ogden v. All-State Career Sch.*, 299 F.R.D. 446, 450 (W.D. Pa. 2014) (declining to order plaintiff to produce information that was "irrelevant" and "non-discoverable"); *Silva v. Pioneer Janitorial Servs., Inc.*, No. 10-11264-JGD, 2011 WL 4729783, at *2 (D. Mass. Oct 4, 2011) (defendant failed to show information sought was relevant to claims). Indeed, Ms. Bennett cites to several cases where, despite considering the information requested "in light of the policy underlying Rule 412," the court ultimately held that information relating to other sexual behavior or sexual predisposition was "relevant and [] reasonably calculated to lead to the discovery of admissible evidence." *Gibbons v. Food Lion, Inc.*, No. 98-1197-CIV-T-23F, 1999 WL 33226474, at *2 (M.D. Fla. Feb. 19, 1999); *see also Zakrewska v. New Sch.*, No. 06 Civ. 5463(LAK), 2008 WL 126594, at *2 (S.D.N.Y. Jan. 7, 2008) (noting it would be "unfair [] to permit a plaintiff

claiming [certain damages] to block discovery of facts that may shed important light on whether [those damages] actually w[ere] suffered," whether the damage was attributable to circumstances other than the defendant, and "that could seriously undermine the credibility of the [damages] expert's opinion"); *Macklin v. Mendenhall*, 257 F.R.D. 596, 606 (E.D. Cal. 2009). Moreover, the Advisory Committee Notes confirm that, even where courts consider the discoverability of information under FRCP 26 against the backdrop of FRE 412's admonishments, discovery should not be barred where the information sought "would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery." Fed. R. Evid. 412, advisory committee's note to 1994 amendment. Here, the Bennett-Related Subpoenas plainly seek relevant information. *See supra* § II. And Governor Cuomo has no alternative means of accessing the materials. Accordingly, FRE 412 cannot bar the discovery sought and the Court should compel its production.

Even if the Court was to consider the admissibility of the information sought by the Bennett-Related Subpoenas under FRE 412 on these motions, which it should not, nothing in the Bennett-Related Subpoenas is proscribed by the Rule. Ms. Bennett's and Trooper 1's motions both assume, relying on no authority, that the Bennett-Related Subpoenas seek information limited by FRE 412. *See* ECF No. 89 at 14; ECF No. 82-1 at 2. But FRE 412 limits evidence only when it is used "offered to prove" a victim's "sexual predisposition," or that a victim engaged in "other sexual behavior"—*i.e.,* evidence relating to sexual behavior other than what underlies the misconduct allegations. Fed. R. Evid. 412(a)(1)–(2). The plain language of FRE 412 thus makes clear that it does not reach the information sought by the Bennett-Related Subpoenas relating to Governor Cuomo's alleged sexual misconduct. *See* Fed R. Evid. 412, advisory committee's note to 1994 amendment ("The word 'other' is used [before 'sexual behavior'] to suggest some

flexibility in admitting evidence 'intrinsic' to the alleged sexual misconduct."). At most, FRE 412 would apply to the Hamilton Subpoena and Request No. 4 of the Bennett Subpoena. But both of those seek documents concerning *allegations of sexual misconduct* Ms. Bennett made against others. They do not seek information about Ms. Bennett's sexual behavior such that FRE 412 conceivably applies. Governor Cuomo does propose to obtain or introduce any evidence of Ms. Bennett's sexual predisposition or to establish that she has engaged in other sexual behavior. The requested information serves an entirely different evidentiary purpose: to evaluate the veracity of Ms. Bennett's allegations against Governor Cuomo and her credibility as a witness in the Trooper 1 Action. Plainly put, if Governor Cuomo's understanding is accurate, and Ms. Bennett's previous allegation was false, the information adduced will have nothing whatsoever to do with sexual stereotyping. It will only be about fabrication.

None of the cases cited by Ms. Bennett or Trooper 1 are to the contrary. Instead, the cases suggest that prying, invasive questioning of a victim's past consensual sexual conduct can, in certain circumstances, fall outside the bounds of what is relevant in a particular case and thus may be inadmissible. But since Governor Cuomo is not seeking information of this nature, these cases are distinguishable.[9] Trooper 1 and Ms. Bennett thus seek to broaden the scope of FRE 412 to

---

[9] *See Burger v. Litton Indus., Inc.*, No. 91 CIV. 0918 (WK) (AJP), 1995 WL 476712, at *2–3 (S.D.N.Y. Aug. 10, 1995) (foreclosing defendants from questioning nonparty witness about witness's consensual sexual conduct with other employees of defendant as too attenuated to be necessary to "put in context" her testimony that employees at the company "were talking about sex all the time" but noting that the witnesses "*discussions* about sex with others []" would be relevant (in a discovery sense)"; finding no need to establish additional inference of possible bias through questioning where bias had already been established); *Hughes*, 327 F.R.D. at 58–59 (quashing subpoenas seeking evidence relating to plaintiff's extramarital relationships where no subpoenaed party had information bearing on claims at issue); *Silva*, 2011 WL 4729783, at *1–2 (denying motion to compel plaintiff to answer questions relating to her consensual sexual history outside of relevant workplace); *Anderson*, 2019 WL 1262647, at *5 (denying motion to compel plaintiff's gynecological records where nothing was offered to show relevant information would be found there); *Chamblee v. Harris & Harris, Inc.*, 154 F. Supp. 2d 670, 680 (S.D.N.Y. 2001) (granting motion *in limine* to preclude evidence of plaintiff's prior sex work as such evidence was "irrelevant except to prove a sexual disposition of plaintiff" but noting that plaintiff's discussions with co-workers about starting an escort service and other sexual comments at work may be relevant and amissible under FRE 412).

encompass evidence beyond that which it is designed to protect.[10] The Court should reject this effort, particularly given the posture of the proceeding, and instead compel Ms. Bennett's response to the Bennett Subpoenas.

### B. Federal Rule of Evidence 404 Does Not Bar the Discovery Sought in the Bennett-Related Subpoenas

Ms. Bennett argues that "her credibility is of no relevance to Trooper 1's claims against [Governor] Cuomo." ECF No. 89 at 14. Ms. Bennett is off base. It is telling that Trooper 1 is silent on this point, presumably because Trooper 1 would have to agree that, insofar as Trooper 1 intends to rely on Ms. Bennett's allegations, Ms. Bennett's credibility is at issue. Nevertheless, both Ms. Bennett and Trooper 1 assert that the Bennett-Related Subpoenas are defective because they seek irrelevant character evidence in violation of FRE 404(b).[11] *See id.* at 14–15; ECF No. 81-2 at 3–4. This argument is without avail. Akin to FRE 412, FRE 404(b) concerns admissibility and not discoverability of evidence. *See* Fed. R. Evid. 404(b)(1). Specifically, it proscribes evidence of "any other crime, wrong, or act" as "not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance" therewith. *Id.* Even assuming, *arguendo*, that FRE 404(b) is relevant to this motion, FRE 404(b)(2) expressly permits other act evidence for the purpose of proving motive, knowledge, and intent, among other things. *See* Fed. R. Evid. 404(b)(2) (noting evidence prohibited by 404(b)(1) "may be admissible for another purpose" other than proving conformity). The Bennett-Related Subpoenas meet this standard

---

[10] To the extent the Court has concerns about Ms. Bennett's privacy interests, the operative protective order permits Ms. Bennett to designate sensitive information as "Confidential." *See generally* ECF No. 68.

[11] Both Ms. Bennett and Trooper 1 claim it is improper for Governor Cuomo "to attack Ms. Bennett as untrustworthy because she has been assaulted previously." ECF No. 89 at 14; *see also* ECF No. 82-1 at 4. It is offensive and beyond reason to suggest that Governor Cuomo would attack Ms. Bennett's credibility *because* she has been the victim of assault. Rather, Governor Cuomo is seeking discovery into the possibility, reflected in a publicly filed lawsuit, that Ms. Bennett made prior false reports of sexual misconduct and, in particular, collaborated with others to coordinate such reports with the specific intention of bolstering someone else's false allegations. This Court should give no weight to Trooper 1's and Ms. Bennett's baseless allegation that Governor Cuomo plans to engage in victim shaming.

because the discovery relates to Ms. Bennett's motive, knowledge, and intent. *See, e.g.*, *Padilla*, 2021 WL 4429785, at *3 (declining to quash nonparty subpoena seeking information reflecting internal and external complaints made by plaintiff during prior employment because information was relevant to plaintiff's motive and credibility). Moreover, the cases relied upon by Trooper 1 and Ms. Bennett are inapposite as all involve questions of admissibility of evidence upon completion of discovery.

For example, Trooper 1 and Ms. Bennett both rely on *Outley v. City of New York*, an entirely distinguishable case. 837 F.2d 587 (2d Cir. 1988). There, the plaintiff appealed from a jury verdict in part due to the admission of evidence about prior lawsuits filed by the plaintiff against the City of New York. *See id.* at 591 ("An important part of the City's overall defense was to undermine Outley's credibility by, *inter alia*, portraying him as a chronic litigant."). The Second Circuit noted that the "charge of litigiousness is a serious one, likely to result in undue prejudice against the party charged, *unless the previous claims made by the party are shown to have been fraudulent*." *Id.* at 592 (emphasis added). Unlike in *Outley*, the evidence regarding Ms. Bennett's prior complaints will not be used to show a propensity for being complaint-minded, but instead to explore the very real concern that Ms. Bennett previously made at least one false complaint under similar circumstances and for similar reasons. Other cases cited by Ms. Bennett are also unpersuasive. *See Scoma v. City of New York*, No. 16-CV-6693 (KAM)(SJB), 2021 WL 1784385, at *7–8 (E.D.N.Y. May 4, 2021) (granting in part a motion *in limine* to preclude evidence regarding prior lawsuits brought by plaintiff and precluding evidence of one lawsuit where there was no showing that the suit was fraudulently filed or relevant to instant case, but permitting admission of other lawsuits where defendants made relevance showing); *Walker v. Schult*, 365 F. Supp. 3d 266, 280–281 (N.D.N.Y. 2019) (deciding in *limine* to preclude grievances filed by incarcerated

plaintiff at other facilities where defendants offered nothing to show these other grievances were fraudulent).

All of these authorities actually support Governor Cuomo's request to the Court: that he be permitted discovery into Ms. Bennett's other allegations of sexual misconduct. *See, e.g.*, *Walker*, 365 F. Supp. 3d at 280–281 (prior grievances may be admitted "if the previous claims made by the party are shown to have been fraudulent" or if prior proceedings "were similar enough to the action . . . that they could reveal that the [party] had a motive, plan or scheme to bring similar kinds of claims . . ."). Indeed, as noted previously, *supra* § II, courts routinely permit *discovery* of prior complaints in actions involving discrimination and harassment. *See, e.g.*, *Ghonda*, 2017 WL 395111, at *4; *Padilla*, 2021 WL 4429785, at *3; *Ireh*, 2008 WL 4283344, at *6. At a later time, depending on what is uncovered by this discovery, the Court can determine whether such evidence will be admissible at trial and will do so without Ms. Bennett weighing in.

**C.  Federal Rule of Evidence 608 Does Not Bar the Discovery Sought in the Bennett-Related Subpoenas**

Ms. Bennett further argues that under FRE 608, the Bennett-Related Subpoenas are an improper attempt to undermine her credibility. *See* ECF No. 89 at 15–16. FRE 608 instructs that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct" to attack her "character for truthfulness." Fed. R. Evid. 608(b). Once again, Ms. Bennett is way off base because FRE 608 too is an admissibility rule. *See Barkley v. Olympia Mortg. Co.*, No. 04-cv-875 (RJD) (KAM), 2008 WL 11434464, at *5 n.5 (E.D.N.Y. July 21, 2008) ("[T]he court notes that admissibility of such information at trial is not a standard governing discovery." (internal quotation omitted)); *E.E.O.C. v. First Wireless Grp., Inc.*, 225 F.R.D. 404, 406 (E.D.N.Y. 2004) (same). But even so, the Advisory Committee Notes clarify that "the absolute prohibition on extrinsic evidence applies *only when* the *sole reason* for proffering that evidence is to attack or support the witness'

character for truthfulness." Fed. R. Evid. 608, advisory committee's note to 2003 amendment (emphasis added). FRE 608(b)'s limits thus extend only to the use of evidence designed to show a witness has generally acted in a way—unrelated to the allegations at issue—that make her more or less believable per se. This is not the purpose for which Governor Cuomo seeks the information requested in the Bennett-Related Subpoenas. To the contrary, Governor Cuomo requests the information as it is relevant to Trooper 1's claims and essential to his defenses in this proceeding, including his ability to challenge the veracity of Ms. Bennett's allegations as incorporated into Trooper 1's Complaint. Nothing in FRE 608 precludes this. *See United States v. Figueroa*, 548 F.3d 222, 229–30 (2d Cir. 2008) (overturning exclusion of questioning under FRE 608 where "purpose of the proposed line of cross-examination was not to show the witness's 'character for truthfulness or untruthfulness,'" but instead "to impeach the witness for bias").

None of the cases cited by Ms. Bennett are thus on point, as all declined to permit discovery only when the party seeking the information was unable to articulate any grounds under which the subpoenas would produce relevant information, except for the speculative hope of attacking credibility. *See Tucker v. Interstate Home Loan Ctrs., Inc.*, No. 20-CV-01906 (JMA)(JMW), 2022 WL 4079580, at *4 (E.D.N.Y. Sept. 6, 2022); *Park West Radiology v. CareCore Nat'l LLC*, 547 F. Supp. 2d 320, 322 (S.D.N.Y. Apr. 17, 2008); *Shih v. Petal Card, Inc.*, No. 18-CV-5494 (JFK) (BCM), 2021 WL 5279395, at *4 (S.D.N.Y. Nov. 12, 2021).

## IV.    THE BENNETT-RELATED SUBPOENAS ARE PROPORTIONAL AND WOULD NOT IMPOSE UNDUE BURDEN

Ms. Bennett makes three arguments for why, should the Court find the Bennett-Related Subpoenas relevant and proper, they should nonetheless be quashed on the grounds of proportionality and burden. *See* ECF No. 89 at 16–18. None of these arguments are availing.[12]

***First***, Ms. Bennett repurposes her relevance argument to suggest that the information requested is inherently disproportional and unduly burdensome. As discussed, *supra* § II, Ms. Bennett's allegations are directly at issue in Trooper 1's Complaint and are unquestionably relevant to the claims and defenses in this action. Ms. Bennett's reliance on *Alvarado v. GC Dealer Services Inc.* is misplaced. No. 18-CV-2915 (SJF)(SIL), 2018 WL 6322188, at *2 (E.D.N.Y. Dec. 3, 2018) (noting defendants failed to establish *relevance* of documents requested to issues being litigated); ECF No. 89 at 17. Moreover, Ms. Bennett is wrong in asserting that the requested information is publicly available because some of it was featured in the OAG and AJC Reports. *See* ECF No. 89 at 9. Indeed, as Ms. Bennett and all Parties are aware, Governor Cuomo challenges the accuracy of those Reports and has not been granted access to the vast majority of information underlying both Reports.[13] Governor Cuomo's Bennett-Related Subpoenas, therefore, seek information he cannot obtain elsewhere.

***Second***, Ms. Bennett argues that the requests are overbroad. *See* ECF No. 89 at 17. But a review of the Bennett-Related Subpoenas confirms that they are confined to information about Ms. Bennett's harassment allegations. Governor Cuomo is entitled to "all" communications concerning

---

[12] Even if the Court finds Ms. Bennett has standing to challenge the Hamilton Subpoena (which it should not), Ms. Bennett has no standing to assert a challenge on undue burden grounds. *See, e.g.*, *Malibu Media, LLC v. Doe*, No. 15-CV-3504 (JFB)(SIL), 2016 WL 4444799, at *6 (E.D.N.Y. Aug. 23, 2016) (collecting cases). Thus, the Court should only consider her proportionality and burden arguments with respect to the Bennett Subpoenas.

[13] Notably, neither Report makes any mention of the serious accusations against Ms. Bennett in the *John Doe v. Hamilton College* suit and whether that created an issue concerning Ms. Bennett's credibility.

relevant subjects, including communications Ms. Bennett had concerning him and her allegations against him. *See In re Subpoena to Loeb & Loeb LLP*, 2019 WL 2428704, at *3, 5 (granting motion to compel nonparty to produce "any communication with or about" the defendants and/or the action). Even if there were a high volume of documents (which Ms. Bennett does not allege), this would not negate their relevance. *See US Bank Nat'l Ass'n*, 2012 WL 5395249, at *3 (denying motion to quash subpoena for documents "numbering in the thousands" where the materials requested were "relevant, even if much of it is only marginally so"). Moreover, though the Bennett-Related Subpoenas are not expressly limited by time, they are necessarily time-limited given the nature of the subject matter requested.

*Third*, Ms. Bennett argues that the Bennett-Related Subpoenas should be quashed because the burden on Ms. Bennett to review and produce the requested documents would be significant. *See* ECF No. 89 at 17–18. The Court should reject this argument, as Ms. Bennett has failed to identify the purported burden with any particularity; nor has she established the factual basis for her alleged burden through any evidence. "The party objecting to a discovery request must describe the burden of responding to the request by 'submitting affidavits or offering evidence revealing the nature of the burden.'" *Fritz v. LVNV Funding, LLC*, 587 F. Supp. 3d 1, 4-5 (E.D.N.Y. 2022) (quoting *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014)); *see also Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 262 F.R.D. 293, 300 (S.D.N.Y. 2009) ("A party objecting to a subpoena on the ground of undue burden generally must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request." (quoting 9 James Wm. Moore et al., Moore's Federal Practice ¶ 45.51[4] (3d ed. 2009)); *Exp.-Imp. Bank of Republic of China v. Democratic Republic of Congo*, No. 16-CV-4480 (JMF), 2022 WL 1452523, at *1 (S.D.N.Y. May 9, 2022) (declining to quash subpoena on

basis of undue burden where movant provided "no support for that assertion, such as an affidavit or other evidence"). Here, the record is devoid of evidence describing the nature of the burden to Ms. Bennett, let alone evidence to support a finding that the burden to Ms. Bennett outweighs Governor Cuomo's need to discover the requested materials. To the contrary, materials in the public domain suggest that the Bennett-Related Subpoenas impose a marginal burden on Ms. Bennett. She has frequently referred to the fact that she "retained text messages" and "took contemporaneous notes" to document Governor Cuomo's alleged misconduct. Trzaskoma Decl. ¶¶ 10–11. And the OAG Report describes "voluminous contemporaneous documents" produced by Ms. Bennett, presumably in response to subpoena. OAG Report at 64; *see also, e.g.,* OAG Report at 50 n. 399–400, 51 n. 410–411 (referencing Ms. Bennett's text messages concerning her allegations). It would thus cause Ms. Bennett little disturbance to reproduce such information. Paradoxically, Ms. Bennett argues that the burden of responding to the Bennett-Related Subpoenas is worsened by the fact that she is presently in litigation with Governor Cuomo in a separate action pending in the Southern District of New York. *See* ECF No. 89 at 18. To the contrary, this fact reduces her burden. *See Fritz*, 587 F. Supp. 3d at 5 ("Whether [a] production of documents is unduly burdensome or expensive turns primarily on whether they are kept in an accessible or inaccessible format." (internal quotations and alterations omitted)). Unlike a typical nonparty witness, the Court can presume that Ms. Bennett is already engaged in document collection and preservation, is likely already using a document review platform, and will be reviewing requested information for responsiveness in her own proceeding. There is no additional burden imposed by requesting she produce those materials in the Trooper 1 Action. As such, the Court should compel Ms. Bennett to respond.

**CONCLUSION**

For the foregoing reasons, Governor Cuomo respectfully requests that the Court deny the pending motions to quash and grant Governor Cuomo's cross-motion to compel to permit Governor Cuomo the discovery he seeks from Ms. Bennett and Hamilton College.

Dated: New York, New York
      July 19, 2023

Respectfully submitted,

  */s/ Theresa Trzaskoma*

Theresa Trzaskoma
Allegra Noonan
SHER TREMONTE LLP
90 Broad Street, 23rd Floor
New York, New York 10004
Tel.: (212) 202-2600
Fax: (212) 202-4156
ttrzaskoma@shertremonte.com

Rita Glavin
GLAVIN PLLC
156 West 56th Street, Ste. 2004
New York, NY 10019
Tel: (646) 693-5505
rglavin@glavinpllc.com

*Counsel for former Governor*
*Andrew M. Cuomo*

## APPENDIX OF DEFINED TERMS

| TERM | DEFINITION |
|---|---|
| **AG James or AG** | Attorney General Leticia James |
| **AJC** | New York State Assembly Judiciary Committee |
| **AJC Investigation** | Impeachment investigation conducted by AJC into allegations of sexual harassment by Governor Cuomo |
| **AJC Report** | *Impeachment Investigation Report to Judiciary Committee Chair Charles Lavine and the New York State Assembly Judiciary Committee* (Nov. 22, 2021), available at https://nyassembly.gov/write/upload/postings/2021/pdfs/20211122_99809a.pdf |
| **Complaint or Compl.** | Second Amended Complaint in *Trooper 1 v. New York State Police, Andrew Cuomo, Melissa DeRosa, and Richard Azzopardi*, 22-CV-893 (LDH) (TAM) (E.D.N.Y.), ECF 71 |
| **Chamber or Executive Chamber** | New York State Executive Chamber |
| **EEOC** | United States Equal Employment Opportunity Commission |
| **ESD** | Empire State Development |
| **FRCP** | Federal Rule(s) of Civil Procedure |
| **FRE** | Federal Rule(s) of Evidence |
| **Governor Cuomo** | Former Governor of New York State Andrew M. Cuomo |

| | |
|---|---|
| **JCOPE** | New York State Joint Commission on Public Ethics |
| **NYSP** | New York State Police |
| **OAG** | Office of the New York State Attorney General |
| **OAG Investigation** | Investigation by OAG into allegations of sexual harassment by Governor Cuomo pursuant to New York Executive Law § 63(8) |
| **OAG Report** | *The OAG's Report of Investigation into Allegations of Sexual Harassment by Governor Cuomo* (Aug. 3, 2021), available at https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf |
| **Trooper 1 Action** | *Trooper 1 v. New York State Police, Andrew Cuomo, Melissa DeRosa, and Richard Azzopardi*, 22-CV-893 (LDH) (TAM) (E.D.N.Y.) |