**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------ X
TROOPER 1, : 
 : 
               Plaintiff, :   Case No.: 22-cv-00893 (LDH)(TAM)
 : 
       v. : 
 :   **REPLY TO MOTION TO QUASH**
NEW YORK STATE POLICE, ANDREW : 
CUOMO, MELISSA DEROSA and RICHARD : 
AZZOPARDI, : 
 : 
               Defendants. : 
------------------------------------------------------------ X


**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HER<br>MOTION TO QUASH**


                                  **WIGDOR LLP**

                                  Valdi Licul
                                  John S. Crain

                                  85 Fifth Avenue
                                  New York, NY  10003
                                  Telephone:  (212) 257-6800
                                  Facsimile:   (212) 257-6845
                                  vlicul@wigdorlaw.com
                                  jcrain@wigdorlaw.com


                                  *Counsel for Plaintiff*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

I. STANDING ...............................................................................................1

II. PROPORTIONALITY .............................................................................3

III. RULE 412 .................................................................................................8

CONCLUSION.....................................................................................................10

## **TABLE OF AUTHORITIES**

<u>Cases</u>                                                                                                                                                        <u>Page(s)</u>

Alexander v. New York City Dep't of Educ.,
    339 F.R.D. 372 (S.D.N.Y. 2021) ............................................................................... 4

Consumer Fin. Prot. Bureau v. Integrity Advance, LLC,
    No. 21 Mc 206 (DDC) (TJJ), 2022 WL 2791173 (D. Kan. July 15, 2022) ............... 1

Est. of Ungar v. Palestinian Auth.,
    400 F. Supp. 2d 541 (S.D.N.Y. 2005) ........................................................................ 1

Gibbons v. Food Lion, Inc.,
    No. 98-1197 Civ. 23, 1999 WL 33226474 (M.D. Fla. Feb. 19, 1999) ....................... 9

Holt v. Welch Allyn, Inc.,
    No. 95 Civ. 1135 (RSP) (GJD), 1997 WL 210420 (N.D.N.Y. Apr. 15, 1997) .......... 8

Hughes v. Hartford Life & Accident Ins. Co.,
    507 F. Supp. 3d 384 (D. Conn. 2020) ........................................................................ 3

Hughes v. Twenty-First Century Fox, Inc.,
    327 F.R.D. 55 (S.D.N.Y. 2018) ............................................................................. 8, 9

Macklin v. Mendenhall,
    257 F.R.D. 596 (E.D. Cal. 2009) ............................................................................... 9

Muniu v. Amboy Neighborhood Ctr., Inc.,
    No. 98 Civ. 2211 (FB) (JMA), 2001 WL 370226 (E.D.N.Y. Apr. 11, 2001) ............ 8

Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC,
    No. 17 Civ. 00450, 2018 WL 5636160 (E.D. Tex. Oct. 30, 2018) ............................ 2

Seligson v. Camp Westover,
    1 F.R.D. 733 (S.D.N.Y. 1941) .................................................................................. 2

Shih v. Petal Card, Inc.,
    No. 18 Civ. 5495 (JFK) (BCM), 2021 WL 5279395 (S.D.N.Y. Nov. 12, 2021) ....... 4

United States Sec. & Exch. Comm'n v. Collector's Coffee Inc.,
    338 F.R.D. 309 (S.D.N.Y. 2021) ............................................................................... 4

<u>US Bank Nat. Ass'n v. PHL Variable Ins. Co.</u>,
   No. 12 Civ. 6811 (CM) (JCF), 2012 WL 5395249 (S.D.N.Y. Nov. 5, 2012) .............................. 1

<u>Yutong Jin v. Choi</u>,
   No. 20 Civ. 09129 (MKV), 2021 WL 738843 (S.D.N.Y. Feb. 24, 2021) .................................... 9

<u>Zakrzewska v. New Sch.</u>,
   No. 06 Civ. 5463 (LAK), 2008 WL 126594 (S.D.N.Y. Jan. 7, 2008) ......................................... 9

<u>Rules</u>

Fed. R. Civ. P. 1st ................................................................................................................................ 2

Fed. R. Civ. P.  45 .............................................................................................................................. 2

Fed. R. Evid. 412 ........................................................................................................................... 2, 8

Plaintiff Trooper 1, ("Plaintiff"), by and through her undersigned counsel, Wigdor LLP, hereby submits this reply memorandum of law in further support of her Motion to Quash the non-party subpoenas served by Defendant Andrew Cuomo concerning Charlotte Bennett and Lindsay Boylan.

I.  **STANDING**

Putting aside for the moment whether Trooper 1 has standing to challenge the subpoenas (she does), Cuomo misstates the law of standing as to Boylan. Cuomo quotes US Bank Nat. Ass'n v. PHL Variable Ins. Co., No. 12 Civ. 6811 (CM) (JCF), 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012), for the proposition that "[a] party lacks standing to challenge, on grounds of relevance or burden, a subpoena served on a non-party." But he conveniently ignores the next sentence of the case, which states, "[r]ather, the moving party must assert some right or privilege personal to it, such as an interest in proprietary, confidential information that would be disclosed or an interest in maintaining a privilege that would be breached by disclosure." Id.[1] Here, Boylan plainly has standing to assert an interest in her own "confidential information," including her phone records, records about her employment, and information about her past relationships.

As to Bennett, Cuomo proposes a novel theory: that a litigant can prospectively waive standing to challenge a document subpoena by talking about the contents of the documents to

---

[1] Cuomo does not squarely make an argument to the contrary, but, for clarity, the standing rule applies to a non-party movant like Boylan asserting standing to challenge a subpoena to another non-party, as here. See, e.g., Est. of Ungar v. Palestinian Auth., 400 F. Supp. 2d 541, 554 (S.D.N.Y. 2005), aff'd, 332 F. App'x 643 (2d Cir. 2009) (granting non-party's motion to quash subpoena served on its law firm); Consumer Fin. Prot. Bureau v. Integrity Advance, LLC, No. 21 Mc 206 (DDC) (TJJ), 2022 WL 2791173, at *5 (D. Kan. July 15, 2022) (non-party Respondent Trust had standing to challenge subpoena for bank records, served on non-party banks). In other words, while this is a slightly less common posture for a motion to quash, the same rules of standing apply.

others.  Mem. of Law in Opp'n to Trooper 1's and Charlotte Bennett's Mots. to Quash Bennett-Related Subpoenas and in Supp. of Former Gov. Andrew M. Cuomo's Cross-Mot. to Compel, Dkt. 96 ("Opp'n to Bennett Mot.") at 5.  He has had to go far afield to find a case purporting to support his position, and that case is plainly under-reasoned, non-analogous and unpersuasive.  Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC, No. 17 Civ. 00450, 2018 WL 5636160, at *3 (E.D. Tex. Oct. 30, 2018) (suggesting a defendant might not have standing because they had no "confidentiality" interest, but recognizing all of defendant's arguments anyway and agreeing to modify the subpoena at defendant's request).  Bennett, like Boylan, is plainly a person with a confidentiality interest in the records from her time in college.

Plainly, since both Boylan and Bennett have standing, the Court may grant the relief sought by each movant—to quash the subpoenas.  There is no good reason, therefore, to ignore any of Trooper 1's arguments in favor of quashing.  To do so would be to construe Fed. R. Civ. P. 45 in a crabbed manner, ignoring merits-based arguments because of a non-dispositive technicality, contrary to the Rules' purpose of "secur[ing] the just . . . determination of every action and proceeding."  Fed. R. Civ. P. 1; see Seligson v. Camp Westover, 1 F.R.D. 733, 734 (S.D.N.Y. 1941) ("[The] Rules of Civil Procedure are fashioned to eliminate the old concept of litigation as a battle of wits and to provide the tools whereby litigants may bring before a court or jury all the facts from which the truth may be more easily ascertained and substantial justice done.")

In any case, Trooper 1 has standing pursuant to Fed. R. Evid. 412, which bars the discovery of information about a witness's sex life.  The Rule itself provides that Courts "should presumptively issue protective orders barring discovery" of such evidence.  Rule 412, Advisory Committee Notes to 1994 Amendments.  At a minimum, Cuomo's requests are so expansive as to

raise the specter of witness intimidation, not to mention a threat that this litigation will go far afield from its main issues, snarling deadlines and heaping pointless expense on the parties and the Court. See Hughes v. Hartford Life & Accident Ins. Co., 507 F. Supp. 3d 384, 405 (D. Conn. 2020) (courts have "inherent authority to limit irrelevant or non-proportional discovery" even "where the [objecting] party lacks standing to challenge a subpoena served on a non-party").[2]

## II.     PROPORTIONALITY

In his opposition brief, Cuomo asserts that the huge volume of records he seeks about Boylan (including phone records back to the beginning of time and records about a prior personal relationship) will be relevant to impeaching Boylan if she takes the stand as a witness. Mem. of Law in Further Supp. of Former Gov. Andrew M. Cuomo's Mot. to Compel Lindsey Boylan's Compliance with Subpoena and in Opposition to Lindsey Boylan's and Trooper 1's Mots. to Quash Subpoenas Concerning Lindsey Boylan, Dkt. 99 ("Opp'n to Boylan Mot.") at 8-16. The similarly large number of records he seeks regarding Bennett (about prior sexual misconduct allegations and about her employment) are supposed to establish Bennett's "motive for accusing him of misconduct." Opp'n to Boylan Mot. at 11. He focuses solely on whether these records are relevant and discoverable.[3] But he ignores a crucial point: that the Court can quash (or limit) subpoenas not only for relevance and discoverability but also to preserve proportionality. While Cuomo in his opposition has succeeded in stating his now notorious defense theory—everyone is lying and out to get him—he hardly demonstrates how the huge

---

[2] Such standing might not exist in every case, or else the exception would swallow the rule of standing. But Cuomo's requests are so far ranging and non-proportional to the needs of the case that they call for use of the Court's power to pare down and control discovery procedures.

[3] Trooper 1 has disclosed both Boylan and Bennett as witnesses in her Rule 26 disclosures, and so impeachment discovery is "relevant" in the broadest sense. Whether it is proportional (or otherwise barred by Federal Rules of Evidence) is a different matter.

numbers of records he seeks are proportional to his theory. It is his "burden," in the end, to show that his requests are "proportional to the needs of the case." Alexander v. New York City Dep't of Educ., 339 F.R.D. 372, 374 (S.D.N.Y. 2021) (quashing subpoena, requiring defendant to narrowly tailor his request for "personnel records" it claimed were relevant to "impeachment.").

That is doubly so given that broad impeachment discovery is generally disfavored, even when it can be granted that "impeachment" is relevant to a defense. See United States Sec. & Exch. Comm'n v. Collector's Coffee Inc., 338 F.R.D. 309, 317 (S.D.N.Y. 2021) (explaining that courts must approach impeachment discovery cautiously since "a party's effort to seek impeachment material would justify nearly unlimited discovery with respect to every witness or party in every case, thereby vitiating the proportionality requirement.") (internal citations and quotations omitted); accord Shih v. Petal Card, Inc., No. 18 Civ. 5495 (JFK) (BCM), 2021 WL 5279395, at *6 (S.D.N.Y. Nov. 12, 2021) (reasoning that the "hope" of finding impeachment evidence "is insufficient justification for the discovery sought, which is both broad and deep.") With regards to the mountain of purported impeachment evidence he seeks about Boylan and Bennett, it is difficult to see how the requests are proportional, and Cuomo has done little to demonstrate that they are.

The discovery Cuomo seeks in these subpoenas is two steps removed from Trooper 1's claims. In general, with his non-party discovery, Cuomo does not even purport to be challenging whether Trooper 1 can prove her claims by a preponderance of the evidence. Nor is he seeking evidence about whether he created a hostile work environment for women working in his orbit. And there would be little point to his doing so, since he apologized to Trooper 1 on national TV for his conduct, saying "[t]he trooper also said that in an elevator I touched her back and when I was walking past her in a doorway I touched her stomach. Now I don't recall doing it, but if she

4

said I did it, I believe her." He is trying, instead, to establish an affirmative defense, which he will have the burden of proving: there was a political conspiracy to oust him as Governor. He claims that the current subpoenas are relevant to a part of that affirmative defense theory: Boylan and Bennett participated in the political conspiracy against him, and therefore a jury should not believe their testimony. (There is no allegation or claim that Trooper 1 took part in the imagined conspiracy.) Indeed, he is bending the truth when he claims to be testing statements made in Trooper 1's complaint. Opp'n to Bennett Mot. at 8 ("The materials relate directly to Trooper 1's allegations.") This is not true; he is not directly challenging the allegations. What he is trying to do is build a parallel narrative in opposition.

However, with these subpoenas, Cuomo is going even a step further than trying to establish this affirmative conspiracy-theory defense. Indeed, with regards to Boylan, he already apparently has the evidence he needs to tell the "political" story, which is why he can fill six pages of his brief with knowledge he claims to already possess (though he draws many implausible and paranoid inferences from those details). Opp'n to Boylan Mot. at 9-14. Likewise, with Bennett, Cuomo claims to already have proof that Bennett lied about being sexually assaulted while in college (though when he worked with Bennett and was questioned by investigators, he said repeatedly that he believed that she was assaulted and took her allegations extremely seriously). Opp'n to Bennet Mot. at 11-12. Cuomo is taking a step to a third level with the instant subpoenas—as he himself says, he is attempting to establish not only that Boylan and Bennett were part of a political plot against him (the second level), but also that these women had various additional personal motivations and predilections impelling them to join such a plot (the third level). Truly, this is far afield, and Cuomo has a heavy burden to prove that

this attenuated information is proportional to the needs of the case, especially given that it is (on Cuomo's repeated admission) cumulative of information he claims to already have.

Cuomo has another fatal problem in establishing proportionality. It is not even fully clear that Cuomo denies the substance of Boylan's allegations, or, if he does, the extent to which he does. Repeatedly and publicly, Cuomo has admitted to the conduct at issue. In his resignation speech, Cuomo said: "Now, don't get me wrong, this is not to say there are not 11 women who I truly offended. There are. And for that I deeply, deeply apologize." He added "I have been too familiar with people. My sense of humor can be insensitive and off-putting. I do hug and kiss people casually, women and men. I have done it all my life. . . . I've never crossed the line with anyone, but I didn't realize the extent to which the line has been redrawn. . . . No excuses." Later, he thanked all of his victims for coming forward and took responsibility for his conduct: "It's not easy to step forward, but you did an important service, and you taught me and you taught others an important lesson: personal boundaries must be expanded and must be protected. I accept full responsibility." And, of course, Cuomo practically fell over himself in his eagerness to tell the OAG investigators how badly he felt that Bennett had been sexually assaulted while in college. He is only changing his story now to harass and badger witnesses.

It is in the Court's discretion to decide proportionality, and it need not ignore plain-as-day admissions of these kinds. If Cuomo has admitted to the conduct described in the report and said under oath that he believes that Bennett was sexually assaulted, then it is not clear what the impeachment theory behind these subpoenas is. Likewise, he admitted in his resignation speech that he credits much of what Boylan has said, he just thinks she misinterpreted or exaggerated, or that he did something but "never crossed the line." Then, which allegation is he trying to impeach, exactly? On which occasion does he believe he did something wrong, but Boylan just

6

misinterpreted? On which occasion does he believe Boylan really fabricated something? On which occasion does he believe she said something half true, but exaggerated? As to Bennett, Cuomo testified under oath that he believed she was sexually assaulted. Is there some separate sexual assault that he intends to impeach her about, apart from the one he repeatedly said that he believed happened? These are not matters in the complaint, and they are not matters the Governor ever attempts to explain.

These are the extremely obvious questions Cuomo is avoiding, and his inability to answer them is the plainest demonstration the Court needs that this is all just about harassing, burdening and discouraging witnesses from testifying against him, the tactics of a man universally known amongst his staff as "vindictive" and "intimidating," as three members of his personal service detail have now testified in this matter.

In sum, Cuomo's' arguments about relevance are a red herring. It is not good enough to have some tenuous theory about how some small subset of a mountain of evidence might be relevant to a conspiracy theory two steps removed from the core issues in a case. Any litigant can invent a theory like that. It is little different than a litigant asking for ten years of the opposing party's tax returns to verify whether they are accurate, to set up impeachment by prior fraud, or any other eccentric impeachment theory. These are tenuously relevant, but hardly ever proportional to the needs of the case. Likewise, the point here is that Cuomo's demands are wildly out of proportion to his purported needs. By highlighting all of the evidence he purports to have already obtained on this issue, he only reinforces that point. As it stands, and as he claims, he already has everything he needs to pursue his conspiracy theory.

### III. RULE 412

The weight of authority is that Fed. R. Evid. 412 is not only an admissibility rule but a rule governing discovery, exactly as its Committee Advisory Notes state. The little reasoned order on reconsideration in Muniu v. Amboy Neighborhood Ctr., Inc., No. 98 Civ. 2211 (FB) (JMA), 2001 WL 370226, at *1 (E.D.N.Y. Apr. 11, 2001), cited by Defendant, does not change that. And Defendant's case Hughes v. Twenty-First Century Fox, Inc., 327 F.R.D. 55, 58 (S.D.N.Y. 2018) in fact held explicitly that Rule 412 should usually operate to bar discovery, and the court there did block discovery. It is worth noting that the Defendant there managed to proffer a theory of relevance. They argued that Plaintiff "was a serial seductress who engaged in a pattern of pursuing relationships with men," undercutting her allegations that she had been the victim of a coerced sexual relationship. Id., 327 F.R.D. at 58. Not only did the Court use Rule 412 to bar the discovery, it also engaged in a balancing of the potential prejudice of the evidence as against its probative value under Rule 403. See id. ("The prejudice arising from Hughes' prior sexual history with other men would outweigh what little relevance it may bring to this case.") The court's approach there firmly demonstrates that the Court here may exercise its discretion to bar abusive discovery into a witness's sexual history, as Cuomo is now seeking discovery into both Boylan's and Bennett's sexual histories. Hughes shows that it is decidedly untrue that the materials become discoverable automatically upon the stating of any threadbare theory of relevance, as Defendant claims. Opp'n to Boylan Mot. at 20.

Likewise, in all of the cases cited in his Opposition to Bennett's Motion to Quash, the proponent of the subpoena made a much more specific proffer aimed directly at challenging some element of a plaintiff's prima facie case. Holt v. Welch Allyn, Inc., No. 95 Civ. 1135 (RSP) (GJD), 1997 WL 210420, at *8 (N.D.N.Y. Apr. 15, 1997) (witness affirmed that photos of

plaintiff with male exotic dancer were circulated in workplace, and plaintiff was not offended, undercutting the welcomeness element of sexual harassment claim); Gibbons v. Food Lion, Inc., No. 98-1197 Civ. 23, 1999 WL 33226474, at *3 (M.D. Fla. Feb. 19, 1999) (defendant could seek evidence of plaintiff's sexual relationships with employees, as this went directly to the welcomeness element of her claim, but providing the caveat that "it does not appear that Defendant intends to inquire into Plaintiff's sexual relationships with persons other than those who are/were employees of Defendant."); Macklin v. Mendenhall, 257 F.R.D. 596, 606 (E.D. Cal. 2009) (limiting questioning only to events that happened in the workplace); Yutong Jin v. Choi, No. 20 Civ. 09129 (MKV), 2021 WL 738843, at *2 (S.D.N.Y. Feb. 24, 2021) (plaintiff put her medical records at issue by bringing claims of "intentional and negligent infliction of emotional distress," i.e. claims where a substantive element is emotional distress, and that element could be disputed using medical records); Zakrzewska v. New Sch., No. 06 Civ. 5463 (LAK), 2008 WL 126594, at *2 (S.D.N.Y. Jan. 7, 2008) (evidence sought would be used to attack emotional distress allegations of plaintiff).

     In sum, it was not nearly good enough in Hughes that Defendants had formulated a theory of how the evidence would directly dispute the Plaintiff's claims.  But Cuomo's theory of relevance is far weaker than even that.  This is not evidence directly relevant to his defense, it is evidence he merely hopes will turn up something relevant to impeaching the credibility of a witness.  It is a fishing expedition into sexual histories, on the vague hope of supporting a conspiracy theory that is contradicted by Cuomo's televised admissions, his repeated statements that he believes his victims, and his statement under oath that he takes seriously that Bennett is a victim of sexual assault.  It is properly excluded from discovery.

## **CONCLUSION**

For these reasons, Plaintiff's Motion to Quash should be granted in its entirety.

Dated: August 9, 2023
       New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
    Valdi Licul
    John S. Crain

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com

*Counsel for Plaintiff*