

August 21, 2023

The Honorable Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

   Re: <u>Trooper 1 v. Cuomo, *et al.*</u>; Case No. 22-cv-00893 (LDH) (TAM)

Dear Judge Merkl,

  We represent Plaintiff Trooper 1 in this employment discrimination case against the New York State Police ("NYSP"), Andrew Cuomo ("Cuomo"), Melissa DeRosa ("DeRosa") and Richard Azzopardi ("Azzopardi"). We submit this joint letter in anticipation of Trooper 1's motion for a protective order precluding Cuomo from engaging in non-party discovery until he has complied with his discovery obligations, including sitting for his own deposition.

## **TROOPER 1'S POSITION**

  Trooper 1 filed this action because Cuomo sexually harassed her while she was assigned to his personal protective detail as Governor of New York, including running his finger down her back and across her bra clasp, sliding his hand along the area between Trooper 1's breasts and vagina, and talking to her about sex. He also sexually harassed numerous other women in similar ways. Cuomo understands the evidence of his sexual misconduct is both overwhelming and devastating. And he knows that a jury "<u>must examine</u> the totality of the circumstances, including evidence of sexual harassment [Cuomo] directed at employees other than [Trooper 1]." <u>Perry v. Ethan Allen, Inc.</u>, 115 F.3d 143, 150-51 (2d Cir. 1997) (emphasis added).

  Cornered and with nowhere to go, Cuomo has decided to lash out at all potential adverse witnesses. For instance,

- Cuomo threatened to disclose the identity of Kaitlin (one of Cuomo's victims who has requested that her identity remain private), in violation of this Court's Protective Order, if Kaitlin opposed Cuomo's subpoena.[1]
- Cuomo insisted that another victim, Lindsey Boylan, "publicly demand that Trooper 1 withdraw all allegations in the Complaint concerning Ms. Boylan," or face a rash of subpoenas seeking Boylan's personal information, including private sexual history.

---

[1]  Kaitlin has already produced to Cuomo all documents she provided to the Office of the Attorney General ("OAG") as part of its investigation into Cuomo's sexual harassment of women while he was Governor.



- Cuomo served subpoenas seeking details about the prior sexual abuse suffered by Charlotte Bennett, another of Cuomo's victims. Cuomo now claims that Ms. Bennett has a history of making false claims of sexual assault. In fact, Cuomo has already admitted publicly that Ms. Bennett is a sex abuse victim and has apologized for further traumatizing her.[2]
- Cuomo has falsely accused Diane Parrotta, a retired trooper who served honorably protecting Cuomo while he was Governor, of perjury simply because she corroborated Trooper 1's account of Cuomo's sexual harassment. Cuomo has now served subpoenas seeking the phone records of Parrotta and members of Parrotta's family, including her daughter, in a flailing attempt to find any evidence to support his conspiracy defense.[3]
- A recent New York Times report revealed that Cuomo's sister, Madeline Cuomo, has been coordinating social media attacks on Cuomo's accusers. Internal communications show that Cuomo funneled instructions through Ms. Cuomo urging members of a group identified as "We Decide New York" to publicly disparage his victims. According to Ms. Cuomo, her brother's accusers need to be "frightened into shutting up right now." As part of this smear campaign, Ms. Cuomo urged others to post provocative pictures of Bennett and gave instructions to spread false rumors that Trooper 1 "needs the money" and "her husband's out of work." (Trooper 1 is not, and has never been, married.)[4]

The raw number of subpoenas served by Cuomo is astounding and speaks to his intent to retaliate against witnesses and snarl proceedings. Before August 2nd of this year, he had served 30 subpoenas. Since then, he has served 18 more subpoenas, including the subpoenas on Parrotta's family. This includes over 20 depositions, without approval of either Plaintiff or the Court, in violation of Fed. R. Civ. P. 30(a)(2)(A)(i). This is not the stuff of proper discovery. Rather, it is a concerted campaign to intimidate witnesses. And, unlike Cuomo, these witnesses do not have a campaign war chest to hire lawyers to defend them against these abuses. Nor are they being indemnified at taxpayer expense. See "Cuomo's Legal Bills Hit $6.6 Million," https://www.politico.com/news/2023/07/17/cuomos-legal-bills-hit-6-6-million-00106594 Thankfully, this Court has the power to stem Cuomo's abuses.

Fed. R. Civ. P. 26(c) empowers a court to issue an order protecting any party or person "from annoyance, embarrassment, harassment, oppression, or undue burden or expense."

---

[2] See Gov. Andrew Cuomo's Response to AG's Sexual Harassment Report, August 3, 2021, available at https://www.nbcnewyork.com/news/read-gov-andrew-cuomos-legal-response-to-ags-sexual-harassment-report/3196932/ ("Charlotte, I want you to know that I am truly sorry and deeply sorry. I brought my personal experience into the workplace and I shouldn't have done that. I was trying to help—obviously I didn't.")

[3] To relieve the burden on Parrotta, Trooper 1 has offered to produce phone records showing her communications with Parrotta and Parrotta's family. Cuomo has refused, making clear that he is not interested in legitimate discovery. He wants to make these proceedings as painful for Parrotta as possible.

[4] These are just the latest examples of Cuomo's attempts to bully his victims into submission. He has filed ethics charges against the investigators who unearthed his pattern of sexual harassment and threatened to pursue criminal charges against his victims.



Moreover, a court has "inherent authority to limit irrelevant or non-proportional discovery." Hughes v. Hartford Life & Accident Ins. Co., 507 F. Supp. 3d 384, 405 (D. Conn. 2020). Here, a protective order is necessary to protect Trooper 1's right to a fair trial, including her right to present evidence of the workplace environment created by Cuomo and his persistent "pattern" of harassing women in his orbit, Eckhart v. Fox News Network, LLC, 20 Civ. 5593 (RA), 2021 WL 4124616, at *26 (S.D.N.Y. Sept. 9, 2021), without Cuomo's persistent attempt to harass and intimidate witnesses.

Accordingly, we respectfully request that the Court issue a protective order (1) precluding Cuomo from engaging in non-party discovery until he has complied with his own discovery obligations, including sitting for his deposition; (2) requiring Cuomo to first seek information from parties before burdening non-parties; (3) requiring Cuomo to notify non-parties of any subpoenas he intends to serve seeking information about them so that they can object, if necessary; (4) setting a final end date for the service of subpoenas, with Cuomo required to show the Court good cause for any subpoenas served thereafter. These steps strike a careful balance to allow Cuomo to gather information while protecting non-parties from his abuses.

## GOVERNOR CUOMO'S POSITION

Trooper 1's already-weak case is unraveling. Her request for a broad "protective order" and her repeated misrepresentation that Governor Cuomo refuses to sit for a deposition (he did not refuse, he offered a date) are efforts to prevent Governor Cuomo from continuing to resist the allegations in the Complaint and to avoid the truth coming out. Trooper 1 has no standing or basis to object to Governor Cuomo's subpoenas, so she now pivots to asking for a Court-ordered moratorium on all Governor Cuomo's nonparty discovery,[5] including of many witnesses who Trooper 1 identifies in her allegations and disclosures. Trooper 1's request is improper. The Court should reject it.

When Trooper 1 filed her hydra-headed lawsuit, she knew Governor Cuomo would be entitled to take discovery on her allegations. Governor Cuomo tried to short-circuit the onerous discovery process by obtaining information from sources that had already collected discovery on the very same issues—the OAG and AJC. Trooper 1's counsel sat silently in the courtroom gallery as that discovery dispute went on, never acknowledging that obtaining materials from the OAG and AJC would relieve a significant discovery burden from her too. Nor did Trooper 1 refute the OAG's and AJC's argument that the materials were irrelevant to her claims—despite her express intent to rely on them. The reality is, Trooper 1 did not want the investigative materials produced; rather, she, and others, hoped (and still hope) to keep Governor Cuomo from uncovering the truth about the allegations in her Complaint.

This Court instructed that Governor Cuomo has "***the full range of civil discovery tools available to him in connection with the Trooper 1 litigation, and he may seek to depose relevant***

---

[5]The other relief Trooper 1 seeks is contrary to the Federal Rules, which do not require notice to nonparties and do not dictate the order in which a party must take discovery. Requiring party discovery to go first is also inappropriate in this case because Trooper 1 does not have documents or information related to the other complainants.

**WIGDOR.**

*anticipated witnesses and subpoena them for documents*." *See* OAG ECF No. 37 (emphasis added). Governor Cuomo is doing just that. And it should be no surprise to anyone, least of all Trooper 1 who crafted her sprawling pleading, that discovery resulted in many subpoenas. While it is true that we have noticed subpoenas to 36 witnesses, the vast majority are either the other complainants referenced in Trooper 1's lawsuit or witnesses that Trooper 1 identified.[6] The noticed discovery is entirely reasonable considering the breathtaking scope of Trooper 1's lawsuit, which involves ten nonparty complainants across multiple state agencies spanning nearly a decade. Even Trooper 1's own allegations occurred over several years and involve—by her own account—dozens of witnesses.[7]

Trooper 1's demand for a moratorium on Governor Cuomo's nonparty discovery comes as the focus shifts to Trooper 1. The current dispute started with our noticing subpoenas for phone records: one for Trooper 1's phone, the other for phones associated with Diane Parrotta. During her August 14 deposition, Parrotta admitted that in the months before she testified, ▓▓▓▓▓▓ ▓▓▓▓▓▓ When that failed, Parrotta ▓▓▓▓▓▓ to figure out how to be helpful to her friend. Not knowing exactly what she was supposed to have witnessed, she went with the big lie at her deposition. Parrotta, who makes only a limited appearance in Trooper 1's disclosures, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ we know that Trooper 1 and Parrotta communicated on at least five occasions in May 2023, when Parrotta knew she was a witness to this lawsuit and that her communications were discoverable. Texts confirm that Parrotta contacted Trooper 1 regarding her testimony. And when Trooper 1 ▓▓▓▓▓▓▓▓▓, Parrotta used her husband's and daughters' phones to call and text Trooper 1. ***Parrotta did not turn over a single document because*** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓[8]

During a meet and confer on the phone records subpoenas on Monday, August 21, Trooper 1 argued we should get the information through her. That is unreasonable. Trooper 1 already had an obligation to produce those records and did not. Instead, Trooper 1 turned over records of only a single call with Parrotta. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓. We also know that Parrotta used her family members' phones to communicate with Trooper 1 because the records show she did, and ▓▓▓▓▓▓▓▓▓▓▓▓. Under these circumstances, we should not have to rely on Trooper 1, who already failed to disclose relevant communications, or Parrotta,

---

[6] Only a handful fall outside these categories, including Karen Hinton and Alessandra Biaggi. We know from Ana Liss-Jackson that she was not sexually harassed by Governor Cuomo but felt compelled to come forward against him anyway. She did so because ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Liss-Jackson Tr. at 297:14–17. Governor Cuomo is entitled to take discovery on the dynamic that led to Liss-Jackson being identified by the press and OAG as a victim of sexual harassment, including into how Hinton and Biaggi stoked #MeToo impulses for their own personal and political purposes.

[7] In fact, our discovery is restrained considering that OAG served over 70 subpoenas (which were even broader than ours), interviewed 179 witnesses, and took testimony from 41 of them.

[8] Trooper 1 attempts to bolster Parrotta's credibility by referring to her service in NYSP. But the deposition revealed Parrotta's contempt for the legal process and the oath she took, which undermines her credibility (and the aptness of referring to her as "honorable"). ▓▓▓▓▓▓▓▓▓▓▓▓



who ▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Apart from needing the phone records to determine (i) whether Parrotta was in fact ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ and (ii) what communications Trooper 1 and Parrotta had leading up to (or even after) Parrotta's deposition,[9] we also need the phone records to (iii) determine who Trooper 1 and Parrotta spoke with during the OAG investigation. Parrotta made no effort to hide her contempt for Governor Cuomo[10] and ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇[11] Governor Cuomo has the right to know whether Trooper 1 was colluding with Parrotta and other troopers, and when.

Trooper 1 also objected this week to a subpoena we noticed for Stephen Nevins, former head of the PSU who Trooper 1 identifies as a witness to her allegations. Trooper 1 has no basis to object to a subpoena to someone she admits is a witness. Moreover, we believe Nevins has information concerning whether Trooper 1, Parrotta, or other troopers were motivated to falsely accuse Governor Cuomo. Notably, on May 17, 2021—in the midst of the OAG investigation and ***two days before Trooper 1 testified to OAG investigators***—Nevins emailed Parrotta an article about Governor Cuomo's $5 million book deal, noting with obvious delight that "***[Cuomo]'ll get the crap kicked out him [t]his week. Good Stuff.***" Parrotta flipped the email immediately to Trooper 1 and Fabricio Plaskocinski. This was not a coincidence. We are entitled to get documents from Nevins and take his deposition.

This Court should put an end to Trooper 1's so-far unchecked obstruction. Discovery into Trooper 1's allegations, including her own nonparty witnesses, should proceed forthwith and Governor Cuomo should be permitted to serve and enforce his subpoenas for phone records and his subpoena to Nevins.[12]

\* \* \*

Respectfully Submitted,

Valdi Licul

---

[9] Trooper 1's objection to the subpoena for the Parrotta-related phone records is particularly baseless considering that Parrotta claimed ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Parrotta Rough Tr. 198:14–16.

[10] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Parrotta Rough Tr. 87:17–20; 122:8.

[11] Citations to quoted portions of Parrotta's testimony in the order referred to in the body of the letter are: Parrotta Rough Tr. 25:15–17; 24:14–15; 26:20–22; 16:20–24.

[12] We recognize much nonparty discovery is at an impasse. Indeed, at least twelve nonparty subpoenas have not yet been served and many subpoenas have not been enforced because of unresolved objections and pending motions, the resolution of which may significantly impact the scope of discovery. Though imposing a flat-out ban on Governor Cuomo's discovery rights would be improper and unprecedented, if the Court were inclined to pause discovery, it should stay discovery altogether until the pending motions are resolved and important issues of scope are settled.