UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TROOPER 1,

               Plaintiff,

   -against-

NEW YORK STATE POLICE, ANDREW
CUOMO, MELISSA DEROSA, and RICHARD
AZZOPARDI,

              Defendants.

Index No. 22 Civ. 893 (LDH) (TAM)


**NON-PARTY KAITLIN'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT CUOMO'S MOTION TO COMPEL AND
IN SUPPORT OF CROSS-MOTION TO QUASH OR MODIFY THE SUBPOENAS**


Emery Celli Brinckerhoff Abady Ward & Maazel LLP
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000

<u>TABLE OF CONTENTS</u>

<u>PAGE NO.</u>

TABLE OF AUTHORITIES ...................................................................................................ii-iii

CUOMO IS WEAPONINIZING THE SUBPOENA POWER ........................................................1

FACTS .......................................................................................................................................2

ARGUMENT ............................................................................................................................8

I.     THE COURT SHOULD PROTECT KAITLIN FROM HAVING TO SEARCH
FOR DOCUMENTS BEYOND THE OAG FILE ALREADY PRODUCED...................9

     A.    Cuomo Has Not Established Relevance or Proportionality.....................................9

     B.    The Burden of Any Further Document Searches Would Be Significant...............11

II.    THE VERIZONA SUBPOENA IS DISPROPORTIONATE AND SHOULD
BE QUASHED .............................................................................................................12

     A.    Kaitlin Has Standing to Quash the Verizon Subpoena ..........................................12

     B.    Cuomo Cannot Show Relevance of 3.5 Years of Phone Records .........................12

III.   THE COURT SHOULD PROTECT KAITLIN FROM AN UNDULY
BURDENSOME DEPOSITION ...................................................................................13

     A.    The Subpoena Must Be Quashed Because It Lacks the Required
Witness Fee..........................................................................................................14

     B.    Any Deposition Would Be Unduly Burdensome and Disproportionate...............14

     C.    At Minimum, the Deposition Should be Limited to Four Hours on Zoom ...........17

IV.   CUOMO MUST BE SANCTIONED AND ATTORNEYS' FEES AWARDED ...........19

CONCLUSION.......................................................................................................................20

TABLE OF AUTHORITIES

**Cases**

*Ademiluyi v. Phillips*,
    No. 14 Civ. 00507, 2014 WL 7012493 (D. Nev. Dec. 12, 2014) .................................... 13

*Alcon Vision, LLC v. Allied Vision Grp., Inc.*,
    No. 19 Misc. 384, 2019 WL 4242040 (S.D.N.Y. Sept. 6, 2019).................................... 11

*Breaking Media, Inc. v. Jowers*,
    No. 21 Misc. 194, 2021 WL 1299108 (S.D.N.Y. Apr. 7, 2021)................................. 9, 19

*Bucher v. Richardson Hosp. Auth.*,
    160 F.R.D. 88 (N.D. Tex. 1994) .............................................................................. 18, 19

*Cuomo v. N.Y. State Assembly Judiciary Comm.*,
    No. 22-MC-3027(LDH)(TAM), 2023 WL 4714097 (E.D.N.Y. July 21, 2023)... 2, 3, 9, 11

*Fappiano v. City of New York*,
    640 F. App'x 115 (2d Cir. 2016) ................................................................................... 15

*Garcia v. Benjamin Grp. Enter. Inc.*,
    800 F. Supp. 2d 399, 404 (E.D.N.Y. 2011) ................................................................... 17

*Henry v. Morgan's Hotel Grp., Inc.*,
    No. 15 Civ. 1789, 2016 WL 303114 (S.D.N.Y. Jan. 25, 2016)................................. 9, 11

*In re Subpoena Issued to Dennis Friedman*,
    350 F.3d 65 (2d Cir. 2003).............................................................................................. 15

*Juliao v. Charles Rutenberg Realty, Inc.*,
    No. 14 Civ. 0808, 2018 WL 5020167 (E.D.N.Y. July 23, 2018) .................................... 14

*Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*,
    197 F.3d 922 (8th Cir. 1999) ......................................................................................... 15

*Nunez v. City of New York*,
    No. 11 Civ. 05845 (S.D.N.Y. Feb. 18, 2014) ................................................................ 17

*Odom v. Roberts*,
    337 F.R.D. 359 (N.D. Fla. 2020) ................................................................................... 17

*PC-41 DOE v. Poly Prep Country Day Sch.*,
    No. 20 Civ. 3628, 2022 WL 420619 (E.D.N.Y. Jan. 20, 2022)...................................... 19

*Powell, et al. v. Allied Universal Security Serv., et al.*,
    17 Civ. 6133 (E.D.N.Y. Sept. 26, 2018)......................................................................... 19

*Riley v. California*,
573 U.S. 373 (2014)........................................................................................... 12

*Saint-Jean v. Emigrant Mortg. Co.*,
No. 11 Civ. 2122, 2015 WL 13735434 (E.D.N.Y. Oct. 7, 2015) ...................................... 20

*Seattle Times Co. v. Rhinehart*,
467 U.S. 20 (1984)............................................................................................. 14

*Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*,
No. 12 Civ. 6383, 2017 WL 1133349 (E.D.N.Y. Mar. 24, 2017) .................................... 13

*Solow v. Conseco, Inc.*,
No. 06 Civ. 5988, 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008)............................... 12, 13

*Wallace v. Wayne Cnty.*,
602 F. App'x 223 (6th Cir. 2015) ................................................................... 17

*Warnke v. CVS Corp.*,
265 F.R.D. 64 (E.D.N.Y. 2010) ..................................................................... 12

**Rules**

Fed. R. Civ. P. 26................................................................................................... 9

Fed. R. Civ. P. 30........................................................................................... 18, 21

Fed. R. Civ. P. 45........................................................................................... 10, 22

## CUOMO IS WEAPONINIZING THE SUBPOENA POWER

Non-party witness Kaitlin does not know Plaintiff Trooper 1, has never communicated with her, and did not even work for Defendant Cuomo at the same time as her. She is mentioned in the Complaint in this case only because the Office of the Attorney General ("OAG") concluded Cuomo sexually harassed her, and many other women. OAG Report at 143, 145-46.[1]

In July, this Court warned Cuomo that this case is not as platform for him to "test" or re-litigate the OAG investigation. But Cuomo has continued to blatantly weaponize the subpoena power to attack Kaitlin and the other women whom he blames for his fall from power.

In defiance of the Court's order, the Federal Rules of Civil Procedure, and the law, he has issued a volley of overbroad subpoenas to the OAG witnesses. He has refused to conduct discovery the way that is standard in this District, including by refusing to use meet-and-confers to narrow the scope of his subpoenas. He does not want discovery: he wants revenge.

Because New York taxpayers are paying Cuomo's legal fees (over $6.6 million and counting),[2] Cuomo is unchecked by the cost concerns that motivate regular litigants to conduct discovery within the bounds of the law.

This Court needs to step in and stop his retaliatory tactics now. Cuomo's motion to compel Kaitlin should be denied and the Court should issue an order protecting Kaitlin from any more of Cuomo's discovery abuses. Kaitlin has already produced to Cuomo all the documents she gave the OAG; Cuomo cannot even articulate what other documents she could possibly have that are relevant and proportionate to the *Trooper 1* case. The Court should quash the patently

---

[1] Office the of the Attorney General, Report of Investigation into Allegations of Sexual Harassment by Governor Andrew M. Cuomo (Aug. 3, 2021) ("OAG Report"), https://ag.ny.gov/sites/default/files/2021.08.03_nyag_-_investigative_report.pdf.
[2] *See* Bill Mahoney, *Cuomo's Legal Bills Hit $6.6 Million*, Politico (July 17, 2023), https://www.politico.com/news/2023/07/17/cuomos-legal-bills-hit-6-6-million-00106594.

disproportionate subpoena Cuomo served on Verizon for 3.5 years of Kaitlin's cellphone records. Cuomo's deposition subpoena is invalid because he did not serve the required witness fee and, in any event, he should not be allowed to re-traumatize Kaitlin when he already has her OAG deposition and her involvement in the *Trooper 1* case is minimal (at best). Finally, the Court must sanction Cuomo for these burdensome subpoenas which necessitated this motion practice, by ordering him to pay Kaitlin's legal fees.

**FACTS**

***Kaitlin Knows Nothing About Trooper 1***

Kaitlin is not a party to this case or any case. She does not know Trooper 1, has never communicated with her, and did not even work for Cuomo at the same time as her. The only connection Kaitlin has to this case is that she, along with many others, were witnesses in the OAG investigation and a few paragraphs of the Amended Complaint summarize the OAG's findings about her. *See* ECF No. 7 ¶¶ 131-39.

***This Court Has Already Ruled Cuomo Cannot Use this Case to "Test the Investigations"***

Back in February 2023, this Court warned Cuomo that "it is not proportional to the needs of the case" to "subpoena basically sought every document reviewed, generated, obtained, or communicated during the course of the [OAG] investigation." *Cuomo v. N.Y. State Assembly Judiciary Comm.*, No. 22-MC-3027 (E.D.N.Y), ECF No. 24 at 110/23-111/4 ("Feb. 7 Tr."); *see id.* at 30/22-31/11 ("[E]very single email with [OAG] counsel for every single witness is beyond the pale."); 95/10-22 ("You have to actually conduct discovery relevant and proportional to this case.").

In July, this Court quashed Cuomo's subpoenas on the OAG and Assembly Judiciary Committee, deeming them overbroad and rejecting Cuomo's claim that he was entitled to use this case to "test the investigations." This Court held:

> Given the narrow scope of the actual claims in the *Trooper 1* case, as compared to the much broader OAG and AJC Investigations, former Governor Cuomo appears to be attempting to use the civil discovery tools available to him in *Trooper 1* to test 'the independent and exhaustive nature of the OAG Report' and the AJC Investigation. Movant's claim that he needs the documents to test the investigations is unavailing. Whether the investigations were 'independent and exhaustive' is not a question that the *Trooper 1* jury will need to decide.

*Cuomo v. N.Y. State Assembly Judiciary Comm.*, No. 22-MC-3027(LDH)(TAM), 2023 WL 4714097, at *14-15 (E.D.N.Y. July 21, 2023).[3]

### *Cuomo Served Disproportionate, Burdensome Subpoenas on Kaitlin*

In defiance of the Court's rulings, Cuomo has persisted in serving a plethora of disproportionate and unduly burdensome subpoenas on Kaitlin and other OAG witnesses. *See* ECF No. 142-2 (documents subpoena); ECF No. 142-3 (deposition subpoena).

Cuomo's documents subpoena contains the same defects as the overly broad OAG subpoena the Court already quashed. Among other things, it 1) demanded production of "all" documents; 2) demanded documents far beyond the allegations in the *Trooper 1* case, such as "[a]ll documents or communications concerning [Kaitlin's] personal interactions with Governor Cuomo;" 3) sought documents which were publicly available or otherwise already in Defendant Cuomo's possession; and 4) included an instruction (# 2) which purported to require Kaitlin to respond to an interrogatory, beyond the scope of Rule 45. *See* ECF No. 142-4 (responses and objections to subpoena).

### *Kaitlin Produced All the OAG Documents*

Nevertheless, Kaitlin produced to Cuomo <u>all the documents</u> she had previously produced to the OAG investigators. ECF No. 142 (Glavin Decl.) ¶ 12.

---

[3] Unless otherwise noted, all citations in this brief have been "cleaned up."

Cuomo insists this is insufficient but cannot articulate what other documents Kaitlin may have that could possibly be relevant and proportionate to this case.

**Cuomo Refused to Narrow the Subpoena**

Over the course of at least five meet-and-confers, we pressed Cuomo's lawyers to identify what other documents Kaitlin might have that had any relevance to this case. Salzman Decl. ¶¶ 5, 6, 9, 10, 11. Cuomo's lawyers refused to do so, insisting repeatedly that we comply with the subpoena "as drafted" and refusing to make any efforts to narrow it whatsoever. *Id.* ¶ 6.

For example, during a meet-and-confer on May 18, we asked Cuomo's lawyers to identify any other relevant documents that they believed Kaitlin might have, beyond the documents she produced to the OAG. *Id.* ¶ 5. They responded by sending us a Court transcript, which made clear they were seeking materials provided to the OAG investigation. Feb. 7 Tr. at 7/21-24; 92/21-93/5. Kaitlin has already produced all such documents. ECF No. 142 ¶ 12.

At the end of the May 18 meet-and-confer, Cuomo's lawyers agreed to speak with their team about whether the OAG documents would satisfy the subpoena or whether there were any other documents they could identify with some specificity to guide our search. Salzman Decl. ¶ 5.

Three weeks went by in which we heard nothing. On June 9, during our second meet and confer, Cuomo's lawyers refused to identify any additional documents Kaitlin might have and insisted that we comply with the subpoena "as drafted," without explaining what that meant. *Id.* ¶ 6.

We repeatedly explained to Cuomo that, beyond the OAG documents, we did not know what documents they wanted from Kaitlin and it was unduly burdensome to insist she trawl through her devices and communications, without any guidance from them such as sender

4

names, a date range, or a subject matter that was relevant to and proportionate to the needs of the *Trooper 1* case. *See* ECF Nos. 142-5; 142-9. Cuomo repeatedly refused to provide any guidance to narrow the subpoena, making only unhelpful arguments such as "[Kaitlin] did communicate with others about allegations against Governor Cuomo (both her own allegations and the allegations of others). Your client should turn over <u>any additional materials along these lines</u>." ECF No. 142-8 at 1 (emphasis added).

On August 8, Cuomo gave us a list of proposed <u>82 search terms</u> (some with Boolean expanders), including such commonplace names as "Mark" and "Emily," and frequently used words such as "Summer" and "Media." ECF No. 142-10 at 1. This list would have been a patently overbroad ESI protocol for <u>a plaintiff who had filed claims</u>; yet Cuomo asserted it was reasonable to demand that a <u>non-party with tangential involvement (at best)</u> run all these terms through all her accounts and devices, without any sender name or date range limitations, then review all of the "hits" generated, in order to identify and produce additional "communications about Governor Cuomo"—a category of documents which is facially disproportionate to the needs of this case. *Id.* at 2.

On August 11, we met and conferred again with Cuomo's lawyers. Salzman Decl. ¶ 10. We explained that the so-called search terms were clearly unduly burdensome and pressed them again to identify what other documents they really needed from Kaitlin. *Id.* For the first time in our many meet-and-confers, Cuomo's lawyers said what they were really looking for were any communications between Kaitlin and other complainants from the OAG report, which occurred after Kaitlin produced documents to the OAG in May 2021. *Id.* Cuomo's lawyers said they did not want communications that did not discuss the substance of Kaitlin's or other women's allegations. *Id.* For example, Cuomo's lawyers said they did not need communications Kaitlin

had exchanged with her close friends and family who contacted her after the OAG report was released to see how she was coping. *Id.*

On August 17, in another meet-and-confer, Cuomo's lawyers again emphasized that what they really wanted were communications between Kaitlin and the other OAG witnesses. *Id.* ¶ 11.

Later that same day, Cuomo's lawyers memorialized this narrowing of the subpoena in an email to us, stating the only other documents they were seeking were any communications Kaitlin had with "any of the complainants mentioned in the Attorney General's report, or Karen Hinton or Alessandra Biaggi." ECF No. 142-11 at 3. They still did not explain why such communications were relevant or proportionate to the needs of this case.

Nevertheless, we promptly responded that Kaitlin has no responsive documents, except some communications with non-party Lindsey Boylan which are at issue in Ms. Boylan's pending motion to quash. *See* ECF No. 87. We stated that we would need to wait for the Court's ruling on that motion because we "will not circumvent the power of the Court and will wait for, and be guided by, the Court's ruling on these communications." ECF No. 142-11 at 3-4.

But, once they had that response, Cuomo's lawyers reneged on their position and insisted that "[their] document subpoena is not limited to only [Kaitlin's] communications with any of the complainants, Alessandra Biaggi or Karen Hinton," *id.* at 2, without specifying what else the subpoena actually sought and ignoring their agreement in our meet-and-confer, as memorialized in their email to us, *id.* at 6, that all they wanted was communications with other complainants.

### Cuomo Also Subpoenaed Verizon for 3.5 Years of Kaitlin's Phone Records

Cuomo's documents subpoena did not seek any phone records. ECF No. 142-2. At no time did Cuomo's lawyers ever mention Kaitlin's cellphone records during our many meet-and-confers. Salzman Decl. ¶ 14; *see also* ECF Nos. 142-8; 142-10.

But we learned on August 17 that Cuomo served a subpoena on Verizon for <u>all of Kaitlin's phone records from January 2020 through the present</u>. Salzman Decl., Ex. 1.

When we challenged Cuomo's lawyers to explain how such a subpoena could possibly be relevant or proportionate to the needs of this case given Kaitlin's extremely limited role, they refused and made only the generic assertion that the Verizon subpoena "seeks discovery relevant to the Governor Cuomo's claims and defenses." ECF No. 142-11 at 2-3.

### *Cuomo Insisted on Kaitlin's Deposition While Refusing His Own*

Also on August 17, we saw on the Court docket that Cuomo had filed a letter arguing that his deposition in this case should be delayed until after the Court rules on his forthcoming motion to strike the allegations in the complaint that concern Kaitlin and the other OAG complainants because, Cuomo wrote, "<u>those allegations must be stricken and there should be no discovery on them</u> (including from Governor Cuomo) . . . If Governor Cuomo prevails on his motion to strike, his deposition will be dramatically narrowed. <u>Governor Cuomo should not have to testify about topics that may not be at issue</u>." ECF No. 122 at 4 (emphasis added). Yet, Cuomo continues to demand that Kaitlin be burdened with a deposition on these same topics.

### *Defendants Tried to Expose Kaitlin's Identity to Retaliate and Harass Her*

When it was clear that it was impossible to negotiate any reasonable limits to discovery with Cuomo and that motion practice was inevitable, we reminded Cuomo that we had designated Kaitlin's full name and identity as confidential under the Court's Confidentiality Order and their motion papers would have to be accordingly redacted. ECF No. 142-11 at 4.

Shockingly, Cuomo's lawyers responded that they "disagreed" with this confidentiality designation and would "not redact" the forthcoming motion papers. *Id.* at 3. We reminded Cuomo that "the Confidentiality Order requires you to make a motion to the Court if you

disagree with a confidentiality designation. Dkt. 68 at (g). You cannot unilaterally de-designate confidential information absent a ruling from the Court, as you purport to do in your email." *Id.* at 1. But Cuomo's lawyers still refused to comply with the Confidentiality Order. *Id.*

Cuomo's insistence on exposing Kaitlin's identity was obviously retaliatory. We had designated Kaitlin's identity as confidential under the Confidentiality Order in our May 3, 2023, Responses and Objections to Subpoena (ECF No. 142-4) and in our June 21, 2023, letter (ECF No. 142-5). Cuomo never challenged that designation until after we objected to his improper Verizon subpoena. Salzman Decl. ¶ 16.

Cuomo's threat to violate the Confidentiality Order forced us to make an emergency motion to the Court. ECF No. 128. The Court promptly ordered the same day (August 21, 2023) that "all parties are respectfully directed that any documents containing Kaitlin Doe's identifying information **must be filed under seal**."

But in violation of the Court's order, the very next day Cuomo's co-Defendants DeRosa and Azzopardi filed an unsealed letter on the public docket attaching a photo of Kaitlin, forcing us to yet again seek emergency protection from the Court (ECF No. 133), which the Court again promptly granted, re-ordering "that any documents or submissions containing Kaitlin Doe's identifying information, **including images, must be filed under seal, not merely redacted**."

*DeRosa and Azzopardi Are Now Also Trying to Subpoena Kaitlin*

Counsel for DeRosa and Azzopardi have now contacted us seeking to serve their own documents and deposition subpoenas on Kaitlin. Salzman Decl. ¶ 17.

## ARGUMENT

District courts have broad discretion to manage discovery. Fed. R. Civ. P. 26; *see also Cuomo*, 2023 WL 4714097, at *5 ("The Court also has wide latitude to determine the scope of

discovery."). The Court must grant a protective order if it determines "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Courts have repeatedly quashed overly broad subpoenas on third parties such as the ones Cuomo served on Kaitlin that make "blanket requests" and are nothing more than "a fishing expedition." *Henry v. Morgan's Hotel Grp., Inc.*, No. 15 Civ. 1789, 2016 WL 303114, at *2 (S.D.N.Y. Jan. 25, 2016). "Courts also give special weight to the burden on non-parties of producing documents to parties involved in litigation." *Breaking Media, Inc. v. Jowers*, No. 21 Misc. 194, 2021 WL 1299108, at *6 (S.D.N.Y. Apr. 7, 2021).

## I.   THE COURT SHOULD PROTECT KAITLIN FROM HAVING TO SEARCH FOR DOCUMENTS BEYOND THE OAG FILE ALREADY PRODUCED

The Court should deny Cuomo's motion to compel further documents and instead issue a protective order to shield Kaitlin from having to search for any documents beyond the OAG documents she has already produced.

Under Rule 45, this Court "<u>must</u> quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added). As this Court previously ruled: "To determine whether a subpoena imposes an undue burden, courts weigh the burden to the subpoenaed party against the value of the information to the serving party by considering factors such as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Cuomo*, 2023 WL 4714097, at *6.

### A.   Cuomo Has Not Established Relevance or Proportionality

In the first instance, the burden is in Cuomo, as "[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Id.* at *5. Cuomo has failed to make that showing.

9

Cuomo's generic, boilerplate assertions of relevance (ECF No. 141 at 6-10) are the same ones he used to try to justify his OAG subpoena. The Court already squarely rejected those. *Cuomo*, 2023 WL 4714097, at *14-15. As the Court explained: "In light of the broad scope of the documents former Governor Cuomo seeks, some of which encompass ill-defined categories (e.g., all records "relating" to the 11 complainants), he has not demonstrated a need for the documents. Indeed, much of the information gathered is included, in substance, in the OAG Report. The OAG website also includes deposition transcripts and exhibits from 41 witnesses . . . ." *Id.* at *15. The Court therefore held: "Movant [Cuomo] makes little effort to differentiate among these documents, seeking essentially everything OAG has related to the 11 complainants. This demand is too broad, and disproportionate to the needs of the *Trooper 1* case." *Id.*

The same is true here.

The only allegations in the Complaint that are about Kaitlin are about her participation in the OAG investigation. ECF No. 7 ¶¶ 131-39. Cuomo already has <u>every single document</u> Kaitlin produced to the OAG. ECF No. 142 ¶ 12. Kaitlin's OAG production included all the documents she had concerning her allegations against Cuomo as of May 2021, when she made the OAG production. It is a matter of public record that Kaitlin only worked for Cuomo for a year (OAG Report at 90); that means that, by the time she produced records to the OAG in May 2021, it had already been three years since she worked for, and was sexually harassed by, Cuomo.

Other than the OAG documents, the only other documents Cuomo said the subpoena seeks are communications between Kaitlin and the other OAG witnesses; we have already confirmed that Kaitlin has no responsive documents, except some communications with non-party Lindsey Boylan which await the Court's ruling on Ms. Boylan's pending motion to quash. ECF No. 142-11 at 3-4.

"Given the broad scope of the documents former Governor Cuomo seeks, he has not met his burden to establish relevance." *Cuomo*, 2023 WL 4714097, at *14. The motion to compel should be denied on that basis alone.

**B.      The Burden of Any Further Document Searches Would Be Significant**

Cuomo's failure to establish relevance ends the inquiry without even needing to consider the burden on Kaitlin. *See, e.g. Alcon Vision, LLC v. Allied Vision Grp., Inc.*, No. 19 Misc. 384, 2019 WL 4242040, at *2 (S.D.N.Y. Sept. 6, 2019).

But the burden on Kaitlin of searching for and producing additional documents would be far greater than the "significant undue burden" the Court already concluded Cuomo's subpoena would impose on the OAG. *Cuomo*, 2023 WL 4714097, at *14. Kaitlin is a non-party with far fewer resources than the OAG, which has over 1,700 employees on staff and a budget of over $200 million.[4] Unlike Cuomo's legal fees, Kaitlin's legal fees are not being paid by New York taxpayers.[5] She should not be forced to sift through nearly two and half years of communications she has made or received since producing all her relevant documents to the OAG in May 2021, looking for a needle in the haystack which Cuomo himself cannot even describe. "Especially in light of the Court's gate-keeping role on proportionality in discovery, defendants have to advance more than mere speculation to justify production of information from non-parties." *Henry*, 2016 WL 303114, at *4 n.2. "[O]verbroad" subpoenas such as this one place "an undue burden on [the respondent]" and must be quashed. *Alcon Vision*, 2019 WL 4242040, at *3.

---

[4] *See* New York State Attorney General, *About the Office*, https://ag.ny.gov/about/about-office (last visited Sept. 21, 2023); *see also* "New York State Division of the Budget, *Agency Appropriations*, https://www.budget.ny.gov/pubs/archive/fy23/ex/agencies/approdata/index.html#top (last visited Sept. 21, 2023).
[5] *See* Bill Mahoney, *Cuomo's Legal Bills Hit $6.6 Million*, Politico (July 17, 2023), https://www.politico.com/news/2023/07/17/cuomos-legal-bills-hit-6-6-million-00106594.

This Court should not tolerate Cuomo's overreach on Kaitlin any more than it did on the OAG. Cuomo's motion to compel should be denied and the Court should issue a protective order deeming Kaitlin's production of the OAG file to satisfy the documents subpoena.

## II.   THE VERIZONA SUBPOENA IS DISPROPORTIONATE AND SHOULD BE QUASHED

Cuomo's subpoena for 3.5 years of cellphone records for Kaitlin, a non-party with limited (at best) involvement, is patently improper. Salzman Decl., Ex. 1. He has not even attempted to explain how such an overbroad subpoena, seeking all her account information and years of personal, private phone records, could possibly be relevant and proportionate to the needs of this case. ECF No. 142-11 at 2-3. The Court should quash the Verizon subpoena in its entirety.

### A.   Kaitlin Has Standing to Quash the Verizon Subpoena

Kaitlin has standing to quash the Verizon subpoena, because she has a privacy interest in her cell phone records. *See, e.g., Solow v. Conseco, Inc.*, No. 06 Civ. 5988, 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008) (noting that it "is well-established that a party with a real interest in the documents has standing to raise objections to their production" and granting motion to quash based on confidentiality of records sought); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) ("Generally, standing to quash a non-party subpoena exists where the [movant] asserts a legitimate privacy interest in the information sought."). "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans the privacies of life." *Riley v. California*, 573 U.S. 373, 403 (2014).

### B.   Cuomo Cannot Show Relevance of 3.5 Years of Phone Records

Because Kaitlin has standing, the burden is on Cuomo, as the subpoenaing party, to "demonstrate that the information sought is relevant and material to the allegations and claims at

issue." *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. 12 Civ. 6383, 2017 WL 1133349, at *3 (E.D.N.Y. Mar. 24, 2017).

Again, Cuomo fails to carry that burden. He has not, and cannot, show that 3.5 years of Kaitlin's cell phone records are relevant and material to the claims in this case, especially given Kaitlin's extremely limited involvement and where his documents subpoena on Kaitlin did not seek <u>any</u> cell phone records, nor did his lawyers ever mention them in multiple meet-and-confers. ECF No. 142-2; Salzman Decl. ¶ 14. Cuomo instead decided to go behind Kaitlin's back and subpoena 3.5 years of her phone records directly from Verizon without even informing her.

In an analogous case, the court quashed a subpoena for a non-party's cell phone records, finding that "the cell phone records subpoenaed have no apparent relevance to Plaintiff's six causes of action." *Ademiluyi v. Phillips*, No. 14 Civ. 00507, 2014 WL 7012493, at *3 (D. Nev. Dec. 12, 2014). The same is true here: none of the allegations in the Amended Complaint concern Kaitlin's cell phone records, much less all her cell phone records for 3.5 years. It would be "a manifest injustice, for [Cuomo] to access [Kaitlin's] cell phone records." *Id.* at *4. The Court should not allow "the production of confidential documents, relating to a non-party, that have no relevance to this case." *Solow*, 2008 WL 190340, at *5 n.5.

Because Kaitlin's cellphone records have "no relevance to the claims and defenses in this action," and Kaitlin has a "legitimate interest in maintaining the confidentiality" of 3.5 years of her phone records, "the motion to quash the subpoena should be granted." *Solow*, 2008 WL 190340, at *5.

## III.   THE COURT SHOULD PROTECT KAITLIN FROM AN UNDULY BURDENSOME DEPOSITION

The Court should also quash the deposition subpoena: Cuomo has failed to pay the required witness fee, and, in any event, any deposition would be unduly burdensome and

13

disproportionate to the needs of this case. In the alternative, the Court should issue a protective order that limits the deposition to four hours total over Zoom.

### A.   The Subpoena Must Be Quashed Because It Lacks the Required Witness Fee

Under Rule 45(b)(1), proper service of a deposition subpoena "requires delivering a copy to the named person and, if the subpoena requires that person's attendance, tendering the fees for 1 day's attendance and the mileage allowed by law." (emphasis added). A party's failure to tender the required fees simultaneously with the service of the subpoena requires quashing the subpoena. "The plain meaning of Rule 45(b)(1) requires simultaneous tendering of witness fees and the reasonably estimated mileage allowed by law with service of a subpoena." *Juliao v. Charles Rutenberg Realty, Inc.*, No. 14 Civ. 0808, 2018 WL 5020167, at *6 (E.D.N.Y. July 23, 2018) (quashing subpoena because it was "invalid" without the required witness fee).  "This requirement is strictly enforced." *Id.*

Here, Cuomo has not paid any witness fee or mileage as required to subpoena Kaitlin for a deposition. Salzman Decl. ¶ 15. We reminded Cuomo of his obligation to pay these fees, ECF No. 142-11 at 4, but he has still not done so. Salzman Decl. ¶ 18.

### B.   Any Deposition Would Be Unduly Burdensome and Disproportionate

Even if Cuomo had complied with Rule 45 and paid the required fees, the deposition subpoena is still unduly burdensome and disproportionate to the needs of this case.

"It is clear from experience that pretrial discovery by depositions . . . has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34-35 (1984).

Courts quash subpoenas requiring non-party depositions where, as here, the information sought is of little (if any) relevance to the case and the burden on the non-party of submitting to a

14

deposition would be significant. "[J]udges may prevent the proposed deposition when the facts and circumstances are such that it creates an inappropriate burden or hardship." *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 70 (2d Cir. 2003). In *Fappiano v. City of New York*, for example, the Second Circuit upheld a decision by the Magistrate Judge quashing a deposition subpoena for the testimony of a sexual assault survivor and allowing only written questions instead of a deposition, finding "the court balanced the victim's interest in maintaining her privacy and preventing unwanted exposure to her past trauma with [the plaintiff's] interest in discovering relevant information related to whether the Defendant officers unduly influenced the victim or manufactured the story of how the rape occurred." 640 F. App'x 115, 121 (2d Cir. 2016); *see also*, *e.g.*, *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 926 (8th Cir. 1999) (holding district court did not abuse its discretion in quashing subpoena for deposition in gender discrimination suit because any relevance of testimony concerning other relationships was outweighed by harm and embarrassment to the deponent).

Here, Kaitlin should not be forced to endure a deposition.

First, Kaitlin's involvement in this case is marginal at best; she knows nothing about Trooper 1 and is only mentioned in the complaint because she was <u>one of many</u> witnesses in the OAG investigation. ECF No. 7 ¶¶ 131-39. This Court has already ruled that this case is not a platform for Cuomo to re-litigate the OAG investigation. *Cuomo*, 2023 WL 4714097, at *14-15. There is little (if any) legitimate value in deposing Kaitlin for purposes of proving whether Cuomo sexually harassed Trooper 1.

Second, Cuomo already has Kaitlin's testimony because he has her deposition from the OAG investigation. *Cuomo*, 2023 WL 4714097, at *15.

Third, Cuomo is refusing to be deposed <u>at all</u> in this case because he says the allegations concerning Kailin and the other women are so irrelevant that <u>he should not be burdened</u> with a deposition about them, or anything else. ECF No. 122 at 4. He should not be allowed to burden Kaitlin with a deposition while refusing to be burdened himself.

Fourth, Cuomo has issued more than 20 deposition subpoenas, without Court approval, in blatant violation of the 10-deposition limit in Fed. R. Civ. P. 30(a)(2)(A)(i). ECF No. 136 at 2.

Fifth, the questioning would be extremely distressing to Kaitlin, as it would require her to relive, again, her experiences of sexual harassment at Cuomo's hands. Kaitlin's OAG deposition makes clear how upsetting these matters are. *See, e.g.* OAG Tr. [6] at 140/18-20 ("I was shaking when we were there and then I just started crying"), 115/20-116/5 (testifying "I think that was belittling" and requesting a break because she was upset), 113/20-21 ("I was always uncomfortable and afraid"), 84/22-25 (testifying she felt "Terrible. Defeated" and "it was very upsetting"). The OAG concluded that the Governor's treatment of Kaitlin constituted sexual harassment. OAG Report at 143, 145-46. Kaitlin should not be re-traumatized by yet another deposition.

Sixth, Cuomo has already shown that he is intent on using this case to punish, retaliate against, and harass Kaitlin and the other women who participated in the OAG investigation and whom Cuomo blames for his fall from power. Among other things, Cuomo has: 1) refused to narrow the scope of his documents subpoena using meet-and-confers, the way any other party conducting discovery in this District would do; 2) refused to serve a witness fee or agree to any reasonable parameters for a deposition; and 3) tried to violate the Confidentiality Order to expose Kaitlin's identity for no legitimate reason whatsoever. Cuomo has engaged in a pattern of similar

---

[6] https://ag.ny.gov/sites/default/files/2023-01/2021.05.19_kaitlin_11.08.2021.pdf

retaliation and misconduct against other non-parties. *See*, *e.g.*, ECF No. 136 at 1-2; ECF No. 149; ECF No. 87; ECF No. 83.

Cuomo's motion to compel the deposition should be denied and the Court should grant a protective order protecting Kaitlin from any deposition in this case.

### C.       At Minimum, the Deposition Should be Limited to Four Hours on Zoom

At minimum, if Cuomo is allowed to depose Kaitlin (provided he serves a subpoena with a valid witness fee and mileage, and after he has sat for his own deposition, and provided he chooses Kaitlin to be one of the ten depositions he is permitted), then the Court should issue a protective order limiting her deposition to four hours over Zoom.

### 1.       The Deposition Should Be Four Hours Total

No more than four hours is required to depose Kaitlin given her minimal involvement in the *Trooper 1* case. Limiting the length of the deposition will minimize the burden on Kaitlin.

In *Garcia v. Benjamin Grp. Enter. Inc.*, for example, the district court upheld the Magistrate Judge's decision to limit a non-party deposition to two hours to "strike the appropriate balance between the interests of the parties." 800 F. Supp. 2d 399, 404 (E.D.N.Y. 2011). Time limits on depositions are a common discovery management device. *See*, *e.g.*, Memorandum and Order, *Nunez v. City of New York*, No. 11 Civ. 05845, ECF No. 118 (S.D.N.Y. Feb. 18, 2014) ("Absent extraordinary circumstances, the depositions of named plaintiffs and named defendants who were allegedly involved in the use of force incidents at issue, as well as non-party witnesses testifying about such specific incidents, shall be limited to four (4) hours of questioning[.]"); *Wallace v. Wayne Cnty.*, 602 F. App'x 223, 232 (6th Cir. 2015) (holding district court did not abuse its discretion in limiting deposition of witness to three hours); *Odom v. Roberts*, 337 F.R.D. 359, 366 (N.D. Fla. 2020) (ordering defendant's deposition to be limited to two hours to "ensure that [defendant] is not subjected to harassment"); *Bucher v.*

17

*Richardson Hosp. Auth.*, 160 F.R.D. 88, 95 (N.D. Tex. 1994) (ordering deposition of sexual abuse victim to be limited to two hours divided between two defendants).

Cuomo agreed to limit Kaitlin's deposition to four hours. ECF No. 142-8 at 2. But he later stated that that was just the time he planned to use in the deposition and his co-Defendants can use the remaining three hours, thus nullifying the benefits of this supposed agreement. ECF No. 142-11 at 6. Counsel for DeRosa and Azzopardi have now contacted us seeking to serve their own documents and deposition subpoenas on Kaitlin and have not agreed to a four-hour time limit. Salzman Decl. ¶ 17.

Cuomo, DeRosa, and Azzopardi have agreed to limit the deposition of another non-party, Virginia Limmiatis, to four hours total, shared between them. Salzman Decl., Ex. 2. Like Kaitlin, Ms. Limmiatis's only involvement in this case is that she was a witness in the OAG investigation. If four hours is enough for her deposition, it is enough for Kaitlin's.

Four hours total, to be divided among all Defendants in this case, is more than sufficient to depose Kaitlin, particularly given that she knows nothing about Trooper 1 and Defendants already have her testimony from the OAG investigation.

### 2. The Deposition Should Be on Zoom

During our meet-and-confers, Cuomo's lawyers refused to agree to take Kaitlin's deposition on Zoom, or even to agree that it could be at her counsel's office. Salzman Decl. ¶ 15.

But since then, a new filing on the docket shows that Cuomo has agreed to conduct the deposition of Ms. Limmiatis on Zoom. ECF No. 149 at 2, n. 2. Again, there is no meaningful distinction between Ms. Limmiatis's and Kaitlin's involvement in this case and therefore no reason why Cuomo cannot depose Kaitlin over Zoom just like Ms. Limmiatis.

Given the plethora of depositions and other legal proceedings we all have conducted over Zoom in the last three years, Defendants cannot make any showing of prejudice of proceeding by

Zoom here, especially given how minor Kaitlin's connection to this case is, and proceeding by Zoom will minimize the burden on Kaitlin because she will not have to travel or be in the same room as any of the defendants or their lawyers. *See*, *e.g.*, *PC-41 DOE v. Poly Prep Country Day Sch.*, No. 20 Civ. 3628, 2022 WL 420619, at *1 (E.D.N.Y. Jan. 20, 2022) (noting that "[r]emote depositions are the 'new normal'" and granting a protective order seeking a deposition to be conducted remotely); *Bucher*, 160 F.R.D. at 95 (directing "[c]ounsel for the defendants shall question the witness from another room" and "[t]he questions and answers shall be transmitted over a closed circuit television."); *Powell, et al. v. Allied Universal Security Serv., et al.*, 17 Civ. 6133 (E.D.N.Y. Sept. 26, 2018), ECF No. 59 (granting protective order in sexual harassment case directing defendant to participate in plaintiff's deposition via an audio hook-up); *see also* Fed. R. Civ. P. Rule 30(b)(4) ("[T]he court may on motion order . . . that a deposition be taken by telephone or other remote means.").

## IV.   CUOMO MUST BE SANCTIONED AND ATTORNEYS' FEES AWARDED

The Court must sanction Cuomo and make him pay Kaitlin's attorneys' fees incurred in responding to his subpoenas and in this motion practice.

Rule 45 requires that this Court "<u>must</u>" "impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply" with the Rule's requirement that subpoena proponents take "reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45 (d)(1) (emphasis added).

Courts have awarded attorneys' fees to non-parties burdened by overbroad, burdensome subpoenas like Cuomo's, where the proponent failed to establish the relevance of the material sought and "refused to narrow the scope of the Subpoena or otherwise address any" of the objections "raised in multiple meet-and-confers." *Breaking Media, Inc. v. Jowers*, No. 21 Misc.

194, 2021 WL 1299108, at *7-8 (S.D.N.Y. Apr. 7, 2021) (quoting Fed. R. Civ. P. 45(d)(1)); *see also Saint-Jean v. Emigrant Mortg. Co.*, No. 11 Civ. 2122, 2015 WL 13735434, at *7 (E.D.N.Y. Oct. 7, 2015) (awarding full attorneys' fees as sanction for overbroad, unduly burdensome subpoena).

Just so here. Cuomo's conduct requires sanctions. He has refused all attempts to narrow the document subpoena even when we agreed to his own proposal of the OAG production plus Kaitlin's communications with the other OAG witnesses. He served a blatantly improper subpoena on Verizon without being able to explain why any phone records are relevant to this case, much less 3.5 years' worth, and without trying to get a single phone record from Kaitlin first. He refused to agree to any reasonable limits to a potential deposition, insisting it go forward even while simultaneously refusing to sit for his own deposition. He threatened to expose Kaitlin's identity in violation of the Confidentiality Order. Each of these factors individually, and certainly all together, merit sanctions in the form of attorneys' fees to Kaitlin.

## CONCLUSION

The Court should deny Cuomo's motion to compel in its entirety; grant Kaitlin's motion for a protective order deeming her production of the OAG records sufficient to comply with the documents subpoena; quash the Verizon subpoena in its entirety; and quash the deposition subpoena or, at least, grant a protective order limiting the burden of a deposition by curtailing it to four hours on Zoom. The Court must sanction Cuomo and his lawyers by requiring them to pay Kaitlin's attorneys' fees incurred in responding to his subpoenas and this motion practice.

Dated:  September 21, 2023
        New York, New York

                                        EMERY CELLI BRINCKERHOFF
                                        ABADY WARD & MAAZEL LLP


                                                    /s/
                                        _____
                                        Zoe Salzman
                                        Nick Bourland

                                        600 Fifth Avenue, 10th Floor
                                        New York, New York 10020

                                        (212) 763-5000

                                        *Attorneys for Non-Party Kaitlin*

21