SHER TREMONTE LLP

November 28, 2023

**BY ECF**

Hon. Taryn A. Merkl
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Trooper 1 v. NYSP et al.*, 22-cv-893 (LDH) (TAM)

Dear Judge Merkl:

      We write to follow up on the pending discovery dispute, set forth in the Parties' August 25, 2023 submission, regarding subpoenas for telephone records related to Trooper 1 and Diane Parrotta. T1 ECF No. 136. Those subpoenas, which properly seek discoverable evidence,[1] remain in limbo and have not yet even been served because of Plaintiff's objections to them. *Id*. While we knew the telephone records likely would reveal important evidence concerning Trooper 1's communications, further discovery has confirmed this. Specifically, we recently obtained information pursuant to a subpoena served on Stephen Nevins, the former Detail Commander of the PSU who had retired in May 2016 (long before Trooper 1 joined the PSU). As explained below, the Nevins documents confirm that Trooper 1 communicated with others about her allegations against Governor Cuomo and about the OAG Investigation. It is critical that we obtain the subpoenaed phone records so that we can ascertain who Trooper 1 and Parrotta were communicating with and when.

      The Nevins text messages, which Trooper 1 did not produce to us or to the OAG, undermine her claims, including because she strongly expresses the belief that she "earned [her] rank" on the merits, not because, as she currently alleges, she was singled out for favorable treatment by Governor Cuomo. **Exhibit 1** at 12. They also establish that Trooper 1 communicated with Nevins regarding her allegations against Governor Cuomo and regarding the OAG Investigation, and that Trooper 1 had a clear motive, wholly unrelated to any alleged harassment, to harm Governor Cuomo. Indeed, Nevins texted Trooper 1 both the night before her first interview with the OAG on April 13, 2021 and then again immediately afterward: "Can I call you some time this evening? I[']m interested in how you did….." *Id*. at 3. The texts also confirm that Trooper 1 and Nevins shared a strong antipathy for Governor Cuomo and his policies, and a desire to hasten his downfall. Among

---

[1] Indeed, as the Court noted at the September 26, 2023 conference, if witnesses were "collaborating with Trooper 1 on [their] testimony, that seems like a fair swath of subpoenas." Sept. 26, 2023 Tr. at 34:24-25.

other things, Trooper 1 suggested that the FBI should investigate Governor Cuomo's COVID testing protocols and revealed confidential information to Nevins about Governor Cuomo's contact with his family members. *Id*. at 7. Trooper 1 also noted that "We're all patiently waiting" for the "Cuomo ship" to "sink[]." *Id*. at 6. These communications suggest that the animosity was not based on any alleged sexual harassment but instead reflected an intense anger that Governor Cuomo was interfering with the PSU and an unhappiness with the current PSU leadership (which they apparently blamed on Governor Cuomo). Indeed, Trooper 1 expressed a hope that Governor Cuomo's ouster would result in a change to the PSU: "Maybe we can bring it back to the 'Nevins Day[]s'! When state police had a back bone." *Id*. at 9. This information is crucial to Governor Cuomo's defense because it goes directly to Trooper 1's bias against him and her motivation to "sink" the Governor's "ship."

This is consistent with other information showing a coordinated effort among Nevins loyalists on the PSU to raise allegations against Governor Cuomo in furtherance of their own personal, professional, and political objectives. Although we believe those efforts began by trying to bring press attention to what they believed to be Governor Cuomo's alleged interference with the PSU in late 2020, certain current and former members of the detail quickly pivoted to exploit the sexual harassment allegations and subsequent OAG Investigation toward their own ends. For his part, Nevins, who had retired in May 2016, long before Trooper 1 joined the PSU, expressed a fervent wish that the OAG Investigation would cause Governor Cuomo's political ruin. *See* **Exhibit 2**. And we are now learning that Nevins apparently spearheaded the NYSP prong of the OAG Investigation. We recently learned, for example, that Nevins, **who had never worked with Trooper 1**, appears to be the very first NYSP witness to inform the OAG about Trooper 1's allegations against Governor Cuomo. In other words, the evidence now shows that Nevins set the stage, helped craft the story, and deployed his PSU puppets—including Trooper 1—to enact the drama that would take down the man who Nevins viewed as having interfered with and dismantled the PSU team Nevins had built. And, we believe, the OAG investigators failed entirely to investigate the PSU witnesses' obvious ulterior motives.

As we previously advised the Court, key NYSP players in this effort included Parrotta, Nevins, Plaskocinski, and Trooper 1. We have learned from discovery that Parrotta and other members of the PSU discussed Trooper 1's allegations and the OAG Investigation with each other at the time, and we now know from the Nevins texts that those communications included texts with Trooper 1 herself. Yet Trooper 1 apparently did not retain any contemporaneous texts; indeed, the only communications Trooper 1 has produced are four texts with Parrotta in 2023 where Parrotta sought to coordinate with Trooper 1 prior to Parrotta's deposition in this case. *See* **Exhibit 3**. During multiple meet and confers regarding Plaintiff's failure to produce any text messages, Plaintiff's counsel represented to us that Trooper 1 did not speak or text with many people about her allegations. But the belatedly produced Parrotta texts, and the newly produced Nevins texts from 2021, belie Plaintiff's contention. Obviously, Trooper 1 will have to answer for this during her deposition, but it is vital to the proper administration of justice that Governor

Cuomo receive the phone records before then so we know with whom Trooper 1 communicated, when, and for how long.

Under these circumstances, we respectfully request that the Court authorize the service and enforcement of the subpoenas for the phone records related to Trooper 1 and Parrotta (including Parotta's family members whose devices Parrotta used to communicate with Trooper 1).

Respectfully submitted,

*/s/ Theresa Trzaskoma*

Theresa Trzaskoma

Attachments