

Glavin PLLC  
156 W. 56th Street, Suite 2004  
New York, NY 10019

glavinpllc.com  
646.693.5505

November 29, 2023

**BY ECF**
Hon. Taryn A. Merkl
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    <u>**_Trooper 1 v. NYSP et al._**, 22-cv-893 (LDH)(TAM)</u>

Dear Judge Merkl:

      We write to provide a joint update to the Court regarding the August 11, 2023 Rule 45 subpoena (the "Biaggi Subpoena") for documents that former Governor Andrew Cuomo ("Governor Cuomo") served on Nonparty Witness Alessandra Biaggi ("Ms. Biaggi"). Counsel met and conferred on September 6, 2023 and November 10, 2023 without reaching any agreement. Pursuant to the Court's November 3, 2023 order, Governor Cuomo submitted a status report on November 17, 2023, indicating that the parties had reached an impasse and that Governor Cuomo and Ms. Biaggi would submit a joint dispute letter consistent with the Court's Individual Rules and Practices by November 29, 2023. ECF No. 183. The Biaggi Subpoena and Ms. Biaggi's September 21, 2023 responses and objections are attached as Exhibit A and Exhibit B. The parties' respective positions are set forth below.

### A.    MS. BIAGGI'S POSITION

      Ms. Biaggi is to counsel's knowledge in a unique position among the nonparty witnesses Defendant has subpoenaed to date. Although she worked in the Executive Chamber like certain other nonparties, Ms. Biaggi is neither named by Plaintiff in the Complaint, nor has she ever filed a charge or in fact made any allegation that Defendant harassed her personally. Nor does Ms. Biaggi know or have any first-hand information about Trooper One, the Plaintiff, nor the circumstances or environment of her employment by Defendant.

      Ms. Biaggi has in fact criticized Mr. Cuomo publicly, and believes she is regarded by him as a political adversary. As has now widely been alleged by others and in the press, she personally believes that Defendant is using Rule 45 for purposes that go far beyond, and in her case have nothing to do with, the pursuit of admissible evidence for use in the instant matter. He appears to be subpoenaing individuals like Ms. Biaggi to chill their First Amendment protected speech about him, to settle scores, and to try to rebuild his damaged reputation in the eyes of the public. If Ms. Biaggi is correct about this, the Subpoena would exceed the scope of Rules 45 and 26 and Counsel so advised Defendant's counsel at the meet and confer on November 10th.

      Somewhat separate from (if overlapping) these considerations of improper motive, the

Subpoena appears clearly to violate FRCP discovery principles of relevance and proportionality. Defendant seems to be issuing subpoenas in outgoing concentric circles, like ripples around a stone's impact on the surface of a pond. Defendant's counsel claim to be subpoenaing Ms. Biaggi in order to check the credibility of alleged witnesses such as Ms. Bennett and Ms. Boylan, in order to ultimately impeach Trooper One. The following hypothetical illustrates the problems with the subpoena: if Ms. Biaggi were in compliance with this Subpoena to disclose, for example, an email or text thread with a sibling, acquaintance or a friend from childhood which referred to Defendant, Ms. Biaggi is highly concerned, and has reason to be, based on the public record in this matter so far, that Defendant would subpoena that individual next, to try to impeach Ms. Biaggi. Ms. Biaggi does not want anyone harassed who is even more removed from this controversy than she is.

Ms. Biaggi, as this Court is already aware, served in the New York State Senate from 2019-2022, during a significant part of the date range of the Subpoena. The State Senate would have served as the venue for an impeachment trial against the Governor, and there was a strong possibility of an impeachment occurring at that time. Ms. Biaggi in her capacity as Senator also helped sponsor and develop new legislation related to sexual harassment in the workplace for public and private workers passed in the wake of the Defendant's resignation. Though counsel well understands, as this Court advised at the last status conference on September 26, 2023, that this does not automatically mean that all of Ms. Biaggi's communications during this date range are excluded from production by legislative privilege, Ms. Biaggi reserves the right to assert such privilege with regard to some of her communications.

Under the circumstances, if these disputes are not otherwise resolved, Ms. Biaggi respectfully requests leave to move to quash the subpoena, or in then alternative, for a protective order, on the following grounds, and requesting the following relief:

1. On relevance, proportionality and legislative privilege grounds, Ms. Biaggi will move under Rules 26 and 45 to quash the Subpoena entirely.
2. In the alternative, Ms. Biaggi will request a protective order under Rules 26 and 45, which may ask the Court to order the exclusion or redaction of certain otherwise responsive documents, on privilege grounds or for other appropriate reasons such as to avoid prejudice to or harassment of other nonparties. Ms. Biaggi would of course produce any such documents in camera if the Court so requests.
3. Under the motion for a protective order, Ms. Biaggi will also request that once she has complied with the Subpoena subject to the terms of any such protective order, that for reasons of proportionality and relevance and the avoidance of unnecessary expense to Ms. Biaggi or others, Defendant not be permitted to seek her deposition, nor to subpoena anyone whose name she discloses in her production, without further leave of this Court. Ms. Biaggi believes that any documents she is directed by this Court to produce will not support a deposition, but that Defendant may seek one anyway, in pursuit of the out-of-scope agendas described above.

Ms. Biaggi also requests that nonparty production be deferred until after party discovery

is completed. Rules 26 and 45 have also been interpreted to suggest that parties exhaustively seek relevant information from each other before seeking the same information from nonparties. It would also be appropriate and promote judicial economy to defer motion practice regarding the Subpoena until that time.

Ms. Biaggi also notes that motions to quash on very similar grounds of relevance and proportionality and making assertions of improper motives beyond the scope of the relevant FRCP provisions, are currently pending before this Court. Again, motion practice regarding this Subpoena should be deferred until after the decisions on those motions, which may save the Court's and litigants' time by resolving some of the issues Defendant and Ms. Biaggi would raise in motion practice regarding the Subpoena. When we suggest that "motion practice" be deferred, we of course mean a motion by Defendant to compel as well as Ms. Biaggi's own motion.

### B. GOVERNOR CUOMO'S POSITION

#### 1. Background

Ms. Biaggi, who is listed in Governor Cuomo's Rule 26 disclosures, is a witness with relevant information to the Trooper 1 lawsuit, which incorporates the allegations of 10 other complainants directly from the Office of the Attorney General's ("OAG") August 3, 2021 Report, including complainants Lindsey Boylan and Kaitlin. Ms. Biaggi worked as counsel in the Executive Chamber in 2017 and overlapped with complainants Lindsey Boylan and Kaitlin. When Boylan first made her allegations in December 2020, Ms. Boylan sought out other former state employees to persuade them to come forward with allegations against Governor Cuomo, including complainants Ana Liss, Charlotte Bennet, and Kaitlin. *See* Boylan OAG Tr. at 215-219, 221-223 (discussing her outreach efforts to "help tell a bigger story" and get "my ducks in a row"). Ms. Boylan then began coordinating with other complainants, including Ms. Bennett, Kaitlin, and Ana Liss, to go public with allegations and speak to the press. From discovery, we know that Ms. Boylan used encrypted messaging applications to speak about the OAG investigation and allegations against Governor Cuomo. Ms. Boylan went so far as to ask other former employees to speak with her lawyers at the Wigdor firm. We also know that Ms. Boylan and Kaitlin texted about their allegations, and that Ms. Boylan also texted with Ms. Bennett and Ms. Liss about their allegations.

In December 2020, after Ms. Boylan first made her allegations against Governor Cuomo, Kaitlin reached out to her former co-worker, Ms. Biaggi, "to see if she had a similar experience" working for Governor Cuomo and they exchanged text messages. [1] Kaitlin OAG Tr. at 184. Like Ms. Boylan and Kaitlin, the OAG investigators interviewed Ms. Biaggi 2021 about her experiences working in the Executive Chamber and Ms. Biaggi publicly spoke about that OAG interview. *See, e.g.*, Brian Schwartz, *Former Cuomo Staffer Was Witness in Sexual Harassment Probe, Won't Rule Out Running for Governor*, CNBC (Aug. 4, 2021, 1:40 PM),

---

[1] Text messages between Kaitlin and Ms. Biaggi, as well as Kaitlin and Ms. Boylan have been produced in discovery, but the producing party designated them "confidential." We vehemently disagree with that designation, given that there is nothing in those messages to justify such a blanket designation. We will provide those text messages to the Court upon the Court's request.

https://cnb.cx/3rRom1s.  As part of Ms. Boylan's coordinated efforts to find a group of women to make public allegations against Governor Cuomo, Ms. Boylan, Ana Liss, Charlotte Bennett, Kaitlin, and Ms. Biaggi spoke with reporter Rebecca Traister about working with Governor Cuomo and all were prominently featured in Traister's March 12, 2021 article in New York Magazine about the allegations against Governor Cuomo.  *See* Rebecca Traister, *Abuse and Power: Andrew Cuomo's Governorship Has Been Defined by Cruelty that Disguised Chronic Mismanagement. Why Was That Celebrated for So Long?*, N.Y. MAG. (Mar. 12, 2021), https://nymag.com/intelligencer/article/andrew-cuomo-misconduct-allegations.html. From discovery, we know that Ms. Boylan texted with Kaitlin and Ana Liss about speaking with Ms. Traister, and Ms. Biaggi undoubtedly communicated with Ms. Boylan as well.

Accordingly, the Biaggi Subpoena seeks documents and communications concerning the work environment in the Executive Chamber, Ms. Biaggi's communications regarding her allegations of misconduct by Governor Cuomo, and communications with or about Ms. Boylan, Ms. Bennett, Kaitlin, or Karen Hinton concerning misconduct allegations against Governor Cuomo.

  2. **The Biaggi Subpoena Targets Relevant Material and Is Not Overly Burdensome or Harassing**

Trooper 1 chose to cut-and-paste the allegations of 10 other women from the OAG Report and include them in her Complaint.  Thus, Governor Cuomo has no choice but to investigate those allegations and engage in meaningful discovery to defend himself.  And while Ms. Biaggi repeats the coordinated chorus of the numerous other nonparties (such as Ms. Boylan, Ms. Bennett, Kaitlin, Ms. McGrath and Ms. Hinton) in arguing that Governor Cuomo's subpoenas to them are meant to harass and intimidate them, the reality is that Trooper 1 brought them into this case—not Governor Cuomo. Trooper 1 has not narrowed her case as the Court suggested at the September 26, 2023 conference.  For Governor Cuomo's counsel not to seek discovery related to those allegations, including the credibility of complainants, would be nothing short of malpractice.

As the Court is aware, part of Governor Cuomo's defense is that Ms. Boylan encouraged and coordinated with others to embellish or exaggerate their experiences while working in the Executive Chamber in an effort to take him down.  Indeed, Ana Liss admitted as much in her deposition.  Discovery has shown that (a) Ms. Boylan and Kaitlin were coordinating with others about their allegations regarding Governor Cuomo and in speaking with certain reporters, and (b) Ms. Biaggi—a former co-worker of Ms. Boylan and Kaitlin—had involvement in those efforts. Given Ms. Biaggi's overlap in employment with Ms. Boylan and Kaitlin, Ms. Boylan's admitted coordinated effort to encourage others to make public allegations, Ms. Biaggi's known communications with Kaitlin and likely communications with other complainants (*e.g.*, Ms. Boylan and Ms. Bennett) about their allegations, the fact that OAG interviewed Ms. Biaggi as a witness in its investigation, and Ms. Biaggi's decision to go public with her allegations about Governor Cuomo to the same reporter (Rebecca Traister) as Ms. Boylan, Kaitlin, and Ms. Bennett, the records sought in the Biaggi Subpoena are certainly relevant.

As to burden and proportionality, during a November 10, 2023 meet and confer, Ms. Biaggi's counsel confirmed that she had responsive documents, but "not a lot." Thus, the burden on Ms. Biaggi is minimal. And the Biaggi Subpoena seeks discrete categories of documents.

On the issue of "legislative privilege," Ms. Biaggi is a fact witness. She worked in the Executive Chamber, spoke about her experiences in the Executive Chamber during the time she overlapped with Ms. Boylan and Kaitlin, was in communication with Kaitlin and undoubtedly Ms. Boylan about their allegations, and was interviewed by OAG as a fact witness. The materials sought concern her communications relating to those topics, and no legislative privilege applies. As this Court observed during the September 26, 2023 conference in response to Ms. Biaggi's legislative privilege claim: it "is not an absolute privilege," the applicability of such a privilege is a "very fact-intensive analysis," constituent-related services "may not be covered," and a "detailed non-categorial privilege log would need to be prepared." *See* Sept. 26, 2023 Tr. at 90:5–91:9. Thus, if Ms. Biaggi is asserting legislative privilege over the small amount of responsive documents in her possession, she must submit a detailed privilege log.

As to Ms. Biaggi's speculation regarding whether Governor Cuomo will want to take Ms. Biaggi's deposition, that is nothing more than speculation at this time. No testimony subpoena has been served.

Finally, Ms. Biaggi's suggestion that her subpoena be deferred until after party discovery is completed makes no sense. The parties have already exchanged document productions, and are actively engaged in nonparty discovery.

\*      \*      \*      \*

Respectfully submitted,

*/s/ Rita M. Glavin*
Rita M. Glavin