December 4, 2023

<u>BY ECF</u>

Hon. Taryn A. Merkl
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Trooper 1 v. NYSP et al.*, 22-cv-893 (LDH) (TAM)

Dear Judge Merkl:

      Pursuant to the Court's Individual Rules of Practice, we write jointly regarding the May 5, 2023 and June 12, 2023 FRCP 45 subpoenas ("Hinton Subpoenas," attached as Exhibits A and B) for documents and deposition that former Governor Andrew Cuomo served on nonparty Karen Hinton. Counsel met and conferred on June 14, 2023, July 17, 2023, July 20, 2023, and November 16, 2023 and, as set forth below, remain at an impasse.[1]

## GOVERNOR CUOMO'S POSITION

### 1. Background

      Ms. Hinton, a longtime critic of Governor Cuomo, has relevant information to Trooper 1's lawsuit, in particular as to complainants Lindsey Boylan, Charlotte Bennett, and Ana Liss-Jackson, and the circumstances surrounding the OAG Investigation.[2] In April 2017, Ms. Hinton suffered a brain injury. She returned to work in September 2017, and it was later reported that she regained or retained her speech and long-term memory.[3]

      On February 24, 2021—the same day Ms. Boylan published a piece in Medium publicly detailing her allegations against Governor Cuomo—Ms. Hinton published an op ed in the New York Daily News calling Governor Cuomo a "bully."[4] Less than two weeks

---

[1] While this letter is submitted jointly in compliance with Your Honor's Individual Rules of Practice, Ms. Hinton and Governor Cuomo each disagree with and vigorously contest many of the assertions set forth in the other's position.

[2] Ms. Hinton first worked with Governor Cuomo in the mid-1990s at the Department of Housing and Urban Development, but, according to her, their relationship featured "frequent arguments" and "screaming fit[s]." *Cuomo Accuser From Soso Pens Tell-All Memoir*, Laurel Leader-Call (Nov. 29, 2021), https://www.leader-call.com/news/cuomo-accuser-from-soso-pens-tell-all-memoir/article_dbb5a390-514b-11ec-b046-b790ff11269f.html.

[3] *Andrew Cuomo's Former Press Secretary on Surviving Decades of Working for Powerful Men: 'A Bee's Nest'*, People (Jan. 28, 2022), https://people.com/politics/karen-hinton-andrew-cuomo-press-secretary-on-surviving-misogyny-in-politics//. To the extent Ms. Hinton proposes to provide support for her medical condition, she should do so under the protective order. T1 ECF No. 68. There is no basis for an *ex parte* submission of this material.

[4] *How to Counter Penis Politics: What It's Like to Work for Andrew Cuomo and Bill de Blasio*, New York Daily News (Feb. 24, 2017), https://www.nydailynews.com/2021/02/24/how-to-counter-penis-politics-what-its-like-to-work-for-andrew-cuomo-and-bill-de-blasio/.

later, Ms. Hinton accused Governor Cuomo of sexually harassing her in 2000.[5] The OAG's subpoenas to potential witnesses even demanded materials concerning Ms. Hinton. Boylan ECF No. 21-2 at 6. To publicize the December 2021 release of her memoir, Ms. Hinton participated in events and interviews, mentioning allegations against Governor Cuomo while promoting the book; notably, Ms. Boylan and Ms. Bennett joined Ms. Hinton at a public event celebrating the book's release.[6]

Governor Cuomo's document subpoena to Ms. Hinton requests materials concerning (1) allegations of sexual harassment against Governor Cuomo, (2) the OAG and AJC Investigations, (3) Ms. Hinton's communications with other complainants concerning Governor Cuomo, and (4) Ms. Hinton's personal interactions with Governor Cuomo. Despite broadly objecting on relevance, burden, and privilege grounds, Ms. Hinton made a limited 96-page production on August 7, 2023 consisting solely of her communications with other accusers identified in Trooper 1's Complaint.[7]

Ms. Hinton has refused to produce any other documents concerning her or others' allegations against Governor Cuomo, including Ms. Hinton's communications with the media and other third parties, and has refused to sit for a deposition.[8] These are the issues currently in dispute.

2. **The Hinton Subpoenas Target Relevant Non-Privileged Material and Are Not Harassing or Overly Burdensome**

Ms. Hinton's materials and testimony are relevant and indeed central to several key Plaintiff witnesses.[9] Part of Governor Cuomo's defense is that certain complainants, including Ms. Boylan and Ms. Hinton, encouraged and coordinated with others to embellish or exaggerate their accusations in an effort to take Governor Cuomo down. Ms. Hinton in particular corralled complainants for joint media appearances to mount political pressure on her longtime political rival—and spread false rumors to fan the flames. Materials and testimony related to such of Ms. Hinton's communications and media appearances are plainly relevant because they may have given Ms. Boylan, Ms. Bennett, Ms. Liss-Jackson, and other complainants "a motive to retaliate" against Governor Cuomo. *See Redd v. N.Y. State Div. of Parole*, 923 F. Supp.2d 393, 401 (E.D.N.Y. 2013). And if Ms. Hinton has communications with other third parties reflecting her desire to inflict

---

[5] *Cuomo's Behavior Created 'Hostile, Toxic' Workplace Culture for Decades, Former Aides Say*, WASHINGTON POST (Mar. 6, 2021), https://www.washingtonpost.com/politics/cuomo-toxic-workplace/2021/03/06/7f7c5b9c-7dd3-11eb-b3d1-9e5aa3d5220c_story.html.

[6] *E.g.* City & State New York (Dec. 1, 2021), https://www.cityandstateny.com/politics/2021/12/cuomo-accusers-celebrate-release-karen-hintons-memoir/187213/.

[7] This production confirmed that Ms. Hinton encouraged joint public appearances with complainants, discussed the OAG Investigation with other complainants, spread unconfirmed rumors about Governor Cuomo to other complainants, and invited other complainants to attend her book release party.

[8] As Governor Cuomo has already noted to the Court, there is no basis to categorically delay all nonparty discovery, and the nonparties' joint proposal is unworkable. *See* T1 ECF No. 183 at 2-4,

[9] Because the requested materials and testimony are relevant, the Hinton Subpoenas are not harassing. *See Bulkmatic Transport Co., Inc. v. Pappas*, No. 99Civ.12070(RMB)(JCF), 2001 WL 504839, at *3 (S.D.N.Y. May 11, 2001)

political harm on Governor Cuomo, those are clearly relevant to the circumstances surrounding the OAG Investigation.

As to burden, Ms. Hinton has not articulated any reason why it would be unusually burdensome for her to comply with the document subpoena. *See Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y. Oct. 21, 1996). To the extent Ms. Hinton has many potentially responsive documents, that simply confirms what we believe—that she was in frequent communication with third parties about Governor Cuomo. Nor is there any merit to Ms. Hinton's suggestion that symptoms from her 2017 brain injury render the requested deposition unduly burdensome. To demonstrate that a deposition is unduly burdensome for health reasons, a party must submit medical records to show that a "clearly defined, specific and serious injury" will occur if they are compelled to sit. *See Michelo v. Nat'l Collegiate Student Loan Trust 2007-2*, Nos. 18-CV-1781 (PGG) (BCM), 18-CV-7692 (PGG) (BCM), 2020 WL 4041058, at *3 (S.D.N.Y. July 17, 2020). Not only has Ms. Hinton failed to provide that information, it would not be credible given that she is working and was able to engage in a publicity tour in multiple states to support her book.[10]

Ms. Hinton's privilege objections are also without merit. As to her "journalist privilege" objection, it is clear that neither federal nor state law will abide application of such a privilege in this case. *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 143 (2d Cir. 1987); N.Y. Civ. Rights Law § 79-h(a)(6). To the extent Ms. Hinton asserts that certain responsive materials are protected by attorney-client privilege or spousal privilege, she has offered no support for those assertions, and thus should be compelled to produce those materials, or, at a minimum, produce a privilege log so that Governor Cuomo can evaluate the privilege claims. *Impact Environmental Consulting v. Chillak*, No. CV 15-6694 (AKT), 2016 WL 11185296, at *3 (E.D.N.Y. Sept. 8, 2016). Failing to allege another basis for avoiding disclosure, Ms. Hinton resorts to arguing that compelling disclosure of her conversations with the media could violate her First Amendment rights—which is as unprecedented as it is meritless.

### MS. HINTON'S POSITION

Ms. Hinton is not referenced in the Complaint and has not been identified as a complainant by Trooper 1 in discovery.[11] Trooper 1 will not seek to call Ms. Hinton as a witness at trial, which is understandable given that she never worked for the State and thus was not part of the "hostile culture around Governor Cuomo," (ECF No. 183 citing Sept. 26, 2023 Court conference Tr. at 66:18-21). Moreover, Ms. Hinton never met or communicated with Trooper 1 and has no knowledge of the allegations in the Complaint. Accordingly, Ms. Hinton's relevance to any potential issue, even as framed above by defendant Cuomo, is tangential at best and limited to the documents Ms. Hinton already produced, which demonstrate that there is no legitimate basis to take her deposition.

---

[10] Nor is there any merit to Ms. Hinton's complaint that some undue burden arises by virtue of her voluntary decision to retain counsel to oppose the subpoenas. Indeed, at this point it is safe to say that it would have been far less burdensome for Ms. Hinton to simply comply.

[11] Ms. Hinton is mentioned once in Trooper 1's disclosures to accurately include her as a person interviewed by the OAG.

A. Applicable Legal Standard

Rule 45 provides that the Court "must quash or modify a subpoena that . . . subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv); Fed. R. Civ. P. 26(b)(1) (limiting discovery to what is "relevant to any party's claim or defense and proportional to the needs of the case"). "[C]ourts assess whether a subpoena presents an undue burden by weigh[ing] the burden to the subpoenaed party against the value of the information to the serving party" and by "evaluating that information's relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Bhatt v. Lalit Patel Physician P.C.*, No. 18-cv-2063 (ILG) (SJB), 2020 WL 13048694, at *2 (E.D.N.Y. Oct. 19, 2020). That Ms. Hinton is not a party to this litigation is "significant" in determining whether the subpoena constitutes an undue burden. *Solarex Corp. v. Arco Solar*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988), *aff'd*, 870 F.2d 642 (Fed. Cir. 1989); *Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. CV-12-6383 (JFB) (AKT), 2017 WL 1133349, at *3 (E.D.N.Y. Mar. 24, 2017) (same).

B. The Subpoena To Take Ms. Hinton Deposition Should Be Quashed

Defendant Cuomo's purported reasons for seeking Ms. Hinton's deposition is to obtain non-party impeachment evidence (inadmissible at trial) related to any substantive conversations Ms. Hinton allegedly had with three of the non-party complainants about defendant Cuomo's sexual misconduct. As suggested in our November 21, 2023 letter to the Court, (ECF No. 187), deferring the instant dispute to closer to trial may render it moot especially if those three non-party complainants become not relevant to this case. Moreover, any deposition of Ms. Hinton is an undue burden as, contrary to defendant Cuomo's incorrect speculation, she still suffers certain medical issues as a result of her brain injury and thus is on long term disability.[12]

With regard to Ms. Hinton's communications with the three complainants, her production shows that she did not discuss with them the substance of their accusations against defendant Cuomo or the OAG Investigation but rather offered words of encouragement and career assistance. Defendant Cuomo's pure speculation that Ms. Hinton allegedly "encouraged and coordinated with others to embellish or exaggerate their accusations in an effort to take Governor Cuomo down" is too speculative to merit Ms. Hinton's deposition. Such speculation also is not supported by her document production.

As to the OAG Investigation, Ms. Hinton briefly is referenced twice in the OAG Report and only related to her public statements about being harassed by defendant Cuomo more than twenty years ago when they worked together at HUD. Neither defendant Cuomo nor Trooper 1 contend that such instance of harassment has any relevance here. Even ignoring this Court's direction not "to test" the OAG Report or Investigation,[13] there

---

[12] To the extent additional confidential information related to Ms. Hinton's current medical condition would be helpful to the Court, Ms. Hinton is willing to present such information *ex parte* and in camera.

[13] Defendant Cuomo is not permitted "to test 'the independent and exhaustive nature of the OAG Report' and the AJC Investigation." *Cuomo v. N.Y. State Assembly Judiciary Comm.*, No. 22-MC-3027(LDH) (TAM), 2023 WL 4714097, at *14 (E.D.N.Y. July 21, 2023), ECF No. 24 at 110/23-111/4.

simply is no evidence that Ms. Hinton engaged in any conduct related to the OAG Investigation that provides a plausible basis to take Ms. Hinton's deposition. Moreover, Ms. Hinton has produced the only document she possesses related to the OAG Report, specifically, a calendar entry of her meeting with the OAG, which further demonstrates that her purported knowledge of the alleged "circumstances surrounding" the OAG Investigation is not a proper basis on which to order her deposition.

### C. The Document Subpoena Should Be Quashed As To Any Remaining Requests

Ms. Hinton cooperated with defendant Cuomo's document subpoena to the extent it sought even arguably relevant documents. She produced approximately 100 pages consisting of all her communications with the three complainants about defendant Cuomo (as well as the OAG calendar invitation referenced above) in which Ms. Hinton only offered words of encouragement and career assistance.[14] Such production flies in the face of defendant Cuomo's rank speculation (irrelevant as it is to this litigation) that she "corralled complainants . . . to mount political pressure on her longtime political rival—and spread false rumors to fan the flames."

Defendant Cuomo now seeks to enforce other broad requests for all documents "concerning her or others' allegations against Governor Cuomo, including Ms. Hinton's communications with the media and other third parties" and all documents that refer to purported attempts by Ms. Hinton to "inflict political harm on Governor Cuomo." These broad requests, however, include all Ms. Hinton's communications with her friends, colleagues, family, and grown children that even mention defendant Cuomo in a negative light or refer in any way to allegations of sexual harassment against him. As a practical matter, these requests would require Ms. Hinton, a non-party who is responsible for paying her own legal bills, to conduct (or engage a costly third-party to conduct) an exhaustive search of her email and cellphone. Such an undertaking simply would be excessive and impermissibly burdensome and defendant Cuomo articulates no justification for it.

To the extent, Ms. Hinton communicated with the press related to defendant Cuomo's sexual harassment of her more than twenty years ago or her support of the three complainants, those documents simply are not relevant plus there are legitimate First Amendment concerns related to their production. Regarding communications that are protected from disclosure by the spousal privilege, to require Ms. Hinton, a non-party, to undertake a search of all her personal communications with her husband in order to identify those communications that relate to defendant Cuomo (for whom her husband worked) would be exceeding and impermissibly burdensome and would result only in the production of a privilege log that would not even arguably lead to any relevant evidence.

In sum, and as fully set forth in prior letters to the Court, any tangential relevance of Ms. Hinton to any of the purported issues here is vastly outweighed by the burden on Ms. Hinton and is grossly disproportionate to the needs of this case. Such burden alternatively supports deferring any further discovery on Ms. Hinton until closer to trial.

---

[14] To the extent it would be helpful for the Court to review such production, Ms. Hinton will provide the full unredacted production for in camera review.

MORRISON & FOERSTER LLP

By: */s/ Carrie H. Cohen*
    Carrie H. Cohen
250 West 55th Street
New York, New York 10019
Tel. (212) 468-8049
ccohen@mofo.com

*Attorneys for Nonparty Karen Hinton*

SHER TREMONTE LLP

By: */s/ Theresa Trzaskoma*
    Theresa Trzaskoma
90 Broad Street
23rd Floor
New York, New York 10004
Tel. (212) 202-2600
ttrzaskoma@shertremonte.com

GLAVIN PLLC
Rita Glavin
156 West 56th Street, #2004
New York, New York 10019
Tel. (646) 693-5505
rglavin@glavinpllc.com

*Attorneys for Defendant Andrew M. Cuomo*