

**Valdi Licul**
vlicul@wigdorlaw.com

December 21, 2023

**VIA ECF**

The Honorable Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    Trooper 1 v. Cuomo, et al.; Case No. 22-cv-00893 (LDH) (TAM)

Dear Judge Merkl:

The parties submit this Joint Letter pursuant to the Court's Order dated December 12, 2023, requiring the parties to meet and confer to come to an agreement regarding disclosure of Trooper 1's cell phone records. The parties have come to a partial agreement and respectfully jointly request the Court's guidance in resolving the remaining impasse.

## I.    Trooper 1's Position

Trooper 1 should only be required to disclose phone records for the period of December 1, 2020 (when Lindsey Boylan came forward) to December 1, 2021 (several months after the conclusion of the Attorney General ("AG") investigation). This scope of disclosure will address Cuomo's unsupported theory that Trooper 1's communications with other troopers around the time of the AG investigation somehow undercuts her allegations. (To be clear, Trooper 1 does not agree that any of this information is relevant or discoverable, and does not agree with any of Cuomo's representations below, but agrees to this scope of disclosure to put this issue to rest.)

Numerous courts in this district have addressed similar requests by defendants in employment cases claiming, as Cuomo does here, that they are entitled to broad discovery of the plaintiff's phone records. The issue often arises in wage-and-hour cases, where the employer claims that the plaintiff's phone records will show that the plaintiff did not work the hours alleged. E.g., Caputi v. Topper Realty Corp., No. 14 Civ. 2634 (JFB) (SIL), 2015 WL 893663, at *1 (E.D.N.Y. Feb. 25, 2015); Perry v. The Margolin & Weinreb L. Grp. LLP, No. 14 Civ. 3511 (JS) (AKT), 2015 WL 4094352, at *1 (E.D.N.Y. July 7, 2015); Gonzalez v. Allied Concrete Indus., Inc., No. 14 Civ. 4771 (JFB) (AKT), 2016 WL 4444789, at *1 (E.D.N.Y. Aug. 23, 2016). Courts in this district, however, have recognized that disclosure is not automatic, and that the proponent of



discovery "must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition."  Gonzalez, 16 WL 4444789, at *2 (citation and quotations omitted).  Moreover, "an unsupported theory is entirely too speculative to warrant a wholesale intrusion into the private affairs of the Plaintiffs," id., at *4 and a "sufficient evidentiary proffer" is necessary to entitle the proponent to such broad discovery.  Id. (denying all discovery into cell phone records); Perry, 2015 WL 4094352, at *4 (request for five years of records denied; court granted only a sampling of three months' worth, and only because plaintiff admitted at deposition that she made phone calls at work); Caputi., 2015 WL 893663, at *5 (broad request reduced to a sampling of only two years; court granted only a sampling, and only because plaintiff admitted that she made phone calls at work).

Here, Cuomo has repeatedly tried, without success, to weave together a theory that he is the victim of a wide-ranging conspiracy that includes, among others, women who worked in the executive chamber (many of whom were his victims), the attorney general and the state assembly.  Most recently, Cuomo's conspiracy narrative has expanded to include state troopers.  For instance, Cuomo now claims that Stephen Nevins, a 9/11 veteran and widely venerated former state trooper, manipulated Trooper 1 into coming forward with information that Cuomo sexually harassed her.  But there is no proof that Nevins acted with any nefarious purpose.  Rather, the evidence establishes that Cuomo and Nevins are friends.  Cuomo personally hosted an event celebrating Nevins's years of public service, where he described Nevins as "the heart and soul and energy and morality" of the PSU, NEVINS-T1-000018 at 36:25, someone whom he would "trust with his life" and whose "word" he would "trust," id. at 40:30, and as a man who has "a character of granite." Id. at 40:40.  And, as recently as this year, long after the AG and Assembly investigations had concluded, Cuomo wrote to Nevins admitting that he "never believe[s] the theory that you [Nevins] incited the old gang against me [Cuomo]."  NEVINS-T1-000016.  For his part, Nevins, who was deposed just last week, explained that he made a difficult decision to speak with Trooper 1 during the AG investigation, to support her in making her allegations because she did not feel safe coming forward.  In other words, there is no conspiracy involving state troopers and Cuomo's desperate attempt to get phone records to manufacture one is a classic "fishing expedition."  Cuomo v. Clearinghouse Ass'n, L.L.C., 557 U.S. 519, 531 (2009) ("Judges are trusted to prevent 'fishing expeditions' or an undirected rummaging through bank books and records for evidence of some unknown wrongdoing."); see Lerwick v. Kelsey, 150 F. App'x 62, 65 (2d Cir. 2005) (denying discovery requests that "appear to be more of a 'fishing expedition' than a good-faith effort to fill in evidentiary gaps").

Cuomo also seeks phone records pre-dating December 2020 and after December 2021.  This, of course, is a shotgun request for all of Trooper 1's phone records.  These are not, as Cuomo stated at the most recent hearing, a request for records "limited to dates around certain events," Dec. 12, 2023 Hrg. Tr. 46:19-23, that this Court requested the parties to discuss and narrow.  It is simply his entire subpoena just as originally served, without any compromise.



For these reasons, we respectfully request that the Court quash Cuomo's wide-ranging subpoena for Trooper 1's phone records, except for the period from December 2020 through the end of 2021.

II.     **Defendants' Position**

Defendants respectfully request that the Court permit Governor Cuomo to serve a subpoena for Trooper 1's cellphone records from January 2019 to the present. Trooper 1, who joined the PSU detail in January 2018 and was assigned to the travel team in 2019, consents to the subpoena insofar as it seeks records from December 2020 through the end of 2021. Accordingly, the only dispute concerns whether Governor Cuomo can also subpoena records from (i) January 2019 to November 2020, and (ii) January 2022 to the present. Despite Trooper 1's objections, phone records from both these time periods are highly relevant, and Trooper 1 fails to articulate any burden on her in serving the broader subpoena or any special interest in protecting the records.

*First*, phone records from January 2019 through November 2020 are discoverable because they will enable defendants to know whether, when, and how often Trooper 1 communicated with other current or former members of the PSU (and other potential witnesses) during the time of the alleged sexual harassment. Her phone records from this time period may reflect, for example, that she spoke (or did not speak) with other PSU members on or around the dates of the conduct she alleges in her Complaint. Likewise, her phone records may show that she had calls with others around the time she was removed as the primary driver, which would be consistent with her being upset about that humiliation and would be particularly consistent with her holding a grudge against Governor Cuomo for losing the plum role to which she felt she was entitled from the start of her tenure on the PSU. The phone records will also contain crucial information about Trooper 1's relationships with other PSU members and who she was close with, or not. Records will show whether and how frequently she spoke with Diane Parrotta, a witness who claims to be Trooper 1's best friend. Similarly, Trooper 1 may have had contact with her direct supervisor Fabricio Plaskocinski or other senior members of the PSU which would suggest that, contrary to the narrative she now spins, she had close relationships with senior members of the PSU with whom she could have confided in at the time if she was uncomfortable around Governor Cuomo. In short, Defendants are entitled to understand who Trooper 1 was communicating with (and how often) during the time her allegations took place, and the only way to obtain that information is through her phone records from January 2019 through December 2020.

*Second*, phone records from 2022 and 2023 are also plainly relevant because they will show whether and the extent to which Trooper 1 communicated with material witnesses while her lawsuit was underway, including while witnesses were appearing for depositions. To that point, the subpoena for Trooper 1's phone records arose *after* the disclosure of communications between



Parrotta and Trooper 1 in April and May 2023 concerning Parotta's deposition, and the disclosure that Trooper 1 and Parrotta had lunch shortly before Parrotta received a subpoena for documents and testimony. Defendants should be able to ascertain not only when Trooper 1 spoke to Parrotta during this time period, but also whether Trooper 1 spoke with others such as Plaskocinski and Stephen Nevins. Defendants' need for these records is particularly acute given that Trooper 1 did not retain any of her text messages or phone records.[1] The fact that Trooper 1 is seeking to shield her phone calls during this important time period is highly suspect. It is also possible, of course, that Trooper 1 wants to hide other highly relevant information, such as whether she was working despite her claims of crippling emotional distress or whether there is another source of emotional distress such as a personal breakup.

In opposing the broader subpoena, Trooper 1 misrepresents and misleadingly narrows Governor Cuomo's defense theories. It is not just that "Trooper 1's communications with other troopers around the time of the AG investigation somehow undercuts her allegations." It is also that Trooper 1 may have been communicating with other PSU members prior to the OAG investigation, including about her work conditions, Governor Cuomo's COVID policies, or other topics that would suggest an animus against Governor Cuomo having nothing to do with Trooper 1's current allegations. And Trooper 1 may have been coordinating with witnesses about discovery matters. Further, Defendants should not have to rely on Trooper 1's self-serving reporting about who she spoke with and when. Trooper 1 has not been truthful about the existence and extent of her communications with others. Trooper 1 denied having spoken with anyone about her allegations and the OAG investigation. That was not true. Not only do we know that Trooper 1 coordinated with Parrotta and Nevins about the OAG investigation, but, according to Nevins, Trooper 1 may also have spoken with yet another senior member of the NYSP about the OAG investigation.

None of the cases Trooper 1 cites supports a narrowing of the subpoena. To the contrary, each of those cases involved wages and hours claims where the requests covered *minimally* relevant phone records. Here, Trooper 1's communications with others during all these time periods are critically important to establishing the web of her communications. Phone records are thus more plainly relevant to core defense theories.

Moreover, Trooper 1 has not identified any meaningful burden associated with a subpoena to her phone provider. The Court already agreed that Trooper 1 may redact sensitive information, such as calls with medical providers or attorneys, from the phone records. And any burden argument is further undercut by the reality that due to Trooper 1's failure to preserve her text messages and

---

[1] Through subpoenas served on other PSU members, Governor Cuomo is continuing to confirm that, despite Trooper 1's sworn statement to the OAG investigators that she did not discuss her allegations or the investigation with others, she was in fact communicating with other witnesses in real time. Defendants should be able to determine whether this continued after she filed her lawsuit.




phone records, a subpoena for her phone records is Governor Cuomo's only option to obtain this critical discovery.

Because the requested records are relevant to Governor Cuomo's defense theories and because Governor Cuomo's proposed range is tailored to dates covering records relevant to those theories, Governor Cuomo respectfully requests that the Court order the production of Trooper 1's phone records from January 2019 through the present, subject to redactions for sensitive information such as calls with medical providers or attorneys.

### III.     Joint Request

The parties agree that the period of December 2020 to December 2021 should be disclosed. As to the rest, they have reached an impasse. Accordingly, the parties respectfully request the Court's assistance in resolving the difference in proposed time periods.

Respectfully submitted,

Valdi Licul