UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TROOPER 1,

                Plaintiff,

v.

NEW YORK STATE POLICE, ANDREW CUOMO, MELISSA DEROSA and RICHARD AZZOPARDI,

                Defendants.

Case No.: 22-cv-00893 (LDH) (TAM)

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS
MELISSA DEROSA AND RICHARD AZZOPARDI'S REQUEST TO MAKE
MATERIALS PUBLICLY AVAILABLE**

Elkan Abramowitz
Catherine M. Foti
Joseph Stern

MORVILLO ABRAMOWITZ
GRAND IASON & ANELLO P.C.
565 Fifth Avenue
New York, New York 10017

*Attorneys for Defendants
  Melissa DeRosa and Richard
  Azzopardi*

Defendants Melissa DeRosa and Richard Azzopardi respectfully submit this memorandum of law (i) in support of their request to have certain materials ordered to be publicly available and permitted to be filed on the public docket in this action and (ii) in opposition to the arguments made in support of sealing or redacting these materials by Ana Liss-Jackson (through her attorney who has not appeared in this matter, Donald Rehkopf, Esq., Dkt. 110-1) and Lindsey Boylan (Dkt. 111). Specifically, Ms. DeRosa and Mr. Azzopardi request that the following documents be permitted to be filed publicly:

1. The transcript of Ms. Liss-Jackson's July 10, 2023 deposition, which is Exhibit C to the Memorandum of Law in Further Support of Former Governor Andrew M. Cuomo's Motion to Compel Lindsey Boylan's Compliance with Subpoena and in Opposition to Lindsey Boylan's and Trooper 1's Motions to Quash Subpoenas Concerning Lindsey Boylan, Dkt. 99 (the deposition transcript is currently filed under seal as Dkt. 98-3); and

2. Exhibit D to the above-referenced memorandum of law by Governor Cuomo, which are text messages between Ms. Boylan and Ms. Liss-Jackson regarding, exclusively, Ms. DeRosa (currently filed under seal as Dkt. 98-4) (the "Boylan/Liss Texts").[1]

## INTRODUCTION

Melissa DeRosa and Richard Azzopardi have spent their careers in public service. After working for a member of Congress and the New York Attorney General, Ms. DeRosa joined the Office of the Governor of the State of New York ("Governor's Office") in April 2013 working for former Governor Andrew Cuomo. Ms. DeRosa worked first as communications director for Governor Cuomo, and then as his strategic advisor, Chief of Staff and finally Secretary – all

---

[1] Because the Boylan/Liss Texts should be filed publicly, all references to those text messages in other filings, such as in Governor Cuomo's memorandum of law, Dkt. 99, should be made public as well.

1

positions which required endless hours of work and demonstrable dedication to the people of the State of New York. Richard Azzopardi began his career as a newspaper reporter before transitioning to the public sector in 2006, where he worked in the state senate before joining the Governor's Office as press secretary and eventually senior advisor and communications director. In addition to their other significant accomplishments during their time in public service, Ms. DeRosa and Mr. Azzopardi were instrumental in helping to guide the State's response to the unprecedented COVID-19 pandemic.

Both Ms. DeRosa and Mr. Azzopardi resigned from the Governor's Office in August 2021 in the wake of the release of the New York Attorney General's Report of Investigation into Allegations of Sexual Harassment by Governor Andrew M. Cuomo (August 3, 2021) ("Report"). Since its publication, Governor Cuomo and other publicly conscious individuals have identified numerous flaws in the investigation leading up to the Report as well as its legal conclusions. However, even if the Report is taken at face value, one thing that is not subject to any legitimate dispute is that there is no suggestion in the Report that Ms. DeRosa or Mr. Azzopardi had an iota of involvement in the allegations of sexual harassment which the plaintiff in this action, Trooper 1, alleges she suffered as a result of Governor Cuomo's alleged conduct toward her. Indeed, Trooper 1 admits that at most she knew Ms. DeRosa to say hello and goodbye.

Notwithstanding this complete lack of contact with either Ms. DeRosa or Mr. Azzopardi, Trooper 1 decided it was appropriate to name them as defendants in this very public lawsuit and drag their names through the mud without cause while Plaintiff has been able to conceal her identity and shield herself from any scrutiny. *See generally* Am. Compl., Dkt. 7. Undeterred by a complete lack of evidence to support her claims, Trooper 1 somehow asserts that Ms. DeRosa is liable for aiding and abetting Governor Cuomo's alleged discrimination and retaliation in violation of New York law, while Mr. Azzopardi is joined, not for any actions he took against

Case 1:22-cv-00893-LDH-TAM   Document 212   Filed 01/04/24   Page 4 of 10 PageID #: 5532

Trooper 1 directly, but for having the temerity to question the business practices of Trooper 1's law firm in the wake of the filing of this suit. *See id.* Although Ms. DeRosa and Mr. Azzopardi never should have been named as defendants – and should be dismissed from this action for the reasons set forth in their motion to dismiss, Dkts. 50, 52, on which the Court has not yet ruled – their names have now been further tarnished for no valid reason.[2]

Now, as expected, evidence has come to light that is exculpatory as to both Ms. DeRosa and Mr. Azzopardi and that demonstrates witness bias against Ms. DeRosa. The public should have the right to this information, which would begin to counteract the unjustified damage to Ms. DeRosa's and Mr. Azzopardi's reputations caused by Plaintiff's complaint.

## FACTUAL BACKGROUND

In connection with the ongoing discovery in this action, on July 10, 2023, defendants took the deposition of Ana-Liss Jackson, one of the women who Plaintiff centers in her amended complaint as a "victim" who Governor Cuomo "harassed." In her deposition, Ms. Liss-Jackson did not implicate Ms. DeRosa or Mr. Azzopardi in any sexual harassment and, in fact, stated that she *never* had any substantive interactions with Ms. DeRosa or Mr. Azzopardi while she was employed with the Governor's Office. Also, contrary to Trooper 1's assertions in the complaint, she flatly stated that she was *never* a victim of sexual harassment by Governor Cuomo nor did she witness sexual harassment by Governor Cuomo.

In advance of her testimony, Ms. Liss-Jackson produced text messages between her and Ms. Boylan (another "accuser" of Governor Cuomo centered in the complaint). In those messages, the two women make vile, hateful, and misogynistic comments about Ms. DeRosa,

---

[2] *See, e.g.,* Shanahan, Ed, "Trooper Sues Cuomo and Top Aide Over Sexual Harassment Accusations," THE NEW YORK TIMES (Feb. 17, 2022), *available at* https://www.nytimes.com/2022/02/17/nyregion/cuomo-melissa-derosa-sexual-harassment.html; Crane, Emily, "Cuomo Spokesman Added to Trooper's Grope Lawsuit after Twitter Tirade," NEW YORK POST (Feb. 18, 2022), *available at* https://nypost.com/2022/02/18/cuomo-spokesman-added-to-troopers-grope-lawsuit-after-twitter-rant/.

3

which demonstrate their bias against Ms. DeRosa.

Specifically, in her deposition, Ms. Liss-Jackson testified repeatedly that, contrary to the accusations in Plaintiff's complaint, Governor Cuomo did not sexually harass her, Dkt. 98-3 at 18:2-6, 19:17-20, 88:10-19, 177:10-16, 204:21-23, 295:17-22, and that she did not witness Governor Cuomo sexually harass anyone else, *id.* at 95:3-15, 193:8-19.  With respect to Ms. DeRosa, Ms. Liss-Jackson testified that she never spoke with Ms. DeRosa.  *Id.* 310:19-23.  Even where Ms. Liss-Jackson discussed some of her perceived apprehensions about the workplace environment in the Governor's Office, the only specific thing about Ms. DeRosa that she pointed to was the fact that Ms. DeRosa wore heels and dresses or skirts, *id.* 338:21 – 339:24, and she acknowledged that there was no dress code for women in the Governor's Office mandated by Ms. DeRosa or anyone else, *id.* 344:2-10.

The other references in Ms. Liss-Jackson's testimony to Ms. DeRosa were regarding salacious and unfounded rumors about Ms. DeRosa peddled by Lindsey Boylan, *see id.* 270:1-21 ("I remember specifically Lindsay alleging that Melissa had an affair with the Governor … I was going off of hearsay that I had – I secondary information that I had received from Ms. Boylan") and the venomous Boylan/Liss Texts discussing Ms. DeRosa, in which they describe Ms. DeRosa as, among other things, "gross" and "rotten," and exchange misogynistic comments on the subject of Ms. DeRosa's desire or ability to start a family, *see id.* at 281:14 – 296:3 – comments that even Ms. Liss-Jackson conceded at her deposition were "pretty awful," *id.* 287:13-15.  *See also* Dkt. 98-4 (the Boylan/Liss Texts).

With respect to Mr. Azzopardi, Ms. Liss-Jackson never testified to any interactions she had with him while she was employed in the Governor's Office.  She testified about one call she had with Mr. Azzopardi in December 2020, after her employment, during which Mr. Azzopardi asked whether she had been in touch with Ms. Boylan – a conversation that she specifically

4

noted was not inappropriate in her view. Dkt. 98-3 at 302:19-24. That is the entire substance of what Ms. Liss-Jackson testified to regarding Mr. Azzopardi.

The day after the July 10 deposition, counsel for Governor Cuomo reached out to Ms. Liss-Jackson's attorney regarding his position on the confidentiality of the transcript, and he explicitly stated that the matters she discussed with the media were "**not** confidential" (emphasis his). While he said that he believed that the discussions in the transcript regarding Ms. Liss-Jackson's 2021 testimony before the AG were confidential (and expressed confidentiality concerns regarding the Boylan/Liss Texts), he only cited to an inapplicable statute relating to grand jury materials, as Governor Cuomo's counsel has previously informed the Court, Dkt. 103. When counsel for Ms. DeRosa and Mr. Azzopardi emailed on July 27 to further confirm Mr. Rehkopf's position, he stated that his position remained the same. Counsel for Ms. DeRosa and Mr. Azzopardi again emailed Mr. Rehkopf on July 29 to inform him that they intended to release portions of the deposition testimony which he had already confirmed were not confidential. Given that July 29 was a weekend, on July 31, counsel reached out to Mr. Rehkopf again by phone to confirm he had received the July 29 email and that he had no objection to counsel's intended course of action. Mr. Rehkopf reconfirmed (yet again) that he had no objection.

However, in his August 9 letter, which was written by Mr. Rehkopf in response to this Court's order and submitted to the Court by Governor Cuomo's counsel, Dkt. 110-1, Mr. Rehkopf made a complete and inexplicable about-face, asserting that the entirety of the deposition transcript is confidential. Lindsey Boylan, who is not a party to this action, also submitted a memorandum in which she argues that the portions of the deposition transcript that relate to her and the texts between her and Ms. Liss-Jackson should be treated as confidential. Ms. Liss-Jackson and Ms. Boylan, who had no problem slinging mud at Ms. DeRosa and Mr. Azzopardi in public, are now seeking to resist the release of information that does not fit with

5

their public narrative: their arguments against disclosure are baseless, and should be rejected by the Court for the reasons set forth below.

## ARGUMENT

There is simply no justification for this Court to deem the deposition testimony or the Boylan/Liss Texts to be confidential. As an initial matter, and despite Ms. Boylan's baseless argument to the contrary, because these documents were filed in connection with, and are integral to, motions filed by Governor Cuomo, they are judicial documents that are presumed to be publicly accessible. *See Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019) (documents are judicial documents with presumption of public access "if it would reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers, without regard to which way the court ultimately rules or whether the document ultimately in fact influences the court's decision"); *see also Fossil Grp., Inc. v. Angel Seller LLC*, No. 20CV2441HGTAM, 2022 WL 3347219, at *2 (E.D.N.Y. Aug. 12, 2022) (Merkl, J.) ("The right of public access to judicial documents and the public's interest in monitoring the administration of justice are both well established."). This presumption of public access is particularly strong here, given the public interest in this case. *See, e.g., Padberg v. McGrath-McKechnie*, No. CV-00-3355 RJD SMG, 2005 WL 5190385, at *2 (E.D.N.Y. Apr. 27, 2005) (noting that public interest in case involving private citizen who was formerly elected official "favors public access"); *Marisol A. v. Giuliani*, No. 95 CIV. 10533 (RJW), 1997 WL 630183, at *7 (S.D.N.Y. Oct. 10, 1997) ("strong" presumption of access given "public's interest in this litigation"). This strong presumption of public access can only be overcome if other interests, such as privacy interests, outweigh the public's right to see the information. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006). No such interests exist here.

I. **The Boylan/Liss Texts and Discussions About Those Texts Are Not Confidential**

Here, there are simply few, if any, privacy interests of Ms. Boylan's or Ms. Liss-Jackson's implicated by the public release of their text messages about Ms. DeRosa. Indeed, it seems as if Ms. Boylan is simply embarrassed by her nasty commentary and hopes the Court will bail her out from public disclosure. With respect to Ms. Boylan's arguments, although she repeats her assertion that she has a privacy interest in "private text messages," Dkt. 111, she never explains *how* text messages in which she fires invective at Ms. DeRosa implicates *Ms. Boylan's* privacy interests, or how testimony about Ms. Boylan's rumor-spreading regarding Ms. DeRosa implicates *Ms. Boylan's* privacy interests. That is because they obviously do not.

Without any concrete arguments, Ms. Boylan falls back on her alleged concern about "the significant amount of media attention this case has garnered." *Id.* at 7. This argument is odd because the media attention in this case is in significant part a result of Ms. Boylan's multi-year, repeated publications of tweets, giving of interviews, and writing of articles about the issues in this case. Regardless, it is well established that "generalized concerns of adverse publicity do not outweigh the presumption of access." *Robinson v. De Niro*, 2023 WL 3728350 at *4 (S.D.N.Y. May 26, 2023); *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 169 (S.D.N.Y. 2018).

Moreover, Ms. Boylan fails to disclose to the Court that she sent the messages *after* she received a subpoena calling for such communications and was well aware that the messages could end up being disclosed. Ms. Boylan accepted service of her subpoena on April 4, 2023. The first of the text messages at issue is dated April 19, 2023. Even Ms. Liss-Jackson noted at her deposition that she was concerned that Ms. Boylan was sending these messages while under an obligation to disclose them. *See* Dkt. 98-3 at 288:2-20 ("I was worried that, you know, maybe she had already been subpoenaed and so she then knew that this was going to have to get turned over, and then, I -- I was like. I shouldn't have texted her."). Thus, any assertion that Ms. Boylan is concerned about her privacy interests in connection with these text messages is belied by Ms.

7

Boylan's own actions, and should be disregarded by the Court.

Ms. Liss-Jackson's assertions about her privacy interests fare no better. To the extent that the Court intends to entertain the arguments in Mr. Rehkopf's letter despite his refusal to appear and his failure to follow the procedure set forth in the Protective Order,[3] his confidentiality assertion over the Boylan/Liss Texts must be rejected for the reasons described above. He describes nothing more than generic privacy interests. *See* Dkt. 110-1 ("That was and remains her primary concern–her "reputation and privacy""). Yet he does not explain how Ms. Liss-Jackson's and Ms. Boylan's rumor-mongering and gossip about Ms. DeRosa's private life implicate *Ms. Liss-Jackson's* privacy. Rather, the only privacy interests implicated by these texts are Ms. DeRosa's – the subject of the texts – and she does not believe they are confidential.

## II. The Transcript of Ms. Liss-Jackson's Deposition Testimony is Not Confidential

Ms. DeRosa and Mr. Azzopardi join in Governor Cuomo's arguments – made in prior submissions to this Court, *see, e.g.,* Dkt. 103, as well as in the letter he is filing today in response to this Court's order – as to why Ms. Liss-Jackson's deposition testimony is not confidential. These grounds include, but are not limited to, Mr. Rehkopf's waiver of his current objections (including through his communications with counsel for Ms. DeRosa and Mr. Azzopardi), the fact that portions of the transcript are already public, the inapplicability of the concerns Mr. Rehkopf expressed about the secrecy of grand jury materials, and that Mr. Rehkopf asserts nothing more than generic privacy interests that do not come close to meeting the standard for overcoming the presumption of public access. Moreover, Mr. Rehkopf describes *in his public letter* the core of what Ms. DeRosa and Mr. Azzopardi seek to make public and about what the

---

[3] Mr. Rehkopf did not comply with the procedures set forth the Section (c) of the Confidentiality Order in this action, Dkt. 68, which governs the designation of deposition transcripts as confidential, including because his assertion for the first time on August 9 that the entirety of the transcript should be treated as confidential is well after the 10-day time period for confidentiality designations of transcripts.

public has a right to know – that Ms. Liss-Jackson "has *never* accused Mr. Cuomo of sexual harassment," *id.* at 2 (emphasis in original). Accordingly, and as Ms. Liss-Jackson described in her testimony, Ms. DeRosa and Mr. Azzopardi had no role in the non-existent sexual harassment. In fact, Ms. DeRosa and Mr. Azzopardi never had actually spoke with Ms. Liss-Jackson beyond a simply greeting while she was employed with the Governor's Office. Revealing those facts does not and cannot implicate Ms. Liss-Jackson's privacy interests.

## CONCLUSION

It would be unconscionable and unfair for Ms. DeRosa and Mr. Azzopardi to be required to suffer the indignities of being publicly accused in a lawsuit in which they should have never been named and yet be denied the opportunity to have exculpatory information be released publicly – in particular where, as here, the information is of significant public interest, does not implicate any privacy interests related to Ms. Liss-Jackson or Ms. Boylan, and, at least with respect to the Boylan/Liss Texts, relates only to Ms. DeRosa herself.

For the foregoing reasons, we respectfully request that the Court deem the aforementioned materials not confidential and permit them to be filed on the public docket.

Dated: August 16, 2023  
New York, New York

Respectfully submitted,

**MORVILLO ABRAMOWITZ  
GRAND IASON & ANELLO P.C.**

By: /s/ Catherine M. Foti  
Elkan Abramowitz  
Catherine M. Foti  
Joseph Stern  
565 Fifth Avenue  
New York, New York 10017  
Phone: 212.856.9600; Fax: 212.856.9494  
eabramowitz@maglaw.com  
cfoti@maglaw.com  
jstern@maglaw.com

*Attorneys for Defendants Melissa DeRosa  
and Richard Azzopardi*

9