

**Valdi Licul**
vlicul@wigdorlaw.com

January 5, 2024

**VIA ECF**

The Honorable Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      Re:    Trooper 1 v. Cuomo, et al.; Case No. 22-cv-00893 (LDH) (TAM)

Dear Judge Merkl:

We represent Plaintiff Trooper 1 in this action and write in response to the January 3, 2024 letter by Defendant Andrew Cuomo asserting additional arguments in support of his partial motion to dismiss Trooper 1's retaliation claims. For the below reasons, Cuomo's arguments are meritless.

Cuomo, once again, suggests that he could lawfully retaliate against Trooper 1 for protesting his sexual harassment because his threats and false accusations of extortion occurred after he resigned. In other words, according to Cuomo, the requisite employment nexus had been severed. But Cuomo misunderstands the law. An act is retaliatory—and therefore unlawful— not because it is employment related, but because it was taken in response to a protected complaint of discrimination (in this case, Cuomo's persistent sexual harassment of Trooper 1, a member of Cuomo's Protected Service Unit).[1] As recently reaffirmed by the Second Circuit, unlawful retaliatory actions are "not limited to actions that affect the terms and conditions of employment." Banks v. General Motors, LLC, 81 F.4th 242, 277 (2d Cir. 2023) (quoting Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015). Rather, an unlawful retaliatory act can be any action that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. (quoting Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)). As such, courts in this district, among others, have repeatedly recognized that post-employment actions "can nevertheless form the basis of [a] retaliation claim." Soto v. Miss Laser Inc., No. 19 Civ. 4745 (MKB), 2021 WL 7287304, at *6 (E.D.N.Y. Mar. 16, 2021); see Rosenbaum v. Meir, 658 F. Supp. 3d 140, 150 (E.D.N.Y. 2023) (Kuntz, J.) (post-employment retaliation consisting of "'threaten[ing] [plaintiff's] family's future within the

---

[1] The Protective Service Unit is an arm of the New York State Police supervised by Cuomo. As governor, Cuomo not only "appointed" the "superintend of state police," N.Y. Executive Law § 210, "members of the state police," including Trooper 1, were "subject to the call of the governor." N.Y. Executive Law § 223(1).



Jewish community'" and "'proceeding with an "action" in Rabbinical Court [against Plaintiff]' which she claims will have the likely effect of permanently tarnishing her reputation in the Jewish community" sufficient to plausibly show unlawful retaliation). In short, the salient inquiry is not whether there was an employment relationship at the time of the retaliatory act, but whether the defendant took the retaliatory act because the plaintiff protested employment discrimination.

Here, Trooper 1 easily meets that standard. She alleges that after she reported Cuomo's sexual harassment to the Attorney General's independent investigators, hired counsel and filed a lawsuit (all protected acts), Cuomo lashed out by threatening to bring criminal prosecutions against his accusers and specifically accusing Trooper 1 of committing extortion.

Cuomo nevertheless attempts to distance himself from these retaliatory acts by elusively claiming that the extortion tweet was published by a "non-employer." But the purported "non-employer" was not some random person. Rather, the tweet accusing Trooper 1 of committing a crime was published by Cuomo's "spokesman," Richard Azzopardi. Second Amended Complaint, Dkt. No. 71 ¶159. Moreover, Azzopardi has since admitted in his sworn testimony that, after Trooper 1 filed her lawsuit, he and Cuomo drafted the extortion tweet together and agreed to publish it. Dep. of Azzopardi at 35:5-38:7. That Cuomo took measures to hide his involvement in the retaliatory statement by having Azzopardi publish it, only establishes that Cuomo understood his conduct was unlawful.[2]

Cuomo also carefully claims that he did not accuse Trooper 1 of extortion but, rather, he was referring to her firm. The problem with this argument, of course, is that, as Cuomo admits in his letter, the extortion tweet was published in "respons[e] to [Trooper 1's] original complaint." Filing a discrimination lawsuit is protected activity. Guy v. MTA New York City Transit, 407 F. Supp. 3d 183, 195 (E.D.N.Y. 2016). And "responding" to the lawsuit by publishing a statement that Trooper 1 hired a firm and filed a lawsuit in an "attempt at cheap cash extortions" is a form of retaliation.

For these reasons, and those set forth in Trooper 1's August 16, 2022 memorandum, Cuomo's motion should be denied in its entirety.

---

[2] Cuomo has an established pattern of employing others to exact revenge on his victims. Not only did Cuomo cause Azzopardi to publish the extortion tweet, he also hired a former federal prosecutor to threaten to bring criminal charges against his victims. Andrew Cuomo (@andrewcuomo), X (Feb. 10, 2022, 3:54 p.m.), https://twitter.com/andrewcuomo/status/1491878207003496449?lang=en; ("Rita Glavin Says Submissions Will be Made to Relevant District Attorney Surrounding Cases of Perjury and Witness Tampering"). It is certainly plausible that these measures were designed to "dissuade[]" Cuomo's victims from "making or supporting" allegations of sexual harassment against him. Banks, 821 F.4th at 275 (quoting Burlington Northern, 548 U.S. at 68).



Hon. Taryn A. Merkl
January 5, 2024
Page 3

Respectfully submitted,

Valdi Licul