# SHER TREMONTE LLP

January 30, 2024

**BY ECF**
Hon. LaShann DeArcy Hall
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

           Re:     *Trooper 1 v. NYSP et al.*, 22-cv-893 (LDH) (TAM);
                  *Cuomo v. Boylan*, 23-mc-1587 (LDH) (TAM)

Dear Judge DeArcy Hall:

      We represent former Governor Andrew Cuomo and write pursuant to FRCP 72(a) and Your Honor's Individual Practice IV(A) to appeal two January 16, 2024 discovery orders[1]: (1) T1 ECF No. 218 (also filed at Boylan ECF No. 46), which concerns a motion to quash subpoenas relevant to nonparty Lindsey Boylan ("Boylan Order"), and (2) T1 ECF No. 220, which concerns other nonparty subpoenas not addressed by the Boylan Order or T1 ECF No. 219 ("Omnibus Order"; together, the "Orders").[2]

      Ms. Boylan and other nonparties who claim to have been sexually harassed by Governor Cuomo objected to the subpoenas largely on the ground that the subpoenas are "harassing." But subpoenas that seek relevant information, as the subpoenas do here, are not harassing as a matter of law. To skirt the issue, the Orders rely heavily on unproven "burdens" and the "proportionality" factor to limit discovery without legitimate legal basis. The Orders thus improperly credit the unproven allegations that claimants, including Ms. Boylan, are in fact "victims" or "survivors" who are traumatized by routine civil discovery.[3] Because the Orders interfere with Governor Cuomo's rights under FRCP 26

---

[1] Your Honor's Individual Practice IV(A) provides that an appeal of a Magistrate Judge's discovery determination should not exceed three pages. We appeal two separate Orders resolving numerous discovery disputes. There are overlapping issues between the Orders, so for the Court's convenience, we submit a joint appeal as to both Orders that is less than the six pages allotted to us. If the Court would prefer that we submit these appeals in two three-page letters, we will promptly do so.

[2] (1) As to the Boylan Order we appeal the rulings on Boylan Document Subpoena (Boylan ECF No. 18-5) Request Nos. 1(a), 2-3, 6, 8-10, and 12-15; ESDC Subpoena (Boylan ECF No. 18-7) Request Nos. 2-10; Executive Chamber Subpoena (Boylan ECF No. 18-11) Request Nos. 5 and 7-14; Zemsky Subpoena (Boylan ECF No. 18-9) Request Nos. 1-5; Lindsey for New York Subpoena (Boylan ECF No. 18-12) Request Nos. 1 and 3-5; Verizon Subpoena (Boylan ECF No. 18-13) Request Nos. 1-4; and Leebron Subpoena (Boylan ECF No. 18-10) Request Nos. 1 and 3. (2) As to the Omnibus Order, we appeal the date range ordered on page 12. (3) As exhibits, we file the transcripts of three court conferences held before Judge Merkl preceding the Orders: the September 26, 2023 Transcript ("Exhibit 1" or "Ex. 1"), the December 12, 2023 Transcript ("Exhibit 2" or "Ex. 2"), and the January 11, 2024 Transcript concerning the subpoenas related to Lindsey Boylan ("Exhibit 3" or "Ex. 3").

[3] Ex. 3 at 83:16-87:24 (counsel for Governor Cuomo objecting to Judge Merkl's repeated use of the terms "victim" or "survivor" to describe Trooper 1 and the nonparty complainants).

Hon. LaShann DeArcy Hall
January 30, 2024
Page 2 of 6

and improperly constrain Governor Cuomo from obtaining discovery he needs to disprove the allegations against him once and for all, the Orders should be reversed.

*Background*

Trooper 1's Complaint incorporates the allegations of ten other complainants who also alleged misconduct by Governor Cuomo as part of the report issued by the Office of the New York State Attorney General ("OAG Report"). Indeed, the Complaint devotes over ten pages to the allegations of women other than Trooper 1. T1 ECF No. 71 at ¶¶ 75-143. Judge Merkl has repeatedly urged Trooper 1 to reconsider her strategy of relying on ten other complainants' allegations, including because Trooper 1's Complaint as drafted necessitates discovery into all of these allegations.[4] Trooper 1 has refused, however, maintaining that she is entitled to include the other complainants in her case and intends to present evidence about them and about the OAG Report at trial.[5]

Among these other complainants, Ms. Boylan is front and center—Trooper 1's Complaint references her at least 36 times in 20 paragraphs. Ms. Boylan was the first complainant to publicly (and falsely) accuse Governor Cuomo of sexual harassment in December 2020 and did so as a cover story to explain why she left employment with the Empire State Development Corporation ("ESD") and to energize her floundering political campaign for Manhattan Borough President. To take the scrutiny off herself, Ms. Boylan recruited and urged other women to come forward with allegations against Governor Cuomo, fundraised for her political campaign using the allegations, and threatened material witnesses so they would corroborate her false story. Ms. Boylan continues to tweet about Governor Cuomo to this day and has communicated with several other complainants about their allegations and even this lawsuit. Ms. Boylan's credibility is thus a key issue in the Trooper 1 case, as are her communications with other complainants.

The subpoena requests assessed in the Boylan Order seek information from six nonparties (including Ms. Boylan herself) that tests Ms. Boylan's allegations. The requests at issue seek (1) information concerning the true reasons for Ms. Boylan's departure from ESD, including information concerning complaints by subordinates that she was abusive to colleagues and that she was publicly engaged in an inappropriate relationship with her boss, Howard Zemsky; (2) information concerning her campaign for Manhattan Borough President, through which her allegations drummed up publicity and fundraising; (3)

---

[4] *See, e.g.,* Ex. 1 at 44:10-18 ("The issues that the Court is struggling with in this case, as you've heard, are these wide scope of the plaintiff's allegations in the Complaint. And if that is the universe of information that Governor Cuomo is being asked to defend against . . . . That's the problem."); *see also id*. at 48:5-7 ("You need to be strategic and you need to re-evaluate what you think is coming in. And if you're willing to cut some stuff, great."); Ex. 3 at 10:13-20 ("I have repeatedly asked plaintiff's counsel if they would be willing to narrow the witnesses they anticipate calling to prove the hostile work environment and have been repeatedly told no. So the Court is really left with a bind, because Mr. Licul has stated unequivocally his intention to prove up the harassment in the sort of circle around Governor Cuomo.").

[5] *See* Ex. 1 at 7:16-22 ("We included all of the victims who are mentioned in the AG's report and in the Assembly report . . . the jury must hear the entirety of the evidence, including the perpetrator's harassment of other victims."); *see also* Ex. 2 at 42:3-7 ("[The other allegations] clearly [are] part of the case . . . . It's fair game."); Ex. 3 at 10:21-11:2 (Trooper 1's counsel confirming that Trooper 1 intends to call the other complainants to prove up the hostile work environment claim).

Hon. LaShann DeArcy Hall
January 30, 2024
Page 3 of 6

information concerning the bombshell essay Ms. Boylan published in Medium in February 2021 detailing her allegations; and (4) her communications with other complainants. Materials relevant to these topics challenge Ms. Boylan's allegations and her motives for those allegations (both as they relate to her political ambitions and her reason for leaving New York State employment). The requests at issue in the Omnibus Order seek other complainants' communications with each other concerning their allegations and this case.

### *The Issues Under Appeal*

FRCP 72(a) provides that a district judge must consider timely objections and "modify or set aside" any part of a magistrate judge's non-dispositive pretrial ruling "that is clearly erroneous or is contrary to law." An order is "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Galloway v. Cnty. of Nassau*, 589 F. Supp. 3d 271, 277 (E.D.N.Y. 2022). While this standard is "highly deferential," it permits reversal where the magistrate judge commits an error of law and thus "abuse[s] her discretion." *See id.*; *see also Best Payphones, Inc. v. Dobrin*, 409 F. Supp. 3d 130, 134 (E.D.N.Y. 2018). The Orders rest on three errors of law.

*First*, the Boylan Order quashes certain requests on the grounds of burden, even though Ms. Boylan provided minimal, if any, evidence of burden as to those requests. "The movant bears the burden of persuasion in a motion to quash a non-party subpoena." Boylan Order at 3. The movant thus "must, with some degree of specificity, illustrate the nature and extent of the burden of production." *Barella v. Vill. of Freeport*, 296 F.R.D. 102, 105 (E.D.N.Y. 2013). Accordingly, the movant must "describe the burden" of responding by "submitting affidavits or offering evidence revealing the nature of the burden." *Fritz v. LVNV Funding, LLC*, 587 F. Supp. 3d 1, 4-5 (E.D.N.Y. 2022).

Ms. Boylan did not provide a personal declaration and never identified any particular burden with the requests at issue. The supporting declaration from counsel includes only conclusory statements about the volume of potentially relevant documents (purportedly over 550,000) but does nothing to explain the alleged burden of responding to any particular request. Boylan ECF No. 18 ¶ 27. The declaration thus fails to describe the "challenges" of compliance with specific requests, including "how long it would take to locate" requested materials or "what the process would be" to search for them. *See Fritz*, 587 F. Supp. 3d at 5-6. Ms. Boylan's counsel has never made any such representations anywhere—not in meet-and-confers, not in responses or objections, and not in court conferences.[6]

Despite the lack of evidence on burden, the Boylan Order quashed several requests because of "the burden th[ey] would impose on Ms. Boylan," also without explaining the nature of the burden. Boylan Order at 5; *accord id.* at 6-7, 13-14 & n.3 & n.7 (so finding for Boylan Document Subpoena Request Nos. 2-6 and Verizon Subpoena Request Nos. 1-

---

[6] Notably, other than the subpoenas to Verizon, the Executive Chamber, and Ms. Boylan herself, none of the Boylan-related subpoenas at issue here were ever served. Therefore, the nonparties receiving those subpoenas have not yet raised any burden or proportionality arguments of their own. Indeed, it is not clear that they would object at all. As a result, the burden and proportionality analyses in the Orders was only informed by Boylan's objections to these subpoenas, and not by the input of the nonparties to which they are directed.

4). Courts in this district are clear that a much stronger showing is required to justify foreclosing discovery on these grounds. *Barella*, 296 F.R.D. at 105; *Fritz*, 587 F. Supp. 3d at 4-6. To the extent that the Boylan Order's rulings rest fully or principally on burden, they are contrary to law.

***Second***, by quashing requests simply because Governor Cuomo already had evidence on certain topics, the Boylan Order improperly analyzes the proportionality of the requests at issue. Discovery is not, as the Boylan Order held, disproportionate just because it seeks information concerning a particular topic about which a party already has some information. "[T]here is no guarantee" that the information available to or recalled by one custodian "is coextensive with" the potential information of others. *Davidson Pipe Co. v. Laventhol & Horwath*, 120 F.R.D. 455, 464 (S.D.N.Y. 1988).[7] Moreover, different custodians may provide information that reveals "numerous discrepancies"—and "it is appropriate" for parties to "test the accuracy and completeness" of a custodian's discovery responses by exploring those topics with other parties. *Amphenol Corp. v. Fractus, S.A.*, No. 19 Misc. 160 (PAE), 2019 WL 2521300, at *11 (S.D.N.Y. June 19, 2019).

Thus, even if there were burden to Ms. Boylan in connection with the requests at issue, that burden must be weighed against the relevance of the information sought and Governor Cuomo's need for the information to defend himself with respect to this critical witness. As described above, the requests quashed by the Boylan Order implicate material that would undermine Ms. Boylan's credibility and her allegations themselves. Indeed, as Judge Merkl acknowledged: "[T]his is not just simply a matter of impeachment, it's also a matter of preparing his defenses . . . ." Ex. 3 at 28:24-29:1; *see also* Ex. 1 at 48:11-13, 66:18-21 (because Trooper 1 seeks to "use" these other "complainants . . . to establish this hostile culture around Governor Cuomo," they are "not . . . minor" witnesses, and Governor Cuomo is "going to be entitled" to discovery concerning impeachment and collusion).

While acknowledging that many of the requests at issue sought relevant materials,[8] the Boylan Order ruled that none of the challenged requests were proportional without really explaining why. And to the extent the Boylan Order does provide a rationale, it is an improper one: that Governor Cuomo already had sufficient evidence for cross-examination at trial. *See* Boylan Order at 8-9 ("The Court further notes that Cuomo has ample information for cross-examination of Ms. Boylan regarding the circumstances of her leaving her employment at the ESDC and . . . her relationship with Mr. Zemsky."); *id.* at 14 n.8 ("Cuomo seeks the *identical* information from Ms. Leebron as from Ms. Boylan."). At the court conference preceding the Orders, Judge Merkl also stated that Governor Cuomo's requests may not be proportional because, based on materials already received, he "ha[s] ample good faith basis to cross-examine" Ms. Boylan. Ex. 3 at 61:4-11. Counsel for Governor Cuomo raised the point that the requested discovery could uncover "prior inconsistent statements" that are "documented" by other nonparties, *id.* at 61:12-14, but the

---

[7] Although FRCP 26 was amended in 2015 to explicitly include the proportionality requirement, it codified the proportionality analysis used in common law for decades prior. FRCP 26(b)(1) advisory committee's note to 2015 amendments ("The present amendment restores the proportionality factors to their original place in defining the scope of discovery.")

[8] *See* Ex. 3 at 87:2-8 (Judge Merkl: "[M]any of your requests are seeking relevant documents . . . .").

Boylan Order did not address that point. Nonetheless, the law is plain that discovery requests seeking impeachment information are not disproportionate even if a party has already obtained some impeachment information—in particular where further information may well reveal inconsistencies crucial for witness cross-examination. *Davidson Pipe Co*, 120 F.R.D. at 464; *Amphenol Corp.*, 2019 WL 2521300, at *11.

The Boylan Order is also in error to the extent it reflects a concern that the materials sought are not admissible under FRE 608(b). Ex. 3 at 35:22-25. While this consideration would be appropriate for a motion *in limine*,[9] that is not the discovery standard. Where—as here—impeachment material may be useful to elicit truthful testimony from a witness (Ms. Boylan) at deposition, it should be granted. *See Davidson Pipe Co.*, 120 F.R.D. at 464 ("[T]he value of such information for purposes of impeachment is far greater if it has been elicited from the witness who will testify at trial . . . .").

***Third***, the Orders impose contradictory end-date limitations on requests seeking communications between nonparty complainants and witnesses that will necessarily omit relevant communications among the complainants. It is true that courts may exercise their discretion by "placing reasonable limits on the time periods for which discovery must be produced." *Obiajulu v. City of Rochester, Dep't of Law*, 166 F.R.D. 293, 296 (W.D.N.Y. 1996). But where such limits are unrelated to the irrelevance or burden of producing documents outside the bounds, those limits must be overturned. For example, where a magistrate judge imposes a limit based on an understanding that the responding party possesses no documents outside the limit, a reviewing court must overturn that limit where the request seeks relevant documents because the responding party suffers no burden by responding to the larger date range. *See Banks v. Gen. Motors, LLC*, No. 14CV970S, 2017 WL 564014, at *6 (W.D.N.Y. Feb. 13, 2017) (overturning magistrate judge's seven-year range in favor of the originally requested fourteen-year range "with the understanding that defendant is only producing what it has in its possession, custody, and control").

The Boylan Order compels the production of materials in response to some requests[10] through March 30, 2023, the date of the Boylan Document Subpoena. But the Orders compel the production of materials in response to other requests[11] (namely the requests calling for communications among various nonparty complainants and witnesses) only through February 2022, the date of the Complaint. The Orders offer no justification for the difference. And, in fact, there is good reason to believe that the nonparties at issue have highly relevant materials dated between February 2022 and the date of each respective

---

[9] Nor would that argument carry a motion *in limine*. Under FRE 608(b), "[t]he law is well-settled . . . that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely." *United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976); *accord United States v. Abel*, 469 U.S. 45, 51 (1984) (extrinsic evidence of witness bias is admissible and not precluded by FRE 608(b)).

[10] Boylan Document Subpoena Request Nos. 1(b), 11, and 16; and ESDC Subpoena Request Nos. 1-3. Boylan Order at 5, 8.

[11] Boylan Document Subpoena Request No. 5, Lindsey for New York Subpoena Request No. 2, Leebron Subpoena Request No. 2, and all other requests made of nonparties other than Ms. Boylan and Charlotte Bennett. Boylan Order at 6, 13, 15; Omnibus Order at 12.

subpoena issued in 2023. Plaintiff has incorporated the allegations of these nonparty complainants into her Complaint, T1 ECF No. 71 ¶¶ 75-143, and has represented that she plans to rely on the allegations of these complainants at trial, *see* Ex. 1 at 7:16-22; Ex. 2. at 42:3-7; Ex. 3 at 10:21-11:2. Accordingly, Governor Cuomo must obtain evidence refuting the allegations to both impeach potential witnesses and prepare his defense to Plaintiff's case-in-chief. As Judge Merkl has repeatedly acknowledged, these materials are squarely relevant. *See* Ex. 3. at 28:24-29:1, 87:2-8; Ex. 1 at 48:11-13, 66:18-21.

The requested communications may show, among other things, (1) inconsistencies between the public allegations and the private comments of each nonparty complainant, which would directly refute the allegations; and (2) personal bias against Governor Cuomo (or close political allies) unrelated to any allegations of sexual misconduct, which demonstrate motive to falsify or embellish the allegations. There is no reason to believe such conversations stopped after the Complaint was filed in February 2022, or even after the Boylan Document Subpoena was served in March 2023.

In fact, Governor Cuomo has already received limited discovery showing such communications dated *after* March 2023. For example, text messages sent between Ms. Boylan and fellow complainant Ana Liss-Jackson in April 2023 feature hateful and misogynistic comments about Melissa DeRosa—second-in-command to Governor Cuomo and co-defendant in this action. *See* T1 ECF No. 98-4 (under seal) (detailing Ms. Boylan's hateful communications about Ms. DeRosa). These messages evince a personal animus against Ms. DeRosa untethered to any allegations of retaliation or other misconduct. They also demonstrate that discovery in this action prompted complainants, including Ms. Boylan and Ms. Liss-Jackson, to communicate about this litigation, the Defendants, and potentially their own allegations. *See* T1 ECF No. 98-3 at 318:6-13 (under seal). The requests at issue are designed to uncover messages like these, which may well have occurred after the Complaint was filed or after initial nonparty subpoenas were served.

And, indeed, in response to a proposal at the January conference that the range end on the date of the Complaint, Judge Merkl noted that she had not heard "a principled date limit other than the date of the subpoena that would necessarily be sufficient." Ex. 3 at 121:23-126:15. The record is clear that ample relevant evidence post-dates February 2022, and no nonparty has presented evidence of any extra burden associated with producing that evidence. If there is no basis to impose the shorter range, it should be overturned.

Because the Orders are contrary to law as described above, we respectfully request that this Court overturn those Orders as to the challenged requests.

Respectfully submitted,

*/s/ Theresa Trzaskoma*

Theresa Trzaskoma

Exhibits