UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


----------------------------X
TROOPER 1,                    :
                              :    22-CV-893 (LDH)(TAM)
            Plaintiff,    :
                              :    January 8, 2024
            V.                :    Brooklyn, New York
                              :
NEW YORK STATE POLICE,        :
et al.,                       :
            Defendant.    :
----------------------------X

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:
For the Plaintiff:          JOHN CRAIN, ESQ.
                            VALDI LICUL, ESQ.
                            Wigdor LLP
                            85 Fifth Ave, 5th Floor
                            New York, NY 10003


For the Defendant:          JOSHUA STEELE, ESQ.
                            Harris Beach PLLC
                            99 Garnsey Rd
                            Pittsford, NY 14534

                            RITA GLAVIN, ESQ.
                            Glavin PLLC
                            156 West 56th Street, Ste 2004
                            New York, NY 10019

                            CATHERINE FOTI, ESQ.
                            Morvillo, Abramowitz
                            565 Fifth Avenue
                            New York, NY 10017


Court Transcriber:          ARIA SERVICES, INC.
                            c/o Elizabeth Barron
                            274 Hovey Road
                            Milo, ME 04463
                            Aria@leinen.net

1          THE CLERK:  Civil cause for status

2    conference, case number 22-CV-893, Trooper 1 v. New

3    York State Police, et al.

4          Before asking the parties to state their

5    appearances, I would like to state the following:

6    Persons granted remote access to proceedings are

7    reminded of the general prohibition against

8    photographing, recording, and re-broadcasting of court

9    proceedings.  Violations of these prohibitions may

10   result in sanctions including removal of court-issued

11   media credentials, restricted entry to future hearings,

12   denial of entry to future hearings, or any other

13   sanctions deemed necessary by the Court.

14         Due to the number of callers on the line, I

15   remind everyone to please state their full name when

16   addressing the Court.  That being said, will counsel

17   for plaintiff please state your appearances for the

18   record.

19         MR. CRAIN:  This is John Crain for plaintiff

20   Trooper 1, from Wigdor LLP, and I'm joined by Valdi

21   Licul.

22         THE CLERK:  Counsel for defendant New York

23   State Police, please state your appearance.

24         MR. STEELE:  Joshua Steele from Harris Beach

25   PLLC for the New York State Police.

1          THE CLERK:  Counsel for defendant Andrew

2   Cuomo, please state your appearances.

3          MS. GLAVIN:  Good afternoon, your Honor.

4   Rita Glavin along with my colleague, Leo Korman, of

5   Glavin PLLC, for former Governor Andrew Cuomo.

6          THE CLERK:  Counsel for defendant Melissa

7   DeRosa and Richard Azzopardi, please state your

8   appearances for the record.

9          MS. FOTI:  Good afternoon.  Catherine Foti

10  from Morvillo, Abramowitz, Grand, Iason & Anello for

11  Melissa DeRosa and Richard Azzopardi.  And on the line

12  is my associate, Kayasha Lyons.

13         THE CLERK:  Okay, Judge, that is everyone

14  for this conference.

15         THE COURT:  All right, thank you all.  As

16  you all know, we're here for a very narrow conference.

17  I have limited time, as indicated by the docket, due to

18  a number of other commitments this afternoon.  The

19  parties recently filed document 200, ECF 200,

20  indicating their inability to reach a conclusion as to

21  a date range vis a vis the phone records.  I note at

22  the outset that the parties did reach a conclusion as

23  to basically one year worth of records, which it

24  appears that the parties have agreed to December 1st,

25  2020 through December 1st, 2021.

1          Mr. Cuomo has argued relevance preceding the

2    initiation of the investigation into former Governor

3    Cuomo's actions that predate the December, 2020 time

4    period.  I also -- the reason we're having the

5    conference is because what I did not see in the

6    parties' discussion here is what date ranges would

7    cover some of the matters that we discussed previously

8    on the record at our last in-person conference in

9    December.

10          By that, I specifically am referring to

11   phone records that would cover a time period related to

12   Trooper 1's communication with Diane Perata (ph)

13   surrounding the time that she was deposed in this case.

14   I also did not see a time frame that would necessarily

15   cover all of this potential conversation with Officer

16   Nevins (ph) or Trooper Nevins.  I do believe that some

17   of the Nevins communications occurred in 2021 so they

18   would be covered in the December 1st, 2020 to December

19   1st, 2021 time period.

20          Mr. Licul, correct me if I'm wrong but I

21   thought in our prior conversation, we had talked about

22   including a swath of records that would cover the

23   Perata contact so that we didn't have to deal with the

24   Perata subpoena anymore.  My recollection was that

25   Governor Cuomo agreed that if Trooper 1 was going to

1  provide her phone records surrounding the time of her

2  deposition, not just select communications with Perata

3  but the phone records that covered the relevant time

4  frame for Ms. Perata's deposition, that that would also

5  help put to rest your arguments regarding the

6  intrusiveness of the phone record subpoena to Ms.

7  Perata and the members of her family.  So I was

8  expecting to see a time period in 2023 and I didn't.

9  Mr. Licul, can you please start and then I'll turn to

10  the defendants.

11        MR. CRAIN:  Hi, your Honor, this is John

12  Crain for plaintiff Trooper 1.  Now, we had already --

13  and I believe this had been discussed.  We had already

14  produced phone records around the time period of the

15  Perata deposition so they have those records and that

16  issue from our point of view is put to rest.

17        Now, as to the Nevins communications --

18        THE COURT:  Just to be really clear, just to

19  be really clear, did you produce all of the phone

20  records from that time period or just evidence of

21  communications between Trooper 1 and Diane Perata

22  herself?

23        MR. CRAIN:  That was between -- that's

24  correct, between Trooper 1 and Diane Perata herself.

25        THE COURT:  That is insufficient, as we

1   discussed at the last conference, because wasn't she

2   also in communication with certain of Diane Perata's

3   family members?

4           MR. CRAIN:  No, your Honor, she wasn't.

5   Diane Perata, as the text messages show, tried to reach

6   out to her from various sources but the two did not

7   communicate.

8           THE COURT:  That does not answer my

9   question.  Would the phone records pertinent to Trooper

10  1 show contacts from individuals from other parts of

11  Perata's family in the time frame of Perata's

12  deposition, and are those produced?

13          MR. CRAIN:  Your Honor, I don't know off the

14  top of my head regarding whether or not the other --

15  the other ones would show.  Actually, I believe when we

16  looked into it, they did not because Trooper 1 did not

17  answer the phone.  So I believe those --

18          THE COURT:  This is why they want to go to

19  the phone company.  They want to get the incoming and

20  outgoing phone calls relating to the time period around

21  the Perata deposition.  We discussed this at length in

22  December and it is very disheartening, and this goes to

23  both sides, to see that you couldn't reach an agreement

24  on something this simple after discussing it at length

25  at the prior conference.  You guys need to learn how to

1  meet and confer significantly better than you are

2  because you cannot expect that I'm going to be able to

3  drop everything and have a conference every week

4  because you can't reach an accommodation on something

5  as minor as this after we've had oral argument on it.

6           MR. CRAIN:  Your Honor --

7           THE COURT:  I made it very clear in December

8  that the phone records surrounding the Perata

9  deposition that could evidence communications to

10 Trooper 1, successful or not -- they will show up as

11 incoming calls on Trooper 1's phone records -- were

12 relevant and that they needed to be produced.  So what

13 is the time frame that would be pertinent to the Diane

14 Perata piece of this from your perspective, Mr. Crain?

15          MR. CRAIN:  I understand based on defendant

16 Cuomo's theory of the relevance of those records, it

17 would be in a range of about one week before and one

18 week after the deposition.

19          THE COURT:  What are the dates?

20          MR. CRAIN:  The dates -- I would just have

21 to look up the date of the deposition, which if I

22 recall --

23          THE COURT:  This is why I directed the

24 parties to meet and confer, because I don't have the

25 deposition transcript.  I don't have your schedules

1  before me.  That's exactly why parties are expected to

2  be able to resolve these issues on their own.

3          Ms. Glavin, what was the date of this

4  deposition?

5          MS. GLAVIN:  Ms. Perata's deposition was in

6  late July, 2023 but the phone records -- it's more,

7  your Honor, than just a week before the deposition.  If

8  the Court might recall, and I apologize for not putting

9  this in the letter, but Diana Perata testified that she

10 had had lunch with Trooper 1 within a couple -- I think

11 maybe in or about May of 2023.  She could not remember

12 who got in touch with who, how the lunch was set up,

13 which is one of the reasons why we need a broader swath

14 of the time period and we want the phone records

15 through 2023.  But, your Honor, I do want to bring

16 something to the Court's attention that --

17         THE COURT:  One thing at a time.  The first

18 thing we're doing is figuring out the time period

19 relevant to the Diane Perata records.  Is this directly

20 relevant to that, Ms. Glavin?

21         MS. GLAVIN:  It is.

22         THE COURT:  Okay, continue.

23         MS. GLAVIN:  Okay.  Your Honor, in the

24 Charlotte Bennett (ph) case which is pending in the

25 Southern District of New York and has a different

1    discovery schedule, Trooper 1 has been identified in

2    both plaintiff's Rule 26 disclosures and in the former

3    governor's.  We subpoenaed Trooper 1's phone records in

4    the Bennett case pursuant to a Rule 45 subpoena that

5    was done on notice to the parties.  The subpoena was

6    served last month, in or about December 4th, and records

7    were received responsive to that subpoena after

8    Christmas of this year.  The phone records -- the

9    subpoena covered the period January 1st, 2020 to the

10    present in that litigation.  We received a return on

11    the subpoena.

12            We informed plaintiff's counsel this morning

13    that we believe the issue of the phone records is now

14    moot because they were subpoenaed in the separate

15    action.  What we offered to plaintiff's counsel in

16    order to agree that the issue before your Honor was

17    moot was that we would provide those phone records to

18    plaintiff's counsel and they could redact attorney

19    information from those phone records, which we're

20    willing to do such that this becomes moot.

21            THE COURT:  Okay.  Mr. Crain?

22            MS. GLAVIN:  We haven't -- we haven't looked

23    at the records, which is what I represented to Mr.

24    Licul this morning, but we think the issue is moot and

25    we could look at the records at any point we wanted to

1    because they've been properly subpoenaed, but we're

2    offering that as a compromise such to eliminate this

3    issue before the Court.

4          THE COURT:  Mr. Crain, would you like to

5    respond?

6          MR. CRAIN:  Yes.  I want to also keep it

7    focused on the two sets of records you're talking

8    about.  But as a general matter, we don't agree that

9    it's a moot issue.  If the discovery in that case was

10   meant to find information relevant to this case, it was

11   improper discovery in that case and this Court could

12   still limit the use of those documents in this case by

13   applying a protective order, for instance.  We think

14   that would be appropriate since the parties were in

15   full negotiation of this issue to begin with and this

16   shouldn't just be end run now at this point, after time

17   has been spent deciding these objections.

18         But I'll say, you know, the Court --

19   clearly, now it's the records around Diane Perata and

20   certain phone numbers will be discovered.  And to the

21   extent that those are going to come out of these

22   records, fine.  And to the extent that the range that

23   the parties have agreed upon will come out of these

24   records, fine.  But apart from that, we do stand on our

25   objections and we think a protective order is an

1    appropriate way to enforce those objections.

2            THE COURT:  This is sort of the one the

3    things about civil discovery that is just so odd,

4    right?  They have the records subpoenaed on notice in

5    another case.  To pretend that they don't and to parse

6    the phone records during the discovery phase and issue

7    a protective order requires a level of granular

8    knowledge of the facts and circumstances and all of the

9    potential twists and turns that would require days of

10   evidentiary hearing for me to make a truly informed

11   ruling on.  And that's not what the purposes of civil

12   discovery are.  Civil discovery is broader than what

13   documents will ultimately be relevant at the ultimate

14   trial.  And if they have the documents, they have the

15   documents.  They're not going to be able to unsee them

16   once they start to review them.

17           So as to whether or not they would be usable

18   here, who knows?  They're going to have to be found

19   relevant, authentic, all of the normal things.  But

20   what would you even want me to have a protective order

21   look like?  Say they can't rely on anything before

22   December 1st, 2020 or anything in 2022?

23           MR. CRAIN:  That they should -- that we

24   should essentially treat it as though the previous

25   negotiations were in effect, that they have to submit

1   -- produce everything to us and apart from the records

2   that are discoverable, delete the rest of the records.

3           THE COURT:  They have them in the other

4   case.  To suggest that they're doing an end run around

5   the discovery process here because they found them

6   relevant in the related case is -- I don't know what

7   factual basis you might have for that assertion.

8   They're not going to delete them.  They're relevant in

9   the other case.  They're going to analyze them.

10  They're going to analyze them so that seems

11  indisputable.

12          What I think you should do is what Ms.

13  Glavin suggested.  They have not reviewed them.

14  They're willing to produce them to you.  You can go

15  through them.  You can redact them for the

16  attorney/client communications, any psychiatrist or

17  therapist communications, things we talked about along

18  those lines.  And if you find that there are certain

19  swaths of those records that you think are the proper

20  subject for some sort of protective order, you can let

21  me know.  But I am not going to issue a theoretical

22  protective order on the basis of phone records that I

23  haven't seen and that you haven't analyzed.

24          MR. CRAIN:  Understood, your Honor.  To be

25  clear, for one reason or another, Trooper 1's phone

1    company did not make her aware that this was happening,

2    so there's no chance to object and there was no finding

3    of relevance in that case, but your Honor's

4    instructions are clear.

5              MS. GLAVIN:  Your Honor --

6              THE COURT:  Ms. Glavin.

7              MS. GLAVIN:  -- one caveat.

8              THE COURT:  Yes, go ahead.

9              MS. GLAVIN:  Yeah, just one caveat quickly

10   to that.  I'm fine sending the records over to

11   plaintiff's counsel for redaction of attorneys' phone

12   numbers.  We do -- after our last conference and having

13   had some time to think about this, we do have an

14   objection to redaction of therapist or medical

15   providers' telephone numbers simply because we've

16   already received discovery.  I mean, she's seeking

17   damages and it is relevant how often she's talking to a

18   doctor or medical provider, and we've already received

19   a lot of healthcare records already.  So I think it

20   should be limited to just the attorneys, and we would

21   like a list from plaintiff's counsel of the names of

22   the attorneys whose numbers they redacted.

23             THE COURT:  Are you seeking emotional

24   distress damages above and beyond garden variety in

25   this case, Mr. Crain?

```
1                    MR. CRAIN:  We are.

2                    THE COURT:  Have you already provided HIPAA

3       authorizations for her medical providers, therapists,

4       and similar?

5                    MR. CRAIN:  We've provided the records

6       themselves.

7                    THE COURT:  Okay.  No HIPAA authorizations?

8                    MR. CRAIN:  We did not go the way of HIPAA

9       authorizations.

10                   THE COURT:  Is that going to be a problem

11      later on, Ms. Glavin?

12                   MS. GLAVIN:  It may be, and I think that

13      we'll be able to work it, won't we, Mr. Crain?

14                   MR. CRAIN:  I believe so.  I think we're

15      already there.

16                   THE COURT:  Okay.  So this is the thing:  I

17      don't have any idea what's in these phone records and

18      neither do the plaintiff's attorneys at this juncture.

19      So my view as to whether or not every single doctor is

20      relevant stands, right?  She may or may not be seeing

21      people who are completely irrelevant to the issues in

22      this case and she is entitled to some privacy, as we

23      all are, Ms. Glavin, regardless of the fact that she

24      brought a lawsuit.  If she's seeing somebody for an

25      independent, separate and distinct medical issue that
```

1    is not relevant to her claims of emotional distress

2    damages, is not contributing to any psychological

3    issues she claims to be having, et cetera, et cetera,

4    she's entitled to privacy on that point.  I'm not going

5    to get into a theoretical debate about which phone

6    numbers need to be redacted when we don't even know

7    what these records contain.

8            So I think the first step is for you to give

9    the records to the plaintiff's attorney.  They will

10   look through them, they will discuss them with their

11   client, they will figure out if there are areas that

12   they think need to be redacted.  They will provide you

13   a list of what they are redacting and why,

14   attorney/client communications, these are the

15   attorneys, attorney/client communications, these are

16   the attorneys, doctor/patient privilege relating, you

17   know -- I'm going to think of something -- whatever I

18   think of, you're going to tie it back to anxiety and

19   stress and interrelated causation, Ms. Glavin, but

20   there has to be a condition out there that can't be put

21   in that bucket.

22           I'm not going to theorize as to what it

23   might be but there's got to be.  So until and unless we

24   know what these records contain, I don't want to have

25   an esoteric debate about whether or not those things

1  can be redacted.

2              MS. GLAVIN:  Got it.

3              THE COURT:  Mr. Crain, does that work for

4  you to start?

5              MR. CRAIN:  Yes.  So my understanding is,

6  we'll take the records, we'll redact communications

7  with attorneys.  We'll redact any medical

8  communications not relevant to emotional distress and

9  we may need to confer about the scope of the rest of

10  medical discussions or medical-related discussions.

11             THE COURT:  I think you will need to confer

12  about the scope of the rest of the medical discussions.

13             Ms. Glavin, what did you want to say?

14             MS. GLAVIN:  No, that was it.  I said I got

15  it.  We'll give them the phone records and the

16  redactions for attorneys and for them to keep a list of

17  the attorneys, and the medical providers.

18             THE COURT:  Okay.  But if these are related

19  to folks she's seeing in regard to her emotional

20  distress damages, I do think that they -- there is

21  relevance there.  So that certainly clarifies things to

22  some degree.  As Ms. Glavin has not yet looked through

23  the records, I don't know for sure whether or not this

24  production of these phone records entirely moots out

25  the issues surrounding the Diane Perata phone record

1    subpoenas as well.  But at the prior conference, Ms.

2    Glavin, correct me if I'm wrong, the anticipated --

3    Trooper 1's phone records, at least a complete set,

4    could obviate the need for third-party discovery

5    relating to the Perata family phone records.  Is that

6    still the case, Ms. Glavin?

7            MS. GLAVIN:  Judge, I think that's right.  I

8    do want to think about it given that we still have --

9    we're still getting documents from troopers, so we may

10   revisit it.  But for the time being, I think that's

11   right.

12           THE COURT:  Okay.  So at this juncture, I

13   think that the motion that was -- I think it was like

14   sort of a re-up of -- we talked about it at the last

15   conference.  There was one motion, 136, that had a

16   broader swath of issues raised, and then 189 was like a

17   followup relating to Diane Perata's phone records

18   specifically.  I think what we'll do is, you know, sort

19   of just terminate that motion as moot without prejudice

20   should anything arise later, once you've had an

21   opportunity to review these records, that you think is

22   still incomplete and relevant.  Obviously, your first

23   recourse is to meet and confer with plaintiff's

24   counsel, see if you can work something out.  But I do,

25   you know, hear you based on the allegations that have

1    been made in the case to date as to the relevance of

2    the phone records relating to Diane Perata's

3    deposition.  So hopefully, this phone records

4    production will cover it.

5              MR. CRAIN:  Your Honor, may I add something?

6              THE COURT:  Yes.  This is Mr. Crain,

7    correct?

8              MR. CRAIN:  Yes, this is Mr. Crain.  I'm

9    sorry, I didn't mean to jump in but I just wanted to

10   make sure.

11             THE COURT:  No, go ahead.

12             MR. CRAIN:  You know, the reason there's a

13   dispute at all is that this was going to sweep in a

14   huge number of numbers of really no bearing on this

15   case at all.  There's sort of a prospect here, if now

16   subpoenas start getting issued to other phone numbers,

17   and defendants are investigating every other single

18   person she's called.  We're not narrowing the issues

19   here today, we're opening up a whole new set of issues.

20   I'm not sure if there would be any willingness or any

21   scope to limit that kind of discovery at least at this

22   juncture as we try to just organize the process towards

23   the party depositions.

24             MS. GLAVIN:  Your Honor, if I might be

25   heard.

```
1              THE COURT:  Yes.

2              MS. GLAVIN:  I don't know because I don't

3    know what's in these phone records and I don't want to

4    be, you know, boxed in.  We want to keep moving the

5    fact discovery along in the case.  So I just -- I feel

6    like this is very speculative.  I don't know what's in

7    there.  I haven't looked at them.

8              THE COURT:  That's the problem with

9    hypothetical rulings in the discovery phase on

10   documents nobody has reviewed, Mr. Crain.  There would

11   really be no basis for me to put guard rails up at this

12   juncture since I have no idea what's in there.  It may

13   or may not be that she was in regular communications

14   with members of her team, work-related, perhaps totally

15   appropriately.  It may be that she's having, you know,

16   2:00 a.m. conversations with folks that are highly

17   relevant to her determination to, you know, come

18   forward.  I have no idea what's in there and I can't

19   possibly start to put up limits or guard rails or issue

20   protective orders without more granular facts.

21             MR. CRAIN:  Understood, your Honor, thank

22   you.  So we'll review and we'll see what's in there and

23   we'll take it from there.

24             THE COURT:  Okay.  I think that is the only

25   way we can proceed given the change in the landscape
```

 1 | that we have just heard about.  So please do that, Ms.
 2 | Glavin.  Please communicate -- give them the phone
 3 | records, stay in communication with regard to whatever
 4 | time frame you guys decide upon for the plaintiff to
 5 | provide the redactions back to you and the format in
 6 | which they will be providing the list of attorneys and
 7 | the indications of what was redacted and why, kind of
 8 | like a privilege log.  I think that would be the best
 9 | approach so that you don't have to come back to me
10 | later to fight about each redaction.  That would
11 | certainly really be boring for all involved.
12 |         MS. GLAVIN:  I hope you're right, Judge.  I
13 | really hope you're right.
14 |         THE COURT:  I mean, really, if you want to
15 | put like boring discovery problems at the top of --
16 |         MS. GLAVIN:  I'm with you, I'm with you.
17 |         THE COURT:  And I don't mean to make light
18 | of the seriousness of the issue, Mr. Crain.  I
19 | recognize Mr. Licul's argument at the prior conference
20 | regarding the potential for an intrusion on her
21 | privacy, so I'm not making light of it.  But I do think
22 | it's important that we prioritize the battles in this
23 | case and choose the battles that are worth fighting.
24 |         That being said, is there anything that
25 | anybody would like to say who hasn't yet had an

1    opportunity to be heard?

2            Mr. Steele, is there anything you'd like to

3    add or say?

4            MR. STEELE:  No, your Honor, but thank you.

5            THE COURT:  Ms. Foti?

6            MS. FOTI:  No, nothing, thank you, your

7    Honor.

8            THE COURT:  Okay.  Is there anything else we

9    can realistically accomplish today on this topic?  Mr.

10   Crain?

11           MR. CRAIN:  No, nothing further from

12   plaintiff.

13           THE COURT:  Okay.  Ms. Glavin?

14           MS. GLAVIN:  No, your Honor.  Have a good

15   afternoon.

16           THE COURT:  On the buzzer, 3:30, we're done.

17   All right, have a great afternoon, you guys.  Take care

18   and stay safe.

19           MR. CRAIN:  Thank you, your Honor.

20                   *  *  *  *  *  *  *

21

22

23

24

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18     I certify that the foregoing is a correct

19 transcript from the electronic sound recording of the

20 proceedings in the above-entitled matter.

21

22

23

24

25 ELIZABETH BARRON                    February 1, 2024