February 1, 2024

**BY ECF**

Hon. Taryn A. Merkl
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

     **Re:**    ***Trooper 1 v. NYSP et al.*, 22-cv-893 (LDH) (TAM)**

Dear Judge Merkl:

We write jointly regarding the August 16, 2023 FRCP 45 subpoena for documents and deposition served on nonparty Charles Brown III ("Brown Subpoena" attached as **Exhibit A**). Counsel met and conferred on September 7, 2023 and December 6, 2023, and exchanged correspondence in the interim. As explained below, we are at an impasse as to two categories of documents.

**GOVERNOR CUOMO'S POSITION**
**1.  Mr. Brown Refuses to Comply Fully Even with a Narrowed Subpoena**

Mr. Brown, an NYPD officer, was Trooper 1's fiancé during the relevant period[1] and has information material to Trooper 1's claims and Governor Cuomo's defenses. Specifically, the Brown Subpoena, served on August 16, 2023, sought his communications with Trooper 1 concerning: (1) any of the allegations in Trooper 1's Complaint, including any communications concerning Governor Cuomo; (2) her NYSP colleagues; (3) her alleged emotional distress; and (4) her ████████████████████████████████████████████████████████████████████████ Ex. A at 9. On August 30, Mr. Brown issued a letter to Governor Cuomo broadly objecting to the subpoena as overbroad and unduly burdensome. Counsel for Governor Cuomo and Mr. Brown met and conferred on September 7. On September 28, Governor Cuomo proposed modifications to the Brown Subpoena narrowing the scope of (1) and (2), clarifying the communications sought in (3), and withdrawing (4) for the time being. *See* **Exhibit B** ("Modified Requests").[2]

Six weeks later, on November 9, counsel for Mr. Brown responded to Governor Cuomo's Modified Requests. *See* **Exhibit C**. Mr. Brown refuses to produce all

---

[1] While Governor Cuomo has confirmed that Mr. Brown and Trooper 1 were engaged to be married during the relevant period, counsel for Mr. Brown would not confirm the current status of their relationship.

[2] On September 14, 2023, counsel for Trooper 1 confirmed that she would "not rely on Mr. Brown or any events concerning him" to support her emotional damages claim. Governor Cuomo agreed to withdraw (4) but reserved the right to renew that request or seek additional discovery upon review of Mr. Brown's production or Trooper 1's deposition. Because Trooper 1 has put her mental state directly at issue, Governor Cuomo is entitled to explore whether there are other explanations for Trooper 1's claimed emotional distress, even if that wades into sensitive personal information regarding Mr. Brown and her relationship with him.

Hon. Taryn A. Merkl
February 1, 2024
Page 2 of 6

communications with Trooper 1 regarding Governor Cuomo and is willing to produce only communications related to any sexual harassment or inappropriate behavior by Governor Cuomo. Mr. Brown also refuses to search for communications with Trooper 1 regarding the 26 specific troopers identified in the Modified Requests,[3] claiming this request is overly broad and unduly burdensome and arguing that we should further narrow the list of troopers to only five.

We sought a further meet and confer with Mr. Brown's counsel to understand the volume of potentially responsive communications Mr. Brown possesses and the basis for his claim that it would be unduly burdensome to search for and produce all communications with Trooper 1 concerning Governor Cuomo or certain other troopers. During a December 6 call, Mr. Brown's counsel refused to engage meaningfully and stood by their position. Counsel refused, for example, to provide any details concerning the volume of communications encompassed by the disputed requests.[4] Mr. Brown's counsel also told us to get the materials from Trooper 1 even though Trooper 1 deleted her text messages.

We are thus at an impasse concerning whether Mr. Brown should produce his communications with Trooper 1 (i) concerning Governor Cuomo and (ii) about the NYSP troopers identified in the Modified Requests (together, the "Disputed Categories").

## 2. The Disputed Categories Seek Relevant Non-Privileged Material and Are Not Harassing or Overly Burdensome

Communications with Trooper 1 about Governor Cuomo are "plainly relevant." *In re Subpoena to Loeb & Loeb LLP*, No. 19 Misc. Civ. 241 (PAE), 2019 WL 2428704, at *3, 5 (S.D.N.Y. June 11, 2019) (nonparty required to produce documents and communications "with or about" the defendants and/or the action). Mr. Brown's contention that he should produce only communications relating to any alleged harassment or inappropriate behavior by Governor Cuomo is "too restrictive" because it would exclude communications concerning whether Trooper 1 was in fact uncomfortable with Governor Cuomo, whether she wanted to be assigned to the Travel Team, whether she was upset about being removed as Governor Cuomo's primary driver, whether she was upset by Governor Cuomo's criminal justice reform legislation or his COVID policies, or whether Trooper 1 had any other animus toward Governor Cuomo. *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 435–36 (S.D. Ind. 2010).

For the same reason, Governor Cuomo is entitled to obtain any communications with Trooper 1 concerning the troopers she identified as having information about her allegations. Indeed, we now know from other discovery that, contrary to Trooper 1's representations to the OAG, she spoke with numerous current and former PSU members about her allegations, the OAG Investigation, and the aftermath of the OAG Report. Governor Cuomo is entitled to obtain these materials so that he can understand Trooper 1's

---

[3] All of whom are current and former troopers whose names have come up in written and documentary discovery, or through depositions.

[4] In refusing to budge or explain the basis for his burden claim, Mr. Brown's counsel complained that the call was a "waste of time," directed Governor Cuomo to "take it up with the judge," and, declared the call was "over" as she hastily hung up.

Hon. Taryn A. Merkl
February 1, 2024
Page 3 of 6

work relationships, including whether, as she claims, she felt uncomfortable raising certain issues within her chain of command. If, for example, Trooper 1 communicated with Mr. Brown about her supervisors or about her PSU relationships, that would be highly relevant. Likewise, if Trooper 1 informed Mr. Brown about contacts she had with fact witnesses during the discovery process, that would also be highly probative.

Moreover, Trooper 1 alleges that, as a result of Governor Cuomo's alleged actions, she has "suffered, and continues to suffer, severe mental anguish and emotional distress." ECF 71 ¶¶ 163, 168, 173, 178, 183, 188. "[I]n seeking emotional distress damages, [Trooper 1] has opened the door to discovery into other potential sources or causes of that distress." *Giacchetto v. Patchogue-Medford Union Free Sch. Dist.*, 293 F.R.D. 112, 116 (E.D.N.Y. 2013). Governor Cuomo is thus entitled to investigate alternative causes for any emotional distress experienced by Trooper 1, including but not limited to Trooper 1's relationship with Mr. Brown, the aftermath of the public release of the OAG Report, her situation at work, and her relationships with NYSP colleagues. Mr. Brown cannot refuse to produce communications that shed light on these issues, including his communications with Trooper 1 concerning her NYSP colleagues.

Mr. Brown's argument that the Disputed Categories are unduly burdensome simply because he is a nonparty to this litigation is without merit. Trooper 1 did not retain text messages contemporaneous with her allegations or her involvement in the OAG/AJC Investigations. Governor Cuomo must rely on nonparty discovery to obtain such communications and his requests for relevant communications are thus directly proportional to the needs of this case. In addition, Mr. Brown has not articulated any reason why it would be unusually burdensome for him to comply with the document subpoena, despite requests from Governor Cuomo to do so. The Court should not credit Mr. Brown's unsupported assertions of undue burden. *See Fritz v. LVNV Funding, LLC*, 587 F. Supp. 3d 1, 4-5 (E.D.N.Y. 2022); *Exp.-Imp. Bank of Republic of China v. Democratic Republic of Congo*, No. 16-CV-4480 (JMF), 2022 WL 1452523, at *1 (S.D.N.Y. May 9, 2022).

**MR. BROWN'S POSITION**

In the latest version of Andrew Cuomo's campaign of retribution-by-litigation, he has served a wildly overbroad subpoena on Charles Brown III, Trooper 1's fiancé. Mr. Cuomo does so not because he has any reason to believe that Mr. Brown is in possession of relevant information but because he is trolling to find some communication between Trooper 1 and her romantic partner that may be embarrassing to them. He thus claims to be entitled to ***every*** communication that Mr. Brown, an NYPD officer, had with Trooper 1 mentioning Mr. Cuomo regardless of subject matter and without any restriction as to date. He also seeks any communications Mr. Brown had with Trooper 1 that mention any of ***26*** of Trooper 1's state police colleagues, regardless of subject matter or date. These requests are facially overbroad, seek irrelevant material, are disproportionate to the needs of this single-plaintiff discrimination case, and impose an undue burden on Mr. Brown.

Upon being served with the subpoena, Mr. Brown timely served objections on August 30, 2023. *See* **Exhibit D**. Since then, he has attempted to resolve these issues on several occasions, but defendant has refused to limit these requests to information that is relevant to the claims or defenses in this case.

**I.  Defendant is Not Entitled to Every Communication Between Mr. Brown and Trooper 1 in Which Defendant is Mentioned**

In Request No. 1, defendant seeks: "All communications between [Mr. Brown] and Trooper 1 concerning: (i) Governor Cuomo; (ii) the OAG Investigation and OAG Report; (iii) the AJC Investigation and AJC Report; and (iv) the aftermath of the public release of the OAG Report and AJC Report in connection with Trooper 1's employment at the NYSP" Ex. B. Mr. Brown has agreed to produce communications between himself and Trooper 1 that are responsive to 1(ii)-(iv). As a compromise to defendant's Request No. 1(i), Mr. Brown has also agreed to produce "communications between himself and Trooper 1 relating to any alleged sexual harassment or inappropriate behavior by Mr. Cuomo, if any." But defendant refuses to limit his request under 1(i) in *any* way, even suggesting during a conferral that communications in which Trooper 1 may have said that she was on her way back home from working for defendant could somehow be relevant.

As an initial matter, defendant fails to recognize that, as the party seeking to enforce a third-party subpoena under Fed. R. Civ. P. 45, he "must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003). Moreover, courts have repeatedly held that blanket discovery requests for "all communications" are "a red flag for overbreadth and undue burden" and "are presumptively improper." *Hedgeye Risk Mngmt., LLC, v. Dale* No. 21 Civ. 3697, 2023 WL 4353076 at * 2 (S.D.N.Y July 5, 2023) (internal citations omitted). Mr. Cuomo was a party in one such case. *See Cuomo v. New York State Assembly Judiciary Comm.* No. 22 MC 3027, 2023 WL 4714097, at *14 (E.D.N.Y. July 21, 2023) (finding that Mr. Cuomo failed to meet his burden of relevance given the broad scope of his requests).

Here, defendant has not even attempted to show how "all communications" mentioning Mr. Cuomo are relevant. Rather, for the first time, defendant asserts there are five subjects that Trooper 1 may have mentioned to Mr. Brown that could possibly be relevant and which would not be captured by Mr. Brown's proposed response to the subpoena. But several of these subjects, including Trooper 1's hypothetical views on criminal justice reform and COVID policy, appear to have little, if any, relevance to the claims and defenses. More importantly, if there were specific subjects of communications that were relevant to this case, defendant was obliged to serve a request for ***those subjects*** (as he did with Request 1(ii)-(iv)), not an overbroad request for "all communications" in which Mr. Cuomo's name appears, regardless of subject matter or date. *See Hedgeye Risk Mngmt., LLC*, 2023 WL 4353076 at * 2 (overly broad subpoena quashed even where the request could encompass some relevant material). Collecting and producing all documents responsive to such a broad request is unreasonable and disproportionate for a nonparty such as Mr. Brown, who is a working police officer with limited time and resources to devote to this effort. The request, moreover, is particularly inappropriate because the wide net cast by Mr. Cuomo is likely to pick up private and irrelevant communications between Mr. Brown and his intimate partner. Thus, defendant's request for *all* communications between Trooper 1 and Mr. Brown that concern Mr. Cuomo should be denied.

Hon. Taryn A. Merkl
February 1, 2024
Page 5 of 6

**II.      Mr. Cuomo's Request For All Communications Between Mr. Brown and Trooper 1 in which Any of 26 Colleagues are Mentioned is Improper**

Defendant's Request No. 2, seeks "[a]ll Communications between [Mr. Brown] and Trooper 1 concerning any of Trooper 1's current or former NYSP colleagues, including but not limited to Diane Parrotta." Ex. B.  In the conferral process, defendant agreed to "limit" this request by providing the names of 26 current or former colleagues of Trooper 1. Defendant requires that Mr. Brown conduct a search and produce communications with Trooper 1 in which any of these 26 people are mentioned, which defendant claims should be "a starting point" for this production. *See* **Exhibit B** at 2. Defendant claims that these communications should be produced because Trooper 1 "spoke with numerous current and former PSU members about her allegations, about the OAG Investigation, and about the aftermath of the OAG Report." But this justification is invalid because communications between Mr. Brown and Trooper 1 concerning her allegations and the OAG investigation are already within the scope of what Mr. Brown has agreed to produce in response to Request No. 1.

Defendant's further claim that the requested documents would allow him to "understand [Trooper 1's] work relationships" is unpersuasive. The mere mention of a colleague's name in an email or text does not suggest that it would reveal anything probative about Trooper 1's "relationship" with that colleague. More fundamentally, Trooper 1's relationship with *all* of her colleagues on the NYSP, past or present, is not plausibly relevant to the claims and defenses in this action, which concern Trooper 1's interactions *with Mr. Cuomo*. Moreover, defendant has completely failed to explain the specific relevance of any of those 26 individuals he seeks discovery about, confirming that this is nothing more than a fishing expedition. *See Mamakos v. United Airlines, Inc.*, No. 14-CV-7294, 2018 WL 4861392, at *2 (E.D.N.Y. Sept. 28, 2018 (citations omitted) ("[t]he party seeking discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition"; *see also Citizens Union of City of New York v. Attorney Gen. of New York*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017) ("The party seeking discovery bears the initial burden of proving the discovery is relevant."). As drafted, Mr. Brown would be required to produce any conversation in which Trooper 1 mentioned any of the 26 individuals, including if it was about mundane topics such as what someone ate for lunch or where they planned to go on vacation. The request is thus facially overly broad, not proportional to the needs of the case, and unreasonably burdensome.

Finally, defendant asserts that the requests at issue have bearing on Trooper 1's claim for emotional distress because they may reveal information about "Trooper 1's relationship with Mr. Brown, the aftermath of the public release of the OAG Report, her situation at work, and her relationships with NYSP colleagues." But the two requests at issue here have *no* bearing on Trooper 1's emotional distress. Moreover, in response to Request No 3, Mr. Brown has already agreed to produce "communications between himself and Trooper 1 concerning any emotional distress she experienced arising out of the OAG Investigation, OAG Report, AJC Investigation, and AJC Report—including communications concerning the aftermath of the public release of these reports." Ex. B-C.

Thus, defendant's application should be denied in its entirety.

Hon. Taryn A. Merkl
February 1, 2024
Page 6 of 6

LAW OFFICE OF KEVIN MINTZER, P.C.

By:  */s/ Kevin Mintzer*
Kevin Mintzer
Laura Koistinen
1350 Broadway, Suite 1410
New York, New York 10018
Tel. (646) 843-8181
KM@mintzerfirm.com
llk@mintzerfirm.com

*Attorneys for Nonparty Charles Brown III*

SHER TREMONTE LLP

By:  */s/ Theresa Trzaskoma*
        Theresa Trzaskoma
90 Broad Street
23rd Floor
New York, New York 10004
Tel. (212) 202-2600
ttrzaskoma@shertremonte.com

GLAVIN PLLC
Rita Glavin
156 West 56th Street, #2004
New York, New York 10019
Tel. (646) 693-5505
rglavin@glavinpllc.com

*Attorneys for Defendant Andrew M. Cuomo*