# Morvillo Abramowitz Grand Iason & Anello P.C.

ELKAN ABRAMOWITZ
RICHARD F. ALBERT
ROBERT J. ANELLO*
KATHLEEN E. CASSIDY
BENJAMIN S. FISCHER
CATHERINE M. FOTI
CHRISTOPHER B. HARWOOD
LAWRENCE IASON
BRIAN A. JACOBS
TELEMACHUS P. KASULIS
KAREN R. KING
THOMAS A. McKAY
ROBERT M. RADICK*
JONATHAN S. SACK**
EDWARD M. SPIRO
JEREMY H. TEMKIN
RICHARD D. WEINBERG

565 FIFTH AVENUE
NEW YORK, NEW YORK 10017
(212) 856-9600
FAX: (212) 856-9494

www.maglaw.com

WRITER'S CONTACT INFORMATION

cfoti@maglaw.com
(212) 880-9530

SENIOR COUNSEL
PAUL R. GRAND

COUNSEL
JASMINE JUTEAU

ROBERT G. MORVILLO
1938-2011
MICHAEL C. SILBERBERG
1940-2002
JOHN J. TIGUE, JR.
1939-2009

*ALSO ADMITTED IN WASHINGTON, D.C.
**ALSO ADMITTED IN CONNECTICUT

February 8, 2024

**BY ECF**
Hon. Taryn A. Merkl
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    *Trooper 1 v. New York State Police et al.*, No. 22-cv-00893 (LDH) (TAM)

Dear Judge Merkl:

    This firm represents Melissa DeRosa and Richard Azzopardi, defendants in this action. I write to provide a brief reply to the letter submitted by Lindsey Boylan's counsel, dated February 7, 2024 (ECF No. 238), which we believe misconstrues my letter to the Court dated January 29, 2024. Contrary to Ms. Boylan's suggestion that my letter is an attempt to limit Ms. Boylan's right to free speech, my letter was directed primarily at stopping Ms. Boylan's attempt to intimidate individuals and potential witnesses who follow my client, Richard Azzopardi, on social media and to prevent Ms. Boylan from improperly influencing the minds of members of the public who may be called to sit as jurors on the trial of this or related cases.

    As my letter demonstrates, Ms. Boylan sent the following direct message in the middle of the night to an individual she identified as being a follower of both Mr. Azzopardi and herself: "You follow someone (rich Azzopardi) who has made a career of smearing me after I was abused by our boss. Pls unfollow him or unfollow me." Although the nature of the threat may appear insignificant on its face, the fact that Ms. Boylan is engaging in these types of midnight communications demanding that someone unfollow her is highly troubling. Ms. Boylan attempts to diminish the impact of this communication by claiming that she does not know the recipient of her private message, and by suggesting that her conduct was limited to messaging this one "random social media follower." ECF No. 238. However, Ms. Boylan's admission highlights precisely the problem we believe requires the Court's attention. If, in fact, Ms. Boylan sent just one limited message of this type to one individual, she certainly would be able to identify who received the message. The fact that she does not know to whom she sent the message strongly

Morvillo Abramowitz Grand Iason & Anello P.C.

suggests that Ms. Boylan sent a number of other similar messages to other followers who also followed Mr. Azzopardi. Moreover, if Ms. Boylan's intent in sending the message was solely because she did not want to share her opinions with an individual who was connected with Mr. Azzopardi, she could have achieved this purpose through a much less nefarious means, by choosing to either block or unfollow the person herself. But she chose not to do so. Ms. Boylan intentionally chose to reach out to the person directly, in a manner that was threatening and unnecessary, and which completely contradicts any claim that she does not want to be involved in this litigation.

Mr. Azzopardi is a party and witness in this case and a purported witness in other cases concerning the allegations of sexual harassment levied at former Governor Andrew Cuomo.[1] Given the fact that the evidence already presented to this Court demonstrates that Ms. Boylan engaged in other acts of apparent attempted intimidation, Mr. Azzopardi had reason to believe that Ms. Boylan's direct message threats to his followers were neither limited nor innocent. Neither he, nor his followers, should be concerned that their choice to follow anyone on a public social media page will expose them to potential similar acts of intimidation. No matter how loudly Ms. Boylan argues for protection under the First Amendment, her right to free speech does not protect her from intimidating potential witnesses in this case or from potentially poisoning the jury pool.[2]

Finally, any suggestion that my clients should be prevented from raising similar concerns with the Court in the future, or that our decision to do so here, was improper is baseless. In fact, New York Rule of Professional Conduct 3.6(d) actually compels me to write the Court to protect both my clients from the prejudicial effect of recent publicity: "a lawyer may make a statement that a reasonable lawyer would believe is required to protect a client from the substantial prejudicial effect of recent publicity not initiated by the lawyer or the lawyer's client." There is nothing in this rule that suggests the prejudicial publicity against which attorneys are required to protect their clients is limited to professional publications. Ms. Boylan has chosen to make false public statements against both my clients. As their attorney, I am entitled to work to protect them from such conduct and from the negative effects of her prejudicial public posts.

---

[1] In her February 7 letter, Ms. Boylan attempts to distract from her improper conduct by pointing to the fact that Ms. DeRosa published a book which discussed the harassment allegations, including those made by Ms. Boylan. ECF No. 238. Unlike Ms. Boylan's tweets, which make false and defamatory allegations without factual support, Ms. DeRosa's book focuses on Ms. Boylan's own contradictory statements about her experience in the Executive Chamber by citing Ms. Boylan's testimony and the documentary evidence concerning the issues underlying the Attorney General's investigation.

[2] Notwithstanding the fact that my primary concern with Ms. Boylan's conduct is her attempted intimidation, it is also the case that Ms. Boylan's statements about Mr. Azzopardi are false. Contrary to Ms. Boylan's claims about free speech, the First Amendment does not protect anyone from making false or defamatory statements about another person. *Celle v. Filipino Rep. Enterprises Inc.*, 209 F.3d 163, 189 (2d Cir. 2000) (finding defamatory public statements were not protected free speech).

Morvillo Abramowitz Grand Iason & Anello P.C.

      Moreover, as Rule 1.1(c)(1) of the Rules of Professional Conduct provides: "A lawyer shall not intentionally . . . fail to seek the objectives of the client through reasonably available means permitted by law and these Rules."  Here my clients are entitled to be protected from unreasonable acts of intimidation in which Ms. Boylan engaged, and my request to achieve that protection and to avoid the improper influencing of the very jury pool that may one day be charged with determining whether they have any liability in this or other actions is reasonable and wholly consistent with my duty as their attorney.  *See Grievance Comm. v. Simels*, 48 F.3d 640, 650 (2d Cir. 1995) (acknowledging the "overriding concern of . . . a lawyer's ethical duty of zealous advocacy").  Ms. Boylan has been making false comments about Ms. DeRosa and Mr. Azzopardi at this point for years and we have remained silent in the face of those defamatory statements.  Her attempt now, however, to not only defame my clients but also couple her false statements with acts of intimidation is a step too far.  Accordingly, we respectfully request that the Court direct Ms. Boylan to stop any further intimidating conduct or publications that may poison the jury pool.

                                                                        Respectfully submitted,

                                                                        /s/ Catherine M. Foti
                                                                        Catherine M. Foti

Cc:  Counsel for Non-party Lindsey Boylan
       E. Danya Perry
       Julie R. F. Gerchik