UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X

TROOPER 1,

                          Plaintiff,

              -against-

NEW YORK STATE POLICE, ET AL.,

                          Defendants.

-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
22-CV-893 (LDH) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On February 17, 2022, Trooper 1 ("Plaintiff"), a member of former New York

Governor Andrew Cuomo's Protective Service Unit ("PSU"), initiated this action

alleging that Cuomo sexually harassed her and other state employees. (Compl., ECF

No. 1.) The amended complaint named as Defendants the New York State Police

("NYSP"), Cuomo, Melissa DeRosa, and Richard Azzopardi. (*See* First Am. Compl.

("FAC"), ECF No. 7; Second Am. Compl. ("SAC"), ECF No. 71.) Currently before the

Court is a motion by which Defendants Cuomo, DeRosa, and Azzopardi (collectively

referred to as "Defendants") ask the Court to de-designate discovery materials marked

confidential by non-party witness Ana Liss-Jackson pursuant to the operative

confidentiality order in this case. (Mot. for Disclosure, ECF Nos. 221, 222;[1] DeRosa &

Azzopardi Letter, ECF Nos. 223-1, 224.[2]) The Defendants request that portions of Ms.

Liss-Jackson's deposition transcript and text messages between Ms. Liss-Jackson and

---

[1] ECF Number 222 is the publicly filed redacted version of ECF Number 221, which was
filed under seal.

[2] ECF Number 224 is the publicly filed redacted version of ECF Number 223-1, which
was filed under seal.

non-party Lindsey Boylan be de-designated and unsealed by the Court. For the reasons discussed herein, the motion for de-designation is denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Of relevance to the current motion, discovery in this case commenced following the initial conference, which was held on June 6, 2022.[3] On April 24, 2023, the Court entered a confidentiality order permitting the designation as confidential certain discovery material, including materials described as "Sensitive Information and Data," and specifying that the definition of producing party may include "any party or nonparty making a production of documents or information in this matter." (Am. Confidentiality Order, ECF No. 68, at 1.)

Currently before the Court is Defendant Cuomo's letter motion to de-designate materials marked confidential by non-party Ana Liss-Jackson. (Mot. for Disclosure, ECF Nos. 221, 222.) Defendants DeRosa and Azzopardi filed a letter joining Defendant Cuomo's motion;[4] non-party Lindsey Boylan filed a response in opposition. (DeRosa & Azzopardi Letter, ECF Nos. 223-1, 224; Resp. in Opp'n, ECF No. 243; *see also* DeRosa & Azzopardi Mem. of Law, ECF No. 120 (filed in support of a prior request to de-designate the Liss-Jackson deposition).) Ms. Liss-Jackson has not filed a response, and her counsel has not filed an appearance in this case. However, on August 9, 2023, in

---

[3] This opinion assumes general familiarity with the substance and history of this case, as well as the fact that the New York State Office of the Attorney General and the New York State Assembly Judiciary Committee conducted investigations into allegations of sexual harassment by former Governor Cuomo while he was in office, which investigations resulted in public reports published in August 2021 and November 2021, respectively. *See generally Cuomo v. N.Y. State Assembly Judiciary Comm.*, ___ F. Supp. 3d ___, 2023 WL 4714097 (E.D.N.Y. July 21, 2023).

[4] The Court notes that Defendants DeRosa and Azzopardi have been dismissed from the case. (*See* Sept. 29, 2023 ECF Order.) However, because they do not yet know whether they are fully dismissed from the case with prejudice, or whether Trooper 1 will seek to amend her complaint, they are continuing to participate in discovery.

connection with a prior effort to de-designate the transcript of Ms. Liss-Jackson's

deposition, Cuomo filed a letter from Ms. Liss-Jackson's counsel discussing her interest

in the designation of the transcript and other materials as confidential. (Liss-Jackson

Letter, ECF No. 110-1.)

This is not Defendants' first effort to publicly file the Liss-Jackson deposition

transcript. Their efforts started in July 2023, shortly after the deposition was held.[5] (The

transcript and deposition are referred to herein as the "*Trooper 1* Transcript" and the

"*Trooper 1* Deposition.") In connection with those prior efforts, the Court has already

declined to unseal the *Trooper 1* Transcript, finding that it is not a judicial document and

that Ms. Liss-Jackson had demonstrated reliance on the confidentiality order. (*See*

Order, ECF No. 204, at 3 n.1.) As noted above, in connection with the prior motions

concerning the *Trooper 1* Transcript, various documents were filed by Defendants and

counsel for Ms. Boylan, and Cuomo also filed a letter and correspondence with counsel

---

[5] Specifically, on July 18, 2023, Cuomo filed a motion to file documents under seal, to which he attached the Liss-Jackson deposition transcript. (*See* Cuomo Letter, ECF Nos. 93, 94 (sealed and public versions of Cuomo's request to file a letter and certain portions of the *Trooper 1* Deposition under seal, based on her designation that the deposition was confidential).) The very next day, Cuomo filed another motion for leave to file under seal, attaching the *Trooper 1* Transcript and certain text messages between Ms. Liss-Jackson and Ms. Boylan. (*See* Mot. for Leave & Exs. C–D, ECF Nos. 98, 98-3, 98-4.) In response, the Court provided Ms. Liss-Jackson and Ms. Boylan the opportunity to respond. (*See* Aug. 1, 2023 ECF Order.) In response, Cuomo filed a letter from counsel for Ms. Liss-Jackson, and on August 9, 2023, Ms. Boylan filed a request to seal and accompanying exhibits. (*See* Liss-Jackson Letter, ECF No. 110-1; Boylan Resp., ECF Nos. 111, 209 (sealed and unsealed versions of Ms. Boylan's response).) On August 11, 2023, counsel for Ms. Boylan filed a further letter in support of sealing. (Resp. in Opp'n, ECF No. 114.) Cuomo thereafter filed a response, in which he argued that the *Trooper 1* Transcript should be publicly filed; he also attached email correspondence with Ms. Liss-Jackson's counsel. (Aug. 16, 2023 Cuomo Response, ECF No. 118; Email Correspondence, ECF No. 118-1.) As noted, some of these filings related to Ms. Liss-Jackson were originally filed as motions to file documents under seal. The Court ruled on several such motions on December 26, 2023, and declined to unseal the filings that included the *Trooper 1* Transcript. (Order, ECF No. 204.) Specifically, the Court found that the "transcript is not a judicial document and Cuomo has not demonstrated an 'extraordinary circumstance or compelling need' to modify the protective order in this case, on which nonparty Ms. Liss-Jackson has demonstrated reliance." (*Id.* at 3, n.1 (quoting *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001).)

3

for Ms. Liss-Jackson. In those filings, counsel for Ms. Liss-Jackson raised her privacy concerns, as well as concerns over the apparent release of the *Trooper 1* Transcript to the media while the parties appear to have been discussing the transcript's confidentiality designation. (*See* Email Correspondence, ECF No. 118-1, at ECF pp. 2, 5 (email from counsel for Ms. Liss-Jackson inquiring: "How did the media get a copy of my client's deposition . . . [?]", and expressing concern about the release of Ms. Liss-Jackson's "*unauthenticated* Deposition testimony to both the NYT and Madeline Cuomo's 'hit team'" (emphasis in original)).) Relatedly, the Court notes that, around the same time as Cuomo's first effort to publicly file the *Trooper 1* Transcript, a journalist who maintains a blog called *TheFreeLanceNews.org* filed a motion to intervene in this case, specifically asserting that he is in possession of the transcript. (*See* Mot. to Intervene, ECF No. 124.) That motion is addressed in a separate opinion issued simultaneously with this one.

The saga now continues. In the current motion, Cuomo contends that Ms. Liss-Jackson cannot utilize the provisions of the confidentiality order to seal certain portions of the *Trooper 1* Transcript *at all*. He posits that information provided during discovery that concerns information that is already "public" in some fashion cannot be sealed under the confidentiality order's terms, even where the information at issue was not made public by the producing party. Although the Court is of course sensitive to the important distinction between publicly-available information and private information, and does not condone over-designation of information as confidential under the guise of the confidentiality order in this case, prior disclosure of certain sensitive information by a third party does not negate a party's ability to seek confidential treatment of newly-provided sensitive information.

Adopting Defendants' reasoning would open a Pandora's box of motions in this already fraught case. Parties from whom discovery is sought could have concerns that

4

Defendants will seek to pull the rug out from under them *after* they have already provided discovery; they thus may find it necessary to seek additional protective orders from the Court because the confidentiality order cannot be relied upon. In the alternative, parties who are seeking to publicize some aspect of discovery that they find favorable to their side may seek to strategically de-designate material provided in confidence claiming that it concerns information that is already in some way public. This could, in turn, result in requests that the Court sift through the mountains of discovery that Defendants are seeking to generate in this case to compare the discovery to information that is arguably available in the public domain. Any of these approaches would be entirely unworkable and could risk bringing discovery to a grinding halt.

Given the sensitive nature of the sexual harassment allegations in this case — and the significant amount of personal discovery Cuomo is seeking from non-party witnesses — for discovery in this case to work, the parties and non-parties must have the ability to rely on the confidentiality order. *See generally Trooper 1 v. New York State Police*, No. 22-CV-893 (LDH) (TAM), 2024 WL 165159 (E.D.N.Y. Jan. 16, 2024) (hereinafter *Trooper 1 Discovery/Protective Order*), ECF No. 220 (discussing Cuomo's robust discovery efforts, including subpoenas to multiple non-party complaining witnesses that have sought, *inter alia*, non-privileged private communications with or about other complainants and witnesses, documents and communications concerning allegations of sexual harassment, and information from third parties regarding the complainants); *Trooper 1 v. New York State Police*, No. 22-CV-893 (LDH) (TAM), 2024 WL 168326 (E.D.N.Y. Jan. 16, 2024), ECF No. 218 (discussing numerous subpoenas issued seeking information regarding Ms. Boylan, including but not limited to information regarding prior sexual behavior). (Non-party complaining witnesses who have made sexual harassment allegations against Cuomo and others in the New York State

5

Executive Chamber, including Ms. Liss-Jackson, are referred to herein, collectively, as "complainants.")

For the reasons set forth below, the motion to de-designate portions of the *Trooper 1* Transcript and certain text messages Ms. Liss-Jackson produced in discovery is denied.

## DISCUSSION

### I. Legal Standards

#### A. Confidentiality Orders to Manage Discovery

"In large complex cases, courts often enter into 'umbrella' protective orders, which permit parties to designate in advance a large volume of discovery material as confidential." *In re Zyprexa Inj.*, 474 F. Supp. 2d 385, 416 (E.D.N.Y. 2007). In determining whether a confidentiality order applies to material designated confidential, the order "must be construed according to general principles of contract law." *City of Hartford v. Chase*, 942 F.2d 130, 134 (2d Cir. 1991). In such an interpretation, the plain meaning of the words in the order will control. *Id.* In the event of a challenge to a confidentiality designation, "the burden of establishing that there is good cause to protect the designated materials rests at all times with the party seeking protection." *In re Zyprexa*, 474 F. Supp. 2d at 416. At the same time, however, it is well established that courts have the "inherent equitable power" to grant confidentiality orders and that "[c]ourts are endowed with broad discretion to tailor protective orders to the circumstances of a particular litigation." *Id.* at 413 (first citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984), then citing *Rhinehart*, 467 U.S. at 36 ("The unique character of the discovery process requires that the trial court have substantial latitude to fashion protective orders.")).

**B.  Reasonable Reliance on a Confidentiality Order**

As a general matter, a district court should not modify a confidentiality order where "there has been reasonable reliance by a party or deponent" unless there is "a showing of . . . some extraordinary circumstance or compelling need." *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001) (quotation marks omitted). "There is a strong presumption against modifying protective orders because they serve the vital function of ensuring just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all relevant evidence." *Arcesium LLC v. Advent Software, Inc.*, No. 20-CV-4389 (MKV), 2022 WL 621973, at *3 (S.D.N.Y. Mar. 3, 2022) (citation omitted). This presumption is appropriate because "[i]f protective orders were easily modified . . . parties would be less forthcoming in giving testimony and less willing to settle their disputes." *TheStreet.Com*, 273 F.3d at 230.

Four relevant factors (the "*Charter Oak* factors") guide courts in the Second Circuit in the determination of whether a party has reasonably relied on a protective order: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." *Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 287 F.R.D. 130, 132 (E.D.N.Y. 2012) (quotation marks omitted); *see also Bartlett v. Société Générale de Banque au Liban SAL*, No. 19-CV-07 (CBA) (TAM), 2023 WL 8828864, at *4–5 (E.D.N.Y. Dec. 21, 2023) (applying the *Charter Oak* factors); *Arcesium*, 2022 WL 621973, at *3 (same); *Tradewinds Airlines, Inc. v. Soros*, No. 08-CV-5901 (JFK), 2016 WL 3951181, at *3–5 (S.D.N.Y. July 20, 2016) (same).

**C.  First Amendment Implications**

Given the sweeping breadth of civil discovery, it is well settled that the district courts' "power to seal extends to court filings and documents produced in discovery."

*In re Zyprexa*, 474 F. Supp. 2d at 413; *see also id.* at 413–14 (discussing the broad scale of modern discovery and the risks it poses to privacy and confidentiality). At the same time, "it is important to recognize the extent of impairment of First Amendment rights that a protective order" may cause. *Rhinehart*, 467 U.S. at 32. As the Supreme Court has observed, litigants who seek to publicize information learned during the course of a civil case have gained "the information they wish to disseminate only by virtue of the trial court's discovery processes," which processes "are a matter of legislative grace." *Id.* Accordingly, "[a] litigant has no First Amendment right of access to information made available only for purposes of trying his suit. Thus, continued court control over the discovered information does not raise the same specter of government censorship that such control might suggest in other situations." *Id.* (citation omitted).

In reference to the information gathered through pre-trial discovery, the *Rhinehart* Court further observed that:

> [P]retrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law, *Gannett Co. v. DePasquale*, 443 U.S. 368, 389 (1979), and, in general, they are conducted in private as a matter of modern practice. *See id.* at 396 (BURGER, C.J., concurring) . . . . Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.

> Finally, it is significant to note that an order prohibiting dissemination of discovered information before trial is not the kind of classic prior restraint that requires exacting First Amendment scrutiny. *See* [*Gannett Co.*, 443 U.S. at 399] (POWELL, J., concurring). As in this case, such a protective order prevents a party from disseminating only that information obtained through use of the discovery process. Thus, the party may disseminate the identical information covered by the protective order as long as the information is gained through means independent of the court's processes. In sum, judicial limitations on a party's ability to disseminate information discovered in advance of trial implicates the First Amendment rights of the restricted party to a far lesser extent than would restraints on dissemination of information in a different context.

*Rhinehart*, 467 U.S. at 33–34 (citations and footnote omitted); *see also Mirlis v. Greer*, 952 F.3d 51, 58 n.5 (2d Cir. 2020) (noting that "the U.S. Constitution has not generally been held to compel public access to deposition transcripts and recordings, at least not as a matter of course" (citing *Rhinehart*, 467 U.S. at 32)).

## II. Analysis

Cuomo, joined by DeRosa and Azzopardi, seeks de-designation of (1) the portion of Ms. Liss-Jackson's *Trooper 1* Deposition testimony regarding her prior testimony in the investigation conducted by the New York State Office of the Attorney General ("OAG"); (2) certain text messages between Ms. Liss-Jackson and Ms. Boylan that were provided during discovery; and (3) Ms. Liss-Jackson's *Trooper 1* Deposition testimony regarding certain text messages between her and Ms. Boylan. (Mot. for Disclosure, ECF Nos. 221, 222, at 2–5.)

For the reasons set forth below, the Court first finds that the confidentiality order permits Ms. Liss-Jackson's designation of the *Trooper 1* Transcript as confidential. Second, text messages between Ms. Liss-Jackson and Ms. Boylan, as well as testimony regarding those messages, are likewise appropriately designated as confidential. Third, Ms. Liss-Jackson reasonably relied on the confidentiality order, such that de-designation of the materials would be presumptively unfair at this juncture. Finally, Cuomo has not demonstrated good cause to modify the order as to these materials.

### A. Application of the Confidentiality Order

Cuomo first contends that the materials at issue cannot be designated confidential under the confidentiality order. (Mot. for Disclosure, ECF Nos. 221, 222, at 2.) More specifically, he posits that the materials are not definitionally "confidential" because (1) they do not comprise information that is "customarily kept private, or at least closely held, by the person imparting it," and (2) "the party receiving [the

9

information did not] provide[] some assurance that it will remain secret." (*Id.* at 2–4

(quoting *Food Marketing Inst. v. Argus Leader Media*, 139 S. Ct. 2356, 2363 (2019)

(emphasis omitted).)

The Court first turns to the language of the confidentiality order. It states, in

pertinent part, as follows:

> It is hereby ordered that the following provisions shall govern claims of
> confidentiality in these proceedings, including with respect to any
> documents or information produced by a nonparty pursuant to subpoena:
>
> > (a) The following documents and information may be designated as
> > "confidential," provided such documents are not public and have
> > not previously been disclosed by the producing party to anyone
> > except those in its employment or those retained by it or in the
> > course of carrying out or cooperating with a government
> > investigation:
> >
> > > (i) Sensitive Information and Data, such as documents,
> > > testimony or electronically stored information that can
> > > reasonably be construed as revealing a party's non-public
> > > confidential personal, proprietary or investigative
> > > information; or documents containing private or confidential
> > > personal information, specifically including personnel
> > > records or information regarding applicants, employees,
> > > former employees, or confidential informants of Defendant
> > > New York State Police other than the Plaintiff; or documents
> > > or data containing information received in confidence from
> > > third parties; or documents containing information which
> > > the producing party otherwise believes in good faith to be
> > > entitled to protection under Rule 26(c)(1)(G) of the Federal
> > > Rules of Civil Procedure; or information which comprises
> > > highly sensitive information relating to criminal
> > > investigations, investigation techniques, or other law
> > > enforcement related procedures or techniques, or personnel
> > > information pertaining to past or current New York State
> > > Police employees.

(Am. Confidentiality Order, ECF No. 68, at 1–2 (footnote omitted).)

The plain text of the confidentiality order provides that "Sensitive Information

and Data," may be designated as confidential "provided such documents are not public

and have not previously been disclosed by the producing party." (*Id.* at 1.) In addition,

the definition of "Sensitive Information and Data" is a non-exclusive list; it expressly includes documents, testimony, and electronically stored information, which examples are preceded by the phrase "such as." (*Id.*) "[T]he use of the term 'such as' confirms[ that] the list is illustrative, not exhaustive." *Bragdon v. Abbott*, 524 U.S. 624, 639 (1998); *see also Marvin J. Perry, Inc. v. Hartford Cas. Ins. Co.*, 615 F. Supp. 2d 432, 436 (D. Md. 2009) (applying the *Bragdon* principle to interpretation of an insurance contract). Accordingly, the Court finds that the confidentiality order is applicable to, *inter alia*, documents, testimony, and electronically stored information that are not otherwise public and have not been previously disclosed by the producing party, and which "can reasonably be construed as revealing a party's non-public confidential personal, proprietary or investigative information" *or* "containing information received in confidence from third parties." (Am. Confidentiality Order, ECF No. 68, at 1–2.)[6] The narrower definition Cuomo advances is not contained in the order.

---

[6] "Sensitive Personal Data, such as personal identifiers, financial information, tax records, and employer personnel records" is defined as a category separate from "Sensitive Information and Data." (Am. Confidentiality Order, ECF No. 68, at 1–2.) As the Second Circuit has observed:

> In interpreting a contract under New York law, "words and phrases . . . should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions." *Olin Corp. v. Am. Home Assurance Co.*, 704 F.3d 89, 99 (2d Cir. 2012) (internal quotation marks omitted). "An interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless is not preferred and will be avoided if possible." *LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp.*, 424 F.3d 195, 206 (2d Cir. 2005) (alterations and internal quotation marks omitted).

*Process America, Inc. v. Cynergy Holdings LLC*, 839 F.3d 125, 133 (2d Cir. 2016). Thus, "Sensitive Information and Data" should be interpreted as a category of information separate and apart from "Sensitive Personal Data." In addition, the Court construes "Sensitive Information and Data" broadly, as discussed above, given the clear intention of the confidentiality order to provide a non-exhaustive list of examples of materials that may be designated as confidential.

1. *Ms. Liss-Jackson's* Trooper 1 *Deposition Testimony*

Cuomo asserts that Ms. Liss-Jackson's *Trooper 1* Deposition testimony about her testimony in the OAG investigation concerns a matter of public record that has not been kept private by Ms. Liss-Jackson. (Mot. for Disclosure, ECF Nos. 221, 222, at 3.) In support of this position, Cuomo claims that Ms. Liss-Jackson has made statements to the media regarding her OAG testimony and he argues that "even if her testimony to the OAG was confidential at one point, it lost that status once the OAG released her transcript to the public and included her allegations in the OAG Report. Thus, Ms. Liss-Jackson's deposition testimony about matters already in the public domain is by definition not confidential." (*Id.* at 3.)

In connection with Cuomo's prior efforts to de-designate Ms. Liss-Jackson's *Trooper 1* Transcript, counsel for Ms. Liss-Jackson stated that she objects to both the public release of her *Trooper 1* Deposition testimony,[7] as well as the OAG's release of her testimony, which was done without her consent. (Liss-Jackson Letter, ECF No. 110-1, at 1, 4.)[8]

---

[7] Ms. Liss-Jackson specifically states that she objects to the public release of "[t]he entire contents of her deposition testimony" in this case. (Liss-Jackson Letter, ECF No. 110-1, at 4.) The Court notes that Cuomo does not appear to be seeking de-designation of the entire *Trooper 1* Transcript at this juncture. However, due to Cuomo's failure to identify specific portions of testimony he seeks to de-designate, accompanied by specific public-record citations demonstrating where and how that information was already made public *by Ms. Liss-Jackson*, the Court cannot evaluate Cuomo's request with any granularity, nor is it inclined to given the important privacy interests at stake and the importance of the effectiveness of the confidentiality order in this case.

[8] Concerning discovery in this case, counsel for Ms. Liss-Jackson has acknowledged that she consented to the release of the unredacted transcript of her OAG testimony to Defendants here, but that such consent was "with the understanding that it was covered by the [confidentiality order]." (Email Correspondence, ECF No. 118-1, at ECF p. 14.) The version of the OAG deposition transcript that was publicly released is redacted. (*See* Liss-Jackson Letter, ECF No. 110-1, at 4.) For purposes of this motion, Defendants have not clarified whether they are in possession of the unredacted transcript of Ms. Liss-Jackson's OAG testimony.

The plain language of the stipulated confidentiality order in this case makes clear that testimony may be designated as confidential, and that order was entered into by the parties with the knowledge that the OAG had previously published partially redacted versions of the transcripts of 41 witnesses, including the complainants. *See Cuomo v. N.Y. State Assembly Judiciary Comm.*, ___ F. Supp. 3d ___, 2023 WL 4714097, at *4 (E.D.N.Y. July 21, 2023). Yet in his motion, Cuomo does not address the specific language of the confidentiality order that expressly permits the designation as confidential "testimony" "that can reasonably be construed as revealing a party's non-public confidential personal . . . or investigative information." (Am. Confidentiality Order, ECF No. 68, at 1–2.) Now, Cuomo argues that "confidential" has a narrower meaning, which would render portions of certain witnesses' depositions unprotectable under the confidentiality order. Under the unique circumstances of this case, taken to its logical conclusion, Cuomo's position would appear to be that any witness who had their deposition testimony published online by the OAG may be precluded from designating as confidential those portions of their deposition transcript in this case that arguably "concern" the OAG investigation, notwithstanding the sensitive nature of the claims in this case, which center on sexual harassment allegations and implicate many non-parties' privacy concerns. This is not a reasonable interpretation of the term "Sensitive Information and Data," as used in the confidentiality order.

The Court also notes other deficiencies in Cuomo's position. First, he has not identified which specific portions of the *Trooper 1* Transcript he seeks to de-designate (by, for example, indicating the pertinent page and line numbers). Rather, he makes general arguments for de-designation, positing that Ms. Liss-Jackson's testimony about her OAG testimony should be de-designated because it concerns matters addressed in

the OAG testimony and the OAG has released a redacted transcript of that testimony. (Mot. for Disclosure, ECF Nos. 221, 222, at 3.) Cuomo cites no authority, however, for the proposition that an action by a third party taken *before* discovery in a civil case could somehow render subsequently-obtained discovery exempt from the protections afforded by an intervening confidentiality order. Cuomo also has not demonstrated that the previous OAG-related disclosures shed any light on precisely what Ms. Liss-Jackson said during her *Trooper 1* Deposition. Defendants also have not shown that Ms. Liss-Jackson has made public the *Trooper 1* Transcript or the specific investigative information she has provided in discovery in this case — which actions may be a basis to de-designate under the confidentiality order. (*See* Am. Confidentiality Order, ECF No. 68, at 1–2.) In other words, Defendants have not established which portions of the *Trooper 1* Transcript they seek to de-designate, and that those specific portions are public or have not been kept private or closely held by Ms. Liss-Jackson.

For all of these reasons, the Court finds that Defendants have not shown that Ms. Liss-Jackson has publicly produced or made available her *Trooper 1* Transcript, and the Court finds her confidentiality designation reasonable in that her testimony indisputably contains her non-public investigative information for this case, which touches upon sensitive and private matters relating to her allegations of sexual harassment and a toxic work culture in the Executive Chamber.

A different interpretation of the confidentiality order could render it a nullity, in contravention of the "strong presumption against modifying protective orders." *Arcesium LLC*, 2022 WL 621973, at *3. Accordingly, the Court finds that, in light of the complex and unique circumstances of this case, and to facilitate discovery that is as expeditious as possible, it is of paramount importance to permit witnesses who are being asked to disclose confidential personal or investigative information (including,

for example, harassment allegations, information about the witnesses' personal lives, private communications, and information about any mental health or other treatment witnesses have received) the opportunity to designate discovery materials, including their deposition testimony, as confidential, notwithstanding that the OAG may have disclosed certain materials concerning that same witness. *See id.* (observing that confidentiality orders "serve the vital function of ensuring just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all relevant evidence").

For all of these reasons, the Court finds that the terms of the confidentiality order permit Ms. Liss-Jackson to designate the *Trooper 1* Transcript as confidential.[9]

2. *Boylan Text Messages and Related Testimony*

Cuomo argues that the text messages he seeks to de-designate are not confidential because Ms. Liss-Jackson could not reasonably believe the content would be kept private as the recipient of the messages, Ms. Boylan, had already received a subpoena demanding communications between her and Ms. Liss-Jackson. (Am. Confidentiality Order, ECF No. 68, at 3–4.) However, knowing that the messages may be subject to disclosure to Defendants — in a case with a confidentiality order in place — is not the same as foreseeing that the messages may be disclosed publicly.

---

[9] The Court is also mindful of the slippery slope that would be created if Cuomo's argument were to prevail in light of the highly sensitive nature of the allegations in this case, the privacy interests of the complainants and other non-party witnesses, the complexities of attempting to discern which portions of a witness's testimony concern topics that were arguably disclosed in prior OAG testimony versus non-public personal information or non-public investigative information, and the heated discovery disputes that have plagued this case. Indeed, given the history of discovery problems in this case to date, the Court has significant concerns that Defendants will seek to strategically de-designate deposition testimony of the complaining witnesses in light of the OAG's previous decision to publicly publish certain materials. Or, alternatively, every witness may seek a protective order prior to their deposition in an effort to avoid "embarrassment, oppression, or undue burden or expense," Fed. R. Civ. P. 26(c)(1), which would be extremely inefficient for the parties, non-parties, and the Court, and could significantly prolong discovery.

Cuomo further argues that Ms. Liss-Jackson does not have a reasonable expectation of privacy in the text messages or her testimony about the messages because, essentially, Ms. Boylan is a "gossip" and Ms. Liss-Jackson has allegedly admitted discussing information about which she did not have personal knowledge. (*See id.* at 4–5.) The Court struggles to understand this argument, which rests heavily on the use of the word "gossip," a term that appears to be utilized by Cuomo's counsel as a disparaging and sexist way to describe the witnesses. Even assuming Cuomo's assertions about Ms. Boylan are true (which the Court does not), the Court is not convinced that Ms. Liss-Jackson loses a privacy interest in her text messages because Cuomo appears to believe that the person with whom Ms. Liss-Jackson was communicating "passed malicious gossip." (*Id.* at 4.) Cuomo's views regarding Ms. Boylan are not relevant to the question of whether Ms. Liss-Jackson has a privacy interest in the specific contents of her personal, private communications, including her text messages.

As discussed above, the confidentiality order in this case may be used to protect "Sensitive Information and Data" that is not public and has not been previously disclosed. Cuomo has not shown that the texts are public or have been previously disclosed — rather, the record before the Court suggests that the texts at issue were transmitted privately and were disclosed during discovery with the understanding that they would be marked confidential. (Liss-Jackson Letter, ECF No. 110-1, at 2–4.) Cuomo has not offered any specific evidence that Ms. Boylan or Ms. Liss-Jackson has, in fact, disclosed the text messages to one or more third parties (in the absence of a subpoena or other formal request for documents), or that these non-party witnesses have otherwise publicized the communications. Accordingly, the Court finds that the text messages and related testimony are not public.

16

The Court now turns to the question of whether the text messages and related testimony are "Sensitive Information and Data," which may be protectable under the confidentiality order. Examples of "Sensitive Information and Data" include documents, testimony, or electronically stored information that may reasonably be deemed to include confidential personal or investigative information; it also specifically includes "documents or data containing information received in confidence from third parties." (Am. Confidentiality Order, ECF No. 68, at 1–2.) While the parties have not cited any specific caselaw concerning de-designation of private text communications produced during discovery under circumstances similar to those present in this case, courts have readily recognized the inherent privacy interests people have in their own private communications, with particular attention to the privacy interests of non-parties. *See, e.g.*, *United States v. Gatto*, No. 17-CR-686 (LAK), 2019 WL 4194569, at \*8 (S.D.N.Y. Sept. 3, 2019) (finding that "the privacy interests of the third-parties" related to communications including calls, text messages, and emails "outweighs the public's right of access" and finds that "disclosure is unwarranted"); *cf. Bakhit v. Safety Marking, Inc.*, No. 13-CV-1049 (JCH), 2014 WL 2916490, at \*3 (D. Conn. June 26, 2014) (discussing "the privacy concerns implicated by the modern cell phone" in denying a request for inspection of cell phones for the purpose of discovery). The Court's concerns regarding the privacy interests of a producing party are heightened where, as here, the producing party is not a party to the litigation. *Cf. Henry v. Bristol Hosp., Inc.*, No. 13-CV-826 (SRU), 2020 WL 1158464, at \*1 (D. Conn. Mar. 10, 2020) ("[C]ourts give special weight to the burden on non-parties of producing documents to parties involved in litigation." (quotation marks and alteration omitted)); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); *see also*

17

*Rhinehart*, 467 U.S. at 35 ("[D]iscovery also may seriously implicate privacy interests of litigants and third parties.").

In interpreting the confidentiality order, the Court finds that private text messages — especially those communications between people who are not parties to this litigation — may reasonably be considered personal and private and may be protected as "Sensitive Information and Data" under the order as long as they are not public and have not been previously disclosed by the producing party to third parties (outside of the discovery process, or in response to a subpoena or request made as part of a governmental investigation).[10]

## B.  Reasonable Reliance on the Confidentiality Order

The Court also finds that the *Charter Oak* factors counsel against modification of the confidentiality order and de-designation of the deposition testimony and text messages.

---

[10] The Court is also mindful that, had there been no confidentiality order in place, Ms. Liss-Jackson or Ms. Boylan might have sought a protective order from the Court under Rule 26(c) of the Federal Rules of Civil Procedure in response to the request for text messages or sought to quash the request altogether. Under Rule 26(c), the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). No such motion was made here, possibly due to Ms. Liss-Jackson's reliance on the confidentiality order. Notwithstanding that no such motion was made, the Court notes that the grounds for a protective order contemplated by Rule 26(c)(1), which include avoidance of annoyance and embarrassment, are arguably broader than the confidentiality order. The Court has already found that discovery of text messages between the complainants and other witnesses in this case is relevant and proportional to the needs of the case, but also finds that these materials are likely to be found appropriately designated as confidential in the absence of actual evidence that the producing party has disclosed them or that the messages are otherwise public. *See Trooper 1 Discovery/Protective Order*, 2024 WL 165159. Cuomo's characterization of a witness as a "gossip" is not evidence and does not provide a factual basis to support de-designation. Accordingly, Cuomo is advised that should other witnesses seek to mark their private communications as confidential, it is unlikely that they will be de-designated during discovery in the absence of concrete evidence of public disclosure by the producing party who has marked the texts confidential. Moreover, private communications will certainly *not* be de-designated to enable attempts to harass, annoy, and embarrass the witnesses in the court of public opinion.

1. *Scope of the Confidentiality Order*

In analyzing the scope of a confidentiality order, "it is relevant whether the order is a blanket protective order, covering all documents and testimony produced in a lawsuit, or whether it is specifically focused on protecting certain documents or certain deponents for a particular reason." *In re EPDM Antitrust Litig.*, 255 F.R.D. 308, 319 (D. Conn. 2009). A blanket order weighs in favor of modification "because it is more difficult to show a party reasonably relied on a blanket order in producing documents or submitting to a deposition." *Id.* An order is considered to be a blanket order when, for example, it covers "all documents produced during the litigation," *Tradewinds Airlines*, 2016 WL 3951181, at *2; when a producing party "need only stamp [a document] 'CONFIDENTIAL'" to apply the order, *Charter Oak*, 287 F.R.D. at 132; or when a producing party may designate confidential any material within broadly defined categories, *In re EPDM Antitrust Litig.*, 255 F.R.D. at 320. In contrast, a protective order that designates specific documents as confidential is not considered to be a blanket order. *In re EPDM Antitrust Litig.*, 255 F.R.D. at 320 ("By contrast, the protective order at issue in *Martindell* applied only to the transcripts of twelve deponents who agreed to testify pursuant to a confidentiality agreement, which provided that the transcripts and any documents furnished by these witnesses would be available only to the parties and their counsel." (citing *Martindell v. Int'l Tel & Tel. Corp.*, 594 F.2d 291, 293 (2d Cir. 1979))).

As discussed above, the confidentiality order protects "Sensitive Information and Data" that is not public and has not been previously disclosed to third parties. (Am. Confidentiality Order, ECF No. 68, at 1.) While the confidentiality order does not apply to specific documents, as in *Martindell*, it is not so broad that the producing party has complete discretion as to what may be designated confidential. Additionally, for any

19

protective order to be effective in the instant case, it must allow for the producing party to exercise discretion.[11] Given the many witnesses and sensitivity of the topics at issue in this case, the Court finds that the scope of the confidentiality order is as specific as is practicable and realistic; this factor weighs in favor of reliance.

2. *The Language of the Order*

The language of a protective order may undermine reliance where it "limits the time period for enforcement, anticipates the potential for modification, or contains specific procedures for disclosing confidential materials to non-parties." *In re EPDM Antitrust Litig.*, 225 F.R.D. at 320; *see also TheStreet.Com*, 273 F.3d at 231 ("For instance, protective orders that are on their face temporary or limited may not justify reliance by the parties.").

In this case, the confidentiality order does not contain any temporal limitations, nor does it contemplate procedures for modification of the agreement. (Am. Confidentiality Order, ECF No. 68.) The only disclosure contemplated by the order, beyond for the purposes of the litigation, is in response to compulsory process or as required by law. (*Id.* at 3–4.) This is distinguishable from provisions "permitting non-parties to seek access to the protected materials" or contemplating "that relief from the provisions of the order may be sought at any time." *Cf. In re EPDM Antitrust Litig.*, 225 F.R.D at 320; *see also Tradewinds Airlines*, 2016 WL 3951181, at *2 (noting that the

---

[11] Defendants in this case seek a significant volume of personal private and investigative information from numerous non-party witnesses. *See, e.g.*, *Trooper 1 Discovery/Protective Order*, 2024 WL 165159. Discovery in this case would likely stall completely in the absence of an order that provides parties and witnesses some assurance that their personal discovery materials will be treated as confidential.

language of an order favors modification where "it specifically provides that either party may seek changes to the [o]rder"). This factor weighs in favor of reliance.

3. *The Level of Inquiry Undertaken by the Court*

Where an order is granted "upon the parties' stipulation and agreement" absent a showing of good cause, this factor generally weighs in favor of modification and against a finding of reliance. *In re EPDM Antitrust Litig.*, 225 F.R.D. at 322; *see also Charter Oak*, 287 F.R.D. at 133 (finding this factor weighs in favor of modification where the magistrate judge "so ordered" a stipulated protective order without determination of whether good cause existed). Here, although the confidentiality order was "so ordered" by the Court without a specific and express finding that enumerated documents warranted protection, at the time the Court entered the confidentiality order, the Court was well aware of the highly sensitive nature of the allegations in this case and the anticipated broad scope of discovery into sensitive and private matters, including but not limited to allegations of Cuomo's harassment and the personal circumstances and histories of the non-party complainants.[12] (*See* Apr. 24, 2023 ECF Order; Am. Confidentiality Order, ECF No. 68.) But because the Court did not conduct an item-by-item review of the materials that were to be marked confidential, this factor weighs slightly in favor of modification.

---

[12] While the Court did not expressly discuss consideration of good cause in "so ordering" the confidentiality order, the sensitivities inherent in this case have been apparent since its inception. As set forth in the Court's opinion permitting Plaintiff to proceed using a pseudonym, "Plaintiff's complaint alleges several instances of sexual harassment, which courts have found to be 'highly sensitive and of an extremely personal nature.'" (Mem. & Order, ECF No. 37, at 5 (quoting *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019) (citation omitted).) Due to the nature of the allegations in this case, the broadly-drawn complaint, and the substantial volume of personal information sought by Defendants from non-party witnesses, the good cause for a confidentiality order is self-evident.

4. *The Nature of Reliance*

"Where a party or deponent, in reliance on the protective order, gives up its right to refuse to testify, or to produce documents it would not otherwise be compelled to produce, the heightened *Martindell* presumption against modification naturally applies." *In re EPDM Antitrust Litig.*, 225 F.R.D. at 322. However, if a producing party "would have been *compelled* to produce the discovery materials even in the absence of a protective order, the presumption against modification is not as strong." *Id.* at 323 (emphasis in original). The absence of an indication that a producing party relied on the order to produce documents can also indicate a lack of reliance. *Tradewinds Airlines*, 2016 WL 3951181, at *2.

Here, Ms. Liss-Jackson has definitively represented that she has relied on the confidentiality order and does not consent to the release of the *Trooper 1* Transcript or text messages between her and Ms. Boylan out of concern for her reputation and privacy. (Liss-Jackson Letter, ECF No. 110-1, at 2–4.) As set forth above, the Court notes that the parties specifically amended the confidentiality order "to provide protection to nonparty productions." (Letter re Proposed Am. Confidentiality Order, ECF No. 67.) Finally, unlike many other non-party witnesses in this case, Ms. Liss-Jackson largely did not challenge Cuomo's discovery requests of her. (*See* Liss-Jackson Letter, ECF No. 110-1, at 1.) If she had, application of the principles detailed in the Court's January 16, 2024 Discovery/Protective Order may have had the effect of narrowing the document discovery Ms. Liss-Jackson would have been required to produce and it may have delayed her deposition until after the party depositions had been completed. *See Trooper 1 Discovery/Protective Order*, 2024 WL 165159, at *5–6.

\*   \*   \*   \*   \*

22

Assessing the *Charter Oak* factors, it is clear that Ms. Liss-Jackson reasonably relied on the confidentiality order in this case, such that the *Martindell* presumption against modification applies. Once the presumption applies, "a district court should not modify the [confidentiality] order 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need.'" *Tradewinds Airlines*, 2016 WL 3951181, at *1 (second alteration in original) (quoting *TheStreet.Com*, 273 F.3d at 229). An extraordinary circumstance or compelling need may be demonstrated by, for example, an interest in avoiding "considerable unnecessary effort and expense." *Id.* at *2. Here, Defendants do not argue that the order was improvidently granted and show no extraordinary circumstance or compelling need.

Rather, Defendants essentially admit that they are seeking de-designation to continue their attack on the OAG investigation and in furtherance of efforts to try this case in the court of public opinion. For example, Defendants DeRosa and Azzopardi expressly state that they seek de-designation of the text messages because, in their view, the texts — which "establish [Ms. Boylan's and Ms. Liss-Jackson's] strong animus towards Ms. DeRosa — should be available *for public consideration* in determining the validity of Trooper 1's allegations regarding Ms. DeRosa." (DeRosa & Azzopardi Letter, ECF Nos. 223-1, 224, at 3 (emphasis added).)[13] However, the specific text messages that Defendants seek to de-designate do not touch upon the substantive allegations in this case — or even Ms. Boylan's or Ms. Liss-Jackson's allegations. (*See* Ex. D, ECF No. 98-4.) Their apparent relevance, from Defendants' perspective, is the belief that the texts

---

[13] The Court observes that it does not share Defendants' view that these texts somehow establish a "strong animus" towards DeRosa, but even if they did, this does not amount to an extraordinary circumstance or compelling need that provides a valid basis for disclosure of material properly marked as confidential under the confidentiality order.

establish animosity to DeRosa and that "Ms. Liss-Jackson and Ms. Boylan traded in vicious and untrue gossip during their testimony to the OAG." (DeRosa & Azzopardi Letter, ECF Nos. 223-1, 224, at 3.)

As for the *Trooper 1* Transcript, Cuomo contends that it addresses a matter of public concern because "Plaintiff and the OAG have both alleged — and the media has widely reported — that Governor Cuomo sexually harassed Ms. Liss-Jackson, despite Ms. Liss-Jackson herself stating unequivocally that she was not sexually harassed." (Mot. for Disclosure, ECF Nos. 221, 222, at 5.) Cuomo fails, however, to articulate a reason why the actual *Trooper 1* Transcript is needed for him to discuss this issue publicly. The Court notes, for example, that counsel for Ms. Liss-Jackson has unequivocally represented in a public filing that "she has *never* accused Mr. Cuomo of sexual harassment," and that her "allegations focused on the Executive Chambers as being a 'hostile' or 'toxic' workplace." (Liss-Jackson Letter, ECF No. 110-1, at 1 & n.1.) In sum, these arguments do not establish an extraordinary circumstance or compelling need sufficient to override the presumption against modification of the protective order.

Another tack Defendants take is to argue that the strong presumption of public access to court proceedings and litigation documents favors de-designation. (DeRosa & Azzopardi Letter, ECF Nos. 223-1, 224, at 1–2 (citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006)); Mot. for Disclosure, ECF Nos. 221, 222, at 5 (arguing that "the public has a right to see the materials underlying crucial filings in the case").) Defendants' reliance on cases concerning the presumption of access to judicial documents and the public's interest in monitoring the administration of justice is

misplaced.[14] Discovery materials in federal court have a long history of being held privately, as discussed above. *See Rhinehart*, 467 U.S. at 33–34. And as the Court already found, the *Trooper 1* Transcript is not a judicial document. "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access . . . the item filed must be relevant to the performance of the judicial function and *useful in the judicial process.*" *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (emphasis added) ("*Amodeo I*"); *see also Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 516 (E.D.N.Y.), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), *aff'd sub nom. Newsday LLC v. County of Nassau*, 730 F.3d 156 (2d Cir. 2013). The contested materials here have not been relevant to the performance of the judicial function, except insofar as they have been appended as exhibits to motions to de-designate and cited in support of a motion filed in connection with a motion for reconsideration in related docket number 22-MC-3044. In other words, the *Trooper 1* Transcript and text messages have not been directly relevant to the performance of the judicial function such that they are now judicial documents. Accordingly, the presumption of public access does not attach. *Mirlis v. Greer*, 952 F.3d 51, 58–59 (2d Cir. 2020) (quoting *Amodeo I*, 44 F.3d at 145)).

---

[14] The right of public access to judicial documents and the public's interest in monitoring the administration of justice are of course quite well established. *See Lugosch*, 435 F.3d at 119–20; *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008). In determining whether a document carries a presumption of public access or may be sealed, courts must consider three factors: (1) whether the document is a "judicial document"; (2) "the weight of the presumption of access to that document"; and (3) whether "all of the factors that legitimately counsel against disclosure of the judicial document" outweigh "the weight properly accorded the presumption of access." *Mirlis v. Greer*, 952 F.3d 51, 58–59 (2d Cir. 2020) (quotation marks and citations omitted). Here, the materials Defendants seek to de-designate are discovery materials, not judicial documents; these documents are not traditionally afforded a public right of access. *Cf. Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984) ("A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. . . . [R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.").

25

Importantly, the materials Defendants seek to de-designate have *not* been "useful in the judicial process." *Amodeo I*, 44 F.3d at 145. As detailed above, *supra* note 5, Cuomo has been making efforts to de-designate the *Trooper 1* Transcript since shortly after the deposition itself. Accordingly, the record strongly suggests that Defendants have been repeatedly attaching these discovery materials to various motions and letters to make them publicly available to advance their own interests. As the Second Circuit has observed, the Court has a responsibility to ensure documents are not filed "'to gratify private spite or promote public scandal' or 'serve as reservoirs of libelous statements for press consumption.'" *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2020) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). The Court must also protect the integrity of the judicial process, and take steps to ensure that court filings are not made for vexatious purposes or "to promote scandal arising out of unproven libelous statements."[15] *See id.* (quotation marks omitted). Defendants may not manufacture motion practice to attempt strategic de-designation of documents or other discovery they find favorable when such materials have properly been designated as confidential and witnesses have relied upon that designation during discovery. For all of these

---

[15] The parties are reminded that the Second Circuit has made clear that courts "may [choose] to employ [any of] several methods to fulfill" the function of protecting the integrity of judicial proceedings, including:

> issu[ing] protective orders forbidding dissemination of certain material "to protect a party or person from annoyance, embarrassment, oppression, or undue burden" and require that filings containing such material be submitted under seal[;] . . . explaining on the record that [defamatory] statements appear to lack credibility[;] . . . strik[ing] such material from the filings on the grounds that it is "redundant, immaterial, impertinent, or scandalous"[; and/or] . . . impos[ing] sanctions on attorneys and parties.

*Brown*, 929 F.3d at 51 (first quoting Fed. R. Civ. P. 26(c), then quoting Fed. R. Civ. P. 12(f), then citing Fed. R. Civ. P. 11).

reasons, Defendants' argument that there is a public right of access to these documents is, at this stage of the case, entirely without merit.

## CONCLUSION

This case exemplifies "the vital function of a protective order . . . , which is to secure the just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant." *Martindell*, 594 F.2d at 295 (quotation marks and citation omitted). Already this case is proving to be extremely costly, including for witnesses from whom Defendant Cuomo has sought extensive discovery who are not parties to this litigation. (*See* Liss-Jackson Letter, ECF No. 110-1, at 4 & n.6 ("Unlike Mr. Cuomo, Ms. Liss-Jackson is not being reimbursed for her legal expenses by the State of New York in this matter."); *see also* Tr. of Jan. 11, 2024 Proceedings, ECF No. 226, at 40:8–10 (noting that Ms. Boylan "has spent hundreds of thousands of dollars on attorneys" related to the investigations and this case).) In sensitive cases like this one, "witnesses might be expected frequently to refuse to testify pursuant to protective orders" should their testimony be made public "in disregard of those orders." *Martindell*, 594 F.2d at 295–96. Defendant Cuomo appears to be unconcerned with the potential perverse effects that would likely result if the Court were to grant his motion. Witnesses would be disincentivized to be forthcoming for fear that Defendants may later seek to unseal testimony and documents marked confidential. This is in direct tension with the Court's interest in a discovery procedure that will "encourage[e] full disclosure of all evidence that might conceivably be

relevant," an important policy "objective represent[ing] the cornerstone of our administration of civil justice." *TheStreet.Com*, 273 F.3d at 229.

      Defendant Cuomo's motion to de-designate confidential materials is denied.

      **SO ORDERED.**

Dated:  Brooklyn, New York
       March 29, 2024

                               *Taryn A. Merkl*
                              _____
                              TARYN A. MERKL
                              UNITED STATES MAGISTRATE JUDGE