# SHER TREMONTE LLP

June 6, 2024

**BY ECF**

Hon. Taryn A. Merkl
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    *Cuomo v. Office of the N.Y. State Attorney General*, 22-mc-3044 (LDH) (TAM)

Dear Judge Merkl:

      For nearly two years the OAG has resisted compliance with Governor Cuomo's federal discovery subpoena seeking unredacted transcripts and witness interview memos generated during the OAG Investigation on the grounds that (i) sovereign immunity protects the OAG from having to comply, and (ii) the subpoenaed materials are confidential and subject to a host of privileges. The OAG has also consistently denied that it ever waived either sovereign immunity or any privilege.[1] At no point did the OAG ever suggest, much less acknowledge, that it had already voluntarily disclosed any of the materials in question to any third-party federal agency. To the contrary, the OAG specifically represented to Governor Cuomo and to this Court that the OAG "deliberately published only non-privileged documents and has taken deliberate steps to preserve privilege over certain categories of documents." OAG ECF No. 18 at 24. In other words, the OAG has consistently—and vehemently—maintained that it has kept the investigative materials in a lockbox and that it would be a violation of sovereign immunity and privilege for a federal court to order the disclosure of the materials.

      But recently, in response to questioning by Judge Cave in the Bennett Action, the OAG finally admitted that it did in fact voluntarily produce investigative materials to

---

[1] *See* OAG ECF No. 18 at 10-14, 22-30 (requested materials are "unquestionably protected by the attorney-client privilege and work-product doctrine"); OAG ECF No. 19-8 at 6-7 (requests call for documents and information "protected by the privileges applicable to attorney-client communications, attorney work product, law enforcement and the public interest"); OAG ECF No. 19-12 at 1 (logging interview notes and memoranda as protected by attorney-client, work product law enforcement, deliberative process, and public interest privileges); OAG ECF No. 23 at 1-4, 7-10 (contending that "the facts here cannot support waiver"); OAG ECF No. 29 at 3 (maintaining that Governor Cuomo's requests intrude[d] on OAG's privileges"); OAG ECF No. 31 at 1-2 (arguing that *Jane Doe v. JPMorgan Chase Bank, N.A.*, No. 22-cv-10019 (S.D.N.Y. May 23, 2023) did not affect the OAG's sovereign immunity or privilege arguments); OAG ECF No. 33 at 2; OAG ECF No. 48 at 1-2 (arguing in further support of sovereign immunity).

federal investigators. By doing so, the OAG waived sovereign immunity and all of the purported privileges it has been invoking for the last two years. In light of this information, we respectfully renew our request that the Court deny the OAG's Motion to Quash, permit Governor Cuomo to enforce the narrowed subpoena, and vacate the briefing schedule entered by the Court on May 3, 2024 as unnecessary given that the OAG's waiver is dispositive.

*Background*

Here is how the waiver finally came to light. On January 26, 2024, approximately one and one-half years after Governor Cuomo first served a federal subpoena on the OAG calling for investigative materials, the U.S. Department of Justice Civil Rights Division ("DOJ") and the U.S. Attorney's Office for the Eastern District of New York ("EDNY") publicly released an agreement they co-signed with the New York State Executive Chamber concerning a Title VII investigation into Governor Cuomo's conduct. Ex. 1 at 1. DOJ and EDNY summarily concluded in a single paragraph, without making public the evidence considered, that "former Governor Cuomo" subjected "at least thirteen" women "to a sexually hostile work environment." *Id.* Furthermore, the agreement provided that, "[i]n November 2022, the assistant Attorney General for Civil Rights authorized a Title VII lawsuit" based on these findings. *Id.* at 2. In lieu of filing that civil suit, DOJ and EDNY settled the matter with the Executive Chamber. *Id.*[2] Prior to the release of this agreement, no one from DOJ or EDNY interviewed Governor Cuomo or sought information from him, and no one from DOJ or EDNY interviewed any of Governor Cuomo's senior staff or sought information from them. Indeed, neither Governor Cuomo nor his legal team were informed that such an agreement was even being discussed. Nor, to our knowledge, did DOJ or EDNY even interview any of the complainants.

Two days later, on January 28, 2024, counsel for Governor Cuomo contacted the OAG to ask whether the OAG "provided any investigative materials to DOJ that are not otherwise available to the public." Ex. 2 at 2. On February 1, 2024, the OAG responded that it "decline[d] to provide any additional information about what may have been shared, if anything . . . with other law enforcement agencies." *Id.* at 1. In other words, the OAG refused to answer whether any of the investigative materials—including materials that Governor Cuomo has subpoenaed in the Trooper 1 Action—had already been turned over to the federal government.

During the ensuing briefing concerning a motion to compel the OAG's compliance with another document subpoena in the Bennett Action that also sought witness interview memos and unredacted transcripts, Governor Cuomo noted the DOJ/EDNY Settlement and

---

[2] Although it was a signatory to the agreement, the Executive Chamber did not admit liability for the allegations therein. Ex. 1 at 8. Relatedly, it is unclear how DOJ and EDNY reached the conclusion that at least thirteen women had been subjected to a hostile work environment given that the OAG Report had only identified eleven women and several of them never worked for Governor Cuomo or the Executive Chamber.

the OAG's refusal to acknowledge whether it had provided materials requested by the subpoena to DOJ or EDNY during its investigation. Ex. 3 at 9 n.10. In response, the OAG acknowledged that two agencies of the "United States" had jointly requested the OAG's investigative materials but offered a similar non-responsive statement concerning whether the OAG had voluntarily complied with that request:

> On or about August 13, 2021, the United States Department of Justice and the United States Attorney's Office for the Eastern District of New York (collectively, the "United States") jointly requested certain OAG materials in connection with their own investigation into whether the Executive Chamber, led by former Governor Andrew Cuomo, engaged in a pattern or practice of sexual harassment and a pattern or practice of retaliation of federal law. To the extent OAG provided materials in response, if any, those materials were subject to [a confidentiality agreement].

Ex. 4 at 9.

During oral argument in the Bennett Action on May 8, 2024, we specifically requested that Judge Cave inquire about this issue, noting that if the OAG voluntarily provided investigative materials to two third-party federal government agencies, that would constitute a clear waiver of both sovereign immunity and any claimed privilege. When Judge Cave asked the OAG whether it had already produced any of the materials requested by the subpoena, the OAG refused to answer in open court based on a claim that disclosing that information could compromise the confidentiality of witnesses—an answer that the OAG could give in good faith only if it had in fact disclosed materials relating to witnesses. The OAG then offered to provide a list of the produced materials for Judge Cave's *in camera* review—again, a list that could be generated only if materials had in fact been produced. Ex. 5 at 47:13-17, 48:16-25.

***Disclosure Waived Sovereign Immunity and Any Claimed Privileges***

In light of the OAG's recent admission, there is no longer any question (if there ever was one) that the OAG waived both its purported sovereign immunity and its purported privileges.

***First***, voluntary production of materials to two third-party federal agencies that were investigating Governor Cuomo's conduct unequivocally waived any claim the OAG might have to sovereign immunity. A state sovereign cannot selectively disclose materials to the federal government for the purposes of inciting or aiding action against a party, and then claim sovereign immunity to refuse to produce those materials to the party in question. *See United States v. James*, 980 F.2d 1314, 1320 (9th Cir. 1992); *United States v. Velarde*, 40 F. Supp. 1314, 1317 (D.N.M. 1999). The OAG itself agrees: it conceded that, under *James*, sovereign immunity does not apply where a sovereign has "voluntarily provided documents from one of its agencies . . . to the United States to aid in the government's prosecution" of the defendant. Ex. 6 at 14.

Hon. Taryn A. Merkl
June 6, 2024
Page 4 of 5

***Second***, disclosure of requested materials—or other related materials—constitutes a waiver of each and every privilege the OAG has asserted. To start, there is no basis whatsoever for the OAG to claim any attorney/client privilege survived such disclosure. When a party discloses materials to any third party, including a government agency, for purposes other than receiving legal advice, that party waives attorney-client privilege over those materials. *See Bowne of N.Y.C., Inc. v. AmBase Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993). Waiver will be found even if the disclosure was "made for a proper purpose to a person with an interest that is common to him and the privilege holder," unless that common interest is the receipt of legal services by an attorney. *Id.* (collecting cases). This is so irrespective of the OAG's assertion that the materials were subject to a confidentiality agreement: "even if the disclosing party requires, as a condition of disclosure, that the recipient maintain the materials in confidence," disclosure still is a waiver of attorney-client privilege. *Id.* at 480 (collecting cases). The line is bright.[3]

Moreover, all of the OAG's other asserted privileges are clearly waived. Voluntary disclosure of materials to a third party breaks all other asserted privileges as to those materials. *Pilkington N. Am., Inc. v. Mitsui Sumitomo Ins. Co. of Am.*, 341 F.R.D. 10, 14 (S.D.N.Y. 2022) (Work-product privilege is waived "if disclosure to the third party substantially increases the opportunity for potential adversaries to obtain the information." (quotations omitted)); *New York v. Mayorkas*, Nos. 20-CV-1127 (JMF), 20-CV-1142 (JMF), 2021 WL 2850631, at *12 (S.D.N.Y. July 8, 2021) ("The law enforcement privilege can be waived through voluntary disclosure of . . . the information claimed to be privileged." (quotations omitted)); *ACLU v. Dep't of Def.*, 453 F. Supp. 3d 539, 559 (S.D.N.Y. Jan. 27, 2020) ("[D]eliberative process privilege may be lost by disclosure."); *Matter of World Trade Ctr. Bombing Litig.*, 93 N.Y.2d 1, 8 (N.Y. 1999) (public interest privilege inheres in "official confidential information in the care and custody of governmental entities")

Waiver is particularly undeniable here, where the disclosing party voluntarily submits documents to a government agency to "incite [the agency] to attack the informant's adversary," then "protection is waived," period. *Information Resources, Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591, 593 (S.D.N.Y. 1998). A disclosing party cannot assert privileges for materials "submitted voluntarily to stimulate beneficial official action." *Id.* Here, where the OAG submitted materials to encourage the DOJ and EDNY to corroborate the findings of the OAG Report and find the Executive Chamber and Governor Cuomo

---

[3] The OAG's suggestion that a confidentiality agreement prevented a privilege waiver is particularly unfounded with respect to any disclosure to DOJ or EDNY. Those federal agencies would have been obligated to disclose the materials to a defendant in any civil action, regardless of any confidentiality agreement.

Hon. Taryn A. Merkl
June 6, 2024
Page 5 of 5

civilly liable under federal law, they cannot hide behind any privileges to protect those same materials.[4]

\*      \*      \*      \*

      The OAG's belated admission that it already disclosed the information it has been seeking to shield for nearly two years is outrageous. We have spent years briefing the OAG's objections, but the OAG did everything it could to keep a key fact hidden. This Court should summarily deny the OAG's Motion to Quash and should permit Governor Cuomo to enforce the narrowed subpoena, and vacate the additional briefing schedule.

Respectfully submitted,

*/s/ Theresa Trzaskoma*

Theresa Trzaskoma

Exhibits

---

[4] For the same reasons, the OAG's disclosures to the five District Attorney Offices for the purposes of aiding or inciting criminal prosecution of Governor Cuomo also waive all privileges at the very least as to the materials disclosed. *See* OAG ECF No. 19 at 9. To the extent the OAG disclosed to any DA's office any of the requested materials not already provided to Governor Cuomo by the Albany DA's Office, the OAG cannot continue to assert privilege over those materials.