# Exhibit 1

# Agreement Between the United States and the State of New York Executive Chamber Regarding Workplace Reform

## I. Introduction

1. The parties ("Parties") to this Agreement are the United States of America and the State of New York Executive Chamber ("Executive Chamber").

## II. Recitals

2. In August 2021, the U.S. Department of Justice's Civil Rights Division and the U.S. Attorney's Office for the Eastern District of New York (collectively, "United States") opened an investigation into whether the Executive Chamber, led by former Governor Andrew M. Cuomo, engaged in a pattern or practice of sexual harassment and a pattern or practice of retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

3. The United States' investigation was based on the Attorney General's authority to enforce Title VII of the Civil Rights Act of 1964 with respect to state and local government employers; *see* 42 U.S.C. § 2000e-5 *et seq.*

4. At the conclusion of the investigation, the United States found that former Governor Cuomo subjected at least thirteen female employees of New York State, including Executive Chamber employees, to a sexually hostile work environment. Governor Cuomo repeatedly subjected these female employees to unwelcome, non-consensual sexual contact; ogling; unwelcome sexual comments; gender-based nicknames; comments on their physical appearances; and/or preferential treatment based on their physical appearances.

5. Furthermore, during the Cuomo administration, the Executive Chamber was aware of Cuomo's conduct but failed to effectively remediate the harassment on a systemic level. When employees attempted to raise concerns about Cuomo's conduct to his senior staff, Cuomo's staff failed to follow Equal Employment Opportunity policies and procedures to promptly report those allegations to the appropriate investigative body. Indeed, the Executive Chamber's response was designed only to protect Cuomo from further accusations, rather than to protect employees from sexual harassment.

6. The United States also found that Cuomo's senior staff were aware of his conduct and retaliated against four of the women he harassed.

7. Based on these findings, the United States determined that, during the Cuomo administration, the Executive Chamber engaged in:

    **a)**    a pattern or practice of discrimination against female employees based on sex, in violation of Title VII, by subjecting them to and tolerating a sexually hostile work environment created by Cuomo between about 2013 and 2021, and

    **b)**    a pattern or practice of retaliation, in violation of Title VII, against some of those current and former employees after they complained that Cuomo harassed them.

8. Following Cuomo's resignation in August 2021, Governor Hochul assumed office and initiated reforms related to addressing and preventing sexual harassment and retaliation. The actions taken by Governor Hochul included, among other things, the reforms listed in Section IV below.

9. In November 2022, the Assistant Attorney General for Civil Rights authorized a Title VII lawsuit based on the findings in Paragraphs 4, 5, and 6 above.

10. In recognition of the Parties' common goal of fulfilling Title VII's aims and preventing sexual harassment and retaliation in the Executive Chamber, the Parties have entered into this Agreement.

## III. Definitions

11. "Complaints" means complaints of harassment, discrimination or retaliation as identified in the *Equal Employment Opportunity in New York State – Rights and Responsibilities – A Handbook for Employees of New York State Agencies*.

12. "Complaint handling process" means the process for receiving, investigating, and resolving complaints.

13. "Days" means calendar days, not business days.

14. "EEO Handbook" means the *Equal Employment Opportunity in New York State – Rights and Responsibilities – A Handbook for Employees of New York State Agencies*.

15. "Effective Date" is the date of the last signature below.

16. "Employee" or "employees" means anyone hired, assigned, or elected to work for the Executive Chamber, including non-supervisory employees, supervisors, interns, volunteers, contractors, and consultants, regardless of whether the position is on the payroll of another New York State agency.

## IV. Reforms To Date

17. Following Cuomo's resignation in August 2021, Governor Hochul assumed office and implemented a series of reforms related to addressing and

2

preventing sexual harassment and retaliation. Governor Hochul's actions include the following:

**a)** Removing from the Executive Chamber employees who were identified as having facilitated Cuomo's misconduct and/or engaged in unlawful retaliation against women who raised concerns about his conduct.

**b)** Repeatedly emphasizing to the public and to employees that sexual harassment, discrimination, and retaliation of any kind will not be tolerated.

**c)** Creating a Human Resources ("HR") Department staffed with individuals with experience addressing employee relations issues, training, and compliance to, among other things:

    **1.** Provide regular guidance on employee relations and proper management;

    **2.** Regularly educate employees about the complaint handling process as part of orientation, during trainings, and by posting, in the physical office and online, notices about the ways employees can file complaints both internally and externally;

    **3.** Facilitate mandatory trainings and track employees' compliance with those trainings; and

    **4.** Take corrective action for violations of EEO-related laws, the EEO Handbook, and workplace civility.

**d)** Launching a Workplace Sexual Harassment hotline allowing employees to file complaints of workplace sexual harassment with the New York State Division of Human Rights and receive legal advice from pro bono attorneys. The hotline is codified into New York State legislation; *see* S. 812B/A.2035B.

**e)** Posting EEO notices in common places in the office and sending monthly e-mail reminders regarding all of the possible ways for employees to file complaints both internally and externally.

**f)** Requiring HR Department personnel and supervisors to automatically file internal reports of potential violations of law or the EEO Handbook within three days if the complainant does not report it themselves.

**g)** Instituting live, mandatory training addressing discrimination, harassment, and retaliation each calendar year, and designating an

3

    HR Department employee to track compliance with training requirements.

 **h)** Allowing employees to file anonymous complaints.

 **i)** Signing into New York State law an anti-retaliation measure that prohibits the release of personnel materials as a retaliatory action; *see* S.5870/A.7101.

## V. Additional Reforms

**18.** During the Cuomo administration, the Executive Chamber did not have an HR Department; adequate handling of complaints about misconduct in the Executive Chamber; sufficient training; or a process for ensuring harassment, discrimination, and unlawful retaliation complaints involving the Governor were independently investigated. In addition to the reforms implemented to date, the Executive Chamber has committed to implementing additional reforms in partnership with the United States.

**19.** **Expanding the newly constituted HR Department.**

To expand the capacity of the HR Department, the Executive Chamber will add two employees to its HR Department, with specific focus on:

 **1.** employee relations issues; and
 **2.** training, including substantive training expertise and tracking training compliance.

**20.** **Transitioning the complaint handling process back to the New York State Office of Employee Relations ("OER").**

 **a)** To ensure a sustainable complaint review process, the Executive Chamber will develop and implement a plan to transition the investigation of harassment, discrimination, and retaliation complaints from the independent law firm currently handling such complaints to New York State's Office of Employee Relations ("Transition Plan").

 **b)** The Transition Plan will identify the individuals at OER (by role) responsible for intaking and investigating complaints alleging harassment, discrimination, or retaliation, and describe how the Executive Chamber will notify employees of the transition (*e.g.*, by updating the EEO notices described in Paragraph 17(e), above, and by updating the EEO Handbook and appropriate trainings).

**21.** **Alternative Complaint Process for Senior Officials.**

 **a)** The Executive Chamber will develop and implement an alternative complaint process for complaints against senior officials

4

                ("Alternative Complaint Process") to provide an avenue outside OER for complaints involving high-level Executive Chamber staff in order to increase employees' confidence that their complaints will be handled as independently as possible.

    **b)**    The Alternative Complaint Process will cover investigation of complaints alleging unlawful harassment, discrimination, or retaliation that directly implicate the Governor, Lieutenant Governor, the Secretary to the Governor, Counsel to the Governor, Director of State Operations, Chief of Staff, Director of Human Resources, the Chief Administrative Officer, and Director of Communications (the "Senior Officials").

    **c)**    The Alternative Complaint Process will provide that the investigation of future complaints alleging harassment, discrimination, or retaliation against any of the Senior Officials will be referred to a third-party law firm that has not performed significant legal work for the Executive Chamber.

    **d)**    The Alternative Complaint Process will include a description of how outside counsel will work with the Executive Chamber, corrective action decision making authority, and appropriate recusals for Senior Officials.

**22.** **Separate supervisor training.**

    **a)**    The Executive Chamber will develop and implement mandatory training for supervisors regarding how to foster a respectful workplace free from harassment, discrimination, and retaliation.

    **b)**    The supervisor training ("Supervisor Training") will address the following topics:

        **1.**    Supervisors' mandatory reporting obligations;
        **2.**    Instructions for reporting discrimination, harassment, and retaliation;
        **3.**    Affirmative duties of supervisors to report discrimination, harassment, and retaliation even in the absence of a formal or informal complaint;
        **4.**    Concrete actions supervisors should take to prevent, stop, and remedy discrimination, harassment, and retaliation;
        **5.**    Practical steps for how to respond to different levels and types of behavior prohibited by Executive Chamber policies governing workplace conduct; and
        **6.**    How to monitor for potential retaliation.

23. **Anti-retaliation policy.**

    a) To build on the anti-retaliation measure Governor Hochul previously signed into law, the Executive Chamber will develop and implement an anti-retaliation monitoring policy to protect complainants from retaliation ("Anti-Retaliation Policy").

    b) The Anti-Retaliation Policy will consist of:

        1. Providing complainants with the opportunity to have HR Department employees follow up with them to assess if they have experienced retaliation; and

        2. Reiterating to complainants and other participants in the complaint handling process, such as witnesses, that they should file a complaint if they believe they have been retaliated against.

24. **Additional training topics for all Executive Chamber personnel.**

    a) The Executive Chamber will expand the existing anti-discrimination, anti-harassment, and anti-retaliation training for Executive Chamber employees to include coverage of the following topics: bystander training, civility training, and empathy and perspective-taking training ("Additional Training Topics").

25. **Evaluation of efforts.**  The Executive Chamber will evaluate the effectiveness of its reforms, through the following means:

    a) **Workplace Assessment.**  During the ninth month after the Effective Date, the Executive Chamber will administer a workplace assessment to all full-time employees of the Executive Chamber ("Workplace Assessment").  The Workplace Assessment will include questions designed by the HR Department of the Executive Chamber.  These questions will gather information about and perceptions concerning the following topics, including through retrospective questions designed to assess the effectiveness of the reforms:

        1. Discrimination, harassment, and retaliation in the workplace;
        2. Knowledge of how to report allegations of discrimination, harassment, or retaliation in the workplace;
        3. Experience and comfort with the complaint reporting and investigation process (if applicable);
        4. Knowledge of and experience with the anti-retaliation policy (if applicable); and
        5. Experience with anti-discrimination, anti-harassment, and anti-retaliation trainings.

    b)    **Training evaluation.** The Executive Chamber will include questions at the end of the training described in Paragraphs 22 and 24 to assess participants' pre-and post-training understanding of the training materials, as well as any change in their perspectives post-training ("Training Evaluation").

The Executive Chamber will use the results of the Workplace Assessment and Training Evaluation in good faith to inform the implementation of the reforms described in Sections IV and V.

26.    **Process regarding additional reforms.** In furtherance of the Parties' common goal of fulfilling Title VII's aims and preventing sexual harassment and retaliation in the Executive Chamber, the Executive Chamber will share the Transition Plan, Alternative Complaint Process, Supervisor Training, Anti-Retaliation Policy, Additional Training Topics, Workplace Assessment, and Training Evaluation, described in Paragraphs 19-25 above, with the United States. The United States will provide feedback on those materials in accordance with the terms of this Agreement. The Executive Chamber will consider in good faith the United States' feedback and consult with the United States regarding its feedback before it implements each additional reform.

27.    **Designees.** Within one (1) month from the Effective Date, the Executive Chamber and the United States will mutually designate persons (the "Designees") to communicate regularly regarding the Executive Chamber's timeline for and progress on implementation of the additional reforms listed in Paragraphs 19-25, as well as the provision of the materials discussed in Paragraph 26, and coordinate in carrying out the common goals reflected in this Agreement. At least quarterly for the duration of this Agreement, the Designees will meet regarding the Executive Chamber's progress on implementing the additional reforms described in Section V. These meetings will include exchanging information and documents, including in response to the United States' requests.

28.    **Continuation of reforms to date.** The Executive Chamber will continue the reforms to date described in Section IV, modified as appropriate by the additional reforms described in Section V.

## VI. General terms

29.    **Duration.** The Agreement will terminate one (1) year after the Effective Date. The Parties can agree to extend the Agreement pursuant to Paragraph 34.

30.    **Reservation of rights.** The Parties reserve all rights to enforce the terms of this Agreement. If the United States files an action to enforce the Agreement, the Executive Chamber expressly agrees not to count the

time during which this Agreement is in place, or use existence of this Agreement, to plead, argue or otherwise raise any defenses under theories of claim preclusion, issue preclusion, sovereign immunity, statute of limitations, estoppel, laches, or similar defenses.

31. **Document retention.**  In connection with Paragraph 27 above, the Executive Chamber will retain documents and information relevant to the continuing and additional reforms in Sections IV and V.

32. **Scope.**  This Agreement is not meant to remedy any other violations or potential violations of Title VII or any other federal, state, or local law other than the violations explicitly discussed in this Agreement.  This Agreement does not affect the Executive Chamber's continuing responsibility to comply with all aspects of Title VII, nor does it affect the United States' right to investigate and, if appropriate, initiate judicial proceedings against the Executive Chamber about any alleged future violation of any statute, regulation, or executive order under its enforcement authority.

33. **Consideration.**  The Parties certify and acknowledge that they have signed this Agreement voluntarily and knowingly in exchange for full and adequate consideration.  In consideration for the Executive Chamber entering into this Agreement, the United States is refraining from filing a complaint alleging that the Executive Chamber during the Cuomo administration violated Title VII of the Civil Rights Act of 1964 by engaging in an unlawful pattern or practice of discrimination based on sex and engaging in an unlawful pattern or practice of retaliation.

34. **Entire agreement.**  This Agreement contains the entire agreement between the United States and the Executive Chamber on the matters raised here, and no other statement, promise, or agreement, either written or oral, made by any party or agent of any party, that is not in this Agreement will be enforceable.  The Parties can modify this Agreement in a writing signed by the Parties, including with respect to the duration of this Agreement.

35. **No admission of liability.**  This Agreement, being entered into with the Parties' consent, shall not constitute an adjudication or finding on the merits of the case, nor be construed as an admission of liability by the Executive Chamber, New York State, or its agencies.

Date: _____January 26, 2024_____

For the State of New York Executive Chamber:

_____
KAREN PERSICHILLI KEOGH
Secretary to the Governor
Executive Chamber of the Office
 of Governor Kathy Hochul
New York State Capitol
210 Albany NY 12224

_____
BOYD JOHNSON
MICHELLE NICOLE DIAMOND
Wilmer Cutler Pickering Hale and
 Dorr LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007

For the United States:

_____
KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

Karen D. Woodard, Chief
Jennifer M. Swedish, Deputy Chief
Shayna Bloom
Kathleen O. Lawrence
Jeremy P. Monteiro
Dena E. Robinson
Senior Trial Attorneys
United States Department of Justice
Civil Rights Division
Employment Litigation Section
4 Constitution Square
150 M Street NE
Washington, DC  20530

_____
BREON PEACE
United States Attorney
Eastern District of New York

Michael J. Goldberger
Megan J. Freismuth
Diane C. Leonardo
Assistant United States Attorneys
271 Cadman Plaza East
Brooklyn, NY  11201