UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

TROOPER 1,

                              Plaintiff,

        v.

NEW YORK STATE POLICE, ANDREW
CUOMO, MELISSA DEROSA and RICHARD
AZZOPARDI,

                              Defendants.

---

**MEMORANDUM AND ORDER**

22-CV-893 (LDH) (TAM)

LASHANN DEARCY HALL, United States District Judge:

Trooper 1 ("Plaintiff") brings the instant action against Defendants the New York State

Police ("NYSP"), Andrew Cuomo, Melissa DeRosa, and Richard Azzopardi, (collectively,

"Individual Defendants"), asserting claims of discrimination and retaliation in violation of the

Equal Protection Clause, Title VII of the Civil Rights Act of 1964, New York State Human

Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL"). Individual

Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss

Plaintiff's claims for discrimination and retaliation under the NYSHRL and NYCHRL.

## BACKGROUND[1]

Plaintiff is a trooper who has worked as a law enforcement officer with the New York

State Police since March 2015. (Second Am. Compl. ("SAC") ¶¶ 11, 20, ECF No. 71.) Cuomo

served as the governor of New York State from January 2011 to August 2021. (*Id.* ¶ 13.) On

November 4, 2017, Plaintiff was assigned to help secure a press conference held by Cuomo on

---

[1] The following facts are taken from the second amended complaint ("SAC") and are assumed to
be true for the purpose of this memorandum and order, unless otherwise indicated.

the Robert F. Kennedy Bridge. (*Id.* ¶ 21.) Plaintiff and another officer were tasked with escorting Cuomo's car to Randall's Island. (*Id.*) At one point, Cuomo initiated a conversation with Plaintiff, which lasted "no more than a few minutes" and consisted of "small talk between two unacquainted people." (*Id.*) After the conversation, Plaintiff learned that Cuomo requested that she be transferred to the Protective Service Unit ("PSU"). (*Id.* ¶ 3.) The PSU is the division of the NYSP charged with protecting the governor. (*Id.*) It is considered a "specialized, elite detail of the NYSP," the assignment to which leads to career advancement and promotion opportunities, and other tangible benefits. (*Id.* ¶ 31.) At some point in November 2017, a PSU officer determined that Plaintiff was not eligible for a position with the PSU because she did not have the requisite three years of experience with the NYSP. (*Id.* ¶ 26.) Shortly thereafter, Plaintiff was asked to apply for a transfer to the PSU and was informed that the eligibility criteria had been changed to accommodate her. (*Id.* ¶ 27.) According to one supervisor, "they changed the minimum from 3 years to 2. Just for [Plaintiff]." (*Id.* ¶ 28.) Cuomo and the NYSP later confirmed that Cuomo ordered that the eligibility requirements for the PSU be altered so that Plaintiff could be assigned to his personal security detail. (*Id.* ¶ 30.) In January 2018, Plaintiff applied for and was transferred to the PSU. (*Id.* ¶ 29.)

Throughout 2018, Plaintiff was assigned to protect Cuomo at his residence in Mount Kisco, New York. (*Id.* ¶ 32.) This assignment entailed opening and closing the garage for Cuomo and his family, following him, alerting his travel team when he left his residence, recording and logging guests, conducting security checks, monitoring the perimeter of his home, and accompanying Cuomo to his New York City Office. (*Id.* ¶¶ 32, 39.) Plaintiff's supervisors instructed her not to speak to Cuomo unless he spoke to her first. (*Id.* ¶ 33.)

Before long, Plaintiff claims that she experienced a series of harassing conduct while working on Cuomo's detail. The first such incident occurred as Plaintiff accompanied Cuomo in an elevator. When riding in any elevator with Cuomo, Plaintiff was required to stand between Cuomo and the elevator doors with her back to him. (*Id.* ¶ 39.) As Plaintiff performed that duty, Cuomo placed "a finger on [her] neck and ran it slowly down her spine to the middle of the back." (*Id.*) Plaintiff could feel Cuomo's finger touch her bra clasp. (*Id.*) As he touched her, he uttered, "Hey you." (*Id.*) In a September 2018 conversation, Cuomo offered to give Plaintiff a tour of the governor's mansion in Albany, adding "with a snicker, 'unless it is against protocols.'" (*Id.* ¶ 34.) And at one point, Cuomo asked Plaintiff about her relationships. (*Id.* ¶ 36.) During that interaction, Plaintiff stated that she planned to get married, to which Cuomo responded, "it always ends in divorce, and you lose money, and your sex drive goes down." (*Id.*) Cuomo's comments made Plaintiff feel uncomfortable and "extremely uneasy." (*Id.* ¶¶ 35, 37.) At the end of 2018, Plaintiff attended a holiday party as an off-duty invitee. (*Id.* ¶ 38.) There, Cuomo instructed her not to share their conversations with anyone. (*Id.*)

On April 18, 2019, Plaintiff was transferred to Cuomo's travel team, which was a more prestigious role that offered her a clearer path to promotion. (*Id.* ¶¶ 40–41.) The position also offered increased opportunities to earn overtime pay and gain other career experiences. (*Id.* ¶ 41.)

Plaintiff's transfer brought with it more time with Cuomo and his unwanted advances towards Plaintiff continued. (*Id.* ¶ 42.) For example, sometime during the summer of 2019, while Plaintiff was outside of Cuomo's Mount Kisco residence, Cuomo asked if he could kiss her. (*Id.* ¶ 43.) Plaintiff was shocked and did not know how to respond. (*Id.* ¶ 44.) Plaintiff did not want to offend Cuomo. In addition, because Cuomo had a reputation for retaliating against

anyone who crossed him, Plaintiff did not want to respond in a manner that would jeopardize her employment. (*Id*.) Plaintiff acquiesced. (*Id*. ¶ 45.) Cuomo kissed her on the cheek and acknowledged that "it was against the rules for him to do so." (*Id.*) In August 2019, Plaintiff and her supervisor drove Cuomo to an event. (*Id*. ¶ 48.) During the trip, Cuomo asked Plaintiff why she did not wear a dress. (*Id.*) Plaintiff responded that it would be impossible for her to carry a gun in a dress. (*Id.*) Cuomo continued to ask her about the dress until her supervisor interjected and stated that Plaintiff was dressed appropriately. (*Id.*) Immediately after the car ride, Plaintiff received a text from the head of the PSU, which stated "stays in truck." (*Id*. ¶ 50.) Plaintiff understood this to be a "clear order that she not disclose to anyone [Cuomo's] inappropriate comment." (*Id.*) Because Plaintiff feared being disciplined, she did not mention the incident to anyone at the time. (*Id.*) Shortly thereafter, while Plaintiff was posted in the "command center" in the lower level of the governor's mansion, Cuomo invited her upstairs. (*Id*. ¶ 51.) Plaintiff understood that Cuomo was inviting her to his bedroom. (*Id.*)

On September 23, 2019, Plaintiff accompanied Cuomo to an event at a racetrack where she was assigned to escort Cuomo to and from the event stage. (*Id*. ¶ 53.) As she held a door open for Cuomo, he "placed the palm of his hand on her belly button and slid it across her waist to her right hip, where her gun was holstered." (*Id*.) Plaintiff felt "violated." (*Id*. ¶ 54.) A few days later, on September 28, 2019, Cuomo again discussed relationships with Plaintiff and asked for her age. (*Id*. ¶ 55.) When Plaintiff told Cuomo she was in her late 20s, Cuomo replied, "You're too old for me." (*Id.*) Cuomo then asked what age difference she thought the public would be "willing to tolerate in a relationship of his." (*Id*. ¶ 56.) Plaintiff jokingly offered to be his matchmaker and asked him his requirements. Cuomo replied that he needed someone who "can handle pain." (*Id*. ¶ 57.) In October 2019, while Plaintiff accompanied Cuomo to an event,

Cuomo approached Plaintiff's car and asked for a kiss. (*Id.* ¶ 58.) Plaintiff told him she was sick. (*Id.* ¶ 59.) Cuomo walked away "seemingly disgusted by her response." (*Id.*)

On December 26, 2019, Plaintiff was promoted to investigator. (*Id.* ¶ 60.) Cuomo's behavior again continued. On March 5, 2020, while Plaintiff greeted Cuomo, he approached her to hug and kiss her. (*Id.* ¶ 61.) In one January 2021 instance, Cuomo sought out Plaintiff at an event to wish her a happy New Year; in another instance, Cuomo tried to speak to her at a February 2021 event as she stood next to a news photographer. (*Id.* ¶ 73.) On January 23, 2021, Cuomo decided to drive himself from an event. (*Id.* ¶¶ 68–69.) Cuomo subsequently approached the car's driver's side, "blocked the door and spread his arms, indicating he wanted [Plaintiff] to get out of the car and give him a hug." (*Id.* ¶¶ 69–71.) Plaintiff hugged him quickly so she could leave. (*Id.* ¶ 71.) Then, on June 27, 2021, Cuomo commented on the sunglasses Plaintiff wore, stating, "Look at you with your glasses looking like ohwee." (*Id.* ¶ 72.) Plaintiff understood this to mean that Cuomo thought she was attractive in her sunglasses. (*Id.*)

Cuomo's former chief of staff, "was specifically involved in hiding the Governor's behavior." (*Id.* ¶ 66.) In December 2020, Lindsay Boylan, a former employee at the Empire State Development Corporation, accused Cuomo of sexual misconduct. (*Id.* ¶¶ 103, 111.) When "Kaitlin"—a former employee of the Executive Chamber—posted a tweet in support of Boylan, DeRosa responded by pressuring a staff member to call Kaitlin, record the conversation, and ask whether Kaitlin was working with Boylan and whether Kaitlyn had any allegations against Cuomo. (*Id.* ¶ 148.) In addition, when another unidentified woman accused Cuomo of sexual harassment, DeRosa exchanged messages with Cuomo's brother "claiming falsely that he had "a lead" on that woman. (*Id.* ¶ 149.)

5

Thereafter, the press began to inquire about Cuomo's treatment of women. One reporter from the *Times Union* asked the NYSP about Plaintiff's transfer to the PSU. (*Id.* ¶ 64.) In response, Cuomo and his cohorts issued a "false and misleading statement" which failed to mention Cuomo's request that Plaintiff be transferred despite her lack of qualifications. (*Id.* ¶ 65.) At some point, DeRosa had a conversation with the editor for the *Times Union* during which she "yelled at the editor and accused him of being sexist for even making the inquiry." (*Id.* ¶ 66.) As a result, according to the SAC, the *Times Union* decided not to write on the subject. (*Id.* ¶ 67.)

Plaintiff alleges that she engaged in two protected activities in response to Cuomo's conduct. *First*, on May 19, 2021, Plaintiff "testified in an official investigation" concerning Cuomo's sexual harassment. (*Id.* ¶ 152.) *Second*, on September 28, 2021, Plaintiff sent a demand letter to Cuomo and DeRosa's lawyer "asserting her legal rights." (*Id.* ¶ 153.) Thereafter Plaintiff experienced multiple acts of purported retaliation. For instance, on or around November 12, 2021, DeRosa falsely accused Plaintiff of extortion and threatened legal action against Plaintiff. (*Id.* ¶ 154.) On February 10, 2022, Cuomo announced that he would be filing ethics charges against the attorneys who investigated him and warned that the list of attorneys targeted by his ethics allegations "may expand." (*Id.* ¶ 155.) Cuomo also "threatened" to seek criminal prosecution of his victims, announcing on Twitter[2] that he would make "submissions" to relevant district attorneys related to "perjury" and "witness tampering." (*Id.* ¶ 156.) On February 17, 2022, Azzopardi—Cuomo's spokesman—posted a tweet, claiming that Plaintiff

---

[2] In July 2023, Twitter rebranded to "X". *See* Supantha Mukherjee et al. *Twitter blue bird has flown as Musk says X logo is here*, Reuters (*last visited* Oct. 28, 2023), https://www.reuters.com/ technology/bird-has-flown-musk-twitter-ceo-yaccarino-say-x-logo-is-here-2023-07-24/. For the purposes of this opinion, the Court will refer to the social media platform as "Twitter" as the SAC does.

and her attorneys were attempting to "extort" a settlement and obtain "cheap cash extortions."

(*Id.* ¶ 159.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  A claim is facially plausible when the alleged facts allow the court to draw a

"reasonable inference" of defendants' liability for the alleged misconduct.  *Id.*  While this

standard requires more than a "sheer possibility" of defendants' liability, "[i]t is not the [c]ourt's

function to weigh the evidence that might be presented at trial" on a motion to dismiss.  *Id.;*

*Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the

[c]ourt must merely determine whether the complaint itself is legally sufficient, and, in doing so,

it is well settled that the court must accept the factual allegations of the complaint as true."

*Morris*, 37 F. Supp. 2d at 565 (citations omitted).

## DISCUSSION

## I.      Discrimination under the NYSHRL and NYCHRL Against DeRosa

The NYSHRL provides for liability of any employer who refuses to hire or bars or

discharges from employment any person based on, *inter alia*, "gender identity" or "sex."  N.Y.

Exec. Law § 296(1)(a).  Likewise, under the NYCHRL, it is unlawful "for an employer or an

employee or agent thereof, because of the actual or perceived . . . race, creed . . . gender . . . [or]

sexual orientation . . . to refuse to hire or employ or to bar or to discharge from employment such

person or to discriminate against such person in compensation or in terms, conditions or

privileges of employment."  N.Y.C. Admin. Code § 8-107(1)(a).  Of particular relevance here,

the NYSHRL and the NYCHRL also prohibit "aid[ing], abet[ting], incit[ing], compel[ling] or

7

coerc[ing] the doing" of any unlawful acts of discrimination, including sexual harassment and retaliation. N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6). *Feingold v. New York*, 366 F.3d 138, 157–58 (2d Cir. 2004). However, to successfully plead an aiding and abetting claim under either statute, plaintiffs must allege that a defendant "actually participate[d]" in unlawful discriminatory conduct by the employer. *Id.* at 158 (observing that the NYSHRL and the NYCHRL share the same governing standard for aiding and abetting claims).

It is axiomatic that to "actively participate" in an activity, one must be aware that the activity is occurring. Here, DeRosa argues that Plaintiff fails to plead facts that allow for the inference that DeRosa was aware of Cuomo's alleged harassment of Plaintiff at the time it occurred. (Mem. of L. in Supp. of Def. Azzopardi and DeRosa's Mot. to Dismiss ("Defs. Azzopardi and DeRosa Mem.") at 13–14, ECF No. 50.) DeRosa is correct. Plaintiff does not allege that DeRosa ever witnessed firsthand Cuomo's alleged harassment of Plaintiff, or that DeRosa was ever told about any alleged harassment by Plaintiff or anyone else. Perhaps in an implicit recognition of this deficiency, Plaintiff contends that knowledge of Cuomo's alleged harassment can be imputed onto DeRosa by virtue of her position. That is, according to Plaintiff, DeRosa knew that Cuomo harassed Plaintiff by virtue of DeRosa's position as Cuomo's Chief of Staff, where she "shared his confidence, protected his reputation, and resigned alongside him when the time came." (Pl.'s Opp'n to Azzopardi and DeRosa's Mot. ("Pl.'s Azzopardi and DeRosa Opp'n") at 8, ECF No. 51.) Plaintiff asks the Court to assume too much. Tellingly, Plaintiff fails to cite any authority which would support her theory. And, the Court cannot help but note that at least one district court has rejected this very argument. *See, e.g.*, *McHenry v. Fox News Network LLC*, 510 F. Supp. 3d 51, 77 (S.D.N.Y. 2020) (dismissing aiding and abetting harassment and discrimination claims based on allegations that a defendant knew of the

8

harassment "purely on account of title and responsibilities" and without specific allegations that the defendant knew of the harassment). The Court does so here as well.

Even if Plaintiff had adequately pleaded DeRosa's awareness of Cuomo's alleged harassment, Plaintiff's allegations are still insufficient to support an aiding and abetting claim in connection with that harassment. Plaintiff alleges that DeRosa was involved in concealing Cuomo's behavior when, after an editor from the *Times Union* asked the NYSP about the circumstances of Plaintiff's transfer to the PSU and how Plaintiff was selected for the detail, DeRosa allegedly yelled at the editor and accused him of being sexist for making the inquiry. (SAC ¶ 66.) Plaintiff claims that, as a result of DeRosa's interference, the paper never published an article on this subject. (*Id.*) But, even accepting these allegations as true, they say nothing about DeRosa's purported participation or involvement in Cuomo's alleged harassment of Plaintiff. Likewise, Plaintiff's allegation that Cuomo and "his cohorts" responded to the *Times Union* editor with a false and misleading statement is of no help. (*Id.* ¶ 65.) Conspicuously absent from this allegation is any mention of DeRosa. The SAC is simply silent as to DeRosa's knowledge about Cuomo's harassment of Plaintiff. For this reason alone, Plaintiff's claim is ripe for dismissal. *See, e.g.*, *McHenry*, 510 F. Supp. 3d at 77 (holding that the plaintiff failed to plead aiding and abetting harassment and discrimination claims against one defendant because the plaintiff failed to allege that the defendant knew of the harassment while it was ongoing).

Equally unavailing are allegations about the alleged harassment of another state employee. Plaintiff alleges that a victim of Cuomo's harassment posted a tweet in support of another victim. (SAC ¶ 148.) In response, DeRosa "pressure[d] a staff member" to call that woman, ask her whether she had any allegations against Cuomo, and record the conversation. (*Id.*) Plaintiff also alleges that DeRosa exchanged messages with Cuomo's brother in which he

claimed to have a "lead" on a victim. (*Id.* ¶ 149.) Yet, none of these allegations concerns

DeRosa's knowledge or awareness that *Plaintiff* was being harassed. In opposition, Plaintiff

highlights the allegation that when the *Times Union* reporter called DeRosa, DeRosa was well

aware of multiple claims of harassment against Cuomo and "caus[ed] the *Times Union* to back

off its inquiries about [Plaintiff]." (Pl.'s Azzopardi and DeRosa Opp'n at 8.) But, nothing in the

SAC suggests that the article concerned Cuomo's alleged harassment of anyone, let alone his

harassment of Plaintiff.

In addition, Plaintiff claims that DeRosa failed to investigate any of the allegations about

her and other women. (*Id.*) True, aiding and abetting liability can be found where one fails to

investigate claims of harassment. *See Delsi v. Nat'l Ass'n of Pro. Women, Inc.*, 48 F. Supp. 3d

492 (E.D.N.Y. 2014) (holding that defendant's general counsel aided and abetted harassment and

discrimination where, after receiving the plaintiff's complaints of harassment by a supervisor, he

failed to investigate the complaints). The problem for Plaintiff in this case is that she does not

allege any failure by DeRosa to investigate—or, again, that DeRosa was even aware of—

Plaintiff's harassment complaints.

In a seemingly last-ditch effort to avoid dismissal, Plaintiff attempts to recast her

discrimination claim as one brought under a hostile work environment theory.[3] (Pl.'s Azzopardi

---

[3] Of course, the standard of proof, and by extension, the requisite pleading requirement for a
hostile work environment claim is different than other discrimination claims. To state a claim of
discrimination under the NYSHRL through the creation of a hostile work environment, a
plaintiff must plausibly allege that "the workplace is permeated with discriminatory intimidation,
ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's
employment and create an abusive working environment." *Littlejohn v. City of New York*, 795
F.3d 297, 320–21 (2d Cir. 2015) (citation omitted). The NYCHRL standard for establishing a
hostile work environment is similar, except that it is more permissive—a plaintiff need only
plausibly allege "differential treatment . . . because of a discriminatory intent." *Mihalik v. Credit
Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (citation omitted). By

10

and DeRosa Opp'n at 6–7.) She cannot. Tellingly, the word "hostile" appears just three times in

the SAC—once in describing the conclusions of the New York State Attorney General's

investigation of the harassment allegations against Cuomo, once in referring to "an exhaustive

investigation" that found Cuomo responsible for creating a "hostile work environment," and

once in describing the "political[] hostil[ity]" towards Cuomo by a newspaper outlet. (SAC ¶¶ 4,

13, 73.) Nothing about those allegations could operate to put DeRosa on notice of any hostile

work environment claim. The Court will not read into Plaintiff's complaint a hostile work

environment argument advanced only in her opposition brief. *See D'Alessandro v. City of New

York*, 713 F. App'x 1, 10 n.12 (2d Cir. 2017) (stating that a court "test[s] the sufficiency of *a

complaint* in response to a Rule 12(b)(6) motion to dismiss" and that a "party is not entitled to

amend its complaint through statements made in motion papers.") (citations omitted); *see also

Burbar v. Incorporated Village of Garden City*, 961 F. Supp. 2d 462, 470 (E.D.N.Y. 2013)

(stating that a plaintiff may not amend his complaint through motion papers) (collecting cases).

## II.     Retaliation under the NYSHRL and NYCHRL Against Cuomo, DeRosa and Azzopardi

The NYSHRL makes it unlawful for an employer to retaliate or discriminate against an

employee because she "has opposed any practices forbidden under [the NYSHRL] or because

. . . she has filed a complaint, testified or assisted in any proceeding under [the NYSHRL]."

---

comparison, to state a prima facie case of discrimination under the NYSHRL and NYCHRL,
Plaintiff must demonstrate that "(1) she is a member of a protected class; (2) she is qualified for
her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise
to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000);
*Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010) (noting that the NYSHRL follows
the same substantive standards for employment discrimination as Title VII). "The NYCHRL
uses the same framework as Title VII and the NYSHRL, but contains, as to some elements, more
liberal pleading and proof standards." *Bonaffini v. City Univ. of New York*, No. 20-CV-5118
(BMC), 2021 WL 2206736, at *4 (E.D.N.Y. June 1, 2021) (citation omitted).

N.Y. Exec. Law § 296(7).  To demonstrate a prima facie case of NYSHRL retaliation, a plaintiff

must establish: "(1) that she participated in an activity protected . . . (2) that her participation was

known to her employer, (3) that her employer thereafter subjected her to a materially adverse

employment action, and (4) that there was a causal connection between the protected activity and

the adverse employment action."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010).

The plaintiff's burden of proof at the prima facie stage is "de minimis."  *Hicks v. Baines*, 593

F.3d 159, 166 (2d Cir. 2010).  For a retaliation claim to survive a motion to dismiss, therefore,

"the plaintiff must plausibly allege that: (1) defendants discriminated—or took an adverse

employment action—against [her], (2) because [s]he has opposed any unlawful employment

practice."  *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (citation omitted).

The burden on a plaintiff to establish a claim under the NYCHRL is more forgiving.  The

NYCHRL provides that "[i]t shall be an unlawful discriminatory practice for any person engaged

in any activity to which this chapter applies to retaliate or discriminate in any manner against any

person because such person has (i) opposed any practice forbidden under this chapter."  N.Y.C.

Admin. Code § 8–107(7).  "The [NY]CHRL is slightly more solicitous of retaliation claims than

federal and state law because, rather than requiring a plaintiff to show an 'adverse employment

action,' it only requires [her] to show that something happened that was 'reasonably likely to

deter a person from engaging in protected activity.'"  *Rozenfeld v. Dep't of Design & Constr.*,

875 F. Supp. 2d 189, 208 (E.D.N.Y. 2012) (citation omitted).  Otherwise, a prima facie case of

retaliation faces the same requirements under the NYCHRL as under the NYSHRL.  *Id.*

Individual Defendants concede that Plaintiff sufficiently alleges that she engaged in

protected activity.   (Defs. Azzopardi and DeRosa Mem. at 18; Mem. of L. in Supp. of Def.

Cuomo's Mot. to Dismiss ("Def. Cuomo Mem.") at 13, ECF No. 45-1.)  They argue, however,

that Plaintiff's NYSHRL and NYCHRL retaliation claims nonetheless fail because Plaintiff did

not sufficiently allege the existence of an employment or economic relationship between herself

and any Individual Defendants.  (Defs. Azzopardi and DeRosa Mem. at 18; Def. Cuomo Mem. at

13.)  The Court agrees.

There can be no question that the NYSHRL and the NYCHRL relate specifically to

conduct arising under the employer-employee relationship.  *See* N.Y. Exec. Law § 296(7)

(making it unlawful for any person engaged in unlawful discriminatory employment practices "to

retaliate . . .  against any person because he or she has opposed any practices forbidden under this

article"); *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 66 (S.D.N.Y. 2020) ("The

NYSHRL, like Title VII, makes it unlawful for an employer to retaliate or discriminate against

an employee."); N.Y.C. Admin. Code § 8-107(1)(a) (the NYCHRL applies only to "an employer

or an employee or agent thereof").  And, courts have long determined that the laws' retaliation

provisions should be construed broadly.  *See, e.g.*, *Albunio v. City of New York*, 16 N.Y.3d 472,

477–78 (2011) (interpreting the NYCHRL broadly in favor of discrimination plaintiffs).  Indeed,

even plaintiffs who are no longer employees may bring successful retaliation claims against a

former employer.  *Ballen–Stier v. Hahn & Hessen*, 284 A.D.2d 263, 264 (N.Y. Ct. App. 1st

Dep't 2001).  That said, the universe of relationships within the NYSHRL's and the NYCHRL's

reach is not unbounded.  A "plaintiff, if not a current employee, should be shown to occupy a

subordinate position in an ongoing economic relationship that is threatened by the 'employer's'

retaliation, and the nature of the retaliation itself should have a demonstrable nexus to the harm

being alleged." *Schmitt v. Artforum Int'l Mag., Inc.*, 178 A.D.3d 578, 584–85 (N.Y. Ct. App. 1st

Dep't 2019) (holding that a plaintiff satisfied this requirement where she alleged that her former

supervisor still maintained influence over her career even after her employment with the

defendant ended).  An "ongoing economic relationship" can be said to exist, for example, when a

defendant has "maintained . . . regular contact" with the plaintiff after an employment

relationship has ended, attempted to influence the plaintiff's career, or played a significant role in

the plaintiff's profession as a whole.  *Id.* at 584, 586.  Without sufficient factual allegations that

would support a past or present employment relationship, or at least an "ongoing economic

relationship," a plaintiff's retaliation claim will be unsuccessful.  *Id.* at 584–85.

The Court assumes *arguendo* that Plaintiff has plausibly alleged an employer-employee

relationship between herself and Cuomo when she served on his detail commencing January

2018.  However, Cuomo resigned from the governor's office in August 2021.  (SAC ¶ 13.)  His

resignation presumably ended any employment relationship Cuomo may have had with Plaintiff.

In other words, even taking Plaintiff's allegation as true, Cuomo's employment relationship with

Plaintiff ceased about six months prior to Cuomo's alleged February 10, 2022 threat to seek

"criminal prosecution of his victims."  (*Id.* ¶ 155).  This conclusion is buttressed by the fact that

Plaintiff fails to allege any facts from which the Court may reasonably infer an "ongoing

economic relationship" between Plaintiff and the ex-governor.  *See Schmitt*, 178 A.D.3d at 584.

Without any such allegations, Plaintiff fails to meet the basic pleading standards for a retaliation

claim under the NYSHRL and NYCHRL.[4]

---

[4] Even if Plaintiff's allegations supported an ongoing economic relationship between her and
Cuomo that survived his resignation, Plaintiff fails to plead the requisite causation.  That is, more
than four months passed between the time of Plaintiff's last protected activity on September 28,
2021 and Cuomo's February 10, 2022 threats of prosecution.  That gap in time is simply too
great to infer that Cuomo's comments were directed toward Plaintiff in retaliation for her
protected activity.  *See Harrison v. U.S. Postal Serv.*, 450 F. App'x 38, 41 (2d Cir. 2011)
(holding that adverse action taken "at least several months . . . after [plaintiff] engaged in
protected activity" was "insufficient to support the necessary causal connection"); *Hollander v.
Am. Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990) (holding three-and-a-half month period
insufficient to show a "causal nexus"); *Durant v. Friends of Crown Heights Educ. Ctrs.*, 2020

With respect to DeRosa, Plaintiff fails to allege that an employment relationship existed between her and DeRosa, past or present.  There are no facts setting out any roles Plaintiff worked under DeRosa's supervision.  This is not surprising.  DeRosa was chief of staff to Cuomo, a position in the governor's office; Plaintiff was an officer employed by the NYSP. Plaintiff does not allege that DeRosa had the power to hire or fire her.  Plaintiff does not allege that DeRosa set her schedule.  Nor does Plaintiff allege that DeRosa determined her rate of pay. In the absence of these sorts of allegations, the SAC falls short of alleging an employment relationship with Plaintiff.

In opposition, Plaintiff does not address these deficiencies.  Instead, she contends that her state employment at the time of the alleged harassment establishes a sufficient nexus to Plaintiff's employment.  (Pl.'s Oct. 11, 2022 Ltr., at 1, ECF No. 56.)  That assertion addresses the wrong inquiry, however.  The question is not whether DeRosa was a state employee at the time of the harassment, but rather whether there was an employment relationship between Plaintiff and DeRosa at the time of the retaliation.  There was not.  That Plaintiff and DeRosa were both state employees at the time of Cuomo's alleged conduct does not support an inference of an employment or economic relationship between them at the time of the alleged retaliation. There are scores of state agencies that employ individuals across New York State, and to adopt Plaintiff's argument would expand the boundaries of employment relationships much too far.

The Court's conclusions as to Cuomo and DeRosa apply with greater force to Azzopardi. Plaintiff alleges that on February 17, 2022, the same day Plaintiff filed the instant action, Azzopardi posted a tweet that Plaintiff and her attorneys were attempting to "extort" a settlement

_____

WL 1957449, at *5 (E.D.N.Y. Apr. 23, 2020) (concluding that a "four-month delay largely undercuts any retaliatory causal link plaintiff alleges").

and "cheap cash." (SAC ¶ 159.) Here, again, Plaintiff fails to allege any fact that would allow

the Court to infer that she and Azzopardi ever had an employment relationship. The only

allegation concerning Azzopardi's connection to Cuomo is that he was Cuomo's spokesperson.

(*Id.* ¶ 15.) There are no allegations, however, that Azzopardi worked for, either in the past or at

the time he posted the tweet, the NYSP, in Cuomo's office, or in another capacity linking

Azzopardi to Plaintiff's employment with the NYSP.[5]

On these points, *Eckhart v. Fox News Network, LLC* is instructive. No. 20-cv-5593, 2021

WL 4124616, at *1 (S.D.N.Y. Sept. 9, 2021). There, the plaintiff sued her former employer, Fox

News Network, and a former network employee. The plaintiff accused the former network

employee of sexual harassment and alleged that Fox News Network knew about this behavior.

*Id.* at *2–3. After Fox News Network ultimately terminated the plaintiff, she informed her

former employer that she had filed a lawsuit against them and the former network employee who

harassed her. *Id.* at *5. During the ensuing litigation, the former network employee filed a

motion to dismiss the plaintiff's claims and attached with it nude or partially nude photographs

of the plaintiff on the court's docket, which plaintiff argued was an act of retaliation in violation

of the NYSHRL and NYCHRL. *Id.* at *6. The district court dismissed the retaliation claim

---

[5] Plaintiff also argues that Azzopardi may be held liable as an aider and abettor of Cuomo's retaliation because Cuomo engaged in a campaign of retaliation against his accusers and Azzopardi participated as his spokesperson. (Pl.'s Azzopardi and DeRosa Opp'n at 18.) However, the SAC does not contain any aiding and abetting allegations against Azzopardi and Plaintiff may not amend her complaint in an opposition to a motion to dismiss to plead them now. *See Burbar v. Incorporated Village of Garden City*, 961 F. Supp. 2d 462, 470 (E.D.N.Y. 2013) (stating that plaintiff may not amend his complaint through motion papers). Azzopardi is mentioned only eight times in the SAC, and the only substantive allegations concerning Azzopardi are that he published false statements accusing Plaintiff of extortion, such as the February 17, 2022 tweet, and that he is Cuomo's spokesman who attacked victims, (SAC ¶¶ 7, 15, and 159.) These allegations are not nearly enough for the Court to infer that Defendant Azzopardi aided and abetted Cuomo's retaliation.

because at the time that the former network employee engaged in the alleged retaliatory conduct, there was no employment relationship or ongoing economic relationship between the plaintiff and former network employee. *Eckhart v. Fox News Network, LLC*, No. 20-cv-5593, 2022 WL 4579121, at *1–2 (S.D.N.Y. Sep. 29, 2022) (on a motion for reconsideration).

Plaintiff offers no real response to any conclusion drawn in *Eckhart*. That is, Plaintiff offers no authority, binding or persuasive, that might reveal the folly of *Eckhart*'s approach. Instead, Plaintiff urges the Court to ignore it. (Pl.'s Oct. 11, 2022, Ltr., at 1 ("As a threshold matter, *Eckhart* is not binding on this court.").) Short on precedent, Plaintiff attempts an appeal to the remedial purposes of antiretaliation law. She argues that even though DeRosa and Azzopardi were not her employers, they should not get "carte blanche to retaliate," and to do so "would create a loophole in the discrimination laws and disincentivize complaints" of discrimination. (Pl.'s Azzopardi and DeRosa Opp'n at 17–18.) Whatever the merits of these policy arguments, they are not the law.

## CONCLUSION

Therefore, Individual Defendants' motions to dismiss Plaintiff's discrimination and retaliation claims are GRANTED.

SO ORDERED.

Dated: Brooklyn, New York  
   July 12, 2024

/s/ LDH _____  
LaSHANN DeARCY HALL  
United States District Judge

17