```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF NEW YORK

------------------------------X Docket#
TROOPER 1,                    : 22-cv-00893-LDH-TAM
                              :
            Plaintiff,        :
                              :
    - versus -                : U.S. Courthouse
                              : Brooklyn, New York
NEW YORK STATE POLICE, et al.,:
                              : November 13, 2024
            Defendants        : 4:34 p.m.
------------------------------X
```

      TRANSCRIPT OF CIVIL CAUSE FOR DISCOVERY CONFERENCE
            BEFORE THE HONORABLE TARYN A. MERKL
             UNITED STATES MAGISTRATE JUDGE


**A    P    P    E    A    R    A    N    C    E    S:**
**(VIA VIDEO/AUDIO)**


**For the Plaintiff**:        **Valdi Licul, Esq.**
                              **Katherine Vask, Esq.**
                              Wigdor LLP
                              85 Fifth Avenue, Fifth Floor
                              New York, NY 10003


**For the Defendants**:       **Daniel J. Moore, Esq.**
                              Harris Beach PLLC
                              99 Garnsey Road
                              Pittsford, NY 14534



        (Appearances continue on next page)



**Transcription Service**:    **Transcriptions Plus II, Inc.**
                              61 Beatrice Avenue
                              West Islip, New York 11795
                              RL.Transcriptions2@gmail.com



Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

**APPEARANCES CONTINUED**

<u>**For the Defendants**</u>:        **Rita M. Glavin, Esq.**
Glavin PLLC
156 West 56th St., Ste. #2004
New York, NY 10019

**Theresa Trzaskoma, Esq.**
Sher Tremonte LLP
90 Broad Street
New York, NY 10004

**Catherine Foti, Esq.**
**Kayasha Lyons, Esq.**
Morvillo, Abramowitz, Grand,
 Iason & Anello P.C.
565 Fifth Avenue
New York, NY 10017

3

                              Proceedings

1          THE CLERK:  This is Civil Cause for Discovery

2    Conference, docket 22-cv-893, *Trooper 1 v. New York State*

3    *Police, et al*.

4          Before asking the parties to state their

5    appearance, I would like to note the following.  Persons

6    granted remote access to proceedings are reminded of the

7    general prohibition against photographing, recording, and

8    re-broadcasting of court proceedings.  Violation of these

9    prohibitions may result in sanctions including removal of

10   court-issued media credentials, restricted entry to

11   future hearings, denial of entry to future hearings, or

12   any other sanctions deemed necessary by the Court.

13         Will the parties please state their appearances

14   for the record starting with the plaintiff?

15         MR. LICUL:  Good afternoon, your Honor.  Valdi

16   Licul; Wigdor LLP, for the plaintiff Trooper 1.  And I'm

17   here with my colleague, Katherine Vask.

18         THE COURT:  Could you spell Ms. Bask's [sic]

19   last name for me, sir?

20         MR. LICUL:  The last name is V-A-S-K.  She

21   hasn't yet filed a notice of appearance but will do so

22   shortly.

23         THE COURT:  Okay.  I'm sorry, did you say D as

24   in dog or B as in boy?

25         MR. LICUL:  V as in Victor.

4

                         Proceedings

1           THE COURT:  V as in Victor.  So I'm glad I

2   asked.  Okay, thank you.

3           MR. LICUL:  You're welcome.

4           THE COURT:  And on behalf of the defendants?

5           MR. MOORE:  Your Honor, Daniel Moore from the

6   Harris Beach firm on behalf of the New York State Police.

7           THE COURT:  Okay.  For Mr. Cuomo, who do we

8   have?

9           MS. GLAVIN:  Good afternoon, your Honor.  Rita

10  Glavin, G-L-A-V-I-N, at Glavin PLLC.  I am here along

11  with my co-counsel Theresa Trzaskoma, T-R-Z-A-S-K-O-M-A

12  of Sher Tremonte for former Governor Andrew M. Cuomo.

13          THE COURT:  Okay.  Anybody else on the line on

14  behalf of the parties?

15          MS. FOTI:  Yes, your Honor.  Catherine Foti.

16  I'm here with Kayasha Lyons from Morvillo, Abramowitz,

17  Grand, Iason & Anello on behalf of Melissa DeRosa and

18  Richard Azzopardi to the extent there's a potential

19  appeal.

20          THE COURT:  I understand.  And to the extent --

21  so just remind me, Ms. Foti, as to the current status of

22  the briefing as to the amended complaint.  Was there --

23  or maybe Mr. Licul is the best person to ask.  Were you

24  seeking to add some facts against Mr. Azzopardi or is it

25  related to Ms. DeRosa?

5

Proceedings

1    MS. FOTI:  It was only --

2    MR. LICUL:  Just Ms. DeRosa.  The motion --

3  sorry, Cathy.

4    MS. FOTI:  No, go ahead.

5    MR. LICUL:  So not as to Mr. Azzopardi, just

6  Ms. DeRosa.  The motion is fully briefed and we're

7  waiting for a decision on the motion to amend.

8    THE COURT:  That was my understanding of the

9  papers when I just reviewed them in connection with the

10  most recent opinion we issued in the OAG docket and I

11  just wanted to confirm that I was reading the papers

12  correctly.  So thank you for that.  It just helps me to

13  understand the framing in terms of who's still in the

14  case and what the discovery issues are.

15    So I'm told that there is a nascent or perhaps

16  ripening dispute regarding a deposition issue.  Mr.

17  Licul, would you like to give me an overview of where we

18  are?

19    MR. LICUL:  Certainly, your Honor.  Several

20  weeks ago Trooper 1 was deposed.  We were prepared to

21  move forward with the entire deposition that day.  We got

22  through about six hours of the seven hours but the court

23  reporter had to leave, which is fine.  So we scheduled

24  the second day which is this coming Friday.  And we made

25  our position known to the defendant that we believe this

6

Proceedings

1  deposition could be done in the seven hours under the

2  federal rules.  Yesterday we got an email stating that

3  they needed essentially a full second day.

4            Our response was prompt and it was that we

5  didn't believe that to be true.  But nevertheless, we

6  would consent to an additional two hours, in other words,

7  completing the last hour and an additional two hours to

8  complete the deposition.  And we believe that it's more

9  than enough.  I've gone over the transcript of the first

10  day of Trooper 1's deposition which of course is in

11  addition to her testimony before the AG and it covers

12  virtually all of the topics and it covers the

13  investigation, it's all of the incidents with the

14  governor.  It covers her communications, her search for

15  documents.

16            The only thing that I can see plainly that's

17  not yet covered is the issue of damages.  So you know,

18  that's a fair point.  But everything else has been

19  covered.  No one has told us what other topics they need

20  to fill an additional seven hours.

21            Unfortunately, when we made our proposal for an

22  additional two hours we didn't get a response back, you

23  know, with a counterproposal.  So here we are.  I'm sorry

24  I have to bother you.  But that's essentially framing the

25  issue, your Honor.

Transcriptions Plus II, Inc.

7

Proceedings

1          THE COURT:  All right.  And Mr. Licul, do you
2   have a sense of which defendants are driving this request
3   for the additional time?  Like who spent the bulk of the
4   time in the first six hours?
5          MR. LICUL:  Well, it was entirely the
6   governor's counsel.  And this was a topic of discussion
7   as well.  We repeatedly reminded defendant that, you
8   know, even though there are multiple defendants, the
9   issues overlap.  And so we asked them to coordinate
10  amongst themselves because clearly they don't each get to
11  ask the same questions.  But the only folks doing the
12  questioning for the first six hours were counsel for the
13  governor.
14         THE COURT:  Okay.  All right.  So who on the
15  defense side of the table wants to take the lead on where
16  you believe we are and why the parties can't resolve the
17  outstanding deposition in three additional hours which
18  would amount to more time than you're entitled to under
19  the rules.  Who's taking the lead there?
20         MR. MOORE:  Your Honor, this is Dan Moore.  And
21  first, thank you very much for making the time and
22  assisting us with this dispute.
23         This is a multiparty case and we understand
24  that in an ordinary case seven hours are allowed.  But
25  you know, of course the notes make, you know, allow for

8

Proceedings

1  the fact that in multiparty cases sometimes there's a

2  need to take more than seven hours.  And you know, in

3  those cases the parties need to work, you know, one side

4  of the table needs to work together to avoid duplicative

5  questioning.  And you know, one attorney ought to be

6  asking the questions with respect to our similar

7  interests.  And that's what's been done here.  But some

8  things need to be considered here.

9           First is this is a 35(h) complaint with 200 or

10  so allegations.  There have been tens of thousands of

11  documents produced in discovery.  There have been text

12  messages produced that were not produced by the plaintiff

13  but go back and forth to and from the plaintiff that we

14  were not aware of until we found them through other means

15  of discovery.

16           Two days before part one of the deposition on

17  October 2nd, two days before, about 500 medical records

18  were dumped on the defendants.  So there is a lot to this

19  case.

20           So understanding we want to be as surgical as

21  we can in our questioning, the defense team has worked

22  hard to ensure that we are not asking the same questions

23  that -- there is one attorney, that would be Ms. Glavin,

24  Governor Cuomo's counsel, who's going to handle most of

25  the questioning and with our common interests she will be

9

Proceedings

1   asking those questions.

2         But there are certain questions that New York

3   State Police is most interested in that are unique to its

4   defenses.  In this case there are Title 7 claims against

5   only the New York State Police and there are unique

6   defenses to Title 7 that don't apply to the other

7   defendants.  And there are questions about the New York

8   State Police issues that we believe are important and

9   that are separate from what the governor's defense will

10  be.

11        So you know, our sense of this, your Honor, is

12  that it's very hard to schedule all of the attorneys' be

13  time.  There are about eight attorneys that are involved.

14  We have a day now where everybody can be there.  We won't

15  have to come back.  We've agreed to limit this to just

16  one day.  Everybody will be there.

17        If we don't have the time we need, we believe

18  it will be very unfair.  For example, if this deposition

19  were to end while Ms. Glavin is still moving through the

20  common interest questions, then that would preclude the

21  New York State Police from asking any questions at all.

22        And I might say, and Ms. Glavin can probably

23  speak to this better than I can, but there are still --

24  when the deposition was adjourned on October 2nd, there

25  were still more than half of the issues for the incidents

Proceedings

10

1    raised in the complaint we hadn't gotten to.  We still

2    hadn't gotten to the damages.

3              And again, there are in total thousands of

4    pages of medical records in this case.  So there are a

5    lot of text messages that go back and forth that we need

6    to have answers on.

7              So your Honor, we're just asking just one day.

8    That's it.  We'll be done.  And then we won't need to

9    come back.  We don't think that's unreasonable.

10             One of the things that the committee in its

11   notes provided said that preoccupation with timing is to

12   be avoided.  So since this would not seem to

13   inconvenience anybody, we're all going to be there

14   anyway, we'll limit the deposition to just one day.  We

15   think it would be most reasonable to just get it done.

16             THE COURT:  So how long do you think that the

17   New York State Police specifically needs beyond Ms.

18   Glavin's follow-up that she's planning to cover?

19             MR. MOORE:  Your Honor, we would need

20   approximately two hours is our sense, or approximately

21   two and a half hours.  And I know that there are

22   questions that counsel for the individual defendant, Ms.

23   DeRosa, also has that I believe are unique to her

24   situation.

25             THE COURT:  Okay.

Transcriptions Plus II, Inc.

Proceedings                                    11

1        MS. FOTI:  Yes, your Honor, just to add what

2   our position is here, there were no questions about my

3   individual defendants that were asked in the first

4   session.  You know, there are very specific allegations

5   as to Ms. DeRosa.  And I'm not even mentioning the other

6   party right now who's not an active member of the suit.

7   But still, there's still specific allegations that I

8   really do need to inquire about especially if the judge

9   decides that she's (indiscernible), you know, in this

10  case.

11       We have talked to Mr. Licul.  It's actually a

12  number of additional discussions than I think he

13  summarized.  You know, he certainly got to the gist of

14  what the issues were in terms of timing.  But we offered

15  to do whatever we could within an hour, hour and a half

16  for my client.

17       THE COURT:  Okay.  So as I hear you so far, Mr.

18  Moore is seeking two to two and a half hours.  You're

19  seeking an hour to an hour and a half.

20       Ms. Glavin, you already had six hours.  What

21  are you looking to accomplish on Friday?

22       MS. GLAVIN:  Sure, your Honor.  Thank you.

23  First, with respect to, you know, what has not been

24  covered, Mr. Licul is incorrect that everything has been

25  covered and Mr. Moore is correct that there are about,

12

Proceedings

1   we're only through about half of the incident that

2   Trooper 1 has personally alleged involved her in the

3   complaint.

4           So we need to cover incidents still.  We've

5   gotten through, I don't know, maybe eight to ten of them

6   and we have another eight to ten to go.  And I should,

7   you know, inform the Court that there are also with

8   respect to allegations during the course of her

9   deposition she provided some new information and

10  allegations that she had never made before which required

11  exploration on our part.

12          So that first is to finish through her

13  allegations and complaint.  And again, I have been tasked

14  by co-counsel with getting through those allegations on

15  behalf of the remaining defendants.

16          Second, and I think your Honor is aware of

17  this, is that it came out in the deposition that Trooper

18  1 intentionally deleted text messages that she had with

19  other state troopers in which she was discussing her

20  allegations, the Attorney General investigation, and

21  Governor Cuomo.

22          Shortly before her deposition, we received a

23  production from another trooper on the PSU with whom she

24  was communicating of many, many text messages with

25  Trooper 1.  We've gotten through a number of those text

13

Proceedings

1    messages but there are still some more to go through.

2           In addition, we have not -- she has included

3    allegations with respect to another complainant and we do

4    have to ask her just a series of questions about each of

5    those for reasons I'm sure your Honor can understand and

6    hopefully can tee up our motion practice.

7           In addition, we also need to explore, and this

8    is a common interest, about some -- there were a number

9    of issues that she was having at work and in her personal

10   life during this period of time that are unrelated to

11   Governor Cuomo and issues concerning her dislike of her

12   job, wanting to leave her job, et cetera, that we need to

13   explore.  It also goes to damages about intervening

14   causes of stress.

15          On the damages issue for which I've been

16   tasked, you know, by the defendants to cover, your Honor

17   is aware she had at least six different health providers,

18   primarily mental health providers.  48 hours before her

19   deposition in the first day, plaintiff produced 500 new

20   pages of medical records that covered a period of three

21   years, and they're pretty dense.  And you know, there are

22   conflicting reports of what she provided various

23   healthcare providers as well as intervening we think

24   causes that go to damages that we need to get through.

25          THE COURT:  Which three-year period?

Transcriptions Plus II, Inc.

14

Proceedings

1           MS. GLAVIN:  I'm sorry, your Honor, I didn't
2   understand.
3           THE COURT:  Which three years are you talking
4   about?
5           MS. GLAVIN:  From 2021 to 2024.
6           THE COURT:  Okay.  So after the events at issue
7   in this case for the most part?
8           MS. GLAVIN:  Yes.  And some during but it
9   appears that she did not go to get mental health, any
10   type of mental health treatment until after the Attorney
11   General's report came out.
12           THE COURT:  Okay.  Thank you.
13           MS. GLAVIN:  And there are just what she did
14   and didn't discuss.  And there are -- and in addition, we
15   also have worker's comp records that were recently
16   provided by the New York State Police shortly before her
17   deposition and we need to go through some of those as
18   well.
19           And I think there are also some phone records
20   we need to get through and we're trying to streamline
21   that as well.
22           Just so your Honor understands, we work -- I
23   think you started by asking us which of the defendants is
24   driving this.  And what I want your Honor to know is that
25   we have worked quite collaboratively, the state police,

15

Proceedings

1    Ms. DeRosa's counsel, and myself, to go through what each
2    of us plan to cover, who can cover, you know, common
3    interests versus others to divide this up and do it as
4    efficiently as possible.  And that's, you know, what we
5    aim to do.  And everybody is available to do that and get
6    this done on Friday.  And given --
7            THE COURT:  But your list of items is very
8    ambitious, Ms. Glavin, especially if the other attorneys
9    need time.  So how much time do you expect would be
10   required for everything that you just discussed in light
11   of how long things took in the prior deposition?  I mean
12   I'm concerned, frankly --
13           MS. GLAVIN:  Yeah, no, I agree.  I agree with
14   you.
15           THE COURT:  No, let me finish, please.  I'm
16   concerned that you said you only covered about eight to
17   ten of the incidents in the first six hours and that you
18   still have eight to ten incidents to cover.  You have to
19   make strategic choices when you know you have a limited
20   time in her deposition.  And this is a single plaintiff
21   case and it should not be that -- this is not the same
22   thing as conducting proffer.  You know, you have to be
23   more strategic.  So how much time do you think you need?
24           MS. GLAVIN:  I think I have tried to slim this
25   down and in talking with defense counsel we think we can

16

Proceedings

1  get it done in three to four hours meaning all those

2  topics that I just discussed with you.  I mean my goal is

3  to get all of those topics done in three hours.  That's

4  the plan.  But again, I don't know what she's going to

5  answer on some of these.

6           And you know, Judge, look I get it but you know

7  on some depositions, we've been doing a number of

8  depositions in the Bennett case and they have taken

9  longer.  We've done depositions in the Bennett case that

10  have actually taken longer than we initially thought that

11  they were going to take.

12           THE COURT:  Right.

13           MS. GLAVIN:  And I will say that, you know,

14  this is an important case.  There are three defendants.

15  This is allegations about approximately 20 different

16  incidents over three years or more.  And some of the

17  information that we got in day one of the deposition was

18  brand new.

19           THE COURT:  Right.  All right.  Mr. Licul,

20  the --

21           MR. LICUL:  Yes.

22           THE COURT:  -- defendants as a group make a

23  somewhat compelling point that this is a multi-defendant

24  case and these are complicated allegations.  It's of

25  course a little concerning if true that they received

17

Proceedings

1   complex medical records shortly before the deposition.

2   That can slow things down a little bit.

3              So what is your position in light of all of the

4   requests?  Basically, they think they can get it done if

5   you do the additional seven hours.  Two hours or so for

6   the New York State Police, an hour or two, two to two and

7   a half for the New York State Police, one to one and a

8   half for Ms. Foti's client.  I'm assuming you're going to

9   focus on Ms. DeRosa, Ms. Foti.  And then another, you

10  know, three to four hours for Mr. Cuomo to cover the bulk

11  of the allegations since it sounds as though Ms. Glavin

12  is taking the laboring on covering the specific

13  incidents, the texts, and things like that.

14             So what is your reaction to all of that, Mr.

15  Licul?

16             MR. LICUL:  My reaction, your Honor, is that

17  the allegations by my client here, that what she

18  personally observed are no different and in fact

19  functionally less, fewer of them than in almost all of

20  the cases that I have where a deposition is done in seven

21  hours.

22             And I would like to say we disagree about what

23  incidents were covered.

24             And I'd like to tell you, your Honor, I just

25  reviewed the transcript and here are the subjects that

18

Proceedings

1    were covered just regarding the incidents with Mr. Cuomo.

2          The incident where he touched her stomach; the

3    incident where he's asking her personal questions about

4    marriage and her sex life; his offer to provide her a

5    tour of the mansion; the allegation that he was flirty

6    and creepy; the questions by Governor Cuomo about why

7    Trooper 1 doesn't wear a dress; his request for hugs and

8    kisses; his efforts to seek her out at events to pay

9    attention to her; his conduct towards other female

10   members of the PSU; the holiday party where Mr. Cuomo

11   directed Trooper 1 not to reveal to anyone what they

12   discussed; the culture of sexism in New York State

13   Police; the elevator incident where he ran his finger

14   down Trooper 1's back.

15         There was extensive questioning about whether

16   Cuomo was known to joke.  There was extensive questioning

17   about Trooper 1's promotion to the PSU and how that

18   happened.  There were questions about her communications

19   with her colleagues at various events.  There were also

20   questions that had nothing to do with the case but they

21   spent time with.  As your Honor understands that's a

22   strategic decision.  For example, whether members of the

23   PSU agreed with Mr. Cuomo's political views regarding

24   vaccinations and masks and bail reform; about some

25   incident where the governor transferred a bunch of PSU

19

Proceedings

1    supervisors because of some fire.  I don't know what it

2    has to do with the case but we spent time on that.  All

3    right?

4              So I don't agree that there are half the

5    allegations to go.  If there are, that's news to me.  I

6    think most of this stuff has been covered.  And as your

7    Honor knows, if you give people more time, another seven

8    hours, they will fill up that time and often it's not

9    very efficient.

10             I still don't know from New York State Police

11   or from Ms. DeRosa what unique issues they have.  And I

12   agree that the damages are something.

13             And finally, your Honor, you know, lots of

14   cases have 10,000 documents or 50 or 100,000 documents.

15   It doesn't mean you get to ask everyone about each

16   document.  The documents speak for themselves.  You have

17   to make some decisions about what to ask about.

18             And frankly, your Honor, I also think that this

19   is a bit of an ambush.  We clearly made our point known

20   that we were going to hold them to the seven hours and

21   then we modified our position to try to accommodate and

22   avoid this.  But to be told three days before a

23   deposition we need a whole other day feels pretty

24   opportunistic to us and it's unnecessary.  So that's our

25   position.

20

Proceedings

1          MS. GLAVIN:  Your Honor, this is Ms. Glavin.

2     Could I just be heard on what was covered and not

3     covered?  Because I just want to make the record if

4     that's okay.

5          THE COURT:  Sure.

6          MS. GLAVIN:  So Mr. Licul is incorrect.  We did

7     not cover the Belmont stomach touching incident.  He can

8     look in the transcript.  I'm very aware of what was

9     covered and not covered because I'm doing the

10    questioning.  That was September 2019.

11         We did not cover the incident about whether the

12    governor had a conversation about asking her to go

13    upstairs.  We did not cover the incident of her

14    allegation that the government remain a comment to

15    another female trooper about going upstairs.  We never

16    covered the incident where she claims the governor

17    claimed you're too old for me and can you handle pain?

18    We did not cover the October 2019 Low Memorial incident.

19    We did not cover the 2020 incident where she claimed the

20    governor tried to kiss her.  We did not cover the January

21    2021 incident where he said you could drive my car.  We

22    did not cover the Moynihan Hall incident.  We did not

23    cover the sunglasses comment.

24         With respect to Mr. Licul's claim that

25    irrelevant questions were asked about views of other

Transcriptions Plus II, Inc.

21

Proceedings

1    state troopers, this came because of text exchanges that

2    Trooper 1 had discussing the politics of Governor Cuomo

3    that she disagreed with, text messages with Charlie Brown

4    and text messages and text messages with Kyle

5    Shillingford.  It goes to state of mind.

6              With respect to the issue about troopers being

7    removed or quote/unquote retaliated against.  Trooper 1

8    includes in her complaint, she makes the allegation that

9    she believed Governor Cuomo to be vindictive or

10   retaliatory towards other troopers.  Those incidents are

11   discussed in text messages that she destroyed and we got

12   from another trooper or another source.

13             And with respect to, you know, Mr. Licul saying

14   that he's been ambushed, we have said to him that we

15   thought we were going to need more time.  And we had

16   hoped -- I mean Judge, we're not that far apart here.

17   We're not asking, you know, two additional days.  Mr.

18   Licul saying get it done in two additional hours, we're

19   saying a full day of seven hours while everyone is

20   available and let's just get it done.  And I don't think

21   it's inherently unreasonable in a case with the degree of

22   medical providers, the volume of those records, the

23   number of allegations that have been made, the fact that

24   there were a number of text messages that she destroyed,

25   most if not all of her text messages discussing this case

Transcriptions Plus II, Inc.

22

Proceedings

1   and investigation.

2           And so therefore, when we had gotten them from

3   other sources and they relate to a view about the

4   governor or a bias had absolutely nothing to do with her

5   feeling that the governor had harassed her, we have to

6   ask about that.  But we have really tried to be good

7   about this and respect for the process.

8           THE COURT:  Mr. Licul, is there anything you'd

9   like to say in response?

10          MR. LICUL:  Yeah.  As Ms. Glavin was speaking,

11  I'm looking at the transcript.  So I would be looking on

12  page 226 of the transcript.  I don't expect to read this

13  entirely for your Honor, but there's a question by Ms.

14  Glavin about the tour.  Clearly she asked about that.

15  There's discussion about the touching of the stomach.

16          I mean so I just, you know, again, I think they

17  need to be, I think they need to -- they can't go back

18  and keep asking the same questions which I think was a

19  big problem the first time around.

20          But other than that, we'll stand on our current

21  argument.

22          THE COURT:  Ms. Foti, is there anything you'd

23  like to say?

24          MS. FOTI:  Who was that to?

25          THE COURT:  Ms. Foti.

23

Proceedings

1          MS. FOTI:  For me?  For me?  I wasn't certain,

2     I could hear you.  I'm sorry, your Honor.

3          The only thing I want to say is that I am

4     concerned about the concept that we're somehow ambushing

5     Mr. Licul.  We had been discussing this at some length

6     trying to come to an agreement and we have not been able

7     to come to an agreement.  That's certainly the reason

8     we've come to you.  We really tried to avoid having to

9     involve the Court in this discussion.

10          THE COURT:  Okay.  And anything you'd like to

11     add, Mr. Moore?

12          MR. MOORE:  Your Honor, not much.  Again, thank

13     you for your time.  I think here this is a time and place

14     where we have everybody together.  I just don't see

15     really how this could be an unreasonable to just have one

16     more day to get this done.  We'll all be there.  We've

17     agreed to limit things.  We worked really hard to ensure

18     that we are not asking duplicative questions.  And you

19     know, it's going to be hard to get this done in seven

20     hours but we're going to do it.  And then we'll be done

21     with it.

22          So I'd kindly ask the Court to consider that,

23     you know, these are questions that need to be answered in

24     a complicated case and given the magnitude of what we

25     have before us, I think it's a very reasonable proposal.

24

Proceedings

1          THE COURT:  So Mr. Licul, as we have observed

2    and/or joked in the very many appearances we've had in

3    this case, the case is complicated.  Whether or not it

4    needs to be complicated is a different question.  But it

5    has become very complicated as you know.

6          My concern, sir, is that if I give them four

7    hours say, (indiscernible), if I give them four hours,

8    what I'm going to be facing on Friday afternoon is a

9    motion for a whole other day.  And what I'm wondering,

10   Mr. Licul, is if we can have a firm agreement here on the

11   record that this is it for all times and there's not

12   going to be any subsequent application, the parties are

13   going to stick to that.

14         So Mr. Licul, what are your thoughts on that

15   concern?

16         MR. LICUL:  I mean, your Honor, in an ideal

17   world -- well first, let me address the issue of the

18   complications.  I realize your Honor is probably

19   referring to the allegations about the other women.  But

20   again, you know, that doesn't take that much time because

21   those are --

22         THE COURT:  No, I'm just referring to how

23   complicated a single plaintiff --

24         MR. LICUL:  I understand.

25         THE COURT:  -- employment discrimination case

25

Proceedings

1   has become due to lots and lots of issues.  At the

2   Brennan Center we used to joke when things would like

3   become an octopus.  This case has become an octopus when

4   there is really one plaintiff who is the core

5   complainant.

6          And so I'm not casting aspersions on anybody.

7   I think the complexities have come from various corners

8   in the case and, you know, I really do -- I wish you

9   could see my face.  I'm smiling.  I'm not upset about it.

10  It's just it has become complicated.  And the discovery

11  is voluminous as we know.

12         So I'm just concerned that even if I were to

13  grant your application to keep the deposition shorter,

14  that we would still be facing the same problem on Friday

15  afternoon.

16         MR. LICUL:  Well, a couple of things.  You

17  know, I don't think this is a particularly complicated

18  sexual harassment case.  This is not a discrimination

19  case in the sense of talking about why someone was fired

20  and getting into issues of pretext which can be rather

21  complicated.

22         We have a finite set of allegations that they

23  can ask Trooper 1 about which are essentially 40

24  paragraphs.  Really it's not that many incidents.  So I

25  don't necessarily agree with defendants that this is

Proceedings

1    somehow inordinately complicated.

2         I do think though that if we give them a, or

3    the Court gives them rather the full seven hours, they

4    will take the seven hours.  And I do think that that's

5    exactly what the rule is designed to prohibit.  It

6    requires folks to focus on the important things and not

7    to meander.  And giving them seven hours is going to

8    allow for exactly that because I do not hear in anything

9    that they've said seven hours worth of questioning.  And

10   I'm afraid we're going to be going back, you know, with

11   respect to issues that have already been covered.

12        I would suggest, your Honor, if your Honor is

13   going to do four hours, I suggest we do that.  Require

14   the defendants to focus, sharpen their questions, not ask

15   the same question over and over again.  And if they still

16   have something left at the end of that four hours, I'm

17   willing to talk about it but it should be narrowed.  It

18   should.

19        THE COURT:  Ms. Glavin?

20        MS. GLAVIN:  Your Honor, I just have to correct

21   the record on this.  I asked Mr. Licul to look through

22   the transcript and see if there was a single question

23   that asked about the Belmont stomach incident.  There was

24   not.

25        Your Honor, I get it why Mr. Licul wants to

27

Proceedings

1   limit it.  I don't think it changes what we have all

2   tried to do on the defense side with this.  And it's

3   particularly because we are hearing new allegations from

4   Trooper 1 for the first time, things that were not in her

5   first complaint, her amended complaint, or the proposed

6   complaint that is pending, the proposed amended complaint

7   that is pending before Judge DeArcy Hall, allegations

8   that she did not make to the Attorney General's office or

9   anybody else until she was in that deposition that we had

10   to explore and that took time.

11         I don't know if she will have additional

12   allegations as we go through these incidents that were

13   not done in detail by the Attorney General's office, but

14   they are critically important as to whether or not she

15   was sexually harassed by Governor Cuomo, whether or not

16   there was retaliation or any type of a quote/unquote

17   hostile work environment.

18         And also, going to her state of mind because

19   there are a number of allegations in her complaint

20   dealing with what she believed based on what she heard

21   from other state troopers.

22         MS. FOTI:  Your Honor, it's Catherine Foti.

23   Can I just add that in some respects I feel like Mr.

24   Licul is completely ignoring the fact that there are two

25   other defendants here.  The state police did identify

Proceedings

1   very clear different issues that did not apply to either

2   former Governor Cuomo or to my client.  They've only

3   asked for two, two and a half hours.  We're asking for

4   one, one and a half hours in a situation where my client

5   has been defending this lawsuit for, you know, for two

6   years and trying to understand exactly why she is in the

7   lawsuit.  And I don't think an hour or even an hour and a

8   half is, you know, is very much.

9          And so we have significantly limited the time

10  that we are requesting to understand why my client is a

11  party here.  I think she's entitled to have that.  And

12  there are certainly in the other issues which are really

13  sort of stepping stones to somehow establishing any type

14  of liability for my client.  It's appropriate for Ms.

15  Glavin to go through those issues.  I mean we need all of

16  those covered as well and we're only asking for a very

17  small slice of time in addition to that.

18         And I think if you look at it, two and a half

19  and one and a half, we're up to three to four hours just

20  between the other two parties.  And so it's no that much

21  additional time that we would even spend, Ms. Glavin

22  would even be entitled to have, to cover all those

23  additional issues that really were in part -- we are

24  banking on getting some answers to to try to understand

25  the liability for our own client.

Transcriptions Plus II, Inc.

29

Proceedings

1          I just really would appreciate if we can have

2     the additional time, one day.  It is not unusual in a

3     case of this nature to have the plaintiff deposed for two

4     days rather than one.

5          THE COURT:  All right.  So I fully understand

6     where you're coming from, Mr. Licul.  And I of course

7     agree with you that -- and I joke around with my law

8     clerks that the legal process will take however long you

9     give them.  Right?  If you have a day to get a motion

10    out, you get it done in a day.  If you have two weeks,

11    you manage to make it take two weeks.  Right?  And I

12    fully get it that you are concerned that they will use

13    the full seven hours if I were to grant that amount of

14    time.

15          But your answer to my prior question really did

16    not address what I was getting at.  What I was

17    suggesting, sir, with respect to all involved in this

18    case, is it has become needlessly complicated.  I've been

19    saying this for two years.  It's become complicated from

20    all sides.  It's become complicated with regard to the

21    discovery production, it's become complicated with regard

22    to how the complaint is structured.

23          You know, Ms. Glavin absolutely needs to go

24    through with Trooper 1 do you know Charlotte Bennett?

25    How?  Did you observe anything with Charlotte Bennett?

30

Proceedings

1   Did you know so and so?  Did you hear anything that
2   happened to her?  She has to go through all that stuff
3   because of the way the complaint is drafted.  Perhaps she
4   should have done it in the prior session.  I don't know.
5   But here we are with two defendants, three defendants,
6   who need to continue the deposition.

7           So what I'm inclined to do is, you know, the
8   parties have said -- the state police has indicated two
9   hours, two and a half hours and Ms. Foti has indicated
10  one to one and a half hours.  So there we're talking
11  three to four hours in total.  And Mr. Cuomo suggested
12  that he needs, you know, three to four more hours.

13          I am prepared to give you guys six hours
14  collectively and that's it.  So you need to be more
15  strategic, Ms. Glavin.  You need to figure out how to get
16  to the questions, how to get to the point.  As I said a
17  couple of minutes ago, this is not a proffer.  You don't
18  get to go down every single rabbit hole even if it seems
19  potentially interesting in the moment because you aren't
20  going to have time.  If there's stuff you need to have an
21  on the record answer for, you got to get to it.  And if
22  there's stuff that would just be fun to cross on, you
23  might have to wait for the trial if there's a trial.  I
24  understand you might want to have her on the record but
25  you have to be mindful of the amount of time that you

31

Proceedings

1   have under the rules.

2          I also note with regard to my decision to

3   extend the time that Federal Rules of Civil Procedure

4   30(d) specifically states that the Court must, and I put

5   an emphasis on the word must, allow additional time

6   consistent with Rule 26(b)(1) and (2) if needed to fairly

7   examine the deponent.  Given the fact that this is a

8   three defendant case and that the allegations are

9   substantial and there is a substantial body or volume of

10  information that has been generated by the Attorney

11  General's office and in discovery that the defendants

12  fairly wish to cover, I think six hours, you know, five

13  extra hours of deposition time is an appropriate

14  extension of the amount of time to which the defendants

15  in this case should be permitted to utilize.  I

16  understand, Mr. Licul, that you may object to that

17  ruling.  That is my opinion and that is my decision.

18          So I really do mean it though, for the

19  defendants, that's it.  Anything that comes back to me on

20  Friday afternoon or Monday that you need more time with

21  Trooper 1, the answer is going to be application denied.

22          Is there anything else we should cover today,

23  Mr. Licul?

24          MR. LICUL:  No.  Thank you, your Honor.

25          THE COURT:  Ms. Glavin?

32

Proceedings

1          MS. GLAVIN:  No, your Honor.

2          THE COURT:  Mr. Moore?

3          MR. MOORE:  No, your Honor.  Thank you for your

4    time.

5          THE COURT:  Ms. Foti?

6          MS. FOTI:  No, that's all.  Thank you very

7    much, your Honor.

8          THE COURT:  All right.  Thank you all.  Have a

9    good rest of your day.  Take care.

10                    (Matter concluded)

11                         -oOo-

12

13

14

15

16

17

18

19

20

21

22

23

24

25

33

# C E R T I F I C A T E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **14th** day of **November**, 2024.

*Mary Greco*

Transcriptions Plus II, Inc.