UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
TROOPER 1,

     Plaintiff,

  -against-          **MEMORANDUM AND ORDER**
                  22-CV-893 (LDH) (TAM)

NEW YORK STATE POLICE, ET AL.,

     Defendants.
-----------------------------------------------------------X

**TARYN A. MERKL**, United States Magistrate Judge:

  On February 17, 2022, Trooper 1 ("Plaintiff"), a member of former New York Governor Andrew Cuomo's Protective Service Unit ("PSU"), initiated this action alleging that Cuomo sexually harassed her and other state employees. (Compl., ECF No. 1.) The amended complaint named as Defendants the New York State Police ("NYSP"), Cuomo, Melissa DeRosa, and Richard Azzopardi. (*See* First Am. Compl. ("FAC"), ECF No. 7; Second Am. Compl. ("SAC"), ECF No. 71.) Currently before the Court is a motion by which Defendant Cuomo asks the Court to de-designate three documents marked confidential that Cuomo filed as exhibits in connection with discovery motions related to Cuomo's efforts to subpoena documents from the New York State Office of the Attorney General ("OAG"). (Mot. for Disclosure, ECF No. 288.) *See Cuomo v. Off. of the New York State Att'y Gen.*, No. 22-MC-3044 (LDH) (TAM), ECF Nos. 79-3, 79-4, 79-8. Specifically, Cuomo requests that three text message threads between Plaintiff and her former fiancé Charles Brown, which Plaintiff Trooper 1 designated as confidential, be de-designated and unsealed by the Court. The motion for de-designation is denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Of relevance to the current motion, discovery in this case commenced following the initial conference, which was held on June 6, 2022.[1] (June 6, 2022 Min. Entry & Order.) On April 24, 2023, the Court entered a confidentiality order permitting the designation as confidential certain discovery material, including materials described as "Sensitive Information and Data," and specifying that the definition of producing party may include "any party or nonparty making a production of documents or information in this matter." (Am. Confidentiality Order, ECF No. 68, at 1.)

Currently before the Court is Defendant Cuomo's letter motion to de-designate materials marked confidential by Plaintiff Trooper 1. (Mot. for Disclosure, ECF No. 288, at 1–3.) Trooper 1 objects. (*Id.* at 3–5.)

This is not Defendants' first de-designation motion. As detailed in an opinion issued by the Court last year, Defendants previously sought to de-designate portions of a deposition transcript and text messages involving a potential non-party witness, as well as text messages between that witness and another non-party. (Mem. & Order, ECF No. 252.) *See Trooper 1 v. New York State Police*, No. 22-CV-893 (LDH) (TAM), 2024 WL 1349122 (E.D.N.Y. Mar. 29, 2024) (hereinafter "*Trooper 1 De-Designation I*"). In denying the prior motion, the Court observed that that this case "exemplifies 'the vital function of a protective order . . . , which is to secure the just, speedy, and inexpensive

---

[1] This opinion assumes general familiarity with the substance and history of this case, as well as the fact that the New York State Office of the Attorney General and the New York State Assembly Judiciary Committee conducted investigations into allegations of sexual harassment by former Governor Cuomo while he was in office, which investigations resulted in public reports published in August 2021 and November 2021, respectively. *See generally Cuomo v. New York State Assembly Judiciary Comm.*, 683 F. Supp. 3d 258 (E.D.N.Y. 2023), *reconsideration denied sub nom. Cuomo v. Off. of the New York State Att'y Gen.*, 727 F. Supp. 3d 231 (E.D.N.Y. 2024).

determination of civil disputes by encouraging full disclosure of all evidence that might conceivably be relevant.'" *Id.* (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 295 (2d Cir. 1979) (quotation marks and citation from *Martindell* omitted)).

In the current motion, Cuomo contends that the text messages he seeks to de-designate (1) "do not contain the sort of personal information that is covered by the operative [confidentiality] order," (Mot. for Disclosure, ECF No. 288, at 1); and (2) are "referenced in and inherent to judicial documents that factored into the Court's consideration of an important issue," (*id.* at 2).[2] Just as with the prior de-designation motion:

> Adopting Defendants' reasoning would open a Pandora's box of motions in this already fraught case. Parties from whom discovery is sought could have concerns that Defendants will seek to pull the rug out from under them *after* they have already provided discovery; they thus may find it necessary to seek additional protective orders from the Court because the confidentiality order cannot be relied upon. In the alternative, parties who are seeking to publicize some aspect of discovery that they find favorable to their side may seek to strategically de-designate material provided in confidence claiming that it concerns information that is already in some way public. This could, in turn, result in requests that the Court sift through the mountains of discovery that Defendants are seeking to

---

[2] Similar to the approach taken in the prior de-designation motion, Cuomo posits that the text messages pertain to topics that Trooper 1 purportedly "did not customarily" keep private, and that because they concern similar content as information that is already "public," the texts cannot be sealed under the confidentiality order's terms. (Mot. for Disclosure, ECF No. 288, at 2.) Although the Court is of course sensitive to the important distinction between publicly available information and private information, and does not condone over-designation of information as confidential under the guise of the confidentiality order in this case, prior disclosure of certain sensitive information by a third party does not negate a party's ability to seek confidential treatment of different sensitive information. As Plaintiff correctly asserts: "It is the texts themselves that are 'non-public,' 'confidential,' and 'personal,' not the abstract topics or themes they happen to touch upon." (*Id.* at 4.)

3

> generate in this case to compare the discovery to information that is arguably available in the public domain.

*Trooper 1 De-Designation I*, 2024 WL 1349122, at *3.

For the reasons set forth below, the motion to de-designate the text messages produced by Trooper 1 in discovery is denied.

## DISCUSSION

### I. Legal Standards

The Court incorporates by reference the fuller discussion of the background law concerning confidentiality orders, what constitutes reasonable reliance on a confidentiality order, and First Amendment implications, all of which was discussed at some length in *Trooper 1 De-Designation I*, 2024 WL 1349122, at *3–4. It is well settled that confidentiality orders "must be construed according to general principles of contract law" in evaluating whether a confidentiality order applies to material designated confidential. *City of Hartford v. Chase*, 942 F.2d 130, 134 (2d Cir. 1991). The plain meaning of the words in the order controls. *Id.* at 135. In the event of a challenge to a confidentiality designation, "the burden of establishing that there is good cause to protect the designated materials rests at all times with the party seeking protection." *In re Zyprexa Inj.*, 474 F. Supp. 2d 385, 416 (E.D.N.Y. 2007).

A district court should not modify a confidentiality order, generally speaking, where "there has been reasonable reliance by a party or deponent" unless there is "a showing of . . . some extraordinary circumstance or compelling need." *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 229 (2d Cir. 2001) (quotation marks omitted). "There is a strong presumption against modifying protective orders because they serve the vital function of ensuring just, speedy, and inexpensive determination of civil disputes by encouraging full disclosure of all relevant evidence." *Arcesium LLC v. Advent Software,*

*Inc.*, No. 20-CV-4389 (MKV), 2022 WL 621973, at *3 (S.D.N.Y. Mar. 3, 2022) (citation omitted).

Four relevant factors (the "*Charter Oak* factors") guide courts in the Second Circuit in the determination of whether a party has reasonably relied on a protective order: "(1) the scope of the protective order; (2) the language of the order itself; (3) the level of inquiry the court undertook before granting the order; and (4) the nature of reliance on the order." *Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 287 F.R.D. 130, 132 (E.D.N.Y. 2012) (quotation marks omitted); *see also Bartlett v. Société Générale de Banque au Liban SAL*, No. 19-CV-07 (CBA) (TAM), 2023 WL 8828864, at *4–5 (E.D.N.Y. Dec. 21, 2023) (applying the *Charter Oak* factors).

As discussed in *Trooper 1 De-Designation I*, the Court is cognizant that confidentiality orders may impair First Amendment rights, but it is well settled that the district courts' "power to seal extends to court filings and documents produced in discovery." *In re Zyprexa*, 474 F. Supp. 2d at 413; *see also id.* at 413–14 (discussing the broad scale of modern discovery and the risks it poses to privacy and confidentiality). In addition, as the Supreme Court observed in *Seattle Times Co. v. Rhinehart*, pre-trial discovery proceedings "are not public components of a civil trial," and "were not open to the public at common law. . . . Therefore, restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information." 467 U.S. 20, 33 (1984).

## II. Analysis

Cuomo now seeks de-designation of three documents that contain text messages between Trooper 1 and her former fiancé. For the reasons set forth below, Cuomo has not demonstrated good cause to modify the confidentiality order. In addition, Trooper 1

has met her burden to establish "good cause to protect the designated materials." *In re Zyprexa Inj.*, 474 F. Supp. 2d at 416.

## A. Application of the Confidentiality Order

Echoing arguments made in the motion underlying the *Trooper 1 De-Designation I* opinion, Cuomo first posits that the materials at issue "do not contain the sort of personal information that is covered by the operative order," arguing that the texts are not definitionally "confidential" because (1) they do not comprise information that "'is customarily kept private, or at least closely held, by the person imparting it,'" and (2) "'the party receiving [the information did not] provide[] some assurance that it will remain secret.'" (Mot. for Disclosure, ECF No. 288, at 1–2 (quoting *Food Marketing Inst. v. Argus Leader Media*, 588 U.S. 427, 434 (2019).)

The Court starts with language of the confidentiality order. It states, in pertinent part, as follows:

> It is hereby ordered that the following provisions shall govern claims of confidentiality in these proceedings, including with respect to any documents or information produced by a nonparty pursuant to subpoena:
>
>> (a) The following documents and information may be designated as "confidential," provided such documents are not public and have not previously been disclosed by the producing party to anyone except those in its employment or those retained by it or in the course of carrying out or cooperating with a government investigation:
>>
>>> (i) Sensitive Information and Data, such as documents, testimony or electronically stored information that can reasonably be construed as revealing a party's non-public confidential personal, proprietary or investigative information; or documents containing private or confidential personal information, specifically including personnel records or information regarding applicants, employees, former employees, or confidential informants of Defendant New York State Police other than the Plaintiff; or documents or data containing information received in confidence from third parties; or documents containing information which the producing party otherwise believes in good faith to be

6

> entitled to protection under Rule 26(c)(1)(G) of the Federal
> Rules of Civil Procedure; or information which comprises
> highly sensitive information relating to criminal
> investigations, investigation techniques, or other law
> enforcement related procedures or techniques, or personnel
> information pertaining to past or current New York State
> Police employees.

(Am. Confidentiality Order, ECF No. 68, at 1–2 (footnote omitted).)

The plain text of the confidentiality order provides that "Sensitive Information and Data" may be designated as confidential "provided such documents are not public and have not previously been disclosed by the producing party." (*Id.* at 1.) In addition, the definition of "Sensitive Information and Data" is a non-exclusive list; it expressly includes documents, testimony, and electronically stored information, which examples are preceded by the phrase "such as." (*Id.*) "[T]he use of the term 'such as' confirms[ that] the list is illustrative, not exhaustive." *Bragdon v. Abbott*, 524 U.S. 624, 639 (1998); *see also Marvin J. Perry, Inc. v. Hartford Cas. Ins. Co.*, 615 F. Supp. 2d 432, 436 (D. Md. 2009) (applying the *Bragdon* principle to interpretation of an insurance contract). Accordingly, the Court has already found that the confidentiality order is applicable to, *inter alia*, documents, testimony, and electronically stored information that are not otherwise public and have not been previously disclosed by the producing party, and which "can reasonably be construed as revealing a party's non-public confidential personal, proprietary or investigative information" *or* "containing information received in confidence from third parties." (Am. Confidentiality Order, ECF No. 68, at 1–2.) *See Trooper 1 De-Designation I*, 2024 WL 1349122, at *6.

Cuomo argues that, here, Trooper 1 shared her "political, professional, and personal views with numerous friends and colleagues," and that due to that purported course of conduct, Trooper 1 did not intend to keep the text messages at issue "private

7

or closely held" because the text messages at issue contain a similar type of information. (Mot. for Disclosure, ECF No. 288, at 2.)

By its terms, the confidentiality order in this case may be used to protect "Sensitive Information and Data" that is not public and has not been previously disclosed. Cuomo has not shown that the texts are public or have been previously disclosed — rather, the record before the Court suggests that the texts at issue were transmitted privately and were disclosed during discovery, marked as confidential. (*Id.* at 3–4.) Cuomo has not offered any specific evidence that Trooper 1 or her former fiancé have, in fact, disclosed the text messages to one or more third parties (in the absence of a subpoena or other formal request for documents), or that these non-party witnesses have otherwise publicized the communications. Accordingly, the Court finds that the text messages themselves are not public even if they touch upon topics Trooper 1 may have discussed publicly. *See supra* note 2.

The Court now turns to the question of whether the text messages and related testimony are "Sensitive Information and Data," which may be protectable under the confidentiality order. As the Court previously observed, "courts have readily recognized the inherent privacy interests people have in their own private communications, with particular attention to the privacy interests of non-parties." *Trooper 1 De-Designation I*, 2024 WL 1349122, at *9. *See, e.g., United States v. Gatto*, No. 17-CR-686 (LAK), 2019 WL 4194569, at *8–9 (S.D.N.Y. Sept. 3, 2019) (finding that "the privacy interests of the third-parties" related to communications including calls, text messages, and emails "outweighs the public's right of access" and finds that "disclosure is unwarranted"); *cf. Bakhit v. Safety Marking, Inc.*, No. 13-CV-1049 (JCH), 2014 WL 2916490, at *3 (D. Conn. June 26, 2014) (discussing "the privacy concerns implicated by the modern cell phone" in denying a request for inspection of cell phones for the

purpose of discovery). The Court's concerns regarding the privacy interests of non-parties are heightened where, as here, the documents at issue include communications disclosed in confidence by an individual who is not a party to the litigation. *Cf. Henry v. Bristol Hosp., Inc.*, No. 13-CV-826 (SRU), 2020 WL 1158464, at *1 (D. Conn. Mar. 10, 2020) ("[C]ourts give special weight to the burden on non-parties of producing documents to parties involved in litigation." (quotation marks and alteration omitted)); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998) ("[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs."); *see also Rhinehart*, 467 U.S. at 35 ("[D]iscovery also may seriously implicate privacy interests of litigants and third parties.").

Accordingly, as the Court held in *Trooper 1 De-Designation I*, private text messages, especially communications involving people who are not parties to this litigation, may reasonably be considered personal and private and may be protected under the protective order, as long as they are not public and have not been previously disclosed by the producing party to third parties (outside of the discovery process, or in response to a subpoena or request made as part of a governmental investigation). *See Trooper 1 De-Designation I*, 2024 WL 1349122, at *3.

### B. Reasonable Reliance on the Confidentiality Order

The Court also finds that the *Charter Oak* factors weigh against modification of the confidentiality order and de-designation of the text messages.

1. *Scope of the Confidentiality Order*

As discussed in *Trooper 1 De-Designation I,* in analyzing the scope of a confidentiality order, "it is relevant whether the order is a blanket protective order, covering all documents and testimony produced in a lawsuit, or whether it is specifically focused on protecting certain documents or certain deponents for a

9

particular reason." *In re EPDM Antitrust Litig.*, 255 F.R.D. 308, 319 (D. Conn. 2009). A blanket order that covers all discovery weighs in favor of modification, *id.*, while a protective order that designates specific documents as confidential is not considered to be a blanket order, *see id.* at 320. The confidentiality order here protects "Sensitive Information and Data" that is not public and has not been previously disclosed to third parties. (Am. Confidentiality Order, ECF No. 68, at 1.) While the confidentiality order does not apply to specific pre-identified documents, it is not so broad that the producing party has complete discretion as to what may be designated confidential. Additionally, for any protective order to be effective in the instant case, it must allow for the producing party to exercise discretion due to the many witnesses and sensitivity of the topics at issue in this case.[3] Here, the Court again finds that the scope of the confidentiality order is as specific as is practicable and realistic given the circumstances of this case, and that this factor weighs in favor of finding reliance on the order. *Trooper 1 De-Designation I*, 2024 WL 1349122, at *10.

2. *The Language of the Order*

In this case, the confidentiality order does not contain any temporal limitations, nor does it contemplate procedures for modification of the agreement.[4] (Am.

---

[3] As the Court previously observed, Defendants in this case have sought and are seeking "a significant volume of personal private and investigative information from numerous non-party witnesses." *Trooper 1 De-Designation I*, 2024 WL 1349122, at *10 n.11. *See generally Trooper 1 v. New York State Police*, No. 22-CV-893 (LDH) (TAM), 2024 WL 165159, at *1–2, 5–6 (E.D.N.Y. Jan. 16, 2024) (discussing Cuomo's robust discovery efforts and entering a protective order pertaining to how discovery must proceed).

[4] The Court notes that the language of a protective order may undermine reliance where it "limits the time period for enforcement, anticipates the potential for modification, or contains specific procedures for disclosing confidential materials to non-parties." *In re EPDM Antitrust Litig.*, 225 F.R.D. at 320; *see also TheStreet.Com*, 273 F.3d at 231 ("For instance, protective orders that are on their face temporary or limited may not justify reliance by the parties.").

10

Confidentiality Order, ECF No. 68.) The only disclosure contemplated by the order, beyond for the purposes of the litigation, is in response to compulsory process or as required by law. (*Id.* at 3–4.) This is distinguishable from provisions "permitting non-parties to seek access to the protected materials" or contemplating "'that relief from the provisions of the order may be sought at any time.'" *In re EPDM Antitrust Litig.*, 225 F.R.D. at 320 (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126 (2d Cir. 2006)); *see also Tradewinds Airlines, Inc. v. Soros*, No. 08-CV-5901 (JFK), 2016 WL 3951181, at *2 (S.D.N.Y. July 20, 2016) (noting that the language of an order favors modification where "it specifically provides that either party may seek changes to the [o]rder"). This factor weighs in favor of reliance.

   3. *The Level of Inquiry Undertaken by the Court*

As discussed in *Trooper 1 De-Designation I*, where an order is granted "upon the parties' stipulation and agreement" absent a showing of good cause, this factor generally weighs in favor of modification and against a finding of reliance. *In re EPDM Antitrust Litig.*, 225 F.R.D. at 322; *see also Charter Oak*, 287 F.R.D. at 133. *Cf. Trooper 1 De-Designation I*, 2024 WL 1349122 at *10. Although the confidentiality order here was "so ordered" by the Court without findings that specific documents warranted protection,

> at the time the Court entered the confidentiality order, the Court was well aware of the highly sensitive nature of the allegations in this case and the anticipated broad scope of discovery into sensitive and private matters, including but not limited to allegations of Cuomo's harassment and the personal circumstances and histories of the non-party complainants. But because the Court did not conduct an item-by-item review of the materials that were to be marked confidential, this factor weighs slightly in favor of modification.

*Id.* (citation omitted).

4. *The Nature of Reliance*

Here, Trooper 1 takes the position that the texts are "non-public, sensitive, and confidential," and that the texts comprise "communications neither [Trooper 1 nor her fiancé] ever intended for the public." (Mot. for Disclosure, ECF No. 288, at 3.) Accordingly, Trooper 1 marked them as confidential as permitted by the confidentiality order. On the present record, the Court sees no basis to disturb this designation given that the texts involve confidential communications with a non-party and in light of Trooper 1's clear reliance on the confidentiality order that has governed discovery in this case for almost two years. *See Tradewinds Airlines*, 2016 WL 3951181, at *1 (observing that "a district court should not modify the [confidentiality] order 'absent a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need'" (second alteration in original) (quoting *TheStreet.Com*, 273 F.3d at 229)).

## C. The Text Messages are Not Judicial Documents

Cuomo also argues that the text messages "are referenced in and inherent to judicial documents that factored into the Court's consideration of an important issue," and that Plaintiff's confidentiality designation should thus be disregarded. (Mot. for Disclosure, ECF No. 228, at 2–3 (citing *Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504 (E.D.N.Y. 1999) and arguing that the materials "are central" to an important legal dispute in the case, i.e., the ongoing litigation concerning a subpoena issued to the New York State Office of the Attorney General and because, Cuomo contends, the texts "undermine her own allegations" and other allegations that have been incorporated in to the complaint).) Cuomo even goes so far as to argue that "[s]o long as Plaintiff continues to pursue public litigation against Governor Cuomo, he is entitled to defend himself publicly and to litigate the case in the public eye." (*Id.* at 3.)

12

Defendant Cuomo's reliance on cases concerning the presumption of access to judicial documents and the public's interest in monitoring the administration of justice is entirely misplaced.[5] Significantly, "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access . . . the item filed must be relevant to the performance of the judicial function and *useful in the judicial process*." *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) (emphasis added) ("*Amodeo I*"); *see also Dorsett v. County of Nassau*, 762 F. Supp. 2d 500, 516 (E.D.N.Y.), *aff'd*, 800 F. Supp. 2d 453 (E.D.N.Y. 2011), *aff'd sub nom. Newsday LLC v. County of Nassau*, 730 F.3d 156 (2d Cir. 2013).

The text messages Cuomo seeks to de-designate here are not relevant to the performance of the judicial function, except insofar as they were appended as exhibits to motions concerning the subpoena that Cuomo issued to the OAG in related docket number 22-MC-3044, in the context of a motion to compel the subpoena and the OAG's motion to quash. The legal issues addressed in that motion focused on sovereign immunity and the OAG's assertion of privilege over the materials Cuomo is seeking. *See Cuomo v. Off. of New York State Att'y Gen.*, No. 22-MC-3044 (LDH) (TAM), ___ F. Supp. 3d ___, 2024 WL 4593407, at *3 (E.D.N.Y. Oct. 28, 2024). Accordingly, the text messages have not been directly relevant to the performance of the judicial function such that they are now judicial documents. Phrased another way, the materials Cuomo seeks to

---

[5] The right of public access to judicial documents and the public's interest in monitoring the administration of justice are of course quite well established. *See Lugosch*, 435 F.3d at 119–20; *United States v. Aref*, 533 F.3d 72, 83 (2d Cir. 2008). In determining whether a document carries a presumption of public access or may be sealed, courts must consider three factors: (1) whether the document is a "judicial document"; (2) "the weight of the presumption of access to that document"; and (3) whether "all of the factors that legitimately counsel against disclosure of the judicial document" outweigh "the weight properly accorded the presumption of access." *Mirlis v. Greer*, 952 F.3d 51, 58–59 (2d Cir. 2020) (quotation marks and citations omitted).

de-designate have *not* been "useful in the judicial process." *Amodeo I*, 44 F.3d at 145. The presumption of public access does not attach. *See Mirlis v. Greer*, 952 F.3d 51, 58–59 (2d Cir. 2020) (discussing the process by which courts are to evaluate whether a document is a judicial document and the weight to be afforded; quoting *Amodeo I*, 44 F.3d at 145).

Just as with the prior materials Cuomo sought to de-designate and consistent with his position that he is entitled to "litigate the case in the public eye," the record here strongly suggests that Cuomo included the text messages in his sealed filings in case number 22-MC-3044 in order to seek to make them publicly available to advance his own interests.[6] Especially in sensitive, high-profile matters, the Court has a responsibility to ensure documents are not filed "'to gratify private spite or promote public scandal' or 'serve as reservoirs of libelous statements for press consumption.'" *Brown v. Maxwell*, 929 F.3d 41, 51 (2d Cir. 2020) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). The Court also has a duty to protect the integrity of the judicial process and must take steps to ensure that court filings are not made for vexatious purposes or "to promote scandal arising out of unproven libelous statements."[7] *See id.* (quotation marks omitted). As the Court previously observed in this case: "Defendants may not manufacture motion practice to attempt strategic de-designation of documents

---

[6] Here, the materials Defendant Cuomo seeks to de-designate are discovery materials that Cuomo chose to append to collateral litigation concerning a subpoena, not judicial documents; these documents are not traditionally afforded a public right of access. *Cf. Rhinehart*, 467 U.S. at 32–33 ("A litigant has no First Amendment right of access to information made available only for purposes of trying his suit. . . . [R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.").

[7] The parties are reminded that the Second Circuit has made clear that courts "may employ several methods to fulfill" the function of protecting the integrity of judicial proceedings, including issuing protective orders, explaining on the record that defamatory statements appear to lack credibility, striking materials, and imposing sanctions. *Brown*, 929 F.3d at 51.

or other discovery they find favorable when such materials have properly been designated as confidential and witnesses have relied upon that designation during discovery." *Trooper 1 De-Designation I*, 2024 WL 1349122, at *13.

Cuomo's argument that there is a public right of access to the three text message threads is entirely without merit.

## CONCLUSION

For all of these reasons, Defendant Cuomo's motion to de-designate confidential materials is denied.

**SO ORDERED.**

Dated: Brooklyn, New York
      January 29, 2025

                                      TARYN A. MERKL
                                      UNITED STATES MAGISTRATE JUDGE