# Exhibit 2

December 3, 2024

**BY ECF**

Honorable Sarah L. Cave
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, New York 10007

  Re: *Bennett v. Cuomo, et al.*, No. 22 Civ. 7846 (VSB) (SLC)

Dear Judge Cave:

  We represent former Governor Andrew M. Cuomo and write to request that the Court enter a protective order prohibiting Plaintiff's counsel from making any further extrajudicial statements concerning defense costs in this matter, and we ask that the Court schedule a conference to discuss this application.

  As Your Honor will recall, during the October 1, 2024 conference we expressed concern about extrajudicial statements that Ms. Bennett's counsel made concerning this case, including statements Ms. Bennett's counsel made to the *New York Times* concerning defense costs in this and related lawsuits. *See* Oct. 1, 2024 Tr. (ECF No. 304) at 38-39; *see also* Benjamin Oreskes, *Cuomo Legal Bills Have Cost N.Y. Taxpayers $25.4 Million and Counting*, N.Y. Times (Sept. 12, 2024), *available at* https://www.nytimes.com/2024/09/12/nyregion/andrew-cuomo-legal-fees-ny-taxpayers.html. We were troubled that such statements, made to arguably the most widely read news outlet in the district where Ms. Bennett's case will be tried, are designed to and will have the effect of prejudicing any jury pool in this matter against Governor Cuomo and the other defendants.

  Ms. Bennett's counsel was apparently undeterred by our concern. On November 21, 2024, Debra Katz made yet another extrajudicial statement that is also highly prejudicial to Governor Cuomo. *See* Ex. A. On that day, the New York Supreme Court presiding over Ms. Bennett's state court sexual harassment case against New York State issued a decision denying Ms. Bennett's summary judgment motion. Though Ms. Bennett had sought a quick judgment on the merits based solely on the OAG Report, the state court rejected her position, noted that Governor Cuomo denies Ms. Bennett's allegations, and held that it would be premature to grant judgment in her favor without allowing for full discovery.

  Although Ms. Katz's November 21, 2024 press release ostensibly concerned a decision in Ms. Bennett's case against New York State, the statement was aimed at Governor Cuomo. Indeed, the title references the "*Cuomo Case*" and Ms. Katz once again sought to poison any New York jury by attacking the "exorbitant state spending incurred by Mr. Cuomo's state-paid attorneys." Ex. A. Such extrajudicial statements are inappropriate, particularly to the extent they suggest there is something improper about Governor Cuomo or any other defendant receiving the state-funded defenses to which they are entitled under the law. This is so even if the purpose of the statement was to pressure Governor Kathy Hochul and Attorney General Letitia James to, as Ms. Katz put it, "come to the table" and settle this case. Moreover, any criticism about the amount of defense costs is wholly unwarranted given that much of the defense costs are the direct result of Ms.

Case 1:22-cv-00893-LDH-TAM    Document 342    Filed 04/16/25    Page 3 of 5 PageID #: 7848

Hon. Sarah L. Cave
December 3, 2024
Page 2 of 4

Bennett's own discovery delays and failures, not, as Ms. Katz misleadingly told *The New York Times*, because "defendants have been allowed to weaponize the justice system."[1] Oreskes, *Cuomo Legal Bills Have Cost N.Y. Taxpayers $25.4 Million and Counting*.

Governor Cuomo vehemently denies harassing Ms. Bennett. As is his right under the law, he has and will continue to defend himself vigorously against this and other lawsuits, including by obtaining documents and testimony that establish his innocence, and specifically, information that Ms. Bennett and other complainants hid from the OAG investigators and/or that the OAG investigators never sought. We do not doubt that Ms. Bennett's continued attempts to force a settlement are motivated in large part by a desire to avoid a public hearing on her claims and avoid her contemporaneous communications—which are highly exculpatory to Governor Cuomo—from ever seeing the light of day.

We have previously noted that Ms. Bennett's contemporaneous communications—which she did not provide to OAG investigators—establish, contrary to her allegations, that she very much wanted to discuss her prior history of sexual assault with Governor Cuomo, that this experience was part of her professional identity, and that the discussion she had with Governor Cuomo was "amazing." See ECF No. 226 at 2-3. These communications also undermine nearly every other allegation. For example, while Ms. Bennett now alleges that she was offended by the push-up competition, ▮▮▮▮. See Ex. B.[2]

Moreover, Governor Cuomo told the OAG investigators that at the time he spoke with Ms. Bennett about her personal life on June 5, 2020, he was deeply concerned about her well-being because he had heard she was engaging in reckless conduct in or adjacent to the workplace. See Ex. C at 281:13-283:8, 308:23-311:15. Dozens of contemporaneous communications confirm the accuracy of the information Governor Cuomo received at the time and establish the legitimacy of Governor Cuomo's concerns.[3]

---

[1] Ms. Katz's public statements concerning defense costs are inconsistent with Rule 3.6(a) of New York's Rules of Professional Conduct, which prohibits public statements that "will have a substantial likelihood of materially prejudicing an adjudicative proceeding in the matter."

[2] Exhibits containing information that Ms. Bennett designated as Confidential are available at the following link: ▮▮▮▮

[3] Among other things, in a short period of time during the early months of the pandemic, Ms. Bennett was:

- ▮▮▮▮ See Ex. D.
- ▮▮▮▮ See Exs. E, F, G, H, and I (March 25, 2020 videos).
- ▮▮▮▮ See Exs. J, K, and L (May 24, 2020 and June 3, 2020 videos).
- ▮▮▮▮ See, e.g., Ex. M (June 3, 2020 video).



Hon. Sarah L. Cave
December 3, 2024
Page 3 of 4

      Indeed, in one troubling video Ms. Bennett recorded just days before Governor Cuomo inquired about her mental health, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[4] See Ex. L (June 3, 2020 video). In that same video, Ms. Bennett ███████████████████████████████████████████████████████████████████████████████████████████████. Thus, it would come as no surprise that, just days later, she asked to be transferred from that position, a request that was veiled in feigned outrage about her conversation with Governor Cuomo but was in fact motivated by other workplace dissatisfaction and a personal meltdown. In other words, not a single one of Ms. Bennett's allegations will withstand the mountains of contemporaneous video and text message evidence that we now have but that were never turned over to the OAG.

      So the public record is clear, Governor Cuomo has no interest in settling this lawsuit. He never sexually harassed Ms. Bennett and he has the right to prove his innocence. We understand that Ms. Bennett and her counsel are desperate to settle because her false and worthless claims have been exposed during the discovery process and will be further exposed at a trial. And New York State may well cave to this public pressure campaign (created by Ms. Bennett, her counsel, and others) to settle. But if New York State decides to settle, Governor Cuomo will demand that any such settlement be conditioned on the immediate public release of all evidence that has been discovered in these cases. New Yorkers deserve to know the truth, finally.

      In the meantime, we respectfully request that the Court enter a protective order directing Ms. Bennett and her counsel to refrain from making any further extrajudicial statements concerning Governor Cuomo's (or any other defendant's) defense costs or from taking any further steps to encourage the publication of similar statements. There is no question that such statements are gratuitous and highly prejudicial to Governor Cuomo (indeed, intentionally so).

---

[4] To be very clear, we do not raise this or any other fact for any purpose other than providing critical context for Ms. Bennett's June 5, 2020 conversation with Governor Cuomo. Ms. Bennett's personal life would be her own and entirely irrelevant were it not for the facts that (i) she engaged in this conduct in or adjacent to her workplace and flagrantly and repeatedly blurred the boundaries between her professional and personal lives, and then (ii) sought to cast her June 5, 2020 conversation with Governor Cuomo as a "sexual advance," Compl. ¶¶ 58-69, rather than Governor Cuomo making an effort to ascertain whether Ms. Bennett—who had previously shared aspects of her personal life with him on her own intitiative—needed help. In this regard, it bears noting that Ms. Bennett did not seek to shield her impulsive and reckless personal conduct from her colleagues in the Executive Chamber; rather, she shared the information liberally, which is how it came to Governor Cuomo's attention in the first place. Indeed, when Ms. Bennett learned that ████████████████████ See Ex. D.

Moreover, while we are filing this information under seal because Ms. Bennett designated the communications as Confidential under the Protective Order, such communications, all of which are highly relevant to Governor Cuomo's defense, will at some point need to be made public in order to correct the false and defamatory narratives that Ms. Bennett and her counsel have been spinning publicly, not only in Ms. Katz's recent public statements but previously in several interviews that Ms. Bennett and Ms. Katz gave to prominent national news outlets. See, e.g., https://youtu.be/Yj2QDNCFe_g.

Hon. Sarah L. Cave
December 3, 2024
Page 4 of 4

Respectfully submitted,

| /s/ *Theresa Trzaskoma* | /s/ *Rita M. Glavin* |
|---|---|
| Theresa Trzaskoma<br>SHER TREMONTE LLP | Rita M. Glavin<br>GLAVIN PLLC |

Exhibits