

September 3, 2025

**BY ECF**
Hon. LaShann DeArcy Hall
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: *Trooper 1 v. NYSP et al.*, 22-cv-893 (LDH) (TAM)

Dear Judge DeArcy Hall:

  We represent former Governor Andrew Cuomo and write pursuant to Federal Rule of Civil Procedure 72(a) and Your Honor's Individual Practice IV(A) to appeal an August 20, 2025 Text Order by Magistrate Judge Taryn A. Merkl concerning Governor Cuomo's request for certain phone records reflecting calls and text messages of Stephen Nevins ("the Order"). The Order improperly restricted Governor Cuomo's ability to obtain discovery concerning Mr. Nevins's communications with media personnel and with senior leadership in the NYSP and/or union officials. Governor Cuomo respectfully requests that this Court modify the Order to require Mr. Nevins, in coordination with Verizon, to provide phone records reflecting calls and text messages with seven additional individuals.

***Relevant Background***

  On February 28, 2025, Governor Cuomo served a subpoena to Verizon for phone records from February 1, 2021 to the present in connection with two phone numbers associated with nonparty Mr. Nevins, former Detail Commander of the PSU. ECF No. 335 at 16–19. Although Mr. Nevins retired from the NYSP in May 2016—long before Trooper 1 joined the PSU—documents produced in discovery show that Mr. Nevins spearheaded the NYSP prong of the OAG Investigation, was in regular communication with Trooper 1 throughout the investigation, and was among the first NYSP witnesses interviewed by the OAG investigators. Mr. Nevins further inserted himself in the OAG Investigation by communicating directly with witnesses being interviewed. For example, despite being retired, Mr. Nevins spoke with NYSP witness Fabricio Plaskocinski for 20 minutes a few days before his interview. *Id*. at 47. Through Trooper 1, Mr. Nevins also reached out to another NYSP witness, Kyle Shillingford, to discuss his interview. *Id*. at 54–56. Mr. Nevins—who Trooper 1 described as "real Troop F mafia"—keenly understood that the OAG Investigation was a "team effort." *Id*. Mr. Nevins was also communicating with Trooper 1's closest colleague on the PSU, Diane Parrotta, during the OAG Investigation, including immediately after Ms. Parrotta contacted reporters. *Id*. at 45–49.

  Governor Cuomo thus sought Mr. Nevins's phone records to further his defense theory—based on documentary and testimonial evidence—that Trooper 1, Mr. Nevins, and others colluded extensively to coordinate their testimony during the OAG Investigation for the specific purpose of causing Governor Cuomo's resignation. On March 21, 2025,

Hon. LaShann DeArcy Hall
September 3, 2025
Page 2

counsel for Mr. Nevins moved for a protective order to limit the scope of the subpoena or, alternatively to quash it entirely. ECF No. 335.

Three months later, on June 30, 2025, the parties appeared before Judge Merkl to address Mr. Nevins's objections to the Verizon subpoena. *See* June 30, 2025 Minute Entry and Order; ECF No. 414-3 ("June 30 Tr."). Even though phone records are not invasive, Judge Merkl directed Governor Cuomo to propose a narrowed request for phone records to Mr. Nevins—including both a narrowed list of individuals whose records would be searched for and produced, as well as a narrowed time frame for relevant records—and directed both parties to meet and confer further. *See* June 30, 2025 Minute Entry and Order. Governor Cuomo and Mr. Nevins met and conferred. Governor Cuomo proposed to narrow the relevant time period to the dates surrounding the OAG Investigation (February 1—September 30, 2021), and to limit the records sought to 28 individuals relevant to Governor Cuomo's defense. Mr. Nevins agreed to search his phone records for 21 of the 28 names proposed by Governor Cuomo for the limited period,[1] but the parties remained at an impasse regarding seven individuals: four members of the media,[2] and three individuals who held leadership roles in the NYSP or NYSP union representatives.[3] Accordingly, on August 15, 2025, Governor Cuomo and Mr. Nevins wrote jointly to Judge Merkl seeking an additional conference to resolve the narrow remaining dispute. ECF No. 414. On August 20, 2025, Judge Merkl issued the Order directing the parties to proceed with the discovery as to the 21 agreed-upon individuals and denying Governor Cuomo's request to obtain records relating to the seven additional individuals. *See* Order. Judge Merkl found that Governor Cuomo's expanded request was "disproportionate, unduly burdensome, and irrelevant." *Id*. Governor Cuomo now appeals this Order.

***The Order Is Contrary to Law and Clearly Erroneous***

Governor Cuomo's request is neither "overly broad" nor is it is "fishing expedition." *See* Order. To the contrary, Governor Cuomo has a reasonable basis to believe these communications may exist, and that Mr. Nevins engaged in a coordinated effort to mount allegations against Governor Cuomo. Indeed, Mr. Nevins admitted to having phone calls with Mr. Regan and Mr. Mungeer during the OAG Investigation about Trooper 1's allegations; thus, the phone records will show additional details regarding when those calls occurred, their duration and frequency, and the surrounding context of Mr. Nevins's calls with other NYSP members and OAG investigators. *See* ECF No. 414-2 at 141:2–145:10. Regarding Mr. Dymond, text messages between Trooper 1 and Mr. Nevins reflect their

---

[1] The 21 individuals are: Joon Kim, Kyle Shillingford, James Boyle, Jonathan Blazek David Dively, Lacey Malbeuf, Mary Moran, Maria Salazar, Todd Williams, Joe D'Amico, Greg Panzarella, Joe Metcalfe, Chris Long, Jennifer Gottstine, DeJuan Koonce, Robert Stallone, Charles Kaplan, Diane Parrotta, Trooper 1, Fabricio Plaskocinski, and Mark Prestigiacomo.

[2] Jesse McKinley (the New York Times), Brendan Lyons (the Times Union), Sara Nathan (the New York Post), and Ronan Farrow (the New Yorker).

[3] Timothy Dymond (then-President of the NYSP Investigators Association), Tom Mungeer (then-President of the NYS Troopers PBA), and Patrick Regan (then-Lieutenant Colonel in the NYSP).

Hon. LaShann DeArcy Hall
September 3, 2025
Page 3

belief that the OAG Investigation was an opportunity to "wake … up" others in the NYSP and to encourage them to "stand[] up" against Governor Cuomo, and that Mr. Dymond was an ally in this effort. ECF No. 414-1. It is thus likely Mr. Nevins communicated with Mr. Dymond about the OAG Report and Trooper 1's allegations.

Mr. Nevins's calls with members of the media are also highly relevant to Governor Cuomo's defense. As Judge Merkl acknowledged, Governor Cuomo intends to show coordination by witnesses during the OAG Investigation and, ultimately, it will be left to the jury to determine whether this "web network of phone contacts is nefarious." June 30 Tr. at 32:13–20. If Mr. Nevins was in fact communicating with the media during the OAG Investigation, this would further support a finding that his efforts to communicate with others were part of a coordinated attempt to take down Governor Cuomo. Governor Cuomo has a basis to believe these communications may exist. Mr. Nevins had previously published an op-ed in the New York Post disapproving of Governor Cuomo's COVID policies, and the phone records of Trooper 1's closest PSU friend—Diane Parotta—show Ms. Parotta frequently spoke with Mr. Nevins directly after her calls with reporters during the OAG Investigation, suggesting she and Mr. Nevins were working together to share information with the press during this time.[4] Further, negative articles about Governor Cuomo were published during and immediately after the OAG Investigation citing to anonymous sources who were purportedly in a position to know confidential facts.[5]

Finally, there is little additional burden to Mr. Nevins in searching for and producing records relating to 28 individuals, rather than the 21 individuals Judge Merkl permitted. Counsel for Mr. Nevins will request that Verizon produce only those records reflecting Mr. Nevins's calls and texts with the specified individuals; thus, there is no additional burden to Mr. Nevins in also including the disputed names. But even if Mr. Nevins, and not Verizon, bore the burden of searching his phone records to identify and produce those relating to the seven names, the minimal burden is not outweighed by Governor Cuomo's need for the information.

Governor Cuomo therefore respectfully requests that the Order be modified to include all 28 individuals in Governor Cuomo's request to Judge Merkl below.

---

[4] At his deposition, when asked about communications with the media, Mr. Nevins testified that PSU members "didn't speak to reporters." Governor Cuomo was not able to confront Mr. Nevins with Ms. Parrotta's phone records to question the purpose or nature of these calls, however, because such records were produced only after Mr. Nevins was deposed.

[5] *See, e.g.*, Brendan J. Lyons, *Cuomo and the State Police: meddling, anger and sexual harassment*, Times Union (Aug. 21, 2021), available at https://www.timesunion.com/state/article/Cuomo-s-dealings-with-StatePolice-include-16398970.php; Brendan J. Lyons, *Trooper harassed by Cuomo quickly became his driver*, Times Union (Aug. 11, 2021), available at https://www.timesunion.com/state/article/Trooper-harassed-by-Cuomo-quickly-became-his-16380003.php; Sarah Nathan, *Inside Sandra Lee and Andrew Cuomo's split: Gov's cheating 'an open secret,' sources say*, N.Y. Post (Apr. 5, 2021), available at https://nypost.com/2021/04/03/insidesandra-lee-and-andrew-cuomos-split/.

Hon. LaShann DeArcy Hall
September 3, 2025
Page 4

                              Respectfully submitted,

                              */s/ Theresa Trzaskoma*

                              Theresa Trzaskoma