November 19, 2025

**BY ECF**
Honorable Taryn A. Merkl
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  *Trooper 1 v. NYSP et al.*, 22-cv-893 (LDH) (TAM)

Dear Judge Merkl:

The Parties write jointly pursuant to this Court's Individual Rule & Practice 3(A), the Court's direction at the September 5, 2025 conference, and the Court's October 17, 2025 Order (ECF No. 450) in connection with the pending dispute concerning Plaintiff's withholding of post-January 1, 2022 employment-related communications. The Parties met and conferred multiple times and remain at an impasse.

## DEFENDANTS' POSITION

On July 30, 2025, the Parties filed a joint dispute letter concerning Plaintiff's withholding of relevant work-related communications based on an arbitrary date cut-off. ECF No. 406. In that letter, Plaintiff's counsel confirmed that they withheld 15 pages of otherwise responsive communications between Plaintiff and her ex-fiancé Charles Brown on the basis that communications after January 1, 2022 were irrelevant. *Id*. at 4. During a conference on September 5, 2025, counsel for Governor Cuomo explained that he was seeking relevant communications about, or with, Phil Russo concerning his visits to Plaintiff's home, communications about Plaintiff's leave, and Plaintiff's communications regarding any type of complaints about work or disagreements she was having at work. Sept. 5, 2025 Tr. at 5:2-6:4, 29:14-30:21. Counsel for Governor Cuomo agreed to meet and confer again with Plaintiff's counsel, including in order to reach agreement as to a reasonable search for relevant work-related communications post-dating January 1, 2022. *Id.* at 54:13-20. Plaintiff's counsel also promised to confirm whether Plaintiff had any messages concerning Russo's home visits. *Id*. at 16:11-16.

On September 18, 2025, the Parties met and conferred concerning the post-January 1, 2022 documents. Plaintiff's counsel confirmed that Plaintiff did in fact have a text message with Russo concerning his home visits and would produce that message. Plaintiff's counsel also agreed to run searches for "Phil," "supervisor," and "visit" and get back to Governor Cuomo's counsel on the associated burden with those searches. Plaintiff's counsel also agreed to get back to Governor Cuomo's counsel on which texts had already been collected, in order to evaluate the burden in connection with collecting and searching for the communications Governor Cuomo was requesting (for example, if Plaintiff's counsel had never collected messages past a certain date). Finally, Plaintiff's counsel agreed to let Governor Cuomo's counsel know whether they would continue to withhold the 15 pages of messages with Charles Brown that were withheld based on date and relevance. Governor Cuomo's counsel, for their part, agreed to provide search parameters for the

collection and production of Plaintiff's post-January 1, 2022 work-related communications. On September 19, 2025, Plaintiff produced a message with Russo, a copy of which is attached hereto as **Exhibit A**. It was clear from that message, however, that Plaintiff was still withholding other communications with Russo that concerned Plaintiff's work at the NYSP.

Governor Cuomo proposed a two-pronged approach to minimize the burden on Plaintiff but also ensure the production of relevant communications. First, Governor Cuomo's counsel requested that Plaintiff identify and produce all communications with 25 NYSP colleagues, as those communications were likely to be work-related and not personal, and also requested a complete production of the responsive texts with Brown.[1] Subsequently, Plaintiff's counsel stated that they were unwilling to collect communications with the 25 former colleagues. Governor Cuomo's counsel attempted to break through the impasse by narrowing the list to sixteen former colleagues, but Plaintiff refused.

Second, Governor Cuomo proposed reasonable search terms for Plaintiff to identify any other employment-related communications. Plaintiff's counsel refused to use those search parameters or to propose an alternative. When Governor Cuomo's counsel asked what the hit count was for the search terms, Plaintiff's counsel made clear the objection was not on the basis of burden, and for that reason, Plaintiff also failed to provide information about search term hits or the text collection process. Instead, Plaintiff insists that Governor Cuomo's search parameters defied the Court's order, are seeking cumulative discovery, and that Governor Cuomo already had an "adequate chance to take discovery on this topic." The original list of 25 individuals, the search terms proposed for other individuals, and the revised list of 16 individuals are listed in **Exhibit C**.

Plaintiff's refusal to undertake even the most basic steps to identify and produce post-January 2022 work-related communications is indefensible, particularly given the Court's instruction that the Parties work together. Moreover, the handful of documents Plaintiff did produce since the September 5, 2025 conference—which are highly damaging to Plaintiff—confirms that Plaintiff is playing a shell game with her communications, hoping a blanket refusal will shield more bad information from coming to light. Plaintiff claims she wants a trial, but what she really wants is to continue to hide bad evidence—as she has repeatedly throughout the discovery process—and for discovery to be closed before she has to produce anything more.[2]

Plaintiff's post-January 1, 2022 work-related communications, including with her former colleagues we identified, are patently relevant to her claims in this litigation and she should produce them. Plaintiff should be compelled to apply the reasonable parameters proposed by Governor Cuomo, including producing all communications with the narrowed list of 16 former

---

[1] On September 26, 2025, Plaintiff produced 27 pages of additional texts with Brown that Plaintiff had been withholding. A copy of that production is attached hereto as **Exhibit B**. Although Plaintiff had described these texts as "routine" and "irrelevant," they were anything but. ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[2] Examples of this conduct by Trooper 1 include (a) her insistence that she had no responsive text messages until Governor Cuomo subpoenaed Charles Brown and (b) slow-rolling her production of treatment records as described in Governor Cuomo's October 31 filings.

colleagues and producing communications with other individuals based on Governor Cuomo's proposed search terms.

## PLAINTIFF'S POSITION

Plaintiff is prepared to comply with the Court's June 30, 2025 instructions to the parties about post January-2022 searches. Cuomo is not. He has brazenly defied both the Court's instructions as well as its previous rulings governing document discovery. As the Court has now held regarding his belated and improper requests for medical records, the appropriate remedy is to bar further discovery.

A brief overview of discovery proceedings to date shows that Cuomo is trying to revisit and relitigate long settled issues. This Court has painstakingly defined the scope of discovery over years and through dozens of hearings. The narrative of relevant discovery proceedings begins not on July 30, 2025 as Cuomo would have it, but in 2023. During that year, Cuomo sought Trooper 1's communications with a list of approximately 30 individuals whom Trooper 1 had identified (in Interrogatory responses) as individuals she may have communicated with about her allegations. Cuomo then sought a disclosure of Trooper 1's communications with these individuals on a broad array of six topics: "(i) Governor Cuomo, (ii) any allegations of misconduct by Governor Cuomo, (iii) the OAG Investigation and resulting OAG Report, (iv) the NYSAJC Investigation and resulting NYSAJC Report, (v) the allegations contained in the Second Amended Complaint, and/or (vi) the Action or the Related Miscellaneous Actions."

Plaintiff objected. Instead of responding to the objection, Cuomo began issuing third-party subpoenas. Ms. Trzaskoma described Cuomo's strategy during a conference on December 13, 2023: "Trooper 1 said, I communicated with this list of 30 people . . . . We then asked for all of her communications with those people, and the response was, that's too broad. So . . . we tried to do this a different way." Dec. 13, 2023 Hrg. Tr. at 99:23-100:5. Subsequently, the parties were able to agree on how Trooper 1 should search for her communications with those individuals: using search terms and producing only those messages that were responsive to existing document requests (i.e. a standard ESI search). She produced a volume of texts between herself, Charlie Brown[3], and troopers Diane Parrotta, Melissa Evans, and Fotini Vartholomeos. In this production on April 4, 2024, Trooper 1 specified that she had not produced text messages about the terms or conditions of Trooper 1's employment from after January 1, 2022. (She produced numerous other post-2022 texts with the other individuals just named.) While reserving her rights and disagreeing on their relevance, Trooper 1 later produced employment-related texts from after January 1, 2022, which resulted in a production of some texts with Charlie Brown and one text with Phil Russo.

---

[3] As Cuomo knows, Trooper 1 never characterized these texts as "routine." Trooper 1 explained exactly how and why she withheld these texts.

Well over a year after Trooper 1's April, 2024 production, in a July 30, 2025 letter Cuomo brought the issue of post 2022 texts to the Court's attention for the first time. He was now seeking more than just texts about the terms or conditions of Trooper 1's employment, but wanted any text message that merely mentioned her job. At a subsequent hearing, Ms. Glavin explained the reason for seeking texts where Trooper 1 merely mentions work as follows: "we are looking for Trooper 1 communications regarding any type of complaints or disagreements she was having at work, particularly as it related in December 2022 to a dispute she was having with other members on the PSU [about a gift] to Governor Hocul." Sep. 5, 2025 Hrg. Tr. at 42:2-8. After some discussion the Court expressed concern that "at this late stage" the search would "present a burden . . . because you're essentially asking for a re-visitation of all the texts." Id. at 50:4-7. In the end, the Court adjourned the proceedings with instructions to the parties to try to come to an agreement on "[s]earch terms and a time frame." Id. at 52:25. The Court observed that it did not "think that an unbounded request is proportionate at this stage." Id. at 55:14-15.

Brazenly, willfully, flagrantly violating these instructions, Cuomo came back to Trooper 1 with a request that she produce all of her text messages with 25 individuals—as he admits in this letter. Not only did this disregard the Court's clear instructions and cautions, it also ignored years of heavily litigated and strictly delineated document productions about Trooper 1's communications with these very individuals, as set forth in this letter. It threatened the precise "re-visitation of all the texts," id. at 50:7, the Court had cautioned against on Sep. 5. Reducing the request to 16 individuals did nothing to allay these concerns. Cuomo then sent a list of 54 search terms bearing no relation to the topics discussed on Sep. 5 and asked that Trooper 1 search these terms "with Others," Ex. C, even though searches of conversations "with others" apart from troopers had never been on the table.[4]

This was not a good-faith offer to which Trooper 1 could respond, it was an attempt to restart all of discovery. In other words, it was exactly what the Court had expressed concern about and exactly what the Court had instructed Cuomo's counsel not to do. Making these absurd demands was a win-win for Cuomo. If Trooper 1 responded, he could try to explode the scope of discovery at the last second and keep it open for another year. If Trooper 1 called out the bad faith and declined to respond, Cuomo could draft a letter blaming Trooper 1 for the impasse.

As he has so many times before, Cuomo demands these documents merely because he believes they are relevant. He argues they are "patently relevant to [the] claims in this litigation," without once citing the Court's repeated instructions about proportionality, in this case instructions given at the hearing on Sep. 5, 2025. However, he also gives no reason in the instant letter to credit any of his conspiracy theories about the importance of these documents. He says Trooper 1's texts with Brown are "highly damaging" and that they contain "bad information" and "bad evidence." While

---

[4] Cuomo is not entitled to a hit report for search terms that are totally outside of the scope of the searches the parties discussed with the Court.

they are not, this argument misses the point in any case. The hope of finding "damaging" or "bad" evidence is not a basis for discovery, it is a classic fishing expedition. He does not explain how any of these requests connect to a defense. Nor, regarding Exhibit A, does he explain why he believes it suggests that there are other relevant texts.

Cuomo also ignores Trooper 1's further objections, that the requests were duplicative and cumulative and that Cuomo had already had the opportunity to take the discovery he seeks. See Fed. R. Civ. P. 26(b)(2)(C). The Court only recently expressed similar concerns about Cuomo's 11th-hour requests for additional depositions and documents. See Trooper 1 v. New York State Police, No. 22 Civ. 893 (LDH) (TAM), 2025 WL 2959061, at *5 (E.D.N.Y. Oct. 17, 2025) ("Cuomo's repeated, voluminous, fact- and exhibit-intensive discovery dispute filings make plain that Defendants have engaged in extremely robust discovery into Plaintiff and her claims and that Defendant Cuomo has developed a significant volume of evidence for use in his own defense.") The instant requests, as phrased, would of course re-visit the entirety of the discovery already done into Trooper 1's documents and text messages. It is also an obviously duplicative effort that is entirely preempted by the already extensive negotiation of discovery parameters. To agree either that Trooper 1 should produce all of her texts with any of the above individuals, or that she should undertake searches into "all other" communications, would essentially throw away years of work to define the scope of discovery. The Court should reject the attempt.

| WIGDOR LLP | HARRIS TRZASKOMA LLP |
|---|---|
| By: */s/ Valdi Licul* <br> Valdi Licul <br> John S. Crain <br> Kat Vask <br> 85 Fifth Avenue <br> New York, New York 10003 <br> Tel. (212) 257-6800 <br> vlicul@wigdorlaw.com <br> jcrain@wigdorlaw.com <br> kvask@wigdorlaw.com <br> *Counsel to Plaintiff Trooper 1* | By: */s/ Theresa Trzaskoma* <br> Theresa Trzaskoma <br> 125 Broad Street, 10th Floor <br> New York, New York 10004 <br> Tel. (212) 970-6465 <br> ttrzaskoma@harristrz.com <br><br> GLAVIN PLLC <br> Rita Glavin <br> 156 West 56th Street, #2004 <br> New York, New York 10019 <br> Tel. (646) 693-5505 <br> rglavin@glavinpllc.com <br> *Counsel to Governor Cuomo* <br><br> HARRIS BEACH MURTHA <br><br> By: */s/ Daniel J. Moore* <br> Joshua D. Steele <br> Daniel J. Moore <br> 99 Garnsey Road <br> Pittsford, New York 14534 <br> Tel. (585) 419-8800 <br> jsteele@harrisbeachmurtha.com <br> dmoore@harrisbeachmurtha.com <br> *Counsel to New York State Police* |