**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X

TROOPER 1,                                         :
                                                   :    Case No.: 22 Civ. 00893 (LDH) (TAM)
                        Plaintiff,                 :
                                                   :
            v.                                     :
                                                   :
NEW YORK STATE POLICE and ANDREW                   :
CUOMO,                                             :
                                                   :
                        Defendants.                :
---------------------------------------------------------------X


### PLAINTIFF TROOPER 1'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CUOMO'S MOTION FOR PARTIAL JUDGMENT

**WIGDOR LLP**

Valdi Licul
John S. Crain
Katherine Vask

85 Fifth Avenue
New York, NY 10003
Telephone: (212) 257-6800
Facsimile: (212) 257-6845
vlicul@wigdorlaw.com
jcrain@wigdorlaw.com
kvask@wigdorlaw.com

*Counsel for Plaintiff*

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

**Content**                                                                               **Page**

TABLE OF AUTHORITIES ................................................................................... ii

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............................................1

I.     Factual Background .........................................................................................1

II.    Procedural History .........................................................................................3

DISCUSSION ......................................................................................................5

I.     The Motion is Procedurally Improper...............................................................5

        A.    Fed. R. Civ. P. 12(d) Requires that the Motion Be Converted into a Motion for Summary Judgment ...............................................................5

        B.    The Court Should Deny the Motion Since it Raises Arguments That Could Have Been Made Earlier ...............................................................7

II.    The Motion is Substantively Improper ............................................................8

        A.    The Complaint Pleads a Retaliatory Motive............................................8

        B.    Section 1983 Applies .......................................................................10

                i.    Cuomo Wielded Apparent State Power .....................................11

                ii.   In Any Case, Section 1983 is Broad Enough to Reach Cuomo's Retaliatory Conduct .................................................................13

        C.    Cuomo's "Defensive Measures" Arguments Once Again Fail..............................16

CONCLUSION.....................................................................................................17

i

# TABLE OF AUTHORITIES

**Cases**      **Page(s)**

Acevedo v. Surles,
   778 F. Supp. 178 (S.D.N.Y. 1991) ........................................................................... 13

Amaker v. Weiner,
   179 F.3d 48 (2d Cir.1999) .......................................................................................... 5

Arista Records, LLC v. Doe 3,
   604 F.3d 110 (2d Cir. 2010) ...................................................................................... 8

Atkinson v. N.Y. State Olympic Regional Dev. Auth.,
   822 F. Supp. 2d 182 (N.D.N.Y. 2011) .................................................................... 15

Banks v. Gen. Motors, LLC,
   81 F.4th 242 (2d Cir. 2023) ...................................................................................... 9

Bell Atl. Corp. v. Twombly,
   550 U.S. 544 (2007) ................................................................................................... 8

Booth v. Comm'r of Correction,
   No. 3:19 Civ. 100 (MPS), 2019 WL 919580 (D. Conn. Feb. 25, 2019) ................... 10

Boothe v. Rossrock Funds II LP,
   No. 16 Civ. 900 (PKC), 2017 WL 2271360 (E.D.N.Y. May 23, 2017) .................... 13

Bowens v. Russell,
   No. 21 Civ. 8136 (LTS), 2021 WL 4951632 (S.D.N.Y. Oct. 25, 2021) ................... 13

Buon v Spindler,
   65 F.4th 64 (2d Cir. 2023) ........................................................................................ 16

Burlington N. & Santa Fe Ry. Co. v. White,
   548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006) .......................................... 16

CBOCS West, Inc. v. Humphries,
   553 U.S. 442 (2008) ................................................................................................. 14

Chacko v. Worldwide Flight Svcs., Inc.,
   No. 08 Civ. 2363 (NGG) (JO), 2010 WL 424025 (E.D.N.Y. Feb. 3, 2010) .............. 9

Colombo v. O'Connell,
   310 F.3d 115 (2d Cir. 2002) ...................................................................................... 13

Cooper v. U.S. Postal Serv.,
577 F.3d 479 (2d Cir. 2009) .................................................................................... 11

Crawford-El v. Britton,
523 U.S. 574 (1988) ............................................................................................... 13

DiPilato v. 7-Eleven, Inc.,
662 F. Supp. 2d 333 (S.D.N.Y. 2009) .................................................................... 11

Doe v. Columbia Univ.,
831 F.3d 46 (2d Cir. 2016) ....................................................................................... 9

Duplan v. City of New York,
888 F.3d 612 (2d Cir. 2018) .................................................................................... 10

Fabrikant v. French,
691 F.3d 193 (2d Cir. 2012) .................................................................................... 11

Fagan v. U.S. Carpet Installation, Inc.,
770 F. Supp. 2d 490 (E.D.N.Y. 2011) ...................................................................... 9

Flanagan v. Girl Scouts of Suffolk Cty., Inc.,
No. 23 Civ. 7900, 2025 WL 1501751 (2d Cir. May 27, 2025) ............................... 16

Franco v. Kelly,
854 F.2d 584 (2d Cir. 1988) .................................................................................... 15

Gill v. Pidlypchack,
389 F.3d 379 (2d Cir. 2004) .................................................................................... 17

Glob. Network Commc'ns, Inc. v. City of New York,
458 F.3d 150 (2d Cir. 2006) ...................................................................................... 5

Goldman v. Belden,
754 F.2d 1059 (2d Cir.1985) ..................................................................................... 5

Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty.,
252 F.3d 545 (2d Cir. 2001) ...................................................................................... 9

Grant v. Bethlehem Steel Corp.,
622 F.2d 43 (2d Cir. 198) ....................................................................................... 10

Hardin v. Straub,
490 U.S. 536 (1989) ............................................................................................... 15

*Hughes v. Twenty-First Century Fox, Inc.*,
    304 F. Supp. 3d 429 (S.D.N.Y. 2018) ........................................................... 16

*In re World Trade Ctr. Disaster Site Litig.*,
    722 F.3d 483 (2d Cir. 2013) ........................................................................... 7

*Jackson v. Birmingham Bd. of Educ.*,
    544 U.S. 167 (2005) ............................................................................... 14, 15

*Keles v. Davalos*,
    642 F. Supp. 3d 339 (E.D.N.Y. 2022) ........................................................... 10

*Link v. Wabash R.R. Co.*,
    370 U.S. 626 (1962) ...................................................................................... 7

*Littlejohn v. City of New York*,
    795 F.3d 297 (2d Cir. 2015) ........................................................................... 8

*Lively v. WAFRA Inv. Advisory Grp., Inc.*,
    6 F.4th 293 (2d Cir. 2021) .............................................................................. 5

*Masters v. Mack*,
    No. 22 Civ. 6582 (PK) (CPK), 2022 WL 17961211 (E.D.N.Y. Dec. 27, 2022) ....... 13

*Mauro v. N.Y.C. Dep't of Educ.*,
    No. 21 Civ. 2671 (DAL), 2022 WL 17844438 (2d Cir. Dec. 22, 2022) ................... 8

*Morello v. James*,
    810 F.2d 344 (2d Cir. 1987) ......................................................................... 15

*Murtha v. N.Y. State Gaming Comm.*,
    17 Civ. 10040 (NSR), 2019 WL 4450687, fn. 2 (S.D.N.Y. Sept. 17, 2019) ............. 9

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007) ......................................................................... 10

*Pitchell v. Callan*,
    13 F.3d 545 (2d Cir. 1994) ........................................................................... 12

*Siemens Westinghouse Power Corp. v. Dick Corp.*,
    219 F.R.D. 552 (S.D.N.Y. 2004) ..................................................................... 7

*Sullivan v. Little Hunting Park*,
    396 U.S. 229 (1969) .................................................................................... 14

Trooper 1 v. New York State Police,
  No. 22 Civ. 893 (LDH) (TAM), 2024 WL 3401196 (E.D.N.Y. July 12, 2024) ......................... 4

Trooper 1 v. New York State Police,
  No. 22 Civ. 893 (LDH) (TAM), 2025 WL 2959061 (E.D.N.Y. Oct. 17, 2025) ......................... 3

United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n,
  389 U.S. 217 (1967) ......................................................................................................... 13

United States v. Price,
  383 U.S. 787 (1966) ......................................................................................................... 15

United States v. Temple,
  447 F.3d 130 (2d Cir. 2006) ............................................................................................. 12

Vasquez v. Mullooly, Jeffrey, Rooney & Flynn LLP,
  No. 16 Civ. 6609 (VSB), 2017 WL 4402567 (S.D.N.Y. Sept. 30, 2017) ................................ 5

Vega v. Hempstead Union Free Sch. Dist.,
  801 F.3d 72 (2d Cir. 2015) ............................................................................................. 8, 10

Zoulas v. New York City Dep't of Educ.,
  400 F. Supp. 3d 25 (S.D.N.Y. 2019) .................................................................................... 9

**Statutes**

10 U.S.C. § 253 ...................................................................................................................... 12

20 U.S.C. 1681-1688 ............................................................................................................... 14

42 U.S.C. § 1981-1983 ................................................................................................... *passim*

Fed. R. Civ. P. 1, 12 ......................................................................................................... 5, 7, 9

Plaintiff Trooper 1 ("Plaintiff" or "Trooper 1"), through her undersigned counsel, hereby submits this memorandum of law in opposition to Defendant Andrew Cuomo's ("Defendant" or "Cuomo") Rule 12(c) Motion for Partial Judgment dismissing Plaintiff's Second Cause of Action.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### I. FACTUAL BACKGROUND

Between 2013 and 2021, the Governor of the State of New York, Andrew Cuomo, sexually harassed at least 11 women, including nine current and former state employees, including Plaintiff Trooper 1, who had served as one of his bodyguards in the Protective Services Unit ("PSU") of the State Police.

An exhaustive investigation by independent attorneys appointed by the New York State Attorney General concluded that "the Governor sexually harassed a number of current and former New York State employees by, among other things, engaging in unwelcome and nonconsensual touching, as well as making numerous offensive comments of a suggestive and sexual nature that created a hostile work environment for women." A separate comprehensive investigation by the Judiciary Committee of the New York State Assembly found "overwhelming evidence that the former Governor engaged in sexual harassment," expressly highlighting the Governor's victimization of Trooper 1. On January 26, 2024, the Department of Justice joined this chorus of official findings against Cuomo, settling claims with the State based on Cuomo's sexual harassment of subordinates. Understanding that it would be futile to dispute the allegations against him, Cuomo instead opted to apologize to Trooper 1 and resign from office in August 2021.

In anticipation of a hoped-for political comeback—one that would later culminate in him losing an election for the mayoralty of New York City in 2025—Cuomo began lashing out at his accusers in the months following his resignation. "On February 10, 2022, the Governor announced that he w[ould] be filing ethics charges against the attorneys who investigated him and unearthed his pattern of sexual harassment, and further warned that 'the list of attorneys' targeted by the Governor's ethics allegations 'may expand.'" Second Amended Complaint, Dkt. 71 ("SAC") at ¶ 155. The Governor also threatened to seek criminal prosecution of his victims, announcing on Twitter that he would "make 'submissions' to 'relevant district attorneys' related to 'perjury' and 'witness tampering.'" Id. at ¶ 156. Unlike average citizens who make their complaints of criminal conduct by calling 911 or going to the police station, Cuomo purported in these announcements to have special access to state organs of criminal prosecution.

Shortly afterwards, on February 17, 2022, Trooper 1 filed the instant lawsuit. On the same day, Richard Azzopardi, who served Governor Cuomo as a spokesman both before and after his resignation, "tweeted a statement attacking Trooper 1 and her attorneys, accusing them of an attempt to 'extort' a settlement and 'cheap cash extortions.'" Id. at ¶ 159. Cuomo has attached this Tweet to his briefing. Cuomo conveniently elides from his motion brief, however, that Richard Azzopardi admitted under oath that he and Cuomo drafted the "extortion" Tweet together in response after learning that Trooper 1 filed this lawsuit. See Ex. 1.

Through Cuomo's aspersions of criminal conduct, Trooper 1 reasonably feared Cuomo would use his residual influence in the State Police to ruin her career. For instance, during his Governorship, Cuomo exercised state power through unofficial channels of influence and intimidation. SAC at ¶¶ 22-28 (Cuomo used unofficial levers of power to change PSU

requirements).[1] Trooper 1 had every reason to believe he could still access those channels, and his public communications were meant to convey to her (and other victims) that he could.

Cuomo's briefing also elides that he successfully applied for and received from the State of New York an indemnification for legal defense fees incurred only because of his public office, resulting in $21,000,000 in legal fees (and counting) paid by the people of New York State.  See Rosalind Adams, THE CITY, "Taxpayers Forked Out Another $1.3 Million for Cuomo's Sexual Harassment Defense," Dec. 15, 2025, (https://www.thecity.nyc/2025/12/15/taxpayers-andrew-cuomo-sexual-harassment-bill/).

## II.    PROCEDURAL HISTORY

Almost four years have elapsed since the initial filing of this case. On June 6, 2022, the parties began discovery, after the Court rejected Defendants' request for a stay of discovery. Discovery has been extended eight times, and, in countless discovery disputes, the Court has given Cuomo significant leeway to explore an exotic Praetorian Conspiracy defense theory, based on the baseless contention that the State Police plotted to dethrone him (even though he admitted wrongdoing and apologized to Trooper 1).  See Trooper 1 v. New York State Police, No. 22 Civ. 893 (LDH) (TAM), 2025 WL 2959061, at *2 (E.D.N.Y. Oct. 17, 2025); id. at *2 fn. 4 (describing the history of discovery extensions).

On September 2, 2022, Cuomo filed a motion to dismiss Plaintiff's retaliation claims under the New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL" and together with the NYSHRL, the "Local Laws").  Plaintiff opposed. In

---

[1]     Discovery has revealed numerous additional instances of Governor Cuomo tapping corrupt and unofficial channels of influence and control over the State Police.  This includes the testimony of Trooper 1 herself; of Diane Parrotta, a State Trooper; of Jennifer Gottstine, a high-ranking State Trooper 1 who conducted an investigation after Cuomo's resignation; and many others.  This evidence will amply support Trooper 1's contention that she reasonably believed Cuomo to be invoking state power, and that she feared official workplace consequences for her actions.

doing so, she argued that in addition to her Local Laws claims, Cuomo "engaged in . . . retaliation in violation of Trooper 1's rights under the Equal Protection Clause." Dkt. 46 at 4, fn. 2. In other words, Trooper 1 pointed out that Cuomo had violated her rights under 42 U.S.C. § 1983. The Court resolved the motion to dismiss in July 2024, dismissing solely Trooper 1's retaliation claims against Cuomo under the Local Laws, but not her claims under 42 U.S.C. § 1983 ("Section 1983"). See Def.'s Brf. at 4; Trooper 1 v. New York State Police, No. 22 Civ. 893 (LDH) (TAM), 2024 WL 3401196 (E.D.N.Y. July 12, 2024) ("Mot. to Dismiss Order"). The Court's decision relied upon statutory language in the Local Laws concerning the definition of a covered "employer." See Mot. to Dismiss Order at *6-8.

Nearly two years after filing his initial motion to dismiss, Cuomo purported to realize for the first time (even though it had been pointed out in Trooper 1's opposition) that he had won dismissal of the retaliation claims under the Local Laws but had failed to move to dismiss Trooper 1's retaliation claim under Section 1983. On August 8, 2024, he filed a letter admitting that he "fail[ed] to include" the claim previously, and that this was an "unintentional oversight." Dkt. 268 at 1. He received permission from the Court to file his Motion for Judgment on the pleadings, on April 28, 2025. Def.'s Brf. at 4-5. The Court gave him permission to file it without "an additional premotion letter." Id. at 5 fn. 7. Inexplicably, Cuomo waited almost nine months to serve the instant motion on Plaintiff. In that time, fact discovery progressed by five months and then definitively closed on September 30, 2025. See Dkt. 450 (explaining that fact discovery was closed as of September 30, 2025).

Cuomo is now seeking judgment on claims that were filed four years ago, because he accidentally failed to address them in his first motion to dismiss. Cuomo has stated that he also intends to file a motion for summary judgment.

4

<h1 style="text-align: center">DISCUSSION</h1>

## I.   The Motion is Procedurally Improper

### A.   Fed. R. Civ. P. 12(d) Requires that the Motion Be Converted into a Motion for Summary Judgment

Under Fed. R. Civ. P. 12(d), "[i]f ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56  All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  The conversion requirement is "'strictly enforce[d]' and 'mandatory.'"  Glob. Network Commc'ns, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) (quoting Amaker v. Weiner, 179 F.3d 48, 50 (2d Cir.1999)); Goldman v. Belden, 754 F.2d 1059, 1066 (2d Cir.1985).  Likewise, a motion under Fed. R. Civ. P. 12(c) is inappropriate where "material facts are disputed."  Vasquez v. Mullooly, Jeffrey, Rooney & Flynn LLP, No. 16 Civ. 6609 (VSB), 2017 WL 4402567, at *1 (S.D.N.Y. Sept. 30, 2017).

Here, the material facts are disputed, including by testimony and evidence from four intervening years of discovery.  Cuomo argues that the sole retaliatory acts pertinent to his Rule 12(c) motion are his two Tweets about filing ethics charges and about making submissions "to relevant district attorneys" about "perjury" and "witness tampering."  Def.'s Brf. at 2 (quoting SAC at ¶ 156).  He attaches the Tweets at issue.[2]  Continuing his narrative, he argues that the Court has already dismissed any retaliation claim related to a later February 17, 2022 Tweet, authored by him and his public relations consultant Azzopardi, in which he accused Plaintiff of trying to "extort" a settlement with the instant lawsuit.  See Def.'s Brf. at 3.  His point—the point

---

[2]   Even if the Court admits this extrinsic evidence, it must be construed in the light most favorable to Plaintiff.  See Lively v. WAFRA Inv. Advisory Grp., Inc., 6 F.4th 293, 305–06 (2d Cir. 2021) ("where a court does draw from such extrinsic material, it must construe all reasonable inferences in the non-movant's favor.")

on which his motion turns—is that the February 17, 2022 Tweet is irrelevant to the retaliation claims against Cuomo.

But as set forth above, this narrative of events deliberately excluded the record evidence showing that Cuomo co-authored the February 17, 2022 "extortion" Tweet, and that Azzopardi posted the retaliatory Tweet at Cuomo's behest. In other words, Cuomo, too, may be held liable for unlawful conduct based on the February 17, 2022 Tweet. Without the extrinsic evidence filed by Trooper 1 herewith, the Court would have been misled about the nature of the parties' dispute.[3] Since the issues here cannot be adjudicated without resort to the record, summary judgment or a trial are the only appropriate vehicles to address them.

Moreover, Cuomo elides that there is an extensive factual record that the Court will need to weigh in deciding Trooper 1's retaliation claim under Section 1983. That is because, as he does admit, the Court previously decided only Trooper 1's claims under the Local Laws. See Mot. to Dismiss Order. But as set forth below, there is a vast difference in the scope of liability between the Local Laws on the one hand and Section 1983 on the other. Under the Local Laws, the Court considered whether there was "conduct arising under the employer-employee relationship." Mot. to Dismiss Order at *6. As the parties agree, here the Court will have to decide the distinct issue of whether Cuomo acted under "color of law." This is a difficult and amorphous standard governed by case law and precedents dating back to the Civil War. The issue does not begin and end with Cuomo's employment status, and resolving it will call on other parts of the discovery record elided by Cuomo in his motion. See infra, § II.B.

---

[3] Since Trooper 1's retaliation claim addresses the February 17 Tweet, which explicitly referenced her case, there is no merit to the argument that "Plaintiff is not referenced" in the Tweets at issue. Defs.' Brf. at 8.

Even if his motion were granted, Trooper 1 would be compelled to file a motion to amend to address the foregoing evidence, further delaying the disposition of the case and wasting time on issues that could have been addressed on the record in consolidated summary judgment briefing.

**B.     The Court Should Deny the Motion Since It Raises Arguments That Could Have Been Made Earlier**

"It is well established that district courts possess the 'inherent power' and responsibility to manage their dockets 'so as to achieve the orderly and expeditious disposition of cases.'" In re World Trade Ctr. Disaster Site Litig., 722 F.3d 483, 487 (2d Cir. 2013) (quoting Link v. Wabash R.R. Co., 370 U.S. 626, 630-31 (1962)); see also Fed. R. Civ. P. 1 (Rules of procedure must be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). For instance, Courts deny successive motions on the same topic in the interests of judicial efficiency. See, e.g., Siemens Westinghouse Power Corp. v. Dick Corp., 219 F.R.D. 552, 554 (S.D.N.Y. 2004) (rejecting successive cumulative summary judgment motion).

Here, discovery has closed, and Cuomo is admittedly taking a second bite of the apple after missing his first chance to move to dismiss this claim—a chance he missed despite Trooper 1 explicitly addressing a portion of her opposition brief to her Section 1983 claim. Not only is he trying to correct an error, but he has delayed for nearly a year doing so, even after the Court fairmindedly indulged his mistake and gave him a chance to correct it. This motion no longer

has the appearance of a mere correction, as it would if Cuomo had filed it in a timely fashion. Now, it has the appearance of an attempt to delay proceedings.

By the simple expedient of staying Cuomo's contentions until forthcoming dispositive motions, the Court can cure all of the foregoing procedural issues raised by Cuomo's late motion.

## II.     The Motion is Substantively Improper

### A.     The Complaint Pleads a Retaliatory Motive

Cuomo's proposed motion, even if not procedurally barred, is nonetheless without merit. A complaint is sufficient where it asserts "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To do so, the plaintiff is not required to plead "specific evidence" explaining precisely how the defendant's conduct was unlawful, Arista Records, LLC v. Doe 3, 604 F.3d 110, 119-21 (2d Cir. 2010), but only facts sufficient to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (internal citations omitted).

In discrimination cases, the Second Circuit has made clear that the plaintiff is "not required to plead a prima facie case of discrimination." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 84 (2d Cir. 2015).  She is not even required to "give plausible support to the ultimate question of whether the adverse employment action was attributable to [retaliation]." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). She "need only give plausible support to a minimal inference of [retaliatory] motivation." Id.  Indeed, the Second Circuit has "often vacated improper dismissals in discrimination cases where courts apply overly stringent pleading standards, cautioning against imposing 'too high a burden on plaintiffs alleging discrimination at the 12(b)(6) stage.'" Mauro v. N.Y.C. Dep't of Educ., No. 21 Civ. 2671 (DAL),

2022 WL 17844438, *1 (2d Cir. Dec. 22, 2022) (quoting <u>Doe v. Columbia Univ.</u>, 831 F.3d 46, 55 n.8 (2d Cir. 2016)).

Accordingly, whether Cuomo can prevail at summary judgment or before a jury are not the questions to be answered on a motion under Fed. R. Civ. P. 12(c). Since Cuomo's motion is addressed to the pleadings, the question is whether those pleadings plausibly suggest a minimal inference of illegal motivation. They undoubtedly do.

Cuomo argues that under Section 1983 Trooper 1 must "plead but-for causation" and that she cannot do so because "'over four months elapsed between Plaintiff's last protected activity . . . and Governor Cuomo's statements." Def.'s Brf. at 9-10. Once again, Cuomo is wrong. As a threshold matter, "but-for" causation is "an evidentiary standard of proof, rather than a pleading standard." <u>Zoulas v. New York City Dep't of Educ.</u>, 400 F. Supp. 3d 25, 52 (S.D.N.Y. 2019); <u>see</u> <u>Fagan v. U.S. Carpet Installation, Inc.</u>, 770 F. Supp. 2d 490, 495 (E.D.N.Y. 2011) ("the Plaintiffs were not required to plead that age discrimination was the 'but for' cause of their termination"); <u>Chacko v. Worldwide Flight Svcs., Inc.</u>, No. 08 Civ. 2363 (NGG) (JO), 2010 WL 424025, at * 4 (E.D.N.Y. Feb. 3, 2010) (rejecting the argument that a plaintiff must plead "but for" causation because "[p]roof standards are analytically distinct from both pleading requirements and from the elements of a plaintiff's prima facie case"); <u>but</u> <u>see</u> <u>Murtha v. N.Y. State Gaming Comm.</u>, 17 Civ. 10040 (NSR), 2019 WL 4450687, at *4 fn. 2 (S.D.N.Y. Sept. 17, 2019) ("courts in this District have disagreed as to whether a plaintiff in an [employment] case must plead 'but for' causation to survive dismissal").

Further, it is simply not the law in this circuit that a gap of four months is too long to draw an inference of retaliation. Recently, in <u>Banks v. Gen. Motors, LLC</u>, 81 F.4th 242 (2d Cir. 2023), the Second Circuit cited with approval cases where gaps of "four months," <u>Gorman-</u>

Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001), "eight

months," Grant v. Bethlehem Steel Corp., 622 F.2d 43, 45-46 (2d Cir. 198), "one-year," Patane v.

Clark, 508 F.3d 106, 116 (2d Cir. 2007) (*per curiam*), and even "three-year[s]," Duplan v. City of

New York, 888 F.3d 612, 626 (2d Cir. 2018), permitted an inference of retaliation.

Regardless, here there was not even a four-month delay. The same day that Trooper 1

filed her lawsuit, Cuomo retaliated by drafting a statement that he published through his

spokesperson, Azzopardi, accusing her of extortion. And as Azzopardi admitted under oath, the

statement was published in direct response to Cuomo learning that Trooper 1 had engaged in

protected activity by filing a lawsuit. Ex. 1, Azzopardi Dep. Tr. at 35:10-38:7; see Vega v.

Hempstead Union Free Sch. Dist., 801 F.3d 72, 91 (2d Cir. 2015) ("Vega alleges that after he

engaged in protected activity by filing a charge of discrimination with the EEOC in August

2011"); e.g., Booth v. Comm'r of Correction, No. 3:19 Civ. 100 (MPS), 2019 WL 919580, at *5

(D. Conn. Feb. 25, 2019) ("Filing complaints . . . is protected activity."). By any measure, that is

direct proof of retaliation. See Keles v. Davalos, 642 F. Supp. 3d 339, 373–74 (E.D.N.Y. 2022)

(explaining that defendants' admissions and comments tied the retaliation to a protected activity).

To the extent that Trooper 1's argument calls upon the deposition evidence that Azzopardi

published his February 17, 2022 Tweet at Cuomo's behest, that is all the more reason that this

motion should be converted to summary judgment.

**B.**     **Cuomo Was a State Actor When He Threatened Trooper 1**

Cuomo argues that he was not a state actor when he retaliated against Trooper 1 because

he resigned before publishing a retaliatory Tweet accusing Trooper 1 of extortion. He is wrong.

First, the totality of the circumstances establishes that Cuomo's retaliatory actions had sufficient

connection to his former role as a high-level official. Second, Section 1983 is broad enough to

reach former government officials who lash out at their victims after being sued for constitutional violations.[4]

### i. Cuomo Wielded Apparent State Power

Section 1983 makes liable "[e]very person who" acts "*under color of* any [law]." 42 U.S.C. § 1983 (emphasis added). However, "Supreme Court cases on the subject of state action 'have not been the model of consistency,' and [the Second Circuit] therefore ha[s] 'no single test to identify state action and state actors. Rather, there are a host of factors that can bear on the fairness of an attribution of a challenged action to the State.'" Fabrikant v. French, 691 F.3d 193, 207 (2d Cir. 2012) (quoting Cooper v. U.S. Postal Serv., 577 F.3d 479, 491 (2d Cir. 2009)). In this regard, courts have developed various tests for determining when a purely private actor can nevertheless be held liable as a state actor.[5] But none of these tests addresses the question presented here: can a state actor retain real or apparent access to the levers of state power, even after leaving official office?

The answer to that question must be yes; the state actor test is not as simple as asking whether someone is currently a public official. The post-Civil War legislative context for the "color of law" language is important. Section 1983 was based on substantially identical antecedents that were used against private parties when, for instance, those private parties exploited the absence of state authority to commit civil rights violations. See 14 Stat. 27, Ch. 31, "An Act to protect all Persons in the United States in their Civil Rights, and Furnish the Means

---

[4]     Cuomo also argues that this Court's decision about Local Law retaliation mandates dismissal of Trooper 1's claims under Section 1983. Defs.' Brf. at 6-7. But, as discussed above, this Court's prior ruling addressed specific statutory language about who qualifies as an "employer" under the Local Laws. Section 1983, by contrast, is not an employment statute. Contra Defs.' Brf. ("Plaintiff's retaliation allegations, however, all post-date Governor Cuomo's state employment.")

[5]     Discussing the "three tests" for determining when an entity is a state actor. DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 350 (S.D.N.Y. 2009).

of their Vindication," Sec. 2 (making it a violation for any person acting "under color of law" to deprive others of their rights); John Y. Simon, the Papers of Ulysees S. Grant, Vol. 16: 1866 (1988), 228 (Field Order of Ulysees S. Grant, ordering the arrest of all persons "where the civil authorities have failed, neglected, or are unable to arrest."); see also 10 U.S.C. § 253(1) (codifying an equal protection-based power to enforce the law against private parties).

Likewise, "where a police officer, albeit off-duty, nonetheless invokes the real or apparent power of the police department," the color of law requirement may be satisfied. See Pitchell v. Callan, 13 F.3d 545, 548 (2d Cir. 1994). The "color of law" issue is not limited to the actual authority of the person invoking legal authority, but also encompasses a defendant's "perceived ability to invoke . . . real or apparent authority." United States v. Temple, 447 F.3d 130, 139 (2d Cir. 2006) (examining "color of law" issue under an analogous statute, reversing the district court in pertinent part because it improperly required a showing of actual authority to carry out threats made by a government employee).

The SAC plausibly alleges—all that is required at this juncture—that Cuomo possessed authority in fact through unofficial channels and intended to threaten Trooper 1 with fear of a criminal prosecution and employment consequences if she did not back off her complaint. To understand Trooper 1's reasonable apprehension of official consequences, the February 17, 2022 Tweet must be viewed in its full context. Just one week earlier, Cuomo had threatened his accusers with "submissions" to "district attorneys," suggesting a privileged access to criminal justice institutions—normal, private citizens do not make "submissions to district attorneys," they go to the police. And Trooper 1 had long understood that Cuomo possessed immense unofficial influence within the State Police. In threatening criminal prosecution and accusing Trooper 1 of the crime of extortion, he deliberately led Trooper 1 to reasonably believe that he

could use his influence in the State Police to ruin her career. To the extent any of these facts are not already clear from the face of the SAC, Trooper 1 must be given the chance to submit the full record, including numerous deposition transcripts, establishing the extent of Cuomo's ongoing influence over Trooper 1's state employer. [6]

### ii. In Any Case, Section 1983 Is Broad Enough to Reach Cuomo's Retaliatory Conduct

Cuomo's argument also ignores the unique posture of this case. Cuomo does not claim that he was never a state actor. Indeed, he concedes—as he must—that he was a state actor during the period that he was accused of sexually harassing numerous women, including Trooper 1. He nevertheless argues that, once he resigned in disgrace, he could shed his state actor status and retaliate against Trooper 1 for suing him as a state actor for violating her Constitutional rights. He is wrong.[7]

Courts have consistently recognized the need to prohibit retribution against those who seek to vindicate civil rights. For instance, in Crawford-El v. Britton, 523 U.S. 574, 589 n. 10 (1988), the Supreme Court explained that retaliation "offends the Constitution" because "it threatens to inhibit the exercise of the protected right" and "is thus akin to an 'unconstitutional

---

[6]     Cuomo's case Boothe v. Rossrock Funds II LP, No. 16 Civ. 900 (PKC), 2017 WL 2271360, at *10 (E.D.N.Y. May 23, 2017), brought by a *pro se* plaintiff, was frivolous enough to end in a filing injunction. That is hardly a useful or illustrative precedent. Cuomo's other cases (all also involving *pro se* plaintiffs) likewise fail to offer any guidance, because none of them involved "color of law" allegations, and all were brought against private parties who quite unlike Cuomo lacked any apparent state authority. See Masters v. Mack, No. 22 Civ. 6582 (PK) (CPK), 2022 WL 17961211, at *6 (E.D.N.Y. Dec. 27, 2022) (plaintiff sued their husband); Bowens v. Russell, No. 21 Civ. 8136 (LTS), 2021 WL 4951632, at *3 (S.D.N.Y. Oct. 25, 2021) (plaintiff sued purely private parties and entities). Likewise, the Appellant in Colombo v. O'Connell, 310 F.3d 115 (2d Cir. 2002) "fail[ed] entirely even to claim on appeal that O'Connell acted under color of state law." Colombo, 310 F. 3d at 118.

[7]     There can be no dispute that Trooper 1 engaged in protected activity by bringing this lawsuit. Acevedo v. Surles, 778 F. Supp. 178, 184 (S.D.N.Y. 1991); see United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n, 389 U.S. 217, 222 (1967) (a "petition for redress of grievances [is] among the most precious of the liberties safeguarded by the Bill of Rights").

condition' demanded for the receipt of a government-provided benefit."  For this reason, the

Supreme Court has not hesitated to read broad anti-retaliation protections into anti-

discrimination laws.  For instance, 20 U.S.C. 1681-1688 ("Title IX"), the federal law prohibiting

sex discrimination in education, contains no anti-retaliation language.[8]  Nevertheless, in Jackson

v. Birmingham Bd. of Educ., 544 U.S. 167, 180 (2005) (citations omitted), the Supreme Court

interpreted the statute to prohibit retaliation, otherwise "Title IX's enforcement scheme would

unravel."  Likewise, 42 U.S.C. § 1981 ("Section 1981"), the federal statute prohibiting race

discrimination in contracts, does not include an anti-retaliation clause.[9]  But in CBOCS West,

Inc. v. Humphries, 553 U.S. 442, 448 (2008), the Supreme court held that it would undermine the

"origin and purpose[]" of the statute to permit a defendant to retaliate against a plaintiff who

protested a violation of the statute.  And, in Sullivan v. Little Hunting Park, 396 U.S. 229, 404

(1969), the Supreme Court read an anti-retaliation provision into 42 U.S.C. § 1982 ("Section

1982"), the federal statute prohibiting race-based housing discrimination,[10] to avoid "the

perpetuation of racial restrictions on property."

     Indeed, in each of these cases, the Supreme Court recognized anti-retaliation protections

that were broad enough to protect not only the victim of the underlying discrimination, but also

---

[8]      "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  Title IX § 1681.

[9]      "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings . . . and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  Section 1981(a).

[10]     "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  Section 1982.

those targeted because of their association with them.  <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. at 173, 176.

Section 1983 is no different.  "[T]he central objection of the Reconstruction-Era civil rights statutes . . . is to ensure that individual whose federal constitutional or statutory rights are abridged may recover damages or secure injunctive relief." <u>Hardin v. Straub</u>, 490 U.S. 536, 540 n.5 (1989) (cleaned up).  Thus, the statute "is to be accorded 'a sweep as broad as its language.'" <u>Id.</u> (quoting <u>United States v. Price</u>, 383 U.S. 787, 801 (1966)).

Here, Cuomo sexually harassed Trooper 1 while governor (and a state actor) and he continued that pattern of unlawful conduct when he retaliated against her for suing him in his capacity as a state actor.  Under these circumstances, his state actor status continued through the time of his unlawful conduct.[11]  To permit Cuomo to shed his state actor status and retaliate against his victim would open a gaping hole in the civil rights statutes and encourage "the sort of oppression that . . . section 1983 [] intended to remedy."  <u>Franco v. Kelly</u>, 854 F.2d 584, 588 (2d Cir. 1988) (quoting <u>Morello v. James</u>, 810 F.2d 344, 810 (2d Cir. 1987)).[12]

### C.    Cuomo's "Defensive Measures" Arguments Once Again Fail

"There is an important difference between defending oneself, on the one hand, and threatening, intimidating, or otherwise interfering with someone's rights to pursue a

---

[11]    <u>Atkinson v. N.Y. State Olympic Regional Dev. Auth.</u>, 822 F. Supp. 2d 182 (N.D.N.Y. 2011), the only case cited by Cuomo that addresses a similar factual scenario, is not binding on this Court. Moreover, the Court did not address the important issues raised here regarding the need for anti-retaliation protection.

[12]    Cuomo wants the Court to consider him a state actor for a part of this lawsuit (discrimination) but the another (retaliation).  But that misunderstand that interrelationship between the claims.  "Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination." <u>Jackson v. Birmingham Bd. of Educ.</u>, 544 U.S. 167 at 173-74 (citations omitted).  In other words, "retaliation is discrimination 'on the basis of sex' because it is an intentional response to the nature of the complaint: an allegation of sex discrimination."  <u>Id.</u>

discrimination claim on the others." Hughes v. Twenty-First Century Fox, Inc., 304 F. Supp. 3d 429, 449 (S.D.N.Y. 2018). In short, it is not a "reasonable defensive measure" to accuse someone of crime and threaten criminal prosecution against them. Even if Section 1983 recognized a "reasonable defensive measures" exception to retaliation (and Cuomo cites no case suggesting it deos) Cuomo's actions plausibly crossed the line from merely defending himself by denying the allegations to "threatening" and "intimidating" Trooper 1 (and Cuomo's other victims) with potential criminal charges and their lawyers with ethics claims. See id. at 448-49 (threat to "end [plaintiff's] career" and "cut [her] off from future appearances" could constitute unlawful retaliation). Put another way, Cuomo did not merely attempt to "blunt the inflammatory force of [Trooper 1's] allegations," he engaged in "the use of threats or menacing language impugning [Trooper 1's] character."

In any event, Cuomo's attempt to explain why he engaged in retaliatory conduct—and therefore did not violate the law—is not basis for a motion to dismiss. At the pleading stage, courts are not concerned with whether the defendant can carry his burden to show that he acted for a lawful reason. Flanagan v. Girl Scouts of Suffolk Cty., Inc., No. 23 Civ. 7900, 2025 WL 1501751, at *4 (2d Cir. May 27, 2025). Rather, the "primary" concern is "whether there is minimal support for the proposition that the [defendant] was motivated by [retaliatory] intent." (quoting Buon v Spindler, 65 F.4th 64, 85 (2d Cir. 2023)). Here, the timing of events and Azzopardi's admission that Cuomo co-authored the retaliatory Tweet and caused it to be published upon learning that Trooper 1 sued him for sexual harassment is more than sufficient to show retaliation; that is, that Cuomo authored and published the Tweet in order to dissuade Trooper 1 from pursing her claims. See Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 69, 126 S. Ct. 2405, 2416, 165 L. Ed. 2d 345 (2006) (explaining that conduct is retaliatory where

it would "deter a reasonable" complainant from coming forward).[13]  Cuomo can present his self-serving explanation to a jury.

## **CONCLUSION**

For the foregoing reasons, Cuomo's Motion for Partial Judgment should be denied in its entirety.

Dated: February 13, 2026
New York, New York

WIGDOR LLP

By: _____
    Valdi Licul
    John S. Crain
    Katherine Vask
    85 Fifth Avenue
    New York, NY 10003
    Telephone: (212) 257-6800
    Facsimile: (212) 257-6845
    vlicul@wigdorlaw.com
    jcrain@wigdorlaw.com
    kvask@wigdorlaw.com

    *Counsel for Plaintiff Trooper 1*

---

[13]     That Cuomo engaged in a pattern of such threats against his victims and dared to investigate his pattern of sexual harassment, SAC at ¶¶ 144-59, further supports the inference that Cuomo acted for a retaliatory purpose.  Moreover, that Cuomo was unsuccessful in causing Trooper 1 to drop her lawsuit, does not make his conduct lawful, nor does it preclude Trooper 1's retaliation claim.  See Gill v. Pidlypchack, 389 F.3d 379, 383 (2d Cir. 2004) ("it would be unfair in the extreme to rule that plaintiff's bringing of the subsequent claim in itself defeated his claim of retaliation" because, *inter alia*, "such a plaintiff could never seek redress for retaliation."

## CERTIFICATE OF COMPLIANCE

I Valdi Licul, an attorney duly admitted to practice law before the Eastern District of New York, hereby certify that this document, the memorandum of law, complies with the word count limit set forth in Local Civil Rule 7.1(c) because it contains 5,518 words, excluding the parts of the memorandum of law exempted by the rule.  In preparing this certification, I have relied on the word count of the word-processing system used to prepare this memorandum of law.

Dated:  February 13, 2026
      New York, New York

_____<br>
Valdi Licul