**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

TROOPER 1,

                Plaintiff,

      v.

NEW YORK STATE POLICE and ANDREW
CUOMO,

              Defendants.

Case No. 22-cv-00893 (LDH) (TAM)

## DECLARATION OF STUART B. KLEINMAN, M.D. IN SUPPORT OF DEFENDANTS' MOTION TO CONDUCT A RULE 35 EXAMINATION OF PLAINTIFF

I, STUART B. KLEINMAN, M.D., pursuant to 28 U.S.C. § 1746, hereby declare and state:

1. I am over eighteen years of age and am competent to testify about the matters contained in this Declaration based on my personal knowledge, professional training and experience, and my review of records in this matter.

2. I am a psychiatrist duly licensed to practice in the State of New York since 1987, with particular specialized knowledge and skill in the areas of Psychiatry, Forensic Psychiatry, and Traumatic Stress.

3. I am a Diplomate in Psychiatry of the American Board of Psychiatry and Neurology (ABPN) and possess Added Qualifications in Forensic Psychiatry. These two ABPN designations are commonly referred to as "board certifications."

4. I have been retained numerous times during the past approximately forty years by plaintiff and defense attorneys to conduct independent forensic psychiatric evaluations of a party's claimed emotional distress damages. Such damages have been associated with a wide array of traumatic and stressful events, including physical and/or sexual assault due to claimed negligent

security, assault and other stressful conduct due to claimed civil rights violations inside and outside of prisons, sexual assault or alleged sexual assault of youths due to claimed negligence of educational and related types of entities, and mistreatment and alleged mistreatment, including sexual assault and alleged sexual assault, due to or in conjunction with claimed employment discrimination. I also have been retained numerous times by defense attorneys and prosecutors and have been appointed as an independent evaluator by judges, in many kinds of criminal cases, including cases involving mass or severe violence.

5. I have been retained by the Defendants to conduct a forensic psychiatric evaluation of the Plaintiff, including to assess whether she suffers any mental state or psychiatric difficulties, and, if so, to ascertain the nature, origins, and severity of the same.

6. It is standard forensic psychiatric evaluation methodology to personally examine an individual in order to render conclusions regarding the presence, nature, severity, and origins of any mental disorders she or he suffers. To specifically render a conclusion whether Plaintiff suffers from a mental disorder or disorders, and the nature, severity, and origins of any such condition or conditions, I must personally examine her. I cannot reliably render a conclusion regarding these issues solely by depending upon the data that other mental health professionals and individuals have acquired or adopting the findings that they have formulated.

7. The number of records available regarding an individual does not determine whether a forensic psychiatric examination of her or him is indicated or needed to render diagnostic and related conclusions regarding her or his mental state. I commonly review thousands of pages of materials regarding those whom I assess concerning emotional distress damages. Many factors determine the nature and volume of the materials I review and seek to review, including, for example, the amount of time that has passed between the alleged conduct to which an individual

2

attributes mental state difficulties she reports or presents and when I examine her. I utilize information in these materials to assist me in my forensic psychiatric assessment, but not as a substitute for conducting a forensic psychiatric examination.

8. Information contained in the materials I have reviewed in this matter assists me in forming diagnostic hypotheses regarding Plaintiff's mental state and determining evaluation methodology, such as potential examination inquiries and kinds of information to obtain in support of my forming reliable and accurate conclusions regarding Plaintiff's mental state, particularly mental state difficulties she experiences and attributes to the alleged conduct to which she claims she was subjected.

9. My psychiatric and forensic psychiatric training, experience, and expertise inform how I assess forensic evaluees, including the data I seek and the examination inquiries I make, including the content, form, and sequencing of these inquiries.

10. Review of the collateral data I have considered to date is not in and of itself sufficient to permit any mental health evaluator to reliably diagnose Plaintiff's mental state, including render reliable conclusions regarding the origins of any mental disorders Plaintiff suffers.

11. Review of collateral data is not equivalent to conducting a forensic psychiatric examination, including of an individual asserted to suffer the nature and source of psychiatric difficulties which some mental health professionals have assigned Plaintiff. Specific limiting aspects of the materials I have reviewed and the data they contain which indicate the need for me to conduct a forensic psychiatric examination of Plaintiff include:

a. Inadequate information and investigation regarding the presence, nature, and impact of alternative or additional sources of distress Plaintiff has reported or has been described as experiencing;

b. Inadequate exploration of Plaintiff's psychiatric history, including specifically of the presence, severity, and course of any pre-existing mental state problems Plaintiff may have suffered;

c. Problematic diagnostic formulation and labeling of reported symptoms;

d. Inadequate knowledge and/or investigation of important aspects of Plaintiff's functioning; and

e. Lack of assessment or adequate assessment of any intentional misreporting of symptom severity or intentional misattribution of causes of distress.

12. Further indicating the need to conduct a forensic psychiatric examination of Plaintiff, the materials I have reviewed indicate that those who have examined and treated Plaintiff have not utilized forensic psychiatric evaluation methodology specifically employed to evaluate emotional distress damages claims. Forensic psychiatry is a sub-specialty of psychiatry, which contains a specialized body of knowledge, and which employs specialized assessment techniques, toward reliably addressing psychiatric-legal questions. The evaluation methodology used for the purpose of treating individuals particularly differs in substantial and important ways from that which is used to form reliable and accurate conclusions regarding psychiatric-legal issues about which a mental health professional is asked to opine.

13. ██████████████████████████████████████████████████████ ██████████████████████████████████████████. Assessment to determine whether an individual is vocationally disabled or qualifies for receipt of Workers' Compensation

benefits is not, however, identical to or a valid replacement for assessment conducted to determine an individual's mental state specifically in relation to emotional distress damages she or he claims.

14.     Standard components of a forensic psychiatric examination include, but are not limited to:

a. A psychiatric history, which includes investigation of known and suggested psychiatric problems an evaluee has experienced;

b. A medical history, which includes investigation of:

    i. The prescription of medication used or that may be used to treat mental state difficulties;

    ii. The presence of medical problems whose symptoms overlap with or resemble those also produced by psychiatric conditions;

    iii. The presence of medical problems which secondarily induce distress as a function of knowledge of infliction with them; and

    iv. The receipt of treatment for medical problems which may produce or produces effects that resemble those produced by psychiatric conditions;

c. A trauma history, including investigation of exposure to and the impact of known and suggested traumas which an evaluee has experienced, and of exposure to and the impact of traumas which commonly occur during childhood and adulthood;

d. A substance use history;

5

e. A history of an individual's functioning in major life spheres, including of any significant difficulties in doing so;

f. An investigation of specifically reported or presented symptoms, including of their chronology, their time of onset and course over time, the ways they manifest, and how they affect an individual's life;

g. An investigation of exposure to and the impact of contemporary stressors other than alleged conduct which is a component of the litigation in which she or he seeks emotional distress damages; and

h. An investigation of the presence of relevant or suggestively relevant personality features that may problematically affect how an evaluee perceives and experiences certain types of interactions and situations.

15. The scope of a forensic psychiatric evaluation that must be performed, including the types of questions to be asked during a forensic psychiatric examination, to permit a mental health evaluator to form reliable and accurate conclusions regarding an evaluee's mental state and associated psychiatric-legal issue(s) is a medical, specifically a forensic psychiatric, determination, that requires the exercise of professional expertise and judgment.

16. Limiting the scope of forensic psychiatric inquiry risks compromising a forensic psychiatric evaluator's ability to reach reliable and accurate conclusions. The extent and nature of this risk is a function of the extent and nature of the limitations imposed. Physicians of most specialties employ their specialized training and experience in determining the scope and form of inquiry required to reliably and accurately assess the difficulties they evaluate. Preventing, for example, a cardiologist from asking about such symptoms as jaw pain and stomach queasiness would potentially significantly interfere with her or his detection of the presence or appreciation

of the nature of an individual's cardiac dysfunction. Preventing, for example, a neurologist from asking about such seemingly non-relevant phenomena as eye tearing and muscle weakness would potentially significantly interfere with her or his ability to correctly diagnose an individual's headaches. Similarly, preventing a forensic psychiatrist from: (i) taking a complete trauma history, including investigating exposure to all commonly occurring types of trauma and any types of trauma an evaluee suffered during her or his earlier years, (ii) exploring manifestations of disturbances of mood and/or anxiety throughout an evaluee's life, or (iii) investigating the presence and impact of contemporary life stressors other than alleged conduct which is a subject of an evaluee's litigation, would potentially produce substantial misunderstanding of the nature and/or origins of an evaluee's distress. Investigating these aspects of an evaluee's life constitutes standard and centrally important elements of psychiatric and forensic psychiatric evaluation.

17. Forensic psychiatric evaluators employ specialized examination methodology in assessing the presence, nature, severity, and origins of evaluee mental state difficulties. Effective assessment of such generally extends well beyond asking concrete, directed questions about reported symptoms and, for example, includes assessment of an evaluee's insight and how any limits or deficits of such may shape how she or he understands the origins of her or his distress. Restricting or largely restricting a forensic psychiatric evaluator to only making inquiries about matters which an evaluee or legal professionals regard as relevant or necessary potentially reduces an examination to one which is effectively an examination in name only. To reliably and accurately ascertain the presence, nature, severity, and origins of an evaluee's mental state difficulties, a forensic psychiatric evaluator must be free to obtain and examine data which the evaluator in his or her professional judgment considers important or potentially important for such determination.

18. The length of a forensic psychiatric examination is similarly a function of: (i) a forensic psychiatrist's expertise and judgment regarding the nature of an examination that must be performed to permit forming reliable conclusions regarding an evaluee's mental state and the associated psychiatric-legal issue(s) being addressed, and (ii) evaluee-related factors.

19. Evaluee-related factors that influence the length of a forensic psychiatric examination include, for example: the nature of an evaluee's life history, including an evaluee's trauma history and stressor history, the latter which includes both externally-environmentally based stressors and internally based stressors, such as, for example, medical problems or conditions; the nature of an evaluee's psychiatric history, both known and suggested; the degree of an evaluee's psychological insight and ability to address mental state issues with an evaluator; the complexity of the forensic and diagnostic issues being addressed; the nature of an evaluee's communication style, for example, directly responsive or tangential; and the degree of an evaluee's cooperation with an examination.

20. I seek the Court's permission to examine Plaintiff for eight hours excluding examination breaks, which I will make liberally available. I intend to examine Plaintiff solely for the amount of time that in my judgment allows me to fulfill my professional responsibility to reliably and accurately assess her mental state. I routinely examine individuals who seek recovery for emotional distress damages for this amount of time. Such an examination length is common amongst forensic psychiatrists.

21. A forensic psychiatric examination consists of far more than asking questions about a list of symptoms. It is a finely-tuned process which assists an evaluator in gaining an appreciation of a person, including how she or he perceives and experiences others and her or his environment. An evaluee's stressor, trauma, developmental, interpersonal, employment, marital-relational,

medical, substance use, and psychiatric history are to various degrees and in various ways reviewed, and her or his contemporary emotional and cognitive state and functioning are assessed. The imposition of an artificial, non-psychiatrically based time limitation upon a forensic psychiatric examination impedes a forensic psychiatric evaluator's ability to learn important or potentially important information about an evaluee. Such a limit may further cause an evaluator, as he or she rushes to complete an examination within the allotted time, to alter the way he or she inquires about various subjects, compromising or potentially compromising the utility of his or her investigation. The way in which questions are asked and information is sought importantly influences the efficacy of an evaluator's data gathering.

22. I only ask forensic psychiatric evaluees questions or interact with forensic psychiatric evaluees in ways which in my professional opinion will facilitate my obtaining information that will promote or potentially promote my reaching reliable and accurate opinions regarding the psychiatric-legal issue(s) I am addressing.

23. I appreciate that participation in the process of litigation, including undergoing a forensic psychiatric evaluation and being asked about personal aspects of one's life, is inherently stressful. Recognition of such, and my extensive experience interviewing and treating those who have suffered traumatic events, including acts of extreme violence, informs how I interview those pursuing trauma-related legal claims. This includes, for example, pacing an examination in accordance with an evaluee's real-time mental state, which often substantially supports an evaluee during an examination, while also contributing to an examination's length.

24. I never wish or attempt to cause an evaluee discomfort. An evaluee's experiencing such cannot, however, always be entirely avoided. Discussing disturbing events or circumstances is expectedly upsetting. When I deem it important to inquire about aspects of an evaluee's life

which are uncomfortable for her or him to address, I do so respectfully, with sensitivity to an evaluee's emotional state.

25. From my review of records, I am aware of the nature of the distress Plaintiff has reported and presented. These materials do not, however, describe Plaintiff as extraordinarily fragile and unable to be examined. Consistent with such, she was able to manage being deposed for many hours, in the presence of many attorneys. In contrast to her deposition and interviews conducted of her in other settings, I do not intend to ask her to extensively detail or recount the alleged conduct to which she claims she was subjected.

26. I further seek the Court's permission to audio record my examination of Plaintiff. I regularly audio record forensic psychiatric examinations I conduct of those pursuing emotional distress damages. Forensic psychiatrists commonly audio record their examinations. Audio recording an examination provides transparency regarding what transpired during it.

27. The audio recording would be done by an independent, third party professional audiographer who would be the sole individual who controls the recording equipment and media. To protect Plaintiff's privacy, the audiographer would not be present during the examination or listen to the recording as it was occurring. The audiographer would only enter the room where the examination was being conducted to turn the recording equipment on and off.

28. To maintain the integrity of the recording, the audiographer would at all times retain the master, *i.e.*, original, recording. To further protect both the integrity of the recording and Plaintiff's privacy, all parties would agree to restrict use, possession, and disclosure of the contents of the recording to solely the attorneys who are litigating the specific civil action for which the audio recording was created, and their legal support staff, and myself, Stuart Kleinman, M.D., unless otherwise ordered by a court or required by any applicable law or governing entity.

10

29.    I thank the Court for its consideration of my Declaration.

Dated: February 11, 2026                  /s/   Stuart Kleinman, M.D.
       New York, New York                 Stuart B. Kleinman, M.D.