UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

TROOPER 1,

Plaintiff,

v.

NEW YORK STATE POLICE, ANDREW CUOMO, MELISSA DEROSA and RICHARD AZZOPARDI,

Defendants.

**MEMORANDUM AND ORDER**

22-CV-00893 (LDH)(TAM)

LASHANN DEARCY HALL, United States District Judge:

Trooper 1 ("Plaintiff") brings the instant action against New York State Police ("NYSP"), Andrew Cuomo, Melissa DeRosa, and Richard Azzopardi (together with Andrew Cuomo and Melissa DeRosa , "Individual Defendants") alleging discrimination and retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment against Defendant Cuomo, discrimination and retaliation in violation of New York State Human Rights Law, N.Y. Exec. Law § 290 ("NYSHRL") against Individual Defendants, discrimination in violation of New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 ("NYCHRL") against Defendants Cuomo and DeRosa, retaliation in violation of NYCHRL against Individual Defendants, and discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq*. ("Title VII") against Defendant NYSP. Defendant Cuomo moves for partial judgment on the pleadings as to Plaintiff's retaliation in violation of the Equal Protection Clause of the Fourteenth Amendment claim.

**BACKGROUND[1]**

Plaintiff, under the pseudonym of Trooper 1, is a member of the NYSP. (Second Am. Compl. ("SAC") ¶ 11, ECF No. 71.) On November 4, 2017, Plaintiff was assigned to help secure one of Defendant Cuomo's press conferences held on the Robert F. Kennedy Bridge. (*Id.* ¶ 21.) At the press conference, Defendant Cuomo initiated a brief conversation with Plaintiff. (*Id.*) After this conversation, Defendant Cuomo requested that Plaintiff be transferred to the Protective Service Unit (PSU) – Defendant Cuomo's personal security unit. (*Id.* ¶ 22.) Plaintiff, however, was ineligible to transfer to the PSU because she had only been working at NYSP for two years, whereas the PSU required three years' experience. (*Id.* ¶ 26.) Plaintiff learned, however, that to facilitate her transfer to the PSU, Defendant Cuomo had worked to change the criteria to require only two years' experience. (*Id.* ¶¶ 27-28, 30.) Plaintiff applied and was transferred to the PSU in January 2018. (*Id.* ¶ 29.)

Once Plaintiff joined the PSU, Defendant Cuomo soon began asking Plaintiff about her personal life. (*Id.* ¶ 33.) In September 2018, Defendant Cuomo offered Plaintiff a tour of the official Governor's Mansion "unless it is against protocols." (*Id.* ¶ 34.) Plaintiff understood Defendant Cuomo's statement, along with his accompanying laugh, as an invitation to see his private quarters, which made Plaintiff feel uncomfortable. (*Id.* ¶ 35.) According to the Complaint, overtime, Defendant Cuomo's conversations with Plaintiff became increasingly sexual. (*Id.* ¶ 36.) On at least one occasion, Defendant Cuomo asked Plaintiff about her relationships. (*Id.*) Plaintiff disclosed that she intended to get married to which Defendant Cuomo asked Plaintiff why and commented that marriages "always ends in divorce, and you lose money, and your sex drive goes down." (*Id.*) Once again, Plaintiff felt uncomfortable by

[1] The following facts are taken from the complaint and are assumed to be true for the purpose of deciding the instant motion.

Defendant Cuomo's comments. (*Id.* ¶ 37.) In another instance, Plaintiff was escorting Defendant Cuomo from his Mount Kisco residence to his New York City office. (*Id.* ¶ 39.) As part of her duties, Plaintiff was to accompany Defendant Cuomo as he rode the elevator up to his office. (*Id.*) Whilst in the elevator, Defendant Cuomo placed a finger on Plaintiff's neck and ran it down her spine to the middle of her back, including touching her bra clasp. (*Id.*) He told her, "[h]ey you." (*Id.*) At a holiday party at the end of 2018, Defendant Cuomo told Plaintiff that she should not share their conversations with another trooper and then said, "as a matter of fact, don't tell anyone about our conversations." (*Id.* ¶ 38.)

On April 18, 2019, Plaintiff was transferred to Defendant Cuomo's travel team. (*Id.* ¶ 40.) During the summer of 2019, Plaintiff was outside of Defendant Cuomo's residence at Mount Kisco. (*Id.* ¶ 43.) Plaintiff asked Defendant Cuomo if he needed anything, to which Defendant Cuomo replied by asking "[c]an I kiss you?" (*Id.*) Due to Defendant's reputation for retaliation against anyone who crossed him, Plaintiff, fearing jeopardizing her employment, replied "sure." (*Id.* ¶ 44-45.) Defendant Cuomo then kissed Plaintiff on the cheek and acknowledged that the kiss was against the rules. (*Id.* ¶ 45.)

As a result of these experiences, Plaintiff began developing a strategy to resist Defendant Cuomo's advances while keeping her position in the PSU. (*Id.* ¶ 46.) In August 2019, Plaintiff was driving to an event with the head of the PSU and Defendant Cuomo when Defendant Cuomo asked Plaintiff why she did not "wear a dress." (*Id.* ¶ 48.) Plaintiff responded that she did not wear a dress because it would make carrying her firearm impossible. (*Id.*) When Defendant Cuomo continued to ask Plaintiff questions regarding her attire, the head of the PSU interjected that Plaintiff was dressed appropriately. (*Id.*) Once they arrived at the event, Plaintiff spoke to another trooper and informed them of the comments made by Defendant Cuomo. (*Id.* ¶ 49.)

Plaintiff then immediately received a message from the head of the PSU that said "stays in [the] truck," which Plaintiff understood to mean that she should not share Defendant Cuomo's comments with others. (*Id.* ¶ 50.) In another instance around the same time, while Plaintiff was posted in the command center in the lower level of the Governor's Mansion, Defendant Cuomo invited her "upstairs." (*Id.* ¶ 51.) She understood this to be an invitation to his bedroom on the second floor of the Mansion. (*Id.*)

On September 23, 2019, while holding the door for Defendant Cuomo at an event at Belmont racetrack, Defendant Cuomo placed the palm of his hand on her belly button and slid it across her waist to her right hip where her gun was holstered. (*Id.* ¶ 53). Plaintiff felt violated by Defendant Cuomo's action. (*Id.* ¶ 54.) On September 28, 2019, Defendant Cuomo approached Plaintiff, asked her age, and, after her response, said, "you're too old for me." (*Id.* ¶ 55.) Defendant Cuomo then asked Plaintiff's opinion as to what age gap Plaintiff thought the public would be willing to tolerate in his relationship. (*Id.* ¶ 56.) After responding, Plaintiff jokingly offered to be Defendant Cuomo's matchmaker and asked what his requirements would be. (*Id.* ¶ 57.) Defendant Cuomo responded that he needed someone who "can handle pain." (*Id.*) In October 2019, whilst at an event, Defendant Cuomo approached Plaintiff's car, walked up to the window, and asked her for a kiss. (*Id.* ¶ 58.) Plaintiff told the Governor that she was sick. (*Id.* ¶ 59.) On December 26, 2019, Plaintiff was promoted to Investigator. (*Id.* ¶ 60.) On March 5, 2020, while at Farmingdale Republic Airport, Defendant Cuomo approached Plaintiff for a hug and kiss. (*Id.* ¶ 61.) Plaintiff tried to deter by asking "You don't have COVID, do you?" (*Id.*)

In late 2020, news of the sexual harassment claims against the Defendant Cuomo started to become public. (*Id.* ¶ 62.) On December 5, 2020, Lindsey Boylan revealed that Defendant

Cuomo had "sexually harassed [her] for years." (*Id.* ¶ 63.) This initiated a series of inquiries by the press, including an inquiry from Times Union reporter about the circumstances of Plaintiff's transfer to the PSU. (*Id.* ¶ 64.) Plaintiff alleges that Defendant Cuomo and his associates responded with a false and misleading statement that did not include information about his request that she be transferred, nor that the eligibility criteria had been changed to specifically accommodate her transfer. (*Id.* ¶ 65.) Plaintiff claims that Defendant DeRosa, Defendant Cuomo's chief of staff, yelled at the editor of the paper and accused him of sexism for making the inquiry. (*Id.* ¶¶ 14, 66.)

Notwithstanding the public inquiry into Defendant Cuomo's alleged sexual harassment, Plaintiff alleges Defendant Cuomo continued to harass her. (*Id.* ¶ 67.) On January 23, 2021, Plaintiff was part of Defendant Cuomo's motorcade to the William Reid New York City Housing Authority development in Brooklyn. (*Id.* 68.) Once the motorcade was nearby, Defendant Cuomo exited his vehicle. (*Id.* ¶ 69.) Defendant Cuomo then approached Plaintiff, blocked the door preventing Plaintiff from leaving her vehicle, and spread his arms. (*Id.* ¶ 71.) Plaintiff understood this to mean that Defendant Cuomo wanted her to get out of the vehicle and give him a hug. (*Id.*) Plaintiff did so. (*Id.*) On June 27, 2021, Plaintiff was part of Defendant Cuomo's security detail upon his arrival at Grabeski Airport for a private event. (*Id.* ¶ 72.) Upon seeing Plaintiff, who was wearing sunglasses at the time, Defendant Cuomo said "[l]ook at you with your glasses looking like ohwee." (*Id.*) Plaintiff understood to mean that Defendant Cuomo thought she looked attractive in her sunglasses. (*Id.*)

On May 19, 2021, Plaintiff testified in an official investigation into Defendant Cuomo's sexual harassment. (*Id.* ¶ 152.) In August 2021, Defendant Cuomo resigned after the

investigation had determined he had sexually harassed nearly a dozen women, created a hostile environment, and engaged in unlawful retaliation. (*Id.* ¶ 13.)

On September 28, 2021, Plaintiff sent a demand letter asserting her legal rights to Defendants Cuomo and DeRosa's legal counsel. (*Id.* ¶ 153.) She claims she was retaliated against when Defendant DeRosa accused her of extortion and threatened legal action. (*Id.* ¶ 154.) On February 10, 2022, Defendant Cuomo announced that he would be filing ethics charges against the attorneys who investigated him, along with a warning that the list of attorneys "may expand." (*Id.* ¶ 155.) Defendant Cuomo also announced on Twitter that he will make "'submissions' to 'relevant district attorneys' related to 'perjury' and 'witness tampering.'" (*Id.* ¶156.)

Defendant Cuomo harassed other women as well. (*Id.* ¶¶ 75-143.) According to the Complaint, these other women, including Plaintiff, were afraid to reject Defendant Cuomo's advancements or complain due to fear of retaliation. (*Id.* ¶¶ 144-45.) Plaintiff also claims that Defendant Cuomo worked with his brother, CNN anchor Chris Cuomo, to help unearth negative information about one of Defendant Cuomo's victims. (*Id.* ¶ 149.) Moreover, Plaintiff alleges that Defendant and his associates attacked the New York Attorney General and the investigators conducting the investigation into the harassment claims against him. (*Id.* ¶ 150.)

On February 17, 2022, after Trooper 1 filed this action, Defendant Richard Azzopardi, spokesperson for the Governor, tweeted a statement accusing Plaintiff of an attempt to "'extort' a settlement and 'cheap cash extortions.'" (*Id.* ¶ 159.)

**STANDARD OF REVIEW**

A motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6). *Bank of*

*New York v. First Millennium*, 607 F.3d 905, 922 (2d Cir. 2010) (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)) ("The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings."). To withstand a motion to dismiss, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). As with a motion to dismiss under Rule 12(b)(6), a motion for judgment on the pleadings pursuant to Rule 12(c) "must be decided solely on the pleadings before the court, in addition to any materials implicitly or explicitly incorporated by reference into those pleadings." *U.S. v. Certain Real Property and Premises Known as 44 Autumn Ave., Brooklyn, N.Y.*, 156 F.R.D. 26, 30 (E.D.N.Y. 1994). Because the Second Amended Complaint specifically references the February 10, 2022 and February 17, 2022 Tweets,[2] the Court may consider them in deciding this motion.

## DISCUSSION

Defendant Cuomo argues that because Plaintiff fails to plead that Defendant Cuomo was acting under color of state law, Plaintiff's Equal Protection retaliation claim fails. (Mem. Law Supp. Mot. Partial J. Pleadings ("Mot.") at 6-7, ECF No. 516.) "'It is axiomatic that the First and Fourteenth Amendments, and § 1983, apply only to state actors.'" *Rodriguez v. Clinton*, 357 F. App'x 355, 356 (2d Cir. 2009) (citing *Leeds v. Meltz,* 85 F.3d 51, 54 (2d Cir.1996)). Thus,

[2] A Tweet is message posted to the popular social media network Twitter/X. *See Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 456 n.6 (E.D.N.Y. 2011) ("Twitter is a social networking service that allows its users to post messages using short communications called 'tweets,' and to read the tweets of other users. Users can, among other things, monitor, or 'follow,' other users' tweets.").

"the conduct at issue 'must have been committed by a person acting under color of state law.'" *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Said another way, the actor "must have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997) (internal quotation omitted). Plaintiff alleges that Defendant Cuomo retaliated against her beginning in, at the very earliest, February 2022. (SAC ¶¶ 155-159.) At that time, however, Defendant Cuomo had already resigned from office following an investigation that determined that Defendant Cuomo had sexually harassed women, created a hostile work environment, and engaged in unlawful retaliation. (*Id.* ¶ 13.) Thus, the question is whether Defendant Cuomo was acting under color of state law following his resignation.

A private entity acts under color of state law only where:

> (1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state ('the compulsion test'); (2) when the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the state', or the entity's functions are 'entwined' with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity 'has been delegated a public function by the [s]tate', ('the public function test').

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 255-57 (2d Cir. 2008) (per curiam) (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Ath. Ass'n*, 531 U.S. 288, 296 (2001)). The Court considers each test in turn.

A private entity is coerced or controlled by the state when the state has exercised its power to control the entity's actions. *See McGugan v. Aldana-Bernier*, No. 11–cv–00342, 2012 WL 1514777, at *3 (E.D.N.Y. 2012), *aff'd*, 752 F.3d 224 (2d Cir. 2014) (finding that an entity is a state actor under the compulsion test where the entity acts "pursuant to the coercive power of

the state, or is controlled by the state" (internal quotations omitted)). Here, Plaintiff has not alleged any coercion or control by the state that mandated Defendant Cuomo's alleged retaliatory conduct. Thus, the Court finds that Defendant Cuomo's alleged retaliatory conduct was not coerced or otherwise controlled by the state. *See McGugan*, 2012 WL 1514777, at *3-4.

A private entity acts under color of state law under the joint action test when: (1) the state engages in conduct that provides significant encouragement to the entity; (2) the private entity is a willful participant in joint activity with the state; or (3) the entity's functions are entwined with state policies. *Sybalski*, 546 F.3d at 257 (defining when an entity is considered a state actor under the joint action test). A private entity is a willful participant in joint activity with the state when the two parties act with a shared common goal to violate a plaintiff's rights. *See Mizrahi v. City of New York*, 15-CV-6084, 2018 WL 3848917 *7 (E.D.N.Y. 2018) (citation omitted). And, private entity becomes a state actor when its functions are entwined with responsibilities traditionally or exclusively reserved to the state. *See Sybalski*, at 259; *Perez v. Sugarman*, 499 F.2d 761, 765 (2d Cir. 1974). Here, Plaintiff has not alleged any encouragement that the state may have made with respect to Defendant Cuomo's actions. Similarly, Plaintiff does not allege that Defendant Cuomo and the state shared a common goal to violate Plaintiff's rights. Nor does Plaintiff allege that Defendant Cuomo's function was entwined with any responsibility traditionally or exclusively reserved to the state. Thus, Plaintiff fails to plead that Defendant Cuomo was acting under color of state law under the joint action test.

"Under the public function test, 'the exercise by a private entity of powers traditionally *exclusively* reserved to the [s]tate' can constitute 'state action.'" *Sybalski*, 546 F.3d at 259 (citing *Jackson v. Metro. Edison Co.,* 419 U.S. 345, 352 (1974)). Plaintiff again fails to allege that Defendant Cuomo's Tweets, the allegedly retaliation, were somehow an exercise of a function

traditionally exclusively reserved to the state. Therefore, Defendant Cuomo was also not acting under color of state law under the public function test. Because Defendant Cuomo was not acting under color of state law pursuant to the three tests articulated in *Sybalski*, Plaintiff's Equal Protection claim fails.

Plaintiff attempts to circumvent Defendant Cuomo's public resignation by arguing that following his resignation, Defendant Cuomo "possessed immense unofficial influence within the State Police . . . that he could use his influence in the State Police to ruin her career." (Pl.'s Mem. Law Opp'n. ("Pl.'s Opp.") at 12, ECF No. 518.) But Plaintiff's argument underscores the deficiencies in Plaintiff's claim. Any power Defendant Cuomo retained after his resignation did not arise from the state and thus was "unofficial." Said another way, it does not arise "by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Monsky*, 127 F.3d at 245 (2d Cir. 1997) (internal quotes and citation omitted).

Plaintiff seeks to avoid the Court's conclusion by asking the Court to find that Defendant Cuomo was acting under color of state law pursuant to apparent state power through his "unofficial influence." (Pl.'s Opp. at 11-13.) The Court declines to do so. It is true that an actor who acts with apparent power of the state may be considered as acting under color of state law. *U.S. v. Temple*, 447 F.3d 130, 138 (2d Cir. 2006). To be considered as acting under color of state law under apparent power, the actor must invoke authority given to him by the state. *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir. 1994). And, that invocation of state authority must be believable based on the circumstances at the time. *U.S. v. Temple*, 447 F.3d 130, 139 (2d Cir. 2006).[3]

[33] *Temple* concerned the propriety of a criminal charge that required the defendant "oppress[ed] a person under color of law." *United States v. Temple*, 447 F.3d 130, 134 (2d Cir. 2006) (citing 26 U.S.C. § 7214). The analysis of whether a person acts under color of law pursuant to the criminal charge is the same as § 1983. *See id*. (citing cases analyzing whether a person acts under color of law for purposes of a § 1983 claim).

Defendant Cuomo was not acting pursuant to any apparent power at the time he made the Tweets at issue. A comparison to *Pitchell v. Callan*, 13 F.3d 545 (2d Cir. 1994) is instructive. In *Pitchell*, the Second Circuit found that an off-duty police officer did not act under color of state law when he fired his gun at someone. *Id*. at 548. Critical to the Second Circuit's analysis was that the police officer did not "invok[e] the authority of the police department" when he discharged his gun. *See Pitchell*, 13 F.3d at 548. Similarly, Defendant Cuomo here did not invoke the authority of the seat or powers of the governor when he made the Tweets at issue. Thus, he was not acting under any pretended authority. *See id.*; *see also Bonsignore v. City of New York*, 683 F.2d 635, 638 (2d Cir. 1982) (finding off-duty police officer was not acting under color of state law where his actions were not "committed in the performance of any actual or pretended duty" (quotations omitted)); *see also Williams v. New York*, No. 20CV5113, 2022 WL 3647276, at *4 (E.D.N.Y. Aug. 24, 2022) (police report made by government officials was not made with apparent power where defendants did not invoke any state authority). Even if Defendant Cuomo invoked the state's authority, any invocation could not clothe Defendant Cuomo's Tweets in color of state law because the invocation could not be credible because the Tweets were made after Defendant Cuomo's extremely public resignation. *See also U.S. v. Temple*, 447 F.3d at 138-39 (finding that an IRS agent's threats to initiate IRS audits against arresting police officers were made under color of state law where officers knew the agent was employed by the IRS and "had no reason to doubt that she would carry out her threats"). Because the Court finds that Defendant Cuomo did not invoke any state authority, and that even if he did, any such invocation was not credible, Defendant Cuomo was not acting under color of state law even under apparent power.

* * *

In an effort to save her claim, Plaintiff advances several other arguments, each of which are unavailing. Plaintiff first argues that Defendant Cuomo's motion for partial judgment on the pleadings is procedurally improper because extrinsic evidence is necessary to adjudicate the issues such that the motion is best decided as a motion for summary judgment. (*See* Pl.'s Opp. at 5-7.) The Court disagrees. It is true that Defendant Cuomo attaches his February 10, 2022 Tweet, (Decl. T. Trzaskoma, Ex. A, ECF No. 517-1), and Defendant Azzopardi's February 17, 2022 Tweet, (Decl. T. Trzaskoma Ex. B, ECF No. 517-2), to the instant motion. However, these Tweets are clearly explicitly referenced in Plaintiff's SAC. (SAC ¶¶ 155-159.) Because they are explicitly referenced in Plaintiff's SAC, they are incorporated into Plaintiff's SAC, and thus the Court may consider them in deciding the instant motion. *See Certain Real Property and Premises Known as 44 Autumn Ave., Brooklyn, N.Y.*, 156 F.R.D. at 30 (holding that a Court can consider documents attached to or incorporated in a plaintiff's complaint in deciding a motion to dismiss). Besides these two Tweets, Plaintiff does not identify any other piece of evidence that Defendant Cuomo attempts to introduce in his motion. Indeed, it is Plaintiff who attempts to introduce extrinsic evidence in the form of a portion of Defendant Azzopardi's deposition transcript. (Decl. V. Licul Ex. 1, ECF No. 519-1.) But, as described above, the Court decides the instant motion solely on the question of whether Defendant Cuomo was acting under color of state law. Therefore, the Court need not address the factual issues raised by Plaintiff because they are relevant only to whether Defendant Cuomo was responsible for Defendant Azzopardi's February 17, 2022 Tweet, which was published following Defendant Cuomo's resignation. (*See* Pl.'s Opp. at 6.)

Plaintiff further attempts to transform the motion into a motion for summary judgment by arguing that the question of whether Defendant Cuomo was acting under color of state law will

"call on other parts of the discovery record." (Pl.'s Opp. at 6.) As for the evidence Plaintiff argues the Court should consider in deciding the instant motion, Plaintiff identifies the full context of the February 17, 2022 Tweet and the extent of Defendant Cuomo's ongoing influence within the State Police. (*Id*. at 6-7.) The Court disagrees. In light of the Court's finding that Defendant Cuomo was not acting under color of state law as a matter of law (*supra*), the Court rejects Plaintiff's argument that the Court needs additional evidence.

Plaintiff also urges the Court to deny Defendant's motion on judicial efficiency grounds because Defendant could have, but chose not to, raise the same arguments earlier. (Pl.'s Opp. at 7.) The Court disagrees. It is in favor of judicial efficiency grounds to resolve straightforward claims in order to narrow the true issues for trial. *See Shein v. New York City Dep't of Edu.*, No. 15CV4236, 2016 WL 676458, at *8 (S.D.N.Y. Feb. 18, 2016) ("Here, convenience and judicial economy weigh heavily in favor of resolving the straightforward claims that can be resolved as a part of this motion to dismiss."). Plaintiff does not argue that Defendant is otherwise precluded from filing the instant motion. Accordingly, the Court declines to deny Defendant's motion on judicial efficiency grounds.

**CONCLUSION**

For the aforementioned reasons, the Court finds Plaintiff has failed to allege that Defendant Cuomo was acting under color of state law at the time of the alleged retaliatory actions. Accordingly, Defendant Cuomo's motion for partial judgment on the pleadings is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
September 30, 2026

/s/ LDH
LASHANN DEARCY HALL
United States District Judge