UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------X
TROOPER 1,

Plaintiff,

-against-

NEW YORK STATE POLICE *et al.*,

Defendants.
--------------------------------------------------------X

**MEMORANDUM AND ORDER**
22-CV-893 (LDH) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

Currently before the Court is Defendants' motion (1) to compel Plaintiff to amend her interrogatory responses and (2) to reopen discovery and Plaintiff's deposition "for the limited purpose of following up on damages information disclosed to Defendants after the close of discovery." Mem. in Supp. of Mot. to Compel ("Mem."), ECF 565-1, at 1 (capitalization altered); Mot. to Compel ("Mot."), ECF 564. Plaintiff opposes the motion. *See* Opp'n, ECF 565-5; Reply, ECF 565-17.[1] For the reasons discussed herein, the motion is granted in part and denied in part.

## RELEVANT BACKGROUND

Familiarity with the factual background and general procedural history of this case is presumed. *See, e.g.*, *Trooper 1 v. New York State Police*, No. 22-CV-893 (LDH) (TAM), 2025 WL 2959061, at *1–3 (E.D.N.Y. Oct. 17, 2025) (the "October 2025 Discovery

---

[1] All citations in this order are to the sealed versions of the parties' briefing papers as filed in connection with ECF 565. Public versions of these filings are available on the docket at ECF 569–74. *See* Mem. in Supp. of Mot. to Compel, ECF 569; Noonan Decl., ECF 570; Opp'n, ECF 571; Licul Decl., ECF 572; Reply, ECF 573; Trzaskoma Decl., ECF 574.

Order"), *aff'd*, July 16, 2026 ECF Order. The Court reviews the timeline of events leading to the instant motion practice to contextualize the parties' arguments.

**I. Interrogatory Nos. 9, 10, & 16**

On July 19, 2023, Defendant Cuomo served amended interrogatories on Plaintiff, including Interrogatory Nos. 9 and 10. Noonan Decl., ECF 565-2, ¶ 4. These interrogatories read:

> **Interrogatory No. 9:**
>
> State whether you claim to have suffered any mental or emotional anguish, pain, suffering, or distress as a result of any Defendant's alleged acts or omissions. If so, describe the factual basis for this claim in detail, providing a description of such mental or emotional anguish, pain, suffering, or distress and the frequency with which it was or is occurring.
>
> **Interrogatory No. 10:**
>
> Identify and provide treatment dates for each and every health care professional and/or entity who has treated you for any mental or emotional anguish, pain, humiliation, distress, or suffering as a result of any Defendant's alleged acts or omissions, including, but not limited to, physicians, counselors, psychologists, hospitals, clinics, and health care centers.

Licul Decl., Ex. 1, ECF 565-7, at 10, 12.

On August 2, 2023, Plaintiff responded to these interrogatories. Licul Decl., ECF 565-6, ¶ 2. As to Interrogatory No. 9, Plaintiff stated that she has "suffered severe and extensive emotional distress," which has manifested through, *inter alia*, "trouble breathing, sweating, heart pounding, and nausea," as well as "migraines, insomnia, gastrointestinal issues, decreased appetite, a clenched locked jaw, neck pain," and

severe fatigue.[2] Licul Decl., Ex. 1, ECF 565-7, at 11. Plaintiff further stated that she has sought "psychotherapy and medical treatment for these conditions," including talk therapy and medication. *Id.* As to Interrogatory No. 10, Plaintiff responded, "solely with regards to the emotional distress damage she has experienced, and treatment she has received because of Cuomo's sexual harassment," with a list of eight medical providers, including two neurologists and a chiropractor. *Id.* at 12–13. Plaintiff further referred Defendant to her therapy and medical records. *Id.* at 13. Plaintiff did not provide treatment dates for these professionals. *See generally id.*

On September 19, 2024, Defendant Cuomo served Plaintiff with another set of interrogatories, including Interrogatory No. 16, which states:

> **Interrogatory No. 16:**
>
> For the time period of January 1, 2017 through the present, identify all Health Care Providers who have treated You or with whom You have consulted Concerning any mental health or emotional health issues, including but not limited to the health care provider (s) who prescribed Lexapro and Xanax as reflected in the June 10, 2019 notes of Dr. Kenneth Marvin, found at Bates number PL023148.

Licul Decl., Ex. 2, ECF 565-8, at 4; *see* Noonan Decl., ECF 565-2, ¶ 11. On October 21, 2024, Plaintiff responded to Interrogatory No. 16, objecting that it was duplicative and referring Defendant to her response to Interrogatory No. 10 and her document productions through September 30, 2024. Licul Decl., Ex. 2, ECF 565-8, at 5.

---

[2] The Court notes that, in the briefing, the parties treated these symptoms and some of the medical treatment that Trooper 1 sought as confidential under the confidentiality order in this case and that this information is, accordingly, redacted in the public versions of the parties' filings. *See, e.g.*, Licul Decl., Ex. 1, ECF 572-1, at 11. Given the discussion below about how to interpret the interrogatories at issue, in this opinion, the Court includes some of Plaintiff's specific symptoms and treatment because this information is relevant to the Court's analysis of the motion in that it provides context and establishes that Defendants have been on notice since these interrogatories were answered in 2024 that Plaintiff was attributing a wide range of physical symptoms to her emotional distress.

**II. Plaintiff's Production of Medical Records**

On September 30, 2025, the then-operative deadline to close fact discovery, Defendant Cuomo noticed a document subpoena directed to the New York State Health Insurance Program (a/k/a the New York State Insurance Fund) (hereinafter "NYSIF"), seeking records relating to Plaintiff's health insurance claims, to which Plaintiff objected. *See* Oct. 15, 2025 Def. Letter, ECF 446-1, at 3; *see also* Oct. 3, 2025 Pl. Letter, ECF 443 (requesting that the Court quash five subpoenas issued between September 23 and 30, 2025); Sept. 17, 2025 ECF Order (so-ordering Defendant Cuomo's requested subpoena to the New York State Workers' Compensation Board, to which Plaintiff did not object).

On October 17, 2025, the Court issued an order, largely rejecting Defendant Cuomo's efforts to extend the September 30, 2025 deadline to close fact discovery, but allowing discovery to remain open as to certain discrete issues (*i.e.*, the deposition of Plaintiff's treating talk therapist, Kiran Miner, and a related dispute regarding Plaintiff's redactions to Miner's treatment notes). *See* October 2025 Discovery Order, 2025 WL 2959061, at *5–6; Oct. 17, 2025 ECF Order. Among other issues Defendant Cuomo raised with the Court after discovery closed on September 30, 2025, but before the October 17, 2025 deadline to certify the close of fact discovery, were concerns regarding Plaintiff's production of medical records and whether such production was complete, which were raised in a letter filed on October 15, 2025. Oct. 15, 2025 Def. Letter, ECF 446-1, at 2–3.

At a follow-up conference held on December 5, 2025, counsel for Defendant Cuomo represented that on October 21, 2025, NYSIF responded to the subpoena, revealing names of certain medical providers who had treated Plaintiff for health concerns consistent with her physical symptoms of emotional distress stemming from Defendant Cuomo's alleged harassment, and that this information had not been

produced by Plaintiff in discovery to date. Dec. 5, 2025 Hr'g Tr., ECF 499, at 107:17–111:2. Discussion was held regarding Defendants' and the Court's concerns as to the adequacy of Plaintiff's medical-records production, given that, early on in the discovery process, the parties had agreed that Plaintiff could obtain records from her providers herself and produce them, rather than Defendants obtaining such records from providers directly, as is often done. *Id.* at 111:6–16, 113:23–114:5, 114:23–115:9; *see* Dec. 5, 2025 ECF Min. Entry & Order.

In light of this discussion, the Court reopened discovery on a limited basis to allow the parties to "ferret out issues concerning the failure to disclose medical records that may be relevant." Dec. 5, 2025 Hr'g Tr., ECF 499, at 141:3–8. Specifically, the Court found that there was "a significant gap in the discovery production pertaining to the Plaintiff's medical records, some of which do appear to be potentially relevant to alternative sources of her claimed complaint of disability and emotional distress." *Id.* at 141:14–21. The Court directed Defendants to provide "a targeted request for medical records for Plaintiff to consider" and for the parties to meet and confer as to that request. Dec. 5, 2025 ECF Min. Entry & Order.

On April 1, 2026, Defendant Cuomo filed a letter regarding, *inter alia*, the medical records issue. Def. Letter re: Status, ECF 527. Specifically, Defendant Cuomo stated that the parties had been "engaged in a substantial meet and confer process with Plaintiff to identify and address gaps in her production of medical records," including a December 12, 2025 request from Defendant Cuomo that Plaintiff "supplement and correct her incomplete interrogatory responses." *Id.* at 2. Defendant Cuomo represented that Plaintiff had "refused" to update her responses, and that the parties were at an impasse as to this dispute. *Id.* Further, Defendant stated that, "on March 2, Plaintiff informed us that she purportedly does not know most of the providers identified in the NYSIF

production," and that "Plaintiff later agreed that Governor Cuomo could subpoena these providers directly." *Id.* Shortly thereafter, Plaintiff filed a response, rebutting Defendant's characterizations of the meet-and-confer process and noting that, as to the NYSIF providers, "Trooper 1 served HIPAA authorizations on these providers nearly four months ago and, with a minor exception, these providers had no responsive records," but even so, "Trooper 1 ultimately agreed to permit Cuomo to seek the records a second time." Pl. Letter Mot. to Strike, ECF 529.

**III. The Instant Dispute**

On May 22, 2026, the parties filed a joint letter concerning a discovery dispute related to Plaintiff's interrogatory responses. *See* Letter, ECF 550-1. In response, the Court held a conference on June 5, 2026. *See* June 5, 2026 ECF Min. Entry & Order; *see also* June 5, 2026 Hr'g Tr., ECF 559. Discussion was held regarding whether the dispute "hinged on the parties' different interpretations of the interrogatories' text and how the Court is to determine . . . whether Plaintiff's responses to the interrogatories were 'incomplete or incorrect,' such that an evidentiary hearing may be required to determine whether Plaintiff is required to amend her interrogatory response under Rule 26(e)." June 5, 2026 ECF Min. Entry & Order; *see* June 5, 2026 Hr'g Tr., ECF 559, at 23:3–6 (The Court: "[A]s I sit here today, I have two parties with a very different understanding of what the question meant, and thus what the answer was, and whether or not they're in compliance or not.").

Further discussion was held as to whether the interrogatory dispute had been raised prior to the close of fact discovery and, if not, whether the issue had been properly preserved. *See* June 5, 2026 Hr'g Tr., ECF 559, at 38:9–39:13. Defense counsel represented that they saw the interrogatory issue as intertwined with the medical records production issue, and this had been preserved. *Id.* The parties were directed to

meet and confer to assess "whether the dispute could be resolved by stipulation and/or amended interrogatory responses." June 5, 2026 ECF Min. Entry & Order.

On July 6, 2026, the parties filed a letter, advising the Court that they remained at an impasse as to the interrogatories dispute, and that Defendants intended to "move on this issue" by the end of the month. Status Report, ECF 563. The Court directed the parties to brief the dispute and file their papers by August 19, 2026, which they did. *See* July 7, 2026 ECF Order; Mot., ECF 564; Letter Mot. for Leave to Seal, ECF 565 (attaching the parties' bundled briefing under seal).

**DISCUSSION**

**I. Legal Standards**

A party responding to an interrogatory request is required to answer each interrogatory, "separately and fully in writing under oath," to the extent the interrogatory is not objected to. Fed. R. Civ. P. 33(b)(3). Answers to interrogatories must be complete within themselves, and responses "that incorporate other documents by reference are strongly disfavored." *Trueman v. New York State Canal Corp.*, No. 1:09-CV-049 (LEK/RF), 2010 WL 681341, at *3 (N.D.N.Y. Feb. 24, 2010); *see id.* ("Reference to depositions, other answers to the interrogatories, other document production, the complaint itself, or any other documents are improper and thus unresponsive."); *see Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, No. 20-CV-10832 (AT) (SN), 2021 WL 5336970, at *1 (S.D.N.Y. Oct. 21, 2021).

Federal Rule of Civil Procedure 26(e) provides that parties who have responded to an interrogatory "must supplement or correct" their response "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R.

Civ. P. 26(e)(1)(A). "The purpose of the supplementation rule is to avoid ambush at trial and to assure that all material information has been disclosed." *Sandata Techs., Inc. v. Infocrossing, Inc.*, Nos. 05-CV-9546, 06-CV-1896 (LMM) (THK), 2007 WL 4157163, at *3 (S.D.N.Y. Nov. 16, 2007). "Information is incomplete or incorrect in some material respect if there is an objectively reasonable likelihood that the additional or corrective information could substantially affect or alter the opposing party's discovery plan or trial preparation." *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 274 F.R.D. 63, 77 (W.D.N.Y. 2011) (quotation marks omitted); *see* Fed. R. Civ. P. 26(e)(1)(A); *Yusupov-Millevoi v. Kingyum Transps. LLC*, 349 F.R.D. 491, 495 (S.D.N.Y. 2025). "The obligation to amend prior disclosures and discovery responses continues even after the conclusion of discovery." *Lujan v. Cabana Mgmt., Inc.*, 284 F.R.D. 50, 68 (E.D.N.Y. 2012); *see RVC Floor Decor, Ltd. v. Floor & Decor Outlets of Am., Inc.*, No. 18-CV-6449 (JS) (ARL), 2023 WL 2403258, at *12 (E.D.N.Y. Mar. 7, 2023) (collecting cases).

Rule 16(b)(4) allows a discovery schedule to be modified "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). In determining whether good cause exists, courts consider:

> (1) whether trial is imminent, (2) whether the request is opposed, (3) whether the non-moving party would be prejudiced, (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court, (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court, and (6) the likelihood that the discovery will lead to relevant evidence.

*Bakalar v. Vavra*, 851 F. Supp. 2d 489, 493 (S.D.N.Y. 2011) (collecting cases). The moving party "bears the burden of establishing good cause." *Jacobs v. New York City Dep't of Educ.*, No. 11-CV-5058 (MKB) (RML), 2015 WL 7568642, at *3 (E.D.N.Y. Nov. 24, 2015). "Whether good cause exists turns on the diligence of the moving party." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (quotation marks omitted). On the other hand,

"discovery should not be extended when there was ample opportunity to pursue the evidence during discovery." *Pharmacy, Inc. v. Am. Pharm. Partners, Inc.*, No. 05-CV-0776 (DRH) (AKT), 2008 WL 4415263, at *3 (E.D.N.Y. Sept. 24, 2008).

Rule 30 requires leave of court to reopen the deposition of a person who has already been deposed in a case. *See* Fed. R. Civ. P. 30(a)(2)(A)(ii). "Leave should be granted to the extent that doing so is consistent with the factors set forth in Rule 26(b)(2)." *Sentry Ins. v. Brand Mgmt. Inc.*, Nos. 10-CV-0347, 11-CV-3966 (ENV) (RLM), 2012 WL 3288178, at *8 (E.D.N.Y. Aug. 10, 2012). Such factors include "whether the second deposition of the witness would be unnecessarily cumulative, whether the party requesting the deposition has had other opportunities to obtain the same information, and whether the burden of a second deposition outweighs its potential benefit." *Ganci v. U.S. Limousine Serv., Ltd.*, No. 10-CV-3027 (JFB) (AKT), 2011 WL 4407461, at *2 (E.D.N.Y. Sept. 21, 2011). "The party moving to re-open a deposition must make a showing of good cause," which is a fact-specific inquiry that depends on the circumstances of the case. *McNeil v. New York State Off. of Alcoholism & Substance Abuse Servs.*, No. 14-CV-2379 (NGG) (CLP), 2019 WL 2647572, at *2 (E.D.N.Y. June 27, 2019); *see Carmody v. Vill. of Rockville Ctr.*, No. 05-CV-4907 (SJF) (ETB), 2007 WL 2177064, at *2 (E.D.N.Y. July 27, 2007). Good cause to reopen a deposition may exist "where there is new information on which a witness should be questioned," but even so, "questioning of the witness is limited to those questions relating to the newly produced information." *Ganci*, 2011 WL 4407461, at *2 (collecting cases).

District courts have "'wide latitude to determine the scope of discovery,'" and abuse this discretion "'only when the discovery is so limited as to affect a party's substantial rights.'" *In re Mirena IUS Levonorgestrel-Related Prods. Liab. Litig. (No. II)*, 982

F.3d 113, 124–25 (2d Cir. 2020) (quoting *Twinam v. Dow Chem. Co.* (*In re Agent Orange Prod. Liab. Litig.*), 517 F.3d 76, 103 (2d Cir. 2008) (internal quotation marks omitted)).

**II. Analysis**

Defendants seek to (1) compel Plaintiff to amend her responses to Interrogatory Nos. 10 and 16; (2) reopen discovery in order to propound four additional interrogatories; and (3) reopen Plaintiff's deposition for an additional three hours. *See generally* Mem., ECF 565-1. Plaintiff opposes all three requests. *See generally* Opp'n, ECF 565-5. For the reasons discussed below, Defendants' motion to compel is granted to the extent Defendants seek to require Plaintiff to amend her responses to the at-issue interrogatories. To the extent Defendants request the reopening of discovery or Plaintiff's deposition, the motion is denied. The Court analyzes each aspect of Defendants' requested relief in turn.

**A. Plaintiff's Interrogatory Responses**

Defendants argue that Plaintiff is obligated to amend her responses to Interrogatory Nos. 10 and 16 "to (1) fully list all responsive providers and (2) provide a date range of treatment reflecting the earliest treatment date and latest treatment date" because her original responses were materially incomplete or incorrect under Rule 26(e). Mem., ECF 565-1, at 12, 13, 14. Specifically, Defendants argue that "Interrogatory No. 10 plainly called for health care professionals and/or entities who treated Plaintiff for the symptoms of mental or emotional anguish that she listed in response to Interrogatory No. 9, including the somatic symptoms she described as physical manifestations of her emotional distress." *Id.* at 14. Defendants posit that Plaintiff's responses are incomplete because she "listed only seven of the 21 providers she has seen for her myriad symptoms," omitting providers such as her "psychiatrist, two gastroenterologists, a dentist, a PCP, and several pain management providers." *Id.*

Furthermore, Plaintiff's responses "provided Defendants with no information regarding the date ranges of Plaintiff's treatment" as requested by the interrogatories. *Id.* As to the date range issue, however, "Defendants can agree not to require Plaintiff to list each date of treatment, and can agree that the date ranges can be supplied by reference to produced documents if they can be accurately ascertained by those documents," so long as a date range is provided "to confirm the full scope of Plaintiff's treatment and to confirm the complete production of Plaintiff's health records." *Id.* at 15.

Plaintiff argues that her initial responses "were sufficient" because, in answering Interrogatory No. 10, she provided the names of "'health care professional[s] and/or entit[ies]' who treated Trooper 1 'for any mental or emotional anguish, pain, humiliation, distress, or suffering as a result of' Cuomo's sexual harassment," and in answering Interrogatory No. 16, she provided the names of "'Health Care Providers' who 'treated' Trooper 1 or with whom she 'consulted concerning any mental health or emotional health issues' for the period beginning January 1, 2017," and further referred Defendants to her medical records. Opp'n, ECF 565-5, at 8 (quoting Licul Decl., Ex. 1, ECF 565-7, at 12; Licul Decl., Ex. 2, ECF 565-8, at 4). Plaintiff argues that she did not include Christine Vaglica, a therapist, "in her August 2, 2023 response because she did not begin treatment with Vaglica until the following year," and "subsequently identified Vaglica by producing her treatment records." *Id.* at 8–9. Additionally, Plaintiff argues that Defendants' motion is time-barred because although Plaintiff "objected to providing dates of treatment" in her initial response, Defendants did not raise objections to Plaintiff's responses for "more than two years." *Id.* at 8 n.10, 9.

As discussed above, interrogatory responses must be timely supplemented or corrected "if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not

otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). Interrogatory responses, further, must be complete within themselves and "in a form that may be used at trial," meaning that they generally may not rely on documents incorporated by reference. *Trueman*, 2010 WL 681341, at *2.

Here, after reviewing the interrogatories' text and Plaintiff's responses, the Court finds that Plaintiff's interrogatory responses are incomplete: They do not identify certain known health care providers who treated her or with whom she consulted for mental and/or emotional health concerns, such as Dr. Vaglica, nor do they provide treatment dates as to the same. That said, Plaintiff's duty to identify such providers and associated treatment dates exists only to the extent that Plaintiff sought treatment from or consulted with these providers for mental and/or emotional health concerns specifically. In other words, as the Court reads the interrogatories, Plaintiff was not required to identify all treatment providers for all symptoms that may be associated with her emotional distress, such as dentists or gastroenterologists from whom she sought treatment for dental or gastrointestinal complaints, or a PCP whom she saw for an annual physical, or a chiropractor whom she saw for pain management, and so on and so forth. However, if Plaintiff saw a health care provider of any specialty for the purpose of obtaining a prescription for psychotropic medication, such a provider would need to be disclosed.

The plain text of the interrogatories clearly contemplates health care providers who were sought out for *mental or emotional* health care specifically, not every provider Plaintiff saw for somatic symptoms that may or may not have any relationship with her claimed emotional distress. Stated differently, even if the physical symptoms for which she sought treatment could plausibly be downstream effects of mental or emotional

health concerns, the interrogatories do not require her to identify any health care providers unless Plaintiff saw them for the purpose of treating her "mental or emotional anguish, pain, humiliation, distress, or suffering" caused by Defendant Cuomo's alleged harassment. Licul Decl., Ex. 1, ECF 565-7, at 12. Defendants' attempts to require Plaintiff to identify all treatments for practically every physical ailment she has experienced since 2017 as psychosomatic do not alter this conclusion, as the interrogatories' text does not paint with so sweeping a brush. *See* June 5, 2025 Hr'g Tr., ECF 559, at 13:9–12 (The Court: "[T]o the extent that she also attributes some of her other symptomatology to emotional distress, that's a different question.")

The Court is unconvinced by Plaintiff's argument that the responses are complete in light of her reference to her medical document production, for two reasons. First, against the backdrop of the problems caused by Plaintiff's piecemeal medical records production discussed above, reference to her medical records alone cannot assure Defendants that "the additional or corrective information has . . . otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A); *see Dash v. Seagate Tech. (US) Holdings, Inc.*, No. 13-CV-6329 (LDW) (AKT), 2015 WL 4257329, at *11 (E.D.N.Y. July 14, 2015) (directing the plaintiff to amend his interrogatory responses to provide additional details suggested by his deposition testimony, even if such information "must be gleaned from external sources"). Second, reference to external documents do not render interrogatory responses complete. *See Ripple Labs*, 2021 WL 5336970, at *1 (directing the plaintiff to respond to the defendants' interrogatory "without incorporating or referring to unverified statements or incorporating by reference its responses to other interrogatories").

The Court is cognizant of Plaintiff's argument that Defendants have waived their objections to her responses by not raising them with the Court for two years. *See* Opp'n,

ECF 565-5, at 9. Ultimately, however, the full scope of the lacunae in Plaintiff's medical document production was not known until after the close of discovery, following NYSIF's response to Defendants' subpoena, and Defendants apprised the Court of this issue promptly thereafter (although Defendants' decision to notice the subpoena on the then-operative deadline to close fact discovery did not evince maximal timeliness). *See* Oct. 15, 2025 Def. Letter, ECF 446-1 (Defendants previewing discovery concerns necessitating the NYSIF subpoena); Dec. 5, 2025 Hr'g Tr., ECF 499, at 107:17–111:2 (discussion held regarding discovery disputes following NYSIF's subpoena response). Accordingly, the Court does not find that this aspect of Defendants' motion to compel should be denied on grounds of undue delay.

For the foregoing reasons, the Court finds that Plaintiff must amend her responses to Interrogatory Nos. 10 and 16 as follows. As to Interrogatory No. 10, Trooper 1 must identify all "health care professional[s] and/or entit[ies] who" treated her for "mental or emotional anguish, pain, humiliation, distress, or suffering as a result of any Defendant's alleged acts" and provide a range of treatment dates to the same, consistent with the above findings. Licul Decl., Ex. 1, ECF 565-7, at 12. As to Interrogatory No. 16, to the extent that there are any additional health care providers not identified in Plaintiff's amended response to Interrogatory No. 10, with whom Trooper 1 consulted but who did not treat her "[c]oncerning any mental health or emotional health issues," Plaintiff must identify any such health care providers and provide a range of treatment dates to the same. Licul Decl., Ex. 2, ECF 565-8, at 4. Consistent with Defendants' proposed compromise, the range of treatment dates may be supplied by reference to medical records that have been produced, if the date ranges can be accurately ascertained from such documents. *See* Mem., ECF 565-1, at 15. Should Plaintiff seek to avail herself of this compromise, Plaintiff is directed to certify that the

treatment date ranges may be accurately ascertained by reference to her medical records in her interrogatory responses.

**B. Reopening Discovery and/or Plaintiff's Deposition**

Defendants argue that the information produced pursuant to the NYSIF subpoena and revealed in Miner's testimony comprise good cause to reopen discovery to serve four new interrogatories and to reopen Plaintiff's deposition. *See id*. at 2 (representing that "[s]ince the close of discovery on September 30, 2025, Defendants have obtained more than 7,000 pages of records, including nearly ***3,000 pages of entirely new records, reflecting 139 previously undisclosed treatment visits*** " (emphasis in original)). Defendants contend that these records reveal that Plaintiff sought treatment for some of the symptoms she attributes to her emotional distress prior to the relevant time period, or "did not seek treatment until after [Defendant] Cuomo's resignation." *Id.* (emphasis omitted). Other records "reference Plaintiff's treatment for numerous previously undisclosed conditions whose symptoms overlap substantially with her alleged harm," supporting Cuomo's alternative causation theory. *Id.*; *see id.* at 7–8. Additionally, Cuomo posits that Miner's deposition revealed that "Plaintiff has reported information inconsistent with her claimed symptoms." *Id.* at 2; *see id.* at 10–12. Defendants seek to propound four additional interrogatories, seeking information about Plaintiff's health conditions "related to any 'physical illness,'" the health care providers whom Plaintiff consulted for such conditions, the dates of any such treatment, and whether Plaintiff ever took Xanax or Lexapro or other medication prior to September 23, 2019, along with the health care professional who prescribed such

medication.[3] Cuomo's Proposed Third Set of Interrogs., Ex. B to Noonan Decl., ECF 565-4, at 2. Defendants further seek to reopen Plaintiff's deposition to question her about certain diagnoses "whose symptoms overlap with her claimed distress" and information revealed in Miner's deposition. Mem., ECF 565-1, at 21.

Plaintiff opposes these requests on procedural and substantive grounds. First, Plaintiff argues that Defendants have violated the Federal Rules of Civil Procedure, the Eastern District of New York's local rules, and the undersigned's individual rules by not meeting and conferring with Plaintiff regarding their request for additional interrogatories and to reopen Plaintiff's deposition prior to requesting such relief in the instant motion. Opp'n, ECF 565-5, at 5–7. Second, Plaintiff contends that Defendants have failed to establish that good cause exists to support these requests. *Id.* at 10–21. Specifically, Plaintiff argues that Defendant Cuomo "did not ask Trooper 1 about much of her medical history or damages, including topics he raised in his own interrogatories" during Plaintiff's two-day, 12-hour deposition nearly two years ago. *Id.* at 13–16. Additionally, she posits that the discovery Defendant Cuomo seeks via these proposed new interrogatories "he either has in his possession or had ample time to obtain." *Id.* at 17–19.

---

[3] The full proposed interrogatory regarding prescription medications reads:

> Without limitation to date, state whether you were ever prescribed Xanax or Lexapro, as referenced in PL028562 and PL028564, or otherwise took either medication—including any generic, substitute, equivalent, or related formulation of the medication—prior to September 23, 2019, and identify the health care professional(s) that prescribed, administered, or managed the medication.

Cuomo's Proposed Third Set of Interrogs., Ex. B to Noonan Decl., ECF 565-4, at 2.

Defendants' arguments are unpersuasive when evaluated against the backdrop of the multi-year discovery history in this case.[4] First, Defendants have not demonstrated that reopening Plaintiff's deposition would be "consistent with the factors set forth in Rule 26(b)(2)." *Sentry Ins.*, 2012 WL 3288178, at *8. Here, Plaintiff has already been deposed for 12 hours across two days, five hours beyond the default seven-hour limit, and is set to be examined pursuant to Rule 35. *See* Nov. 13, 2024 ECF Min. Entry & Order (granting leave to depose Plaintiff for six additional hours after a six-hour deposition); *see also* May 1, 2026 ECF Order (finding that an eight-hour Rule 35 medical examination would put a "significant burden" on Plaintiff, but ordering a six-hour examination). As Plaintiff points out, by the time Plaintiff's deposition had commenced, Defendant Cuomo knew that she experienced physical symptoms such as "trouble breathing, sweating, heart pounding, and nausea," as well as "migraines, insomnia, gastrointestinal issues, decreased appetite, a clenched locked jaw, neck pain," and severe fatigue. Licul Decl., Ex. 1, ECF 565-7, at 11 (Plaintiff's response to

---

[4] In response to Plaintiff's procedural opposition, Defendants characterize their motion to reopen discovery as a "Rule 16 motion, brought contemporaneously for efficiency," which "did not require a pre-motion letter or conference." Reply, ECF 565-17, at 1. Regarding Defendants' request to reopen discovery to serve additional interrogatories, it is true that this is governed by Rule 16, which is not expressly included in the applicable meet-and-confer requirements. Fed. R. Civ. P. 16(b)(4); *see* E.D.N.Y. Loc. Civ. R. 37.2 ("[N]o motion under Fed. R. Civ. P. 26 through 37 inclusive and Fed. R. Civ. P. 45 will be heard unless counsel for the moving party has first requested an informal conference with the court[.]"); Merkl, M.J., Indiv. R. & Prac. 3.A. (effectively same). However, as discussed above, motions to reopen a party's deposition are governed by Rule 30, which does require the parties to meet and confer *in good faith* prior to bringing such motion; Defendants' failure to do so provides an ample basis for denying the motion on procedural grounds alone. *See Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088 (RMB) (HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (collecting cases for the proposition that failure to meet and confer in good faith "is sufficient reason by itself to deny plaintiff's motion to compel"); *see also Haber v. ASN 50th St., LLC*, 272 F.R.D. 377, 379 n.1 (S.D.N.Y. 2011) (observing that "failure to request a pre-motion conference prior to filing a discovery motion could result in the motion being denied on that basis alone" when motion was filed thusly, in violation of the operative local rule).

Interrogatory No. 9, dated August 2, 2023). But Defendants did not examine her as to any of these somatic symptoms, save for migraines. *See* Opp'n, ECF 565-5, at 13–14. Moreover, though Defendants suggest that Plaintiff's prescription drug history would be an appropriate topic for a reopened deposition, Defendant Cuomo already examined her as to the same. *Id.* at 15. Against this backdrop, and in light of the fact that Plaintiff has been directed to amend her interrogatory responses and to undergo a Rule 35 medical examination, the Court finds that reopening Plaintiff's deposition "would be unnecessarily cumulative," Defendants have "had other opportunities to obtain the same information," and "the burden of a second deposition outweighs its potential benefit." *Ganci*, 2011 WL 4407461, at *2; *see Dash*, 2015 WL 4257329, at *6 (declining to reopen the plaintiff's deposition where he agreed to supplement his interrogatory responses); *see also* May 1, 2026 ECF Order.

Defendants argue that because "Plaintiff's deposition was limited to twelve hours . . . all three Defendants were required to use their time carefully," and "[i]t was not possible to question Plaintiff at length about information, providers, diagnoses, medical conditions, and treatments Defendants did not even know about." Reply, ECF 565-17, at 6. But to the extent that Defendants argue that the information revealed after September 30 provides the good cause necessary to reopen her deposition, Defendants do not adequately explain what information they would obtain from a third deposition of Plaintiff that is not already in their possession or how the potential benefit of the deposition would outweigh the burden to Plaintiff. In other words, Defendants have not established that re-deposing Plaintiff would meaningfully add to the evidence necessary to advance their defenses or that a further deposition of Plaintiff is the appropriate avenue to obtain that information. *See Liberty Mut. Ins. Co. v. Kohler Co.*, No. 08-CV-0867 (SJF) (AKT), 2010 WL 1930270, at *2 (E.D.N.Y. May 11, 2010) (observing that

the moving party bears the burden of demonstrating relevance by providing "the necessary linkage between the discovery sought and the defenses asserted in the case"); *see also Weisbecker v. Sayville Union Free Sch. Dist.*, No. 10-CV-4645 (ADS) (WDW), 2011 WL 13307926, at *2 (E.D.N.Y. Oct. 21, 2011) (collecting cases observing that discovery into a party's medical history requires "more than just mere speculation about [its] relevance"). As this Court has observed in a parallel context, "'[j]ust because counsel believes a witness might have discoverable information, does not in and of itself give rise to an unfettered right to depose that person.'" Dec. 5, 2025 Hr'g Tr., ECF 499, at 167:10–19 (quoting *C.K. through P.K. v. McDonald*, 345 F.R.D. 262, 267 (E.D.N.Y. 2023) (internal quotation marks omitted), *aff'd*, 813 F. Supp. 3d 347 (E.D.N.Y. 2024)).

Second, and for similar reasons, the Court finds that Defendants have not demonstrated good cause warranting the reopening of discovery at this late, late juncture, notwithstanding the concerns about Plaintiff's production of medical records to date. Although trial is not imminent, the balance of the good-cause factors favors Plaintiff as the non-movant. *See Bakalar*, 851 F. Supp. 2d at 493; *Jacobs*, 2015 WL 7568642, at *3–4. As set forth above, Defendants' request to reopen discovery is opposed. *See generally* Opp'n, ECF 565-5. Plaintiff, as the non-moving party, would be prejudiced by having to answer additional interrogatories, requiring counsel to comb through Plaintiff's medical records to ascertain their accuracy — medical records that are already in Defendants' possession.[5]

[5] Notwithstanding the Court's prior findings regarding the impropriety of answering interrogatories by reference to other documents, Plaintiff's duty to fully answer and timely supplement interrogatories *already propounded* is a separate inquiry from whether Plaintiff would be burdened by answering additional interrogatories.

Regarding Defendants' diligence in obtaining discovery, although Defendants raised the issues regarding Plaintiff's medical records production shortly after they became more aware of the scope of the issue, NYSIF's subpoena response arrived following the close of discovery and it is unclear to the Court why NYSIF was subpoenaed so late in the first place. *See* Oct. 15, 2025 Def. Letter, ECF 446-1, at 3 (noting that Defendant Cuomo noticed the NYSIF document subpoena on September 30, 2025, the day discovery was set to close after myriad discovery extensions[6]). Indeed, had Defendants examined Plaintiff regarding the somatic symptoms she disclosed in her interrogatories during her original depositions in October and November 2024, they may have been able to glean earlier that her medical records were less than complete. *See* Opp'n, ECF 565-5, at 13–14. And of course, as the Court has previously observed, it is "extraordinarily difficult to comprehend why Defendant [Cuomo] would not have prioritized deposing [Miner] earlier in discovery, particularly when Defendant has been aware of Ms. Miner's relevance since August 2, 2023, when Plaintiff disclosed her relationship with Ms. Miner in response to Defendant's interrogatories." October 2025 Discovery Order, 2025 WL 2959061, at *4. For this reason, too, the Court finds that the additional information sought by Defendants' proposed interrogatories was foreseeable, particularly given the liberal extensions of the discovery schedule granted in this case to date. *Id.* at *2 n.4.

Finally, although it is possible that the additional discovery "will lead to relevant evidence," Defendants have not "articulate[d] a concrete linkage between the discovery sought and the claims or defenses asserted in the case" except to generally posit that the

---

[6] *See* October 2025 Discovery Order, 2025 WL 2959061, at *2 n.4 (collecting the various extensions of the discovery schedule granted as of that date).

discovery supports their alternative-causation theory. *Yusupov-Millevoi*, 349 F.R.D. at 494 (quotation marks omitted). The Court is mindful that Rule 26(b)(2)(C) requires courts to "limit the frequency or extent of discovery otherwise allowed" if it is determined that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Here, as discussed above, the discovery sought would duplicate information currently in Defendants' possession, the possession of which Defendants rely on for the proposition that newly produced information warrants the taking of yet more discovery. On the basis of the present record, it will be more convenient, less burdensome, and likely less expensive for Defendants to simply review the medical records that have been produced than to continue to "rummag[e] around through [Trooper 1's] medical history" *ad infinitum*. Dec. 5, 2025 Hr'g Tr., ECF 499, at 118:8–9. Accordingly, the Court finds that this final factor also weighs against re-opening discovery to allow Defendants to propound four additional interrogatories. *See also Winfield v. City of New York*, No. 15-CV-5236 (LTS) (KHP), 2018 WL 1631336, at *4 (S.D.N.Y. Mar. 29, 2018) (observing, three years into the litigation, "[a]t this juncture, when discovery is nearing an end, the Court must balance whether the likely benefit of production of the additional data outweighs the burden associated with its production and further delay of discovery," and denying the plaintiff's motion to supplement previous discovery).

Defendant Cuomo may not continue to push the already generous limits this Court has allowed as to discovery. *See* October 2025 Discovery Order, 2025 WL 2959061, at *2 n.4 (collecting the various extensions of the discovery schedule granted as of that date); *see also* Dec. 5, 2025 Hr'g Tr., ECF 499, at 159:10–12 (The Court: "It is worthy of note that the original fact discovery deadline was January 11th, 2023. How naïve we

were back then."). As the Court has previously observed in this case: "Discovery is not limitless." Dec. 5, 2025 Hr'g Tr., ECF 499, at 172:15. This case stems from a chain of events that was set in motion in November 2017 — nine years ago — and is now approaching its fifth year of active litigation. *See* Second Am. Compl., ECF 71, ¶¶ 21–22; *see generally* Compl., ECF 1 (filed on Feb. 17, 2022). As with all things, discovery — and eventually, this litigation — must come to an end.

**CONCLUSION**

For the reasons discussed above, Defendants' motion to compel is granted, in part, and Plaintiff is directed to amend her responses to Interrogatory Nos. 10 and 16 consistent with this order. All other aspects of Defendants' requested relief are denied.

**SO ORDERED.**

Dated: Brooklyn, New York
October 7, 2026

Taryn A. Merkl

TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE